# EXHIBIT B

# Supplemental Report
# of E. Deborah Jay, Ph.D.
## August 2021

*James Hayden v. 2K Games, Inc. and Take-Two Interactive Software, Inc.*



Jay Survey Strategics

# Table of Contents

A. Summary of Opinions

B. Credentials and Materials Considered

C. The Jay Survey

D. The Bilgicer Survey

E. Conclusions

# Supplemental Report of E. Deborah Jay, Ph.D.

## A. Summary of Opinions

In this action I was retained on behalf of defendants, 2K Games, Inc. and Take-Two Interactive Software, Inc., to conduct a survey with a nationwide representative sample of individuals who had bought a relevant NBA 2K video game (2K16, 2K17, 2K18, 2K19, 2K20 or 2K Mobile). The purpose of the NBA 2K Survey that I conducted (hereinafter, the "Jay Survey") was to determine the reasons why consumers bought an NBA 2K video game and whether the tattoos on LeBron James, Danny Green, or Tristan Thompson were a reason why consumers bought an NBA 2K video game.

On May 20, 2021, I submitted an expert report about the survey that I conducted in connection with this matter (hereinafter, the "Jay Survey Report"). As detailed in my survey report, the Jay Survey found that consumers bought the relevant NBA 2K video games for numerous reasons, principally that they like basketball. The Jay Survey also found that no consumer bought the relevant NBA 2K video games for the tattoos on LeBron James, Danny Green, or Tristan Thompson – that is, there was no link between the sales of the NBA 2K video games and their depiction of the tattoos on LeBron James, Danny Green, or Tristan Thompson.

Since my original report, I have received a report prepared by Dr. H. Tolga Bilgicer on behalf of Plaintiff, dated July 1, 2021. In that report (the "Bilgicer Report"), Dr. Bilgicer gives a number of opinions with which I disagree, including criticisms of the Jay Survey that are

unwarranted and a newly conducted survey (the "Bilgicer Survey") that is deeply flawed. I submit this supplemental report to address the numerous problems in the Bilgicer Report.[1]

In this report, I explain how Dr. Bilgicer's criticisms of the Jay Survey are unfounded. The Jay Survey was performed according to accepted survey standards and in conformity with the guidelines discussed in the *Federal Manual for Complex Litigation*, 4th Ed. §11.493 (2004) and the *Reference Guide on Survey Research*, *Federal Reference Manual on Scientific Evidence*, 3rd Ed. (2011).[2] The Jay Survey included a combination of clear, unambiguous open-ended and closed-ended questions designed to elicit both the main reasons and other reasons respondents purchased their NBA 2K video games. Unlike the Bilgicer Survey, the Jay Survey also included a proper control, consistent with well-accepted survey principles. Based on my education and experience, I am confident that the Jay Survey provides a reliable and valid measure of the reasons consumers bought an NBA 2K video game and whether the tattoos on LeBron James, Danny Green, or Tristan Thompson were a reason consumers bought an NBA 2K video game.

Moreover, in this report, I also comment on the Bilgicer Survey insofar as Dr. Bilgicer claims his survey contradicts the results of the Jay Survey. His report reveals an evident misconception of how consumer surveys are properly conducted and analyzed. ***First***, the Bilgicer Survey included questions that were leading, cognitively difficult, and designed to inflate the value respondents assigned to NBA players' attributes, including tattoos. ***Second***, the answer choices

---

[1] Since my original report, I also reviewed excerpts (¶ 58-63) from a report prepared by Dr. Justin Lenzo on behalf of Plaintiff, dated July 1, 2021. In the excerpts from that report (the "Lenzo Report"), Dr. Lenzo gives a number of opinions with which I disagree, including criticisms of the Jay Survey that are unwarranted. I understand that Dr. Lenzo is not a survey expert, and his criticisms reflect a fundamental misunderstanding of how consumer surveys in copyright, trademark and intellectual property cases are designed. Dr. Lenzo did not conduct a survey, and his opinions are not supported by any other consumer survey or representative measurements of consumer purchase decisions.

[2] The survey population was properly defined as individuals age 16 to 55 who had bought a relevant NBA 2K video game, and the sample selected was representative of that population. The questions asked in the Jay Survey were clear and not leading. The data gathered for the Jay Survey were accurately reported, and the data were analyzed in accordance with accepted statistical principles. The Jay Survey was conducted, under my direction, by survey research professionals following proper survey procedures, and the entire process was conducted so as to ensure objectivity.

provided in the Bilgicer Survey were incomplete, ambiguous, and compound. *Third*, Dr. Bilgicer did not use a proper control to sufficiently account for guessing, demand effects, or other sources of "noise" in the Bilgicer Survey. *Fourth*, the Bilgicer Survey does not show whether consumers purchased their NBA 2K video games because of any particular tattoos on any particular NBA players (including on LeBron James, Tristan Thompson, or Danny Green), as Dr. Bilgicer never included any such questions in the Bilgicer Survey. *Fifth*, Dr. Bilgicer mischaracterizes the results of his survey by overstating the importance of the NBA players' tattoos, when in fact survey respondents allocated only a negligible percentage (less than 1%) of the value of the NBA 2K video games to <u>all</u> tattoos on <u>all</u> of the NBA players in the games. As detailed below, I have concluded that the Bilgicer Survey is gravely flawed, and I am certain that it does not provide a reliable or valid measure of the reasons for buying an NBA 2K video game or whether the tattoos on LeBron James, Danny Green, or Tristan Thompson were a reason why consumers bought an NBA 2K video game.

## B. Credentials and Materials Considered

I am a Principal and Founder of Jay Survey Strategics LLC, a marketing and public opinion research firm in the San Francisco Bay Area that specializes in providing survey design, sampling, data collection and statistical analysis. Before this, I served for 23 years as President and CEO of Field Research Corporation, the highly respected marketing and opinion research firm started by Mervin Field in 1945. During my career I have designed and directed well over 800 surveys and more than 400 surveys in legal cases. I have testified on behalf of plaintiffs and defendants in proceedings before state and federal courts and other tribunals (such as the U.S. Patent and Trademark Office and the U.S. International Trade Commission), and routinely have been qualified by courts as an expert in survey methodology. I also have lectured on litigation surveys and survey methods before bar associations, trade associations, and business and law schools, and