**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>2K GAMES, INC. and TAKE-TWO<br>INTERACTIVE SOFTWARE, INC. ,<br><br>　　　　　Defendants. | CASE NO. 1:17-cv-02635-CAB |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE OR**
**STRIKE DEFENDANTS' SUPPLEMENTAL EXPERT REPORTS**

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................. 4

    A.    Procedural Background ................................................................................ 4

    B.    Plaintiff's "Rebuttal" Reports .................................................................... 5

    C.    Take-Two's Supplemental Reports ............................................................ 6

III.    ARGUMENT .......................................................................................................... 8

    A.    Take-Two's Supplemental Reports Are Proper under Federal Rule 26(e) ............ 8

    B.    The Supplemental Reports Are Timely under Rule 26(e). ................................... 11

    C.    Plaintiff is Not Prejudiced by the Supplemental Reports. ..................................... 12

    D.    Excluding the Supplemental Reports Would Prejudice Take-Two. ..................... 14

IV.    CONCLUSION .................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baker v. Chevron*,
  533 F. App'x 509 (6th Cir. 2013) ........................................................................11

*Balsley v. LFP, Inc.*,
  691 F.3d 747 (6th Cir. 2012) ...............................................................................9

*Cason-Merenda v. Detroit Med. Ctr.*,
  No. 06 Civ. 15601, 2013 WL 1721651 (E.D. Mich. Apr. 22, 2013) ............................8, 10, 11

*Deere & Co. v. FIMCO Inc.*,
  260 F. Supp. 3d 830 (W.D. Ky. 2017)......................................................................9

*Estes v. King's Daughters Med. Ctr.*,
  59 F. App'x 749 (6th Cir. 2003) ............................................................................11

*Everlight Elecs., Co., Ltd. v. Nichia Corp.*,
  No. 12 Civ. 11758, 2014 WL 3925276 (E.D. Mich. Aug. 12, 2014) ...............................8, 10

*HLV, LLC v. Buren Cnty.*,
  775 F. App'x 204 (6th Cir. 2019) ..........................................................................13

*Hoskins Oil Co., LLC v. Equilon Enters., LLC*,
  No. 16 Civ. 417, 2019 WL 691394 (E.D. Tenn. Feb. 19, 2019) ...............................12, 13, 14

*Meirs v. Ottawa Cnty.*,
  No. 15 Civ. 866, 2018 WL 9815859 (W.D. Mich. Jan. 8, 2018)...........................................14

*On Davis v. Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001)...................................................................................9

*Pluck v. BP Oil Pipeline Co.*,
  640 F.3d 671 (6th Cir. 2011) ................................................................................11

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) .................................................................................9

*Pride v. BIC Corp.*,
  218 F.3d 566 (6th Cir. 2000) ...............................................................................11

*Redmond v. United States*,
  194 F. Supp. 3d 606 (E.D. Mich. 2016)....................................................................12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Scott v. Abernathy Motorcycle Sales, Inc.*,
    No. 18 Civ. 1077, 2021 WL 829710 (W.D. Tenn. Mar. 4, 2021) ..............................................8

*Seton Co. v. Lear Corp.*,
    No. 02 Civ. 71118, 2005 WL 8154366 (E.D. Mich. May 13, 2005).......................................12

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
    449 F. Supp. 3d 333 (S.D.N.Y. 2020)..........................................................................1, 4, 14

*Taylor v. Meirick*,
    712 F.2d 1112 (7th Cir. 1983) ..................................................................................................9

*In re Telxon Corp. Sec. Litig.*,
    No. 98 Civ. 2876, 2004 WL 5523284 (N.D. Ohio June 8, 2004)............................................12

*Uszak v. Yellow Transp.*,
    No. 06 Civ. 837, 2007 WL 171982 (N.D. Ohio Jan. 18, 2007)...............................................14

*Wallace Sales & Consulting, LLC v. Tuopu N. Am., Ltd.*,
    No. 15 Civ. 10748, 2016 WL 6836993 (E.D. Mich. Nov. 21, 2016) ......................................12

**Rules**

Fed. R. Civ. P. 26........................................................................................................1, 8, 11, 14

Take-Two Interactive Software, Inc. and 2K Games, Inc. (collectively "Take-Two") respectfully submit this opposition to Plaintiff James Hayden's ("Plaintiff") motion (the "Motion") to exclude or strike the supplemental reports of Dr. Deborah Jay and Dr. James Malackowski (the "Supplemental Reports").

