**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES HAYDEN, | ) | Case No. 1:17-cv-02635 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | |
| 2K GAMES, INC. and TAKE-TWO | ) | |
| INTERACTIVE SOFTWARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE OR STRIKE
DEFENDANT'S UNTIMELY AND IMPROPER REPLY EXPERT REPORTS**

**I. Introduction**

Defendants, 2K Games, Inc. and Take-Two Interactive Software, Inc. (collectively, "Take-Two") know their reply expert reports from Dr. Jay and Mr. Malackowski are improper and untimely and are now scrambling for an excuse to justify serving them. It is undisputed that Take-Two did not seek leave from the Court to serve the reply reports, despite this Court having established a specific schedule for *two* rounds of expert reports *based on Take-Two's own request.* For this reason and others set forth below and in Mr. Hayden's Opening Brief, the Court should exclude or strike the reply reports.

Astonishingly, Take-Two tries to justify its late reports by asserting that Mr. Hayden should have served his Rebuttal expert reports *before* Take-Two served its Opening reports because Take-Two served purportedly similar expert reports in a separate litigation in a different court that did not involve Mr. Hayden in any way. (Opp. Br. ("Opposition"), pp. 1–2, 9–10, Doc. No. 69.) Take-Two's argument not only implicitly acknowledges that Mr. Hayden's expert rebuttal reports are, indeed, proper Rebuttal reports that respond to Take-Two's Opening reports,

it also flies in the face of the law and common sense. Mr. Hayden has *no obligation* to submit Opening expert reports that rebut Take-Two's expert opinions *in another case* or attempt to *prebut* Take-Two's expert opinions in this case that had not yet even been disclosed.

Take-Two also asserts that it served its reply reports "on the timetable that Plaintiff himself requested in serving deposition notices for Dr. Jay's and Mr. Malackowski's deposition." (*Id.*, pg. 2.) This is blatantly incorrect. Mr. Hayden's deposition notices do not mention *anything* about reply or supplemental expert reports. They ask Take-Two to produce "documents or information not yet produced in this litigation" that "the deponent will rely on"—not new opinions.

Finally, Take-Two mischaracterizes its reply reports as "supplemental" reports under Fed. R. Civ. P. 26(e). But supplemental reports under Rule 26(e) are limited to circumstances in which the expert's initial disclosure "is incomplete or incorrect." Rule 26(e) does not permit untimely reply reports directed to bolstering the experts' Opening reports in the face of criticism. When Mr. Malackowski and Dr. Jay were asked in their depositions whether their opening expert reports were incomplete or incorrect, neither identified anything incomplete or incorrect. Take-Two's reply reports are simply untimely reports designed to rehabilitate their Opening expert reports in the face of criticism. This is improper.

Take-Two proposed the expert discovery schedule that this Court adopted and did not propose reply reports. Applying the same "foresight" rationale that Take-Two imposes on Mr. Hayden would suggest that Take-Two should have anticipated that it might want the opportunity to reply to Mr. Hayden's Rebuttal reports. But Take-Two did not propose or ever *mention* reply expert reports to Mr. Hayden or the Court during scheduling discussions. Thus, reply expert reports were not permitted in the Court's April 29 scheduling Order. Nevertheless, Take-Two

served two reply reports without leave of Court. These reply reports are untimely, improper, and are not supplemental reports under Rule 26(e). They should thus be excluded or stricken.

**II.     Mr. Hayden's Rebuttal Reports were Proper and Timely Served.**

Take-Two's claim that it was "improper" for Plaintiff to "strategically wait[] until the rebuttal report deadline to disclose two of its experts and file an additional report from its opening expert" (Opp. Br., pg. 2) both mischaracterizes Mr. Hayden's Rebuttal expert reports and seeks to rewrite the Parties' burdens of proof in this case, contrary to the law. Moreover, the timing of Mr. Hayden's expert disclosures conform to the Court's scheduling Order, unlike Take-Two's improperly submitted "supplemental reports."

> A. It is *Defendants'* burden to prove their affirmative defenses and to apportion profits attributable to the Asserted Works, *not* Mr. Hayden's.

