**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES HAYDEN, | ) | Case No. 1:17-cv-02635 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | **PUBLIC REDACTED VERSION** |
| 2K GAMES, INC. and TAKE-TWO | ) | |
| INTERACTIVE SOFTWARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION AND BRIEF IN SUPPORT TO EXCLUDE THE EXPERT TESTIMONY OF
DR. NINA JABLONSKI**

Plaintiff James Hayden ("Hayden") moves the Court to preclude Defendants (2K Games, Inc. and Take-Two Interactive Software, Inc., collectively "Take-Two) from presenting, relying on, or otherwise submitting Dr. Nina Jablonski's opinions expressed in her Expert Report and Declaration (Exhibit A) in this case, for the reasons set forth below.

**I.    INTRODUCTION**

Dr. Nina Jablonski's expert report is riddled with improper legal conclusions on ultimate issues in this case and completely unsupported speculation. It should be excluded. █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ She has no expertise on these topics and relies on pure speculation for her opinions.

Dr. Jablonski is not a lawyer, knows little-to-nothing about copyright law, and ███████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ Yet, she makes

sweeping, unqualified legal conclusions about copyrights at the heart of this case. ████████

████████████████████████████████████████████████████████████████

████████████████████████ The Court cannot allow her to deliver opinions on the

ultimate legal issues in this case—she is not qualified, such opinions are not proper expert

testimony, and they would be highly prejudicial.

Dr. Jablonski is also not an all-encompassing tattoo expert. Her experience is limited to

the ████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████ She is simply not qualified to offer these opinions and they should thus be excluded.

Moreover, Dr. Jablonski's opinions are not based on any facts or data. For example, Dr.

Jablonski proclaims ████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████████ Not only is

Dr. Jablonski's reasoning on this topic convoluted and bizarre, but it is also without any factual

support. These opinions should also be excluded.

Finally, Dr. Jablonski's opinions regarding ████████████████████████ are also unsupported by any facts or research and she is undoubtedly unqualified to deliver such economic opinions. She has no training in business, economics, or marketing. Nor did she investigate this topic other than read litigation-related materials. Accordingly, Dr. Jablonski's opinion should be excluded in full.

## II.   LAW AND ARGUMENT

Although Federal Rule of Evidence 702 allows an expert witness to testify in the form of an opinion, the testimony must be both relevant and reliable to be admissible. The trial court thus acts as the "gatekeeper" in determining whether purported expert testimony meets this standard of relevance and reliability. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (holding that "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"). The gatekeeping requirement is "to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*  The Court should close the "gate" entirely with respect to Dr. Jablonski.

At the outset, the purported expert must be "qualified . . . by knowledge, skill, experience, training or education." Fed. R. Evid. 702. And in determining whether the expert testimony is both relevant and reliable, courts, including the Sixth Circuit, routinely assess four criteria rooted in FRE 702 that must be met:

1. The expert's scientific, technical, or other specialized knowledge must help the trier of fact to understand the evidence or to determine a fact in issue.

2. The expert testimony must be based on sufficient facts or data.

3

3.  The expert testimony must be the product of reliable principles and methods.

4.  The expert must have reliably applied the principles and methods to the facts of the case.

*Hamilton County Emergency Comms. District v. Level 3 Comms., LLC*, 845 Fed. Appx. 376, 383

(6th Cir. 2021) (*quoting* Fed. R. Evid. 702(a)–(d)); *see also Madej v. Maiden*, 951 F.3d 364, 369

(6th Cir. 2020). If purported expert testimony does not meet one of these criteria, it must be

excluded under *Daubert* and Rule 702. *Hamilton Cty.*, 845 Fed. Appx. at 383.  In this case, Dr.

Jablonski fails to meet *any* of these four criteria as set forth in detail below.

**A.  Dr. Jablonski is not a lawyer, and her opinions related to ultimate legal
     questions in the case should be excluded.**

Dr. Jablonski's report is riddled with legal conclusions, including about whether Mr.

Hayden owns or transferred "rights" in his asserted tattoos. But Dr. Jablonski is completely

unqualified to give legal opinions, ███████████████████████████████████

████████████████  What is more, these legal issues, which are central to several of Take-Two's

defenses, are ultimately for this Court or the jury to decide—not an anthropology expert. For this

reason alone, these opinions are improper and should be excluded.

Indeed, copyright ownership is one of two elements of copyright infringement.

*Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004). And whether Mr. Hayden

licensed those rights is at the heart of Take-Two's implied license defense (Ex. C, Take-Two's

Seventh Amended Responses to Interrogatory No. 11, pp. 30–31.)[1] These legal issues (on which

Dr. Jablonski directly opines) are at the heart of this case.

