**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES HAYDEN, | ) | Case No. 1:17-cv-02635 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | **PUBLIC REDACTED VERSION** |
| | ) | |
| 2K GAMES, INC. and TAKE-TWO | ) | |
| INTERACTIVE SOFTWARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION AND BRIEF IN SUPPORT TO EXCLUDE THE**
**EXPERT TESTIMONY OF DR. IAN BOGOST**

For the reasons set forth below, Plaintiff James Hayden hereby moves the Court to

preclude Defendants (2K Games, Inc. and Take-Two Interactive Software, Inc., collectively

"Take-Two") from presenting, relying on, or otherwise submitting the opinions of Dr. Ian Bogost

expressed in Sections "III(C)," "III(D)," and "III(E)" of his Expert Report and Declaration

(Exhibit A) in this case.

## I.  INTRODUCTION

Take-Two's so-called video game expert, Dr. Ian Bogost, disclosed an expert report with pervasive flaws, requiring the exclusion of several of his opinions. First and foremost, Dr. Bogost offers an opinion on how ████████ the Asserted Tattoos are in the Accused Games based on a contrived assessment of how ████████████████████. Dr. Bogost came up with this ████████ standard out of thin air without ████████████ ████████. Using this baseless ████████ standard, Dr. Bogost intentionally ignored various game modes and features (because they are not ████████ in his assessment) even though the Asserted Tattoos are highly visible for however long the user chooses. These opinions are not only devoid of factual support and outside Dr. Bogost's expertise, but the issue of how observable the Asserted Tattoos are in the Accused Games is not proper expert testimony—this factual issue is for the jury to decide. In addition, Dr. Bogost ventures far outside his "video game" expertise and offers an opinion about ████████████████████ ████. Dr. Bogost undeniably lacks the qualifications to render such an opinion—he does not hold a business or economics degree of any kind. These opinions should be excluded.

## II.  LAW AND ARGUMENT

Although Federal Rule of Evidence 702 allows a qualified expert witness to testify in the form of an opinion, such testimony must be the product of reliable methods that are reliably applied, based on sufficient facts and helpful to the trier of fact in order to be admissible. The trial court thus acts as the "gatekeeper" in determining whether purported expert testimony meets this standard of relevance and reliability. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (holding that "under the Rules the trial judge must ensure that any and all scientific testimony or evidence

admitted is not only relevant, but reliable"). The gatekeeping requirement is "to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

At the outset, the purported expert must be "qualified . . . by knowledge, skill, experience, training or education." Fed. R. Evid. 702. And in determining whether the expert testimony is sufficiently relevant and reliable, courts, including the Sixth Circuit, routinely assess four criteria rooted in FRE 702 that must be met:

1. The expert's scientific, technical, or other specialized knowledge must help the trier of fact to understand the evidence or to determine a fact in issue.

2. The expert testimony must be based on sufficient facts or data.

3. The expert testimony must be the product of reliable principles and methods.

4. The expert must have reliably applied the principles and methods to the facts of the case.

*Hamilton County Emergency Comms. District v. Level 3 Comms., LLC*, 845 Fed. Appx. 376, 383 (6th Cir. 2021) (*quoting* Fed. R. Evid. 702(a)–(d)). If purported expert testimony does not meet one of these criteria, it must be excluded under *Daubert* and Rule 702. *See Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020) (expert testimony "must pass muster under Rule 702").

In addition, purported expert testimony may be excluded under Federal Rule of Evidence 403, which "permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ' " *Daubert*, 509 U.S. at 595. In fact, courts have "more control over experts than over lay witnesses" in assessing the applicability of Rule 403 because of the risk that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Id.* (*quoting*

2

Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 1388 F.R.D. 631).

