# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES HAYDEN, | CASE NO. 1:17-cv-02635-CAB |
| Plaintiff, | |
| v. | |
| 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC., | |
| Defendants. | |

**DECLARATION OF DANNY GREEN**

I, Danny Green, declare as follows:

1. I submit this declaration in support of Take-Two Interactive Software, Inc. and 2K Games, Inc. (collectively, "Take-Two").

I. **My Background**

2. I have been a professional basketball player with the National Basketball Association ("NBA") since 2009, when I started my NBA career with the Cleveland Cavaliers. I have appeared in over 600 NBA games and, in addition to the Cavaliers, I have played for the San Antonio Spurs, the Toronto Raptors, the Los Angeles Lakers, and, most recently, the Philadelphia 76ers.

3. Before I started my professional basketball career with the NBA, I played basketball at North Babylon High School in North Babylon, New York, and St. Mary's High School in Manhasset, New York. After graduating high school, I played college basketball for the University of North Carolina.

II. **My Tattoos**

4. I have multiple tattoos inked on my body. All of my tattoos are personally meaningful to me. I specifically choose my tattoos to represent certain places, people, and things that I care about. I don't look like myself without my tattoos, and if I was depicted without them, that would not be an accurate depiction of me.

5. I understand that this case is, in part, about two of my tattoos, a tattoo of flames on my left shoulder (the "Fire Tattoo") and a tattoo of a scroll on my right bicep (the "Scroll Tattoo"). James Hayden inked portions of the Fire and Scroll Tattoos in 2012 at Focused Tattoos in Cleveland, Ohio. I paid Mr. Hayden for the parts of the tattoos that he inked back in 2012. When I walked out of Focused Tattoos, I did not expect to ever need to have any further contact with Mr. Hayden. I thought I was free to depict my body as I wished showing my

tattoos, and that I was free to authorize others to do so too, without needing to get further permission or pay additional money to Mr. Hayden.

6. When I asked Mr. Hayden to ink parts of the Fire and Scroll Tattoos, I talked to him about what I wanted the tattoos to look like. I already had tattoos on my left shoulder, inked by a different tattooist. Those tattoo depicted an image of a basketball player, my initials "D.G." in script beneath the basketball player, and above the basketball player, the phrase, "I hold my own," all of which have personal meaning to me. The existing basketball player tattoo already had flames and I asked Mr. Hayden to add additional inking around the existing tattoos. Mr. Hayden added some additional flames and I approved that design. Neither Mr. Hayden nor I believed that we needed permission from my previous tattooist to alter my existing tattoos or add additional flames around them; neither of us contacted the original tattooist or even discussed that there was any need to do so. As someone who regularly gets tattoos, it is my understanding that these tattoos were mine to do with what I wanted, including cover them, change them, or remove them. An image of the Fire Tattoo before and after Mr. Hayden added additional flames is shown below:

 

**Before**  **After**

7. For the Scroll Tattoo, I had a pre-existing tattoo of a scroll with my brothers' names on it on my inner bicep inked by a different tattooist. The tattoo is particularly meaningful to me because it contains the names of my brothers. I told Mr. Hayden that I wanted him to add some clouds around the scroll to make it bigger. Neither Mr. Hayden nor I believed that we needed permission from my previous tattooist to alter my existing tattoo or add clouds around it; neither of us contacted the original tattooist or even discussed that there was any need to do so. An image of the Scroll Tattoo before and after Mr. Hayden added clouds is shown below:

 

**Before** **After**

8. I approved the designs for both the Fire and the Scroll Tattoos. I also gave Mr. Hayden permission to ink the tattoos on me before he did so. Ultimately, I was the person who decided what was inked on my body, not Mr. Hayden. If I had wanted to make revisions or request changes to the tattoos, I understood that I could do so, and that I had final say in what that tattoos on my body would look like.

9. The fact that Mr. Hayden is now trying to stop others from showing me in media as I actually look, tattoos and all, is surprising to me. It was my understanding that Mr. Hayden was familiar with inking tattoos on professional NBA players; in fact, I was introduced to Mr. Hayden through LeBron James, who is also a professional basketball player and had also gotten

tattoos inked by Mr. Hayden. When I was being tattooed by Mr. Hayden, we discussed that I was a professional NBA basketball player. It was clear to me that he understood that was my job, that I was a former teammate of Mr. James, and that I regularly appeared on television and in different forms of media. In fact by 2012, I had been regularly playing for the NBA for several years. In that time, I often appeared on television, in media, and on merchandise with my tattoos showing. I appeared in *NBA 2K* with my tattoos at least as early as 2011. Mr. Hayden was well aware that the tattoos that he was inking would be visible when I appeared on television and in media. The Fire and Scroll Tattoos were inked on my arms, and basketball jerseys are sleeveless, so my arm tattoos are normally visible whenever I am shown playing basketball or wearing my uniform.

10. Despite knowing that I appear in media with my tattoos showing, Mr. Hayden never told me that I needed his permission before I could be depicted in any media, such as television, movies, or video games, showing my tattoos, or before I could allow others to depict me in any media. And he certainly never mentioned copyrights. I never signed any forms or documents relating to copyrights, and Mr. Hayden did not tell me he claimed copyrights in portions in either of my tattoos.

### III. My Rights to the Tattoos

11. It is my understanding that my tattoos, including the Scroll and Fire Tattoos are part of my body and my likeness. I have the right to show my tattoos when people or companies depict what I look like. In fact, I always thought that I had the right to license what I look like. That's part of the job of being a professional NBA player. It is my understanding that I can license my likeness for various merchandise, television appearances, and other types of creative works, like video games, including with my tattoos showing, and to let others show me and recreate me with my tattoos showing.

12. It is very important to me as a professional basketball player that I can continue to show my likeness, including my tattooed arms, without getting permission from someone else to do so. This is because I frequently appear in media, such as televised broadcasts of basketball games, television shows, movies, and video games, with many of my tattoos showing.

13. After nearly a decade of playing professional basketball, no tattooist has ever suggested to me that I can't license my likeness without permission from the tattooist who inked my tattoos. In fact, this litigation is the first time I have ever even heard of someone making this kind of claim. I have dozens of tattoos inked by numerous tattooists, and none of them ever told me I needed their permission to show my tattoos, even as a public basketball player who regularly appears in media.

14. Based on my experience and years of getting inked, I think Mr. Hayden is trying to change the accepted practice in the tattoo industry surrounding what people can do with their own tattoos. I have at least a dozen tattoos, and it is my understanding that the practice is that when you get a tattoo, you're free to go about your life without needing to go back to your tattooist for permission. If this lawsuit were successful, it would change that expectation, and make it very difficult for people like me, who enjoy getting tattoos, to continue to get them without worrying that they will have continuing obligations to their tattooist simply because they want to show their body as it looks with their own tattoos.

### IV. Take-Two's Right to Portray Me with My Tattoos

15. I granted the NBA and the NBA Players Association permission to license my likeness to third parties. I have always believed that I have the right to grant this permission. It is my understanding that the NBA and the NBA Players Association have granted permission to Take-Two to use my likeness in its video game series *NBA 2K*.

16. Neither Mr. Hayden nor any tattooist has ever contacted me about this lawsuit. Mr. Hayden did not contact me ahead of this lawsuit or ever suggest to me that I needed to get his permission before licensing my likeness. In fact, no tattooist has.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this  21  day of  October , 2021.

                                                   Danny Green