**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN,<br><br>       Plaintiff,<br><br>v.<br><br>2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC. ,<br><br>       Defendants. | CASE NO. 1:17-cv-02635-CAB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
2K GAMES, INC. AND TAKE-TWO INTERACTIVE SOFTWARE, INC.'S
MOTION TO EXCLUDE ANY TESTIMONY, ARGUMENT OR EVIDENCE
REGARDING JUSTIN LENZO'S POTENTIAL MARKET OPINION**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**FACTUAL BACKGROUND** ..................................................................................................... 3

**ARGUMENT** ................................................................................................................................ 4

    I.      LENZO'S POTENTIAL MARKET OPINION IS INCONSISTENT WITH COPYRIGHT LAW AND, THUS, UNRELIABLE AND LIKELY TO CONFUSE THE JURY ........................................................................................ 5

**CONCLUSION** ............................................................................................................................ 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrams v. Nucor Steel Marion, Inc.*,
  694 F. App'x 974 (6th Cir. 2017) ................................................................................5

*Apple Inc. v. Corellium, LLC*,
  510 F. Supp. 3d 1269 (S.D. Fla. 2020) ........................................................................6

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006) ...............................................................................5, 6, 7, 8

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006) ...............................................................................5, 6, 7, 8

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) .....................................................................................................7

*Castle v. Kingsport Publ'g Corp.*,
  19 Civ. 92, 2020 WL 7348157 (E.D. Tenn. Dec. 14, 2020) .......................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ..............................................................................................3, 4, 5

*Google LLC v. Oracle Am., Inc.*,
  141 S. Ct. 1183 (2021) .................................................................................................5

*Kane v. Comedy Partners*,
  No. 00 Civ. 158, 2003 WL 22383387 (S.D.N.Y. Oct. 16, 2003) ...............................5

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) .....................................................................................................4

*Nunez v. Caribbean Int'l News Corp.*,
  235 F.3d 18 (1st Cir. 2000) ..........................................................................................8

*Reiner v. Nishimori*,
  15 Civ. 241, 2017 WL 1545589 (M.D. Tenn. Apr. 28, 2017) ....................................7

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013) .....................................................................................8

*Siewertsen v. Worthington Indus., Inc.*,
  783 F. App'x 563 (6th Cir. 2019) ................................................................................5

*Swatch Grp. Mgmt. Servs. v. Bloomberg LP*,
    756 F.3d 73 (2d Cir. 2014)......................................................................................2, 5, 6, 7

*Tamraz v. Lincoln Elec. Co.*,
    620 F.3d 665 (6th Cir. 2010) ..................................................................................................4

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009) ..................................................................................................8

**Statutes**

17 U.S.C. § 107..................................................................................................................................1

**Other Authorities**

4 *Nimmer on Copyright* § 13.05 .................................................................................................2, 5

iii

Defendants Take-Two Interactive Software, Inc. and 2K Games, Inc. (collectively, "Take-Two") respectfully submit this memorandum of law in support of their motion to exclude any testimony, argument, or evidence regarding the potential market opinion of Plaintiff James Hayden's ("Plaintiff") purported expert, Dr. Justin Lenzo ("Lenzo").

## PRELIMINARY STATEMENT

As discussed in Take-Two's concurrently filed summary judgment motion, its depiction of professional NBA players Danny Green, LeBron James, and Tristan Thompson (the "NBA Players") in *NBA 2K* together with the tattoos that Plaintiff inked on them (the "Tattoos") is fair use. In making that determination, one of the four fair use factors that courts consider is the "effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). In this case, it is undisputed that no existing market for including tattoos in video games exists—both parties' experts testified as such, as did various tattooists, including Plaintiff himself, who admitted that he has never licensed a video game and that he has never heard of another tattooist licensing tattoos for inclusion in a video game. Even Plaintiff's expert Dr. Justin Lenzo readily admits that (i) he is "not aware of existing licenses for player tattoos in video games," Decl. of Chris Ilardi, dated October 22, 2021, ("Ilardi Decl.") Ex. A (Lenzo Rpt.) ¶ 64, and (ii) "no market has formed for licensing real-life tattoo designs for video games" as "no transactions are evident historically." *Id.* Ex. B (Lenzo Dep.) 263:16–264:4.

