**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN, | CASE NO. 1:17-cv-02635-CAB |
| Plaintiff, | |
| v. | |
| 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC., | |
| Defendants. | |

**DEFENDANTS 2K GAMES, INC. AND TAKE-TWO
INTERACTIVE SOFTWARE, INC.'S MEMORANDUM OF LAW IN
<u>OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

**SUMMARY OF ARGUMENT** ............................................................................. 1

**FACTUAL BACKGROUND** ............................................................................. 4

**ARGUMENT** ..................................................................................................... 5

I.     PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON OWNERSHIP OF A VALID COPYRIGHT ..................................................................... 6

       A.    TWO OF THE TATTOOS WERE COPIED FROM PRE-EXISTING SOURCES .......................................................................................... 7

       B.    THE TATTOOS COMPRISE STANDARD TATTOOING TROPES AND UNCOPYRIGHTABLE ELEMENTS ........................................... 9

II.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON COPYING ........ 11

       A.    THE MOTION IS MOOT ON THE NARROW ISSUE OF FACTUAL COPYING ............................................................................................ 12

       B.    PLAINTIFF CANNOT SHOW ACTIONABLE COPYING .............................. 13

III.   PLAINTIFF'S COPYRIGHT CLAIM FAILS AS A MATTER OF LAW ..................... 14

**CONCLUSION** ................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................6

*Durham Indus., Inc. v. Tomy Corp.*,
    630 F.2d 905 (2d Cir. 1980)................................................................................10

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
    122 F.3d 1211 (9th Cir. 1997) ...............................................................................7

*Feist Publ'ns, Inc. v. Rural Tel. Servs., Inc.*,
    499 U.S. 340 (1991)........................................................................................1, 2, 6

*Gen. Universal Sys., Inc. v. Lee*,
    379 F.3d 131 (5th Cir. 2004) ..........................................................................11, 12

*Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*,
    345 F.3d 922 (6th Cir. 2003) ..........................................................................13, 15

*Great Minds v. FedEx Off. & Print Servs., Inc.*,
    886 F.3d 91 (2d Cir. 2018)..................................................................................14

*Hayden v. 2K Games, Inc.*,
    375 F. Supp. 3d 823 (N.D. Ohio 2019).................................................................9

*Kohus v. Mariol*,
    328 F.3d 848 (6th Cir. 2003) ...........................................................................4, 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004) .....................................................................3, 11, 13

*MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*,
    89 F.3d 1548 (11th Cir. 1996) .............................................................................15

*Nat'l Rifle Ass'n of Am. v. Handgun Control Fed'n of Ohio*,
    15 F.3d 559 (6th Cir. 1994) .................................................................................14

*Psychopathic Recs., Inc. v. Anderson*,
    No. 08 Civ. 13407, 2009 WL 2591385 (E.D. Mich. Aug. 24, 2009) .......................7

*Ross, Brovins & Oehmke, P.C. v. Lexis/Nexis*,
    348 F. Supp. 2d 845 (E.D. Mich. 2004)................................................................6

*Runstadler Studios, Inc. v. MCM Ltd. P'ship*,
    768 F. Supp. 1292 (N.D. Ill. 1991) .......................................................................11

*Scholz Design, Inc. v. Bassinger Bldg. Co.*,
    No. 05 Civ. 71602, 2006 WL 3031388 (E.D. Mich. Oct. 23, 2006) ......................11

*Sem-Torq v. K Mart Corp.*,
    936 F.2d 851 (6th Cir. 1991) .................................................................................7

*Southco, Inc. v. Kanebridge Corp.*,
    390 F.3d 276 (3d Cir. 2004).................................................................................11

*Stromback v. New Line Cinema*,
    384 F.3d 283 (6th Cir. 2004) .................................................................................9

*Tompkins Graphics, Inc. v. Zipatone, Inc.*,
    No. 82 Civ. 5438, 1983 WL 398 (E.D. Pa. Aug. 15, 1983)...................................11

