**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN,<br><br>Plaintiff,<br><br>v.<br><br>2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC. ,<br><br>Defendants. | CASE NO. 1:17-cv-02635-CAB |

**DEFENDANTS 2K GAMES, INC. AND TAKE-TWO INTERACTIVE SOFTWARE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JAMES HAYDEN'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF JAMES E. MALACKOWSKI**

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ........ **1**

**FACTUAL BACKGROUND** ........ **3**

**ARGUMENT** ........ **6**

I. MALACKOWSKI CONSIDERED THE CORRECT REVENUE IN HIS DISGORGEMENT ANALYSIS AND PROPERLY EXCLUDED VIRTUAL CURRENCY ........ 6

II. MALACKOWSKI APPROPRIATELY RELIED IN PART ON TAKE-TWO'S OTHER EXPERTS ........ 8

A. Malackowski Properly Relied on Dr. Bogost to Determine the Percentage of the Playable *NBA 2K* Program that Consists of the Tattoos........ 9

B. Malackowski Properly Relied on the Jay Survey's Conclusion That No One Purchased *NBA 2K* for the Tattoos........ 14

III. MALACKOWSKI'S OPINIONS ARE NOT UNFAIRLY PREJUDICIAL. ........ 15

**CONCLUSION** ........ **15**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Craton v. Birds Eye Foods, Inc.*,
No. 10 Civ. 541, 2013 WL 12421822 (W.D. Mich. Dec. 20, 2013) ....................................3, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................................................................................................6, 11, 14

*Design Basics, LLC v. Forrester Wehrle Homes, Inc.*,
380 F. Supp. 3d 692 (N.D. Ohio 2019)...................................................................................8

*Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*,
103 F.3d 495 (6th Cir. 1996) ................................................................................................15

*ECIMOS, LLC v. Carrier Corp.*,
971 F.3d 616 (6th Cir. 2020) ............................................................................................8, 12

*Guthy-Renker Corp. v. Bernstein*,
39 F. App'x 584 (9th Cir. 2002) ...........................................................................................10

*Love v. Kwitny*,
772 F. Supp. 1367 (S.D.N.Y. 1991)......................................................................................10

*Lyngaas v. Ag*,
992 F.3d 412 (6th Cir. 2021) ................................................................................................14

*Mannino v. Int'l Mfg. Co.*,
650 F.2d 846 (6th Cir. 1981) ..................................................................................................9

*Ohio Env't Dev. Ltd. v. Envirotest Sys. Corp.*,
478 F. Supp. 2d 963 (N.D. Ohio 2007)...................................................................................9

*Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*,
338 F. App'x 329 (4th Cir. 2009) ...........................................................................................7

*Satija v. Permanent Gen. Assurance Corp. of Ohio*,
No. 13 Civ. 82, 2014 WL 1664557 (N.D. Ohio Apr. 25, 2014).........................................7, 8

*Schuchart & Assocs. v. Solo Serve Corp.*,
No. SA-81-CA-5, 1983 WL 1147 (W.D. Tex. June 28, 1983).............................................10

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ...........................................................................................3, 11, 14

*Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc.*, 367 F.2d 236 (9th Cir. 1966) ....................9, 11

*Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333 (S.D.N.Y. 2020)....................4, 6, 14, 15

*Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283 (Fed. Cir. 2015)....................9, 14

*United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993) ....................3, 15

*United States v. L.E. Cooke Co.*, 991 F.2d 336 (6th Cir. 1993) ....................8

**Statutes**

17 U.S.C. § 504....................8

Defendants Take-Two Interactive Software, Inc. and 2K Games, Inc. (collectively, "Take-Two") respectfully submit this memorandum of law in opposition to James Hayden's ("Plaintiff") motion to exclude the expert testimony of James E. Malackowski ("Motion").

## PRELIMINARY STATEMENT

Take-Two's expert, James Malackowski, is one of the world's most esteemed experts in intellectual property valuation and damages. In this case, he submitted three reports regarding the amount of damages, if any, that Plaintiff would be due from Take-Two's depiction of six tattoos in which Plaintiff alleges he holds copyrights ("the Tattoos") that appear on three NBA players—Danny Green, LeBron James, and Tristan Thompson ("the NBA Players")—in the *NBA 2K* video games.[1] He concluded that, even assuming that Plaintiff is able to show Take-Two's liability in this case, (a) Plaintiff has not experienced any actual damages as a result of Take-Two's use of the Tattoos; (b) none of Take-Two's profits or revenues are attributable to the Tattoos; (c) if any amount is owed, it would be at most a few thousand dollars per tattoo; (d) there is no market for licensing tattoos for depiction in video games of tattoos on the players on whom the Tattoos are inked in real life; and (e) such a market is unlikely to develop.

