# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES HAYDEN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>2K GAMES, INC. and TAKE-TWO<br>INTERACTIVE SOFTWARE, INC.,<br><br>　　　　Defendants. | CASE NO. 1:17-cv-02635-CAB |

**DEFENDANTS 2K GAMES, INC. AND TAKE-TWO
INTERACTIVE SOFTWARE, INC.'S OPPOSITION TO PLAINTIFF JAMES
HAYDEN'S MOTION TO EXCLUDE TAKE-TWO'S THIRD PARTY DECLARANTS
OR RE-OPEN DISCOVERY TO TAKE THEIR DEPOSITIONS**

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**FACTUAL BACKGROUND** .................................................................................................... 4

**ARGUMENT** ............................................................................................................................... 6

      A.     The NBA Players Were Identified by Take-Two During Fact Discovery.............. 7

      B.     Take-Two Did Not Refuse to Provide the NBA Players' Addresses During Fact Discovery ........................................................................................................ 9

      C.     Plaintiff is Not Harmed or Unduly Prejudiced ...................................................... 11

      D.     Re-Opening Discovery is Improper and Prejudicial to Take-Two ....................... 15

**CONCLUSION** ......................................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abdelal v. Kelly*,
 No. 13 Civ. 4341, 2018 WL 3812443 (S.D.N.Y. Aug. 10, 2018) ..........................................13

*Abriq v. Metro. Gov't of Nashville and Davidson Cnty.*,
 No. 17 Civ. 690, 2018 WL 4561247 (M.D. Tenn. Jul. 27, 2018)..............................................7

*Charvat v. Echostar Satellite, LLC*,
 No. 07 Civ. 1000, 2009 WL 2169190 (S.D. Ohio Jul. 16, 2009) ..............................................7

*Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*,
 No. 13 Civ. 1047, 2016 WL 9460472 (W.D. Ky. June 29, 2016) .........................................7, 9

*In re Cox Motor Express of Greensboro, Inc.*,
 No. 15 Civ. 2023, 2016 WL 6661318 (M.D.N.C. Nov. 4, 2016) ............................................14

*EQT Prod. Co. v. Magnum Hunter Prod., Inc.*,
 No. 16 Civ. 150, 2017 WL 2295906 (E.D. Ky. May 25, 2017) ..............................................14

*Etheridge v. E.I. DuPont De Nemours & Co., Inc.*,
 No. 14 Civ. 2443, 2015 WL 12516227 (W.D. Tenn. Oct. 14, 2015) ......................................14

*Gamble v. JP Morgan Chase & Co.*,
 No. 15 Civ. 496, 2016 WL 4541818 (M.D. Tenn. Aug. 31, 2016) ...........................................7

*Garibay v. Caravan Realty, LLC*,
 No. 19 Civ. 10910, 2021 WL 4620951 (C.D. Cal. Mar. 9, 2021) ..........................................10

*Green v. Bakemark USA, LLC*,
 No. 13 Civ. 841, 2016 WL 234616 (S.D. Ohio Jan. 20, 2016)..................................................9

*Hoskins Oil Co., LLC v. Equilon Enters., LLC*,
 No. 16 Civ. 417, 2019 WL 691394 (E.D. Tenn. Feb. 19, 2019) .............................................13

*Howe v. City of Akron*,
 801 F.3d 718 (6th Cir. 2015) ...................................................................................................12

*Intel Corp. v. VIA Techs., Inc.*,
 204 F.R.D. 450 (N.D. Cal. 2001)......................................................................................12, 15

*Jackson v. Old Dominion Freight Line*,
 No. 16 Civ. 977, 2018 WL 1521764 (S.D. Ohio Mar. 28, 2018) .............................................8

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Roberts ex rel. Johnson v. Galen of Virginia, Inc.*,
  325 F.3d 776 (6th Cir. 2003) ..............................................................................................7, 11

*McFerrin v. Allstate Prop. and Cas. Co.*,
  29 F. Supp. 3d 924 (E.D. Ky. 2014) ..............................................................................................9

*Newman v. GHS Osteopathic, Inc., v. Parkview Hosp., Div.*,
  60 F.3d 153 (3d Cir. 1995) ..............................................................................................7

*Prod. Design Servs., Inc. v. Sutherland-Schultz, Ltd.*,
  No. 13 Civ. 338, 2015 WL 4945745 (S.D. Ohio Aug. 20, 2015) ........................................7, 11

*Redmond v. United States*,
  194 F. Supp. 3d 606 (E.D. Mich. 2016) ..............................................................................11, 13

*Solid Oak Sketches, LLC, v. 2K Games, Inc.*,
  449 F. Supp. 3d 333 (S.D.N.Y. 2020) ..............................................................................................12

