# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN,<br><br>  Plaintiff,<br><br>v.<br><br>2K GAMES, INC. et al.,<br><br>  Defendants. | CASE NO. 1:17-cv-02635-CAB<br><br>JUDGE CHRISTOPHER A. BOYKO<br><br>**DEFENDANT TAKE-TWO INTERACTIVE SOFTWARE INC.'S SECOND AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF JAMES HAYDEN'S FIRST SET OF INTERROGATORIES** |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Take-Two Interactive Software, Inc. ("Take-Two"), by and through their undersigned counsel, hereby amend their responses to Plaintiff James Hayden's ("Hayden" or "Plaintiff") Interrogatories, served on May 2, 2019 (the "First Set of Interrogatories" and each individually, an "Interrogatory") in the above-captioned action ("Litigation") as follows:

## GENERAL OBJECTIONS

1. Take-Two objects to the First Set of Interrogatories to the extent that it purports to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

2. Take-Two objects to the First Set of Interrogatories to the extent that it seeks information that is subject to the attorney-client privilege, the work product privilege, or any other applicable privilege or protection under federal or state law. Take-Two does not waive, intends to preserve, and is preserving any such privilege with respect to any information protected by such privilege.

3. Take-Two objects to the First Set of Interrogatories to the extent that it seeks proprietary or confidential business information, trade secrets or other sensitive information. To the extent that the response to any Interrogatory requires the disclosure of any non-privileged proprietary or confidential information, trade secrets or other sensitive information, Take-Two will provide such information subject to the entry of an appropriate protective order in this Litigation. By responding to the Requests, Take-Two does not waive, intends to preserve, and is preserving all of its rights to assert that any and all such information is confidential. Information furnished by Take-Two shall only be used in connection with this litigation and shall not be disclosed, in whole or in part, to any person or entity that is not a party or a representative of a party to this Litigation.

4. The responses provided to the First Set of Interrogatories are based on Take-Two's interpretation of the language used in the First Set of Interrogatories. Take-Two reserves its right to amend or to supplement its responses and objections in the event that Plaintiff asserts an interpretation that differs from Take-Two's interpretation.

5. The responses below shall not be interpreted to concede the truth of any factual assertion or implication contained in the First Set of Interrogatories. Take-Two's responses to the First Set of Interrogatories in no way constitute admissions or acknowledgements by Take-Two as to the relevance, materiality, or admissibility of any of the information contained therein, and Take-Two expressly reserves its rights to object as such.

6. In providing responses to the First Set of Interrogatories, Take-Two does not in any way waive or intend to waive, but rather is preserving and intends to preserve:

    (i)    All objections as to competency, authenticity, relevancy, materiality and admissibility;

    (ii)    All rights to object on any grounds to the use in any subsequent proceedings of any of the responses or information contained herein, including but not limited to the right to object at the trial of this or any other action;

    (iii)    All objections as to vagueness and ambiguity; and

    (iv)    All rights to object on any grounds to any further interrogatories.

7. Take-Two objects to the First Set of Interrogatories to the extent that any Interrogatory's subparts, including those arising from Plaintiff's so-called "Definitions," actually constitute separate interrogatories, thereby exceeding the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

8. Take-Two objects to the First Set of Interrogatories to the extent that it seeks information that is outside of Take-Two's possession, custody, or control.

9. Take-Two objects to the First Set of Interrogatories to the extent that it seeks information that Plaintiff equally may otherwise obtain from public sources or with less burden and expense by using other means of discovery.

10. Take-Two objects to the First Set of Interrogatories as overly broad and unduly burdensome to the extent that its Interrogatories do not specify timeframes and are thus unlimited as to time.

11. Take-Two objects to the First Set of Interrogatories as overly broad to the extent that the terms "Take-Two" and "You" are defined to include "any parent, successor, predecessor, sister, affiliate, subsidiary, division or related company or other business or legal entity, and their officers, directors, agents, representatives, consultants, employees, attorneys or anyone subject to the direction and control of, or acting on behalf of, any of the foregoing, both past and present." For purposes of responding to the First Set of Interrogatories, Take-Two will construe the terms "Take-Two" and "You" to mean Take-Two Interactive Software, Inc. and no other person or entity.

12. Take-Two objects to the First Set of Interrogatories as vague and ambiguous to the extent that the term "Hayden's Registered Works" is defined to include purported works not identified in the Second Amended Complaint and is used to refer to sketches Plaintiff registered with the United States Copyright Office rather than tattoos inked on LeBron James, Danny Green, and Tristan Thompson (the "NBA Players" and each an "NBA Player"). For purposes of responding to the First Set of Interrogatories, Take-Two will use the term "NBA Players' Tattoos" to refer to the tattoos at issue inked on LeBron James, Danny Green, and Tristan Thompson.

