UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES HAYDEN,<br><br>  Plaintiff,<br><br>vs.<br><br>2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>  Defendants. | CASE No. 1:17-cv-02635<br><br>Judge Christopher A. Boyko<br><br>**PUBLIC REDACTED VERSION** |

**REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE
THE EXPERT TESTIMONY OF JAMES E. MALACKOWSKI**

Plaintiff James Hayden respectfully submits this Reply in support of his Motion to Exclude the Expert Testimony of James E. Malackowski ("Motion").

**I. INTRODUCTION**

The Court should exclude Mr. Malackowski's opinions found in each of his three reports regarding the damages to which Mr. Hayden is entitled because they are based on insufficient and unreliable data and methods. Rather than a "last gasp effort to exclude Malackowski's opinions," as Take-Two submits,[1] Mr. Hayden's Motion is well-supported and well-reasoned under *Daubert* and its progeny.

First, Mr. Malackowski's *third*—unauthorized—report should be stricken *ab initio* for the reasons set forth in Plaintiff's Motion to Strike or Exclude Defendants' Untimely and Improper Reply Expert Reports. (*See* Dkt. #64). As explained therein, contrary to its *own* prior proposal and this Court's April 29, 2021 scheduling Order, Take-Two simply arrogated to itself the

---

[1] *See* Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.'s [collectively, "Take-Two's"] Memorandum of Law in Opposition to Plaintiff James Hayden's Motion to Exclude the Expert Testimony of James E. Malackowski ("Opposition"), Dkt. #116 at 15.

"right" to serve and rely on *extra* reports from two of its experts, including Mr. Malackowski (his being served on August 16, 2021, mere hours before one of Plaintiff's counter-experts' deposition). Take-Two's naked, unilateral grab for tactical advantage should be rejected; *no* opinion in Mr. Malackowski's third report should be permitted for any purpose.

Second, Mr. Malackowski's opinions are unreliable and incomplete as they fail to meet Defendants' burden to properly attribute damages from Defendants' gross revenue from the sale of the Accused Games[2] to factors *other than* the infringed Asserted Works,[3] as expressly required by 17 U.S.C. § 504(b). Specifically, Mr. Malackowski's reports *ignore* substantial portions of Defendants' gross revenue by specifically excluding the recurrent revenue generated from in-game sales of Take-Two's so-called Virtual Currency ("VC"). Take-Two continues to argue (incorrectly) that its sales of VC is irrelevant to and should be excluded from the calculation of Mr. Hayden's damages because there is no relationship, "between that revenue and the alleged infringement." (Dkt. #116 at 8).

To make this erroneous argument, Take-Two's Opposition is wrought with inaccurate assertions regarding VC and the law, including its misstatement of the "reasonable relationship" standard between gross revenue and infringing activity. Contrary to Take-Two's claims, the Sixth Circuit makes clear that the Copyright Act merely requires that revenue be *relevant* to the infringement in order to be subject to disgorgement. Further, contrary to what Take-Two incorrectly suggests, such VC can be used to purchase digital avatars of the very players on which Mr. Hayden's Asserted Works are inked and displayed.

---

[2] The "Accused Games" are NBA 2K16, NBA 2K17, NBA 2K18, NBA 2K19, NBA 2K20, NBA 2K21, NBA 2K22 and NBA 2K Mobile. All of them were identified to Defendants in discovery and Plaintiff plans to move to amend the Complaint to add NBA 2K21 and NBA 2K22 to the others previously identified as infringing works in the Fourth Amended Complaint.

[3] The "Asserted Copyrights" or "Asserted Works" include: "Gloria" (Reg. No. VAu 1-263-888); "Lion" (Reg. No VAu 1-271-044); "Shoulder Stars" (Reg. No. VAu 1-270-802); "Fire D.G." (Reg. No. VAu 1-287-552); "Scroll D.G." (Reg. No. VAu 1-287-545); and "Brother's Keeper T.T." (Reg. No VAu 1-292-453).

Third, the Court should exclude Mr. Malackowski's opinions because they rely on the faulty opinions of Take-Two experts, Dr. Ian Bogost and Dr. E. Deborah Jay. Mr. Malackowski uncritically adopts Dr. Bogost's "file size" argument, which itself was based on unauthenticated and unverified underlying data and, more importantly, has been rejected by the Sixth Circuit. Further, Mr. Malackowski blindly accepted the findings of Dr. Jay's survey, despite fundamental underlying flaws therein. This renders his opinions unreliable.

