**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN,            ) | Case No. 1:17-cv-02635 |
|         ) | |
|       Plaintiff,    ) | Judge Christopher A. Boyko |
|         ) | |
|    vs.        ) | |
|         ) | **PUBLIC VERSION--REDACTED** |
| 2K GAMES, INC. and TAKE-TWO   ) | |
| INTERACTIVE SOFTWARE, INC.,   ) | |
|         ) | |
|       Defendants.   ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. NINA JABLONSKI**

Plaintiff James Hayden respectfully submits this Reply in support of his Motion to Exclude the Expert Testimony of Dr. Nina Jablonski (Dkt. #85, "Motion").

**I.     Introduction**

Take-Two's Opposition Brief (Dkt. # 114) fails to save Dr. Jablonski's improper opinions. If anything, it provides the Court with yet another reason to exclude her Report.[1] To support its implied license defense, Take-Two relies heavily on Dr. Jablonski's improper legal opinions that, in so many words, tattoo artists *per se* automatically license their tattoo rights to their clients. (*See, e.g.*, Mot. for Summ. J., Dkt. # 95, p. 24 ("Thus, the NBA Players 'are free to authorize the use or dissemination of their . . . likeness in whatever way they . . . see fit without the necessity of seeking permission from the tattooist.' Jablonski Decl. ¶ 32.").) With that testimony under fire, however, Take-Two now disavows any connection between Dr. Jablonski's opinions and "legal rights and copyright ownership." (Opp. Br., Dkt. # 114, p. 2.) But if Dr. Jablonski's opinions, (for example that ███████████████████████████████████

---

[1] "Report" refers to the Expert Report and Declaration of Nina Jablonski, Dkt. #85-2.

████████████████████████), have nothing to do with legal rights or copyright ownership, then they are ***not relevant*** and ***highly prejudicial and misleading***. Either way, they should be excluded.

Moreover, Take-Two's efforts to bolster Dr. Jablonski's unsupported opinions about tattoo industry "customs and practices" amount to nothing more than attorney argument. Despite citing an unspecified "myriad" of sources, Take-Two fails to identify the factual bases that are completely absent from Dr. Jablonski's Report regarding tattoo "rights," tattoo licensing, tattoo artist expectations about such rights, or tattoo business economics. Dr. Jablonski is simply not an expert in these fields; worse, in her deposition she revealed that she did not even *investigate* many of her claims. These opinions should also be excluded.

Take-Two's suggestion that Mr. Hayden needs to retain a "tattoo industry expert" to refute Dr. Jablonski's baseless opinions is comical. (Opp. Br., p. 2.) Mr. Hayden *lives* the "customs and practices" that Dr. Jablonski *claims* to be an expert in. He has over *twenty years* of experience creating and inking tattoos on high-profile clients. Dr. Jablonski has none. Mr. Hayden's experiences, which are documented in the record (for example the multitude of licenses in which companies have *paid* him to reproduce his works), directly refute Dr. Jablonski's opinions and, more importantly, expose her lack of research on these issues.

Finally, the Southern District of New York's opinion declining to exclude Dr. Jablonski's expert report in a separate case is not applicable here. In *Solid Oak Sketches*,[2] the plaintiff did not even raise the specific issues Mr. Hayden identifies with Dr. Jablonski's Report (for example, that Dr. Jablonski submits several improper legal opinions and that she did not investigate her claims). Indeed, it does not appear that the plaintiff even deposed Dr. Jablonski to adequately

---

[2] *Solid Oak Sketches, LLC v. Visual Concepts, Inc.*, 1:16-cv-724(LTS)(RLE).

understand that she completely failed to investigate her claims. For all these reasons and the reasons set forth in Mr. Hayden's Motion, Dr. Jablonski's report should be excluded.

