### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| JAMES HAYDEN, | CASE NO. 1:17-cv-02635-CAB |
| Plaintiff, | |
| v. | |
| 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC. , | |
| Defendants. | |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
### 2K GAMES, INC. AND TAKE-TWO INTERACTIVE SOFTWARE, INC.'S
### <u>MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ..................................................... 1

ARGUMENT ............................................................................... 3

    I.     TAKE-TWO'S USE OF THE TATTOOS WAS FAIR ......................................... 4

          A.     Factor One: *NBA 2K* Is Transformative and Its Profits Are Not from the Tattoos ............................................................................ 4

          B.     Factor Two: The Tattoos Are Not Creative and Were Published .............. 8

          C.     Factor Three: Take-Two's Copying Was Reasonable In Light of Its Purpose ......................................................................................... 8

          D.     Factor Four: Take-Two Has Not Harmed the Tattoos' Markets ................ 9

    II.     TAKE-TWO'S USE OF THE TATTOOS WAS AUTHORIZED ...................... 12

    III.     TAKE-TWO'S USE OF THE TATTOOS IS *DE MINIMIS* ............................... 17

    IV.     TWO TATTOOS LACK ORIGINALITY AND SUBSTANTIAL SIMILARITY .................................................................................... 19

    V.     PLAINTIFF IS NOT ENTITLED TO CERTAIN REMEDIES ........................... 20

CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Take-Two Interactive Software, Inc.,*
    489 F. Supp. 3d 812 (S.D. Ill. 2020) ................................................................7, 16

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .............................................................................................7

*Asset Mktg. Sys., Inc. v. Gagnon,*
    542 F.3d 748 (9th Cir. 2008) ................................................................13, 15, 16

*Authors Guild, Inc. v. HathiTrust,*
    755 F.3d 87 (2d Cir. 2014) ...................................................................4, 9, 10, 11

*Authors Guild v. Google, Inc.,*
    804 F.3d 202 (2d Cir. 2015) ........................................................................ *passim*

*Balsley v. LFP, Inc.,*
    691 F.3d 747 (6th Cir. 2012) ............................................................................5, 8

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
    448 F.3d 605 (2d Cir. 2006) ..........................................................................6, 7, 9

*Blanch v. Koons,*
    467 F.3d 244 (2d Cir. 2006) ..........................................................................10, 11

*Bond v. Blum,*
    317 F.3d 385 (4th Cir. 2003) ...........................................................................11

*Bouchat v. Balt. Ravens Ltd. P'ship,*
    737 F.3d 932 (4th Cir. 2013) ............................................................................6, 7

*Byler v. Air Methods Corp.,*
    823 F. App'x 356 (6th Cir. 2020) .......................................................................16

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) ....................................................................................8, 9, 10

*Castle v. Kingsport Publ'g Corp.,*
    No. 19 Civ. 92, 2020 WL 7348157 (E.D. Tenn. Dec. 14, 2020) ......................5, 6, 9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .............................................................................................3

*Cotter v. Christus Gardens, Inc.*,
   No. 99 Civ. 5996, 2000 WL 1871698 (6th Cir. Dec. 12, 2000) ..............................................20

*Crispin v. Christian Audigier, Inc.*,
   839 F. Supp. 2d 1086 (C.D. Cal. 2011) ..............................................................16

*CSX Transp. v. Globe Metallurgical, Inc.*,
   No. 05 Civ. 683, 2007 WL 1567690 (S.D. Ohio May 25, 2007)..........................................12

*ECIMOS, LLC v. Carrier Corp.*,
   971 F.3d 616 (6th Cir. 2020) ..............................................................18

*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) ..............................................................13

*Empire Med. Rev. Servs., Inc. v. Compuclaim, Inc.*,
   326 F. Supp. 3d 685 (E.D. Wis. 2018)..............................................................16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)..............................................................8

*FenF, LLC v. Healio Health Inc.*,
   No. 08 Civ. 404, 2009 WL 10688713 (N.D. Ohio Sept. 4, 2009) ..........................................15

*Foad Consulting Grp., Inc. v. Azzalino*,
   270 F.3d 821 (9th Cir. 2001) ..............................................................13

*Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*,
   784 F. App'x 253 (5th Cir. 2019) ..............................................................13

*Google, LLC v. Oracle Am. Inc.*,
   141 S. Ct. 1183 (2021)..............................................................7, 10

*Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*,
   345 F.3d 922 (6th Cir. 2003) ..............................................................17, 18, 20

*Great Minds v. FedEx Off. & Print Servs., Inc.*,
   886 F.3d 91 (2d Cir. 2018)..............................................................12

*Hiller, LLC v. Success Grp. Int'l Learning Alliance, LLC*,
   976 F.3d 620 (6th Cir. 2020) ..............................................................19, 20

*I.A.E., Inc. v. Shaver*,
   74 F.3d 768 (7th Cir. 1996) ..............................................................12, 13

*Johnson v. Jones*,
   149 F.3d 494 (6th Cir. 1998) ..............................................................12, 13

*Katz v. Google Inc.*,
  802 F.3d 1178 (11th Cir. 2015) ........................................................6

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003) ....................................................5, 6, 7

*Kohus v. Mariol*,
  328 F.3d 848 (6th Cir. 2003) ........................................................4, 7

*Latimer v. Roaring Toyz, Inc.*,
  601 F.3d 1224 (11th Cir. 2010) ......................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...................................................................4, 19

*Med. Mut. of Ohio v. Air Evac EMS, Inc.*,
  341 F. Supp. 3d 771 (N.D. Ohio 2018)............................................16

*Moore v. Bitca*,
  No. 19 Civ. 35, 2020 WL 5821378 (D. Vt. Sept. 30, 2020) ..................7

*Niemi v. Am. Axle Mfg. & Holding, Inc.*,
  No. 05 Civ. 74210, 2008 WL 905558 (E.D. Mich. Mar. 31, 2008).......20

*Nunez v. Caribbean Int'l News Corp.*,
  235 F.3d 18 (1st Cir. 2000)..............................................................6

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010)...............................................................7

*Princeton Univ. Press v. Mich. Document Servs., Inc.*,
  99 F.3d 1381 (6th Cir. 1996) ....................................................11, 12

*Pytka v. Van Alen.*,
  No. 92 Civ. 1610, 1992 WL 199833 (E.D. Penn. Aug. 11, 1992).........16

*Reinicke v. Creative Empire LLC*,
  38 F. Supp. 3d 1192 (S.D. Cal. 2014)...............................................13

*Reinicke v. Creative Empire, LLC*,
  669 F. App'x 470 (9th Cir. 2016) ....................................................13

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
  709 F.3d 1273 (9th Cir. 2013) ..........................................................7

*Solid Oak Sketches, LLC v. 2K Games, Inc.*
  449 F. Supp. 3d 333 (S.D.N.Y. 2020).......................................... *passim*

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
    No. 16 Civ. 724, 2016 WL 4126543 (S.D.N.Y. Aug. 2, 2016) ...............................................20

