## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JAMES HAYDEN,

          Plaintiff,

v.

2K GAMES, INC. and TAKE-TWO
INTERACTIVE SOFTWARE, INC.,

          Defendants.

CASE NO. 1:17-cv-02635-CAB

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
2K GAMES, INC. AND TAKE-TWO INTERACTIVE
SOFTWARE, INC.'S MOTION TO EXCLUDE TESTIMONY,
ARGUMENT OR EVIDENCE REGARDING THE EXPERT
<u>REPORTS AND OPINIONS OF MICHAL A. MALKIEWICZ</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ........................................................................................................... 2

I.  MALKIEWICZ'S OPINIONS CONCERNING HOW USERS INTERACT
    WITH *NBA 2K* AND THE TATTOOS' IMPACT ON SALES SHOULD BE
    EXCLUDED ............................................................................................... 3

    A.  Plaintiff Concedes that Malkiewicz Is Not Qualified To Testify as an
        Expert about How Frequently the Tattoos Are Depicted in *NBA 2K* .................... 3

    B.  Malkiewicz's Opinions about the Specific Relationship between the
        Tattoos and Take-Two's Sales Are Methodologically Unsound and Not
        Reliable ............................................................................................. 7

II. MALKIEWICZ'S OPINIONS CONCERNING ALLEGED PROFITS
    ATTRIBUTABLE TO REALISTIC DEPICTIONS OF TATTOOS
    SHOULD BE EXCLUDED ........................................................................... 9

    A.  Malkiewicz's Disgorgement Analysis Is Contrary to the Copyright Act .............. 9

    B.  Malkiewicz's Partial Apportionment Analysis Is Improper ................................. 11

III. MALKIEWICZ'S OPINIONS CONCERNING A PURPORTED
     RELATIONSHIP BETWEEN TAKE-TWO'S REVENUE FROM
     VIRTUAL CURRENCY AND THE DEPICTION OF THE TATTOOS
     SHOULD BE EXCLUDED ........................................................................... 13

CONCLUSION ...................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Balsley v. LFP, Inc.*,
    691 F.3d 747 (6th Cir. 2012) ....................................................................................10, 13, 14

*Burgett v. Troy-Bilt LLC*,
    579 F. App'x 372 (6th Cir. 2014) ........................................................................................3, 4

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)...................................................................................................................2

*First Tenn. Bank Nat'l Ass'n v. Barreto*,
    268 F.3d 319 (6th Cir. 2001) ....................................................................................................7

*Hall v. Flannery*,
    840 F.3d 922 (7th Cir. 2016) ....................................................................................................7

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
    474 F.3d 288 (6th Cir. 2007) ....................................................................................................5

*Navarro v. Procter & Gamble Co.*,
    501 F. Supp. 3d 482 (S.D. Ohio 2020) ..........................................................................7, 9, 10

*Navarro v. Procter & Gamble Co.*,
    No. 17 Civ. 406, 2021 WL 868586 (S.D. Ohio Mar. 8, 2021) .................................................7

*Olin Corp. v. Lamorak Ins. Co.*,
    332 F. Supp. 3d 818 (S.D.N.Y. 2018)......................................................................................7

*Pineda v. Ford Motor Co.*,
    520 F.3d 237 (3d Cir. 2008).....................................................................................................7

*Popovich v. Sony Music Ent., Inc.*,
    No. 02 Civ. 359, 2005 WL 5990223 (N.D. Ohio May 9, 2005) ...............................................6

*Responsive Innovations, LLC v. Hotlzbrinck Publishers, LLC*,
    No. 08 Civ. 1184, 2014 WL 1237632 (N.D. Ohio Mar. 25, 2014)...........................................5

*Satija v. Permanent Gen. Assurance Corp. of Ohio*,
    No. 13 Civ. 82, 2014 WL 1664557 (N.D. Ohio Apr. 25, 2014)..................................13, 14, 15

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ....................................................................................................4

*Taylor v. Meirick*,
   712 F.2d 1112 (7th Cir. 1983) ................................................................13

*Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*,
   223 F.3d 585 (7th Cir. 2000) ................................................................7

*United States v. Liu*,
   716 F.3d 159 (5th Cir. 2013) ................................................................7

**Statutes**

17 U.S.C. § 504.............................................................................................9, 11

Take-Two submits this reply memorandum of law in support of its motion to exclude Plaintiff's damages expert, Michal A. Malkiewicz.[1]

## PRELIMINARY STATEMENT

For all of Plaintiff's bluster, he has failed to respond to, much less rebut, the numerous reasons Malkiewicz's opinions should be excluded.

