**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES HAYDEN, | ) | Case No. 1:17-cv-02635 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | |
| 2K GAMES, INC. and TAKE-TWO | ) | |
| INTERACTIVE SOFTWARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff James Hayden ("Mr. Hayden") submits this Reply Brief in Support of his Motion for Partial Summary Judgment ("Motion") in response to Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.'s ("Defendants'" or, collectively, "Take-Two's") Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opposition").

**I.  INTRODUCTION**

Mr. Hayden is an accomplished, well-known visual artist from Cleveland who has made a name for himself through his visual art, particularly tattoos and graphic murals. Like so many other artists, Mr. Hayden has sought and obtained copyright protection for his tattoo art, including the tattoos at issue in this case (collectively, the "Asserted Works"[1]). It is black-letter copyright law that Mr. Hayden's Asserted Works cannot be copied (or adapted, distributed, etc.) without his authorization. Take-Two has copied (and produced and distributed derivatives of) Mr. Hayden's Asserted Works in its highly successful NBA 2K video games (collectively, the

---

[1] The "Asserted Works" include "Gloria" (Reg. No. VAu 1-263-888); "Lion" (Reg. No VAu 1-271-044); "Shoulder Stars" (Reg. No. VAu 1-270-802); "Fire D.G." (Reg. No. VAu 1-287-552); "Scroll D.G." (Reg. No. VAu 1-287-545); and "Brother's Keeper T.T." (Reg. No VAu 1-292-453).

"Accused Games"[2]), all without Mr. Hayden's consent and against his express wishes. Purportedly seeking to create the most realistic NBA basketball simulation possible, Defendants admit that they copy Mr. Hayden's works verbatim—each and every element of each tattoo is copied. But unlike with all the other intellectual property assets Take-Two copies and adapts to create its video games, Take-Two refuses to respect Mr. Hayden's copyrights and negotiate a license for them; rather, Take-Two willfully infringes them.

In fact, Take-Two does not respect *any* tattoo artists' rights. Another tattoo artist recently sued Take-Two for infringing her tattoo copyrights in its professional wrestling ("WWE 2K") video games. In that case, the U.S. District Court for the Southern District of Illinois recently *granted* a summary judgment motion by the plaintiff tattoo artist on copyright ownership and copying that was nearly identical to Mr. Hayden's here. *See Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812, 819 (S.D. Ill. 2020).[3]

Rather than accept that the Copyright Act entitles tattoo artists the same protections in their works as any other artist, Take-Two (a rational profit-maximizer) clearly prefers to continue trampling on tattoo artists' rights (and avoiding paying license fees). Take-Two claims that Mr. Hayden is trying to "create copyright liability where none has ever existed before." (Dkt. #112 at 1). But the fact that Take-Two has gotten away with this for several years doesn't change the Copyright Act.

To establish copyright infringement, Mr. Hayden must prove: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Stromback v.*

---

[2] The "Accused Games" include, NBA 2K16, NBA 2K17, NBA 2K18, NBA 2K19, NBA 2K20, NBA 2K21, NBA 2K22 and NBA 2K Mobile. All of them were identified to Defendants in discovery and Plaintiff plans to move to amend the Complaint to add NBA 2K21 and NBA 2K22 to the others previously identified as infringing works in the Fourth Amended Complaint.

[3] The *Alexander* court also denied Take-Two's summary judgment motion on the same defenses it asserts in this case.

*New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004); *citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). There are no genuine issues of material fact on these two elements.

