UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES HAYDEN,** | ) | CASE NO. 1:17CV2635 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **2K GAMES, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #85*SEALED & ECF DKT #86 *PUBLIC VERSION) of Plaintiff James Hayden to Exclude the Expert Testimony of Dr. Nina Jablonski. For the following reasons, the Motion is granted in part and denied in part.

**I. BACKGROUND**

Plaintiff James Hayden filed his original Complaint on December 18, 2017. His Fourth Amended Complaint was filed on August 19, 2019, alleging copyright infringement by Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. Defendant Take-Two is a worldwide developer, publisher and marketer of interactive entertainment and video games.

Plaintiff alleges that he is the tattoo artist who inked the copyrighted tattoos on NBA players Danny Green, LeBron James and Tristan Thompson, individuals depicted in Take-Two's popular basketball simulation series NBA 2K.

Nina Jablonski, Ph.D. provided an Expert Report and Declaration on behalf of Defendants on May 27, 2021. (ECF DKT #95-10*SEALED). She is the Evan Pugh University Professor of Anthropology at The Pennsylvania State University. She holds a doctorate in anthropology and has been conducting research on the evolution and cultural meaning of human skin since 1990. In her book, <u>Skin: A Natural History</u>, she investigates the history of tattooing and the spread of tattooing across the globe. She has given lectures and interviews on the subject of skin decoration and tattooing to national and international audiences. She has consulted other researchers and has reviewed documentaries and videos on the subject of tattoos.

Dr. Jablonski offers the following Executive Summary of her opinions on behalf of Defendants (ECF DKT #85-2*SEALED at 3-4):

> (a) For thousands of years, people have used tattoos as vehicles for personal expression. Individuals choose the content of their tattoos in order to express something about themselves, such as a person or family member that they care about, a quality or trait they value, a symbol or word that resonates with them, or some other concept.
>
> (b) A client receiving a tattoo chooses the content of the tattoo and requests that his or her tattooist ink the chosen content onto his or her body. The client controls the content of the tattoo and has final approval over the tattoo content before it is inked on the client's body. In this case, three NBA players, LeBron James, Tristan Thompson, and Danny Green (the "NBA Players") chose the content of the tattoos that Plaintiff inked on them (the "Tattoos") as a form of personal self expression. The NBA Players requested that Plaintiff ink the Tattoos, brought him specific ideas for tattoo content, and had final approval over the Tattoos' look and location.

>(c) It is customary in the tattoo industry that tattooists and clients both expect and intend that after the inking session, the client will display his or her tattoos and be depicted with his or her tattoos in any photographs or media.  If this were not the case, it would harm individuals' abilities to express themselves, and the business structure of the tattoo industry, which depends on the visibility of tattooists' works.  If a tattooist were to deviate from this custom and practice, I would expect the tattooist and client to agree to do so in writing.
>
>(d) Plaintiff's position that Take-Two needed a separate license from Plaintiff to accurately depict the NBA Players with the tattoos that they bear in real life represents a marked departure from the customs and practices of the tattoo industry, as well as the agreement between tattooist and client that a client is free to be depicted with his or her tattoos without further permission from the tattooist.
>
>(e) Because these are the established customs and practices of the tattoo industry, I am not aware of any evidence of a market for licensing tattoos for use in video games on the individuals who bear those tattoos in real life.  In addition, based on my knowledge of the customs and practices of the tattoo industry, such a market would not be reasonable or likely to be established.

Plaintiff moves to exclude Dr. Jablonski's report and testimony because she offers improper legal conclusion about the ownership of tattoos and unsupported speculations about marketing tattoos in video games.  Plaintiff objects to the expert's opinions on licensing tattoos, customs and practices in the tattoo industry, the economics of tattoo shops and the market for tattoos.  Dr. Jablonski improperly opines on the  expectations and intentions of clients arranging to have tattoos inked on their bodies.  Plaintiff contends that Dr. Jablonski exceeds the bounds of her expertise and has no factual basis for her views.  Plaintiff complains that Dr. Jablonski's report is not relevant to the issues in this case.

Defendants counter that Dr. Jablonski is qualified to offer her opinions on tattoos because her decades-long study of human skin includes tattoos.  Dr. Jablonski is not providing legal opinions, but rather testimony drawn from her experience studying tattoo industry practices and customs and the expectations of tattooists and their clients.  Her report is not

speculative and is based upon research, interviews, observations of tattoo parlors and sworn testimony in this litigation. Defendants insist that Dr. Jablonski's opinions are relevant to the asserted defense of fair use and will likely assist the trier-of-fact in arriving at the truth in this matter.

## II. LAW AND ANALYSIS

**Expert Testimony**

Pursuant to Federal Rule of Evidence 702, an expert by virtue of knowledge, skill, experience, training or education may provide testimony to assist the trier of fact to understand the evidence or to determine a fact in issue if the expert testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has applied the principles and methods reliably to the facts of the case.

