UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES HAYDEN,** | ) | CASE NO. 1:17CV2635 |
| | ) | |
| **Plaintiff,** | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **2K GAMES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, SR. J**.:

This matter comes before the Court upon the Motion (ECF DKT #88*SEALED & ECF DKT #89 *PUBLIC VERSION) of Plaintiff James Hayden to Exclude the Expert Testimony of Dr. E. Deborah Jay. For the following reasons, the Motion is denied.

**I. BACKGROUND**

Plaintiff James Hayden filed his original Complaint on December 18, 2017. His Fourth Amended Complaint was filed on August 19, 2019, alleging copyright infringement by Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. Defendant Take-Two is a worldwide developer, publisher and marketer of interactive entertainment and video games.

Plaintiff alleges that he is the tattoo artist who inked the copyrighted tattoos on NBA players Danny Green, LeBron James and Tristan Thompson, individuals depicted in Take-Two's popular basketball simulation series NBA 2K.

E. Deborah Jay, Ph.D. has over 40 years of experience conducting surveys of all types, including more than 400 surveys in legal cases.  Before founding her own survey research company, Jay Survey Strategics, Dr. Jay served for 23 years as President and CEO of Field Research Corporation, a highly respected marketing and opinion research firm.  She has also served as the chair of the Council of American Survey Research Organizations, a trade association representing over 100 survey research companies, as well as the Standards Committee for the American Association for Public Opinion Research, a professional society of over 2,000 survey researchers.  In addition, Dr. Jay is widely published in the area of survey methodology.

Jay Survey Strategics was retained by Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. to conduct a survey with a nationwide representative sample of individuals who had purchased a relevant NBA 2K video game.  The purpose of the NBA 2K Survey was to determine the reasons for buying an NBA 2K video game, and whether the tattoos on LeBron James, Danny Green, or Tristan Thompson were a reason why consumers bought an NBA 2K video game.

On May 20, 2021, Dr. Jay provided her Expert Report, Survey and Declaration on behalf of Defendants.  (ECF DKT #88-2*SEALED).  The NBA 2K Survey was conducted between October 8 and October 29, 2019, using an online questionnaire completed by a nationwide representative sample of individuals age 16 to 55 who purchased NBA 2K16,

2K17, 2K18, 2K19, 2K20 or 2K Mobile in the past five years.  In all, 8,523 randomly-selected individuals were screened for eligibility and of these, 520 (6%) qualified for the NBA 2K Survey.  The 520 survey respondents were asked up to four sets of questions, which included open-ended questions (questions that required survey respondents to answer in their own words) and closed-ended questions (questions that required survey respondents to select from a set of response categories), asking the respondents their reasons for buying an NBA 2K video game.

In Dr. Jay's opinion, the NBA 2K Survey strongly supports the conclusions that: a) consumers bought the relevant NBA 2K video games for numerous reasons, principally that they like basketball; b) no consumers bought the relevant NBA 2K video games for the tattoos on LeBron James, Danny Green, or Tristan Thompson, let alone the tattoos at issue in this case; and c) there is no link between the sales of the NBA 2K video games and their depiction of the tattoos on LeBron James, Danny Green, or Tristan Thompson.  (ECF DKT #88-2*SEALED at 11).

Plaintiff moves for the exclusion of Dr. Jay's opinions and survey results because they are unreliable, misleading and more prejudicial than probative.  Her survey disregards well-known guidelines for open-ended questions.  Moreover, the closed-ended questions do not cure the flaws, but rather introduce more flaws by offering respondents too many options.  Plaintiff contends that Dr. Jay's survey methodology, at best, identifies the top reasons respondents bought the NBA 2K games; but does not reliably test whether the Hayden Tattoos were *a* reason why respondents bought Defendants' NBA video games.

