UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HAYDEN, | ) | Case No. 1:17-cv-02635 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | **PUBLIC REDACTED VERSION** |
| 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

# PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. LAW AND ARGUMENT ........................................................................................ 3

    A. The Players' depositions demonstrated that their Declarations are not credible and raise disputed issues of fact .................................................................................. 3

    B. The NBA Players' testimony supports Mr. Hayden's sworn testimony that he did not intend to grant an implied license that would permit Take-Two to copy his Asserted Works in video games ...................................................................... 8

    C. The NBA Players' testimony confirms that Mr. Hayden's Asserted Works are creative and original ................................................................................... 12

III. CONCLUSION ...................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Balsley v. LFP, Inc.*, 691 F.3d 747 (6th Cir. 2012) ................................................................. 12

*Dawson v. Dorman*, 528 F. Appx. 450 (6th Cir. 2013) ............................................................. 7

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) ................................................ 11

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) ............................................................ 8, 11

*Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998) ................................................................ 8, 11

*Latimer v. Roaring Toyz, Inc.*, 01 F.3d 1224 (11th Cir. 2010) ............................................... 11

*Murphy v. Lazarev*, 589 Fed. Appx. 757 (6th Cir. 2014) ......................................................... 8

*Robert L. Stark Enterprises, Inc. v. Neptune Design Group, LLC*, No. 1:16 CV 264, 2017 WL 1345195 (N.D. Ohio Apr. 12, 2017) ............................................................. 8

Plaintiff James Hayden ("Mr. Hayden") submits this supplemental brief in opposition to 2K Games, Inc. and Take-Two Interactive Software, Inc.'s ("Take-Two's") Motion for Summary Judgment, (Dkt. # 95) ("Motion"), as permitted by this Court's April 14, 2022 Order (Dkt. # 146) after deposing Take-Two's declarants, LeBron James, Tristan Thompson, and Danny Green ("Players").

I.  INTRODUCTION

Take-Two submitted three declarations, one each from LeBron James, Tristan Thompson, and Danny Green—the three NBA Players on which Mr. Hayden created his Asserted Works—to support their Motion (the "Declarations"). Although the NBA Players are purportedly third-parties to this lawsuit, the deposition testimony confirmed that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ They are not impartial declarants; they are strongly biased in favor of Take-Two due to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, as they are riddled with statements inconsistent with the facts elicited in their depositions. The Declarations are simply not credible; rather, they are instruments ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ devoted more to supporting Take-Two's legal positions than disclosing the impartial truth.

What is more, in their depositions, all three Players corroborated Mr. Hayden's sworn statement that he never intended to grant an implied license that contemplated the authority to permit *third-parties* to recreate the Asserted Works in *video games*. Mr. Thompson admitted that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ And Danny Green confirmed that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1

███████████████████████████████████████████████████████

███████████████████████████████████████████████ This would have been *after* Mr. Hayden inked most of the Asserted Works.

Moreover, *each Player confirmed that* ████████████████████████

████████████████████████████████ Thus, the statements in each Players' declaration that allege, for example, that "Mr. Hayden must have understood that I regularly appeared on television and in other media" (Thompson Decl., ¶ 8, Dkt. # 101-4[1]), could not have been referring to video games. Their testimony confirms Mr. Hayden's statement that he "did not intend to give any of the athletes, LeBron James, Danny Green, or Tristan Thompson, the right to authorize third-parties to recreate the Asserted Works in video games" (Hayden Decl., ¶ 27, Dkt. # 109-49.)

Finally, Mr. Green unequivocally dispelled the false narrative Take-Two has sought to invent that the Asserted Works lack artistry and creativity. Mr. Green affirmed that ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Mr. James also acknowledged ██ ████████████████████████████████████████████████████████████████████ ████ Mr. Hayden's creative and expressive Asserted Works deserve *full*—not thin—copyright protection under the Copyright laws. (*See* Brief,[2] p. 2.) Not only is Take-Two wrong in claiming that "[n]owhere does Plaintiff show that these Tattoos are creative" (Reply Br., p. 8, Dkt. # 135)—indeed the Asserted Works speak for themselves—but moreover, the Players confirm that the Asserted Works *are creative*.

---

[1] *See also*, Green Decl., ¶ 10, Dkt. # 101-3.
[2] "Brief" refers to Take-Two's Memorandum of Law, Dkt. # 95-1.

