UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HAYDEN, | ) | CASE NO. 1:17CV2635 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| 2K GAMES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #96*SEALED &

ECF DKT #102*PUBLIC VERSION) of Defendants 2K Games, Inc. and Take-Two

Interactive Software, Inc. to Exclude Testimony, Argument or Evidence Regarding the Survey

and Related Opinions of H. Tolga Bilgicer.  For the following reasons, the Motion is denied.

## I. BACKGROUND

Plaintiff James Hayden filed his original Complaint on December 18, 2017.  His

Fourth Amended Complaint was filed on August 19, 2019, alleging copyright infringement by

Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.  Defendant Take-Two is

a worldwide developer, publisher and marketer of interactive entertainment and video games.

Plaintiff alleges that he is the tattoo artist who inked the copyrighted Tattoos on NBA players Danny Green, LeBron James and Tristan Thompson, individuals depicted in Take-Two's popular basketball simulation series NBA 2K.

Dr. H. Tolga Bilgicer is an Associate Principal in the Chicago office of Charles River Associates, Inc. ("CRA"), an economic, financial and strategic consulting firm headquartered in Boston, Massachusetts. Prior to joining CRA, Dr. Bilgicer was an economic and financial consultant at Analysis Group and Cornerstone Research — litigation consulting firms providing economic and financial consulting and expert testimony services.

Dr. Bilgicer earned an MBA from Istanbul Bilgi University. He also holds an MA in Economics with Honors from Syracuse University and a Ph.D. in Marketing from Columbia University in New York.

His fields of expertise are consumer behavior, consumer decision-making, retail channel optimization, and marketing management. He describes himself as an expert in survey methodology and evaluation. As a consultant to major companies, he has conducted, supervised, or evaluated over 50 surveys.

Plaintiff retained Dr. Bilgicer to review and opine on the NBA 2K Video Game Survey Report of E. Deborah Jay, Ph.D., dated May 20, 2021, and on the reliability and validity of the survey designed and conducted by Dr. Jay. He was also asked to determine whether the realistic tattoos on the avatars of NBA players were a reason that consumers purchased the NBA 2K16, the NBA 2K17, the NBA 2K18, the NBA 2K19, the NBA 2K20 and the NBA 2K Mobile games ("Accused Games") and to evaluate consumers' additional preferences in relation to these games.

-2-

In his Report (ECF DKT #96-4 *SEALED at 10-11) provided on July 1, 2021, Dr. Bilgicer summarizes his opinions on the Jay Survey:

- Dr. Jay's design and implementation of her survey are fundamentally flawed and her improper survey questions make her results unreliable.

- Dr. Jay's treatment of her results, inclusion of certain invalid respondents, ranking of responses and disregard of answers to open-ended questions are unfounded.

- Dr. Jay's results contradict the evidence from Defendants' internal documents and from publicly-available sources.

To counter the purported flaws in the Jay Report, Dr. Bilgicer conducted his own survey to measure whether tattoos are a reason consumers buy NBA 2K games.  He arrived at these conclusions.  (*Id*. at 11-12):

- "Realism of NBA players" is a reason for purchasing NBA 2K games for 55 percent (or 220 respondents out of the 401 total survey sample) of the survey's respondents.

- Of the respondents who selected "realism of NBA players" as a reason for purchasing NBA 2K games, 23 percent further identified "realistic tattoos" as a reason for purchasing NBA 2K games.

- Survey results also show that respondents frequently use the zoom in/out feature when playing NBA 2K games; LeBron James is a frequently-played NBA player relative to other prominent players; the Los Angeles Lakers are the most frequently-played NBA team out of a select number of teams; respondents also frequently played with Danny Green, or Tristan Thompson, as well as with the Cleveland Cavaliers, Boston Celtics, and Philadelphia 76ers.

- The empirical evidence from the survey shows that 45 percent of respondents purchase NBA 2K games before the game's release or within the first month of the game's release.  In addition, over 80 percent of the respondents indicated that they purchase NBA 2K games for themselves, rather than buying them as gifts.

Defendants move for the exclusion of Dr. Bilgicer's opinions and survey results because they are flawed, unreliable and misleading.  Defendants argue that this is the first time Dr. Bilgicer has submitted an expert report for litigation purposes and that he has never testified as an expert on survey methodology.

For evidence of consumers' reasons for purchasing NBA 2K to be relevant, in Defendants' view, it needs to inform the factfinder whether consumers were buying the game for Plaintiff's six Tattoos.  The Bilgicer Survey asked whether users bought NBA 2K games for tattoos generally, not for Plaintiff's six Tattoos on LeBron James, Tristan Thompson and Danny Green.  Dr. Bilgicer's conclusions would confuse and mislead the jury, as these results relate to works that are not at issue.  The Bilgicer Survey does not actually provide information on whether any profits from sales of NBA 2K are attributable to the alleged infringement of Plaintiff's six specific copyrighted Tattoos.

In addition, Dr. Bilgicer's survey methodology is flawed.  Dr. Bilgicer departed from established survey principles.  He exclusively asked closed-ended, leading questions.  Raising the subject of tattoos in a list of answer choices, as the Bilgicer Survey did, was highly suggestive.  The Bilgicer Survey did not give respondents the opportunity to respond "don't know" to key survey questions; so, they were forced to randomly guess.  Dr. Bilgicer did not use a control group and did not utilize the accepted survey practice for a control question.