## I.    INTRODUCTION

Through his Motion, Plaintiff improperly attempts to restrict the evidence that this Court and any jury may consider at trial.  By endeavoring to exclude two expert reports that consider and respond to Plaintiff's experts' affirmative opinions and data, Plaintiff tries to insulate his experts from any criticism, response, or even consideration.  Excluding these reports would prevent Take-Two from adequately addressing Plaintiff's theories of the case at trial, as Take-Two's experts would be unable to consider or address the significant deficiencies in the opinions and data presented by Plaintiff's experts.  Not only does this defy common expert discovery practice and basic principles of fairness, it runs roughshod over the Federal Rules of Civil Procedure and the laws of this District, which actively encourage parties to serve additional expert reports articulating the bases for their opinions, as occurred here.  The Court should deny Plaintiff's Motion for four reasons.

*First*, the Supplemental Reports were proper under Rule 26(e), which permits supplementation if a party learns that "some material respect" of the expert disclosure "is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1)(A).  Here, Plaintiff's own actions made supplementation necessary.  As Your Honor is aware, the Southern District of New York previously granted Take-Two summary judgment on the basis that the inclusion in *NBA 2K* of the tattoos that NBA players bear in real life constituted *de minimis*, fair, and licensed use.  *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 343–50 (S.D.N.Y. 2020).  That opinion explicitly discussed Take-Two's experts, including Dr. Jay and Mr. Malackowski.  As a

result, Plaintiff was well aware of the likely identity of Take-Two's experts and their opinions. Thus, hoping to sandbag Take-Two, Plaintiff strategically waited until the rebuttal report deadline to disclose two of its experts and file an additional report from its opening expert, clearly aiming to prevent Take-Two's experts from opining on those reports.  Plaintiff's tactic was improper, as his reports contain affirmative opinions that do not rebut Take-Two's opening reports.  They also contain new facts.  In particular, although styled as "rebuttals,"  the reports of Mr. Michal Malkiewicz, Dr. H. Tolga Bilgicer, and Dr. Justin Lenzo contained, among other things, a ***wholly new survey*** and a data set previously unanalyzed by Take-Two's survey expert, as well as new affirmative theories regarding critical issues on which Plaintiff bears the burden of proof.  Consistent with Rule 26(e), Take-Two promptly served the Supplemental Reports, which indicate how the new information produced by Plaintiff relates to Take-Two's experts' opinions.  As discussed in detail below, Plaintiff has cited to no rule or other law suggesting that supplementing an expert's affirmative opinions to reflect new facts is improper; nor can he, as that is the entire point of Rule 26(e).

***Second***, the Supplemental Reports were served timely.  Specifically, the Supplemental Reports were served at least ten days before Take-Two's experts were deposed, weeks before the close of expert discovery, and long before any *Daubert* motions or trial, neither of which have a date set in this case.  Indeed, the Supplemental Reports were served on the timetable that Plaintiff himself requested in serving deposition notices for Dr. Jay's and Mr. Malackowski's depositions.  Plaintiff even introduced the Supplemental Reports as exhibits and asked about them during the depositions of these experts.  Thus, Plaintiff cannot show a lack of timely notice. This stands in stark contrast to the cases to which Plaintiff points in his Motion, which involved reports served after *Daubert* proceedings or shortly before trial.

***Third***, Plaintiff has not shown any prejudice from the Supplemental Reports.  As discussed, Plaintiff received them timely—trial has not yet been scheduled, no *Daubert* hearings have been conducted, and a dispositive motion deadline has not even been set.  As a result, he had the opportunity to (and did) depose each expert about the contents of the Supplemental Reports.  Although Plaintiff seems to believe that he is entitled to the "last word," the Federal Rules foreclose his sharp litigation tactics by encouraging the service of timely supplemental reports, as is the case here.  Thus, the Supplemental Reports are harmless and should not be excluded.