Take-Two's Opposition transparently attempts to turn the law upside down regarding its own burdens of proof. It is *not* Mr. Hayden's burden to *dis*prove Take-Two's affirmative defenses or to apportion Take-Two's profits attributable to the Asserted Works. Upon proving infringement, Mr. Hayden "is entitled to recover the actual damages suffered by him [] as a result of the infringement, *and any profits of the infringer* that are attributable to the infringement . . . ." 17 U.S.C. § 504(b) (emphasis added). In Section 504(b), Congress made clear that, as the owner of the infringed copyright, Mr. Hayden "is required to present proof *only of the infringer's gross revenue* . . . ."[1] *Id.* (emphasis added); *see also, Balsley v. LFP, Inc.*, 691 F.3d 747, 767 (6th Cir. 2012) ("Section 504(b) unambiguously provides that the burden on the copyright owner is 'to present proof only of the infringer's gross revenue.' . . . .")

---

[1] Mr. Hayden must merely establish that the gross revenue number he identifies has "a reasonable relationship to the infringing activity." *See Balsley*, 691 F.3d at 767. This is a low bar. For example, in *Balsley*, the 6th Circuit found that the gross revenue from a particular issue of a magazine was reasonably related to infringement simply because the magazine contained the copyrighted photograph. *Id.* at 770. No party disputes that the Accused Games in this case include Mr. Hayden's Asserted Works.

3

Congress also set forth Take-Two's burden: "the *infringer* is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b) (emphasis added). Manifestly, it is *Take-Two's burden* to apportion any profits it believes are not attributable to infringement. *Balsley*, 691 F.3d at 769 ("When applied to the infringer as outlined in the statute, however, 'attributable to' means apportionment.").

Accordingly, Mr. Hayden disclosed one Opening expert opinion that addressed his burdens of proof related to proving damages. An Opening opinion from Michal Malkiewicz (1) identified Take-Two's net revenues from sales of the Accused Games, and (2) opined that the tattoo designs covered by Mr. Hayden's copyrights are a valuable feature of the Accused Games. (Ex. A, Malkiewicz Opening Expert Report Excerpts.)

Contrary to Take-Two's groundless claims, Mr. Hayden has no obligation to *prebut* (!) expert opinions Take-Two *might* disclose to meet *its* burdens of proof. Take-Two's conduct *in an unrelated case* can scarcely create such an obligation. (*See* Opp. Br., pg. 4, "As each of Take-Two's four experts were disclosed in [*Solid Oak Sketches, LLC v. 2K Games, Inc.*, 16-CV-724-LTS-SDA (S.D.N.Y.)], Plaintiff was well aware of what to expect in terms of the identity and opinions of Take-Two's experts in this follow on litigation.") Take-Two's argument willfully ignores the Parties' respective burdens of proof and flies in the face of common sense. For Take-Two then to suggest that *Mr. Hayden* was employing "sharp litigation tactics" in submitting Rebuttal expert reports after Take-Two submitted its Opening reports (Opp. Br., pg. 3) is truly outrageous.

It obviously makes no sense to suggest Mr. Hayden should have submitted *Opening* expert reports rebutting opinions *from another case*. Opinions from another case are neither

4

relevant nor admissible in this case. And any such preemptive opinion on behalf of Mr. Hayden would be purely speculative. Take-Two has absolutely no grounds to suggest such behavior is appropriate, let alone required, and should not proffer such an argument to this Court.

Moreover, if anything, there was reason to believe that Take-Two would not have wanted to submit the same—or even similar—opinions in this case. Less than a year ago, the Southern District of Illinois *denied* Take-Two's summary judgment motion that relied on nearly identical expert reports on the same issues at play in this case. *Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812, 823 (S.D. Ill. 2020). In *Alexander*, as in this case, a tattoo artist sued Take-Two for infringing her copyrights by reproducing tattoos in another of its video games. Take-Two moved for summary judgment that (1) it had an implied license to reproduce the tattoos, (2) the copying constituted fair use, (3) the copying was *de minimis*, and (4) the tattoo artist was not entitled to any damages. *Id.* at 820–824. Despite Take-Two's reliance on very similar expert reports from the same experts, the *Alexander* court **denied** Take-Two's motion for summary judgment *on all of those issues*.[2]

Take-Two, however, was conspicuously silent about the *Alexander* opinion in its Opposition. Instead, Take-Two touted the earlier, readily distinguishable decision in *Solid Oak Sketches v. 2K Games, Inc.* Of course, Take-Two failed to mention the critical fact that, although the *Solid Oak* court granted Take-Two's summary judgment motion, the opinion therein notes that "Plaintiff proffered *no* citations to record evidence to the extent it purported to dispute Defendants' documented proffers of undisputed facts in Defendants' 56.1 statement." *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 339, fn. 2 (S.D.N.Y. 2020) (emphasis

---

[2] In fact, on facts very similar to those in this case, the court *granted* the tattoo artist's partial motion for summary judgment on Take-Two's copying of the asserted works, holding, "[i]t is undisputed that Alexander holds valid copyrights for the five tattoos at issue and that Defendants copied her copyrighted works." *Id.* at 819.

added). The court repeatedly cited "undisputed evidence," which consisted solely of record evidence submitted by Take-Two. *Id.* at 345. In stark and obvious contrast, the factual record in this case is developed and clearly refutes Take-Two's affirmative defenses.