---

[1] In the Sixth Circuit, courts look to the totality of the circumstances to examine the parties' intent to determine if an implied license exists. *Jeffrey A. Grusenmeyer & Assocs. v. Davison, Smith & Certo Architects, Inc.*, 212 Fed. Appx. 510, 514 (6th Cir. 2007); *see also Best Hand Entm't LLC v. Wideawake-Deathrow Entm't, LLC*, No. 12-cv-12786, 2014 WL 1304623, at *7 (E.D. Mich. Mar. 31 2014).

The Sixth Circuit and the Northern District of Ohio, including this Court, routinely exclude experts that opine on ultimate legal issues in the case. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (holding that the rules "requir[e] exclusion of expert testimony that expresses a legal conclusion"); *Summerland v. County of Livingston*, 240 Fed. Appx. 70, 81 (6th Cir. 2007) (affirming decision to strike entire expert report because it was "riddled with legal conclusion"); *Battaglia v. U.S.*, No. 1:07CV778, 2010 WL 11561513, at *4 (N.D. Ohio Sep. 9, 2010) (J. Boyko) (excluding expert opinion that informed consent was not "legally effective"); *In re Commercial Money Center, Inc.*, 737 F. Supp. 2d 815, 829 (N.D. Ohio 2010) ("this Court will not permit expert witnesses to express legal conclusions, or opine as to ultimate issues of fact").[2] Dr. Jablonski's report should be excluded in its entirety for this reason alone.

In her report, Dr. Jablonski she makes bold, unambiguous legal declarations. For example, Dr. Jablonski declares that:



---

[2] *See also, Simpson v. Johnson & Johnson*, Case No. 5:20-cv-1237, 2020 WL 5630036, at *4 (N.D. Ohio Sep. 21, 2020); *In re National Prescription Opiate Litigation*, Case No. 1:17-md-2804, 2019 WL 3934490, at *4 (N.D. Ohio Aug. 20, 2019).



(*Id.* at 78:7–79:23.) Dr. Jablonski toed this line throughout the deposition, embracing her

unqualified role as the arbiter on the ultimate legal issues in this case:



It is not Dr. Jablonski's role to conclude whether Mr. Hayden owns a valid copyright in

the tattoos he inked or whether he relinquished those rights to the athletes. If necessary, these are

ultimate legal and factual issues for the Court or the jury to decide. *See Berry*, 25 F.3d at 1353.



Moreover, she is completely unqualified to give such opinions. █████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███ Dr. Jablonski's unqualified opinions on legal issues in this case should be excluded.

**B.  Dr. Jablonski is an anthropologist with a focus on primate evolution and the evolution of skin; she is not an expert on general topics related to tattoos.**

Dr. Jablonski's opinions in her report far exceed her very limited expertise in tattoos. Dr. Jablonski is an anthropology professor at Penn State University. Anthropology is a wide-ranging subject that, in Dr. Jablonski's case, barely touches tattoos. ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████████

Dr. Jablonski's research and knowledge related to tattoos is virtually non-existent. ███

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

7

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

But Dr. Jablonski's opinions go far beyond her narrow knowledge of skin as a mode of social communication or the history and meaning of tattoos. Her opinions run the gamut into areas in which Dr Jablonski admitted multiple times in her deposition she has no education or expertise. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] To the extent Dr. Jablonski provides *any* opinions within her expertise (*i.e.*, on the evolution of or social meaning of tattoos), they are a figurative footnote of her overall report and are not relevant to any issue in this case. This is yet another reason Dr. Jablonski's expert report should be excluded—she is not qualified to give her opinions.

**C. Dr. Jablonski's opinions about tattoo artists' and clients' expectations related to tattoo ownership and rights should be excluded, as she has no expertise in this area and her opinions aren't based on facts or data.**

In addition to making outright legal proclamations about the rights of tattoo artists and their tattooed clients, Dr. Jablonski makes similar unfounded declarations about what tattoo artists and their clients *expect* or *intend* related to those rights. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████ From here, Dr. Jablonski extrapolates various opinions about the expectations and intentions *tattoo artists* have about *legal rights* in the tattoos. But Dr. Jablonski has no qualifications or factual basis to make these extrapolations.

It is well settled that an expert opinion cannot be based on subjective belief or unsupported speculation. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993) ("the word 'knowledge' connotes more than subjective belief or unsupported speculation"); *Lyngaas v. Ag*, 992 F.3d 412, 431 (6th Cir. 2021). The expert's testimony must be "based on sufficient facts or data." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 595; *Hamilton Cty. Emergency Comms. District v. Level 3 Comms., LLC*, 845 Fed. Appx. 376, 383 (6th Cir. 2021). Dr. Jablonski does not base her opinions on sufficient facts or data—it is mere speculation.