**A.  Dr. Bogost's Testimony Concerning** ████████████ **Should be Excluded**

On a baseless assumption about how ████████████████ ████, Dr. Bogost opines that ████████████████████████ ██████ Ex. A, heading at p. 38. But Dr. Bogost is neither qualified to render an opinion on ████████████████████████████ ███████████████ ████████████████████ nor are his opinions based on sufficient facts or data to support same. ████████████████████████ ████████████████████████████ ████████████████████████████ Dr. Bogost's opinions that rely on this fabricated ████████████ standard should be excluded.

> *1.  Dr. Bogost's Opinions Concerning "████████████ are Manifestly Unreliable Because They are Based on Insufficient Facts*

Under FRE 702, expert witness testimony must be based on sufficient facts or data, and it is within the court's discretion to determine whether there is any factual basis to support the conclusions an expert reaches. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146-47 (1997).

In Dr. Bogost's initial Expert Report and Declaration ("Initial Report," Exhibit A), he repeatedly refers to ████████████████████. For example: Ex. A, Initial Report, heading at p. 38 (████████████████); ¶ 97 (████████████████); ¶ 76 (████); ████████████); heading at p. 39 (████████████████); ¶ 77 (████████████); ¶

---

[1]  The "Accused Video Games" are NBA 2K16, NBA 2K17, NBA 2K18, NBA 2K19, NBA 2K20, NBA 2K21, NBA 2K22 and NBA 2K Mobile.  All of them were identified to Defendants in discovery and Plaintiff plans to move to amend the Complaint to add NBA 2K21 and NBA 2K22 to the others previously identified as infringing works in the Fourth Amended Complaint.

89 (██████████████████████████); ¶ 94 (██████████); and ¶ 107 (██████). He also references ████████████████████████ ████. For example: Ex. A, ¶ 6 (████████████; ¶ 7 (██████████); ¶ 54 (██████); n. 79 (██████████); ¶ 99 (████████████████); ¶ 100 (██████████████); ¶ 105 (████████████); and ¶ 107 (██████████).

Dr. Bogost's opinions about ██████████████████████████ ████ should be excluded because they are not actually based on *facts*, but simply manufactured out of whole cloth by him.  In generating his opinions about ██████████████ ████████████████████████████████████████ ████████████████████████████████ ████████████████████████████ When asked directly: ██████████████████████████████ ████████████████████████ Dr. Bogost responded: ████ ██████████████████████████████

Deposition of Ian Bogost, Ph.D. (Exhibit B) 180:6-13.  *See also, e.g.*, Ex. B, 179:5-11 (████ ██████████████████████████████████) and 186:11-18 (████ ████████████████████████████████).  Moreover, notwithstanding his pronouncements about ██████████████, Dr. Bogost denied that ██████████████████████████████ ██████ *See id.* at 188:25-189:6.

    Q.  ████████████████████████████ ████████████████████

\* \* \*

    A.  ████████████████████████

███████████████████████████

Put simply, Dr. Bogost's opinions about ███████████████████████████ ███████████████████████████████████████████ reflect nothing more than his own subjective conclusions reached for purposes of his role in *litigation;* they have **no** factual basis and are thereby inadmissible.  Accordingly, Dr. Bogost's opinions on ███████████████ ████████████████████████████████

        2.  *Dr. Bogost is Not Qualified to Testify About* ██████████████ *or* █████

When purporting to offer an "expert" opinion, it is not enough for a witness generally to be qualified in certain areas. Instead, for such testimony to be admissible, the witness must be qualified in the *specific* subject area that forms the basis of his opinion (*see, e.g.*, *Rheinfrank v. Abbott Labs., Inc.*, 680 Fed. App'x 369, 380 (6th Cir. 2017) (medical experts with no specialized training or professional experience not qualified to answer regulatory questions). "The issue… is not the qualifications of a witness in the abstract, but whether those qualification provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

As discussed above, in his Initial Report, Dr. Bogost offers numerous unsupported opinions about what constitutes ████████████████████████████ in the Accused Video Games. In light of his admitted failure to █████████████████████, his entire testimony on this topic, including opinions about ███████████████████████████████████ ██████████████, should be excluded. Dr. Bogost is not qualified in the specific subject area that would substantiate this testimony. He fails even to identify any specific source to substantiate his opinions about what constitutes ████████████████████████████████. Rather, his entire Initial Report is, generally, ███████████████████████████████████

Ex. A, ¶ 3.