Given that there is no existing market, Plaintiff would need to show a potential market for such use for the fourth fair use factor to weigh against fair use.[1] Plaintiff hired Lenzo to offer an

---

[1] Even then, as discussed in Take-Two's summary judgment brief, the public benefit in creating *NBA 2K* would militate the fourth factor in favor of fair use.

1

opinion that "conditions are conducive to the formation of a market for licensing tattoo designs for reproduction in video games." *Id.* Ex. A (Lenzo Rpt.) ¶ 102.

Lenzo's opinion, however, is contrary to how courts decide whether a potential market exists under black-letter copyright law. Specifically, it is premised on Plaintiff's own willingness to license the Tattoos for use in *NBA 2K*. Courts, however, repeatedly have held that potential markets cannot be shown based on such reasoning. This is because, as the Second Circuit explained in *Swatch Group Management Services v. Bloomberg LP*, "it is a given in every fair use case that plaintiff suffers a loss of a potential market if that potential is defined as the theoretical market for licensing the very use at bar." 756 F.3d 73, 91 (2d Cir. 2014) (quoting 4 *Nimmer on Copyright* § 13.05[A][4]). In other words, a copyright owner can always be considered a potential licensor, inasmuch as he might be willing to grant a license to his work. Thus, courts must "guard against this 'vice of circular reasoning.'" *Id.*

Similarly circular is Lenzo's view that "if a Court ruling finds that Plaintiff's copyrights on the asserted tattoo designs are valid and infringed by Defendants," a potential market will be formed. Ilardi Decl. Ex. A (Lenzo Rpt.) ¶ 92. If that were the law, a potential market would exist in every fair use case. Yet, as discussed below, courts repeatedly have found in fair use cases that potential markets were unlikely to be developed, undermining Lenzo's analysis. Likewise, Lenzo admitted at his deposition that, based on his improper approach, he did not "have a specific recollection of any examples where markets did not form" and would say "it's unlikely that . . . a market doesn't form" under his analysis. *Id.* Ex. B (Lenzo Dep.) 15:11–15. This admission reveals the problem with his methodology: it does not follow how copyright law determines whether a potential market exists, and would lead to a finding of a potential market in every case, which we know is wrong from the numerous decisions finding fair use.

2

As Lenzo's potential market opinion is directly contrary to fundamental copyright law principles, Take-Two respectfully requests that the Court exclude his irrelevant and prejudicial opinion as it fails to meet the requirements of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## FACTUAL BACKGROUND

In their opening reports, Take-Two's experts explained that video games are not a reasonable, traditional, or likely to be developed market for the Tattoos. Video game expert Dr. Ian Bogost explained that "Take-Two's use—incidental, fleeting use on the players on which the Tattoos are inked to increase *NBA 2K*'s realism—is not something that reasonably would be anticipated to be licensed for use in a video game." Ilardi Decl. Ex. C (Decl. and Expert Rpt. of Ian Bogost) ¶ 9. And, in fact, although tattoos have been in *NBA 2K* video games since 2001, Take-Two has never licensed the tattoos that appear on the real-world players in the game. Similarly, tattoo expert Dr. Nina Jablonski's opinion is that "the market that Plaintiff is trying to create for the first time is not reasonable or likely to be developed outside of the context of this litigation," because it would "encumber" tattooists' clients. *Id*. Ex. D (Decl. and Expert Rpt. of Nina Jablonski) ¶ 66. And based on their testimony and Plaintiff's many admissions that no market exists, economist James Malackowski concluded that "there is no market for licensing tattoos for depiction in video games of tattoos on the athletes on whom the tattoos are inked in real life, and such a market is unlikely to develop." *Id.* Ex. E (Expert Rpt. of James E. Malackowski) Ex. A, at 4, 32.

In response, Lenzo filed a rebuttal report. He concedes that (i) Plaintiff is not in the position to "develop his own video game or start a development studio or anything like that," *id*. Ex. B (Lenzo Dep.) 279:14–22; and (ii) Lenzo is "not aware of existing licenses for player tattoos in video games." *Id.* Ex. A (Lenzo Rpt.) ¶ 64. Nevertheless, Lenzo speculates that a

3

potential market *might* exist based on two factors: (i) that tattooists would "be willing to license their designs for reproduction in video games," *id.* ¶ 22(a), and (ii) video game manufacturers would be willing to take such licenses if "doing so were required to reproduce tattoo designs in video games." *Id.* ¶¶ 22(b)–(d); *id.* Ex. B (Lenzo Dep.) 28:21–29:5 ("Q. And in this case, you came to the conclusion that a market for Mr. Hayden's tattoos is likely to form, right?  A. Yes. . . . As I talked about in the report, if the apparent beliefs by video game manufacturers that they don't require a license in order to reproduce these tattoos in the game, if that changes, then I believe at that point a market is very likely to form for the reasons I explain in my report.").