**Statutes**

17 U.S.C. § 103 ...........................................................................................................7, 8

17 U.S.C. § 410 ...............................................................................................................7

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................6

**Other Authorities**

4 NIMMER ON COPYRIGHT § 13.01 ................................................................................13

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES
    (3d ed. 2021)........................................................................................................7, 9

Defendants Take-Two Interactive Software, Inc. and 2K Games, Inc. (collectively, "Take-Two") respectfully submit this memorandum of law in opposition to Plaintiff James Hayden's ("Plaintiff") Motion for Partial Summary Judgment.[1]

## SUMMARY OF ARGUMENT

In bringing a lawsuit asserting that the accurate depiction of tattooed athletes infringes his copyrights, Plaintiff has tried to create copyright liability where none has ever existed before. *See generally* Defs.' Mot. His novel claims, which would both strip tattooed people of their ability to freely show their bodies and encumber the accurate depiction of the world, should be dismissed as a matter of law. *Id.* But what discovery in this litigation has shown is that Plaintiff does not even own copyrights in the works he claims to have created. Plaintiff contends that he somehow owns copyrights in highly recognizable works that he copied from others, including Michelangelo's Sistine Chapel, a quotation from the Bible, and the iconic Las Vegas Venetian Resort logo. These are not Plaintiff's to own, nor can Plaintiff claim copyright protection in trivial additions that he made to the work of other tattooists, such as the addition of common tattoo filler and simple shapes that are everyone's to use.

As the Supreme Court made clear in *Feist Publications, Inc. v. Rural Telephone Services, Inc.*, the *sine qua non* of copyrightability is ***originality***. 499 U.S. 340, 361 (1991). The Tattoos that Plaintiff inked on the NBA Players are ***not original to him***, a fatal flaw in his copyright claim. Plaintiff's Motion should therefore be denied, because Plaintiff cannot prove the elements of his copyright claim as a matter of law based on the undisputed facts in the record.

In Plaintiff's Motion, he misstates, and asks the Court to misapply, two black-letter principles of copyright law. ***First***, Plaintiff asks the Court to grant summary judgment on the

---

[1] Take-Two herein incorporates by reference the definitions set out in its Motion for Summary Judgment. Defs.' Mem. Supp. Summ. J. (Dkt. 101-1) ("Defs.' Mot.").

- 1 -

issue of "copyright ownership" based solely on the existence of Plaintiff's copyright registrations.  Pl.'s Br. Supp. Partial Summ. J. (Dkt. 94-1) ("Pl.'s Mot.") 1.  Plaintiff improperly conflates ownership of a valid copyright, the first element of a copyright infringement claim, with ownership of a copyright registration.  There is no dispute that Plaintiff owns copyright registrations for three tattoos and three sketches for tattoos that he inked on Danny Green, LeBron James, and Tristan Thompson.  As explained below, however, the Tattoos are not protectable by copyright law.

Two of the Tattoos were indisputably copied by Plaintiff, without authorization, from another's work (as shown in the side-by-side images below).  The Brother's Keeper Tattoo was copied from Michelangelo's highly recognizable Sistine Chapel fresco, "The Creation of Adam," as well as the phrase "my brother's keeper" from the Biblical story of Cain and Abel.  And the Lion Tattoo is copied from the logo on a playing card that Mr. James provided Plaintiff from the Venetian Resort in Las Vegas.  Plaintiff cannot own copyrights in works he copied.  To own a valid copyright in a work, the work must be original, meaning it was (1) independently created (rather than copied) and (2) has a minimal degree of creativity.  *Feist* 499 U.S. at 361.  Because these tattoos were not independently created, Plaintiff cannot own copyrights in them.