As an initial matter, Plaintiff neither questions Malackowski's qualifications nor his opinions concerning the lack of an existing or likely to be developed market for licensing tattoos in video games. Thus, Plaintiff tacitly concedes that those opinions may be considered by the Court in deciding Take-Two's motion for summary judgment and by the jury at trial.

As to the balance of Malackowski's opinions, Plaintiff sets forth three arguments for their exclusion, none of which have merit. ***First***, Plaintiff tries to exclude Malackowski's opinions

[1] The games in question are *NBA 2K16*, *NBA 2K17*, *NBA 2K18*, *NBA 2K19*, *NBA 2K20*, and *NBA 2K Mobile* (collectively, "*NBA 2K*"). Moreover, as Malackowski explains in his report, two of the six Tattoos are chest tattoos that are covered up by uniforms. *Infra* 6.

because he does not agree with the opinions of Plaintiff's expert, Michal A. Malkiewicz,[2] that there should be an apportionment of Take-Two's profits from its sales of virtual currency ("VC") to the Tattoos. This makes no sense for multiple reasons. A significant portion of Malackowski's reports are devoted to explaining the apportionment analysis of Take-Two's revenues from sales of *NBA 2K*. Plaintiff evidently seeks to apportion profits from the same revenue and revenue from another element, VC. It does not make sense to exclude Malackowski's *entire* report because he did not apportion profits from *one element*. Plaintiff's argument also makes no sense because there is no basis to apportion VC-based profits, as Malackowski thoroughly explained in his rebuttal report[3]—Plaintiff has not accused VC of infringement, VC is sold to consumers only ***after*** they purchase *NBA 2K* (which already includes the Tattoos), VC does not and is not used to depict the Tattoos, and VC cannot be used to purchase the Tattoos. Plaintiff is obviously doing whatever he can to inflate the revenue numbers in this case, but a desire to apportion VC-based revenue that bears no relationship to the Tattoos is not grounds to exclude Malackowski's reports. In fact, as explained in Take-Two's motion to exclude testimony by Plaintiff's expert, Malkiewicz, Malkiewicz's testimony concerning VC should be excluded as not causally linked to profits. Dkt. 104-1 at 14–15. In any event, if Malkiewicz is permitted to present testimony about VC revenues, certainly Malackowski is permitted to present his opinions that VC bears no relationship to the Tattoos.

  ***Second***, Plaintiff argues that Malackowski's opinions should be excluded because he relies in part on facts presented by Take-Two's consumer survey expert, Dr. Jay, and video game

---

[2]   It is an odd coincidence that these two experts have similar names, and Take-Two tries to clearly identify each throughout this memorandum.

[3]   Malackowski's third report, a supplemental report that responded to issues Plaintiff raised for the first time in rebuttal reports, was proper under the Federal Rules, timely, and not prejudicial to Plaintiff. *See* Dkt. 69.

expert, Dr. Bogost, to support his opinion that Plaintiff is entitled to no damages, or at most, a few thousand dollars per tattoo. Plaintiff's arguments are a rehash of the motions to exclude the testimony of Drs. Jay and Bogost; they fail because each expert is highly qualified in their fields and offers well-supported and methodologically sound opinions, as detailed in Take-Two's concurrently filed oppositions to those motions. Plaintiff's disagreement with conclusions that rely in part on these experts is not a ground for exclusion. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) ("[A] court must be sure not 'to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.'" (quoting Fed. R. Evid. 702 advisory committee's note, 2000 amend.)). Moreover, it is well-established "that experts may base their opinions in part on the opinions of other experts." *Craton v. Birds Eye Foods, Inc.*, No. 10 Civ. 541, 2013 WL 12421822, at *9 (W.D. Mich. Dec. 20, 2013).

***Third***, Plaintiff argues that Malackowski's opinions should be excluded because they are prejudicial. But "[r]elevant evidence is inherently prejudicial." *United States v. Bonds*, 12 F.3d 540, 574 n.30 (6th Cir. 1993). It, however, is "only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Id.* (emphasis in original). Because the alleged "prejudice" is simply that Malackowski's opinions support Take-Two's case, this argument fails. For these reasons, Plaintiff's Motion should be denied.