*Yoe v. Crescent Sock Co.*,
  No. 15 Civ. 3, 2017 WL 11218928 (E.D. Tenn. Oct. 4, 2017) ..............................................14

**Rules**

Fed. R. Civ. P. 26 ..............................................................................................3, 8

Fed. R. Civ. P. 37 ..............................................................................................6, 8

Defendants Take-Two Interactive Software, Inc. and 2K Games, Inc. (collectively, "Take-Two") respectfully submit this opposition to Plaintiff James Hayden's ("Plaintiff") Motion to Exclude Take-Two's Third Party Declarants, or Alternatively, to Re-Open Discovery to Take their Depositions (the "Motion") (Dkt. 121).

## PRELIMINARY STATEMENT

Plaintiff's Motion is a "Hail Mary" litigation tactic to exclude the testimony of Danny Green, LeBron James, and Tristan Thompson (the "NBA Players"), the three professional basketball players on whom Plaintiff inked the very tattoos at issue in this case (the "Tattoos"). The Motion should be denied. Plaintiff's only argument for excluding this testimony is his outlandish claim that he was unfairly "surprised" by declarations submitted by the NBA Players in connection with Take-Two's summary judgment motion, as Plaintiff asserts that he did not know these players were persons with discoverable information in this case. That claim is demonstrably false. Plaintiff's own complaint, dated December 18, 2017, **explicitly names, discusses, and shows pictures** of each NBA Player, as does the operative Fourth Amended Complaint. *See generally* Dkts. 1, 33. Plaintiff knew about these players because **they are his own clients**, on whom he himself inked the Tattoos. *Id.*

Plaintiff also demonstrably knew that Take-Two might rely on the NBA Players' testimony in this case. At the beginning of fact discovery, Take-Two identified each NBA Player in its initial disclosures, telling Plaintiff that these players were "likely [to] hav[e] discoverable information that Take-Two may use to support its claims or defenses," including knowledge of "[t]he creation and use of Hayden's asserted works, and Take-Two's right to use them." Declaration of Joshua Simmons ("Simmons Decl.") dated December 7, 2021, Ex. 1. Take-Two also described these players in its interrogatory responses, *id.* Ex. 2, and asked about them during depositions. And Take-Two told Plaintiff's counsel in September, when the parties

1

were proposing a trial date, that a reason for Take-Two's proposed date was to accommodate the NBA season, as "some players may be called as witnesses at trial." *Id.* Ex. 3 at 1 (9/15/2021 Means Email). Even then, there was no suggestion that the NBA Players needed to be deposed.

There simply can be no doubt that Plaintiff knew about the NBA Players at the very start of this litigation and that Plaintiff made the strategic choice not to contact, subpoena, or depose them during fact discovery. *Id.* ¶ 4. This is in spite of the fact that Plaintiff very well could have contacted them, given that they were his own clients and their status as professional athletes makes them unusually accessible—indeed, their precise locations are televised near-nightly and their management information is readily available, as evidenced by Plaintiff's own admitted contact with Mr. James' management. Dkt. 111 at 3, 21. Instead, knowing that the NBA Players had knowledge that would very likely hurt his case, Plaintiff chose not to depose them. He evidently gambled on the hope that, if the NBA Players were not otherwise compelled to testify at a deposition, their testimony would never see the light of day.

That gamble failed to pay off. Even without being compelled to testify, the NBA Players voluntarily submitted declarations explaining how they specifically requested and approved the content of their tattoos, their tattoos reflect their own personal expression, and they reasonably expected to be able to show and allow others to show their bodies with their tattoos in media without further payment to, or permission from, Plaintiff. Dkts. 101-2–4. The declarations strongly support dismissing Plaintiff's copyright claim, and Plaintiff became desperate to undo the strategic choice he made not to depose these witnesses during fact discovery.

Before filing this Motion, Plaintiff attempted to get Take-Two to agree to re-open fact discovery or withdraw the declarations voluntarily, which Take-Two refused to do. Dkt. 121-6. When that effort failed, contrary to his claims that he does not know the contact information for

2

the NBA Players, Plaintiff *attempted to contact Mr. Green and Mr. James*, and asked that they sign counter-declarations, which *neither of them did*. Simmons Decl. ¶ 8. Plaintiff now brings this Motion as a last ditch effort to keep these players' important testimony from the Court, or delay this case and create additional burdens on Take-Two.