13. Take-Two objects to the First Set of Interrogatories to the extent that they define the term "Gloria Tattoo" to mean "the tattoo described in ¶¶ 45–51 of the Second Amended Complaint." This definition is misleading because Paragraphs 45–51 of the Second Amended Complaint do not describe a tattoo inked on a person, but instead describe a sketch that Plaintiff claims to have created. Take-Two will construe the term "Gloria Tattoo" to mean the sketch described in Paragraphs 45–51 of the Second Amended Complaint.

14. Take-Two objects to the First Set of Interrogatories to the extent that they define the term "Lion Tattoo" to mean "the tattoo described in ¶¶ 52–58 of the Second Amended Complaint." This definition is misleading because Paragraphs 52–58 of the Second Amended Complaint do not describe a tattoo inked on a person, but instead describe a sketch that Plaintiff claims to have created. Take-Two will construe the term "Lion Tattoo" to mean the sketch described in Paragraphs 52–58 of the Second Amended Complaint.

15. Take-Two objects to the First Set of Interrogatories to the extent that they define the term "Shoulder Stars Tattoo" to mean "the tattoo described in ¶¶ 59–65 of the Second Amended Complaint." This definition is misleading because Paragraphs 59–65 of the Second Amended Complaint do not describe a tattoo inked on a person, but instead describe a sketch that Plaintiff claims to have created. Take-Two will construe the term "Shoulder Stars Tattoo" to mean the sketch described in Paragraphs 59–65 of the Second Amended Complaint.

16. Take-Two incorporates the foregoing General Objections into each and every one of its responses to the First Set of Interrogatories as set forth below.

Subject to, as limited by, and without waiver of the foregoing objections, Take-Two responds as follows: The NBA Players have given the NBA and the NBA Players' Association ("NBAPA") the right to license their likenesses to third-parties. The NBA and the NBAPA have licensed Take-Two to use the NBA Players' likenesses in its *NBA 2K* games. Mr. James and Mr. Green also directly authorized the use of their likenesses by Take-Two.

Take-Two's discovery efforts in this Litigation are ongoing, and Take-Two reserves the right to modify and/or supplement this response in light of facts learned during discovery.

**INTERROGATORY NO. 12:**

Explain the legal and factual bases for Your denial of the allegations in Paragraph 126 of the Second Amended Complaint (ECF No. 12).

**FIRST AMENDED RESPONSE TO INTERROGATORY NO. 12:**

Take-Two incorporates by reference the above-stated General Objections as if fully set forth herein. Take-Two objects to this Interrogatory to the extent that the term "You[r]" is overly broad as indicated in General Objection No. 11. Take-Two objects to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business information. Take-Two will provide such information subject to a Protective Order issued by the Court governing the parties to this Litigation. Take-Two objects to this Interrogatory to the extent that it seeks information that is or will be in the possession of Plaintiff by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome. Take-Two objects to this Interrogatory as exceeding the number allowed under Federal Rule of Civil Procedure 33(a)(1).

Subject to, as limited by, and without waiver of the foregoing objections, Take-Two responds as follows: The NBA Players have given the NBA and the NBAPA the right to license their likenesses to third-parties, and Take-Two has been licensed by the NBA and the NBAPA to

use the NBA Players' likenesses in its *NBA 2K* games. Mr. James and Mr. Green also directly authorized the use of their likenesses by Take-Two. Mr. Hayden's authorization of the NBA Players to permit the depiction of their tattoos as part of their likenesses may be granted orally, or may be implied from conduct. Here, each Tattoo was created at the request of the NBA Player on whom it was inked, and inked on that player's body by the tattooist for the tattoo. Plaintiff never informed the NBA Players that they would ever need to return to him for his permission to show their likenesses in any media. Indeed, once a tattoo has been inked on to the client's skin, the tattooist exercises no control over it because the tattoo itself is part of the client's body. Thus, the client is free to authorize the use or dissemination of his or her likeness in whatever way he or she sees fit without the necessity of seeking permission from the tattooist. The NBA Players have done so here.

Take-Two's discovery efforts in this Litigation are ongoing, and Take-Two reserves the right to modify and/or supplement this response in light of facts learned during discovery.

**INTERROGATORY NO. 13:**

Describe the factual basis for each of Your affirmative defenses, identify all documents that You contend support each such affirmative defense and identify all persons with knowledge of facts relating to the affirmative defenses.