Finally, the Court should exclude Mr. Malackowski's testimony because his opinions are unfairly prejudicial, confusing, and would be misleading to a jury.

## II. ARGUMENT

### A. All opinions in Mr. Malackowski's third report should be excluded.

For the reasons summarized above, Mr. Malackowski's *third*—unauthorized—report should be stricken *ab initio*. (*See* Dkt. #64). Take-Two's naked, unilateral and improper grab for tactical advantage should be rejected. *No* opinion in Mr. Malackowski's third report should be permitted for any purpose.

### B. Mr. Malackowski's opinions do not meet Defendants' apportionment burden.

As explained in Mr. Hayden's Motion, Mr. Malackowski's opinions are based on unreliable methods. Take-Two's Opposition improperly attempts, again, to shift the burden of apportionment onto Mr. Hayden by misinterpreting and/or misapplying both statutory and Sixth Circuit case law to fit its narrative. The Copyright Act is unequivocal: "the copyright owner is required to present proof *only* of the infringer's gross revenues, and ***the infringer*** is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." (17 U.S.C. § 504(b) (emphasis added)). Yet Take-Two continues to argue that its sales of VC is irrelevant to and should be excluded from the calculation of Mr. Hayden's

3

damages because there is no relationship, "between that revenue and the alleged infringement." (Dkt. #116 at 8).

This is patently incorrect.  While citing *Satija v. Permanent Gen. Assurance Corp. of Ohio*, No. 13 Civ. 82, 2014 WL 1664557, at *6 (N.D. Ohio Apr. 25, 2014) for the unremarkable proposition that an aggrieved copyright plaintiff must show a "reasonable relationship" between revenues and the act of infringement "based on non-speculative evidence" for "the burden shifting provisions of § 504(b) to apply," Dkt. #116 at 8, Take-Two's Opposition fails to even *acknowledge* this Circuit's leading authority on the subject, *Balsley v. LFP, Inc.*, 691 F.3d 747 (6th Cir. 2012). There, the Sixth Circuit explained clearly that a copyright owner's burden in proving gross revenue—*i.e.*, of showing a "reasonable relationship"—simply requires *relevance*:

> Based on the plain language of the statute, we therefore reject Defendant's contention that it is Plaintiffs' burden to prove that Defendant profited from the [copyrighted work], or to prove which portions of [infringer's] profit, if any, are attributable to the Bosley photograph. Plaintiffs have only one requirement: to prove Defendant's gross revenue. We agree with our sister Circuits in holding that ***this gross revenue number must have a reasonable relationship—relevance, in other words—to the infringing activity***. By requiring that the gross revenue number put forth by the copyright owner has a reasonable relationship to the infringing activity, ***we do not raise the burden on copyright owners beyond that outlined by the plain language of the statute. It is merely an implicit, common-sense element of proving gross revenue***.

*Id.*, at 769-70 (emphasis added). Thus, under *Balsley*, the revenue must merely be *relevant* to the infringement in order to be subject to disgorgement.

4

As fully explained in the Expert Report of Michal A. Malkiewicz, Take-Two's infringement of the Asserted Works is clearly relevant to the revenue Take-Two enjoys from the sales of VC in the Accused Games. ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████ VC has no value *outside* the Accused Games. That is a point in *Mr. Hayden's* favor.

Take-Two's argument that there is no reasonable relationship between the revenue from the sales of VC and the Asserted Works because "VC… cannot be used to purchase or depict the Tattoos in *NBA 2K*" (Dkt. # 116 at 5) is setting the bar much too high. As fully explained in Mr. Hayden's Opposition to Defendants' Motion to Exclude the Testimony of Michal A. Malkiewicz, if this *direct connection* argument were the law, then only revenue from the sale of *verbatim* copies of infringed work could be subject to disgorgement under the Copyright Act. That is not the law under 17 U.S.C. § 504. This Circuit is unequivocal: "Where there is a commingling of gains, [the defendant] must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him." *Balsley*, 691 F.3d at 768-69 (citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406 (1940). Take-Two's revenue from sales of VC is earned, purchased, and redeemed in and as a part of the Accused Games.