## II.     Despite Take-Two's efforts to walk them back, Dr. Jablonski offers legal opinions that should be excluded.

Take-Two's efforts to walk back Dr. Jablonski's improper legal opinions do nothing to save them. If anything, Take-Two's claims make Dr. Jablonski's opinions more confusing and highly prejudicial. For example, Take-Two now claims that when Dr. Jablonski talks about "rights" she does not mean that in a "legal sense" (Opp. Br., p. 8) and that "she *never* offers opinions on whether there was an 'implied license' under the law" (*id.* at fn. 3). But if Dr. Jablonski is not talking about "rights" in a legal sense, we are left guessing about what she means and why it would be relevant to this case. The same goes for Take-Two's claim that Dr. Jablonski never opines on whether there is an implied license under the law. If this is true, what ███████ is Dr. Jablonski declaring exists between the tattoo artist and the client, which allegedly demonstrates that the tattoo artist ████████████ over the tattoos? (Report, ¶ 34.) Either Dr. Jablonski's opinions (1) *are* about *legal* rights in tattoos and whether an *implied license* does in fact exist and they are thus improper or (2) they are irrelevant, confusing, and would be highly misleading to the jury. In both cases, the opinions should be excluded.

In reality, Take-Two's argument that Dr. Jablonski is not talking about *copyright* rights is preposterous. Consider Dr. Jablonski's claim (which Take-Two ignores in its Opposition) that



(Report, ¶ 67 (emphasis added).)

Reproducing the Asserted Tattoos is one of the exclusive rights *explicitly* set forth in the Copyright Act. 17 U.S.C. § 106(1) ("the owner of copyright under this title has the exclusive

rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies"). Dr. Jablonski is unambiguously declaring that it is the NBA Players—not Mr. Hayden—that possess the right to allow others to reproduce the tattoos. *This is one of the central legal disputes at issue in this case*. (*See* Opp. to Mot. for Summ. J., Dkt # 109, pp. 19–24.) There is no question that this is an improper legal opinion.

In Dr. Jablonski's opinion, the NBA Players' right to permit others to reproduce the Asserted Tattoos comes from the "agreement" (*i.e.*, an implied license) between tattoo artists and client:



(*Id.* at ¶ 34 (emphasis added).) Whether Dr. Jablonski calls it an "implied license" or an "agreement," she is expressing an opinion that, *per se*, tattoo artists agree to relinquish any "control" to the client in reproducing the tattoos. (*See id.*) But this is precisely the legal conclusion Take-Two is asking the Court to adopt regarding its implied license defense. This is not proper expert testimony. Take-Two even quotes one of Dr. Jablonski's legal opinions as the conclusion in its implied license section in its summary judgment brief: "Thus, the NBA Players 'are free to authorize the use or dissemination of their . . . likeness in whatever way they . . . see fit without the necessity of seeking permission from the tattooist.' Jablonski Decl. ¶ 32." (Motion for Summ. J., Dkt. # 95, p. 24.) The verbatim overlap between Take-Two's *legal* conclusion in that section and Dr. Jablonski's quoted opinion tells the Court all it needs to know.  Dr. Jablonski's opinions are indeed legal opinions that should be excluded.

Take-Two also tries to shield Dr. Jablonski's improper opinions by characterizing them as "opinions on tattoo industry customs and practices." (Opp. Br., pp. 7–8.) As explained below,

4

to the extent Dr. Jablonski opines on industry "customs and practices," most of the opinions are completely unsupported. (*See infra* at pp. 6–10.) But Dr. Jablonski made it clear in her deposition that her opinions are not so limited:



- ███████████████████████████████████████ She repeats this same statement twice. (Jablonski Dep., Dkt. # 85-3, 78:7–79:23 (emphasis added).)

- █████████████████████████████████████████████ ████████████████ (*Id.* at 142:22–143:10 (emphasis added).)

- █████████████████████████████████████████ ███████████ (*Id.* at 184:24–185:18 (emphasis added).)

- ██████████████ (*Id.* at 81:14–16 (emphasis added).)

- ████████████████████████████████ (*Id.* at 124:20–125:10 (emphasis added).)

Dr. Jablonski is not simply *referring* to the law, as Take-Two suggests. (Opp. Br., p. 8.) She is without question, expressing legal opinions about the rights to ████████████████ █████████████████████████████ (Jablonski Dep., Dkt # 85-3, 78:7–79:23, 81:14–16, 124:20–125:10, 142:22–143:10, 184:24–185:18.) The fact that Dr. Jablonski "does not even mention copyright ownership"—another one of Take-Two's attempts to save her testimony (Opp. Br., p. 2)—is elevating form over substance. What else is she talking about when she claims that ██████████████████████████████ ████████████████? (Jablonski Dep., Dkt. # 85-3, 81:14–16. (emphasis added)).) And Take-Two's outrageous allegation that Mr. Hayden "*add[ed]* the word 'legal' where Dr. Jablonski did *not* use that word" is completely fabricated. (Opp. Br. 7.) Mr. Hayden did not do

this, which is why this Court will not find such an instance at Take-Two's citation ("Pl.'s Mot. 9"). Dr. Jablonski's testimony speaks for itself.