*Static Control Components, Inc. v. Lexmark Int'l, Inc.*,
    No. 02 Civ. 571, 2007 WL 1485770 (E.D. Ky. Apr. 18, 2007)...................................................6

*Suntrust Bank v. Houghton Mifflin Co.*,
    268 F.3d 1257 (11th Cir. 2001) ...............................................................................................11

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014)................................................................................................ *passim*

*Viacom Int'l, Inc. v. Fanzine Int'l Inc.*,
    No. 98 Civ. 7448, 2000 WL 1854903 (S.D.N.Y. July 12, 2000) ...........................................16

*Wickham v. Knoxville Int'l Energy Exposition, Inc.*,
    739 F.2d 1094 (6th Cir. 1984) ................................................................................................4

*Wilchombe v. TeeVee Toons, Inc.*,
    555 F.3d 949 (11th Cir. 2009) ...............................................................................................13

*Yates v. Adams*,
    No. 15. Civ. 4912, 2017 WL 783520 (N.D. Cal. Mar. 1, 2017) .............................................14

*Zomba Enters., Inc. v. Panorama Records, Inc.*,
    491 F.3d 574 (6th Cir. 2007) ..................................................................................................5

**Statutes**

17 U.S.C. § 103................................................................................................................................19

**Rules**

Fed. R. Civ. P. 56.........................................................................................................................3, 4

## SUMMARY OF ARGUMENT

Take-Two's opening brief explained that, based on the undisputed facts, Plaintiff's case should be dismissed in its entirety.[1]  Remarkably, Plaintiff's opposition actually *confirms* that there are no genuine issues of material fact that preclude granting Take-Two's motion.  Instead, Plaintiff relies on repeated misstatements of the law and the factual record.  Plaintiff's attempts are unavailing and, thus, summary judgment should be granted for five independent reasons.

*First*, all four fair use factors support granting summary judgment.  **As to the purpose and character of the use**, Plaintiff admits that the parties have different purposes: he created the Tattoos at the request of the NBA Players to express themselves, whereas Take-Two includes the Tattoos to create a simulation of real world basketball.  As the *Solid Oak Sketches, LLC v. 2K Games, Inc.* court concluded, this is transformative as a matter of law.  449 F. Supp. 3d 333, 347 (S.D.N.Y. 2020).  Moreover, it is undisputed that the Tattoos are merely a tiny component of the much larger *NBA 2K* virtual world, further showing transformativeness.  **As to the nature of the works**, Plaintiff does not deny that they are copied from pre-existing material, based on stock tattoo elements, published, and used to accurately depict the NBA Players, all of which support fair use.  Further, he does not defend the Tattoos' creativity, tacitly admitting that they are not.  **As to the amount and substantiality of the portion used**, in his quest for a damages windfall, Plaintiff repeatedly asserts that the Tattoos were necessary to achieve Take-Two's purpose of realism.  This, however, only goes to show that it was reasonable for Take-Two to include the Tattoos in *NBA 2K*.  Moreover, Plaintiff does not dispute two of the tattoos are never seen by users of the game.  **As to the effect of the use on the market**, Plaintiff does not dispute the core issue that *NBA 2K* is not a substitute for the Tattoos, which alone shows fair use.  Further,

---

[1]    Capitalized terms not defined here were defined in Take-Two's opening brief.  *See* Dkt. 101-1 ("Mot.").

Plaintiff has not identified a single license—his or anyone else's—for including a real-world tattoo in a video game, and he has left unrebutted the testimony of Take-Two's video game and tattoo experts that licensing tattoos for such use would be a dramatic departure from existing practice. Finally, he tacitly admits that the public benefit favors Take-Two. The undisputed evidence is that Plaintiff has lost no sales from *NBA 2K*, but finding no fair use under these circumstances will (a) deprive the world of realistic video games, like *NBA 2K*; and (b) chill the personal expression of those who seek tattoos and later want to appear in media. Accordingly, based on these undisputed facts, *NBA 2K* is a fair use of the Tattoos.

       **Second**, Take-Two showed that its use was authorized as a matter of law. Take-Two indisputably licensed the right to show the NBA Players' likenesses, including their tattoos, from the NBA Players; the players, in turn, were impliedly licensed by Plaintiff to show and allow others to show their Tattoos. Now Plaintiff asserts that his purported private, *subjective* intent not to license the Tattoos forecloses summary judgment, but it actually is legally immaterial when there is no factual dispute as to the evidence of *objective* intent. As both Plaintiff's tattoo expert and Plaintiff himself attested, the industry practice is that, when clients leave the tattoo parlor, they are free to show and allow others to show their tattoos as part of their likenesses without needing to get their tattooists' permission. Plaintiff's undisputed conduct at the time the Tattoos were inked is consistent with this standard practice: Plaintiff delivered the Tattoos at the NBA Players' request and never limited or informed the NBA Players of any restrictions on their use of the Tattoos, despite knowing that they were professional basketball players who would appear in media. Thus, an implied license was created as a matter of law.

       **Third**, Take-Two proved that due to the minimal and hard-to-observe manner in which the Tattoos appear in *NBA 2K*, its use is *de minimis*. The undisputed facts show that the Tattoos

appear on only three out of 400+ players, are depicted at a fraction of their real-life size, appear among a plethora of other audio-visual aspects, and are a minute fraction of the game's data. The best that Plaintiff can offer in response are made-for-litigation clips in which he pauses the game and zooms in on the Tattoos, but the unrebutted evidence is that an average observer would not use *NBA 2K* this way, making it irrelevant to Take-Two's *de minimis* use defense.

**Fourth**, Take-Two established that two Tattoos are unprotectable and not substantially similar to *NBA 2K*. Plaintiff does not deny that he copied pre-existing works to ink these two Tattoos, but contends he is entitled to protection in whatever trivial deviations exist between the pre-existing works and the Tattoos. Yet, such trivial differences, if any, do not afford Plaintiff copyright protection. And these same Tattoos are almost entirely covered by jerseys, precluding substantial similarity. Plaintiff does not dispute that these Tattoos are obstructed, but argues that because Take-Two's tattoo expert was aware of their presence, Take-Two's motion fails. That makes no sense. Of course a tattoo expert who studied the Tattoos would understand that they are on the players. That says nothing about whether an average person who did not study them would observe them. Thus, summary judgment as to those Tattoos also is warranted.

**Fifth**, Take-Two demonstrated that Plaintiff is not entitled to statutory damages or attorney's fees because its sales of *NBA 2K* are a continuing alleged infringement. Plaintiff does not dispute that the Tattoos are used in the same way in each annual release of *NBA 2K*. Instead, he argues that extraneous features, such as new elements or improved graphics, raise an issue of fact. As such features are legally irrelevant, summary judgment should be granted.