**First**, Plaintiff does not deny that Malkiewicz is not a video game expert and, thus, is not qualified to testify concerning how users interact with *NBA 2K*.  Instead, he argues that Malkiewicz does not offer such opinions.  Yet, a cursory review of Malkiewicz's opinions reveals that to be untrue.  These opinions should, thus, be excluded.

**Second**, Plaintiff does not deny that Malkiewicz's apportionment analysis was not performed in the order required by 17 U.S.C. § 504(b) or that he only performed a partial analysis.  Instead, he argues that Malkiewicz was permitted to perform a disgorgement analysis in whatever order he desired and that it is somehow Take-Two's fault that Malkiewicz performed a partial apportionment.  Remarkably, Plaintiff cites **no** basis for his novel position, nor does he defend Malkiewicz's misleading and unreliable opinions.  These opinions also should be excluded.

**Third**, Plaintiff does not deny that Malkiewicz included revenue from sales of virtual currency in his disgorgement analysis, despite the facts that (a) the Tattoos already are included in *NBA 2K* at the time that the game is purchased, (b) VC does not depict the Tattoos, (c) VC cannot be used to purchase the tattoos, and (d) VC is sold optionally and separately from the accused *NBA 2K* games, after they are purchased.  Instead, he argues that all he has to show is that VC has no value outside of *NBA 2K*.  But that is not the test.  To be entitled to any VC

---

[1]    Capitalized terms not defined here were defined in Take-Two's opening brief.  *See* Dkt. 104-1 ("Mot.").

revenue, Plaintiff was required to show a reasonable relationship between the revenue and the alleged infringement.  He failed to do so.  Thus, these opinions should be excluded as well.

It should not be lost that through Malkiewicz, Plaintiff is seeking a substantial sum of money for the inclusion of six Tattoos in *NBA 2K*, two of which are covered by jerseys, and others of which are not even original to Plaintiff.  *See* Mot. 13.  Malkiewicz's overreaching and improbable conclusion only serves to highlight the numerous methodological flaws that led to such preposterous numbers.  Nor should it be lost that Plaintiff has already been paid for these Tattoos by the NBA Players who reasonably expected that they could then show their bodies as they wished.  *See* Dkt. 101-1 at 6–7.  Thus, given these fundamental issues with Plaintiff's outsized damages request, it is unsurprising that Plaintiff was not able to rebut the numerous reasons raised by Take-Two that Malkiewicz's opinions should be excluded.

## **ARGUMENT**

Take-Two identified three categories of Malkiewicz's opinions that violated Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, *Inc.*, 509 U.S. 579 (1993), and thus should be excluded.  In support, Take-Two identified specific issues with Malkiewicz's qualifications, methodologies, and assumptions that showed he is unqualified to offer those specific opinions, and that other of his opinions are unreliable.  *See generally* Mot.  Unable to refute Take-Two's arguments, Plaintiff sidesteps the issues by misdescribing Take-Two's arguments or raising issues that are beside the point.  As Take-Two's arguments stand essentially unrebutted, its motion should be granted in its entirety.

## I. MALKIEWICZ'S OPINIONS CONCERNING HOW USERS INTERACT WITH *NBA 2K* AND THE TATTOOS' IMPACT ON SALES SHOULD BE EXCLUDED

### A. Plaintiff Concedes that Malkiewicz Is Not Qualified To Testify as an Expert about How Frequently the Tattoos Are Depicted in *NBA 2K*

Take-Two's brief showed that Malkiewicz is "not a video game expert" and "not qualified to offer opinions about how users interact with *NBA 2K*."  Mot. 5–6.  Plaintiff does not even attempt to argue otherwise.  Opp. 4–5.  Indeed, he actually *admits* that Malkiewicz is "not a 'video game expert.'"  *Id.* at 4 (quoting Mot. 1, 5, 9).  That should settle the matter, as Plaintiff also admits that Malkiewicz was required to have the necessary qualifications to provide him with a foundation to answer specific questions about how users interact with video games before he could offer such testimony.  *Id.* (Plaintiff arguing that "the pertinent inquiry is 'whether [the witness's] qualifications provide a foundation for the witness to answer a *specific question*.'" (quoting *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (emphasis added))).