First, Take-Two admits copying Mr. Hayden's works verbatim—Take-Two copies each element as precisely as possible. This fact is not at issue. Take-Two's Hail-Mary attempt at evading the consequence of this admitted fact rests on a nonsensical misapplication of black-letter copyright law. Take-Two claims (incorrectly) that, *even where copying is not disputed*, the Court must "filter out the unoriginal, unprotectable, elements of the work," then "compare plaintiff's work with the allegedly infringing work to *determine whether the two are substantially similar*." (Dkt. #112 at 13). This is just wrong. Proving substantial similarity is only necessary where there is no *direct* evidence of copying. Take-Two copied *every* element of Mr. Hayden's Asserted Works.[4]

Second, Mr. Hayden indisputably owns copyright registrations in the six Asserted Works. Take-Two's arguments that the copyright registrations are not valid have *no* merit and are based on a completely incorrect legal foundation. Take-Two misconstrues the originality requirement of the Copyright Act and sets the bar impossibly high, contrary to the law. Each of Mr. Hayden's Asserted Works is an original work protected by copyright. Moreover, Take-Two presented no evidence to suggest that Mr. Hayden does not own his copyright registrations for same. Thus, there are no facts in dispute as to his ownership and summary judgment should be granted on this issue.

---

[4] Take-Two claims the Lion and Brother's Keeper tattoos are not infringed because they are not visible in the Accused Games. As explained further below, this is false. First, the Brother's Keeper tattoo is readily viewable and accessible in the game. More importantly, the tattoos are copied verbatim in their entirety in the process of developing the games. (*See* Dkt. #109-35).

Take-Two's Opposition fails to raise any genuine issues of fact related to Mr. Hayden owning the Asserted Works and Take-Two copying them slavishly—accordingly, Mr. Hayden respectfully requests that this Court grant his Motion for Partial Summary Judgment.

## II. DISCUSSION

As fully demonstrated in Mr. Hayden's Motion, he is entitled to summary judgment on the issues of copyright ownership and copying. Mr. Hayden is the indisputable owner of valid and registered copyrights in the Asserted Works. And the record is clear that Defendants have copied (and adapted and distributed) Mr. Hayden's Asserted Works. Therefore, and for the reasons set forth below, Mr. Hayden asks the Court to grant partial summary judgment on those issues.

### A. Mr. Hayden is entitled to summary judgment on the issue of copyright ownership.

Mr. Hayden owns a valid copyright for each of the Asserted Works and is entitled to summary judgment on that issue. Three of Mr. Hayden's Asserted Works satisfy the requirements of 17 U.S.C. § 410 and establish a presumption of validity, which Take-Two did not, and cannot, successfully rebut. For the others, this Court may, at its discretion, view the registrations as evidence of validity. The Court should do so here, as Take-Two has failed to raise any meaningful question as to their validity. Take-Two's Opposition claims that Mr. Hayden's copyrights in the Asserted Works lack validity because two were allegedly "copied from pre-existing sources" and others contain "standard tattooing tropes." (Opp. Br., pp. 7–11.) Take-Two's arguments reflect a fundamental misreading of the law which sets much too high a bar for originality—by Take-Two's logic, almost no visual works would be original. That is not the law. All six of Plaintiff's Asserted Works are original works protected by valid copyrights. Mr. Hayden is entitled to summary judgment on the issue of copyright ownership.

*1. Mr. Hayden's copyrights on the Asserted Works are unquestionably valid.*

The undisputed evidence in the record makes clear that Mr. Hayden's copyrights are valid. The Copyright Act states that, "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). The statute goes on, "The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." *Id.* The Sixth Circuit has interpreted that § 410(c)'s prima facie evidence requirement amounts to a "presumption of the copyright's validity… [that] may be rebutted, [but] it is the burden of the party challenging the copyright to do so." *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093 (6th Cir. 1995).

Take-Two does not dispute that the Fire, Scroll, and Brother's Keeper registrations are entitled to § 410(c)'s presumption of validity. But Take-Two argues that since the Gloria, Lion, and Shoulder Stars registrations were made outside five years after first publication,[5] they are not entitled to any presumption. This is not true. The statute states, and the Sixth Circuit has held that the evidentiary weight accorded to certificate of registrations made more than five years after first publication of the work, "shall be within the discretion of the court." 17 U.S.C. § 410(c). A court has "discretion to view the registrations . . . as evidence of validity if [it] wish[es]." *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015).