The standard set in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) requires "that an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and that the expert appropriately "fits" the facts of the case into the theories and methods he or she espouses." *Redmond v. United States*, 194 F.Supp.3d 606, 615 (E.D. Mich. 2016) (citing *Daubert*, 509 U.S. at 591-93). "[E]xpert testimony is not admissible unless it will be helpful to the factfinder." *Redmond, id.* Expert testimony is not helpful when it is unreliable or irrelevant or "when it merely deals with a proposition that is not beyond the ken of common knowledge." *Id.* "The proponent of expert testimony must establish all the foundational elements of admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592

n.10).

The objective of *Daubert*'s "gatekeeping" function is to ensure the reliability and relevancy of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Supreme Court has held this "gatekeeping" obligation applies not only to scientific testimony, but to all expert testimony. *Id.* at 147. Courts are not required to hold a formal hearing on *Daubert* challenges. *See Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir.1999). "[N]o matter how good" experts' "credentials" may be, they are "not permitted to speculate." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) *quoting Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

To reiterate, an expert may testify in the form of an opinion if it will assist the trier of fact and if the testimony is the product of reliable principles and methods. Federal Rule of Evidence 702; *Redmond*, 194 F.Supp.3d at 614-615. The Court finds, upon consideration of Dr. Jablonski's Report and Declaration, that her opinions are reliable, relevant and helpful to the factfinder **in part only**.

As a recognized anthropologist and longtime researcher on the topic of human skin, Dr. Jablonski can speak to the history and growing popularity of tattoos worldwide. In her words: "I consider myself an expert in skin as a mode of social communication and the history of tattoos." (Jablonski Deposition, ECF DKT #85-3 at 5). She can opine that tattoos are part of an individual's likeness and are used as means of self-expression. She can also offer her views on common imagery utilized in tattoos like those appearing on LeBron James, Tristan Thompson and Danny Green. She may discuss the tattoo process generally and that the tattooist's client chooses and controls the content, the look and the placement of the inked

image. Dr. Jablonski's findings in this regard can be useful to the jury and are relevant to Plaintiff's burden of showing originality as well as to the defenses of fair use and implied license.

However, as to her remaining opinions, Dr. Jablonski lacks specialized knowledge, offers mere speculation and exceeds the scope of her expertise.

Dr. Jablonski can comment that tattoos become a physical part of a person's body. Nonetheless, she cannot make the legal determinations of who owns the tattoos and who has the right to display them. (See Jablonski Deposition, ECF DKT #85-3 at 34: "The person, the client, owns that tattoo and has the right to display it in any way they seek to."). Dr. Jablonski is not a lawyer. Such conclusions of law go to the heart of this dispute and to the ultimate issues of ownership as an element of a copyright infringement claim and the import of Plaintiff's registered copyrights.

Dr. Jablonski has no facts or data to support her opinions of what is customary in the tattoo industry. She has not conducted surveys of tattoo artists or their clients. Moreover, Plaintiff is a tattoo artist; so, his anticipated testimony and that of clients or other tattoo artists will provide more legitimate assistance to the factfinder.

In addition, it is inappropriate for Dr. Jablonski to testify about what tattooists and clients "expect" and "intend" after an "inking session" is completed. (Executive Summary Part (c), *supra*). It is equally inappropriate for her to offer that she "would expect" a written agreement between tattooist and client governing the display of tattoos in the media. *Id*. The Court finds such statements to be entirely speculative. Despite Dr. Jablonski's laudable credentials, the Court in its gatekeeper role cannot allow an expert to speculate.

Dr. Jablonski opines that Plaintiff's claim that Defendants need a license or his permission prior to depicting the NBA players (with their tattoos) in a video game is a "marked departure from the customs and practices of the tattoo industry." Dr. Jablonski also offers her views on the existence or likelihood of a market for licensing tattoos for video game use. These opinions are beyond the scope of her anthropology expertise and must be excluded. Dr. Jablonski is not qualified in the areas of business, economics or marketing. Additionally, the parties anticipate presenting survey experts, video game developers and economists whose testimony (if allowed) will likely provide much more meaningful and valid guidance to the jury.

### III. CONCLUSION

Mindful of its gatekeeping obligation, the Court must ensure the reliability and relevancy of all expert testimony offered in this case. Therefore, the Motion (ECF DKT #85*SEALED & ECF DKT #86 *PUBLIC VERSION) of Plaintiff James Hayden to Exclude the Expert Testimony of Dr. Nina Jablonski is granted in part and denied in part, as outlined in this Opinion.

**IT IS SO ORDERED.**

**DATE: May 11, 2022**

                                               s/Christopher A. Boyko
                                               **CHRISTOPHER A. BOYKO**
                                               **Senior United States District Judge**