Defendants respond that Dr. Jay's survey follows recognized methodologies and satisfies the standards of reliability and relevancy. Plaintiff's criticisms of Dr. Jay's survey questions ignore the fact that open-ended questions are inherently non-leading. The use of fewer choices in the closed-ended questions, as Plaintiff suggests, would be leading and unreliable. Dr. Jay's survey provided the respondents with "ample opportunity to identify the Tattoos as a reason they purchased the game." (Defendants' Opposition, ECF DKT #115 at 6). The closed-ended question portion gave respondents the option of selecting, "the depiction of the NBA players' face, body or other aspects of their appearance," as a reason for their purchase. The survey questionnaire gave respondents the ability to indicate that they did not know the answer; and to insure accuracy, Dr. Jay included a control question. Defendants counter Plaintiff's objection that the survey did not permit the response that NBA 2K was purchased because of *all* the tattoos on *all of the players* in the game; and Defendants insist that the only relevant inquiry is whether any consumers purchased NBA 2K for the tattoos that Plaintiff actually inked.

## II. LAW AND ANALYSIS

**Expert Testimony**

Pursuant to Federal Rule of Evidence 702, an expert by virtue of knowledge, skill, experience, training or education may provide testimony to assist the trier of fact to understand the evidence or to determine a fact in issue if the expert testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has applied the principles and methods reliably to the facts of the case.

The standard set in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993) requires "that an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and that the expert appropriately "fits" the facts of the case into the theories and methods he or she espouses." *Redmond v. United States*, 194 F.Supp.3d 606, 615 (E.D. Mich. 2016) (citing *Daubert*, 509 U.S. at 591-93). "[E]xpert testimony is not admissible unless it will be helpful to the factfinder." *Redmond, id.* Expert testimony is not helpful when it is unreliable or irrelevant or "when it merely deals with a proposition that is not beyond the ken of common knowledge." *Id.* "The proponent of expert testimony must establish all the foundational elements of admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

The objective of *Daubert*'s "gatekeeping" function is to ensure the reliability and relevancy of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Supreme Court has held this "gatekeeping" obligation applies not only to scientific testimony, but to all expert testimony. *Id.* at 147. Courts are not required to hold a formal hearing on *Daubert* challenges. *See Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir.1999). "[N]o matter how good" experts' "credentials" may be, they are "not permitted to speculate." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) *quoting Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

To reiterate, an expert may testify in the form of an opinion if it will assist the trier of fact and if the testimony is the product of reliable principles and methods. Federal Rule of Evidence 702; *Redmond*, 194 F.Supp.3d at 614-615. The Court finds, upon consideration of

Dr. Jay's Report, Survey and Declaration, that her opinions are reliable, relevant and helpful to the factfinder.

**Surveys**

> "A survey need not be perfectly conducted for testimony concerning its results to be admissible. So long as the expert's testimony and the underlying survey have probative value after all the survey's deficiencies are taken into account, testimony concerning the results of the survey that meets the basic requirements of usefulness and reliability is admissible into evidence, and the trier of fact may accord it the weight it deems proper." *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 45 F.Supp.3d 724, 754 (N.D.Ohio 2014), quoting 4 Weinstein's Federal Evidence § 702.06[3] (2nd ed. 1997).

"The important thing is not that experts reach the right conclusion, but that they reach it via a sound methodology." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 675 (6th Cir. 2010); *see also Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) ("[c]hallenges to survey methodology go to the weight of a given survey, not its admissibility.").

"The relevant case law counsels that—subject to the Court's overriding gatekeeping function under *Daubert* — errors in survey methodology are more properly directed against the weight a jury should give the survey, rather than overall admissibility." *Innovation Ventures, LLC v. NVE, Inc.*, 90 F.Supp.3d 703,720–21 (E.D. Mich. 2015) (citations omitted). *See also Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 518 (6th Cir. 2007).

Although Plaintiff has identified potential weaknesses in Dr. Jay's survey and opinion, "the proper venue for challenging these weaknesses is cross-examination, not exclusion." *In re Whirlpool,* 45 F.Supp.3d at 763.

### III. CONCLUSION

Ever mindful of its gatekeeping obligations, but equally careful not to usurp the role of

the jury, the Court denies the Motion (ECF DKT #88*SEALED & ECF DKT #89 *PUBLIC VERSION) of Plaintiff James Hayden to Exclude the Expert Testimony of Dr. E. Deborah Jay.

**IT IS SO ORDERED.**

**DATE: May 20, 2022**

 s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**