In short, the Declarations carry no meaningful evidentiary weight in favor of Take-Two. They are simply litigation-driven documents blindly signed by biased declarants ▌ ▌ with Take-Two. The obvious truth is, at the time the Asserted Works were created and inked, neither the Players nor Mr. Hayden contemplated them being recreated on digital avatars by a third-party video game company. Thus, it was not even possible for Mr. Hayden to have granted the implied license for such use (or objected to such use) on which Take-Two's Motion for Summary Judgment rests. There are *zero* facts contradicting Mr. Hayden's sworn testimony that he did not intend to grant such a license; and at the very best for Take-Two, the depositions of the Players raise a multitude of disputed issues of fact. Thus, Take-Two's Motion should be denied.

## II. LAW AND ARGUMENT

### A. The Players' depositions demonstrated that their Declarations are not credible and raise disputed issues of fact.

This Court should not give the Players' Declarations any weight in support of Take-Two's Motion. It is clear now that Take-Two handed the Players carefully sculpted legal instruments to which they provided little-to-no input and simply signed them as requested without carefully considering the truth of their contents. Indeed, each Player confirmed (or did not deny) that ▌ . Mr. James, for example, testified that ▌ ▌, he does not remember ▌ , he does not know ▌ ▌, he confirmed that ▌ ▌, and he confirmed ▌ . All he could recall is that ▌ ▌.

3

Mr. Green also confirmed that ███████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████

Finally, Mr. Thompson simply evaded the question of who drafted his Declaration (and proved to be consistently evasive during his deposition), repeatedly answering ████████ ████████ to questions about how it was prepared:

████████████████████████████

██████████████████

█

████████████████████████████████

██████████████████

██████████████████████

████████

██████████████████

██████████████████████

████████████████████████████

████████████████████████████████████

████████████

██████████████████████

█

████████████████████████████████████████

████████████████

4

███████████████

███████████████████████████████ Mr. Thompson also could not ███████

██████████████████████████████████████████ Mr. Thompson could not

even remember █████████████████████████████ Further, Mr. Thompson could

not confirm that ████████████████████████████████████████████

 Mr. Thompson proved to be particularly unreliable and demonstrated a complete lack of candor in his deposition. In addition to the above example, Mr. Thompson consistently evaded (even refusing to answer) simple questions. For example, Mr. Thompson refused to answer the simple, straightforward question of █████████ █████████████████████████████, evaded simple questions about █████████ █████████████████████████████████████, inexplicably claimed ████ ████████████████████████████████████████████████, and ████████████████████████████████████████.

 As may be expected given the nature of their creation, the Declarations are riddled with inaccuracies. For example, in his Declaration, Danny Green claimed that "[n]either Mr. Hayden nor any tattooist has ever contacted me about this lawsuit." (Green Decl., ¶ 16, Dkt. # 101-3.) But in his deposition, Mr. Green confirmed this statement is false. Mr. Green testified that █ ████████████████████████████████████████████████████████ █████████████████████████ In fact, ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █

5

In another example, Mr. Green stated in his Declaration that he "frequently appear[s] in media, such as televised broadcasts of basketball games, television shows, movies, and video games, with many of my tattoos showing." (Green Decl., ¶ 12.) But in his deposition, Mr. Green readily admitted ███████████████████████████████████████████████████████ ███████████

What is more, after learning of all the instances in which Mr. Hayden has been paid to release his rights in Mr. James's tattoos, Mr. Green admitted that ███████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████

In Mr. Thompson's Declaration, he claims that ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ Mr. Thompson then claimed in his deposition that, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ However, upon simply being shown a screenshot of his avatar from an NBA 2K game, he readily admitted that ████████████████████████████ █████ █████████████

████████████████████████████████████████ provide insight into their motivations for signing the Declarations and demonstrate a bias towards Take-Two. Mr. Green testified that

---

[3] In addition to Mr. Thompson admitting that ████████████████████████████████████ Mr. Green also corroborated the fact that ████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████

6

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████

Even more troubling, Mr. Green testified that ████████████████████████████

███████████████████████████████████████████████████████████

████ If this is true, ██████████████████████████████████████████ in violation of Federal Rules of Civil Procedure 45 and 30, and Mr. Green's Declaration should be stricken and Defendant's arguments in reliance thereon completely disregarded.