Dr. Bilgicer's conclusions that tattoos motivated sales of NBA 2K are misleading and not supported by survey results.  Respondents allocated very little or no value to "realistic tattoos on the NBA Players."

In opposition, Plaintiff asserts that the Bilgicer Survey was designed to fix critical flaws in the Jay Survey and that the results are highly relevant to this case.  One of the particular flaws in the Jay Survey is that Dr. Jay ignored the possibility that individuals may buy the Accused Video Games because they value accurate tattoos on *all* the NBA players, including the Asserted Copyrights on LeBron James, Tristan Thompson, and Danny Green.

Surveys incorporating close-ended questions indisputably have been accepted in many courts; and in fact, Dr. Jay used close-ended question in her own survey.

Dr. Bilgicer did give respondents the opportunity to respond "don't know," and did incorporate a mechanism to filter out "noise."

Dr. Bilgicer's Survey is not misleading and the results answer the correct question: whether tattoos were *a* reason consumers bought the Accused Video Games.

Plaintiff insists that the Bilgicer Survey is relevant.  In this Copyright Infringement case, Plaintiff bears the burden of demonstrating a "reasonable relationship" between Defendants' gross revenues and infringement.  The fact that "realism of tattoos on the NBA players" is one reason that consumers purchased the NBA 2K Games is relevant to whether Defendants' gross revenue is reasonably related to Plaintiff's Asserted Copyrights.

With regard to the accusation that the Bilgicer Survey questions were impermissibly leading, Plaintiff asserts that the appropriate inquiry is whether Dr. Bilgicer's questions improperly suggested that there was a "right answer."  Merely raising the subject of tattoos

-5-

among multiple answer choices is not highly suggestive; and the options of "other" and "don't know" provided in some of the questions alleviated that risk.

## II. LAW AND ANALYSIS

### Expert Testimony

Pursuant to Federal Rule of Evidence 702, an expert by virtue of knowledge, skill, experience, training or education may provide testimony to assist the trier of fact to understand the evidence or to determine a fact in issue if the expert testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has applied the principles and methods reliably to the facts of the case.

The standard set in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) requires "that an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and that the expert appropriately "fits" the facts of the case into the theories and methods he or she espouses." *Redmond v. United States*, 194 F.Supp.3d 606, 615 (E.D. Mich. 2016) (citing *Daubert*, 509 U.S. at 591-93). "[E]xpert testimony is not admissible unless it will be helpful to the factfinder." *Redmond, id.* Expert testimony is not helpful when it is unreliable or irrelevant or "when it merely deals with a proposition that is not beyond the ken of common knowledge." *Id.* "The proponent of expert testimony must establish all the foundational elements of admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

The objective of *Daubert*'s "gatekeeping" function is to ensure the reliability and

-6-

relevancy of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Supreme Court has held this "gatekeeping" obligation applies not only to scientific testimony, but to all expert testimony. *Id.* at 147. Courts are not required to hold a formal hearing on *Daubert* challenges. *See Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir.1999). "[N]o matter how good" experts' "credentials" may be, they are "not permitted to speculate." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) *quoting Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

To reiterate, an expert may testify in the form of an opinion if it will assist the trier of fact and if the testimony is the product of reliable principles and methods. Federal Rule of Evidence 702; *Redmond*, 194 F.Supp.3d at 614-615. The Court finds, upon consideration of Dr. Bilgicer's Report and Survey, that his opinions are reliable, relevant and helpful to the factfinder.

**Surveys**

> "A survey need not be perfectly conducted for testimony concerning its results to be admissible. So long as the expert's testimony and the underlying survey have probative value after all the survey's deficiencies are taken into account, testimony concerning the results of the survey that meets the basic requirements of usefulness and reliability is admissible into evidence, and the trier of fact may accord it the weight it deems proper." *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 45 F.Supp.3d 724, 754 (N.D.Ohio 2014), quoting 4 Weinstein's Federal Evidence § 702.06[3] (2nd ed. 1997).

"The important thing is not that experts reach the right conclusion, but that they reach it via a sound methodology." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 675 (6th Cir. 2010); *see also Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) ("[c]hallenges to survey methodology go to the weight of a given survey, not its admissibility.").

-7-

"The relevant case law counsels that—subject to the Court's overriding gatekeeping function under *Daubert* — errors in survey methodology are more properly directed against the weight a jury should give the survey, rather than overall admissibility." *Innovation Ventures, LLC v. NVE, Inc*., 90 F.Supp.3d 703,720–21 (E.D. Mich. 2015) (citations omitted). *See also Leelanau Wine Cellars, Ltd. v. Black & Red, Inc*., 502 F.3d 504, 518 (6th Cir. 2007).

The jury is capable of deciding whether any aspect of Dr. Bilgicer's Survey methodology is deficient and should be disregarded.  Although Defendants have identified potential weaknesses in Dr. Bilgicer's Survey and opinions, "the proper venue for challenging these weaknesses is cross-examination, not exclusion."  *In re Whirlpool,* 45 F.Supp.3d at 763.

### III. CONCLUSION

Acknowledging its evidentiary gatekeeping obligations, but equally wary of usurping the role of the jury, the Court denies the Motion (ECF DKT #96*SEALED & ECF DKT #102*PUBLIC VERSION) of Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. to Exclude Testimony, Argument or Evidence Regarding the Survey and Related Opinions of H. Tolga Bilgicer.


**IT IS SO ORDERED.**

**DATE: July 15, 2022**

<u> s/Christopher A. Boyko            </u>
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**

-8-