***Fourth***, while the precise practical effect of the Motion is unclear, if granted, the Motion will significantly prejudice Take-Two.  To the extent Plaintiff seeks to preclude Take-Two's witnesses from testifying at trial about Plaintiff's rebuttal reports, granting the Motion would put Take-Two at a profound disadvantage.  It would mean, for example, that although Dr. Bilgicer will be able to testify at trial about the survey that Dr. Jay conducted, Dr. Jay will not be able to testify about the flawed survey that Dr. Bilgicer conducted or the misleading results that survey elicited.  Plaintiff should not be permitted to game the system by submitting affirmative opinions and new data that he claims is a rebuttal, so as to prevent Take-Two's experts from considering or responding to such information and new facts.  This is contrary to the norms of expert discovery and basic principles of fairness.  It would give litigants a free pass to put in data and theories on which the opposing expert cannot criticize or testify.

To the extent that Plaintiff is not seeking to preclude trial testimony on these subjects, granting the Motion still makes no sense.  It would mean that Take-Two is not permitted to put Plaintiff on notice of its experts' planned testimony on these subjects, which undercuts the very purpose of Rule 26.  Ultimately, Plaintiff should expect opposing experts to respond to and

criticize his expert's opinions and data, and should prefer to hear those criticisms now rather than on the stand.  Accordingly, Take-Two respectfully requests that the Court deny Plaintiff's Motion and permit the parties to proceed to the filing of dispositive motions.

## II.    FACTUAL BACKGROUND

### A.    Procedural Background

The Court's April 29, 2021 Order set the due dates for opening and rebuttal expert reports in this case as May 27, 2021 and July 1, 2021, respectively.  *See* Court Order (Apr. 29, 2021) (the "Order").  Pursuant to the Order, Take-Two timely served four opening expert reports: (1) a report by survey expert Dr. E. Deborah Jay detailing and explaining the results of a survey that she conducted to determine the reasons that consumers purchase the accused video game, *NBA 2K*; (2) a report by tattoo expert Dr. Nina Jablonski; (3) a report by video game expert Dr. Ian Bogost; and (4) a report by economics expert, Mr. James Malackowski.  These reports were consistent with the expert reports Take-Two served in *Solid Oak*, another case involving the use of tattoos in *NBA 2K*.  As each of Take-Two's four experts were disclosed in that case, Plaintiff was well aware of what to expect in terms of the identity and opinions of Take-Two's experts in this follow on litigation.  Plaintiff, meanwhile, only served one opening report.  That report was issued by Mr. Michal Malkiewicz, who addressed various topics, but critically not an attempt to apportion the value of the tattoos at issue in his opening report.

On July 1, 2021, both parties served rebuttal reports.  Take-Two served two rebuttal reports to respond to Mr. Malkiewicz: a rebuttal report by Dr. Bogost, including a rebuttal to issues in Mr. Malkiewicz's report concerning the alleged frequency that Tristan Thompson, Danny Green, and LeBron James (the "NBA Players") are depicted and to Mr. Malkiewicz's discussion of Take-Two's documents, and a rebuttal report by Mr. Malackowski, including to respond to Mr. Malkiewicz's alleged accounting of Take-Two's sales and profits.  As discussed

4

in more detail below, Plaintiff served three purported "rebuttal" reports by Dr. H. Tolga Bilgicer, Dr. Justin Lenzo, and Mr. Malkiewicz, each of which contained new affirmative opinions and information previously undisclosed to Take-Two and unconsidered by its experts.

Thereafter, the parties served deposition notices for each expert.  In Plaintiff's deposition notices for Dr. Jay and Mr. Malackowski, Plaintiff requested:

> To the extent the deponent will rely on documents or information not yet produced in this litigation, Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. are further directed to produce those documents or that information as soon as it is available, and **no less than ten calendar days prior to the date for the expected testimony**.

Exs. A–B (emphasis added).  In accordance with that request and pursuant to its obligations under the Federal Rules, Take-Two served the supplemental report of Dr. Jay on August 13, 2021, eleven calendar days before her August 24 deposition, and served the supplemental report of Mr. Malackowski on August 16, 2021, ten calendar days before his August 26 deposition.[1] Those reports also are discussed below.