B. Mr. Hayden's Rebuttal Expert Reports properly *rebut* Take-Two's opening expert reports and do not justify Take-Two's untimely reply reports.

Mr. Hayden's Rebuttal reports directly rebut the opinions in Take-Two's Opening expert reports. Take-Two disclosed four expert reports directed at supporting its affirmative defenses and addressing its burden on damages—i.e., apportioning the damages that, in its view, are attributable to the Asserted Works. These disclosures included:

1. A report from Take-Two's self-described tattoo expert,[3] Dr. Nina Jablonski, who opined, among other things, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. B, Jablonski Opening Expert Report Excerpts.)

2. A report from Take-Two's video game expert,[4] Dr. Ian Bogost, who opined, among other things, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. C, Bogost Opening Expert Report Excerpts.)

---

[3] Mr. Hayden disagrees that Dr. Jablonski qualifies as an expert for many of the opinions she disclosed in this case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[4] Mr. Hayden disagrees that Dr. Bogost qualifies as an expert for many of the opinions he disclosed in this case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3. A report from Take-Two's survey expert, Dr. Deborah Jay, who disclosed results from a flawed survey she conducted and opined that, according to the survey, "there is no link between the sales of the NBA 2K video games and their depiction of the tattoos on LeBron James, Danny Green, or Tristan Thompson." (Ex. D, Jay Opening Expert Report Excerpts.)

4. A report from Take-Two's damages expert, Mr. Malackowski, who (1) calculated Take-Two's alleged profits generated from the Accused Games, and (2) opined that, based on the Jay survey, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. E, Malackowski Opening Expert Report Excerpts.)

In turn, Mr. Hayden disclosed timely Rebuttal opinions from three experts directly addressing the opinions disclosed in Take-Two's opening reports, including:

1. A Rebuttal report from an economic expert, Dr. Justin Lenzo, who opined that, (1) contrary to the Jay and Malackowski Opening reports, Mr. Hayden's Asserted Works do significantly contribute to the value of the Accused Games, (2) contrary to the Malackowski, Jablonski, and Bogost Opening reports, tattoo artists already license their designs for reproduction in various media contexts and that if video game producers would acknowledge copyrights and that licenses are required to reproduce tattoos in video games, a market for licensing them in video games is very likely to form, and (3) Dr. Jay's survey lacks any inferential power because of important flaws in the survey's design and wording of the questions. (Ex. F, Lenzo Rebuttal Report.)

2. A Rebuttal report from a survey expert, Dr. H. Tolga Bilgicer, who (1) identified significant flaws in the Jay survey that render it incapable of measuring the parameters she set out to measure, (2) conducted a survey fixing the flaws in the Jay survey, and (3) based on the results of that survey, opined that realism of tattoos on the avatars of NBA players in NBA 2K games are a reason that consumers purchase the Accused Games. (Ex. G, Bilgicer Rebuttal Report Excerpts.)

3. A Rebuttal report from previously disclosed damages expert, Mr. Malkiewicz, who opined that (1) Mr. Malackowski's profit calculation in his Opening report was erroneous and unreliable, and (2) contrary to Mr. Malackowski's opinion, a substantial portion of Take-Two's profits are attributable to the Asserted Works. (Ex. H., Malkiewicz Rebuttal Report Excerpts.)

Given that these Rebuttal reports directly respond to opinions disclosed in Take-Two's Opening reports, Mr. Hayden could not have served them earlier.[5] Although Take-Two claims that these reports contain "affirmative opinions," Take-Two declines to explain what that actually means, let alone explain why Mr. Hayden supposedly had a burden to disclose these opinions in an Opening report. To the extent Mr. Hayden's Rebuttal reports contain "affirmative opinions," they are limited to opinions that *disagree* with and were *necessitated by* the opinions disclosed in Take-Two's Opening reports. For example, Dr. Lenzo's Rebuttal opinions, including on the potential for a market to form for licensing tattoos in video games, were necessitated by Take-Two's several unfounded Opening opinions on the lack of a market for licensing tattoos. Likewise, Dr. Bilgicer's Rebuttal opinions, which point out the flaws in Dr.