Dr. Jablonski's unfounded opinions in Section IV of her report are best summarized by her opinion in paragraph 36 of her report: ████████████████████████

████████████████████████████████████████████████

████████████████ Dr. Jablonski's research on this topic is, admittedly, limited to reading litigation-

driven declarations from four tattoo artists in the *Solid Oak Sketches* case. (*Id.*) This does not

qualify her as an expert on this issue or amount to sufficient facts or data. ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ Other than that, Dr. Jablonski has done *nothing* to

research the expectations of tattoo artists related to copyright ownership or licensing:

████████████████████████████████████

███████████

████████████████████████████████████████████

███████████

█████████████████████████████████████████████

███████████

██████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Nor has she cited any academic or industry literature that

10

would establish the "norms" she claims are prevalent in tattooing. She simply has no factual

basis for these opinions and they should be excluded.

**D. Dr. Jablonski's opinions about how copyright ownership of tattoos would affect the tattoo industry should be excluded, as she has no expertise in this area, she has no business education or experience, and her opinions aren't based on facts or data.**

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████ Dr.

Jablonski is, again, stepping *far* outside her expertise and relying on mere speculation. Dr.

Jablonski has no business experience, education, or training and is absolutely unqualified to

render such an opinion. (Ex. B, 92:10–94:23.)

█████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ This is all speculation.

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ Moreover, Dr. Jablonski has not researched this

issue and her rationale is purely speculative. For example, she cites *nothing* to support any of her

claims in paragraphs 41–44. And when pressed to explain why requiring a video game company

11

to seek permission from tattoo artists before reproducing tattoos would cause these harms, Dr. Jablonski's rationale completely broke down.

As to the first harm—potential clients being "inhibited" from getting tattooed—the "change" in norms that Dr. Jablonski describes does not fit with the facts in this case. An expert's testimony must "fit" with the facts to be admissible. *U.S. v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001). ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████ Mr. Hayden is not making any claims against the athletes. Mr. Hayden asserts that *Take-Two* needed Mr. Hayden's permission to reproduce the tattoos in digital avatars in the game.

But when pressed about how *those* circumstances—in which video game companies need permission from artists to reproduce tattoos—would lead to clients being inhibited from getting tattoos, Dr. Jablonski's reasoning changed from her opinions in her report. ███████████
█████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████
████████████████████

When probed about her factual basis for asserting that such record keeping would unduly burden tattoo artists, Dr. Jablonski's explanation was convoluted and unsupported. ███████████
███████████████████████████████████████████████
███████████████████████████████████████████████

12

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████ Needless to say, this kind of

casual window-shopping is not a reliable method and cannot provide not sufficient data to justify

Dr. Jablonski's conclusion that requiring video game companies to seek permission from tattoo

artists would severely harm the tattoo industry.

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████ Indeed, Dr. Jablonski cites no support

for her opinions—she could not even coherently explain her logic. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

13

████████████████████████████████ Accordingly, Dr. Jablonski's opinions about speculative harm to the tattoo industry should be excluded.

**E. Dr. Jablonski's opinions about the market for licensing tattoos should be excluded because she has no expertise in this area and her opinions aren't based on facts or data.**

In Section VII of her report, Dr. Jablonski makes several unfounded claims about the market for licensing tattoos. Like so many of Dr. Jablonski's opinions, she goes beyond her expertise and makes assertions with no factual basis—in fact, several of her assertions contradict the very facts she cites in her report. These opinions should thus be excluded.

███████████████████████████████████████████████

██ ████████████████████████████████████████████

████████████████████████████████ These claims are groundless and, in many cases,, simply defy the very facts she cites.

█████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ This paragraph lacks *any* factual

support. ███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**F. Dr. Jablonski's remaining opinions are not relevant to any issues in the case and/or are not proper subject matter for expert testimony and should be excluded.**

Dr. Jablonski's remaining opinions are either not relevant or not proper subject matter for expert testimony and should thus be excluded. ████████████████████████

████████████████████████████████████████████ These

opinions have nothing to do with the case and, moreover, are not the proper subject matter of

expert testimony. ████████████████████████████████████

█████████████████████████████ But Dr. Jablonski has no insight into these

athletes' state of minds. Indeed, she cannot possibly have any personal knowledge of these

persons' state of minds. These opinions should also be excluded.

## III. CONCLUSION

For the reasons stated above, Dr. Jablonski's opinions set forth in her Expert Report and

Declaration (Ex. A) should be excluded in full.

---

[4] Purported expert testimony may be excluded under Rule 403, which "permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .'" *Daubert*, 509 U.S. at 595. In fact, courts have "more control over experts than over lay witnesses" in assessing the applicability of Rule 403 because of the risk that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Id.* In addition to being unqualified and not relying on sufficient facts or data, Dr. Jablonski's opinion should also be excluded because it will only confuse the jury.

Dated: October 25, 2021

Respectfully submitted,

By: */s/ Andrew Alexander*
John S. Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Andrew Alexander (Ohio Bar No. 0091167)
Dustin Likens (Ohio Bar No. 0097891)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
aalexander@calfee.com
dlikens@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2021, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

*/s/ Andrew Alexander*
One of the attorneys for Plaintiff