When Dr. Bogost refers to █████████████ he is purportedly referring to █████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ███████████████ As an "expert" whose only personal experience with the Accused Video Games was undertaken to inform his opinions rendered in litigation, Dr. Bogost is simply not qualified to render an opinion on what constitutes █████████████████████████████ ███████████████████████████████████████████

While Dr. Bogost claims, *generally*, to be "qualified" on the basis of ████████████ ████████████████████████████████████████████████████, *see* Ex. A, ¶¶ 10-17, a witness is not an expert simply because he claims to be, *Pride v. BIC* Corp., 218 F.3d 566, 577 (6th Cir. 2000) (citing *In re Paoli RR Yard PCB* Litigation, 916 F.2d 829, 855 (3d Cir. 1990), and an expert witness must be qualified in the *specific* subject area that forms the basis of his opinions. *See Rheinfrank* at 380. Dr. Bogost does not claim to ████████████ █████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████████████████████████████ Further, the terms ██████████████████████████ do not appear anywhere on his 59-page CV, and it unclear if █████████████████████████████████████████████████ ██████████████[2] Indeed, it is entirely possible, perhaps even likely, that a *juror* would ████ ████████████████████████████████████████████████████. Asserted ████████

---

[2] Bogost did aver that ████████████████████████████████████████████████████████ ████████████████████ *See* Ex. B, 89:17-90:4.

██████████████████████████ generally, does not qualify Dr. Bogost to opine on all aspects of every video game. Thus, he is not qualified to opine on ████████████████ ████████████████████████████

For the foregoing reasons, Dr. Bogost's testimony about ███████████████ ██████████████████████████████████████████████ ████████████████ should be excluded at trial. The exclusion of Dr. Bogost's opinions on these issues is particularly critical because terms like ███████████████████— terms frequently used to describe the calculated result of an empirical analysis (e.g., calculating the "average" of something)—are all but certain to mislead the jury as to the nature of Dr. Bogost's opinions which, for the reasons noted, are *not* the result of reliable analysis based on *facts*.

**B. Dr. Bogost's Opinions Concerning the** ████████████████████ ████████████ **Should be Excluded as Improper and Unreliable**

Dr. Bogost's opinions about ███████████████████████████████ ████████████ are both unreliable because he uses unreliable methods and improper because his opinions invade the jury's role in determining questions of fact. Not only does he purport to *opine* on basic questions of fact (e.g., ██████████████████████████████████ ████████), but Dr. Bogost's "methodology" also ███████████████████████ ████████████. These flaws are fatal; his opinions should be excluded.

*1. Expert Opinion Testimony Concerning* ████████████████████ ████████████ *is Improper*

Under FRE 702, expert testimony must *help* (not replace) the trier of fact in understanding the evidence or determining facts at issue. Courts have found that although an expert may at times be permitted to opine about an ultimate issue of fact, this does not extend to

7

testimony that essentially tells the jury what legal result to reach. *See, e.g., United States v. Diaz,* 876 F.3d 1194, 1196-97 (9th Cir. 2017); *Jesa Enters. Ltd. V. Thermoflex Corp.,* 268 F.Supp. 3d 968, 973 (E.D. Mich. 2017); *Willis v. Allstate Ins. Co.,* 2014 WL 4804396, at *1 (S.D. Miss. Sept. 26, 2014). Furthermore, in distinguishing proper lay testimony from expert testimony, the Sixth Circuit has specified that "lay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007). If the testimony is directed solely to "lay matters," which a jury is capable of understanding and deciding without the expert's help, the opinion will be inadmissible. *See In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig*., 348 F. Supp. 3d 698, 718 (S.D. Ohio 2016).