Although he readily speculated about the formation of a potential market, Lenzo was unwilling to say when a potential market would *not* form under his methodology.  During his deposition, for instance, Lenzo made several critical admissions about his methodology.  He admitted that, based on his approach to market formation, he did not "have a specific recollection of any examples where markets did not form and I would say it's unlikely that I did because if a market doesn't form, it's not something we observe historically." *Id.* at 15:11–15.  He also disagreed that "there are some situations where it is unlikely that a market will form for a copyrighted work." *Id.* at 15:16–22.

## ARGUMENT

In deciding *Daubert* motions, courts serve a "gatekeeping" function to ensure that expert testimony satisfies Federal Rule of Evidence 702's reliability requirements and is not prohibited by Rule 403 as unfairly prejudicial. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–49 (1999) ("[T]he trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"); *Daubert*, 509 U.S. at 592–93 (the court considers "whether the reasoning or methodology underlying the testimony is scientifically valid and []

4

whether that reasoning or methodology properly can be applied to the facts in issue"). Because expert testimony has the potential to be both powerful and misleading, courts need to exercise a greater control over experts than lay witnesses. *See Daubert*, 509 U.S. at 595. To be admissible, an expert's opinion must be "the product of reliable principles and methods" that are generally accepted in the relevant discipline. Fed. R. Evid. ("FRE") 702; *Siewertsen v. Worthington Indus., Inc.*, 783 F. App'x 563, 575 (6th Cir. 2019); *Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 981 (6th Cir. 2017).

**I.      LENZO'S POTENTIAL MARKET OPINION IS INCONSISTENT WITH COPYRIGHT LAW AND, THUS, UNRELIABLE AND LIKELY TO CONFUSE THE JURY**

Lenzo's potential market opinion should be excluded because it is inconsistent with two fundamental copyright principles and, thus, is both unreliable and likely to confuse the jury.

*First*, a plaintiff's mere desire to license his own work does not create a potential market. *Blanch v. Koons*, 467 F.3d 244, 258 n.9 (2d Cir. 2006). As discussed above, courts have held that "it is a given in every fair use case that plaintiff suffers a loss of a potential market if that potential is defined as the theoretical market for licensing the very use at bar." *Swatch*, 756 F.3d at 91 (quoting 4 *Nimmer on Copyright* § 13.05[A][4]); *see Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1207 (2021) (also quoting *Nimmer* treatise). If a court were "automatically to conclude in every case that potential licensing revenues were impermissibly impaired simply because the secondary user did not pay a fee for the right to engage in the use, the fourth fair use factor would *always* favor the copyright holder." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006) (emphasis in original). As a result, courts must guard against this "vice of circular reasoning." *Swatch*, 756 F.3d at 91 ("hypothesized market for audio recordings of earnings calls convened by foreign companies that are exempt from Regulation FD cannot meet this standard"); *Kane v. Comedy Partners*, No. 00 Civ. 158, 2003 WL 22383387, at

5

*6 (S.D.N.Y. Oct. 16, 2003) ("Court must be careful to avoid the danger of circularity inherent in . . . consideration" of licensing plaintiff's work), *aff'd,* 98 F. App'x 73 (2d Cir. 2004). This is a critical limitation on the fourth fair use factor as "the possibility of receiving licensing royalties" may play "no role in stimulating the creation of" the plaintiff's work, making it more appropriate to find fair use. *Swatch*, 756 F.3d at 91; *Apple Inc. v. Corellium, LLC*, 510 F. Supp. 3d 1269, 1292 (S.D. Fla. 2020) ("The goal of copyright is to stimulate the creation of new works, not to furnish copyright holders with control over all markets.").