**Michelangelo's "Creation of Adam"**



**Brother's Keeper Tattoo**

 

**Venetian Resort Logo**          **Lion Tattoo**

Nor can Plaintiff claim rights in common elements or standard tropes, called *scenes a faire*. Yet the Tattoos merely comprise common elements and tropes in tattooing that are not original to Plaintiff, as well as expressly uncopyrightable elements like standard geometric shapes and typefaces. For example, Plaintiff inked the Fire Tattoo merely by adding additional basic background flames (common tattoo filler) around a pre-existing tattoo (that also had flames) inked by a different tattooist. Plaintiff cannot show that his minor addition of a common tattoo filler to this pre-existing tattoo is original and copyrightable. The remaining Tattoos are similarly unoriginal. As a result, Plaintiff is not entitled to summary judgment on copyright ownership.

**Second,** Plaintiff vaguely asks the Court to grant summary judgment on the issue of "copying" without clarifying that there are, in fact, two sub-elements of copying on which Plaintiff bears the burden of proof: factual copying and actionable (legal) copying. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (distinguishing between factual copying and legal copying). With regard to <u>factual copying</u>, Take-Two does not dispute that the NBA Players' tattoos were included on the bodies of the NBA Players in *NBA 2K* as part of accurately depicting their likenesses. Defs.' Mot. 8–9. Even so, Plaintiff is not entitled to summary judgment on the issue of copying because Plaintiff has not even attempted to establish the second sub-element, <u>actionable (legal) copying</u>. A showing of actionable copying requires two steps. First, a court must filter out the unoriginal, unprotectable elements of the

work, such as portions of the work that were not independently created and portions that constitute *scenes a faire*.  *Kohus v. Mariol*, 328 F.3d 848, 855–56 (6th Cir. 2003).  Once the unprotectable elements have been filtered out, the next step is to compare the two works to determine whether the works are substantially similar.  *Id.* at 856.  Here, there are no protectable elements left over once everything unprotectable has been filtered out.  And with regard to two of the tattoos (the Lion Tattoo and Brother's Keeper Tattoo), even if there were protectable elements, they do not appear in the game because these tattoos are covered by players' jerseys. As Plaintiff cannot show actionable copying, he is not entitled to summary judgment on the issue of copying.

## FACTUAL BACKGROUND

Take-Two hereby incorporates by reference the Statement of Fact in its Motion for Summary Judgment.  Defs.' Mot. 4–10.  From 2007 to 2012, Plaintiff inked six tattoos on three professional NBA basketball players: Danny Green, LeBron James, and Tristan Thompson. Dkts. 101-2–4.  The Tattoos that Plaintiff inked were copied from pre-existing sources and comprise common elements and motifs.  Dkt. 101-2 ¶ 8; Dkt. 101-21 at 82:6–8, 83:21–25, 116:20–117:2.  In particular, the Brother's Keeper Tattoo and Lion Tattoo were copied from the Bible, Michelangelo's Sistine Chapel, and a hotel playing card.  Dkt. 101-2 ¶ 8; Dkt. 101-21 at 82:6–8, 83:21–25, 116:20–117:2.  Years later, Plaintiff obtained copyright registrations for three of the tattoos he inked on Mr. Green and Mr. Thompson, as well as registrations for three sketches for tattoos he inked on Mr. James, which are not identical to the tattoos actually inked on Mr. James' body.  Dkts. 94-5–10; Means Decl. Ex. 1 (Images of the NBA Players).  Plaintiff did not disclose to the Copyright Office that he had copied the Tattoos from pre-existing sources, nor did he explain that the Tattoos comprise standard tattoo filler, elements, and motifs.  Dkts. 94-5–10.

Take-Two develops the basketball simulation video game *NBA 2K*, and releases versions of that same basketball simulation game each year.  Dkt. 101-5 ¶ 2; Dkt. 95-8 ¶ 49; Dkt. 95-42 at 112:18–113:5.  To serve its artistic purpose of simulating NBA basketball, Take-Two accurately replicates the likenesses of the NBA Players precisely, including their height, build, skin, hair, facial features, and tattoos.[2]  Dkt. 101-5 ¶ 5.  The NBA players in *NBA 2K* are created by scanning the NBA players into the game using "photogrammetry," which involves simultaneously taking hundreds of digital photographs of a player's body from different angles to create a photo-realistic version of the NBA player in the game.  *Id*. ¶¶ 5–7.  The process captures a player's detailed likeness, from facial features, to build, to "scars, stretch marks, [and] moles" to anything else on the photographed skin, including tattoos.  Dkt. 95-29 at 30:4–14.  Take-Two obtained a license to portray the likenesses of Messrs. Green, James, and Thompson from the National Basketball Association ("NBA") and the NBA Players Association ("NBAPA").  Dkt. 101-5 ¶ 10; Dkt. 95-25 at 32:19–35:24; Dkts. 95-45–46.