## FACTUAL BACKGROUND

Take-Two's expert, Malackowski, is the Chairman and Chief Executive Officer of Ocean Tomo, LLC. Dkt. 95-7 App'x A ("Malackowski Rpt.") 1. He is "a founding and continuous member of the IP Hall of Fame Academy" and has been "recognized annually since 2007 by leading industry publications as one of the 'World's Leading IP Strategists.'" *Id.* He also was inducted into the Chicago Area Entrepreneurship Hall of Fame by the Institute for Entrepreneurial Studies at the University of Illinois at Chicago College of Business

Administration. *Id.* He was selected in 2011 by the World Economic Forum as one of less than twenty members of the Network of Global Agenda Councils to focus on questions of IP policy. *Id.* He has testified as an expert more than fifty times in many courts. *Id.* He is also a "frequent speaker on emerging technology markets and related financial measures," and has appeared on Bloomberg, CNBC, and Fox Business programs. *Id.* at 2. His "experience extends to matters of general business valuation and commercial disputes, both domestic and foreign." *Id.* at 1.

Malackowski's opinions were accepted by the Southern District of New York in a highly similar copyright lawsuit concerning the realistic depiction of NBA players, including LeBron James, with their tattoos in certain editions of *NBA 2K*, including the *NBA 2K16* game at issue in this case. *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333 (S.D.N.Y. 2020). In particular, the court allowed his opinion that "none of the profits associated with *NBA 2K* are attributable to the Tattoos and, as a result, Plaintiff has not been damaged by Defendants' alleged infringement." *Id.* at 353. The court noted that "the issue of damages is squarely raised in this litigation and Defendants are entitled to offer opinions from experts, like Mr. Malackowski, on the issue of damages." *Id.* The court also held that Malackowski was allowed to rely on the results offered by a survey expert, Dr. Jay, on whom he also relies in this case. *Id.*

As he did in *Solid Oak*, here, Malackowski submitted a thorough economic analysis spanning three expert reports in which he reached similar opinions that are relevant to Take-Two's liability and damages arguments. In his opening report, Malackowski examined the relevant parties and events and the available copyright infringement remedies. Malackowski Rpt. 6–25. Among other things, he assessed whether any of Take-Two's profits were attributable to the alleged infringement, considered the evidence including a survey conducted by the well-regarded survey expert Dr. Jay, Dkt. 101-6, Ex. A ("Jay Survey"), and concluded that

"no sales revenues or profits are attributable to the alleged infringement of the Tattoos by Take-Two." Malackowski Rpt. 34–35. Notwithstanding this conclusion, he also analyzed what amount of Take-Two's profits would be attributable to the alleged infringement if it were nevertheless determined that some amount was attributable. *Id.* at 38–39. He concluded that it would be ***at most*** a few thousand dollars per Tattoo, based on Take-Two's profits from its sales of *NBA 2K* and the percent of computer program that the Tattoos comprise, relying on the expertise of Dr. Bogost. *Id.* at 39; Dkt. 95-8 ("Bogost Decl.").

Plaintiff's expert, Malkiewicz, also served an opening report. He opined that Plaintiff was entitled to disgorge Take-Two's profits. Dkt. 98-3 ("Malkiewicz Rpt.") ¶ 11. He included not only Take-Two's revenue from sales of *NBA 2K*, but also its separate revenues from VC, which is something that *NBA 2K* users can purchase to more quickly unlock features of the game. Declaration of Chris Ilardi ("Ilardi Decl.") Ex. A (Malkiewicz Tr.) 188:9–10. VC, however, cannot be used to purchase or depict the Tattoos in *NBA 2K*. *Id.* 189:8–11.

Given that VC is unrelated to the Tattoos, Malackowski's rebuttal opinions explained why Plaintiff should not recover any profits from sales of VC. He explained that "Malkiewicz provides no basis for asserting that recurrent consumer spending [comprising VC] results from or is related to the alleged infringement of the Tattoos in" *NBA 2K*. Dkt. 98-2 ("Malackowski Reb. Rpt.") 16. He also analyzed the evidence and demonstrated why no such relationship exists, including because (a) "the Tattoos 'cannot be purchased [with VC] from the NBA 2K tattoo store,'" (b) the tattoo shop and MyPlayer tattoo customization feature in *NBA 2K* for which VC can be used do not include the Tattoos, (c) the Neighborhood feature for which VC can be used does not include the Tattoos, and (d) none of the statements made by Take-Two concerning recurrent consumer spending (*i.e.*, VC) in *NBA 2K* reference the Tattoos. *Id.* at 16–17. At

bottom, Malackowski pointed out both that there is no evidence of any link between sales of VC and the six Tattoos at issue in this case, and Malkiewicz has identified none. *Id.*