Accordingly, Plaintiff's baseless Motion should be denied for three reasons. *First*, Plaintiff cannot have been surprised by witnesses he identified in his own complaint. And because the witnesses were identified in Take-Two's initial disclosures and interrogatory responses, excluding this testimony is completely improper. *Second*, even if the NBA Players had not been properly disclosed (which they were), sanctions are still inappropriate because nondisclosure of witnesses is harmless where the other party knows the names of its witnesses and the scope of their relevant knowledge well before trial. Plaintiff knew the names and relevant scope of knowledge of the NBA Players from numerous sources, which is dispositive of Plaintiff's Motion. *Third*, Plaintiff's proposed alternative sanction of re-opening fact discovery is improper and prejudicial to Take-Two. This Court already has twice held in response to Plaintiff's improper requests that "no further fact discovery will be allowed." Dkt. 50 at 4. Re-opening fact discovery at this late stage would require Take-Two to incur additional costs, and further delay this case, including by requiring the parties to re-brief summary judgment.

The disclosure requirements should be applied with "common sense," while "keeping in mind the salutary purposes that the rule is intended to accomplish." Fed. R. Civ. P. 26, Advisory Committee's Note to 1993 amendment. Common sense supplies the answer here: Plaintiff filed a complaint identifying the three NBA Players as his own clients (with whom he himself had contact) and describing the Tattoos that he inked on them, and Take-Two identified these witnesses repeatedly, including in its initial disclosures. Plaintiff should not be allowed to gain

3

an unfair advantage by lying in wait during fact discovery, only to belatedly seek depositions of the NBA Players now that it has full knowledge of Take-Two's declarants, experts, and arguments on summary judgment. The Motion should therefore be denied.

**FACTUAL BACKGROUND**

On December 18, 2017, Plaintiff filed a copyright infringement lawsuit against Take-Two alleging that the realistic depiction of the NBA Players in the *NBA 2K* video game infringed Plaintiff's copyrights in these players' tattoos. *See generally* Dkt. 1. On May 15, 2018, Take-Two timely served its initial disclosures identifying the NBA Players as individuals with knowledge of "[t]he creation and use of Hayden's asserted works, and Take-Two's right to use them." Simmons Decl. Ex. 1 at 2–3. In its initial disclosures, Take-Two stated that it was "willing to meet-and-confer regarding contact information" for the NBA Players. *Id.* Plaintiff never articulated why he would need this information from Take-Two, given that these were his own clients, and did not move to compel or raise the issue with the Court during fact or expert discovery. *Id.* at ¶ 4.

In addition, on May 2, 2019, Plaintiff served its First Set of Interrogatories to Take-Two, which included Interrogatory No. 12, asking Take-Two to "[e]xplain the legal and factual bases for Your denial of the allegations in Paragraph 126 of the Second Amended Complaint (ECF No. 12)" and Interrogatory No. 13, asking Take-Two to "[d]escribe the factual basis for each of Your affirmative defenses, identify all documents that You contend support each such affirmative defense and identify all persons with knowledge of facts relating to the affirmative defenses." Dkt. 121-03. On October 31, 2019, Take-Two served its Second Amended Objections and Responses to Plaintiff's First Set of Interrogatories. Simmons Decl. Ex. 2. In response to Interrogatory No. 12, Take-Two explained that the "NBA Players," which it defined as Messrs. Green, James, and Thompson, "have given the NBA and the NBAPA the right to license their

4

likenesses to third-parties, and Take-Two has been licensed by the NBA and the NBAPA to use the NBA Players' likenesses in its *NBA 2K* games." *Id.* at 18–19. The response goes on:

> Mr. Hayden's authorization of the NBA Players to permit the depiction of their tattoos as part of their likeness may be granted orally, or may be implied from conduct. Here, each Tattoo was created at the request of the NBA Player on whom it was inked, and inked on that player's body by the tattooist for the tattoo. Plaintiff never informed the NBA Players that they would ever need to return to him for his permission to show their likenesses in any media. *Id.* at 19.

As for Interrogatory No. 13, Take-Two objected to it on numerous grounds, and responded by both incorporating its response to Interrogatory No. 12 by reference into its response to Interrogatory No. 13, and describing the factual basis for its affirmative defenses, including the fact that the tattoos are the personal expression **of the NBA Players**. *Id.* at 22. Plaintiff never objected to these responses. Simmons Decl. ¶ 5.

On January 31, 2020, fact discovery closed. To Take-Two's knowledge, Plaintiff never made any attempt to contact, subpoena, or depose the NBA Players prior to the close of fact discovery. *Id.* ¶ 4. On March 16, 2020, the Court held oral argument on any remaining discovery disputes between the parties, at which time Plaintiff did not raise his desire to contact or depose the NBA Players, nor did Plaintiff raise any alleged deficiencies in either Take-Two's initial disclosures or in its responses to Interrogatory Nos. 12 or 13. Dkts. 48–49, 52. In ruling on the remaining discovery disputes, the Court ordered unequivocally that "no further fact discovery will be allowed" in this case. Dkt. 50 at 4.