**FIRST AMENDED RESPONSE TO INTERROGATORY NO. 13:**

Take-Two incorporates by reference the above-stated General Objections as if fully set forth herein. Take-Two objects to this Interrogatory to the extent that the term "You[r]" is overly broad as indicated in General Objection No. 11. Take-Two objects to this Interrogatory as overly broad and unduly burdensome to the extent that it seeks all facts and all documents regarding the affirmative defenses without limitation. Take-Two objects to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business

19

information. Take-Two will provide such information subject to a Protective Order issued by the Court governing the parties to this Litigation. Take-Two objects to this Interrogatory to the extent that it seeks information that is or will be in the possession of Plaintiff by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome. Take-Two objects to this Interrogatory as exceeding the number allowed under Federal Rule of Civil Procedure 33(a)(1). Take-Two objects to this Interrogatory to the extent that it is compound and contains at least eight subparts, each of which constitutes a separate interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(1). Take-Two further objects that discovery is not complete in this case as depositions have not all been taken. Further, no expert discovery has taken place. Thus, this Interrogatory is premature as the factual record on Take-Two's affirmative defenses is incomplete. Based on the limited record to date, and subject to, as limited by, and without waiver of the foregoing objections, Take-Two responds as follows:

Plaintiff cannot state a claim upon which relief may be granted for at least the reasons described in Take-Two's responses to this Interrogatory. Moreover, it is Plaintiff's burden to establish copyright infringement. Plaintiff has not established that he independently created the Tattoos or that they are creative. Further, to the extent that Plaintiff is asserting copyrights in tattoos other than the registered tattoos identified in the Complaint (the "Tattoos"), such claims are barred. Moreover, it is Plaintiff's burden to prove that the Tattoos are substantially similar to *NBA 2K*. Plaintiff has not established these requirements.

Take-Two's use of the Tattoos is *de minimis*. In the average game of *NBA 2K*, the NBA Players will not appear, and by extension, the NBA Players' Tattoos will not appear. Additionally, even when the NBA Players do appear and when the NBA Players' Tattoos appear,

each quarter in *NBA 2K* lasts only a few minutes. Further, in *NBA 2K*, the NBA Players' Tattoos appear smaller than the size that they appear in real life. When depicted, the NBA Players' Tattoos are also depicted near other visual and auditory elements, such as the basketball, the hoop, the court, the players, coaches, and referees, cheerleaders, spectators, the stadium, and the game clock and scoring system, making them nearly impossible to pick out. In addition, other elements often obstruct the NBA Players' Tattoos, making them impossible to see. The NBA Players' Tattoos also may appear out of focus, as the players are often moving and often very quickly. The NBA Players' Tattoos also play no role in *NBA 2K's* plot. Also, the NBA Players' Tattoos are a fractional piece of the *NBA 2K* program.

Take-Two's use of the Tattoos is fair use. First, Take-Two's use is transformative as the original purpose of the tattoos was to serve as a reflection of the personal expression of the three NBA Players on which they were inked, and Take-Two's purpose is to factually and realistically depict the NBA Players as they actually look in real life. The Tattoos appearing in Take-Two's video game appear much smaller than they do in real life as the NBA Players appear much smaller than they appear in real life. The NBA Players' Tattoos also appear among a plethora of other visual and auditory elements, and any expressive value of the NBA Players' Tattoos has been diminished significantly by *NBA 2K's* other elements, particularly as the NBA Players' Tattoos appear on fluid, moving 3D players while the user is trying to play a fast-moving, interactive game. Second, the NBA Players Tattoos are not creative as they copy pre-existing works and use common elements of tattoos, and any creativity is outweighed by the fact that Take-Two's depiction of the NBA Players' Tattoos realistically depicts real-world subject matter, and the NBA Players' Tattoos were published prior to their inclusion in *NBA 2K*. Third,

Take-Two's copying was reasonable in light of its purpose of depicting real life accurately. Fourth, Take-Two has not harmed the market for the NBA Players' Tattoos.

Take-Two's use is authorized, Plaintiff consented to such use, and Plaintiff has waived and is estopped from asserting copyright infringement. Take-Two incorporates by reference its response to Plaintiff's Interrogatory No. 12.

Plaintiff committed fraud on the Copyright Office by failing to disclose that one or more of the Tattoos was created based on a pre-existing work, to which Plaintiff holds no rights.

Take-Two's discovery efforts in this Litigation are ongoing, and Take-Two reserves the right to modify and/or supplement this response in light of facts learned during discovery.

Dated: October 31, 2019

_____
Dale M. Cendali (admitted *pro hac vice*)
Joshua L. Simmons (admitted *pro hac vice*)
Miranda D. Means (admitted *pro hac vice*)
Christopher T. Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
miranda.means@kirkland.com
chris.ilardi@kirkland.com

David T. Movius (OH 0070132)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
dmovius@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.*