Moreover, Take-Two's claim that VC "cannot be used to purchase" the Asserted Works is wrong. VC *can literally* be used to purchase the digital avatars of the players on which Mr. Hayden's Asserted Works are inked, this includes at least LeBron James. The game mode entitled, "MyTeam," allows users to build their own teams with former and current NBA

5

players.[4] Users can purchase VC which, in turn, can be used to purchase, among other things, "packs of cards." These packs, as the screenshot below illustrates, includes, at least, avatars LeBron James.





Thus, Mr. Malackowski's opinions, either ignoring or intentionally omitting VC, are incorrect, irrelevant and unreliable. The Court should exclude his opinion on this basis alone.

As noted above, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[4] For a detailed description of "MyTeam," see: https://nba2k.fandom.com/wiki/MyTeam.

███████████████████████████████████████

██████████ Accordingly, in failing to meet Defendants' apportionment burden, his expert opinions on the disgorgement damages to which Mr. Hayden is entitled are unreliable and misleading and should be excluded.

### C. Mr. Malackowski's reliance on Take-Two's other expert witness reports renders his opinions unreliable.

As more fully explained in Mr. Hayden's Motion, the Court should exclude Mr. Malackowski's opinion regarding the value ascribed to Mr. Hayden's Asserted Works in Take-Two's Accused Games for relying on and accepting the flawed opinions of two other Take-Two expert witnesses. First, Mr. Malackowski blindly accepts a discredited "file size" argument based on unauthenticated and unverified underlying data proffered by Ian Bogost, Ph.D. However, Dr. Bogost uses a faulty method that Mr. Malackowski *himself* has criticized! Second, Mr. Malackowski relies on a fundamentally flawed expert survey conducted by Take-Two expert E. Deborah Jay, Ph.D. to avoid making a proper apportionment under 17 U.S.C. §504.

Take-Two's repeated declaration in its Opposition that experts may rely on other experts to form their opinions irrelevant. Mr. Hayden has never disputed this or suggested otherwise. What is *not* permissible, however, is an expert witness blindly accepting other witnesses' calculations and conclusions in forming his/her own opinion. The Court in *Ohio Env't Dev. Ltd. v. Envirotest Sys. Corp.*, 478 F. Supp. 2d 96, 974-75 (N.D. Ohio 2007), the case on which Take-Two relies, allowed an expert witness to rely on another expert's calculations. The Court there, however, allowed the testimony *because* the damages expert *verified* the technical expert's calculations. The Court explained, "As opposed to blindly accepting [the technical expert's] calculations, [the damages expert] satisfied himself that [the technical expert's] findings were consistent with [the damages expert's] own personal observations." *Id.* at 975. In sharp contrast,

7

Mr. Malackowski *did not* "satisfy himself" that Dr. Bogost and Dr. Jay's opinions were consistent with his own personal observations. Instead, Mr. Malackowski blindly accepted Dr. Bogost and Dr. Jay's opinions. Mr. Malackowski's testimony should be excluded.

> 1. *Mr. Malackowski's' reliance on Dr. Bogost's discredited method and unverified data is insufficient and unreliable.*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Further, Mr. Malackowski blindly accepts Dr. Bogost's calculation notwithstanding the fact that it was based on unauthenticated data that Dr. Bogost *also* blindly accepted without verification.⁵

> a. *The Sixth Circuit rejected the methodology Dr. Bogost relied on and Mr. Malackowski accepted without verification.*

As fully analyzed in in Mr. Hayden's Motion—and for reasons that are obvious upon a brief reflection—the Sixth Circuit, like other courts, *see Oracle America, Inc. v. Google Inc.*, 750 F.3d 1339, 1378-79 (Fed. Cir. 2014),⁶ has rejected a lines-of-source-code ratio as a valid method for determining the value of infringed software. *See ECIMOS*, 971 F.3d at 640 (considering a *de minimis* use defense). In *ECIMOS*, the Court held, "What matters is not the *quantity* of code that was copied, but the *significance* of the code to the program, and—more importantly—the inferences that can be drawn from the copying." *Id.* (emphases added); *see also Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 765 (S.D. Ohio 2021) (reiterating the Sixth Circuit's rejection of the lines-of-source-code valuation method in *ECIMOS*).

---

⁵ For a more complete analysis of Dr. Bogost's improper methods, *see* Motion to Exclude the Expert Testimony of Dr. Ian Bogost and Brief in Support (Dkt. #91) and the concurrently filed Reply and Memorandum In Support of His Motion To Exclude the Expert Testimony of Ian Bogost.