Accordingly, Dr. Jablonski's improper legal conclusions should be excluded, and she should be precluded from offering them at trial. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994); *Summerland v. County of Livingston*, 240 Fed. Appx. 70, 81 (6th Cir. 2007); *Battaglia v. U.S.*, No. 1:07CV778, 2010 WL 11561513, at *4 (N.D. Ohio Sep. 9, 2010) (J. Boyko); *In re Commercial Money Center, Inc.*, 737 F. Supp. 2d 815, 829 (N.D. Ohio 2010).

III.   **Despite Take-Two claiming an unspecified "myriad" of sources, Dr. Jablonski has no factual basis for her opinions about tattoo "rights," tattoo licensing, tattoo artist expectations about rights, or tattoo business economics.**

Dr. Jablonski also makes many unsupported claims about the tattoo industry (Take-Two describes them as being about "customs and practices"), including on tattoo rights, tattoo licensing, tattoo artist expectations about rights and licensing, and the economics of the tattoo industry. (*See* sections IV–VII.) Many of these claims are improper legal conclusions (*see supra* at pp. 3–6); the others have no factual support. This subject matter is simply not within Dr. Jablonski's expertise, and her deposition testimony revealed that she has not meaningfully researched these topics.

For example, in its Opposition Brief, Take-Two highlights Dr. Jablonski's testimony that:

This is because the norm of the tattoo industry is that tattooists do not seek to control their tattoos as they appear on their clients. From the tattooist's perspective, once tattooed, he or she intends that the client goes out into the world displaying that tattoo and the tattooist relinquishes all rights over the display and reproduction of the tattoo as it appears in real life.

(Opp. Br., p. 8; Report, ¶ 65.) Dr. Jablonski opines that the tattoo artist's "perspective," broadly speaking, is that he or she "relinquishes all rights over the display and reproduction and reproduction of the tattoo as it appears in real life." (*Id.*) So one would expect that Dr. Jablonski has surveyed tattoo artists, or, at minimum, she has *talked* to tattoo artists to understand their

perspective on this topic. She has not.[3] (*See* Motion, pp. 9–11.) Take-Two does not dispute this. Rather, Dr. Jablonski cites six lines from Mr. Hayden's deposition (ignoring the fact that Mr. Hayden clearly disputes Dr. Jablonski's claim) and one paragraph from a litigation-driven declaration from a tattoo artist in a different lawsuit. (Report, ¶ 65, fn. 60.) This *cannot* be a sufficient basis to allow such a sweeping claim about the intentions of *all* tattoo artists to be presented to a jury. Dr. Jablonski simply *does not and cannot* know that all tattoo artists intend to "relinquish[] all rights over the display and reproduction of the tattoo as it appears in real life." (Report, ¶ 65.) Allowing this speculative testimony would be highly prejudicial.

Likewise, Dr. Jablonski has no basis for and did not investigate her assertions about tattoo industry harms (section V)[4] and the tattoo licensing market (section VII). (Motion, pp. 11–15.) For example, Dr. Jablonski cites little-to-no factual support for any of her speculative claims in section V of her Report, describing how requiring Take-Two to get permission from Mr. Hayden would harm the tattoo industry. (Report, ¶¶ 41–45.) When pressed in her deposition, Dr. Jablonski described the harms in terms of the tattoo artists having to keep records of who they ink. (Jablonski Dep., Dkt. # 85-3, 186:24–203:5.) But she had no support for these claims other than references to YouTube videos that apparently discuss how tattoo artists keep records and her own "observations" *through tattoo shop windows*. (*Id.*) Take-Two questions Mr. Hayden's criticism of Dr. Jablonski's through-the-window investigation as "bizarre" (Opp. Br., fn. 7), but

---

[3] Take-Two repeatedly refers to "interviews" as sources in its Opposition Brief, but these appear to be references to the handful of casual conversations Dr. Jablonski had with tattoo artists in or around 2004 that, admittedly, did not touch on tattoo rights, tattoo artist expectations about such rights, or tattoo licensing. (Jablonski Dep., Dkt. # 85-3, 66:2–70:8, 73:24–74:18, 75:3.)