## ARGUMENT

Take-Two was responsible for "identifying each claim or defense . . . on which summary judgment is sought," Fed. R. Civ. P. 56(a), and the materials that it "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

It was then Plaintiff's burden to "establish that there is a genuine issue of material fact," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986), by "citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). Notably, Plaintiff ignores his own burden, Opp. 7, and fails to satisfy it. Thus, summary judgment is appropriate.[2]

## I.  TAKE-TWO'S USE OF THE TATTOOS WAS FAIR

Take-Two showed that *NBA 2K* makes fair use of the Tattoos as each fair use factor supports Take-Two. Mot. 11–21. Although each factor is discussed below, it should not go unnoticed that Plaintiff **does not dispute** that **NBA 2K is not a substitute for the Tattoos**. Mot. 18; Means Decl. Exs. 31 (Malkiewicz Tr.) 44:14–24; 30 (Lenzo Tr.) 276:14–16. This fact alone is case dispositive, as fair use exists where the parties' works are not substitutes. *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015) (fair use as use does not "serve as a substitute"); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014) (fair use as defendant does not provide "a substitute"). Disregarding this fatal undisputed fact, Plaintiff mischaracterizes the law and claims that he raised factual disputes when he has not.

### A.  Factor One: *NBA 2K* Is Transformative and Its Profits Are Not from the Tattoos

Transformative Use. Take-Two showed that each of the four transformative use considerations weigh in favor of fair use. *First*, Take-Two included the Tattoos in *NBA 2K* for a different purpose than they were created. As Plaintiff now admits, his purpose was to "create an expressive visual work" communicating the ideas of the NBA Players on which they were inked. Dkt. 109-49 (Hayden Decl.) ¶ 12; Opp. 3–4; Mot. 12. Take-Two's purpose, by contrast, was to create a virtual world with real-world accuracy. Those are different purposes as a matter of law.

---

2  Contrary to Plaintiff's argument that such motions are granted "sparingly," Opp. 7, his cases confirm they are granted where, as here, the works are before the court. *See Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003); *Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984); *see also* Mot. 11.

*See Solid Oak*, 449 F. Supp. 3d at 347 (making NBA players recognizable is a different purpose than "a means for the Players to express themselves through body art"). **Second**, Plaintiff admitted that the Tattoos in *NBA 2K* are "smaller than they are in real life," Means Decl. Ex. 11 (Pl.'s Tr.) 161:20–162:3, appearing "1.11–10.3% the size." Mot. 13 (quoting Bogost Decl. ¶ 76). **Third**, the expressive value of the Tattoos is substantially reduced by the numerous components of *NBA 2K*. Mot. 14. **Fourth**, the Tattoos are a small proportion of *NBA 2K* in terms of data, as well as visual and auditory elements. *Id.* at 15.

Knowing that transformative use is a key consideration in the fair use analysis, Opp. 8, Plaintiff misdescribes the law and the facts of this case with regard to the transformative use subfactor. **With regard to the first consideration**, although Plaintiff notably admits the *fact* that the NBA Players are depicted in *NBA 2K* as they appear in real life, with accurate tattoos, Opp. 12, he nevertheless argues that *legally* including the Tattoos unchanged cannot be a different purpose as a matter of law. *Id.* That is wrong. As the court in *Castle v. Kingsport Publishing Corp.* held, a "secondary use 'can be transformative in function or purpose [even] without altering or actually adding to the original work.'" No. 19 Civ. 92, 2020 WL 7348157, at *5 (E.D. Tenn. Dec. 14, 2020) (quoting *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014)). Plaintiff notably does not address this case, even though it was cited in Take-Two's opening brief. Mot. 11–12. Moreover, the Sixth Circuit in *Balsley v. LFP, Inc.*, on which Plaintiff relies, Opp. 12, acknowledged that "reprinting a photograph may not result in an automatic copyright violation." 691 F.3d 747, 759 (6th Cir. 2012).[3]  Likewise, *Kelly v. Arriba*

---

[3]    *Balsley* is otherwise inapposite as the photograph at issue was used for the same purpose as the original: to use a picture of a wet t-shirt contest "to shock, arouse, and amuse." *Id.* Similarly, *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, on which Plaintiff relies (at 12), involved taking musical works and repackaging them as karaoke tracks, which the court acknowledged might even be at least "minimally" transformative. 491 F.3d 574, 582 (6th Cir. 2007). Here, by contrast, Plaintiff does not dispute that the Tattoos are placed into an entire virtual world surrounded by other material. This changes their purpose, which is transformative. Mot. 12.

*Soft Corp.*, on which Plaintiff also relies, Opp. 8, specifically held that even where the defendant "made exact replications of [the plaintiff's] images," the use was transformative because the images served a different function from the originals.  336 F.3d 811, 818 (9th Cir. 2003) (use of smaller images did not serve same aesthetic purpose as original).  Courts across the country have reached the same conclusion in cases where the original work was unchanged.[4]  Thus, Plaintiff's sole argument with regard to the first consideration fails.

**With regard to the second, third, and fourth considerations**, Plaintiff attempts to run away from them by asserting that Take-Two's cases are merely "non-binding case law."  Opp. 13–14.  This Circuit, however, routinely cites to other courts for copyright principles, and specifically to the courts in the Second Circuit.  Indeed, *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006), which articulated these considerations and on which *Solid Oak* and *Bouchat* relied, has specifically been cited by courts in this Circuit with regard to the fair use analysis.  *See, e.g.*, *Castle*, 2020 WL 7348157, at *7; *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, No. 02 Civ. 571, 2007 WL 1485770, at *4 (E.D. Ky. Apr. 18, 2007) (same).  Moreover, those principles also were applied in cases on which Plaintiff relies, such as *Kelly*.  336 F.3d at 818–19 (transformative based on size of reproductions and other elements of defendant's work).  Plaintiff has offered no reason to disregard them here.

Plaintiff also asserts that he raised "disputed issues of material fact" with regard to these considerations, citing his *de minimis* use analysis and conclusorily arguing that the Tattoos are "observable and recognizable" in *NBA 2K*.  Opp. 13.  That is wrong.  **First**, despite Plaintiff's mischaracterization of *NBA 2K*, the game is part of the record, Dkts. 101-16–19, and "varying

---

[4]   *See, e.g.*, *Google*, 804 F.3d at 207; *Katz v. Google Inc.*, 802 F.3d 1178, 1182 (11th Cir. 2015); *Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 939–40 (4th Cir. 2013); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000).

interpretations of undisputed facts do not give rise to genuine issues of material fact that preclude summary judgment." *Moore v. Bitca*, No. 19 Civ. 35, 2020 WL 5821378, at \*12 (D. Vt. Sept. 30, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see Kohus*, 328 F.3d at 853 (courts may "compare the two works and render a judgment for the defendant" on summary judgment); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (works "supersede and control contrary descriptions"). **Second**, *de minimis* use and transformativeness are different: in *Bill Graham*, the posters were observable in the defendant's book, but nonetheless transformative. 448 F.3d at 611.[5] Thus, Plaintiff's cross reference leaves Take-Two's discussion of these considerations unrebutted. Mot. 13–15.[6] **Third**, there can be no factual dispute as any expressive value of the Tattoos is minimized in NBA 2K given the "myriad other auditory and visual elements" that "simulate an actual NBA game." *Solid Oak*, 449 F.3d at 348; *infra* 17. Plaintiff does not even attempt to argue otherwise.