Faced with these fatal admissions, Plaintiff deflects and asserts that "Malkiewicz was not retained to offer, nor is he offering, opinions about 'how the average user interacts with *NBA 2K*.'"  *Id.* at 6 (quoting Mot. 1).  But his arguments do not stand up to scrutiny.  Take-Two's brief identified numerous specific instances in which Malkiewicz opines on how the *average user* interacts with *NBA 2K*.  For example, Malkiewicz offered opinions that "the Accused Avatars are *likely to be selected an average of* 66 percent more often than the average avatar," and "[t]he *average* (weighted) probability an Accused Avatar is featured in an NBA 2K match is 23 percent across all Accused Games," among others.  Mot. 5 (emphasis added); Ilardi Decl. Ex. B (Malkiewicz Rpt.) ¶¶ 97, 99.  Plaintiff dances around these opinions, never once specifically addressing them in his brief, but quibbles that Malkiewicz did not use the exact

phrase "average user" in his reports to describe user interactions with *NBA 2K*.  Opp. 6.[2]

Tellingly, Plaintiff offers no explanation of what "average" Malkiewicz is talking about if not

how the average user uses *NBA 2K*.

Plaintiff also attempts to downplay Malkiewicz's opinions regarding how the average

user interacts with *NBA 2K* by arguing that his calculations are contained in "a limited portion of

his Initial Report" and, yet, contradictorily that they are "meticulously explain[ed]."  Opp. 6.  If

this really were a limited portion of Malkiewicz's report, Plaintiff should have no problem with it

being excluded given that he also admits that Malkiewicz is not a video game expert and, thus, is

unqualified to offer such opinions.  Moreover, Malkiewicz's calculations are wholly unreliable,

*infra* 7, and nowhere does Plaintiff identify or defend any examples of these "meticulous[]"

calculations.  Instead, he offers only the conclusory argument, without citation, that

Malkiewicz's "inputs are fully-disclosed, well-researched, grounded in facts of this case and

reliable public research, and, most importantly, testable and rebuttable."  Opp. 6–7.  Although

this is disputed, *infra* 7, it is also irrelevant because Malkiewicz admittedly lacks "knowledge,

skill, experience, training, or education" in video games that would allow him to offer such

opinions in the first place.  *Burgett*, 579 F. App'x at 376 (quoting *In re Scrap Metal Antitrust

Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008)).

Stuck with his expert's lack of relevant qualifications, Plaintiff fires off a litany of

additional irrelevant arguments.  ***First***, Plaintiff argues that setting aside Malkiewicz's complete

---

[2]   Plaintiff also attempts to deflect by complaining that Take-Two's eminently qualified video-game expert, Dr. Ian Bogost, offered opinions concerning what the average player of *NBA 2K* will see and how they ordinarily interact with the game.  Opp. 6.  Plaintiff's main complaint appears to be that Dr. Bogost did not "interview" players of *NBA 2K*.  *Id.*  Yet, as explained in detail in Take-Two's opposition to Plaintiff's motion to exclude Dr. Bogost's testimony, Dr. Bogost was not required to interview players as he relied on his extensive knowledge and expertise with video games (unlike Malkiewicz who has none) and his thorough review of the record.  Dkt. 113 at 5–8.

lack of qualifications in video games, his opinions should be admitted because he is a "*highly qualified applied economist and damages expert.*" Opp. 3–5. Despite Plaintiff's after-the-fact attempt to recast Malkiewicz's opinions as merely "applying econometrics and statistics," as shown above, the ***specific question*** that Malkiewicz's reports tried to answer was: How do users interact with *NBA 2K*? *Supra* 3; *see* Mot. 5–9. Thus, any "training" in "econometrics and statistics," Opp. 4–5, is irrelevant to that question, and without a background in video games, his opinion lacks the foundation that Plaintiff admits is required here.