Thus, this Court has discretion to view the registrations as evidence of validity if it so chooses—and there is no reason not to in this case. The record is unequivocally clear that Mr.

---

[5] Although Mr. Hayden does not concede that any of the Asserted Works has been "published," *see* 17 U.S.C. §101 (definition of "publication"), solely for purposes of this Reply to Take-Two's Opposition, he accepts, *arguendo*, Take-Two's assertion that they have.

5

Hayden owns copyright registrations for *all* of the six Asserted Tattoos. For the reasons set out below, the Court should exercise its discretion to recognize that the Fire, Scroll, and Brother's Keeper registrations create a presumption of validity.

> 2. *Mr. Hayden's Asserted Works as a whole were indisputably not copied from pre-existing sources.*

Take-Two argues that Mr. Hayden does not own valid copyrights for two of the Asserted Works—the Lion and Brother's Keeper designs—because portions of both works were "copied from the public domain." (Dkt. #112 at 7–8). Take-Two misstates the law regarding the Copyright Act's originality requirement. To be original means that a work is "independently created by the author (as opposed to copied from other works) and that it possesses at least some *minimal* degree of creativity." *Feist*, 499 U.S. at 345 (emphasis added). The Court further specified, "The standard of originality is low[.]" *Id.* at 362. The Sixth Circuit has held, "the degree of originality required to obtain a copyright has been held to be '… little more than a prohibition of actual copying." *M.M. Business Forms Corp. v. Uarco, Inc.*, 472 F.2d 1137, 1139 (6th Cir. 1973) (citing *Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99, 103 (2d Cir. 1951)). Further, "No matter how poor the 'author's' addition, it is enough if it be his own.'" *Gaste v. Kaisermain,* 863 F.2d 1061, 1066 (2d Cir. 1988) (internal citations omitted). "[A] showing of virtually any independent creativity will do." *Id.*; *see also, Feist*, 499 U.S. at 379 (explaining that original does not require that the work be innovate or surprising, only that it be more than "so mechanical or routine as to require no creativity whatsoever.").

Each of the Asserted Works *easily* surpasses the requirement that it possess "some minimal degree of creativity." *Id.* Indeed, not only was each of Mr. Hayden's Asserted Works independently created by him – a critical fact that Take-Two cannot dispute – each required a tremendous amount of creativity and artistry to complete. As Mr. Hayden has explained, "Going

6

from simply the idea of a[n] [element] to the end result of the [Asserted Work] required countless artistic decisions, including as to the precise shape, style, expression, shading, line thickness, density, color, and orientation on the [body], to name just a few, each carried out through countless artistic and creative acts." (Dkt. #109-49 at 2). Mr. Hayden's Asserted Works *clearly* satisfy the low bar for originality.

Regarding Take-Two's allegation that Mr. Hayden "copied" the Lion and Brother's Keeper tattoos, the relevant "independent creation" inquiry is whether the claimed work "*as a whole*" was independently created, *not* whether any particular element *of the claimed work* was independently created. *See id.* at 341 (examining whether the work had been selected, coordinated, or arranged in such a way that the resulting work as a whole was original). Take-Two cannot credibly deny the Asserted Works "originated" with Mr. Hayden even if, *arguendo*, certain *individual elements* of some were inspired by other sources. Needless to say, the world of art is filled with countless examples of original works that were inspired by earlier works or incorporate known elements.[6]

Mr. Hayden inked both the Lion and Brother's Keeper tattoos on LeBron James and Tristan Thompson, respectively, first freehand with a marker (*see* Dkt. #109-37 at 8-9; Dkt. #109-18 at 87:20-25, 118:16-18, 124:1-7) and then with needles, ink and other tools that are the 'paintbrushes' of his art form. The Lion and Brother's Keeper tattoos created by Mr. Hayden contain many original and expressive elements. (*See, e.g.*, Dkt. #109-18 at 82:12–25). A cursory look at the playing card Take-Two references[7] and Mr. Hayden's copyrighted design discloses clear differences, including the lion's facial expression, the shield design, and the mane, to name

---

[6] For instance, although flowers are a common theme among painters, Monet's water lily paintings are manifestly *not* uncopyrightable *scènes à faire*.