In sum, the Player Declarations ████████████████████, not carefully reviewed by the Players, contain numerous inaccuracies, and the Players are clearly financially biased to support Take-Two. These lawyer-written Declarations should not be accorded any weight in support of Take-Two's Motion. At a bare minimum, they do little more than aver facts critical to Defendants' position that are hotly disputed by Mr. Hayden (and should be weighed by a trier of fact). This alone is enough to deny Take-Two's summary judgment motion related to its affirmative defenses relying on the Players' Declarations. *Dawson v. Dorman*, 528 F. Appx. 450, 452 (6th Cir. 2013) ("[S]ummary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant's witnesses.").

**B. The NBA Players' testimony supports Mr. Hayden's sworn testimony that he did not intend to grant an implied license that would permit Take-Two to copy his Asserted Works in video games.**

Mr. Hayden's intent is paramount in deciding whether he granted the Players an implied license that would permit Take-Two to recreate his Asserted Works on digital avatars. *See Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998); *Murphy v. Lazarev*, 589 Fed. Appx. 757, 765 (6th Cir. 2014); *Robert L. Stark Enterprises, Inc. v. Neptune Design Group, LLC*, No. 1:16 CV 264, 2017 WL 1345195, at *10 (N.D. Ohio Apr. 12, 2017). And although Take-Two would like to ignore it,[4] Mr. Hayden's sworn testimony is an important factor in determining his intent, especially where it is corroborated by other evidence in the record. *See Johnson*, 149 F.3d at 500 (considering copyright owner's testimony about his intent in finding no implied license). At the very least, Mr. Hayden's sworn testimony itself raises a disputed issue of fact as to Defendants' implied license defense. Thus, Defendants' Motion should be denied for this reason alone.

Mr. Hayden "did not intend to give any of the athletes, LeBron James, Danny Green, or Tristan Thompson, the right to authorize third-parties to recreate the Asserted Works in video games." (Hayden Decl., ¶ 27, Dkt. # 109-49.) As Mr. Hayden explains in his Declaration, a third-party recreating the Asserted Works in video games was not even foreseeable at the time: "I had no reason to believe the athletes thought they had the right to authorize third-parties to recreate the Asserted Works in video games[.] None of the Players told me that they—or digital avatars constructed to look like them—appeared in video games at all, let alone with their tattoos." (*Id.*) "I was not even aware when I created and inked the Asserted Works that video game companies were capable of re-creating my tattoos on avatars of players, let alone to the degree of clarity and

---

[4] In its Reply Brief, Take-Two discounts Mr. Hayden's sworn declaration, claiming that "his 'subjective intentions . . . are not relevant[,]'" quoting a case from the Northern District of California. (Reply, pg. 14.) But Take-Two's reliance on out-of-circuit case law, which is not adopted by the Sixth Circuit (*see, e.g.*, *Johnson*, 149 F.3d at 500), including Take-Two's strict adherence to the three-part implied license test set forth in *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996), should be given no weight.

8

accuracy they do today." (*Id.*, *see also* ¶ 30 ("The graphics of Take-Two's NBA 2K video games at that time were nothing like they are today.").) Under *Johnson*, the Court should deny Defendants' Motion on its implied license issue in view of Mr. Hayden's declaration alone. However, the Players *corroborated* Mr. Hayden in their depositions—further putting the nail in the coffin of Defendants' implied license defense and Motion.

Mr. Thompson, for example, confirmed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And Mr. Green corroborated Mr. Hayden's understanding of the disparity in NBA 2K graphics when the Asserted Works were inked compared to the present NBA 2K games. Mr. Green testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[5] ▮▮▮▮▮▮▮▮▮▮ Before then, tattoos were not recognizable: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Finally, Mr. James, whom Mr. Hayden inked between 2007 and 2008, could not recall ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[6]

---

[5] Mr. Green testified, correcting his Declaration, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[6] Mr. James also notably acknowledged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9

Given that Mr. Hayden has not and does not play video games (*id.* at 39:9–20; Ex. F, Hayden Dep., 156:18–157:6), perhaps the most important consideration is that ███████ ███████████████████████████████████████████████████████████. Mr. James and Mr. Green both confirmed that ███████████████████████████████████ ██████████████████████ And Mr. Thompson could not recall ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ Moreover, Mr. Green acknowledged that ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████

This testimony confirms that Mr. Hayden would have had *no reason* to expect the Asserted Works would be recreated by a third-party video game company when he inked the tattoos. Thus, there is now considerable evidence corroborating Mr. Hayden's state of mind when he inked the Players.