### B.      Plaintiff's "Rebuttal" Reports

Each of Plaintiff's purported "rebuttal" reports was submitted by an expert who had been retained in advance of the *opening* report deadline, and each contained affirmative opinions and new information previously undisclosed to Take-Two.  One "rebuttal" report was a survey report by Dr. Bilgicer, who admitted that ██████████████████████████████████ ██████████████████        Ex. C, Bilgicer Dep. Tr. 43:9–12.  In it, Dr. Bilgicer purports to have designed and administered his own survey to determine why consumers purchase *NBA 2K*, and he reports on those results.  Plaintiff also subsequently produced the raw data results of Dr. Bilgicer's survey, which was hitherto undisclosed to Take-Two.

---

[1]    The dates that were noticed on the deposition notices were modified by agreement of the parties.

Another "rebuttal" report was by Dr. Lenzo, who acknowledged that █████████████
███████████████████████████████████████.  Ex. D, Lenzo Dep. Tr.
18:16–19. ("██████████████████████████████████████████████████████
█████████████████████████████████").  In his "rebuttal" report, Dr.
Lenzo opines on the alleged commercial benefit of depicting the Tattoos in *NBA 2K*, echoing Mr.
Malkiewicz's same opinions on this topic and also relying on Dr. Bilgicer's new survey as
support.  He further opines on issues related to the potential to form a market for tattoo design
licensing in video games.

The final "rebuttal" report was by Mr. Malkiewicz.  In it, Mr. Malkiewicz (a) *changed* his
approach to determining Take-Two's profits by newly opining on what he called the
████████████████████████████████████████████████████████████
██████████████████ and in doing so, he did not take into account several cost categories that he
had included in his opening report;[2] (b) *relied* on the new Bilgicer survey to analyze the amount
of the alleged incremental profits; and (c) *made* a completely new profit calculation.

**C.    Take-Two's Supplemental Reports**

---

[2]    Mr. Malkiewicz's changed opinions evidently were intended to inflate his original damages opinion.  ***First***, Mr. Malkiewicz



The Supplemental Reports were disclosed in light of the new information and affirmative opinions provided in Plaintiff's so-called "rebuttal" reports.  In Dr. Jay's supplemental report, she considers Dr. Bilgicer's rebuttal survey and corresponding data, pointing out significant problems with the survey that make it unreliable and misleading.  For instance, Dr. Jay concluded that the Bilgicer Survey included questions that were leading, cognitively difficult, ambiguous, and designed to inflate the value that respondents assigned to the NBA players' attributes, including tattoos.  Ex. E, D. Jay Supp. Rpt. Excerpts, at 2.  She further concluded that, contrary to widely accepted principles of survey methodology, Dr. Bilgicer did not use a proper control to account for guessing, demand effects, or other sources of noise in the Bilgicer Survey.  *Id*. at 3.  Critically, after analyzing Dr. Bilgicer's data set, Dr. Jay points out that Dr. Bilgicer mischaracterizes the results of Dr. Bilgicer's survey, and that ████████████████████
█████████████████████████████████████████████████████████████████
███████████████████████████████████ *Id*.  The Bilgicer Survey did not even attempt to determine the value of the specific tattoos at issue in this case.

Mr. Malackowski also submitted a supplemental report, in which he responded to the new "rebuttal" report by Dr. Lenzo, and the changed partial apportionment analysis conducted by Mr. Malkiewicz, which also relied heavily on the new Bilgicer Survey.  In Mr. Malackowski's supplemental report, he concludes that Mr. Malkiewicz's new calculation of incremental profits is not the appropriate methodology for determining the alleged infringer's profits from copyright infringement and contains a number of errors.  Ex. F, J. Malackowski Supp. Rpt. Excerpts, at 3.  He also concludes, among other things, that Dr. Lenzo overstates the contribution of the tattoos at issue to the success of the *NBA 2K* video games, and that Dr. Lenzo

dismisses or ignores practical obstacles, including costs, that are part of the reason a market for

licensing tattoos in video games does not exist.  *Id.* at 3–4.

In both of these Supplemental Reports, Dr. Jay and Mr. Malackowski considered the new

opinions and information provided by Plaintiff's experts and notified Plaintiff of how, if at all,

that information related to the opinions that they previously identified.