---

[5] Take-Two suggests that Mr. Hayden's Rebuttal reports are somehow improper because he retained experts before receiving Take-Two's Opening reports. (Opp. Br. 5–6.) This is clearly irrelevant and does not change the fact that the Rebuttal reports are directed at *rebutting* Take-Two's Opening reports.

8

Jay's survey and presents the results of a proper survey, were necessitated by Take-Two's unfounded opinions that there is *no link* between the Asserted Tattoos and the profits of the Accused Games (presumably to support Take-Two's burden to apportion the profits from its infringement). Similarly, Mr. Malkiewicz's Rebuttal opinions were necessitated by Mr. Malackowski's erroneous and incomplete profits calculation and apportionment opinions.

Mr. Hayden's Rebuttal reports are limited to proper Rebuttal opinions and were served by the Court-ordered July 1, 2021 deadline. Mr. Hayden's Rebuttal reports thus comply with the Court's Order. These proper reports in no way entitle Take-Two to unilaterally serve its untimely and improper reply reports, which are not permitted by, and indeed violate the Court's scheduling Order.

**III.     Take-Two proposed the expert report schedule—*without* reply reports—and the Court entered same as an Order Under Rule 26.**

Take-Two proposed the expert discovery schedule that the Court adopted, and the Court's Order provides only for Opening and Rebuttal reports.

- **Opening Expert Reports Due:** May 27, 2021
- **Rebuttal Reports Due:** July 1, 2021
- **Close of Expert Discovery**: August 26, 2021

(Joint Status Report, Doc. No. 57; April 29, 2021 Court Order.)

Reply expert reports are not unheard of. But such a third round of expert disclosures should be considered and addressed *prior to* adoption of an expert discovery scheduling order—not added unilaterally by one party for its sole and unfair advantage. For example, the Parties in *Parker-Hannifin Corp. v. Baldwin Filters, Inc.*, 1:07cv00238 (N.D. Ohio), before this Court, contemplated a reply round of reports in its Rule 26(f) report (Ex. I) and proposed stipulated scheduling order (Ex. J). Building this round of reports into the schedule allows for the orderly,

9

fair *exchange* of reports and allows the experts to consider reply reports before their depositions—unlike what happened here. Mr. Hayden's experts did not have an opportunity to reply to Take-Two's Rebuttal reports or even consider Take-Two's reply reports before their depositions.

For example, Dr. Bilgicer did not have a chance to consider Dr. Jay's reply report before his deposition, despite the Jay reply report being almost entirely directed to Dr. Bilgicer's opinions. So when questioned on issues raised in the Jay reply report (submitted after his deposition), Dr. Bilgicer had no idea that Take-Two was "sand bagging" and really intending to file an unauthorized reply report on the same topics for which he was being deposed. What is more, the Jay reply report itself then *cites Dr. Bilgicer's deposition testimony*. (Ex. K, Jay Supplemental Report, pp. 31, 34, fns. 40, 47.) This kind of gamesmanship and clear prejudice is what a court-ordered schedule is meant to preclude. If this conduct were permitted, it would "lead to endless rebuttal reports disguised as supplements." *Kuklock v. Nevada Dept. of Transp.*, No. 3:19-cv-00369-LRH-CLB, 2020 WL 7081582, at *3 (D. Nev. Dec. 2, 2020).

Take-Two nonsensically faults Mr. Hayden for not foreseeing and *pre*butting Take-Two's Opening expert reports based on reports submitted in another case. But holding Take-Two to its own flawed logic, Take-Two should have foreseen its apparent need for a reply round of expert reports. For whatever reason, however, Take-Two never proposed that this Court include reply reports in the schedule. Rather, Take-Two simply helped itself to a one-sided round of expert reports by submitting improper "supplemental reports" in the midst of expert depositions. This is improper, prejudices Mr. Hayden, and violates the Court's Order.