In his Initial Report, Dr. Bogost opines, summarily, that  Ex. A, heading at p. 38. To support this conclusion, he asserts, for example:



- ███████████████████████████████████████ *Id.* at ¶ 76.
- ███████████████████████████████████████
  ██████ *Id.*
- ███████████████████████████████████████ *Id.*
- ███████████████████████████████████████
  ██████ *Id.* ██████ *Id.*

But these opinions are improper because they clearly result from "a process of reasoning familiar with everyday life," *not* from "a process of reasoning which can be mastered only by specialists in the field," and because they purport to decide ultimate issues (e.g., ██████ ███████████████████████████████████████ ) that essentially tell the jury what

legal result to reach (*e.g.*, ███████████████████).

As an initial matter, it would be preposterous to suggest that Dr. Bogost's testimony

concerning the ███████████████████████████████████

███████████████████████████████ Absent the empaneling of an

entirely *blind* jury, the jury is fully capable of reviewing the evidence (*e.g.*, gameplay footage,

screenshots from the Accused Video Games, etc.) and forming its own opinions about ████

████████████████████████

Dr. Bogost specifically asserts that ██████████████████████

██████████████████████████████ and that ██████

████████████████████████████████

████████████████████████████████

█████████████████████████████████████

████████████████████████████████

███ Ex. A, ¶ 76. As discussed above, *all* of Dr. Bogost's testimony about what constitutes an

██████████████ should be excluded. Moreover, in contradiction of the foregoing

pronouncements, Dr. Bogost admitted at his deposition that when the NBA players bearing the

Asserted Tattoos appear in the Accused Video Games, ██████████████████

██████████████████████████████████████

████████████████████████████████

Ex. B, 255:1-6. And, more importantly, a *jury* is entirely capable of drawing its *own* conclusions

about ████████████████████████████████

█████████████.

Dr. Bogost also specifically asserted that ████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████ and that ████████████████████

████████████████████████ Ex. A, ¶ 76. First, even if ███████████████████

███████████████████ were not subject to everyday, lay observation (which it clearly is), Dr.

Bogost's ████████ is fundamentally flawed and should be excluded because it simply

ignores the drastically shorter distance between a player of an Accused Video Game and his or

her computer, phone, or television, and the typical (much greater) distance separating fans and

NBA players (and their tattoos).[3] Second, aside from having practically no relevance to whether

the Tattoos are ████████ in the Accused Video Games, a jury is entirely capable of determining

████████████████████████████████████████ without the assistance of an

"expert."

Dr. Bogost's testimony about the extent to which ██████████████████████████

████████████████ (*i.e.*, Section "III(C)" of his Initial Report) should be excluded

because they are directed strictly to "lay matters" and they express improper and unfounded

conclusions (*i.e.*, ████████████████████) rather than help the *trier of fact* to determine

facts at issue, as required under FRE 702.

2. *Dr. Bogost's Opinions Concerning* ████████████████████████
████████████████████ *are Unreliable Because They Use*
*Unreliable Methods*

---

[3] The apparent size of an object is directly proportional to its actual size and inversely proportional to its distance from the eye. Apparent Size = Actual Size / Distance. *See* "Why Do Things Appear Smaller the Farther You Are from Them?" *Wonderopolis*, https://wonderopolis.org/wonder/why-do-things-appear-smaller-the-farther-you-are-from-them. To find the actual size of a distant object, you multiply its apparent size by its distance. Conversely, you can divide the known actual size of a distant object by its measured apparent size to arrive at the distance. For example, assuming that the average NBA fan sits 100 feet from Lebron James at any given time and that the average player of the Accused Video Games sits the recommended 2 times the diagonal screen measurement from his/her television (86" for a 43" tv), *see* Phillips, Rachael. "TV Viewing Distance: How Far Away Should You Sit?" *TechRadar*, TechRadar, 10 Apr. 2021, https://www.techradar.com/news/tv-viewing-distance, Lebron James' character need only be 5.8" tall to *appear* the same height as the actual Lebron James who is 6'9" tall. This is well within the height (3.6" to 8") that Bogost admits the characters would appear!