It is because of courts' gatekeeper roll that they routinely do not find potential markets even where plaintiffs expressly would be willing to license their works to defendants. For example, in *Blanch*, the plaintiff "dearly wanted to" create a market for the use of her work in the defendant's art, but the Second Circuit held that desire did not create a cognizable market. 467 F.3d at 258 n.9. Similarly, in *Bill Graham*, the plaintiff "expressed a willingness to license images to" the defendant, but the court held that doing so did not show "impairment to a traditional, as opposed to a transformative market." 448 F.3d at 614.

Here, Lenzo violates this tenet by basing his potential market opinion on Plaintiff's willingness to license the Tattoos for Take-Two's use. Ilardi Decl. Ex. A (Lenzo Rpt.) ¶ 22. That is exactly the type of circular potential market analysis that courts repeatedly have refused to consider in determining whether a use is fair and, thus, should be excluded.

***Second***, a potential market cannot be established by merely asserting that, if the court finds the defendant's use is not fair use, then a potential market will form because the defendant has no choice but to license the plaintiff's work. Critically, to hold otherwise would create a logical fallacy: a court would have to hold that past copying was not fair use at that time because

6

a potential market was established for the first time in the court's later-in-time opinion, finding that the past use was not fair. This is the epitome of circular reasoning.

It also is the argument advanced by the plaintiff in *Blanch*, which the Second Circuit rejected. As the Second Circuit explained, this reasoning was improper: "it is of course circular to assert simply that if we were to hold in her favor she could then charge Koons for his further use of 'Silk Sandals.'" 467 F.3d at 258 n.9. "Moreover, a [defendant's] willingness to pay license fees . . . does not establish that the [defendant] may not, in the alternative, make fair use." *Bill Graham*, 448 F.3d at 615. Indeed, an accused infringer can always be considered a potential licensee, inasmuch as it might have sought a license for its use of the copyrighted material, but fair use asks whether a license was needed in the first place. *Cf. Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18 (1994) ("If the use is otherwise fair, then no permission need be sought or granted.").

Moreover, if Lenzo's conception of potential markets were correct and a court's opinion could create a backward-facing potential market, there would be potential markets in every case. Yet, that cannot be correct because, relying on these core copyright law principles, courts repeatedly have held that potential markets were not likely to be developed. For example, in *Castle v. Kingsport Publishing Corp.*, given the lack of prior licensing, there was no "potential market for a drone image of a high school construction site in Sullivan County, Tennessee that attempts to show the existence of potential sinkholes." No. 19 Civ. 92, 2020 WL 7348157, at *7 (E.D. Tenn. Dec. 14, 2020). Similarly, in *Reiner v. Nishimori*, despite the plaintiff's argument that a potential market existed because his work "was available for licensing and Defendants chose to use [it] without paying for a license," the court found no potential market. No. 15 Civ. 241, 2017 WL 1545589, at *7 (M.D. Tenn. Apr. 28, 2017); *see also Swatch*, 756 F.3d at 91 (no

potential market for recording); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013) (no potential market for images); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 644–45 (4th Cir. 2009) (no potential market for student papers); *Blanch*, 467 F.3d at 258 n.9 (no potential market for photograph); *Bill Graham*, 448 F.3d at 615 (no potential market for images); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) ("Surely the market for professional photographs of models publishable only due to the controversy of the photograph itself is small or nonexistent" and, thus, "unlikely to be developed").

Nevertheless, here, Lenzo asserts a potential market would form because Take-Two might be willing to enter into a license with Plaintiff if this Court finds its use is not fair use. Ilardi Decl. Ex. A (Lenzo Rpt.) ¶ 22.  Again, such circular reasoning flies in the face of deep-seated copyright principles and would lead to the absurd result that Lenzo admitted in his deposition: that markets *would* have developed in the aforementioned cases in which courts found that there was *no* potential market.  *Id.* Ex. B (Lenzo Dep.) 15:11–14.  That cannot be correct.  As Lenzo's methodology directly conflicts with the cases above and leads to results inconsistent with courts across this country, his opinions are unreliable and, if presented to the jury, are likely to confuse them into believing that such evidence shows a potential market, when the law is exactly the opposite.

## **CONCLUSION**

For the foregoing reasons, Take-Two respectfully requests that the Court preclude any testimony, argument or evidence regarding or relating to Lenzo's potential market opinions.

Dated: New York, NY
      October 25, 2021

/s/ *Dale M. Cendali*

Dale M. Cendali (admitted *pro hac vice)*
Joshua L. Simmons (admitted *pro hac vice*)
Chris Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.*