Plaintiff filed this action on December 18, 2017 and, through his Fourth Amended Complaint, filed on August 19, 2019, alleges that the realistic depiction of Messrs. Green, James, and Thompson in *NBA 2K* with their Tattoos infringes his copyrights.[3]

## ARGUMENT

Summary judgment is proper only where the movant can show that (1) there are no genuine disputes as to material facts and (2) the movant is entitled to judgment as a matter of

---

[2]   The Lion Tattoo and Brother's Keeper Tattoo on Mr. James and Mr. Thompson respectively are covered up by the players' jerseys in *NBA 2K*.  Dkts. 101-1–10.

[3]   Plaintiff contends that *NBA 2K21* and *NBA 2K22* are "Accused Games" in this case.  Neither of these games are accused of infringement in the operative Complaint and therefore are not at issue in this litigation.  Dkt. 33.  Take-Two also notes that Plaintiff chose not to move to amend the complaint before summary judgment or raise this issue with the Court when the parties were submitting a proposed scheduling order, despite the fact that *NBA 2K21* has been out for over year and *NBA 2K22* has been out for several months.  For purposes of this opposition brief, Take-Two will refer to the games named in the complaint collectively as *NBA 2K*.

law.  Fed. R. Civ. P. 56(a).  A fact is genuinely disputed when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  As shown in Take-Two's Motion for Summary Judgment, the *material* facts themselves are not in dispute in this case and the Court should dismiss the copyright claims based on these undisputed facts.  Plaintiff's Motion, however, misstates and misrepresents the facts currently in the record and baldly asserts legal conclusions as fact, such that the "facts" set forth in Plaintiff's Motion do not entitle him to summary judgment as a matter of law.  Nor do they rebut the grounds for summary judgment set forth in Take-Two's Motion.  Plaintiff also makes critical errors of black-letter copyright law and how it applies in this case.  As he cannot show ownership of a valid copyright and actionable copying, and the issue of factual copying is moot, his Motion should be denied.

## I.     PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON OWNERSHIP OF A VALID COPYRIGHT

To establish copyright infringement, Plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist*, 499 U.S. at 361.  With regard to the first element, only "original" works fixed in a tangible medium of expression are copyrightable, meaning the work must have been "independently created by the author (as opposed to copied from other works)" and must "possess[] at least some minimal degree of creativity."  *Id.* at 345–46.  Plaintiff has not carried his burden of proving ownership, and Take-Two's evidence of unoriginality creates more than a genuine issue of material fact on the ownership question.  *See Ross, Brovins & Oehmke, P.C. v. Lexis/Nexis*, 348 F. Supp. 2d 845, 861 (E.D. Mich. 2004) (denying plaintiff's motion for partial summary judgment because the works at issue were unoriginal).

As an initial matter, Plaintiff asserts that his copyrights in the Tattoos are entitled to a

presumption of validity because they are registered with the Copyright Office.  Pl.'s Mot. 5.