## ARGUMENT

Take-Two's expert, Malackowski, submitted well-reasoned, well-supported, and methodologically sound expert reports. A similar report in a highly similar case was admitted and considered by a court on summary judgment for these reasons. *Solid Oak*, 449 F. Supp. 3d at 353. Plaintiff simply does not like Malackowski's conclusions and is trying anything he can to keep them out, but Plaintiff's dislike is not a ground for exclusion. To the extent Plaintiff has any basis to dispute Malackowski's opinions, he will have the opportunity to cross-examine him at trial. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

### I. MALACKOWSKI CONSIDERED THE CORRECT REVENUE IN HIS DISGORGEMENT ANALYSIS AND PROPERLY EXCLUDED VIRTUAL CURRENCY

In his disgorgement analysis, Malackowski considered Take-Two's profits from sales of *NBA 2K* attributable to the Tattoos.[4] He opined that it was not appropriate to apportion Take-Two's profits from its sales of VC because there is no evidence of any link between sales of VC and the six Tattoos at issue in this case. *Supra* 5.[5] In Plaintiff's quest to artificially inflate Take-Two's alleged profits from depicting six Tattoos (two of which are covered by jerseys, *see* Malackowski Reb. Rpt. 17), he criticizes Malackowski for opining that no profits should be disgorged from sales of VC and seeks to exclude his opinions in their entirety.

---

[4] Malackowski counted revenue only from *NBA 2K* games that are accused of infringement in the operative Complaint. Plaintiff argues across four footnotes, Mot at 2 n.2, 5 nn.3–4, 6, that *NBA 2K21* and *2K22* should have been included. As Plaintiff tacitly admits, however, none of these games are accused of infringement in any complaint in this case. *E.g.*, *id.* at 5 n.4. Although he claims that he intends to move to amend the Complaint to add these games, the time to do so has long since passed.

[5] Moreover, Malackowski's overall conclusion is that none of Take-Two's profits are attributable to the alleged infringement. *Infra* 14.

But Malackowski's opinions are plainly correct. As Take-Two explained in its motion to exclude Plaintiff's expert's (Malkiewicz) VC-based opinions, "[a] plaintiff in a copyright case seeking disgorgement of profits must show a 'reasonable relationship' between revenues and the act of infringement." Dkt. 104-1 at 14–15 (quoting *Satija v. Permanent Gen. Assurance Corp. of Ohio*, No. 13 Civ. 82, 2014 WL 1664557, at *6 (N.D. Ohio Apr. 25, 2014)). That requires "non-speculative evidence," which "must include 'some causal link between the infringement and the particular profit stream before the burden-shifting provisions of [17 U.S.C.] § 504(b) apply.'" *Satija*, 2014 WL 1664557, at *6 (quoting *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*, 338 F. App'x 329, 333 (4th Cir. 2009)). Failure to present such evidence may preclude the ***plaintiff's expert*** from testifying "about what revenue is reasonably related to or attributable to Defendants' use of the" allegedly infringing work. *Satija*, 2014 WL 1664557, at *7.

Malackowski's determination that no profits should be disgorged from sales of VC is well supported. Contrary to Plaintiff's assertions that Malackowski "ignor[ed]" or "arbitrarily exclude[d]" VC, Mot. 5–6, he reviewed the evidence, identified no relationship between VC revenue and the Tattoos, and demonstrated how Plaintiff's alleged evidence actually proved why no VC profits should be disgorged. Malackowski Reb. Rpt. 16–17; *supra* 5. By contrast, Plaintiff's expert, Malkiewicz, did not "show a 'reasonable relationship' between [VC] revenues and the act of infringement," thus making Take-Two's VC revenue irrelevant. *Satija*, 2014 WL 1664557, at *6. Moreover, to the extent that any VC revenue is presented to the jury in this case, it would at best present a factual dispute between the experts: Malkiewicz's apparent opinion that VC revenue bears a relationship with the alleged infringement against Malackowski's opinion that it does not.[6] Then, whether ***any*** profits from VC are "'attributable to the infringement' will