On April 19, 2021, the parties submitted a Joint Status Report proposing a schedule for expert discovery; Plaintiff did not raise any issues related to the NBA Players or his purported desire to depose them at that time. Dkt. 57. On September 15, 2021, the parties submitted a Joint Status Report proposing a schedule for summary judgment and trial dates. Dkt. 70. At that time, Take-Two told Plaintiff that some of the players may be called at trial should that be

5

necessary.  Simmons Decl. Ex. 3 at 1.  Plaintiff still did not raise any issues related to the NBA Players or object to their providing testimony (written, oral, or otherwise) in this case.  *Id.*

On October 25, 2021, Take-Two filed its Motion for Summary Judgment, which included declarations submitted by Messrs. Green, James, and Thompson.  Dkts. 101-1–4.  These declarations concerned precisely the topics described in Take-Two's initial disclosures; the disclosures said that the NBA Players had knowledge of "the creation and use of Hayden's asserted works, and Take-Two's right to use them" and the declarations discuss the circumstances under which the players were inked and their licensing of their likenesses, including the tattoos, to Take-Two.  *Compare* Dkts. 101-2–4 *with* Simmons Decl. Ex. 1.

On November 4, 2021, Plaintiff contacted Take-Two asking that it either withdraw the declarations or provide Plaintiff with contact information for the players.  Dkt. 121-5.  On November 9, 2021, Take-Two responded that the declarations were proper, and refused to withdraw them or provide contact information so that Plaintiff could belatedly depose or harass these witnesses, or attempt re-open discovery at this late stage.  Dkt. 121-6.

On or around November 18, 2021, in spite of his purported lack of contact information, Plaintiff contacted at least Messrs. Green and James asking that they sign counter-declarations.  Simmons Decl. ¶ 8.  Neither player agreed to sign a counter-declaration.  *Id.*

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 37(c)(1), prohibiting a party from relying on a witness to supply evidence at a motion, hearing, or trial is only a proper sanction where (1) there was a failure to "identify the witness as required by Rule 26(a) or (e)" and (2) that failure was not "substantially justified" or "harmless."  The Advisory Committee further noted that such a sanction is unduly harsh in a "variety of situations" where the non-disclosure was harmless.  Fed. R. Civ. P. 37, Advisory Committee's Note to 1993 amendment.  In particular, as one court

explained, "It is clear from the language of the Advisory Committee Note that the concern is whether the party had knowledge of the existence of the witness." *Prod. Design Servs., Inc. v. Sutherland-Schultz, Ltd.*, No. 13 Civ. 338, 2015 WL 4945745, at *4 (S.D. Ohio Aug. 20, 2015). "In the absence of bad faith, nondisclosure of witnesses is harmless where the other party knows 'the names of its witnesses and the scope of their relevant knowledge well before trial.'" *Id.* (quoting *Newman v. GHS Osteopathic, Inc., v. Parkview Hosp., Div.*, 60 F.3d 153, 156 (3d Cir. 1995)) (emphasis added).  The Motion should be denied because the NBA Players *were* properly identified pursuant to Rule 26, and any non-disclosure was harmless.

### A. The NBA Players Were Identified by Take-Two During Fact Discovery

Plaintiff knew about the NBA Players because Plaintiff himself named them in his own complaint, and they were his own clients on whom he inked the tattoos about which he chose to bring a copyright claim.  *See generally* Dkts. 1, 33.  Plaintiff also undoubtedly knew that Take-Two might rely on these witnesses because Take-Two explicitly disclosed the identities and relevant knowledge of the NBA Players in its initial disclosures at the start of fact discovery. Simmons Decl. Ex. 1 at 2–3.  None of the cases on which Plaintiff relies in support of his Motion deal with scenarios where a party actually *knew* about the identities of the witnesses disclosed from the start of fact discovery.[1]  As Plaintiff knew about these witnesses from the moment this