⁶ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Here, directly contrary to the teaching in *ECIMOS*, Dr. Bogost purportedly compared the texture file size for a player's torso and arm area (where the Asserted Works appear) in the Accused Games to the total size of the playable computer program for an entire Accused Video Game (*i.e.*, graphics, sounds, support files, etc.). (*See* Dkt. #98 at 8). Repeating that error, Mr. Malackowski then relied on and accepted that ratio in order to justify a near-trivial valuation of the damages from Take-Two's infringement.

In defending Mr. Malackowski and Dr. Bogost's reliance on a file size comparison methodology, Take-Two claims, "it is well-established that calculating an amount of disgorgement based on the percentage of the copied work is an appropriate damages methodology." (Dkt. #116 at 9). In defending that proposition, Take-Two cites to *no* authority in the Sixth Circuit for support.[7]

In sum, Mr. Malackowski simply accepted Dr. Bogost's file size analysis (without conducting any independent verification), even though he himself labeled such a method in the software context as "invalid." Moreover, this Circuit has rejected such a methodology in the analogous context of source code. Accordingly, Mr. Malackowski's opinion is not based on reliable principles and methods. The Court should exclude his testimony.

> b. *Mr. Malackowski's opinion is further impaired by his blind acceptance of Dr. Bogost's file size argument since the underlying data is unauthenticated and insufficient.*

Both Mr. Hayden's Motion to Exclude Mr. Malackowski's Testimony (Dkt. #98 at 10-12) and Motion to Exclude Dr. Bogost's Testimony (Dkt. #91 at 13-15) explain why Dr.

---

[7] Notably, one of the cases Take-Two *does* cite at p. 10 of its Opposition is *Schuchart & Assocs. V. Solo Serve Corp.*, No. SA-81-CA-5, 1983 WL 1147 at *19 (W.D. Tex. June 28, 1983, with a parenthetical reading, "(awarding 'one-third' of defendant's profits where '33.3%' of work was copied)." Insofar as Take-Two admittedly copied the Asserted Works *in their entirety*, the same reasoning would entitle Mr. Hayden to **100% of Take-Two's profits** in this case. Take-Two's other cited authorities are inapposite to this case, where a video game user has the ability to control gameplay and can spend as much time with the Asserted Works on screen as desired, simply by, *e.g.* utilizing the 'instant replay' feature or 'edit player' mode.

Bogost's testimony regarding the relative size of data files for the Asserted Works in the Accused Games is improper expert testimony, irrelevant, and based on unreliable data. Mr. Hayden's concurrently filed Plaintiff's Reply in Support of His Motion to Exclude Expert Testimony of Dr. Ian Bogost (10-12) fully analyzes the fatal flaws in Dr. Bogost's data calculation. Mr. Malackowski's blind acceptance of the faulty data relied on by Dr. Bogost is grounds for excluding Mr. Malackowski's testimony.

Take-Two's Opposition claims that Mr. Hayden argues Dr. Bogost's, and thereby Mr. Malackowski's, opinions are unreliable simply because he "could not recall the last name of the person at Take-Two that provided the data to him." (Dkt. #116 at 13). This is a straw man and clearly not the sole basis for Mr. Hayden's Motion. Rather, Mr. Hayden's Motion explains that Dr. Bogost's opinion fails to meet the *Daubert* requirement that an expert's "knowledge" be premised on "good grounds." ███████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████ Without any verification, Dr. Bogost accepted this data as fact. And Mr. Malackowski compounded that deficiency, blindly relying on Dr. Bogost's calculations based on this unauthenticated data. This represents precisely the kind of improper expert conduct that the Court distinguished in *Ohio Env't Dev. Ltd.*, 478 F. Supp. 2d at 963.

Take-Two further claims that, "Plaintiff also argues that Dr. Bogost should have reviewed other data, but there is no other source that Dr. Bogost could have relied upon." (Dkt. #116 at 13). This is wrong. Mr. Hayden never makes such an argument. *Certainly* Dr. Bogost should have properly identified and documented the source of such critical data and could have

10

conducted *his own review* of the data to verify the accuracy and reliability of what was purportedly provided to him by some mysterious Take-Two representative(s).[8]

Take-Two concludes its argument on this matter by breezily claiming Plaintiff will have the opportunity to cross-examine Mr. Malackowski and Dr. Bogost regarding the accuracy of the data. But of course, █████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████ ███████████ ██████████████████████████████████████████ ██████████████████████████ Such facile responses do not meet the standard that *Daubert* requires of expert testimony. Indeed, how would cross-examining these witnesses at trial result in any different or more meaningful answer? His deposition testimony confirms the deficiency of Mr. Malackowski's opinion.