[4] As explained in Mr. Hayden's Motion, Dr. Jablonski's arguments in her section V are not based on the facts in this case, in which Mr. Hayden alleges that Take-Two, a video game company, needs to get permission from Mr. Hayden to reproduce the tattoos on video game avatars. Her premise is that all "potential clients" "had to seek permission to *display or disseminate the image [of] their tattoo on their body*." (Report, ¶ 42 (emphasis added).) This is based on an unjustified allegation that "Plaintiff hopes to usurp control of these players' likenesses without directly suing them[.]" (Opp. Br., p. 13.) Although this may be the story Take-Two wants to tell, it is not consistent with the facts of this case, which makes Dr. Jablonski's opinions in this section irrelevant and prejudicial, warranting exclusion. *See U.S. v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001).

this is precisely how Dr. Jablonski described her methodology: "I have walked by numerous tattoo parlors and looked at what was going on inside because they often have big windows and high visibility, so it's easy to see the tattooist and the person getting the tattoo." (Jablonski Dep., 201:15–20.) It is not Mr. Hayden's criticism that is "bizarre."

Similarly, Dr. Jablonski cites no factual support for her claims about the existence of a tattoo licensing market other than Mr. Hayden's testimony and two litigation-driven declarations from tattoo artists in another case. (*See* Report, section VII.) Although Dr. Jablonski's title of her section VII affirmatively proclaims that "THERE IS NO MARKET FOR LICENSING TATTOOS IN VIDEO GAMES," Take-Two, again, walks her opinion back in its Opposition Brief as simply being that "she is unaware of a market for licensing tattoos in video games[.]" (Opp. Br. p. 14.) But the fact that she is "unaware" does not come from any investigation or research. She has admittedly never talked to any tattoo artist or video game company (besides Take-Two) about licensing tattoo designs. (Jablonski, Dep. 112:13–118:24.)

> Q: Have you spoken with any video game publishers or developers besides the defendants in this case to ask them whether they've licensed a tattoo for use in a video game?
>
> A: No, I did not. It was completely irrelevant to my report.

(*Id.* at 113:20–114:3.) Dr. Jablonski's opinions are pure speculation.

In light of Dr. Jablonski's dearth of research on the specific issues she opines on, Take-Two recites unspecified sources and an "extensive knowledge-base," including "***more than 20 centuries of evidence***." (Opp. Br., p. 10.) But this is just attorney argument.[5] Dr. Jablonski's tattoo knowledge base is, in her words, limited to "skin as a mode of social communication and

---

[5] Take-Two claims Dr. Jablonski cites "numerous academic articles in her report," but she cites *no* academic articles in her sections related to tattoo rights and artist expectations about tattoo rights (section IV), the impacts on the tattoo industry (section V), the reasons the NBA Players got their tattoos (section VI), and the market for licensing tattoos in video games (section VII). Nor does Dr. Jablonski cite any sources in her CV that appear related to such issues.

the history of tattoos." (Jablonski Dep., 42:1–6.) There is *zero* evidence in the record, including Dr. Jablonski's CV, that suggests she knows anything about or has researched anything about tattoo rights, tattoo artist expectations or intentions to relinquish such rights, licensing tattoos in media, or the economics of running a tattoo shop. Indeed, in her book, <u>Skin: A Natural History</u>, Dr. Jablonski devotes merely a small portion to the topic of tattoos. (Ex. A, Book Excerpts.[6]) Notably missing from this book is any reference to tattoo rights, tattoo artist expectations or intentions to relinquish such rights, licensing tattoos in media, or the economics of running a tattoo shop. (*Id.*) She simply has not researched these issues and her opinions on them should be excluded.