    <u>Commercial Use</u>. Plaintiff relies on alleged commercial use. Opp. 9–11. Yet, he ignores *Google, LLC v. Oracle America, Inc.*'s holding that most fair uses are "commercial" and, thus, this subfactor is "not dispositive." Mot. 15 (quoting 141 S. Ct. 1183, 1204 (2021)).[7] Moreover, the "link between the defendant's commercial gain and its copying" cannot be "attenuated." *Swatch*, 756 F.3d at 83. Dr. Jay concluded that "there is no link" at all. Mot. 15 (quoting Jay Decl. Ex. A, at 8). While Plaintiff discusses tattoos in general, Opp. 10–11, neither he nor his

---

[5]    Plaintiff's attempt to restrict *Bill Graham* to a case about a biography is unavailing as that part of the opinion relates only to the first consideration (the purpose of the use). *Id.* at 609. The same is true for *Bouchat*, 737 F.3d at 939, and *SOFA Entertainment, Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013). The other considerations are not limited to cases involving biographies. Indeed, in distilling the considerations, *Bill Graham* relied on *Kelly*, which concerned a search engine. 448 F.3d at 611 (citing 336 F.3d at 818–20).

[6]    As a result of Plaintiff's failure to address the considerations, this case is unlike *Alexander v. Take-Two Interactive Software, Inc.*, as that court found the plaintiff actually had disputed them. 489 F. Supp. 3d 812, 821 (S.D. Ill. 2020). In any case, *Alexander* involved a different game and different evidence, and Plaintiff has offered nothing here to explain how *WWE 2K* compares to *NBA 2K*. Mot. 1 n.1.

[7]    Contrary to Plaintiff's argument, Opp. 14, profitable entertainment properties can still be fair use. Mot. 13 n.9.

survey expert shows a link between the Tattoos and Take-Two's profits.  Dkt. 102-01 (Bilgicer

Mot.) at 6.  Given *NBA 2K*'s multifaceted nature, he cannot generally assert that having tattoos is

valuable.  *Swatch*, 756 F.3d at 83.  Thus, the first factor supports fair use.  Mot. 15.

### B.  Factor Two: The Tattoos Are Not Creative and Were Published

Plaintiff's factor two argument makes many omissions.  ***First***, he ignores that any

creativity in the Tattoos must be weighed against Take-Two's use of them for accuracy.  Mot.

16.  As Plaintiff admits *NBA 2K* accurately portrays the NBA Players, Opp. 6, 10, this favors fair

use.  ***Second***, Plaintiff does not address that the Tattoos were published, which also weighs

toward fair use.  Mot. 16–17.  ***Third***, Plaintiff ignores that the Tattoos were copied from pre-

existing works, making them unoriginal.  Mot. 16.  Although he claims without citation that this

factor considers the "*type* of work," Opp. 15, he cites a case that held "photographs have varying

degrees of creativity" and considered the specific work at issue.  *Balsley*, 691 F.3d at 760.[8]

Nowhere does Plaintiff show that these Tattoos are creative, particularly given his copying.

***Fourth***, Plaintiff ignores that, even if he had established creativity (which he did not), this factor

would not "play[] a significant role."  Mot. 15 (quoting *Google*, 804 F.3d at 220).  Thus, taken

together, this factor weighs in favor of fair use.

### C.  Factor Three: Take-Two's Copying Was Reasonable In Light of Its Purpose

Plaintiff argues the Tattoos were copied "in *full*," but admits that such "copying does not

preclude fair use."  Opp. 16–17.  Instead, this factor considers whether the use was "reasonable

in relation to the purpose of the copying."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569,

586 (1994).  Plaintiff admits that the Tattoos serve Take-Two's purpose of creating a realistic

---

[8]  As the Sixth Circuit looks to the specific work, *Alexander*'s statement that tattoos in general are creative, Opp. 15, is inapposite.  Also, Plaintiff's argument concerning *scènes à faire* misses the mark.  The fair use question is not whether the Tattoos are *copyrightable*, the issue addressed in Plaintiff's cited case.  Opp. 15.  Instead, it is whether they are *creative*.  If a work is not copyrightable, a plaintiff cannot state a claim, *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991), and the court would not reach fair use.

game, Opp. 10, and does not dispute that "using less than the whole would defeat Take-Two's purpose." Mot. 17.[9] Thus, this factor supports fair use. *Castle*, 2020 WL 7348157, at *7.[10]

An independent reason this factor does not weigh against fair use is that the Tattoos appear in reduced size, are covered up by jerseys, and in two instances, are merely minor additions to other tattoos making it hard to tell the difference between what Plaintiff claims copyright in and the pre-existing designs. Mot. 17. Plaintiff strains to rely on and cross reference his *de minimis* use arguments, Opp. 16, but as with the first factor, the third factor analysis is different: the *Bill Graham* posters were observable, but there, "artistic expression [was] significantly limited because of their reduced size." 448 F.3d at 613. In any case, this Court can review the game, and Plaintiff's arguments do not create a factual dispute. *Supra* 6.

Finally, Plaintiff asserts that, although he admits that two of the Tattoos are "obstructed by the jerseys," texture files that users ***never see*** include the full Tattoos. Opp. 16 n.27. But *Google* held that copying entire books was fair use when the amount provided to users was reasonable in light of Google's purpose. 804 F.3d at 221–22; *HathiTrust*, 755 F.3d at 98. There simply is no factual dispute about what was copied and, thus, this factor favors fair use.

**D. Factor Four: Take-Two Has Not Harmed the Tattoos' Markets**

After Plaintiff's opposition, it is clear that there are no genuine issues of the material fact as to factor four. ***First***, Plaintiff does not dispute that *NBA 2K* is not a substitute for the Tattoos. Mot. 18. This is important as this factor "is concerned with only one type of economic injury to

---

9     Plaintiff asserts that Take-Two's purpose could be achieved without including the Tattoos as they are just "visual noise" to *NBA 2K* users. Opp. 16–17. He, however, cites no evidence to support that argument and, thus, does not satisfy his Rule 56 burden. *Supra* 3. Further, it is unclear what Plaintiff is suggesting Take-Two could have done to make the NBA Players appear as they do in real life without depicting the Tattoos.