Plaintiff nevertheless tries to spin this claimed training as sufficient because "an expert witness need not be qualified in *every* specific subject area related to his opinions." Opp. 4. But that is true only where the subject area is within the broader field of the expert's qualifications. *Responsive Innovations, LLC v. Hotlzbrinck Publishers, LLC*, No. 08 Civ. 1184, 2014 WL 1237632, at *3 (N.D. Ohio Mar. 25, 2014) ("'It is of little consequence to questions of admissibility' that an expert 'lacks expertise in the very specialized area'" if he has broader expertise (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 294 (6th Cir. 2007))). It is not true here, where his proposed testimony bears no relationship to his qualifications. In other words, Take-Two is not challenging whether Malkiewicz is good at math, but whether he can put before the Court or jury assertions of what typical video game users would do when he has no expertise to form that opinion.

***Second***, Plaintiff argues that Malkiewicz's opinions should be admitted as he "tested his hypothesis three times." Opp. 7 (citing Dkt. 108-9, Ex. D (Malkiewicz Tr.) 262:17–19). What Malkiewicz testified was that he "performed three different calculations that ultimately come to the same conclusion." Dkt. 108-9, Ex. D (Malkiewicz Tr.) 262:17–19. Yet, it does not matter how many calculations he says he performed—each one has the same fundamental flaw that they

were based on Malkiewicz's assessment of what a video game user would do or want, but he has no qualifications to form those opinions.

*Third*, Plaintiff argues that Malkiewicz's opinions should be admitted because of an alleged failure by Take-Two to produce data that shows the "frequency with which the NBA Players are selected." Opp. 7, 7 n.9, 9–10. But as Take-Two explained (and the Court agreed) when Plaintiff raised this as an untimely discovery dispute, Take-Two does "not track such data at the player level." Dkt. 50 (Memorandum of Opinion & Order) at 2. Further, it is illogical to conclude that Malkiewicz's unqualified opinions regarding how the ordinary user interacts with *NBA 2K* are transformed into qualified opinions because the data that Plaintiff wants simply does not exist.

Plaintiff tries to distinguish *Popovich v. Sony Music Entertainment, Inc.*, cited by Take-Two, Mot. 6, but fails. As Take-Two showed, in *Popovich*, the court precluded a valuation expert from offering expert testimony "about ***any topic*** except for those specifically and tightly related to his valuation of Plaintiffs' damages." No. 02 Civ. 359, 2005 WL 5990223, at *3 (N.D. Ohio May 9, 2005) (emphasis added); *id.*, at *3 n.3 ("the ***only permissible topics*** are those specifically and tightly related to the damage valuation" (emphasis added)); *see also* Mot. 6. Plaintiff contends that the expert in *Popovich* was permitted to "rely on 'additional matters'" that were "merely factual predicates on which [his] analysis is based," and argues that Malkiewicz is likewise relying on "factual predicates" here. Opp. 5 (quoting *Popovich*, 2005 WL 5990223, at *3). Not so. What Plaintiff tries to shoehorn into the category of "factual predicates" is actually Malkiewicz's alleged ***analysis***, as his report explicitly calls it that. *See* Ilardi Decl. Ex. B (Malkiewicz Rpt.) at 38 ("ANALYSIS"). Plaintiff has offered no video game expert who can put forth such "factual predicates" for Malkiewicz to rely on. This is a fatal flaw.

Plaintiff cites a litany of cases (largely without any explanation) that stand for the general proposition that an expert's qualifications are judged liberally. Opp. 3. The experts in the cases that Plaintiff cites, however, **did** have knowledge or expertise to opine on the specific matters on which they were giving an opinion, unlike Malkiewicz. In other words, Plaintiff's cases only serve to prove the point that an expert's qualifications must provide a foundation for the witness to answer a specific question.[3]

### B.      Malkiewicz's Opinions about the Specific Relationship between the Tattoos and Take-Two's Sales Are Methodologically Unsound and Not Reliable

Plaintiff does not dispute that "an expert may not . . . merely offer 'assumptions' based on the record," because "[a]n expert whose conclusions are just 'assumptions' has not used a weak methodology; he has used no methodology at all." Mot. 6 (quoting *Navarro v. Procter & Gamble Co.*, 501 F. Supp. 3d 482, 494 (S.D. Ohio 2020)). Plaintiff also does not dispute that he "simply *cites*" certain extrinsic evidence in his report and then assumed, without analysis, that this led to a non-specific increase in the likelihood of the NBA Players appearing in *NBA 2K*. Mot. 8; *see generally* Opp. 8–10. These opinions are plainly improper. *See Navarro*, 501 F.