[7] Notably, Mr. Hayden was shown the design that Take-Two references in its brief and denied that it was the design Mr. James provided him. (Dkt. #109-18 at 81:25–87:19).

7

a few. (*Id.* at 82:12–84:18). Further, Take-Two's narrow focus on just the hands in the Brother's Keeper tattoo misses the forest for the trees. The Brother's Keeper tattoo is an expressive artistic *arrangement* of numerous elements, including the hands, the expressive text, the orientation and placement, artistic shading and the like, all then applied to the irregular surface of the player's body. This work, as a whole, is undoubtedly more than sufficiently original to enjoy copyright protection and the Court should reject Take-Two's arguments as a matter of law.

### 3. The Asserted Works are not uncopyrightable "standard tattooing tropes."

In its Opposition, Take-Two argues that the Asserted Works are uncopyrightable because they comprise "standard tattooing tropes" and "uncopyrightable elements." (Dkt. # 112 at 9). Take-Two is simply wrong. Take-Two sets the bar impossibly high for determining what elements are copyrightable, suggesting that works using flames, lions, stars, clouds, and cherubs, are uncopyrightable "tropes" or "*scènes à faire*." This is not—cannot—be the case, otherwise valid copyrights in visual works would have ceased long ago.

Take-Two's argument that Mr. Hayden's Asserted Works are uncopyrightable because some elements are "common tropes" is absurd. Take-Two would have the Court hold that common tropes (i.e., clouds, cherubs, flames, stars, and even lions) are *per se* uncopyrightable. This would wholly upend copyright law.[8] Take-Two simply has no basis for this assertion, which is likely why it did not cite to any case law for support.

Take-Two's argument that the Scroll and Fire Tattoos are uncopyrightable because they comprise common tattoo tropes both ignores the artistry and original expression embodied in creating and applying them to the player's arms and is wrong as a matter of law. These Asserted Works clearly satisfy the threshold for originality prescribed by the Supreme Court in *Feist*.

---

[8] Under this improper frame of thinking, *no* depiction of a lion could be copyrighted. For instance, Disney would be unable to obtain a copyright for the character Simba the lion from *The Lion King*.

Tellingly, Take-Two cites no evidence or case law to the contrary. Indeed, the photographs of the Scroll and Fire Tattoos included by Take-Two clearly illustrate the original artistic expression in Mr. Hayden's creative additions to the pre-existing tattoos. None of Take-Two's arguments reflects a material fact in dispute or shows that Mr. Hayden is not entitled to summary judgment on the issue of copyright ownership as a matter of law.

Take-Two's arguments about the Gloria Tattoo are similarly unavailing. Take-Two's claim that, "Plaintiff cannot credibly claim originality in the name 'Gloria'" and that "the typeface Plaintiff used to write the name is also unprotectable." (Dkt. #112 at 10–11) constitute the proverbial straw man. Mr. Hayden does not claim originality in the name "Gloria" or the "typeface" he used. Rather, he claims originality in his particular *expression* (*i.e.*, his selection, coordination, and arrangement) of the stylized name "Gloria" above his artistic depiction of a lion as he specifically oriented and applied same to the shoulder of the player. Such original work is *expressly* protectable. See *I.C. ex rel. Solovsky v. Delta Galil USA,* 135 F. Supp. 3d 196, 203 (S.D.N.Y. 2015) (holding, "Although consisting of uncopyrightable elements, an artist may nevertheless protect the way she has 'selected, coordinated, and arranged' the elements of her work." (citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003–04 (2d Cir. 1995)). The implication of Take-Two's argument – that lions must be *per se* uncopyrightable because "[l]ions are a common trope in tattooing" (Dkt. #112 at 11) would erode the very fabric of copyright law and is contrary to the well-established standard of originality as the basis for copyright protection. *See Feist*, 499 U.S. at 345.