Take-Two has not identified a single case in which a court found an implied license where the use in question was not foreseeable by the copyright holder, let alone unforeseeable by both the copyright holder *and* the purported licensee.[7] Take-Two argues that Mr. Hayden need not have contemplated the particular use in question to have impliedly licensed such use, but that is based on a misreading of *Johnson*. (Reply, pg. 12, n. 12.) The Sixth Circuit in *Johnson* was clear that there was no implied license in that case because, "[p]ut simply, Johnson's drawings

---

[7] *Solid Oak*, in particular, is distinguishable given that the tattoo artists expressly testified that they *did* intend to grant a license covering video games. (*See* Cornett Decl., ¶ 15, Dkt. # 85-2; *see also id.*, ¶ 21; Wright Decl. ¶ 10, Dkt. # 85-2).

10

*were used in a way he never intended*[.]" *Johnson*, 149 F.3d at 501 (emphasis added). This is precisely the case here. What is more, the Sixth Circuit in *Johnson* explicitly distinguished two cases on which *Take-Two* relies (*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) and *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir. 1990)),[8] because the facts in those cases "amply demonstrate that the copyright owners intended that their copyrighted works be used in the manner in which they were eventually used." *Johnson*, 149 F.3d at 501–502. Unlike those cases, there is ample evidence from Mr. Hayden and the Players that when Mr. Hayden inked the Asserted Works, neither the Players nor Mr. Hayden contemplated that the Asserted Works would be recreated by a third-party in video games.

Because this fact is unavoidable, Take-Two has tried to move the goal, suggesting the issue is about the Players appearing in—using Take-Two's vague term—"media." (*See*, *e.g.*, Reply, pg. 2.) But this case is not about photographs appearing in the newspaper or videos appearing on SportsCenter. This case is about whether Mr. Hayden granted the Players an implied license that would authorize them to grant third-parties the right to *recreate the Asserted Works on digital avatars in video games*.

For the reasons stated above and in Mr. Hayden's Opposition,[9] there thus cannot be an implied license of the scope Take-Two alleges.[10] At minimum there are factual disputes as to Mr. Hayden's intent and the scope of any implied license, precluding summary judgment.

---

[8] Take-Two also cites *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010), claiming that an implied license was found "where an artist knew manufacturer sought media exposure and did not expressly limit use of work," but Take-Two leaves out the fact that the court *denied summary judgment because there were questions of fact as to whether the accused infringer exceeded the scope of the implied license*.
[9] Dkt. # 109, pp 19–23.
[10] Take-Two also relies on the now-excluded opinion of Dr. Jablonski for the proposition that the "[t]attoo industry practice" is that "[o]nce a tattoo has been inked . . . the tattooist exercises no control over it." (Motion, pg. 24; Reply, p. 13.) This is yet another reason Take-Two has not submitted sufficient undisputed evidence that Mr. Hayden intended to grant an implied license permitting Take-Two's copying warranting summary judgment.

11

### C. The NBA Players' testimony confirms that Mr. Hayden's Asserted Works are creative and original.

In attempting to convince the Court that its unmitigated copying is "fair," Take-Two alleges that Mr. Hayden's Asserted Works should only get "thin" copyright protection because they are not, in Take-Two's opinion, creative enough. (*See* Motion, pp. 2, 16.) But Take-Two's assessment misses the point of the fair-use second factor (the nature of the copyrighted work), which is to acknowledge that there is "a greater need to disseminate *factual works* than works of fiction or fantasy." *Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012) (emphasis added). Under the second factor, the court must evaluate "the extent to which [the work] is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination[.]" *Id.* Take-Two makes *no claim* that Mr. Hayden's works have any factual aspect to them. Rather, Take-Two conflates the issue of the works' protectability with fair use. (*See* Brief, pp. 15–17.) Under the fair use doctrine, however, Mr. Hayden's creative, visual artworks are precisely the type of works entitled to broad copyright protection.

Notwithstanding the fact that Take-Two is misapplying fair-use law in its analysis, Take-Two is simply wrong in reducing Mr. Hayden's artistry to "common tropes" and "common elements." (*See* Brief, pp. 2, 16.) Danny Green, for example, testified openly that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Mr. Green affirmed that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Mr. Green and Mr. James, in fact, both admitted that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

12

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████ Mr. Green also explained that ████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████ Mr. James also acknowledged

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████, and admitted that ███████████████████████████████████████

████████████.