## III.    ARGUMENT

### A.    Take-Two's Supplemental Reports Are Proper under Federal Rule 26(e)

Plaintiff cites the Federal Rules of Civil Procedure in his Motion, but glosses over the

fact that a party may "supplement or correct its disclosure . . . in a timely manner if the party

learns that in some material respect the disclosure or response is incomplete or incorrect."  Fed.

R. Civ. P. 26(e)(1)(A); *see also* Fed. R. Civ. P. 26(a)(2)(E) ("[t]he parties must supplement

[expert] disclosures when required under Rule 26(e)").  To the extent that a supplemental export

report is submitted with time to "fully inform[] the recipient of the anticipated testimony," it

accomplishes the "very purpose" of Rule 26, which is to "prevent surprise at trial."  *Cason-*

*Merenda v. Detroit Med. Ctr.*, No. 06 Civ. 15601, 2013 WL 1721651, at *8, n.9 (E.D. Mich.

Apr. 22, 2013) (finding that a supplemental submission that refined and responded to criticisms

levied by opposing expert was proper).  In light of this, courts in this Circuit regularly permit the

supplementation of expert reports for a number of reasons, including (a) to respond to new

theories raised in an opposing expert's rebuttal report, *see Everlight Electronics, Co., Ltd. v.*

*Nichia Corp.*, No. 12 Civ. 11758, 2014 WL 3925276, at *3–4 (E.D. Mich. Aug. 12, 2014)

(allowing fourth supplemental expert report that responded rebuttal report containing "new

theories which relied on new information"), (b) to "respond to an opposing expert pointing out

gaps in the supplementing expert's chain of reasoning," or (c) to "reflect an expert's changed

opinion," *Scott v. Abernathy Motorcycle Sales, Inc.*, No. 18 Civ. 1077, 2021 WL 829710, at *3

(W.D. Tenn. Mar. 4, 2021) *see also Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 837

(W.D. Ky. 2017) (allowing supplemental report providing new evidence in support of opening

report).[3]

Here, the Supplemental Reports serve precisely the purpose contemplated by Rule

26(e)—they notify Plaintiff of Dr. Jay's and Mr. Malackowski's anticipated testimony at trial

and reflect each expert's full opinions in light of newly disclosed information.  Take-Two

properly served opening reports for each of these experts by the May 27, 2021 deadline.

Plaintiff, meanwhile, waited until the rebuttal report deadline on July 1, 2021 to serve the expert

reports of Dr. Bilgicer and Dr. Lenzo, and the changed opinions of Mr. Malkiewicz.  These

reports, styled as "rebuttals," in fact contained extensive affirmative opinions on which Plaintiff

bears the burden of proof, including damages and gross revenues.  *See Balsley v. LFP, Inc.*, 691

F.3d 747, 769 (6th Cir. 2012) (finding it is the copyright owner's burden to prove gross revenues

and demonstrate a "reasonable relationship" between gross revenues and the alleged

infringement); *see also Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 712 (9th Cir.

2004) (finding the copyright owner bears the burden of showing a causal nexus between

revenues and infringement); *On Davis v. Gap, Inc.,* 246 F.3d 152, 160 (2d Cir. 2001) (same);

*Taylor v. Meirick,* 712 F.2d 1112, 1122 (7th Cir. 1983) (same).

The supposed "rebuttal" reports also contained new data not previously disclosed to

Take-Two's experts.  For instance, the Bilgicer Report included a ***wholly new survey*** with survey

responses never before considered by Take-Two's experts.  *See* Ex. G, H.T. Bilgicer Rpt.

Excerpts.  The Lenzo Report, likewise, relies on the Bilgicer Report to reach his conclusion that

Take-Two receives a commercial benefit from including realistic depictions of tattoos in *NBA*

---

[3]     Plaintiff tellingly ignores Rule 26(e) and asserts that the Supplemental Reports are untimely under Rule 26(a).