Take-Two's assertion that Mr. Hayden's deposition notices reflected his "request" and assent that Take-Two serve *new expert reports* 10 days before such experts' depositions (and

*after* or mere *hours* before deposing Mr. Hayden's experts) is farcical. Mr. Hayden's deposition notices state, "To the extent the deponent will rely on documents or information not yet produced in this litigation, [Take-Two is] further directed to produce those documents or that information as soon as it is available, and no less than ten calendar days prior to the date for the expected testimony." (Deposition Notice Exhibits to Opp. Br., Doc Nos. 66-1–66-2.) This request simply seeks "documents and information" that the experts will *rely on*; it obviously does not request or agree to *new opinions*. Contrary to Take-Two's hollow argument that its "supplemental reports" somehow comport with Rule 26 to alleviate surprise at trial, Take-Two's purported "supplemental reports" clearly violate Rule 26 and the Court's Scheduling Order. Fed. R. Civ. P. 26(e) ("A party . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is *incomplete or incorrect* . . . .") (emphasis added).

**IV.  Take-Two's reply reports are not proper "supplemental" reports under Rule 26(e).**

Implicitly acknowledging that the Court's Order does not allow reply expert reports, Take-Two tries to shoe-horn its reports in with Rule 26(e); but Take-Two's reply reports are not proper Rule 26(e) supplemental reports.[6] Rule 26(e) requires supplementation "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). In their depositions, neither Dr. Jay nor Mr. Malackowski identified any mistake or incomplete aspect of their respective Opening reports. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[6] Take-Two's claim that "Plaintiff tellingly ignores Rule 26(e)" (Opp. Br., pg. 9, fn. 3) is demonstrably wrong. Page 2 of Mr. Hayden's Motion (Doc. No. 64-1) states, "And although the Federal Rules provide that a party may supplement its disclosures if the information is incomplete or incorrect, (*see* F.R.C.P. Rule 26(e)(1)), an expert witness is not entitled under the Rules to serve a supplemental report in a transparent attempt to rehabilitate their opinions 'after weaknesses in the expert's prior testimony have been revealed.' *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 681 (6th Cir. 2011); *Pride*, 218 F.3d at 579; *Baker v. Chevron U.S.A. Inc.*, 533 Fed.Appx. 509, 520 (6th Cir. 2013)."



(Ex. O, Malackowski Dep., 21:15–22:5.)

(Ex. P., Jay Dep., 95:5–19.)

(*Id.* at 96:15–21.)

To the extent Take-Two's justification for their reply reports is the "new information" disclosed in Dr. Bilgicer's survey, Take-Two's reply reports go well beyond addressing the Bilgicer survey. Most of Dr. Jay's and Mr. Malackowski's reply reports are dedicated to

bolstering their Opening opinions in light of the well-reasoned criticisms found in Mr. Hayden's Rebuttal reports.[7] "A supplemental expert report that states additional opinions or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)." *Obesity Research Institute, LLC v. Fiber Research International, LLC*, Case No. 15-cv-595-BAS(MDD), 2017 WL 3335734, at *3 (S.D. Cal. Aug. 4, 2017).

For example, a substantial portion of Dr. Jay's reply report solely attempts to rehabilitate her Opening survey opinion in response to Dr. Bilgicer's and Dr. Lenzo's criticisms. Dr. Jay dedicated pages 4–22 of her reply report solely to responding to Dr. Bilgicer's and Dr. Lenzo's criticisms, merely attempting to rehabilitate her Opening opinion. In fact, Dr. Jay cites entirely new sources to bolster her opinions disclosed in her Opening report. (Ex. K, Jay Supplemental Report, p. 13, fn. 13; p. 15, fn. 17.) Take-Two does not even contend that these portions of Dr. Jay's supplemental report address "new data."

Likewise, Mr. Malackowski's reply report is also dedicated to bolstering his Opening report and not addressing any so-called "new data." For example, less than two pages of Mr. Malackowski's report (portions of pp. 8–9) are directed to Mr. Malkiewicz's opinions related to the Bilgicer survey. (Ex. M, Malackowski Supplemental Report, pp. 8–9.) Rather, the majority of Mr. Malackowski's reply report tries to rehabilitate the errors in his incomplete assessment of Take-Two's revenue and cost data, as identified by Mr. Malkiewicz, and his incorrect opinion

---

[7] The cases Take-Two cites that purport to justify their reply reports are factually distinct. For example, *Cason-Merenda v. Detroit Med. Ctr.*, No. 06 Civ. 15601, 2013 WL 1721651, at *8, n. 9 (E.D. Mich. Apr. 22, 2013), involved a Daubert motion to exclude a supplemental report, and nothing in the opinion indicates that the report was untimely or otherwise improper—indeed, it was fashioned a "rebuttal report." In *Everlight Elecs., Co. v. Nichia Corp.*, No. 12-cv-11758, 2014 WL 3925276 (E.D. Mich. Aug. 12, 2014), the court allowed a supplemental report because it addressed *new* information and theories based on data disclosed in a belatedly produced spreadsheet—unlike in this case. In *Scott v. Abernathy Motorcycle Sales, Inc.*, No. 1:18-cv-01077, 2021 WL 829710 (W.D. Tenn. Mar. 4, 2021), the court allowed a supplemental report after the plaintiff changed his own liability theory and the court construed the supplemental report as a proper rebuttal report served under the Court-ordered deadlines.