Under FRE 702, expert testimony must be the product of reliable principles and methods *and* the expert must have reliably applied the principles and methods to the facts of the case. Although the reliability analysis of FRE 702 focuses on the methodology underlying an expert's opinion rather than the expert's ultimate conclusions, *see Daubert* at 595, "conclusions and methodology are not entirely distinct from one another," particularly where "there is simply too great an analytical gap between the data and the opinion proffered." *Gen Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).



As discussed above, in his Initial Report, Dr. Bogost contends that ███████████ ████████████████████████████████████████████████ ████████ Even if ██████████████████████████████████████ were a proper topic for expert testimony (it is not), Dr. Bogost's testimony should still be excluded because █████████████████████████████████████████████████ ████████████ from his analysis, even though he did not even *consider* ████████████ ████████████████████████████████████ Ex. B, 158:5-12, 174:1-8. Additionally, there is an analytical chasm between the data and Dr. Bogost's opinion that ██████████████████████████████████████ Indeed, he admits that █████████████████████████████████████████████████ ████████████████████████ *Id.* at 173:13-20.

It is undisputed that ████████████████████████████████ *See, e.g., id.* at 114:22-23. However, Dr. Bogost's opinions concerning ████████ ████████████████████████████████████ as a whole is based on a "methodology" that ████████████████████████████████████████. *See, e.g., id.* at 158:5-

159:25 (█████████████████████████████████); *id.* at 159:8-10 (█████████

█████████████████████████); *id.* at. 160:17-18 (█████████████████████████

███████████████). For example, Dr. Bogost ████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ *Id.* at 156:1-157:8 and 170:15-18.  Tellingly, Dr. Bogost appears to use terms

like ██████████████████████ in his Initial Report in an attempt to excuse the fact (as

even *he* knows) that his opinions are, at best, ████████████████████████████

██████████████████████████████

Dr. Bogost also attempts to make very creative (and misleading) use of the term

████████████████████████████████████[4]  In his Initial Report,

Dr. Bogost claims that the Asserted Tattoos are ████████████████████████████

*See, e.g.*, Ex. A, ¶¶ 7, 9, 100, and 107. However, in his deposition, Dr. Bogost all but admitted

that his opinions about ████████████████████████████████████████████

████████████████████████████ When asked, point blank, ███████

██████████████████████████████████████████████████

███████████████████████ Ex. B, 175:9-15, ████████████ Dr. Bogost stated

that ████████████████████████ *id.* at 176:17, because ████████████████████

██████████████████████████████████████████████████████ *Id.* at

177:7-14. This laughable response perfectly illustrates the "methodology" Dr. Bogost employed

in reaching his opinions ██████████████████████████████████

---

[4] ████████████████████████████████████████████████ Accessed 20 Oct. 2021.

██████████████

For that and the other reasons outlined above, Dr. Bogost's testimony concerning ███

████████████████████████████████████████████████████████████████, should be

excluded at trial.

**C. Dr. Bogost's Testimony Concerning the** ████████████████████
████████████████████████ **Should Be Excluded Because It is
Both Irrelevant and Based on Unreliable Data**

Dr. Bogost's testimony concerning ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. A, ¶ 113, is utterly

irrelevant to any fact at issue in this case. Dr. Bogost himself acknowledged that ████████████

████████████████████████████████████████████████████████

██████████████████████ *Id.* at ¶43 (████████████████████████████████████

██████████████████████████████). Furthermore, this Circuit has previously recognized

that the *significance* of copied material in a computer program, not the *quantity*, is what matters

in copyright analysis. *See ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 630 (6th Cir. 2020);

*see also Navarro v. Procter & Gamble Co.*, 515 F.Supp. 3d 718, 765 (S.D. Ohio 2021)

(reiterating the Sixth Circuit's rejection of the lines-of-source-code valuation method in

*ECIMOS*).