Plaintiff omits the fact that only copyright registrations made ***within five years after publication***

constitute prima facie evidence of validity.  17 U.S.C. § 410; *Sem-Torq v. K Mart Corp.*, 936

F.2d 851, 854 (6th Cir. 1991) (finding presumption did not apply and the works at issue were

uncopyrightable).  Three of the tattoos—the Shoulder Stars Tattoo (inked in 2008, registered in

2016), Gloria Tattoo (inked in 2007, registered in 2016), and the Lion Tattoo (inked in 2008,

registered in 2016)—were registered ***more than five years*** after they were published and are

therefore, not entitled to the presumption of validity.[4]  *Sem-Torq*, 936 F.2d at 854; *see* Dkts. 94-

5–10.  For the remaining Tattoos, to rebut the presumption of validity, Take-Two need only

"offer some evidence or proof to dispute or deny the plaintiff's prima facie case."  *Ent. Rsch.*

*Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).  As explained

below, the evidence more than rebuts any presumption of validity.

### A.      Two of the Tattoos Were Copied from Pre-Existing Sources

"[P]rotection for a work employing preexisting material in which copyright subsists does

not extend to any part of the work in which such material has been used unlawfully."  17 U.S.C. §

103(a); *see Psychopathic Recs., Inc. v. Anderson*, No. 08 Civ. 13407, 2009 WL 2591385, at *2

(E.D. Mich. Aug. 24, 2009).  Evidence that a work was "not original but copied from another's

work," is sufficient to rebut the statutory presumption of validity.  *Ent. Rsch. Grp.*, 122 F.3d at

1218.  As Plaintiff admitted, Mr. James "c[a]me into [Plaintiff's] shop with a playing card that

depicted a lion" and asked Plaintiff to ink something "similar" to it on his chest.  Dkt. 101-21 at

82:6–8, 83:21–25; Dkt. 101-2 ¶ 8.  That playing card was from the Venetian Resort, Dkt. 101-2 ¶

---

[4]    Inking tattoos on the bodies of public figures, whose tattoos were then shown on their bodies in various forms
of media, most certainly constitutes publication.  *See* U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
COPYRIGHT OFFICE PRACTICES (3d ed. 2021) § 1906.1 ("Publication occurs when the original copy of a statue is
offered to a group of museums for the purpose of publicly displaying the work.").

8, and as shown below, Plaintiff impermissibly copied it:



**Venetian Resort Logo[5]**          **Lion Tattoo**

Similarly, the Brother's Keeper Tattoo was copied from public domain material and, thus, is not original to Plaintiff. With regard to such derivative works, protection extends "only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). Here, as shown below, the entire tattoo is composed of preexisting elements, as there can be no dispute that this tattoo was copied from Michelangelo's "Creation of Adam" fresco painted on the ceiling of the Sistine Chapel, and the phrase "My Brother's Keeper," which comes from the Biblical story of Cain and Abel.




**Michelangelo's "Creation of Adam"**          **Brother's Keeper Tattoo**

Plaintiff admits that the Sistine Chapel was "among the sources of inspiration" for the Brother's Keeper Tattoo. Dkt. 101-32 at No. 1. And Plaintiff has admitted that the phrase "am I my brother's keeper" comes from the Biblical story of Cain and Able. Dkt. 101-21 at 116:20–

---

[5]     Dkt. 101-48.

117:2.  To the extent Plaintiff is asserting he owns a copyright in the typography of the words

inked here, as Your Honor previously held, "typographical ornamentation" is "expressly

uncopyrightable."  *Hayden v. 2K Games, Inc.*, 375 F. Supp. 3d 823, 827 (N.D. Ohio 2019)

(citing COMPENDIUM (THIRD) § 906.4 ("As a general rule, typeface, typefont, lettering,

calligraphy, and typographic ornamentation are not registrable.")).  Plaintiff contributed little

material, if any, to the Lion Tattoo and the Brother's Keeper Tattoo, and he therefore does not

own valid copyrights therein.[6]

**B.      The Tattoos Comprise Standard Tattooing Tropes and Uncopyrightable Elements**

Copyright protection also does not extend to elements that are *scenes a faire* or

"standard" in the treatment of a topic.  *Stromback v. New Line Cinema*, 384 F.3d 283, 296 (6th

Cir. 2004).  Of the remaining four tattoos at issue, two comprise trivial additions of common

tattoo tropes to pre-existing tattoos inked by different tattooists.  Plaintiff admits that his

contributions to the Scroll Tattoo are only the clouds and cherubs on the edges—the main

portion of the tattoo was inked by a different tattooist.  Pl.'s Mot. 6 n.4.  A side-by-side showing

Mr. Green's arm before and after Plaintiff inked the Scroll Tattoo is shown below. Dkt. 95-3 ¶ 7.