[6] Plaintiff argues that Malkiewicz documents a relationship between VC and the Tattoos, citing, without explanation, to Paragraphs 102–114 of Malkiewicz's opening report. Mot at 5–6. Nowhere in those paragraphs

be a matter for the jury to decide." *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 380 F. Supp. 3d 692, 701 (N.D. Ohio 2019) (quoting 17 U.S.C. § 504(b)); *Satija*, 2014 WL 1664557, at *7 ("jury . . . make[s] a common-sense determination of the magnitude of the relationship").[7]

In an effort to fabricate a relationship between VC and the Tattoos, Plaintiff repeatedly quotes Malackowski's deposition testimony in which he acknowledges that VC is purchased and spent in *NBA 2K*. Mot. 6. Yet, it is unremarkable that VC is a source of revenue for Take-Two; what matters is the relationship between that revenue and the alleged infringement, and Malackowski determined there is none. Malackowski Reb. Rpt. 16–17.

## II. MALACKOWSKI APPROPRIATELY RELIED IN PART ON TAKE-TWO'S OTHER EXPERTS

Beyond his desire to exclude Malackowski's opinions in their entirety because he did not apportion revenue from VC, Plaintiff next argues that his opinions that little to no profits are attributable to the Tattoos do not satisfy Take-Two's burden of apportionment under 17 U.S.C. § 504(b), and attacks the data that Drs. Bogost and Jay provided him. Mot. 7. This too fails. These arguments are duplicative of the arguments that Plaintiff made in seeking to exclude Drs. Bogost and Jay, and fail for the reasons articulated in Take-Two's oppositions thereto, including because these experts are highly qualified and offered well-reasoned and well-supported opinions using appropriate methodologies. At best, Plaintiff's arguments would "bear on the weight of the evidence rather than on its admissibility," *United States v. L.E. Cooke Co.*,

---

does Malkiewicz correlate sales of VC to the Tattoos, let alone any real-life tattoos on NBA players. Malackowski Reb. Rpt. 15–17.

7 Plaintiff cites *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 635 (6th Cir. 2020) to argue that Malackowski is improperly attempting to "shift the onus of apportionment onto plaintiff." Mot. 6. Not so. Plaintiff failed in the first instance to demonstrate any reasonable relationship, *Satija*, 2014 WL 1664557, at *6, and moreover, Malackowski's opinion is simply that *no* profit should be disgorged, with which the jury is entitled to agree. *ECIMOS*, 971 F.3d at 635 ("it is ultimately for the jury to decide how much profit—after hearing the infringer's mitigating evidence—must be disgorged").

991 F.2d 336, 342 (6th Cir. 1993), but even that would be overly generous to Plaintiff.

Further, courts in the Sixth Circuit regularly allow experts to rely on other experts. *See Ohio Env't Dev. Ltd. v. Envirotest Sys. Corp.*, 478 F. Supp. 2d 963, 974 (N.D. Ohio 2007) ("[W]ith regard to [the damages expert's] reliance upon [the technical expert's] calculations, an 'expert is free to give his opinion relying upon the types of data an expert would normally use in forming an opinion in his area of expertise.'" (quoting *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981)); *Craton*, 2013 WL 12421822, at *9 ("Various district courts have also explicitly stated that experts may base their opinions in part on the opinions of other experts.") (collecting cases); *see also Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1298 (Fed. Cir. 2015) (damages experts may rely on surveys they did not conduct).

### A. Malackowski Properly Relied on Dr. Bogost to Determine the Percentage of the Playable *NBA 2K* Program that Consists of the Tattoos

Although Malackowski determined "that no sales revenues or profits are attributable to the alleged infringement of the Tattoos by Take-Two," he also "considered Dr. Bogost's conservative calculation of the portion of the computer programs of the Accused Video Games attributable to the Tattoos as the basis for an allocation of Take-Two's profits from the Accused Video Games to the Tattoos that is generous to Mr. Hayden." Malackowski Rpt. 38. Plaintiff challenges Malackowski's methodology and the underlying data. Each challenge fails.