---

[1] In *Consumer Financial Protection Bureau v. Borders & Borders, PLC*, the names of consumer witnesses on whom the party intended to rely were not disclosed to the other party until after the close of fact discovery. No. 13 Civ. 1047, 2016 WL 9460472, at *3 (W.D. Ky. June 29, 2016).  *Gamble v. JP Morgan Chase & Co.* involved the failure to identify certain documents or produce them in discovery, which is not at issue here.  No. 15 Civ. 496, 2016 WL 4541818, at *9 (M.D. Tenn. Aug. 31, 2016).  *Roberts ex rel. Johnson v. Galen of Virginia, Inc.* involved a failure to identify experts, which is also not at issue here.  325 F.3d 776, 782 (6th Cir. 2003).  *Abriq v. Metropolitan Government of Nashville and Davidson County* involved a belated supplementation to identify information related to a party's claims or defenses.  No. 17 Civ. 690, 2018 WL 4561247 (M.D. Tenn. Jul. 27, 2018).  And in *Charvat v. Echostar Satellite, LLC*, the witness was not named at all in the initial disclosures, and even then the court found that the non-disclosure was harmless and denied a motion to strike the witness, noting that "preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with caution."  No. 07 Civ. 1000, 2009 WL 2169190, at *2 (S.D. Ohio Jul. 16, 2009).  Here, by contrast to all of these cases, the NBA Players were known to Plaintiff and featured in his own Complaint and Take-Two disclosed them *at the start* of fact discovery.

7

case began, and they were properly disclosed by Take-Two, the Motion should be denied on this basis alone.

Still, ignoring Take-Two's initial disclosures, Plaintiff miraculously argues that sanctions are appropriate because Take-Two failed to sufficiently identify the NBA Players in response to Interrogatory No. 13. As a threshold matter, this makes no sense as Plaintiff knew about the NBA Players, and they were properly identified in the initial disclosures. And for Rule 37(c) sanctions to even possibly apply, Take-Two must have been *obligated* to identify the NBA Players in response to Interrogatory No. 13 **in addition to its initial disclosures** and fail to do so. Fed. R. Civ. P. 37(c). That is not the case. ***First***, under Rule 26(e), Take-Two was not obligated to supplement its response to this interrogatory to further identify the NBA Players because there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process." Fed. R. Civ. P. 26(e), Advisory Committee's Note to 1993 amendment. In *Jackson v. Old Dominion Freight Line*, for example, the court held that a witness who was not identified in initial disclosures, but was later named and identified in other discovery, was "otherwise made known to the parties during the discovery process" consistent with Rule 26(e), and therefore Rule 37(c) sanctions were improper. No. 16 Civ. 977, 2018 WL 1521764, at *6 (S.D. Ohio Mar. 28, 2018).

***Second***, contrary to Plaintiff's claims, Take-Two *does* identify the NBA Players in response to Interrogatory No. 13: it both explicitly mentions the NBA Players and it incorporates by reference Interrogatory No. 12, which further discusses the NBA Players' roles in obtaining implied licenses from Plaintiff. *Supra* 5. Plaintiff complains that Take-Two did not list these players "by name." Mot. 5. This is plainly not true, as Take-Two used the defined term "NBA Players" to refer to Messrs. Green, James, and Thompson, as it has done throughout this entire

8

case. These were the three players that Plaintiff himself identified and described *in his complaint*, the very players he inked with the tattoos at issue. To the extent Plaintiff believes Take-Two's response to Interrogatory No. 13 was deficient, the time to raise that discovery dispute has long passed.[2] N.D. Ohio Local Rule 37.1(b) ("No discovery dispute shall be brought to the attention of the Court, and no motion compel may be filed, more than ten (10) days after the discovery cut-off date."). Plaintiff's claim that he was not aware that the NBA Players would have discoverable information because Take-Two's response to Interrogatory No. 13 did not discuss them in enough detail cannot be reconciled with the facts.[3]

Plaintiff is grasping for a technicality to keep highly relevant testimony out of this case—such tactics are not within the spirit of Rules 26 and 37. As Plaintiff knew about the NBA Players from the jump, his Motion should be denied.

### B. Take-Two Did Not Refuse to Provide the NBA Players' Addresses During Fact Discovery

Tacitly conceding that Plaintiff *did* know that the NBA Players had relevant knowledge, Plaintiff asserts that his Motion should be granted because he was not provided with addresses

---

[2] In support of his argument that the NBA Players should have been disclosed in response to Interrogatory No. 13, Plaintiff cites *McFerrin v. Allstate Property and Casualty Co.*, 29 F. Supp. 3d 924, 932–33 (E.D. Ky. 2014). But in that case, McFerrin ***never*** filed initial disclosures, and did not identify the expert witnesses in other discovery at all, such that the other party did not know about them—indeed McFerrin explicitly stated that no experts had been or "will be" retained, and so he had a duty to supplement when that was no longer the case. *Id.* at 931. Here, by contrast, Take-Two identified these witnesses in its initial disclosures, repeatedly identified them in response to the Interrogatories, and never represented that it did not plan to rely on them or that they did not exist, as was the case in *McFerrin*. This case is thus completely distinguishable.