The Court should exclude Mr. Malackowski's testimony relating to the value of the Asserted Works because it relies on an invalid method and is based on unreliable data.

> 2. *Mr. Malackowski disregarded contrary evidence and wholly relied on the improper Jay Survey, thus making his opinion faulty and unreliable.*

In an alternative to his opinion assigning a token value to the Asserted Works, Mr. Malackowski relies on the fundamentally flawed NBA 2K Video Game Survey Report of Dr. E. Deborah Jay to conclude that even if Mr. Hayden prevails, he is entitled *no* damages. (Dkt. #98 at 12-13). Take-Two's Opposition incorrectly asserts that Mr. Hayden claims, "that

---

[8] ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████.

11

Malackowski's opinions should be excluded because he relies in part on the results of a survey conducted by Take-Two's expert, Dr. Jay." (Dkt. #116 at 14). This is categorically false. Mr. Hayden has *never* argued that it is improper for an expert witness to rely on another expert's opinion. Instead, Mr. Hayden has argued, and continues to argue, that it is impermissible for an expert to blindly and uncritically accept another's opinion in forming his/her own opinion. *See Ohio Env't Dev. Ltd.*, 478 F. Supp. 2d at 975. Further, Take-Two's Opposition seems to imply that *any* opinion reached by an expert is permissible if the expert merely relied on another expert's opinion. This is not so. Courts have held, "An expert is not entitled to testify on opinions that rely on the opinion of another expert, simply because the other is an expert." *Mooring Capital Fund, LLC v. Knight*, 388 Fed.Appx. 814, 820 (10th Cir. 2010); *see also Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017).

   Dr. Jay's Survey is fundamentally flawed. Specifically, her survey is not based on reliable methodology or on sufficient facts or data. In fact, Dr. Jay's survey is carefully designed to *avoid* responses that identify the Asserted Works was a reason respondents bought the Asserted Games. (*See* Mot. and Br. in Supp. to Exclude the Expert Testimony of Dr. E. Deborah Jay, Dkt. # 88.) ████████████████████████████████████████████████████ Without any scrutiny or investigation of his own, Mr. Malackowski simply accepts and relies on Dr. Jay's

12

survey results at face value. This is not sufficient. *See Mooring Capital Fund*, 388 Fed.Appx. at 820; *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d at 789.

Therefore, the Court should exclude Mr. Malackowski's opinions that rely on Dr. Jay's testimony.

### D. Mr. Malackowski's opinions are unfairly prejudicial, confusing and would be misleading to a jury.

For the reasons explained in this Memorandum and in Mr. Hayden's Motion to Exclude Mr. Malackowski's Testimony, Mr. Malackowski's opinions would clearly be confusing and misleading to a jury. Mr. Malackowski's reliance on the "invalid" (his characterization) file size "analysis" methodology of Dr. Bogost is improper and not striking it would predictably mislead a jury to believe such an analysis is appropriate and accepted in the Sixth Circuit. As explained above, it is neither. Further, a jury would be misled if it were obliged to consider Mr. Malackowski's opinions that relied on Dr. Jay's survey, which, as more fully explained in Motion and Brief in Support to Exclude the Expert Testimony of Dr. E. Deborah Jay (Dkt. #88), was incapable of supporting her conclusions (the same conclusions Mr. Malackowski relies on).

The Court should exclude Mr. Malackowski's unfairly prejudicial and misleading opinions under *Daubert* and Rule 403.

### III. CONCLUSION

For the foregoing reasons, Plaintiff, James Hayden, respectfully requests that the Court grant his Motion to Exclude the Expert Testimony of James E. Malackowski.

13

Dated: December 17, 2021          Respectfully submitted,

By: */s/ Dustin Likens*
John S. Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Andrew Alexander (Ohio Bar No. 0091167)
Dustin Likens (Ohio Bar No. 0097891)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
aalexander@calfee.com
dlikens@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

## CERTIFICATE OF SERVICE

  I hereby certify that on December 17, 2021, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

                */s/ Dustin Likens*
                One of the attorneys for Plaintiff