Take-Two's reliance on *Responsive Innovations, LLC v. Hotlzbrinck Publishers, LLC*, is misplaced. No. 08 Civ. 1184, 2014 WL 1237632 (N.D. Ohio Mar. 25, 2014). In *Responsive Innovations*, this Court did not hold that an expert can make speculative claims with no factual basis simply because the expert has done unrelated research on tangential subject matter. Rather, the expert in *Responsive Innovations* testified as "a person of ordinary skill in the art" on an asserted patent and prior art references. *Id* at *2–3. This Court allowed the testimony because the expert met the agreed-upon qualifications ("a Bachelor's degree and several years of experience in wireless communications") that establish a witness as a "person of ordinary skill in the art." *Id.* at *3. This case, however, is not a patent infringement case where it is relevant or helpful for a person of ordinary skill in the art to provide testimony on patent references. Rather, Dr. Jablonski is making specific assertions about tattoo artist intentions, despite never surveying—or even talking to—a single tattoo artist about their intentions or expectations on the subject matter at issue.

---

[6] Exhibit A consists of excerpts from Dr. Jablonski's book, <u>Skin: A Natural History</u>, of each instance in which she references tattoos.

Similarly, the opinion in *Surles ex rel. Johnson v. Greyhound Lines, Inc.* is also inapplicable. 474 F.3d 288, 294 (6th Cir. 2007). The *Surles* case was about a bus-driver plaintiff who was attacked by a passenger, sustained serious injuries as a result, and sued for negligence. The expert in question was a former police officer that founded a "threat management unit" who had experience in the transportation industry. The expert offered testimony interpreting "prior incident reports" and assessing the plaintiff's "driver training." *Id.* The defendant in *Surles* challenged the expert's qualifications because he had no experience in the "very specialized area of commercial bus line threat assessment," but the court found the expert's background and expertise in threat assessment in the transportation field sufficient. *Id.* The problems with Dr. Jablonski's opinions here are not analogous. Mr. Hayden's challenge is not that Dr. Jablonski is merely lacking knowledge on these topics for just a subset of tattoo artists. Dr. Jablonski has not talked to *any* tattoo artists about or otherwise researched these issues. Her opinions should thus be excluded.

**IV.    The court in *Solid Oak Sketches* did not consider the arguments presented in Mr. Hayden's Motion, nor was the court privy to *any* deposition testimony from Dr. Jablonski.**

Take-Two repeatedly relies on the decision in *Solid Oak Sketches* that denied a motion to exclude Dr. Jablonski's opinion in that case. (Opp. Br., pp. 1, 2, 4, 6, 7, 15.) That opinion should not be relied on in this case for several reasons. *First*, the plaintiff's motion to exclude in *Solid Oak* failed to present, in its less-than-two pages of briefing, arguments Mr. Hayden raises here, including the fact that many of Dr. Jablonski's opinions are improper legal conclusions and that Dr. Jablonski did not research and has no factual basis for many of her opinions. Accordingly, the *Solid Oak* opinion does not address these arguments. *Second*, there is no evidence that the *Solid Oak* plaintiff ever deposed Dr. Jablonski. Thus, the court was not aware that Dr. Jablonski failed to conduct the minimal investigation one would expect when opining on "customs and

practices" in the tattoo industry (for example, conducting a survey or, at minimum, interviewing tattoo artists). Thus, the *Solid Oak* opinion has little weight here.

## V.    Conclusion.

Dr. Jablonski strays well outside her expertise in her Report. She purports to supplant the role of this Court and the jury in delivering "opinions" on the ultimate legal issues critical to this case. She is not a lawyer and has no expertise on copyright law. She also makes sweeping conclusions about "the tattoo industry" that have no support and for which she did no investigation or research. Take-Two claims that Dr. Jablonski "provides invaluable insight on tattoo industry practices and customs." (Opp. Br. p. 1.) But her opinions are only "invaluable" to Take-Two—to a jury, they are misleading and confusing. Her insight is not based in facts, research, investigation, or expertise. If allowed, Dr. Jablonski's opinions will be highly prejudicial. They should be excluded.

Dated: December 17, 2021

Respectfully submitted,

By: */s/ Andrew Alexander*
John S. Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Andrew Alexander (Ohio Bar No. 0091167)
Dustin Likens (Ohio Bar No. 0097891)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
aalexander@calfee.com
dlikens@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2021, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

/s/ Andrew Alexander
One of the attorneys for Plaintiff