10     Plaintiff's hyperbolic argument that, a finding for Take-Two would result in a holding that copying for realism will always be fair use, Opp. 16, is wrong as fair use requires a "case-by-case analysis" of all four factors that cannot be "simplified with bright-line rules." *Campbell*, 510 U.S. at 577. That Plaintiff fails to raise genuine issues of disputed fact that preclude finding fair use here will not affect other cases with different facts.

a copyright holder: the harm that results because the secondary use serves as a substitute for the original work." *HathiTrust*, 755 F.3d at 99 (quoting *Campbell*, 510 U.S. at 591 ("cognizable market harm" is limited to "market substitution")). ***Second***, Plaintiff does not dispute that he has never "licensed a tattoo for a video game" and is "not aware of any tattooist who has" done so. Mot. 19. This, combined with the unrebutted testimony of Take-Two's tattoo and video game industry experts that no such market exists or is likely to be developed, Mot. 19, confirms that there is no potential licensing market for such use. *See Blanch v. Koons*, 467 F.3d 244, 258 (2d Cir. 2006). And, to be clear, the evidence is not just that no licenses exist for *NBA 2K*, as Plaintiff misleadingly suggests, Opp. 18, there is ***no evidence*** of ***any video game*** licensing real-world tattoos. If such a market was likely to be developed, it would have occurred by now, particularly under the cloud created by *Solid Oak*, *Alexander*, and this litigation. ***Third***, Plaintiff tacitly concedes that the public benefit favors Take-Two as he has lost no sales, but finding no fair use here would deprive the public of realistic video games, like *NBA 2K*. Mot. 20–21. Moreover, it would inhibit tattooed individuals from conveying their personal expression and displaying their bodies. *Id.* As the Supreme Court recently indicated, these public benefits weigh toward fair use. *Google*, 141 S. Ct. at 1206. Thus, this factor weighs in favor of fair use.

Faced with the undisputed record, Plaintiff misguidedly advocates an erroneous factor four approach. ***First***, he relies on a claimed presumption of unfairness, Opp. 17, but the Supreme Court made clear that it does not apply where the two works at issue are not substitutes. *Campbell*, 510 U.S. at 591. As Plaintiff does not dispute that *NBA 2K* is not a substitute for the Tattoos, Mot. 18, whatever presumption might have survived *Campbell* does not apply here.

***Second***, because no one has ever licensed a real-world tattoo for a video game, Plaintiff asserts that an actual market exists by relying on licenses for other uses. Opp. 17. Without

citing any case, Plaintiff claims that this is appropriate because "[l]imiting the 'market' to video games has no basis."  *Id.* at 18.  Not so.  By analogy, there are many actual markets for books.  If Plaintiff were correct, every court finding fair use of a book should have concluded an actual market existed.  They did not because the question relates to ***the use at issue***.  *See Google*, 804 F.3d at 224 (no market harm from book search); *HathiTrust*, 755 F.3d at 99–100 (same); *Bond v. Blum*, 317 F.3d 385, 396–97 (4th Cir. 2003) (no market harm from submitting manuscript into evidence); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1274–75 (11th Cir. 2001) (no market harm from parodic book).  No such actual market is usurped here.

*Third*, Plaintiff claims that Take-Two asked this Court not to consider *potential* markets.  Opp. 18.  That is a fabrication.  Take-Two extensively discussed potential markets.  Mot. 18–20.  As it explained, and Plaintiff ignores, whether a potential market exists depends on the use's impact on "traditional, reasonable, or likely to be developed markets."  Mot. 19 (quoting *Swatch*, 756 F.3d at 91).  Plaintiff's problem is that there is no traditional or reasonable market for licensing real-world tattoos in video games, and one is not likely to develop.  Indeed, the lack of a potential market is actually ***established*** by the fact that, after 20 years as a tattooist, Plaintiff has not been able to license any uses in the relevant market, including under the cloud created by this litigation and his aggressive tactics.  Dkt. 109-49 (Hayden Decl.) ¶¶ 3, 15–25; *Blanch*, 467 F.3d at 258 (lack of past licensing shows lack of potential market).

*Fourth*, Plaintiff conclusorily references Dr. Lenzo's opinion that a market would exist "if Take-Two were simply to acknowledge [Plaintiff's] rights."  Opp. 18–19.  That, however, is precisely the circular reasoning that Take-Two explained, and Plaintiff ignores, courts have rejected.  Mot. 18–19.  In fact, the Sixth Circuit in *Princeton University Press v. Michigan Document Services, Inc.*, relied on by Plaintiff, Opp. 18, explicitly ***adopted*** the Second Circuit's

approach to determining whether a potential market exists. 99 F.3d 1381, 1387–88 (6th Cir. 1996) (that "copyright holder has not been paid a fee to permit [the defendant's] use" insufficient); *see generally* Dkt. 103-01 (Lenzo Mot.). This factor does not weigh against fair use merely because a copyright holder defines its potential market as "the theoretical market for licensing the very use at bar." *Swatch*, 756 F.3d at 91. Accordingly, based on the undisputed record, each fair use factor supports granting summary judgment to Take-Two.

## II.    TAKE-TWO'S USE OF THE TATTOOS WAS AUTHORIZED

Plaintiff's copyright claim independently fails because Take-Two was authorized to show the Tattoos in *NBA 2K* as a matter of law. *See Great Minds v. FedEx Off. & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018) (copyright claim is waived where use of material is authorized). Plaintiff has not shown that there are any factual disputes for the jury to resolve here. ***First***, Plaintiff does not contest that Take-Two had a license from the NBA Players, by way of the NBA and NBAPA, to accurately show their bodies with the Tattoos in *NBA 2K*. Mot 21.[11] ***Second***, with regard to the implied license from Plaintiff to the NBA Players, Plaintiff does not dispute that the NBA Players requested the Tattoos and that Plaintiff made the Tattoos and delivered them by permanently inking them on the NBA Players' bodies. Mot. 5–6. Thus, the first two prongs of the test for an implied license have been met.

In his opposition, Plaintiff addresses only the final prong of the implied license test: whether "the licensor intends that the licensee-requestor copy and distribute his work." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996).[12] The issue of intent is "one of ***objective***, rather

---

[11]   Although Plaintiff argues that authorization must come from him, not the NBA Players, Opp. 19, the undisputed facts show that he authorized this use. Mot. 21–24. His reference to Take-Two not showing the tattoos of a social media influencer, Opp. 19, n.29, is irrelevant as the influencer is not an NBA Player and has a different contract. *See CSX Transp. v. Globe Metallurgical, Inc.*, No. 05 Civ. 683, 2007 WL 1567690, at *3 (S.D. Ohio May 25, 2007) (documents referring to "an entirely different contract" were not relevant to contract dispute).

[12]   Plaintiff argues that *Johnson v. Jones* holds that a license must be for a "particular purpose," but the court ***never***

than subjective, intent." *Reinicke v. Creative Empire, LLC*, 669 F. App'x 470, 471 (9th Cir. 2016) (emphasis added).  Objective intent is "manifested by the parties' conduct," "***at the time of creation and delivery***" of the work.  *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008); *I.A.E.,* 74 F.3d at 777.  Courts will imply a license where there is no "conduct [or] written contract" that required the plaintiff's "permission" or "future . . . involvement" with the work.  *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821 (9th Cir. 2001).[13]  Likewise, industry practice is evidence of objective intent.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009).  Thus, where the contemporaneous conduct is undisputed, courts regularly find that an implied license exists as a matter of law.  *See*, *e.g.*, *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir. 1990) (an implied license is a "creature of law"); *I.A.E.*, 74 F.3d at 776–77 (finding implied license on summary judgment); *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 784 F. App'x 253, 256 (5th Cir. 2019) (same).