---

[3]    *See Navarro v. Procter & Gamble Co.*, No. 17 Civ. 406, 2021 WL 868586, at *4 (S.D. Ohio Mar. 8, 2021) (expert with no formal education on damages permitted to testify as to damages calculations because his "knowledge and experience" included "substantial exposure to valuing photography, especially at the licensing and assignment stages"); *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (engineering expert permitted to testify about engineering safety issues even though he was not specifically qualified as a "warnings expert"); *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (accountant permitted to "do[] accounting"); *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 833 (S.D.N.Y. 2018) (engineering whose "day-to-day responsibilities include evaluating environmental investigation and remediation costs, and reviewing subcontractor invoices, engineering submittals and bids and cost-estimating," may be permitted to testify about "environmental costs" pending *Daubert* hearing). Plaintiff also cites cases for the general proposition that challenges to qualifications go to weight, Opp. 3–4, but that is not true where the expert has **no** relevant qualifications about the question he is answering. *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 333 (6th Cir. 2001) (expert who had "managed letter of credit departments and worked in letter of credit departments in a number of large banks" qualified to testify about "the process of honoring and dishonoring letters of credit and of banks' approaches on those"); *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016) (Doctor who "routinely cared for patients who . . . have seizures as part of their neurosurgical condition" "possessed the requisite qualifications to testify about seizures"); *United States v. Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013) ("an expert witness is not strictly confined to his area of practice, but may testify concerning **related** applications" (emphasis added)).

Supp. 3d at 493–94 (although an expert may "rely on record facts to support their opinions . . . the expert must then use his or her expertise to build upon this factual foundation"). Tellingly, Plaintiff does not dispute, or even address, ***any of the cases that Take-Two cited*** in support of its argument that Malkiewicz offered unreliable assumptions concerning the relationship between the NBA Players' ratings in *NBA 2K*, the frequency with which the NBA Players are depicted in *NBA 2K*, and sales of *NBA 2K*. Mot. 6–9.

The arguments that Plaintiff does raise lack credibility. ***First***, hoping to draw attention away from the fact that Malkiewicz admitted that his "statistical approximations" are based on "***assumptions***," Mot. 7 (quoting Ilardi Decl. Ex. A (Malkiewicz Tr.) 252:12–13 (emphasis added)), Plaintiff points to the entirety of Malkiewicz's "List of Documents Considered," arguing that because Malkiewicz listed a lot of documents, that he actually "concludes, not assumes," that a correlation between a player's rating and the likelihood that a user selects that player exists. Opp. 8–9. That makes no sense. Malkiewicz admitted during his deposition that he could not identify "any documents" to substantiate his assumptions. Opp. 8 (quoting Ilardi Decl. Ex. A (Malkiewicz Tr.) 262:7–12).[4] Plaintiff also bizarrely argues that Malkiewicz's admission that "there could be no correlation between how often a team [is] selected and how highly rated the players are" has "no relevance." Opp. 9.[5] Not so. Nothing could be more

---

[4] The lone citation to something more specific than a List of Documents Considered is to a summary paragraph in Malkiewicz's rebuttal report in which he said that Dr. Bilgicer's survey reported that users of *NBA 2K* "seek playtime with the Accused Avatars and their respective teams." Opp. 8 (citing Dkt. 108-9, Ex. C ¶ 8). But this has nothing to do with whether users select the NBA Players based on their in-game rating, which is the assumption that Malkiewicz's calculations were based on.

[5] Plaintiff analogizes Malkiewicz's admission to a weather forecaster who forecasts clear skies but admits it could rain. Opp. 9 n.7. Plaintiff's analogy makes no sense. Weather forecasts are based on data, and there must be a correlation between a forecast of clear skies and the data relied on to make that forecast, even if it turns out to be a rainy day. Thus, the analogous situation here would actually be if the weather forecaster admitted that the data relied on may have no correlation to the weather forecast. That is the same situation as we have here, as Malkiewicz admitted the data he relied on may have no correlation to his prediction of how frequently users play with teams that have the NBA Players. Even more on point to this litigation, it would not

relevant than the expert's admission that the data upon which he relied may bear no relationship to the conclusions he reached.  This admission plainly shows that Malkiewicz made a fundamental, improper assumption, and Plaintiff points to nothing that substantiates it.