Making essentially the same legal argument with respect to the Shoulder Stars Tattoo ("simple shapes … are expressly uncopyrightable" (Dkt. #112 at 11)), Take-Two ignores (albeit cannot dispute) the fact that Mr. Hayden's Shoulder Stars Tattoo was conceived and created by

9

him as a coordinated selection of shapes artistically arranged on Mr. James' shoulder. As such, it is manifestly copyrightable. *See Hoberman Designs*, 2015 WL 10015261, at *4 ("The use of combined geometric shapes does not preclude copyright protection."); s*ee also, I.C. ex rel. Solovsky*, 135 F. Supp. 3d at 214 ("Although consisting of uncopyrightable elements, an artist may nevertheless protect the way she has 'selected, coordinated, and arranged' the elements of her work," *citing Knitwaves, Inc.*, 71 F.3d at 1003–04); *North Coast Indus. V. Jason Maxwell, Inc.*, 972 F.3d 1031, 1034 (9th Cir. 1992) (rejecting the trial court's holding that defendant could not infringe on a particular configuration of rectangles); *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011) ("Regarding the use of elliptical shapes, an author's expressive combination or arrangement of otherwise noncopyrightable elements (like geometric shapes) may satisfy the originality requirement."); *Titlecraft, Inc. v. Nat'l Football League*, Civ. No. 10–758, 2010 WL 5209293, at *1 (D. Minn. Dec. 20, 2010) ("at some level of abstraction, all objects are combinations of common geometric shapes; that does not mean they cannot be protected by copyright"). Pursuant to this law from multiple courts, Take-Two's argument that combinations of "simple shapes" are uncopyrightable is unsound. The argument, "is akin to suggesting that 'there can be no originality in a painting because all colors of paint have been used somewhere in in the past.'" *Id.* (citing *Knitwaves*, 71 F.3d at 1003).

      Take-Two also argues that the Asserted Works as whole are uncopyrightable because certain elements—fire, lions, and stars—are unprotectible under the *scenes a faire* doctrine. However, the *scènes à faire* doctrine *does not even apply* because Take-Two copied the Asserted Works in their entirety. *Winfield Collection, Ltd. v. Gemmy Indus., Corp.*, 147 F. App'x 547, 554 (6th Cir. 2005) ("[T]o the extent that the district court implies that just because these generalized elements are unprotectible, [Defendant] could have produced an exact replica of Winfield's

witch—or even an exact replica of that witch's hair, broom, cape, or clothing—*it is incorrect*.") (emphasis added). Although abstract ideas themselves are not copyrightable, an artist's particular *expression* of even the most basic idea is *expressly* protectible! *Id.* ("It is axiomatic … that mere abstract ideas are not protectible, but the expression of an idea is.") (citing *Mazer v. Stein*, 347 U.S. 201, 217 (1954)); *See also, I.C. ex rel. Solovsky*, 135 F. Supp. 3d at 214 ("Notwithstanding, plaintiff cannot copyright the idea of arranging smiley and frowning faces with the word high and bye—only the particular 'expression of that idea can receive copyright protection.'") (citing *Queenie, Ltd. v. Sears, Roebuck Co.*, 124 F.Supp.2d 178, 180 (S.D.N.Y 2000). Thus, the *scènes à faire* doctrine in no way permits Take-Two to produce an "exact replica" of Mr. Hayden's particular expression of fire, lions, or stars.

As the numerous authorities cited above show as a matter of law, "copyright protects original compilations of unoriginal components." *Hoberman Designs, Inc. v. Gloworks Imports, Inc.*, CV 14–6743, 2015 WL 10015261, at *4 (C.D. Cal. Nov. 3, 2015). Even "[u]nprotected material that is selected, coordinated, or arranged in a way that 'render[s] the work as a whole original' can be copyrighted." *Id.* (citing *Feist*, 499 U.S. at 358); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1077 (9th Cir. 2000) (finding valid a copyright of a vodka bottle photo because the "lighting, shading, angle, background, and so forth" were sufficient to warrant protection, even though the subject matter was not original). Here, Mr. Hayden's Tattoos embody artistry and original expression; they are indeed protectable by copyright.