The Players' testimony also raises additional questions of fact related to Take-Two's claims that the Lion and Brother's Keeper tattoos are not entitled to copyright protection because they are allegedly not original. (*See*, *e.g.*, Brief, pp. 27–29.) As to the Lion tattoo, although Mr. James testified that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████," ████████████ And as to the Brother's Keeper tattoo, Mr. Thompson acknowledged that █████████████████████████████████████████

████████████████████. Take-Two does not, in fact, deny that the various elements of the Brother's Keeper tattoo are, at minimum, uniquely combined and arranged on Mr. Thompson's chest, creating an original tattoo as a whole.

---

[11] Moreover, despite Take-Two's counsel questioning Mr. James during the deposition, he was never shown the Venetian logo and asked to verify if it was on the playing card he showed Mr. Hayden, thus raising a question of fact as to Take-Two's copying allegations.

13

The Players' testimony thus raises disputed issues of fact as to the creativity (and thus Take-Two's fair-use defense) and originality of Mr. Hayden's Asserted Works, precluding summary judgment on these issues.

### III.   CONCLUSION

In short, the Players' testimony during their depositions undermines the credibility and trustworthiness of their Declarations, which alone raises disputed issues of fact. The Players did ███████████████, contributed little-to-nothing in their content, and have a clear bias towards supporting Take-Two because of their ███████████████████. What is more, the Players' deposition testimony corroborates and supports Mr. Hayden's sworn statements attesting to the fact that he did not and could not have intended to grant an implied license that would permit a third-party to recreate the Asserted Works in video games. Moreover, the Players' testimony also substantiates the disputed issues of fact as to the creativity and originality of Mr. Hayden's Asserted Works. For the reasons set forth above and in Mr. Hayden's Opposition Brief, Dkt. # 109, Take-Two's Motion should be denied.

Dated: July 8, 2022　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　By: */s/ Andrew Alexander*
　　　　　　　　　　　　　　　　　　　　　John S. Cipolla (Ohio Bar No. 0043614)
　　　　　　　　　　　　　　　　　　　　　Daniel McMullen (Ohio Bar No. 0034380)
　　　　　　　　　　　　　　　　　　　　　Andrew Alexander (Ohio Bar No. 0091167)
　　　　　　　　　　　　　　　　　　　　　Dustin Likens (Ohio Bar No. 0097891)
　　　　　　　　　　　　　　　　　　　　　CALFEE, HALTER & GRISWOLD LLP
　　　　　　　　　　　　　　　　　　　　　The Calfee Building
　　　　　　　　　　　　　　　　　　　　　1405 East Sixth Street
　　　　　　　　　　　　　　　　　　　　　Cleveland, Ohio 44114-1607
　　　　　　　　　　　　　　　　　　　　　Telephone: (216) 622-8200
　　　　　　　　　　　　　　　　　　　　　Facsimile: (216) 241-0816
　　　　　　　　　　　　　　　　　　　　　jcipolla@calfee.com
　　　　　　　　　　　　　　　　　　　　　dmcmullen@calfee.com
　　　　　　　　　　　　　　　　　　　　　aalexander@calfee.com
　　　　　　　　　　　　　　　　　　　　　dlikens@calfee.com

　　　　　　　　　　　　　　　　　　　　　*Of Counsel*

　　　　　　　　　　　　　　　　　　　　　Kimberly A. Pinter (Ohio Bar No. 0084277)
　　　　　　　　　　　　　　　　　　　　　CALFEE, HALTER & GRISWOLD LLP
　　　　　　　　　　　　　　　　　　　　　The Calfee Building
　　　　　　　　　　　　　　　　　　　　　1405 East Sixth Street
　　　　　　　　　　　　　　　　　　　　　Cleveland, Ohio 44114-1607
　　　　　　　　　　　　　　　　　　　　　Telephone: (216) 622-8200
　　　　　　　　　　　　　　　　　　　　　Facsimile: (216) 241-0816
　　　　　　　　　　　　　　　　　　　　　kpinter@calfee.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's Electronic Filing System to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

*/s/ Andrew Alexander*
One of the attorneys for Plaintiff