*2K*, and also discloses new analyses of the transaction costs of video games related to damages and gross revenues.  *See* Ex. H, J. Lenzo Rpt. Excerpts.  Similarly, the Malkiewicz rebuttal report relies heavily on the Bilgicer Report, and, for the first time in this case, disclosed a calculation of the profits that he believes Take-Two made from the realistic depictions of tattoos in *NBA 2K*.  *See* Ex. I, M. Malkiewicz Rpt. Excerpts; *supra* 6 n.2.  Moreover, Mr. Malkiewicz changed his methodology in multiple ways from that used in his opening report to determine the newly offered profit number.  *See supra* 6 n.2.

Faced with Plaintiff's "rebuttal" reports and consistent with the Federal Rules and common practice in this Circuit, Dr. Jay and Mr. Malackowski promptly prepared Supplemental Reports updating their prior reports so that it was clear how this new information related to their opinions.  *See Everlight*, 2014 WL 3925276 at *4 (finding that it was appropriate for expert to supplement report to address "new theories" and "new information" contained in opposing rebuttal report).  These supplements were permitted by Rule 26(e) and serve the very purpose of that rule, which is to ensure that Plaintiff is not surprised at trial.  *See Cason-Merenda*, 2013 WL 1721651, at *8, n.9.  It would be fundamentally unfair if the law allowed Plaintiff to belatedly disclose new facts, data, and opinions, but preclude Take-Two's experts from considering them or giving notice of their complete opinions in light of them.[4]

Plaintiff nonetheless contends that the Supplemental Reports are improper because they are in fact "reply reports" not permitted under the schedule.  Plaintiff does not define "reply reports" or explain the difference between a purportedly prohibited "reply" and a proper supplemental report.  His argument appears to be that the Supplemental Reports "rehabilitate"

---

[4]   Plaintiff argues that the Supplemental Reports give Take-Two a "one-sided advantage," Mot. 5, but that is precisely what Plaintiff is attempting to obtain by submitting affirmative opinions, including an entirely new survey, and attempting to preclude any consideration thereof by Take-Two's experts.

the witnesses in light of criticisms from Dr. Lenzo and Dr. Bilgicer.  Mot. 5, 8.  That

misunderstands the purpose of the Supplemental Reports, which merely provide each expert's

complete opinion in light of the newly disclosed opinions, theories, and information contained in

Plaintiff's "rebuttal" reports.  The deeply flawed reports of Dr. Lenzo and Dr. Bilgicer (the latter

of whom is patently unqualified to testify as a survey expert at all) do not necessitate

"rehabilitation" on Dr. Jay's or Dr. Malackowski's part.  But even if the Supplemental Reports

were designed to "rehabilitate" these witnesses, this is not a reason to exclude these reports.  *See*

*Cason-Merenda* 2013 WL 1721651, at *8, n. 9 (finding it would be "odd indeed if the law

prevented an expert from taking on board the suggestions for refinements put forward by another

expert commenting on his opinion").

### B.    The Supplemental Reports Are Timely under Rule 26(e).

Not only were the Supplemental Reports proper under Rule 26(e), they also were timely.

The Supplemental Reports were served at least ten days before the depositions of each expert,

consistent with Plaintiff's deposition notices of each witness.  They were served well before the

deadline contemplated by Rule 26(e), which requires disclosure at least 30 days before trial.

Fed. R. Civ. 26(e).  And the Supplemental Reports were served within the expert discovery

period set by the Court.[5]

---

[5]    As demonstrated by the very cases Plaintiff cites, the circumstances under which courts in this Circuit normally exclude or strike expert reports are vastly different than the circumstances here.  For instance, Plaintiff relies on *Estes v. King's Daughters Medical Center*, a case in which a party did not disclose their intent to rely on an expert *at all* (including the identity of that expert) until **nine months** after the expert disclosure deadline and over three months after completing discovery.  59 F. App'x 749, 753 (6th Cir. 2003).  *Estes* did not involve a timely supplementation of an already disclosed expert report before depositions of that expert even took place, as is the case here.  Similarly, *Pride v. BIC Corp.* involved an attempt to reopen expert discovery *after* the *Daubert* hearing to add additional experts not previously disclosed.  218 F.3d 566 (6th Cir. 2000).  That is not the case here.  Plaintiff also cites *Pluck v. BP Oil Pipeline Co.*, in which the court rejected a supplemental expert report submitted after *Daubert* hearings because it was a "transparent attempt to reopen the *Daubert* inquiry" after such inquiry had exposed weaknesses in the expert's testimony.  640 F.3d 671, 681 (6th Cir. 2011) (internal quotation marks omitted).  And in *Baker v. Chevron*, the court similarly noted that district courts have broad discretion to exclude expert reports serving as attempts to "reopen the *Daubert* inquiry," 533 F. App'x 509, 520 (6th Cir. 2013) (internal quotation marks omitted), not, as Plaintiff mischaracterizes it, to