related to the ███████████████████████████████████, as rebutted by Dr. Lenzo.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████

In their eminently valid criticisms of Mr. Malackowski's reports, neither Mr. Malkiewicz nor Dr. Lenzo rely on any facts or information not available to Mr. Malackowski when he submitted both his Opening and his Rebuttal reports. In fact, Take-Two's claim that Dr. Lenzo's report "rel[ies] on Dr. Bilgicer's new survey as support," is a *complete fabrication*. Dr. Lenzo's Rebuttal report does not even *mention* the Bilgicer survey or list it in his documents considered. (Ex. F, Lenzo Rebuttal Report.) This bald and knowing misrepresentation to the Court is unconscionable.

Take-Two's allegation that Mr. Malkiewicz "changed" his opinions and "made a completely new profit calculation" are also incorrect and cannot justify Mr. Malackowski's improper reply report. (Opp. Br., p. 6, fn. 2.) Take-Two mischaracterizes Mr. Malkiewicz's cost analysis in his Rebuttal report as "changed" or "new," but fails to acknowledge that in his Opening report, Mr. Malkiewicz was determining the total profits resulting from the Accused Games as required by 17 U.S.C. § 504. In his Rebuttal report, Mr. Malkiewicz identified several critical errors in Mr. Malackowski's attempt to apportion the profits attributable to the Asserted Works. Mr. Malkiewicz addressed those errors and provided an appropriate apportionment opinion. In doing so, he applied the costs that he determined, as an economic expert, would apply to the incremental sales attributable to the value of tattoos in the game. (Ex. Q, Malkiewicz Dep., 170:2–174:23.)

14

In short, Mr. Malkiewicz did not address apportionment in his Opening report, as it is ***not*** Mr. Hayden's burden to do so. In his Rebuttal report, he provided a Rebuttal opinion in response to Mr. Malackowski's erroneous apportionment opinion. These are two different opinions, so it is nonsensical to claim that "Mr. Malkiewicz's changed opinions evidently were intended to inflate his original damages opinion." (Opp. Br. pg. 6, fn. 2.)

## V. Conclusion.

Take-Two proposed a schedule for expert reports, which this Court adopted in its Order of April 29, 2021. Apparently surprised by the Rebuttal reports served on behalf of Mr. Hayden, Take-Two then unilaterally determined that its interests would be better served by repudiating the Court's scheduling Order and serving additional expert reports aimed at rehabilitating its own experts' Opening opinions. Take-Two compounded the obvious prejudice to Mr. Hayden by serving the first of these illegitimate reports *after* the deposition of Dr. Bilgicer whose Rebuttal opinion was critiqued therein, intentionally precluding his opportunity to even review same. Take-Two similarly served its second illegitimate report mere hours before the deposition of Dr. Lenzo whose Rebuttal opinion was critiqued therein, employing the same timing tactic to preclude him from reviewing the report before his deposition.

In attempting to justify such illegitimate reports after the fact, Take-Two's Opposition baldly misrepresents salient facts to this Court and improperly attempts to rewrite the Copyright Act to transfer *its* burden of proof on the apportionment of profits from its infringing conduct to Mr. Hayden. Take-Two's transparent gamesmanship should not be countenanced.

Take-Two's illegitimate expert reports should be excluded or stricken

Dated: September 20, 2021          Respectfully submitted,

By: */s/ Andrew Alexander*
Daniel McMullen (Ohio Bar No. 0034380)
Andrew Alexander (Ohio Bar No. 0091167)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114-1607
Telephone:  (216) 622-8200
Facsimile:  (216) 241-0816
dmcmullen@calfee.com
aalexander@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114-1607
Telephone:  (216) 622-8200
Facsimile:  (216) 241-0816
kpinter@calfee.com

## CERTIFICATE OF SERVICE

    I hereby certify that on September 20, 2021, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

                                                                      */s/ Andrew Alexander*
                                                                      One of the attorneys for Plaintiff