Second, even if ████████████████████████████████████████████████

██████████████ had any relevance to the observability of the Asserted Tattoos in the Accused

Video Games, his testimony should still be excluded because it fails to meet the *Daubert*

requirement that an expert's "knowledge" be premised on " 'good grounds' based on what is

known" and not on "subjective belief or unsupported speculation." *See Lyngaas v. Ag*, 992 F.3d

412, 431 (6th Cir. 2021) (citing *Daubert*, at 690) (concluding expert testimony based on

unauthenticated summary-report logs was unreliable). As discussed above, under FRE 702,

expert testimony must be based on sufficient facts or data. In his Initial Report, Dr. Bogost

asserts that ███████████████████████████████████████████████

███████████████████████████████████████████████

██████████ Ex. A, ¶ 108. *See also, id.* at ¶¶ 113 and 114.

In his deposition, Dr. Bogost admitted himself that ████████████████████

██████████████████. He simply █████████████████████████████

██████████ Ex. B, 19:2-7.  When asked, █████████████████████ Dr. Bogost

answered, ████████████████████████ *Id.* at 20:9-11. ██████████

███████████████████████████████ *id.* at 35:5-14; he ████████████████

████████████████████████ *id.* at 26:24-27:4; and then ████████████

██████████████████ *Id.* at 40:13-20. He ██████████████████████████████

████████████████ *id.* at 42:22-43:1, ██████████████████████████

██████████ *id.* at 20:9-11, ██████████████████████ *Id.* at 35:15-20.

Third, even if ████████████████████████████████████████

██████ had any relevance to ████████████████████████████████████

███████████████████████████████████████████, Dr. Bogost's testimony

concerning ███████████████████████████████████████████████

██████████████ should be excluded because "[m]atter[s] of arithmetic 'within the capacity of

any reasonable lay person[,]' " are not expert testimony." *United States v. Madison*, 226 F.

App'x 535, 544 (6th Cir. 2007). Dividing ████████████████████████████

██████████████████ is clearly within the capacity of any reasonable lay person.

For the above reasons, Dr. Bogost's opinions concerning ████████████ Section

"III(D)" of his Initial Report, should be excluded from trial.

**D.  Dr. Bogost is Not Qualified to Testify About** ████████████████

As discussed above, an expert witness must be qualified in the specific subject area that forms the basis of his testimony. In his Initial Report, Dr. Bogost asserts that ████████████ ████████████ Ex. A, ¶ 115. This testimony should be excluded in its entirety because he is not even *generally* qualified in any subject areas that could reasonably form the basis of his opinion. In fact, Dr. Bogost actually cites ████████████████████████ ████████████████████████████████████ *Id*. at ¶ 116 (████████████████████████████████████ ████████████████████). Furthermore, Dr. Bogost does not hold a business or economics degree of any kind, Ex. B, 51:11-12, and he has not cited any other specific knowledge, skill, experience, or education that would qualify him to testify concerning tattoo licensing.  In sum, Dr. Bogost is obviously without qualification to weigh in as an "expert" on ████████████████████████████████████████████

Thus, Dr. Bogost's testimony concerning ████████████████ including the entirety of Section "III(E)" should be excluded.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff, James Hayden, respectfully requests that the Court grant his motion to exclude the opinion testimony of Ian Bogost, Ph.D.

15

Dated: October 25, 2021

Respectfully submitted,

By: */s/ Andrew Alexander*

Daniel McMullen (Ohio Bar No. 0034380)

Andrew Alexander (Ohio Bar No. 0091167)
Dustin Likens (Ohio Bar No. 0097891)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
dmcmullen@calfee.com
aalexander@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

/s/ Andrew Alexander

One of the attorneys for Plaintiff