**Before**          **After**

Similarly, Plaintiff's contributions to the Fire Tattoo are only flames around a pre-

---

6      Plaintiff failed to include any of these material facts in his copyright applications for these two tattoos.  *See* Dkt 95-50 at 16–30, 74–87.

existing basketball player.  Pl.'s Mot. 6 n.3.  A side-by-side showing Mr. Green's arm before and after Plaintiff inked the Fire Tattoo is shown below.  *Id.* ¶ 6.

 

**Before**          **After**

Flames, as shown below in the examples provided by tattoo industry expert, Dr. Nina Jablonski, are a highly common filler in the tattooing industry.  Dkt. 95-10 ¶ 58.  These trivial contributions to other tattooists' works are not sufficient to constitute original works themselves. *See Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908–09 (2d Cir. 1980) (holding that the presumption of validity was rebutted where "[o]ne look" at the plaintiff's allegedly copyrightable figures revealed the element of originality was "totally lacking" and contributions by plaintiff were not more than "trivial").

                    

**Fire Tattoo**            **Examples of Fire Tattoos on NBA Players[7]**

The other two tattoos, the Gloria Tattoo and Shoulder Stars Tattoo are similarly unoriginal.[8]  The Gloria Tattoo consists of Mr. James' mother's name, Gloria, above an image of a lion, which covered up an old lion tattoo on Mr. James' arm.  Dkt. 95-2 ¶ 6.  Plaintiff cannot

---

[7]    Dkt. 95-10 ¶ 58.
[8]    Take-Two further notes that the Brother's Keeper Tattoo looks highly similar to a number of other chest tattoos
       using variations of this phrase.  *See* Dkt. 95-10 ¶ 60.

credibly claim originality in the name "Gloria" (*i.e.*, Mr. James' mother's name, which he told Plaintiff to ink on his arm).  *See Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 285 (3d Cir. 2004) (short phrases and names are not copyrightable).  The typeface Plaintiff used to write the name is also unprotectable.  *Supra* 9.  Lions are a common trope in tattooing, and indeed, Mr. James already had a lion in that very spot before Plaintiff inked him.  Dkts. 95-2 ¶ 6; 95-10 ¶ 56. Finally, the Shoulder Stars Tattoo merely consists of five ordinary repeating stars on Mr. James' shoulder.  This is not only a common trope in tattooing, Dkt. 95-10 ¶ 57, but simple shapes, even in repetition, are expressly uncopyrightable.  *Runstadler Studios, Inc. v. MCM Ltd. P'ship,* 768 F. Supp. 1292, 1298 (N.D. Ill. 1991) (noting that "plaintiff cannot appropriate any repetition of simple geometric shapes"); *Tompkins Graphics, Inc. v. Zipatone, Inc.*, No. 82 Civ. 5438, 1983 WL 398, at *2 (E.D. Pa. Aug. 15, 1983) ("Variations of squares, rectangles, circles and ellipses comprise four of the six pages which [defendant] allegedly copied from plaintiff.  Such basic geometric shapes have long been in the public domain and therefore cannot be regulated by copyright.").  Plaintiff thus cannot show that he is entitled to summary judgment on copyright ownership.

## II.     <u>PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON COPYING</u>

Plaintiff's hurdle to proving the second element of copyright infringement—copying—is even higher.  As an initial matter, Plaintiff fails to distinguish between the two sub-elements of copying that he bears the burden of proving: (1) factual copying and (2) legally actionable copying.  *Lexmark*, 387 F.3d at 534 (distinguishing between factual copying and legal copying); *see also Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Scholz Design, Inc. v. Bassinger Bldg. Co.*, No. 05 Civ. 71602, 2006 WL 3031388, at *4 (E.D. Mich. Oct. 23, 2006) (denying plaintiff's motion for summary judgment because there was "a genuine issue of material fact regarding whether" the works were substantially similar).