#### 1) Malackowski's Methodology was Appropriate

Plaintiff first challenges Malackowski's reliance on Dr. Bogost's determination that each Tattoo comprises at most 0.000515% of the playable *NBA 2K* computer program as being a "rejected" methodology. Mot. 8–10; Malackowski Rpt. 38–39. Yet, it is well-established that calculating an amount of disgorgement based on the percentage of the copied work is an appropriate damages methodology. *See Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc.*,

367 F.2d 236, 239 (9th Cir. 1966) (affirming profits award where "the court divided $19.10 [*i.e.*, the total gross profit] by 1000 for a profit per song of .191 cents"); *Schuchart & Assocs. v. Solo Serve Corp.*, No. SA-81-CA-5, 1983 WL 1147, at *19 (W.D. Tex. June 28, 1983) (awarding "one-third" of defendant's profits where "33.3%" of work was copied).[8]

Here, Dr. Bogost calculated the percentage of the file size that includes the Tattoos and compared that number to the total *NBA 2K* computer program. As Dr. Bogost explained, the files within *NBA 2K* consist of two groups: "[t]he first group is the software code and instructions used to run the game," and "[t]he second group is the data upon which the procedural elements do their processing, sometimes called *instantial* elements," and include things such as 3-D models, textures, and related materials. Bogost Decl. ¶ 108. To depict the appearance of the NBA Players, *NBA 2K* utilizes texture files, which are instantial assets that include all elements of the players' skin, including tattoos, and are "wrap[ped]" around the digital armatures of the NBA Players. *Id.* ¶¶ 23–24, 114. Texture files are not limited to the players' skin; as Dr. Bogost explained, "[h]igh-resolution texture maps of everything in the game must be produced—for faces, shoes, court surfaces, and everything else in the game too." *Id.* ¶ 112. By comparing the size of the texture files that contain the Tattoos to the total amount of *NBA 2K*'s data, Dr. Bogost determined the total visual contribution of the Tattoos to *NBA 2K*. *Id.* ¶¶ 113–14. Because the texture file size includes all elements of the players' skin, Dr. Bogost conservatively assumed that at most each Tattoo is 10% of the player's torso and arms, and reduced the contribution of each to one tenth of the total size of the texture file. *Id.* ¶ 114.

8 *See also Guthy-Renker Corp. v. Bernstein*, 39 F. App'x 584, 587 (9th Cir. 2002) (affirming .5% profits award where work "appeared on the screen 4.5% of the time"); *Love v. Kwitny*, 772 F. Supp. 1367, 1370 (S.D.N.Y. 1991) (holding that where "the infringed portion of plaintiff's manuscript accounted for" "at most . . . 2.6% of the book" that 2.6% apportionment of profits was "generous to plaintiff"), *aff'd*, 963 F.2d 1521 (2d Cir. 1992).

Malackowski multiplied the resulting percentage by Take-Two's profits from *NBA 2K* to calculate "an allocation of Take-Two's profits from the Accused Video Games to the Tattoos that is generous to Mr. Hayden." Malackowski Rpt. 38. Because the Tattoos are merely a kind of "visual noise" among all visual elements and none stand out as influencing consumer purchase behavior at all (let alone more or less than any other tattoo), Bogost Decl. ¶¶ 90–105, Malackowski Rpt. 34–40, Malackowski did not adjust the percentage. *See Shapiro*, 367 F.2d at 241 (affirming profits award calculated by dividing 12 by 1,000 and multiplying the percentage by total gross profits where plaintiff failed "to show that its twelve songs were any more valuable or conducive to sale of the book than were the other 988 songs in the book").

Unsurprisingly, Plaintiff disagrees with Malackowski's calculation, calling it a "token (near-trivial)" amount, Mot. 7, but it is actually generous in view of the evidence that no consumers purchase *NBA 2K* because of the Tattoos. *See* Jay Survey. Even Plaintiff's economics expert, Malkiewicz, purported to calculate the relative value of the Tattoos, arguing that "the Accused Avatars are likely to be selected an average of 66 percent more often than the average avatar." Malkiewicz Rpt. ¶ 99.[9] At best, the value (if any) of the Tattoos presents a dispute to be resolved at trial, not by the Court in a *Daubert* motion. *In re Scrap Metal*, 527 F.3d at 529 ("[A] court must be sure not to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." (internal quotation marks omitted).[10]

---

[9] Malkiewicz also admitted that each of the six Tattoos is one of up to thousands of tattoos that are depicted in *NBA 2K*, Ilardi Decl. Ex. A, (Malkiewicz Tr.) 218:5–219:1, and argued that "all of the characteristics of the game would . . . add up to the universe of value that a game brings to the defendants." *Id.* 164:3–6. Taking Malkiewicz's testimony at face value, if one were to divide Plaintiff's alleged calculation of Take-Two's profits attributable to all tattoos for *NBA 2K*, Dkt. 99-6 (Malkiewicz Reb. Rpt.) 22 n.79, by a conservative calculation of 1,000 total tattoos, that would result in a per tattoo value that, although vastly overstated, shows that Malackowski's calculation is appropriate.