[3] Plaintiff argues that it is not obligated to anticipate the evidence and witnesses that an opposing party may deem relevant, citing *Consumer Financial Protection Bureau*, 2016 WL 9460472, at *3. In *Consumer Financial Protection Bureau*, however, the witness was not named in the initial disclosures—that is not the case here. *See also Green v. Bakemark USA, LLC*, No. 13 Civ. 841, 2016 WL 234616, at *2 (S.D. Ohio Jan. 20, 2016) (name of witness was not disclosed). Plaintiff should have reasonably anticipated these witnesses, by contrast, because he listed them in his own Complaint, wherein he described inking them with the tattoos that are the basis for his claim. Dkt. 33. And they were disclosed in Take-Two's initial disclosures.

9

and telephone numbers for the NBA Players.  Mot. 6–7.[4]  This again ignores the facts.  Plaintiff did not need contact information for the NBA Players from Take-Two, because these were his own clients, who he specifically identified in his complaint as people he had repeatedly inked.[5]  Plaintiff himself claims to have been in contact with at least Mr. James and his management in his Opposition to Take-Two's Motion for Summary Judgment.  Dkt. 111 at 3, 21.  And Plaintiff conveniently leaves out of his Motion the fact that he in fact *contacted* at least Mr. James and Mr. Green and *asked them to sign counter-declarations* in support of his case.  Simmons Decl. ¶ 8.  They refused.  *Id.*  And the locations of the NBA Players are easy to determine in any event; the NBA Players' basketball games are broadcasted on television, such that their precise location on any given night is widely available and would easily enable service of process.

Plaintiff never attempted to contact, depose, or subpoena these witnesses during fact discovery, nor did he ever raise any issue regarding their contact information with the Court during fact or expert discovery.  Simmons Decl. ¶ 4.  This was a strategic decision.  Plaintiff obviously hoped that the NBA Players would choose not to get involved in this case unless compelled to do so by a deposition.  As he readily could have contacted the NBA Players, Plaintiff is merely attempting to use Rule 37(c) in a highly technical manner to exclude unfavorable evidence that he knows hurts his case.  Far from "sandbagging" Plaintiff, Mot. 7, Take-Two is the one being sand-bagged by an improper motion to exclude witnesses that were

---

[4]  Consistent with its objections, Take-Two did not provide addresses for any witnesses in response to Interrogatory No. 13, which was overly broad, unduly burdensome, and consisted of numerous sub-parts.  If Plaintiff believed this response was deficient, he should have raised the issue during the fact discovery period, or at the very least, up until 10 days afterwards consistent with the Local Rules.  He did not.

[5]  Take-Two stated in its initial disclosures that it would meet and confer with Plaintiff to provide these famous athletes' contact information.  Simmons Ex. 1 at 2–3.  *See, e.g.*, *Garibay v. Caravan Realty, LLC*, No. 19 Civ. 10910, 2021 WL 4620951, at *2 (C.D. Cal. Mar. 9, 2021) (finding "disclosure that contact information is 'available through counsel' sufficient").  But Plaintiff never explained why he would need this information from Take-Two or raised the issue with the Court.

known to all from the very beginning of this case. Plaintiff should not be rewarded for his strategy of lying in wait and declining to depose the NBA Players until now, when he has the unfair benefit of Take-Two's briefing.[6]

### C. Plaintiff is Not Harmed or Unduly Prejudiced

In addition to the fact that Plaintiff was aware of the NBA Players and had their contact information, critically, "[i]n the absence of bad faith, **nondisclosure of witnesses is harmless where the other party knows 'the names of its witnesses and the scope of their relevant knowledge well before trial**.'" *Prod. Design Services, Inc.* 2015 WL 4945745, at *4. As Plaintiff knew the names of the NBA Players and the scope of their knowledge since the start of fact discovery, *supra* 7–8, any failure to disclose them is harmless. Moreover, delay in raising objections to a failure to disclose may indicate that the failure is harmless. *Roberts ex rel. Johnson*, 325 F.3d at 783. Here, if Plaintiff believed that Take-Two's disclosure of the NBA Players was insufficient, he could have raised that issue with the Court during fact discovery, consistent with this Court's discovery rules. Plaintiff's significant delay, during which time the parties marched forward with experts and dispositive motions, supports a finding of harmlessness. *Id.*; *supra* 5–6.