Here, Plaintiff has not identified a genuine issue of material fact with regard to Plaintiff's objective intent.  Tattoo industry practice, as confirmed by Take-Two's tattoo expert, is that "[o]nce a tattoo has been inked . . . the tattooist exercises no control over it."  Dkt. 95-10

---

states or even implies that the licensee needs to have subjectively intended the license to be for a "particular purpose."  149 F.3d 494, 500 (6th Cir. 1998).  *Johnson* looked at ***objective*** evidence of intent from the time the work was created, including a contemporaneous unsigned contract showing there was no intent to enter into an implied license.  *Id.* at 501.  There is no such contemporaneous contract here.  And in *Johnson*, there was no implied license because the work was not delivered, which is not the case here.  *Id.*

[13]  Plaintiff argues that *Foad* is distinguishable because "the court relied on prior written agreements to infer implied license terms."  Opp. 21–22.  But in *Foad*, the parties had agreed that defendant would pay a fee to create certain maps and plans, but ***never*** mentioned in writing that defendant would be required to seek plaintiff's permission to use such maps and plans.  270 F.3d at 830.  Likewise here, Plaintiff and the NBA Players agreed to a fee for the Tattoos but neither party ever mentioned that the NBA Players would need Plaintiff's permission to use the Tattoos in a particular way.  *Foad* is therefore precisely on point.  Plaintiff makes the same argument with regard to another case on which Take-Two relies, *Reinicke v. Creative Empire LLC*, 38 F. Supp. 3d 1192 (S.D. Cal. 2014).  In that case, the court considered that the parties had a relationship for a limited, discrete task, and there was "***no other conduct or written contract***" stating that the work at issue "could not be used without" plaintiff's permission or that her work "could be only used with her future involvement or express permission."  *Id.* at 1200.  That is exactly the case here, and thus, *Reinicke* is applicable.

(Jablonski Decl.) ¶ 34.[14]  Plaintiff has not offered contrary evidence; in fact, he admitted in his deposition that when a client leaves the tattoo parlor, they are free to "go about their life as they wish without needing to run back to the tattooist for permission."  Mot. 3.  Plaintiff's and the NBA Players' undisputed conduct was consistent with this standard practice.  The NBA Players indisputably requested the Tattoos, paid for them, and left Plaintiff's tattoo shop with the expectation that they could show their bodies without Plaintiff's permission.  Mot. 6, 22.[15]  It is also undisputed that Plaintiff did not enter into any written contracts with the NBA Players disclosing that the Tattoos could be used only with Plaintiff's future permission.  *Id.* at 23; Dkt. 109-49 (Hayden Decl.) ¶ 14.  And when he inked the Tattoos, Plaintiff indisputably never mentioned that the NBA Players would need his permission to appear in any form of media with the Tattoos, despite knowing that he was inking athletes who would appear in media.  Mot. 4–7.

Faced with the undisputed record, Plaintiff advances three incorrect legal theories.  ***First***, he argues that he could not have granted the NBA Players an implied license because he privately "did not intend" to do so.  Opp. 20.  He points to his own declaration as his sole evidence on this point.  *Id.*  But as discussed above, his "subjective intentions . . . are not relevant."  *Yates v. Adams*, No. 15. Civ. 4912, 2017 WL 783520, at *3 (N.D. Cal. Mar. 1, 2017) (finding implied license even where plaintiff testified he did not intend to enter a license).[16]

---

[14]  This is consistent with Plaintiff's treatment of tattoos.  Plaintiff inked over and modifying tattoos inked by other tattooists without permission, and he even cited to a video of him inking others' tattoos on a LeBron James mannequin, indicating that even he believed tattoos could be recreated on the likeness of the player without permission.  *See* https://vimeo.com/9797215.  And this is consistent with Plaintiff's colleague's understanding of industry practice, as he had never heard of requiring permission to be depicted in media.  Mot. 10.

[15]  Although the NBA Players may have returned to purchase additional tattoos from Plaintiff, Opp. 22, there is no evidence that those visits were anything other than new discrete tattoo purchases.  This does not show that, with regard to any particular tattoo, the NBA Players expected to have any ongoing relationship with Plaintiff.

[16]  Plaintiff argues that even if there was an implied license, the benefit of that license did "not extend beyond the filing of Mr. Hayden's Complaint in this case."  Opp. 23 n.36.  If that were true, it would essentially vitiate the implied license defense, as the defense is always levied against a party who has later decided to bring a claim.

What matters is not what Plaintiff claims he subjectively intended, but what his and the NBA Players' conduct shows.  Even if Plaintiff harbored some private contrary intent, the undisputed **conduct** described above resulted in an implied license as a matter of law.

> **Second**, rather than relying on conduct "at the time of the creation and delivery of" the Tattoos, which is what is relevant, *see Asset Mktg.*, 542 F.3d at 756,[17] Plaintiff improperly relies on releases from years after the Tattoos were inked.  Specifically, he points to four instances (in the **thirteen** years since he tattooed Mr. James) when third-party companies paid him a modest sum to release (not license) his purported rights in tattoos as part of Mr. James' likeness.  Dkt. 109-49 (Hayden Decl.) ¶¶ 20, 23–24.[18]  These are not evidence of contemporaneous intent because they are from, at the earliest, nine years after Mr. James was first inked by Plaintiff, and three are from **after** Plaintiff brought this lawsuit and created a cloud over the use of the NBA Players' tattoos.  *Id.*  And as Dr. Bogost explained, and Plaintiff does not dispute, it is "not uncommon in the film and television industry to obtain broad releases to show the persons who appear in that form of media, even if the releases would not be necessary," out of an abundance of caution.  Dkt. 95-8 (Bogost Decl.) ¶ 117 n.96.  In addition to being irrelevant, it actually shows that Mr. James appeared in media for almost a decade without asking permission—and the fact that there is no evidence in the record of Messrs. Green and Thompson **ever** asking permission to show their Tattoos—only corroborates the existence of an implied license here.

> **Third**, Plaintiff argues that his failure to place limits on the scope of the license granted

---

[17] *FenF, LLC v. Healio Health Inc.*, which Plaintiff relies on in arguing that implied licenses are limited to narrow circumstances, also holds that what is relevant is the conduct at the time of creation and delivery. No. 08 Civ. 404, 2009 WL 10688713, at *4 (N.D. Ohio Sept. 4, 2009).  In that case, the court found there was no implied license because the plaintiff **never delivered** the copyrighted work to the defendant, 2009 WL 10688713, at *4, which is not the case here.  Here, by contrast, Plaintiff indisputably delivered the Tattoos.

[18] Two other instances to which Plaintiff points involve releases for uses separate from Mr. James' likeness, including on mannequins and other people, which is not at issue here. *Id.* ¶¶ 16–17.

to the NBA Players should be excused.  Opp. 24.  It, however, is well accepted that an implied

license is limited "only if that limitation is expressly conveyed when the work is delivered."

*Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010) (implied license where artist

knew manufacturer sought media exposure and did not expressly limit use of work); *Asset Mktg.*,

542 F.3d at 756 (copyright owner must express intent to restrict license "at the time of the

creation").  Here, Plaintiff indisputably knew that the NBA Players would appear in media with

their Tattoos.  Opp. 21; Mot. 6.[19]  And Plaintiff indisputably never told the NBA Players that

they would be limited in how or where they could show their bodies with their Tattoos.  Mot. 6.