*Second*, trying to hide the fact that Malkiewicz compounded his errors by assuming that the alleged increased appearance of the NBA Players increases Take-Two's sales of *NBA 2K* by a nonspecific amount, Mot. 8, Plaintiff again points to the entirety of Malkiewicz's "List of Documents Considered" as justification.  Opp. 8.  Yet again, Plaintiff does not and cannot point to anything specific to substantiate Malkiewicz's assumption, and it therefore should be excluded.  *Navarro*, 501 F. Supp. 3d at 496.

Unable to identify anything to rebut Take-Two's arguments that Malkiewicz's opinions are unqualified assumptions, Plaintiff once again tries to blame Take-Two for not producing data showing how many times users play with LeBron James.  Opp. 9–10.  Again, the specific data that Plaintiff demands does not exist.  *Supra* 6.  That does not excuse his expert's unqualified assumptions.

## II.  MALKIEWICZ'S OPINIONS CONCERNING ALLEGED PROFITS ATTRIBUTABLE TO REALISTIC DEPICTIONS OF TATTOOS SHOULD BE EXCLUDED

### A.  Malkiewicz's Disgorgement Analysis Is Contrary to the Copyright Act

The Copyright Act sets forth three steps that must be followed to determine the amount of profits subject to disgorgement.  17 U.S.C. § 504(b); Mot. 9–10.  Plaintiff does not deny that in Malkiewicz's rebuttal report, he applied these three steps out of the statutory order.  Instead, he splits hairs and argues that *Navarro*, cited by Take-Two, Mot. 10, states that it is actually a

---

make sense for a television station to hire somebody to forecast the weather when they have no experience in weather forecasting, as this would only lead to giving viewers incorrect and misleading information.

"two-step process."  Opp. 13 (quoting *Navarro*, 501 F. Supp. 3d at 488).  As Plaintiff admits,

those steps are, "*[f]first*, the copyright owner must identify the part of an infringer's gross

revenues that bears a 'reasonable relationship' to the alleged infringement. . . . Then [*i.e.*,

*second*], once the copyright owner has identified the appropriate revenues, the burden shifts to

the infringer to demonstrate what part, if any, of those revenues are not profits attributable to the

infringement."  *Navarro*, 501 F. Supp. 3d at 488 (emphasis added) (quoting *Balsley v. LFP, Inc.*,

691 F.3d 747, 767–68 (6th Cir. 2012)).  But, as Take-Two pointed out and Plaintiff does not

dispute, within that second step are *two substeps* by which the alleged infringer may apportion

profits: "*first* by pointing to the expenses it incurred in generating the revenues, *and then*

*second*, by allocating any remaining amount (the profit) among infringing and non-infringing

activity."  Mot. 10 (quoting *Navarro*, 501 F. Supp. 3d at 488).  Thus, Plaintiff's argument that

*Navarro* does not prescribe an order in which to perform steps 2 and 3 (or steps 2a and 2b), Opp.

13, is plainly contradicted by this express language, and *Plaintiff identified no case that has*

*ever permitted a party to perform these steps in a different order* than the statute.  Because this

flawed methodology contravenes the statute, Malkiewicz's opinions that rely on it should be

excluded.

   That Malkiewicz's made-for-litigation methodology is faulty is also shown by how, in his

opening report, he offered one number for his profit calculation, and in his rebuttal report, he

offered a new number that was 22% higher.  Mot. 4, 9–11.  Plaintiff does not dispute this

increase, and the fact that his number swings so wildly just goes to show how unreliable

Malkiewicz's methodology is.

   Rather than address Take-Two's argument, Plaintiff merely argues, without any citations,

that Malkiewicz "uses standard economic frameworks," that his opinions are "based on the

economics of Take-Two's business and financial information," and that they are "consistent with both the Copyright Act and the economic reality of Take-Two's unjust enrichment."  Opp. 14. These unsupported arguments, which are long on words and short on substance, are yet another attempt to run from Take-Two's supported arguments, including that by taking these steps out of order, Malkiewicz is trying to hide the fact that he improperly failed to deduct Take-Two's costs associated with incorporating the Tattoos in *NBA 2K*.  Mot. 10–11.