In sum, the record is clear. Mr. Hayden is the owner of valid, original copyrights in the Asserted Works. Take-Two's contentions to the contrary reflect its fundamental misreading of the copyright law regarding originality. *See Feist*, 499 U.S. at 345. Take-Two raises no facts to

11

dispute that Mr. Hayden owns the Asserted Works. Therefore, the Court should grant Mr. Hayden's Motion for Summary Judgment on the issue of copyright ownership as a matter of law.

### B. Take-Two has *admitted* that it copied the Asserted Works, thus, the Court should grant Mr. Hayden summary judgment on copying.

Copying was defined in the Sixth Circuit in *Lexmark Int't, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004), and requires, "that the defendant copied protectable elements of the work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,361 (1991); *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 1973)… [This] prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)." Take-Two has admitted on multiple occasions that it has copied Mr. Hayden's Asserted Works. There is no dispute; summary judgment should be granted on the issue of Take-Two's copying.

With respect to so-called "legal copying," Take-Two incorrectly states Sixth Circuit law related to such legal copying and "substantial similarity." In particular, Take-Two fails to acknowledge that considerations of substantial similarity *are only applicable* when a plaintiff alleges copying via *indirect* evidence. Here, Mr. Hayden has *direct* evidence of copying in the form of Take-Two's own *admissions*. This *critical* distinction refutes Defendants' argument as a matter of law. The Court should, therefore, grant Mr. Hayden's Motion for Partial Summary Judgment on the issue of copying.

#### 1. Take-Two has admitted factual copying.

Take-Two copied the Asserted Works in this case, innumerable times over many years. Indeed, it admits as much. The Sixth Circuit has held that the second element of copyright infringement (copying) requires testing, "whether any copying occurred (a factual matter)." *Lexmark*, 387 F.3d at 534. That fact is not in dispute here. Take-Two's Opposition states, "Take-

Two does not contest that it realistically depicted the NBA players in *NBA 2K* as they actually appear in real life, which included their facial features, hair, body type, and tattoos… The process captures a player's detailed likeness… including tattoos." (Dkt. #112 at 12).

### 2. *Defendants have committed and admitted to legal copying.*

Take-Two offers a muddled argument contesting copying that is premised on a legal construct that the Sixth Circuit has not adopted: requiring a substantial similarity test, despite admitting to copying the Asserted Works verbatim. *See Jedson Engineering, Inc. v. Spirit Const. Services, Inc.*, 720 F. Supp. 2d 904, 919-20 (S.D. Ohio 2010). But this is a red herring. After all, Take-Two does not even contest substantial similarity for *any* element of its infringing copies. In any event, Mr. Hayden has established copying as a matter of law. Take-Two's factual copying versus legal copying distinction gets them nowhere since they admitted to copying the Asserted Works verbatim and do not dispute that *any* elements are substantially similar.

Moreover, Take-Two's legal copying construct is not supported in this Circuit. Take-Two further argues that so-called legal copying "requires a showing of 'substantial similarity.'" (Dkt. #116 at 13). The case Take-Two relies on in its Brief, *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003), actually states, "***where there is no direct evidence of copying***, a plaintiff may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'" *Id.* at 853-54 (internal citations omitted) (emphasis added). More recently, the Sixth Circuit has held,

> [Plaintiff] must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original…' A Plaintiff may demonstrate that original elements of its work were copied through ***direct*** or ***indirect*** evidence. 'Direct evidence of copying is rare,' and may be established through 'evidence such as party admissions, witness accounts of the physical acts of copying, and common errors in the works of plaintiffs and defendants.

13

*Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 536 (6th Cir. 2020) (internal citations omitted) (emphasis added).