C.    **Plaintiff is Not Prejudiced by the Supplemental Reports.**

In addition to being timely and proper, the Motion should be denied because the

Supplemental Reports do not prejudice Plaintiff.  In considering whether a disclosure is

"harmless," the Sixth Circuit considers five factors: "(1) the surprise to the party against whom

the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to

which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5)

the non-disclosing party's explanation for its failure to disclose the evidence." *Redmond v.

United States*, 194 F. Supp. 3d 606, 613 (E.D. Mich. 2016).[6]  Each factor favors Take-Two here.

*First*, as to the questions of surprise and the ability to cure any surprise, surprise may be

cured where there is adequate time to depose the expert on the contents of the report, which

weighs in favor of allowing it.  *See*, *e.g.*, *Seton Co. v. Lear Corp.*, No. 02 Civ. 71118, 2005 WL

8154366, at *3 (E.D. Mich. May 13, 2005) (finding movant suffered no prejudice because the

expert was made available for a deposition); *Wallace Sales & Consulting, LLC v. Tuopu N. Am.,

Ltd.*, No. 15 Civ. 10748, 2016 WL 6836993, at *2 (E.D. Mich. Nov. 21, 2016) (finding

"surprise" of supplemental expert report could be "cured" by deposing expert on the

supplemental report); *Hoskins Oil Co., LLC v. Equilon Enters., LLC*, No. 16 Civ. 417, 2019 WL

691394, at *3 (E.D. Tenn. Feb. 19, 2019) (same); *In re Telxon Corp. Sec. Litig.*, No. 98 Civ.

2876, 2004 WL 5523284, at *1 (N.D. Ohio June 8, 2004) (allowing supplemental expert report

where there was the opportunity to depose expert on the theories contained therein).  Here,

---

"reopen an opinion," Mot. at 6.  The *Baker* Court certainly did not say that district courts can or should
generally exclude supplemental expert reports submitted before the close of expert discovery.  In each of these
cases, the expert reports at issue were disclosed significantly later in the case, generally in response to *Daubert*
hearings, as a means to reopen that inquiry.

[6]    Plaintiff does not actually address these factors, instead generally asserting that Take-Two should not get the
last word on expert reports. Mot. 8. Expert reports are not briefs where one side gets the last word.  The point
of these reports is to put the other party on notice of anticipated testimony at trial.  That is precisely what the
Supplemental Reports do.

Plaintiff requested and received ten days to review the Supplemental Reports before the depositions of both Dr. Jay and Dr. Malackowski, and he never asked to postpone the depositions to provide time to review the Supplemental Reports further.  He then asked about the Supplemental Reports during the depositions.  *See, e.g.*, Ex. J, Jay Dep. Tr. 85:19–88:14; Ex. K, Malackowski Dep. Tr. (Rough) 172:19–173:8.  Any alleged "surprise" was cured, which strongly favors allowing these reports.[7]

*Second*, as to the extent to which allowing the evidence would disrupt the trial, it will not.  Neither a trial date nor a dispositive motion deadline have been set.  *Hoskins Oil Co., LLC*, 2019 WL 691394, at *3 (disclosure was harmless where evidence would not disrupt trial, which had been continued).  Thus, there is no temporal disruption.

*Third*, as to the importance of the evidence, it is extremely important that Take-Two's experts be permitted to testify concerning the newly unearthed theories of Plaintiff's experts and the facts relating to damages and gross revenues.  The amount of damages is an essential element to the case, and omitting evidence as to damages or curtailing Take-Two's experts' ability to address such evidence could seriously compromise the balance of the trial.