A.  **<u>The Motion is Moot on the Narrow Issue of Factual Copying</u>**

To show factual copying, a plaintiff needs to show that the defendant "actually used the copyrighted material to create his own work." *Gen. Universal Sys.,* 379 F.3d at 141.  As it makes clear in its Motion for Summary Judgment, Take-Two does not contest that it realistically depicted the NBA players in *NBA 2K* as they actually appear in real life, which included their facial features, hair, body type, and tattoos.  Specifically, the NBA players are "scanned" into *NBA 2K* using "photogrammetry," which involves simultaneously taking hundreds of digital photographs of a player's body from different angles to create a photo-realistic version of the NBA player in the game.  Dkt. 101-5 ¶¶ 5–7.  The process captures a player's detailed likeness, from facial features, to build, to "scars, stretch marks, [and] moles" to anything else on the photographed skin, including tattoos.  Dkt. 95-29 at 30:4–14.  To the extent Plaintiff is moving on the narrow issue of factual copying, Plaintiff's Motion is moot.

That said, Plaintiff makes numerous misstatements about the process of creating *NBA 2K* that require clarification.  Although Plaintiff emphasizes the fact that corrections may be made during the photogrammetry process to ensure photorealism, the testimony in the record is very clear that the players' tattoos are ***not*** "manipulated."  Dkt. 93-17 at 38:6–10 ("Q: Do they work on tattoos?  A: No.  There's no work to be done on tattoos.  It's part of the photograph.").  What appears on Messrs. Green, James, and Thompson in the game is "automatically generated"—"[i]t is a transfer of data," not a manipulation or something done "by a person."  Dkt. 93-16 at 50:1–50:6.  Just like digital film, photography, or other forms of media in which the NBA Players regularly appear with their tattoos without Plaintiff's objection, and which Plaintiff contends are non-infringing, Means Decl. Ex. 2 (Hayden Tr.) 147:25–148:10 (Q: "[I]s it your position that it—that when a player appears on television playing basketball in an NBA game, or at a news conference about an NBA game, that they need your permission to be depicted with your

- 12 -

tattoos?"  A: "In regular life form, no, but in NBA 2K form, avatar form, yes."), photogrammetry captures the NBA Players photographically, just as they look in real life.

### B.   Plaintiff Cannot Show Actionable Copying

"[C]opying as a factual matter is insufficient" to establish the second element of the copyright claim.  4 NIMMER ON COPYRIGHT at § 13.01[B].  A plaintiff must also show actionable (legal) copying.  *Lexmark*, 387 F.3d at 534.  This requires a showing of "substantial similarity." *Kohus*, 328 F.3d at 854.  To determine substantial similarity, a court must filter out the unoriginal, unprotectable, elements of the work, such as portions of the work that were not independently created or constitute *scenes a faire*.  *Id.* at 855–56.  Once the unprotectable elements have been filtered out, a court must compare plaintiff's work with the allegedly infringing work to determine whether the two are substantially similar.  *Id.* at 856.

Plaintiff cannot show actionable copying, let alone prove it dispositively to get summary judgment, because once the unprotectable elements are filtered out of the Tattoos, there is nothing protectable left.  *Supra* 7–11.  Two of the Tattoos were copied from other sources. *Supra* 7–9.  And the Tattoos comprise common elements and tropes that are widespread across tattooing, as well as uncopyrightable short phrases, names, typefaces and the repetition of simple shapes, and are thus not the property of Plaintiff.  *Supra* 9–11.