[10] Take-Two separately moved to exclude this opinion by Malkiewicz, including because he lacks any expertise in the video game industry that would allow him to calculate this number. Dkt. 104-1 at 5–6.

Plaintiff argues that the size of the Tattoos are akin to lines of source code and thus cannot be used to allocate Take-Two's profits to the Tattoos. Mot. 8–9. Plaintiff is wrong. As Malackowski explained at his deposition, determining the file size of the Tattoos is "uniquely appropriate" in this case "as opposed to other cases where we're talking about software code" because, here, the Tattoos are visual elements being compared to all of the other realistic visual content in *NBA 2K*. Ilardi Decl. Ex. B (Malackowski Tr.) 172:12–24. Because source code and what someone actually sees are by their nature different, Malackowski's prior opinion concerning source code, to which Plaintiff cites, Mot. 9, is actually consistent with opinions in this case. Further, as Dr. Bogost explained, source code and instantial assets—such as texture files containing the Tattoos—are different components of a computer program. *Supra* 10. Whatever can be said about the value of lines of code that a consumer never sees, the size of the texture files reflects the visual display of the Tattoos in *NBA 2K*. *Id.*; Bogost Decl. ¶ 113.[11]

*ECIMOS*, relied on by Plaintiff, is inapposite for two reasons. ***First***, as with Malackowski's prior opinion, there is a material difference between "lines of code" at issue in *ECIMOS* and the instantial assets at issue here. *Supra* 10. ***Second***, in that case, the court held that a defendant could not "rely solely on the fact that only a small number of lines of code were copied to claim that the copyright violation was *de minimis*." *ECIMOS*, 971 F.3d at 630 (emphasis added). Yet, here, Malackowski's opinion is not intended to support a substantive defense, but rather is the basis for his apportionment analysis.

[11] Plaintiff argues that because Take-Two pays the NBA a license fee that allows Take-Two to use the NBA's logo among many other things, that somehow demonstrates that the size of the visual display of the Tattoos is "less defensible as a method for valuing intellectual property rights." Mot. 9 n.9. Plaintiff's argument is nonsensical. As Malkiewicz admitted, the NBA logo is a trademark that "tells people the game is authorized by the NBA," and could "signal to consumers about the quality of the product on which it is affixed." Ilardi Decl. Ex. A (Malkiewicz Tr.) 247:8–248:6. The logo also appears on the box and the games' startup screens. *Id.* 246:5–22. The Tattoos, by contrast, are not trademarks and do not appear on the box or the startup screens.

2) Plaintiff's Attack on the Underlying Data at Best Goes to Weight

Plaintiff also argues that the underlying data used in Dr. Bogost's analysis is allegedly "unauthenticated, unreliable and, indeed, of unknown origins." Mot. 10. Plaintiff is wrong. As Plaintiff admits, Dr. Bogost testified that he received the factual information concerning the size of the *NBA 2K* computer program and the size of the texture files that contain the Tattoos from "representatives of Take-Two or 2K Games." Mot. 11; *see also* Ilardi Decl. Ex. C (Bogost Tr.) 28:1–3 ("I would clarify that I know that that information was communicated to me from the developers"), 28:10–13 ("I requested it and received and incorporated [this information]"). That Dr. Bogost could not recall the last name of the person at Take-Two that provided the data to him at a moment during his deposition (three months after submitting his report), or the specific form in which it was communicated, does not make it unreliable, particularly when it has been confirmed in a sworn statement by Take-Two's Vice President, Head of Global Sports Marketing at 2K Games, Inc., Alfredo Brody. *See* Dkt. 101-5 ("Brody Decl.") ¶ 18.

Plaintiff also argues that Dr. Bogost should have reviewed other data, but there is no other source that Dr. Bogost could have relied upon. As Dr. Bogost explained, file size information had to come from Take-Two, because the size of the texture files "as they would appear in the game program are not the same as the format" in which they are viewed outside of the *NBA 2K* program. Ilardi Decl. Ex. C (Bogost Tr.) 21:9–16.[12] Plaintiff does not argue that there is anyone better suited than Take-Two's employees to provide this information. Mot. 10–12. Nor does Plaintiff argue in his Motion that the file sizes are wrong. *Id.* Plaintiff will be permitted the opportunity to cross-examine Take-Two's witnesses regarding the accuracy of the

[12] Take-Two further describes the appropriateness of Dr. Bogost's calculation in its concurrently filed opposition to Plaintiff's motion to exclude his testimony.