Moreover, a finding of harmlessness is supported by each of the five harmlessness factors considered by the Sixth Circuit. *See Redmond v. United States*, 194 F. Supp. 3d 606, 613 (E.D. Mich. 2016). On the ***first factor***, "the surprise to the party against whom the evidence would be offered," these witnesses can come as absolutely no surprise to Plaintiff. Plaintiff himself is the

---

[6] Plaintiff further argues that Take-Two should have provided Plaintiff with contact information for the NBA Players when he asked for it via email ***after*** Take-Two filed its Summary Judgment Motion, over a year after the close of fact discovery. Mot. 7. Take-Two refused, fearing that Plaintiff was attempting to re-open fact discovery and/or harass these witnesses. Plaintiff has not identified any rules obligating Take-Two to facilitate this blatantly improper attempt to harass the NBA Players into filing declarations that they disagree with.

11

one who brought a copyright claim explicitly identifying the NBA Players as his own clients and describing the creation of tattoos inked on their bodies with their approval and guidance.  Dkt. 33 ¶¶ 38–79.  Beyond the initial disclosures, these witnesses were discussed at length in Take-Two's interrogatory responses, and Take-Two questioned numerous witnesses in their depositions, including Plaintiff, his colleague Bernardino Tovanche, and his brother Jon Hayden, about their interactions with the NBA Players.  Dkts. 101-21 at 91:1–20, 112:13–23; 101-22 at 119:19–24.  In *Howe v. City of Akron*, on which Plaintiff heavily relies for its definition of surprise, the court found that the late disclosure of a back-pay calculation caused no surprise because Akron was "aware" of Plaintiff's methods for calculating back-pay and the record established that Plaintiff would be relying on such calculations "throughout the discovery period."  801 F.3d 718, 748 (6th Cir. 2015) (finding exclusion of witnesses was abuse of discretion).  As in *Howe*, Plaintiff was well aware of these witnesses and their relevant testimony before Take-Two filed its Motion for Summary Judgment.[7]

On the ***second factor***, "the ability of that party to cure the surprise," there is no surprise to cure.  As Plaintiff knew about these witnesses, he had plenty of opportunity to depose them during fact discovery.  It is highly unlikely he would have any difficultly subpoenaing them, given that they are easy to locate, they are his own clients, and he evidently had the means to contact them, as evidenced by his contact with, at least, Mr. Green and Mr. James.  The fact is,

---

[7] Plaintiff complains that he was surprised that these witnesses submitted declarations in connection with Take-Two's motion for summary judgment.  Mot. 8–9.  This is also false.  Declarations are commonly submitted with dispositive motions; indeed, in a case Plaintiff himself cites, *Intel Corp. v. VIA Technologies, Inc.*, the court rejected this kind of argument, finding that "when a fact witness is disclosed, all parties are on notice that the disclosing side contends the witness has relevant knowledge.  All are thus on notice that the disclosing side may well have interviewed the witness and may have even obtained a statement."  204 F.R.D. 450, 452 (N.D. Cal. 2001) (denying motion to strike declaration of witness and finding disclosure requirements did not require competitor to reveal declaration signed by witness for use in impending summary judgment motion).  And Take-Two submitted Mr. James' declaration in the highly similar litigation, *Solid Oak Sketches, LLC, v. 2K Games, Inc.*, of which Plaintiff is aware.  449 F. Supp. 3d 333 (S.D.N.Y. 2020).  Plaintiff should have reasonably anticipated that Take-Two might submit declarations from these witnesses.

Plaintiff never made any effort to contact or depose the NBA Players during fact discovery, because he made a *strategic* choice not to do so. *See*, *e.g.*, *Abdelal v. Kelly*, No. 13 Civ. 4341, 2018 WL 3812443, at *2 (S.D.N.Y. Aug. 10, 2018) ("The Court will not reopen discovery now simply because Plaintiff made a strategic decision during the discovery process not to depose" a witness).

On the *third factor*, "the extent to which allowing the evidence would disrupt the trial," trial will not be disrupted by allowing the NBA Players' testimony into evidence. *Hoskins Oil Co., LLC v. Equilon Enters., LLC*, No. 16 Civ. 417, 2019 WL 691394, at *3 (E.D. Tenn. Feb. 19, 2019) (disclosure was harmless where evidence would not disrupt trial). Plaintiff argues that redirecting "his efforts to deposing, or seeking counter-declarations" from the NBA Players would distract from his preparation for trial. Mot. 9. This is a problem of his own making, as Plaintiff had plenty of opportunity to depose them during fact discovery. And Plaintiff has *already* attempted to get counter-declarations from at least Messrs. Green and James, who did *not* agree to sign them, so it is unclear how this would disrupt Plaintiff's trial preparation. Plaintiff argues that the "more appropriate inquiry" is whether allowing the NBA Players' testimony would "disrupt proper adjudication of Take-Two's Motion for Summary Judgment." Mot. 9–10. Putting aside the fact that this is not the relevant inquiry, *see Redmond*, 194 F. Supp. 3d at 613, there is no disruption of summary judgment here. Plaintiff had a month to review and respond to Take-Two's Motion for Summary Judgment, consistent with the timeline set by the Court. The fact that he could not depose the NBA Players within that time is a situation of his own creation because he strategically chose not to depose them during fact discovery.