Thus, there was no limit on the license conveyed to the NBA Players.  *See Solid Oak*, 449 F.

Supp. 3d at 346 (unrestricted implied license where athletes "were neither requested nor agreed

to limit the display or depiction of the images tattooed onto their bodies").[20]  Plaintiff attempts to

distinguish *Solid Oak* by arguing that, there, the tattooists submitted declarations saying they

---

[19]  Plaintiff relies on cases involving factual disputes about the conduct of the parties that are not at issue here.  *Crispin v. Christian Audigier, Inc.*, on which Plaintiff relies (at 20), involved a dispute about what was said concerning the products for which the artwork was going to be used.  839 F. Supp. 2d 1086, 1093 (C.D. Cal. 2011).  Similarly, the *Alexander* court found that it was "unclear" whether Alexander and her client "discussed permissible forms of copying and distributing the tattoo works."  489 F. Supp. 3d at 820.  Two of the cases involve distinct factual issues and are not even about copyright or implied licenses.  *See Med. Mut. of Ohio v. Air Evac EMS, Inc.*, 341 F. Supp. 3d 771, 780 (N.D. Ohio 2018) (disputes about conduct of parties at the time contracts were entered); *Byler v. Air Methods Corp.*, 823 F. App'x 356, 364 (6th Cir. 2020) (pleading failure concerning price of contract).  Likewise, in *Pytka v. Van Alen.*, there was a letter that was ambiguous with regard to whether a license was granted and for what, such that a reasonable jury could have found either the existence or the lack of existence of an implied license.  No. 92 Civ. 1610, 1992 WL 199833, at *3 (E.D. Penn. Aug. 11, 1992).  There is no similar ambiguous piece of evidence for the jury to interpret here.  And in *Empire Medical Review Services, Inc. v. Compuclaim, Inc.*, the defendant's arguments for a license were "unclear" and "[un]develop[ed]," and the plaintiff conceded that defendant could use the software at issue to some extent, though the precise limitations were unclear.  326 F. Supp. 3d 685, 698–99 (E.D. Wis. 2018).  Unlike all of these cases, here the conduct is clear and undisputed, as detailed above.  *Supra* 12–14

[20]  Plaintiff also relies on *Viacom International, Inc. v. Fanzine International Inc.*, an out-of-Circuit district court case, to argue that Plaintiff's failure to impose limitations on the NBA Players is not relevant.  Opp. 23–24.  But even the *Viacom* court acknowledged that the "failure by the copyright owner to object to reproduction of copyrighted works may provide the basis for implying a nonexclusive license."  No. 98 Civ. 7448, 2000 WL 1854903, at *5 (S.D.N.Y. July 12, 2000).  Unlike in *Viacom*, a failure to object to the copying or distribution of the Tattoos is precisely what happened here.  Plaintiff knew he was inking professional athletes with permanent tattoos, and that they would show these tattoos in media—he never told them that they could not do so.

subjectively intended the players to copy and distribute their tattoos.  Opp. 22.  But subjective

intent is irrelevant.  What matters is the conduct, and here (as in *Solid Oak*) the undisputed

conduct shows that there was an implied license, and summary judgment is thus warranted.

## III.    TAKE-TWO'S USE OF THE TATTOOS IS *DE MINIMIS*

Plaintiff's copyright claim is also foreclosed by the *de minimis* use doctrine.  Unlike

*Alexander*, which questioned whether the defense applies in the Seventh Circuit, Plaintiff admits

it applies in the Sixth Circuit, including where a work is copied in its entirety.  Mot. 24 (citing

*Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 924 (6th Cir. 2003)).[21]  The

question on summary judgment is "observability," determined by the length of time that the

work appears and its prominence.  Mot. 25 (quoting *Gordon*, 345 F.3d at 924).  Observability is

determined from the viewpoint of the "average lay observer." *Gordon*, 345 F.3d at 925.

Here, Plaintiff does not and cannot dispute the material facts.  ***First***, in *NBA 2K*, the six

Tattoos appear on only three of 400+ available NBA players.  Mot. 25.[22]  Two of the six Tattoos

are covered up almost entirely.  Mot. 28–29; Opp. 25 n.39.  Plaintiff admits these two are

"obstructed," but argues such copying is still infringement.  *Id.*  Yet, such copying would

necessarily be *de minimis* as the works appear for no amount of time and are not at all prominent.

*Gordon*, 345 F.3d at 924.  ***Second***, unlike an NBA game, the default quarter in *NBA 2K* lasts

only a few minutes.  Mot. 25–26.  ***Third***, in *NBA 2K*, the NBA Players and, thus, their Tattoos,

are depicted as only 1.11–10.3% of the size that they are inked on the NBA Players in real life.

---

[21]    *Bell v. Wilmott Storage Services, LLC*, an out-of-Circuit case cited by Plaintiff for the proposition that "wholesale" copying cannot be *de minimis*, Opp. 24–25, is not applicable as it is directly contrary to *Gordon*'s holding that copying an entire work can be *de minimis*.  345 F.3d at 924 (granting summary judgment).

[22]    Plaintiff argues that Take-Two does not identify a "single difference" between the copyrights that Plaintiff alleges he holds and the Tattoos in *NBA 2K*.  Opp. 25.  That is wrong.  As Take-Two has explained, Plaintiff obtained copyright registrations for sketches of the three tattoos that he inked on Mr. James at issue on this case, which are not identical to the tattoos he inked on Mr. James's body.  Dkt. 112 at 4.  Take-Two does not depict sketches in *NBA 2K*, but rather the tattoos that appear on Mr. James's body.  *Id.* at 5.

*Id.* at 26.  **Fourth**, when the Tattoos do appear, they are on only three players who "move around quickly," and are among a host of visual and auditory elements, many of which obstruct their view.  *Id.*  This is also confirmed by the submitted clips of ordinary gameplay.  Means Decl. Exs. 1–5.  **Fifth**, the game files that include the Tattoos comprise, at most, 0.00515% of *NBA 2K*'s game data.  Mot. 27.[23]  Similar facts were dispositive in *Solid Oak.*  449 F. Supp. 3d at 345.

Faced with the foregoing, Plaintiff makes irrelevant arguments.  Plaintiff first argues that Take-Two spends "time and resources" depicting tattoos in *NBA 2K*, Opp. 24, but even accepting that as true, that does not mean that the Tattoos are observable any more than the set dressing that took time and resources in the cases cited by Take-Two and ignored by Plaintiff.  Mot. 24, 26.  Plaintiff next argues that Mr. James frequently appears in *NBA 2K*.  Opp. 25–26.  This is a red herring.  Mr. James indisputably does not always appear in *NBA 2K*, as he is just one of hundreds of NBA players.  Mot. 25; *see also* Dkt. 99-4 (Malkiewicz Rpt.) ¶ 97.  Thus, his tattoos appear less frequently than cases where *de minimis* use was found despite a work *always* appearing.  *See Gordon*, 345 F.3d at 924 (use of work that appears every time commercial is shown *de minimis*).[24]  Plaintiff does not even analyze Messrs. Green and Thompson, arguing only that they may "appear on the same teams as Mr. James," Opp. 26, thus tacitly admitting that they do not frequently appear.  Regardless, the Court need not resolve how frequently the NBA Players appear because even when they do, the Tattoos are not observable.  *Supra* 17.