Finally, Take-Two's brief also pointed out that Malkiewicz's opinion is based on Bilgicer's flawed survey, and that if that survey is wrong (which Take-Two has moved to exclude, *see* Dkt. 102), then—as Malkiewicz agreed—his calculation would be wrong.  Mot. 11 (citing Ilardi Decl. Ex. A (Malkiewicz Tr.) 214:12–20).  Tellingly, Plaintiff makes no attempt to address or acknowledge this argument, in tacit recognition that Malkiewicz's opinions would fall for this independent reason as well.

### B.  Malkiewicz's Partial Apportionment Analysis Is Improper

Take-Two's brief further showed that Malkiewicz's opinions are an improper partial apportionment analysis.  *See* Mot. 11–13.  This is unrebutted.  *See* Opp. 15.  It is undisputed that 17 U.S.C. § 504(b) requires an apportionment of "the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C. § 504(b).  It is also undisputed that Malkiewicz performed an apportionment, but did not follow the statute: the apportioned profit number that Malkiewicz seeks to present to the Court or jury is admittedly Take-Two's alleged profits due to the inclusion of ***all realistic tattoos***—which he admits may number in the thousands—not the six Tattoos at issue in this case.  Mot. 12–13.[6]  Plaintiff also admits that he is not entitled to Take-

---

[6]  Malkiewicz's apportionment is based on Dr. Bilgicer's faulty survey, which Take-Two described in its brief and Plaintiff does not address in opposition.  Mot. 12.  Take-Two also identified that Malkiewicz relied on the

Two's profits attributable to the inclusion of all realistic tattoos, nor is he entitled to the profits attributable to elements of the six Tattoos that he did not ink (because he was merely adding minor features to pre-existing tattoos[7] or that he copied from a playing card or the Sistine Chapel[8]).  Mot. 13.  Malkiewicz's apportionment analysis is also obviously flawed because he treats all six Tattoos as equal when two of them are covered up and cannot be viewed in the game.  *Id.*  Thus, the alleged profit number that Malkiewicz wants to present to the Court or jury is ***vastly*** overstated, is not reliable, and is misleading.  *Id.* 11–13.

Unable to rebut Take-Two's argument, Plaintiff once again deflects and tries to blame Take-Two.  Plaintiff's argument is, essentially, he does not like the conclusion of Take-Two's damages expert, Mr. James Malackowski, that none of Take-Two's profits are attributable to ***the six Tattoos*** at issue in this case, saying that Take-Two "*failed* (refused?)" to meets its statutory burden.  Opp. 7, 15.  This is nonsense.  Malackowski's analysis expressly addressed the fact of what profits would be attributable to Take-Two's use of the Tattoos, including considering a survey conducted by the well-regarded survey expert Dr. Jay, and determined that there are none. *See* Dkt. 116 at 4–5, 14–15; *see also* Mot. 3.  Malackowski's analysis is also consistent with common sense as *NBA 2K* is a basketball game, not a tattoo fashion show.  Plaintiff simply does not like the results of Malackowski's analysis that is based on evidence, but this does not justify Malkiewicz trying to present a vastly overstated profit number that is based on Take-Two's depiction of ***all realistic tattoos*** in *NBA 2K*, not the six Tattoos at issue in this case.

---

wrong number from Dr. Bilgicer's survey to conduct his apportionment—1.06% instead of 0.99%.  *Id.* 12 n.3. Plaintiff does not dispute this.

[7]  Which are the Fire Tattoo and Scroll Tattoo on Mr. Green.  Dkt. 101-1 at 5.

[8]  Which are the Lion Tattoo on Mr. James and the My Brother's Keeper Tattoo on Mr. Thompson, respectively. *Id.* 28.

### III. MALKIEWICZ'S OPINIONS CONCERNING A PURPORTED RELATIONSHIP BETWEEN TAKE-TWO'S REVENUE FROM VIRTUAL CURRENCY AND THE DEPICTION OF THE TATTOOS SHOULD BE EXCLUDED