There is an abundance of direct evidence of copying in this case. Defendants have admitted to copying (*see* Dkt. #93 at 6-11), including in their responses to Hayden's Requests for Admission (Dkt. #93-20 at 8), in depositions of their witnesses (Dkt. #93-16 at 29:16-21, 30:1-14, 38; Dkt. #93-3 at 164:3-7; Dkt. #93-13 at 58:17-59:7), in depositions of their expert witnesses (Dkt. #93-21 at 8:1-16, 254:17-255:6), and even in their Answer (Dkt. #18 at ¶¶ 130, 138, 146). (*See generally* Dkt. #93 at 6-11), all in addition to the above-referenced admission in their Opposition to Mr. Hayden's Motion. *Supra*.

Since Mr. Hayden has clearly alleged and shown Take-Two's *direct* copying, there is no need to look at *indirect* evidence or show substantial similarity. Simply put, this is one of the "rare" instances where there is *direct*—and overwhelming—evidence of copying. *See Enchant Christmas*, 958 F.3d at 536; *see also Parker v. Winwood*, 938 F.3d 833, 836 (6th Cir. 2019). Accordingly, there is no material fact in dispute as to Take-Two's factual *and* legal copying. Mr. Hayden's Motion for Summary Judgment should be granted on this issue.[9]

### C. Mr. Hayden's claims do not fail as a matter of law.

As a last gasp effort to preclude Mr. Hayden from obtaining summary judgment on the issue of copyright ownership and copying, Defendants rehash in cursory fashion the arguments

---

[9] Take-Two made a nearly identical argument that was rejected by the Southern District of Illinois in a highly similar copyright lawsuit concerning the realistic depiction of a professional wrestler's tattoos in Take-Two's video game, *WWE 2K*. *See Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812, 819 (S.D. Ill. 2020). There, Take-Two similarly did not dispute factual copying, but claimed their copying was "not legally actionable," alleging their copying to be *de minimis*, that the tattoos at issue were not original, and that plaintiff impliedly authorized the copying.[9] *See Alexander v. Take-Two Interactive Software, Inc.* (S.D. Ill. December 9, 2019) (No. 3:18-CV-966-SMY-MAB), 2019 WL 8109815. The *Alexander* court rejected Take-Two's arguments and granted plaintiff's motion for partial summary judgment, finding that plaintiff owned copyrights on the tattoos and defendants copied her copyrighted works. *Alexander*, 489 F. Supp. 3d at 819.

made in their Motion for Summary Judgment (*i.e.*, that *NBA 2K* makes fair use of the Asserted Works, that Mr. Hayden impliedly granted a license to the players to show their tattoos in video games, and that the Asserted Works are a *de minimis* part of the Accused Games).

For the reasons more fully explained in Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Dkt. #109), Take-Two's aforementioned arguments fail. Take-Two's copying is not fair, as each of the four fair use factors weigh in Plaintiff's favor. (*Id.* at 7-19). Mr. Hayden *did not* impliedly authorize Messrs. Green, James, and Thompson to sublicense the Asserted Works to third-parties for reproduction in video games. (*Id.* at 19-23). Finally, Take-Two's display of the Asserted Works is not *de minimis,* as the Asserted Works were copied in total and adapted and reproduced after manipulation in the millions of copies of the Accused Games that have been distributed. (*Id.* at 24-28). Take-Two's arguments fail. Moreover, there is no disputed issue of material fact as to ownership and copying. Thus, the Court should grant Mr. Hayden's Motions for Summary Judgment.

## III. CONCLUSION

For the reasons and evidence set forth above and in Mr. Hayden's Motion, Mr. Hayden respectfully requests that the Court grant the Motion for Partial Summary Judgment on the issues of copyright ownership and copying by Defendants of the Asserted Works.

Dated: December 17, 2021

Respectfully submitted,

By: */s/ Andrew Alexander*
John S. Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Andrew Alexander (Ohio Bar No. 0091167)
Dustin Likens (Ohio Bar No. 0097891)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
aalexander@calfee.com
dlikens@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's Electronic Filing System to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's System.

*/s/ Andrew Alexander*
One of the attorneys for Plaintiff