*Fourth*, as to the explanation for Take-Two's failure to disclose the evidence sooner, the fault lies completely with Plaintiff.  Take-Two received Plaintiff's belatedly disclosed expert reports, and it worked quickly with its experts to address them in time for Plaintiff to review the Supplemental Reports prior to the depositions.  The Supplemental Reports simply could not have been prepared earlier.[8]

---

[7]  Plaintiff asserts that Dr. Bilgicer and Dr. Lenzo should have been able to review these supplemental reports before their depositions.  Mot. 6.  But the Supplemental Reports do not provide new facts, data, or methodologies of which these experts were not aware.

[8]  The cases Plaintiff cites on this point involve strikingly different circumstances.  For instance, *HLV, LLC v. Van Buren County* involved the plaintiff's failure to disclose fulsome invoices, despite seeking attorneys' fees. 775 F. App'x 204 (6th Cir. 2019).  Thus, the court concluded that defendant would be prejudiced if plaintiff could

13

Rather than engage with these specific factors, Plaintiff generally asserts that he is at a disadvantage because Take-Two received an "extra [] report." Mot. 8. Plaintiff, however, does not explain what testimony would even be contained in an additional report. Ultimately, expert reports are not briefs. The purpose of an expert report is to set forward the content of an expert's planned testimony and a complete account of the expert's opinions, including all information and data considered by the expert. Fed. R. Civ. P. 26; *Meirs v. Ottawa Cnty.*, No. 15 Civ. 866, 2018 WL 9815859, at *2 (W.D. Mich. Jan. 8, 2018). That is exactly what the Supplemental Reports do, and they did so before depositions of these experts, so Plaintiff had every opportunity to question Dr. Jay and Dr. Malackowski about them. Thus, allowing these reports only serves the policy of avoiding trials by ambush, unfair surprises, and inequitable advantages.

### D. Excluding the Supplemental Reports Would Prejudice Take-Two.

The precise implications of Plaintiff's Motion are unclear. To the extent Plaintiff seeks to preclude Take-Two's witnesses from testifying at trial about Plaintiff's Rebuttal Reports, granting the Motion would be prejudicial to Take-Two. It would mean that although Plaintiff's experts can testify about Take-Two's experts' data and conclusions and offer theories that were not disclosed in affirmative reports, Take-Two's experts cannot do the same with regard to Plaintiff's experts' data and conclusions. If this were the law, a party would simply *always* wait and submit affirmative opinions and new data as part of rebuttal reports, thereby preventing any testimony about them by an opposing expert. Plaintiff thus effectively seeks to shield his experts from criticism. This is particularly problematic in light of the *Solid Oak* case, given that Plaintiff

---

seek those fees. *Id.* at 214. In *Uszak v. Yellow Transportation, Inc.*, the initial opening report for plaintiff's expert failed to include basic information that could have been included, like the expert's qualifications and supporting data. No. 06 Civ. 837, 2007 WL 171982, at *1 (N.D. Ohio Jan. 18, 2007). This information was ultimately supplemented, but it was too late, such that defendant's expert could not properly analyze the expert report. *Id.* at *2. None of these facts are present here.

was well aware of Take-Two's experts' views before they submitted even their affirmative reports.

To the extent Plaintiff is not seeking to preclude all trial testimony on these subjects, granting the Motion is contrary to the underlying purpose of Rule 26, as it would mean that Plaintiff would prefer not to be placed on notice of the intended testimony of Take-Two's experts.

## IV. CONCLUSION

For the foregoing reasons, Take-Two respectfully requests that the Court deny Plaintiff's Motion to Exclude or Strike Defendants' Supplemental Expert Reports.

Dated: September 13, 2021

/s/ Dale M. Cendali

Dale M. Cendali (*pro hac vice*)
Joshua L. Simmons (*pro hac vice*)
Chris Ilardi (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Take-Two 2K Games, Inc. and Take-Two Interactive Software, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2021, a copy of the foregoing was filed

electronically. Notice of this filing was sent by operation of the Court's electronic filing system

to all parties indicated on the electronic filing receipt, and parties may access this filing through

the Court's system.

Dated: September 13, 2021                            */s/ Dale M. Cendali*
                                                      Dale M. Cendali

17