Even if the Lion Tattoo and Brother's Keeper Tattoo were protectable, Plaintiff cannot show substantial similarity with regard to these tattoos because both are covered by players' jerseys in *NBA 2K*.  Indeed, as shown even in the unnaturally cropped and zoomed-in images that Plaintiff selected for his Complaint, Dkt. 33 ¶ 135, these two Tattoos cannot be seen in the game, and thus cannot be substantially similar.  As the designs for these Tattoos cannot be seen in *NBA 2K*, Plaintiff cannot prove substantial similarity, and by extension, actionable copying.  *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 924 (6th Cir. 2003).




| **LeBron James** | **Tristan Thompson** |

Thus, to the extent Plaintiff's Motion attempts to go beyond factual copying to reach

issues regarding actionable (legal) copying, it is unsupported by the facts in the record, or black-

letter copyright law, and should be denied.

**III.    PLAINTIFF'S COPYRIGHT CLAIM FAILS AS A MATTER OF LAW**

Even if the Court accepts Plaintiff's argument that these works are substantially similar,

the realistic depiction of the NBA Players in *NBA 2K* is still not copyright infringement for the

reasons provided in Take-Two's Motion for Summary Judgment.

***First***, *NBA 2K* makes fair use of the Tattoos.  *See, e.g.*, *Nat'l Rifle Ass'n of Am. v.*

*Handgun Control Fed'n of Ohio*, 15 F.3d 559, 561 (6th Cir. 1994) (dismissing copyright claim

based on fair use).  As detailed in Take-Two's Motion for Summary Judgment, the Tattoos

served fundamentally different purposes for the parties—Plaintiff inked a design that the NBA

Players' requested in order to effectuate their personal expression; Take-Two by contrast

included in *NBA 2K* whatever was on the NBA Players' bodies, including the Tattoos, for the

purpose of realism.  Defs.' Mot. 11–15.  Moreover, the Tattoos are unoriginal and used only

fleetingly in *NBA 2K*, and Take-Two took no more than necessary to achieve its purpose of

creating a realistic video game.  *Id.* at 15–17.  And there is no market for licensing the use of

tattoos on the individuals on whom they are inked in real life in a video game.  *Id.* at 18–21.

***Second***, only ***unauthorized*** copying is infringement under the Copyright Act.  *Great*

*Minds v. FedEx Off. & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018).  As detailed in Take-

Two's Motion for Summary Judgment, there is no infringement here because Plaintiff authorized Messrs. Green, James, and Thompson to show and allow others to show the players with their tattoos in media. Defs.' Mot. at 21–23. Those players then gave the NBA and NBAPA the right to license their likenesses, including the Tattoos, which they in turn licensed to Take-Two. *Id.* at 21.

**Third**, the Tattoos are a *de minimis* part of *NBA 2K*, as they are difficult to observe. *See Gordon*, 345 F.3d at 924 (considering the observability of the works in determining *de minimis* use). When users play the game, they can choose from over 400 NBA players, such that Messrs. Green, James, and Thompson often will not appear at all. Defs.' Mot. at 25. Even when these players are selected, each quarter of *NBA 2K* only lasts a few minutes, and the Tattoos are difficult to see. *Id.* at 26. Overall, the Tattoos represent a fractional piece of *NBA 2K*. *See MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 89 F.3d 1548, 1560 (11th Cir. 1996) (no infringement as protectable elements "were not of such significance to the overall program to warrant an ultimate finding of substantial similarity").

## CONCLUSION

For the foregoing reasons, Take-Two respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment.

Dated:  New York, NY
      November 22, 2021

*/s/ Dale M. Cendali*

Dale M. Cendali (admitted *pro hac vice*)
Joshua L. Simmons (admitted *pro hac vice*)
Chris Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and
Take-Two Interactive Software, Inc.*

## **L.R. 7.1(F) CERTIFICATION**

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track, that the Defendants have received prior approval from the Court to file a memorandum in opposition to Plaintiff's Partial Motion for Summary Judgment that can be up to thirty (30) pages in length, and that the foregoing memorandum complies with the applicable page limitation of thirty (30) pages.

*/s/ Dale M. Cendali*
*Attorney for Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.*

1