data, but that does not provide a basis for exclusion. *See In re Scrap Metal*, 527 F.3d at 530.[13]

### B. Malackowski Properly Relied on the Jay Survey's Conclusion That No One Purchased *NBA 2K* for the Tattoos

Plaintiff also argues that Malackowksi's opinions should be excluded because he relies in part on the results of a survey conducted by Take-Two's expert, Dr. Jay. Mot. 12–14. It is indisputable that experts may rely on surveys that they did not conduct. *Summit 6*, 802 F.3d at 1298; *Solid Oak*, 449 F. Supp. 3d at 353 ("Malackowski's reliance in part on Dr. Jay's survey results, which, as discussed above, have not been excluded, is not improper."). Indeed, even Plaintiff's expert, Malkiewicz, relies on a survey that was performed by Plaintiff's expert, Dr. H Tolga Bilgicer, to determine what amount of profits he believes is attributable to tattoos.[14]

As explained in detail in Take-Two's opposition to Plaintiff's motion to exclude Dr. Jay's testimony, the Jay Survey readily meets the requirements of reliability and relevancy under the Federal Rules. It tested whether consumers purchased *NBA 2K* because of the six Tattoos Plaintiff inked on the NBA Players, and concluded that they did not. Plaintiff argues Malackowski ignored "other evidence of the value of the depiction of realistic tattoos in the Accused Games (*e.g.*, money spent replicating them, importance of 'realism,' marketing activities, feedback/reviewer validation)." Mot. 13. But Malackowski thoroughly considered this alleged evidence, and explained why it does not demonstrate reasons why consumers

---

13 Plaintiff cites *Lyngaas v. Ag*, to argue that Dr. Bogost's testimony should be excluded because he "relies on unauthenticated and unreliable data." Mot. 10. In *Lyngaas*, however, the underlying data was a computer-generated compilation of fax transmissions. 992 F.3d 412, 431 (6th Cir. 2021). During a bench trial, the court held that the compilation was not admissible evidence because the plaintiff did not authenticate the data. *Id.* As a result, the court precluded expert testimony regarding the successful number of fax transmissions because the underlying evidence had been excluded. *Id.* Here, no trial has taken place, and were a witness required to authenticate the file size information, Take-Two would be able to provide that. *See* Brody Decl. ¶ 18.

14 Malkiewicz's opinions, and Dr. Bilgicer's survey, are both subject to pending *Daubert* motions, including because Malkiewicz is not a video game expert, yet offers opinions concerning how users interact with *NBA 2K* and improper damages opinions, and because Dr. Bilgicer's survey is flawed and unreliable. Dkts. 102, 104.

***purchase*** *NBA 2K*. Malackowski Reb. Rpt. 5–12, 17–20, 24–25. Because the Jay Survey determined that ***no*** consumers purchased *NBA 2K* because of the Tattoos, and because the other evidence in this case points to the same conclusion, Malackowski concluded that all of Take-Two's profits are attributable to factors other than the Tattoos. *See Solid Oak*, 449 F. Supp. 3d at 353 (crediting Malackowski's opinion that "none of the profits associated with NBA 2K are attributable to the" tattoos at issue in that case based in part on a survey conducted by Dr. Jay).

## III. MALACKOWSKI'S OPINIONS ARE NOT UNFAIRLY PREJUDICIAL.

As a last gasp effort to exclude Malackowski's opinions, Plaintiff argues that even if Malackowski's opinions are reliable and not improper, they are misleading and confusing, and therefore unfairly prejudicial. Mot. 14–15. Yet, "'[u]nfair prejudice' means the undue tendency to suggest a decision based on improper considerations; it 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence.'" *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 515 (6th Cir. 1996) (quoting *Bonds*, 12 F.3d at 567). Here, Plaintiff complains about two allegedly prejudicial opinions—Malackowski's use of Dr. Bogost's file size calculation and the Jay Survey. As described above, however, although these opinions are damaging to Plaintiff's request for damages, the evidence relied on is highly probative and, thus, not "unfair." *Doe*, 103 F.3d at 515. As Plaintiff offers no other argument to support his unfair prejudice argument, he has failed to show the type of prejudice required for exclusion.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude the Expert Testimony of Mr. James E. Malackowski should be denied.

Dated: New York, NY
November 22, 2021

*/s/ Dale M. Cendali*

Dale M. Cendali (admitted *pro hac vice)*
Joshua L. Simmons (admitted *pro hac vice*)
Chris Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.*