As to the *fourth factor*, "the importance of the evidence," the testimony of the NBA Players is of material importance to this case. It confirms the circumstances surrounding the

13

source and creation of the tattoos, their lack of originality, and the NBA Players' reasonable expectations that they could show their likenesses, including their tattoos, without permission from Plaintiff. Ultimately, this litigation concerns tattoos that are permanently inked on the bodies of the NBA Players—Plaintiff's alleged copyrights are intrinsic parts of what these players look like. *See Yoe v. Crescent Sock Co.*, No. 15 Civ. 3, 2017 WL 11218928, at *5 (E.D. Tenn. Oct. 4, 2017) (finding a submission was harmless "given the importance of the evidence at issue.").[8] Plaintiff's strategy throughout this entire case has been to try to keep the NBA Players on the sidelines—he did not make them parties to the suit and he evidently hoped that their busy careers might prevent them from participating. But their rights to show their likenesses are implicated here, and they should be able to testify about the tattoos on their own bodies.

Finally, as to the *fifth factor*, "the non-disclosing party's explanation for its failure to disclose the evidence," Plaintiff knew about the NBA Players and Take-Two further disclosed them in its initial disclosures. Simmons Decl. ¶ 3. Plaintiff never explained why he would need his own clients' contact information from Take-Two, and indeed, the NBA Players would have been easy to locate and serve. *Id.* ¶ 4. Despite this, Plaintiff made no attempt to contact, depose, or subpoena these witnesses during fact discovery. *Id.* In terms of the recent correspondence between the parties, Take-Two merely refused to assist Plaintiff in improperly re-opening discovery, harassing these witnesses, and further delaying this case. In any event, Plaintiff evidently **already has the NBA Players' contact information**, and is only using this issue to try

---

[8] In the cases Plaintiff cites, many other factors weighed against a finding of harmlessness, which is not the case here. *See EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 16 Civ. 150, 2017 WL 2295906, at *3, *5 (E.D. Ky. May 25, 2017) (disclosure was not harmless where there was "plain surprise" and "[c]ross examination at trial" would not resolve the issue); *In re Cox Motor Express of Greensboro, Inc.,* No. 15 Civ. 2023, 2016 WL 6661318, at *5 (M.D.N.C. Nov. 4, 2016) (involving failure to timely witness on the topic of valuation, precluding plaintiff from admitting its own valuation evidence); *Etheridge v. E.I. DuPont De Nemours & Co., Inc.,* No. 14 Civ. 2443, 2015 WL 12516227, at *3 (W.D. Tenn. Oct. 14, 2015) (concerning a repeated failure to disclose three experts, whose opinions the opposing party "does not know").

14

and walk back its strategic decision not to depose them. Such transparent litigation tactics should be rejected.

### D. Re-Opening Discovery is Improper and Prejudicial to Take-Two

As the NBA Players were not belatedly disclosed, "alternative sanctions," such as re-opening discovery, are also completely improper. Plaintiff cites *Intel* in support of his argument for re-opening fact discovery, but there, one party moved for summary judgment ***before the end of the discovery period***, and the witness was previously unknown to the plaintiff and was only identified "late in the process" without time for a deposition. 204 F.R.D. at 452. Here, Plaintiff knew about the NBA Players when he filed his complaint and could have deposed them at any time during discovery. He never informed Take-Two of his desire to depose these witnesses, even as the parties agreed to expert and summary judgment deadlines. Re-opening discovery at this late stage would also require Take-Two to incur significant additional costs and delay, including deposition preparation and re-briefing of dispositive motions. Simmons Decl. ¶ 9. And Plaintiff would have the unfair benefit of getting to take depositions he could have easily taken during the discovery period after being privy to Take-Two's entire summary judgment submission, including expert reports and arguments, giving Plaintiff a clear unfair advantage. Re-opening discovery would also delay trial, as the NBA Players are in the middle of the NBA season, causing unjustified burden and delay for all.

Ultimately, Plaintiff strategically chose not depose the NBA Players during fact discovery, despite knowing full well about these witnesses. It is not appropriate or fair for Plaintiff to be given a belated do-over, which would undoubtedly encourage others to game the system in a similar fashion.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.

Dated: New York, NY
      December 7, 2021

/s/ *Dale M. Cendali*
Dale M. Cendali (admitted *pro hac vice)*
Joshua L. Simmons (admitted *pro hac vice*)
Chris Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.*