Plaintiff tries to manufacture factual disputes regarding what an average lay observer

---

[23]  Plaintiff argues that this undisputed calculation is not relevant, citing *ECIMOS, LLC v. Carrier Corp.*  Not so.  There, the court found that a plaintiff may not prove that *de minimis* use based "**solely** on the fact that only a small number of lines of code were copied."  971 F.3d 616, 630 (6th Cir. 2020) (emphasis added).  Here, the Tattoos are a visual asset, not lines of code, Dkt. 113 (Bogost Opp.) at 13–15, and moreover, the size of the Tattoos is merely **one consideration** of the analysis.

[24]  Plaintiff tries to distinguish *Gordon* by arguing that "unlike a movie or commercial [as in *Gordon*], the Accused Games are designed to be played *repeatedly*."  Opp. 26.  Of course, as any person who has watched any amount of television would know, commercials are also designed to be played *repeatedly*.

would observe, but he cannot defeat summary judgment by raising "metaphysical doubt." *Matsushita*, 475 U.S. at 586.  Plaintiff first argues that it is possible to increase the default *NBA 2K* quarter length from several minutes to twelve minutes, but cites **no evidence** of users actually doing so.  Opp. 26.  Plaintiff next argues that it is possible to utilize instant replay, character editor, and to "zoom in on the [T]attoos to enlarge" and view them indefinitely, citing litigation-generated clips of Plaintiff (or his counsel) doing that, *id.* 26, 26 n.42, 27 nn. 44–45, or Take-Two's witnesses discussing the same, *id.* 24 n.37, 27, 27 n.44.  But Plaintiff cites **no evidence** that the **average lay observer** interacts with *NBA 2K* in this artificial and unusual manner.  *Id.*  To the contrary, Dr. Bogost provided the sole, unrebutted evidence explaining that they do not.  Mot. 25–26.[25]  This is exactly the situation in *Solid Oak*, where the plaintiff did not "proffer[] any evidence to support" the hypothetical argument that users manipulate *NBA 2K* to "make the subject tattoos more prominent."  449 F. Supp. 3d at 345.  Indeed, as Take-Two explained (and Plaintiff ignored), were such hypothetical scenarios considered, it would eviscerate the *de minimis* use doctrine.  Mot. 27 n.16.  Accordingly, *NBA 2K*'s use of the Tattoos is *de minimis*.

## IV.  TWO TATTOOS LACK ORIGINALITY AND SUBSTANTIAL SIMILARITY

Take-Two's motion also should be granted as to the Lion and Brother's Keeper Tattoos.  **First**, Plaintiff now admits that he copied them from pre-existing works, Opp. 28, making them unprotectable.  17 U.S.C. § 103(a).  He asks for protection of "trivial differences" between the "inspiration" and the tattoo, Opp. 28, but his Sixth Circuit case held that "[w]here use of unauthorized preexisting material pervades the entire work . . . , copyright protection may not be granted," and a "determination that a work is derivative would **necessarily imply** that the preexisting work 'pervades' the derivative."  *Hiller, LLC v. Success Grp. Int'l Learning Alliance,*

---

[25]  Plaintiff attempts to discredit Dr. Bogost's opinions by complaining that he did not "interview" NBA 2K users, Opp. 25, but given his extensive experience, such interviews were unnecessary.  Dkt. 113 (Bogost Opp.) at 6.

*LLC*, 976 F.3d 620, 629 (6th Cir. 2020) (emphasis added).  Thus, there is no protection.[26]

**Second**, Plaintiff admits that these tattoos are "obstructed by the jerseys," Opp. 16 n.27, meaning there is no substantial similarity.  Mot. 28–29.  His sole argument misdescribes Dr. Jablonski's testimony to assert that she recognized them during her deposition, Opp. 29, but she merely said that she recognized them from her study to prepare her opinions.  Dkt. 109-15 (Jablonski Tr.) 251:1–258:8.[27]  Evidence that a tattoo **expert** studied the Tattoos and remembered them is not evidence that an "average **lay** observer," *Gordon*, 345 F.3d at 925 (emphasis added), would recognize them.  Thus, summary judgment on these two tattoos should be granted.

## V.    PLAINTIFF IS NOT ENTITLED TO CERTAIN REMEDIES

As each version of *NBA 2K* is the "the same basketball simulation game," using "the Tattoos in the same way in each edition" before and after registration, Plaintiff is not entitled to statutory damages or attorney's fees.  Mot. 29–30.  Plaintiff does not distinguish Take-Two's cases.  Instead, he conclusorily argues that each game is a "distinct infringement" because of elements other than the Tattoos, Opp. 30, but that is irrelevant: the only question is whether each version uses **the Tattoos** in the same way.  *See Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16 Civ. 724, 2016 WL 4126543, at *3 (S.D.N.Y. Aug. 2, 2016) (collecting cases).[28]

## CONCLUSION

Take-Two respectfully requests that the Court grant its motion for summary judgment.

---

[26]    In *Hiller*, some protection existed because the infringed work was a service training guide that contained "discrete parts" some of which were copied and some of which had not.  *Id.* at 630.  That is not true here.

[27]    Plaintiff cites Jeff Thomas but he merely could see a "part of a tattoo."  Dkt. 109-9 (Thomas Tr.) 55:7–12.

[28]    Plaintiff's cited cases do not support his argument as both cases involved a multi-year temporal gap between pre- and post-registration infringement.  *Cotter v. Christus Gardens, Inc.*, No. 99 Civ. 5996, 2000 WL 1871698, at *7–8 (6th Cir. Dec. 12, 2000) (infringement not continuing as there was a "four year gap" between the non-infringing pre- and infringing post-registration infringement); *Niemi v. Am. Axle Mfg. & Holding, Inc.*, No. 05 Civ. 74210, 2008 WL 905558, at *15 (E.D. Mich. Mar. 31, 2008) (three-and-a-half year gap between the pre- and post-registration infringement).  No similar gap exists here. Dkt. 33 (4th Am. Compl.) ¶¶ 109–141.

Dated: New York, NY
   December 17, 2021

/s/ Dale M. Cendali

Dale M. Cendali (admitted *pro hac vice)*
Joshua L. Simmons (admitted *pro hac vice*)
Chris Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and
Take-Two Interactive Software, Inc.*

## <u>L.R. 7.1(F) CERTIFICATION</u>

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track, that the Defendants have received prior approval from the Court to file a reply memorandum in support of their Motion for Summary Judgment that can be up to twenty (20) pages in length, and that the foregoing memorandum complies with the applicable page limitation of twenty (20) pages.


*/s/ Dale M. Cendali*
*Attorney for Defendants 2K Games, Inc. and*
*Take-Two Interactive Software, Inc.*

1