The parties agree that "[a] plaintiff in a copyright case seeking disgorgement of profits must show a '*reasonable* relationship' between revenues and the act of infringement."  Mot. 14 (quoting *Satija v. Permanent Gen. Assurance Corp. of Ohio*, No. 13 Civ. 82, 2014 WL 1664557, at \*6 (N.D. Ohio Apr. 25, 2014) (quoting *Balsley*, 691 F.3d at 769)); Opp. 11.[9]  *Balsley*, relied on by Plaintiff and followed by the *Satija* court, is not to the contrary.  There, the court confirmed the "common-sense" reading of 17 U.S.C. § 504(b) that a defendant's revenue number used in an apportionment analysis "must have a reasonable relationship" to the alleged infringing activity.  *Balsley*, 691 F.3d at 769 ("We agree with our sister Circuits in holding that this gross revenue number must have a reasonable relationship—relevance, in other words—to the infringing activity.").  For example, the *Balsley* court agreed with the Seventh Circuit's decision in *Taylor v. Meirick*, *id.* at 768, in which the court held that the revenue presented must be "gross revenues from *the sale of the infringing [product]*."  712 F.2d 1112, 1122 (7th Cir. 1983) (emphasis added).

Plaintiff does not dispute that VC is not the accused infringing product; *NBA 2K* is.  *See generally* Dkt. 33 (Fourth Amended Complaint).  He also does not dispute that "the Tattoos ***are already included*** in *NBA 2K* at the time that the game is purchased."  Mot. 15 (quoting Ilardi Decl. Ex. A (Malkiewicz Tr.) 203:9–14).  These facts alone should settle the matter, *see Taylor*, 712 F.2d at 1122, but lest there be any doubt that VC bears no reasonable relationship to sales of *NBA 2K*, Plaintiff also does not dispute that (a) VC does not depict the Tattoos; (b) it cannot be

---

[9]  Plaintiff argues that Take-Two "does . . . not cite *Balsley* in its memorandum," Opp. 12, but that is plainly not true.  *See* Mot. 10, 14.

used to purchase the Tattoos; and (c) it cannot be used to see the Tattoos more clearly.  Mot. 15 (citing Ilardi Decl. Ex. A (Malkiewicz Tr.) 204:11–17, 189:8–11, 201:16–202:2).

Plaintiff contends that he should be allowed to present VC revenue to the Court or jury because unidentified "doubts" should be resolved in favor of Plaintiff, and "[w]here there is a commingling of gains, [the defendant] must abide the consequences, unless he can make a separation of the profits."  Opp. 12 (quoting *Balsley*, 691 F.3d at 769).  Yet, here, Take-Two's revenue from sales of *NBA 2K* and sales of VC are easily separated—Malkiewicz first determined revenue from sales of *NBA 2K*, and then added to that his estimate of Take-Two's revenue from VC.  Mot. 15 n.5.

Plaintiff argues that Take-Two's arguments that cite *Satija* are "misleading" because unlike the product in *Satija*, VC "has no purpose or use other than as part of the infringing works."  Opp. 12.  Contrary to Plaintiff's argument, the *Satija* case is in accord with Take-Two's arguments.  Plaintiff does not dispute that *Satija* made clear that where is a "tenuous link between the alleged infringement and revenue," the relationship between the two is "inherently more speculative."  2014 WL 1664557, at *7.  That speculative relationship ***requires*** the Plaintiff to "present non-speculative evidence" of the relationship.  *Id.*, at *6 (internal quotation marks omitted).  Here, Plaintiff's alleged non-speculative evidence is simply Malkiewicz's conclusory assertion that this is "the economics of video game sales today."  Mot. 15 (quoting Ilardi Decl. Ex. A (Malkiewicz Tr.) 190:8–9).  Thus, just as in *Satija* where the Plaintiff could not present non-speculative evidence of a link between insurance sales and the alleged infringement, here too Plaintiff cannot present non-speculative evidence of a link between VC sales and the alleged infringement.  Malkiewicz thus should be precluded from offering any opinions "about what

14

revenue [from virtual currency] is reasonably related to or attributable to [Take-Two's] use of the" Tattoos.  *Satija*, 2014 WL 1664557, at *7.

**<u>CONCLUSION</u>**

For the foregoing reasons, Take-Two respectfully requests that the Court preclude testimony, argument or evidence by Malkiewicz consistent with Take-Two's motion.

Dated: New York, NY
        December 17, 2021

*/s/ Dale M. Cendali*

Dale M. Cendali (admitted *pro hac vice)*
Joshua L. Simmons (admitted *pro hac vice*)
Chris Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and
Take-Two Interactive Software, Inc.*

## **L.R. 7.1(F) CERTIFICATION**

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track and that the foregoing memorandum complies with the applicable page limitation of 15 pages.

   _/s/ Dale M. Cendali_
*Attorney for Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.*