# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES HAYDEN, | Case No. 1:17-cv-02635 |
| Plaintiff, | Judge Christopher A. Boyko |
| vs. | |
| 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC., | |
| Defendants. | |

## PLAINTIFF'S TRIAL BRIEF

# TABLE OF CONTENTS

I. STATEMENT OF FACTS .................................................................................................. 1
II. DISCUSSION OF CONTROLLING LAW ....................................................................... 3
    A. Copyright Infringement............................................................................................ 3
    B. Fair Use .................................................................................................................... 3
    C. Implied License........................................................................................................ 5
    D. *De Minimis* Use ....................................................................................................... 6
    E. Damages................................................................................................................... 7
III. PROPOSED WITNESS LIST ........................................................................................... 8
IV. EXHIBIT INDEX .............................................................................................................. 9
V. DISCUSSION OF EVIDENTIARY ISSUES.................................................................... 9
    A. Burden of Proof in the Validity and Ownership of Copyrights in the Asserted Tattoos ................. 9
    B. Burden of Proof in Establishing Take-Two's Profits............................................. 10
    C. Declaration Testimony of LeBron James, Danny Green, and Tristan Thompson ......................... 11
    D. Third-Party Declarations and Deposition Testimony from Other Litigations ............................... 12
    E. Venetian Trademark and Playing Card.................................................................. 13
    F. Policy Impact of a Finding of Infringement.......................................................... 13
    G. Mr. Hayden's Own Tattoos.................................................................................... 13
VI. ESTIMATE OF TRIAL LENGTH .................................................................................. 14
VII. PROPOSED VOIR DIRE QUESTIONS ......................................................................... 14
VIII. JURY INSTRUCTIONS .................................................................................................. 14
IX. SPECIAL INTERROGATORIES AND VERDICT FORMS......................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812 (S.D. Ill. 2020) .......... 5, 7

*American Geophysical Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994) ..................................... 5

*Balsley v. LFP, Inc.*, 691 F.3d 747 (6th Cir. 2012) ........................................................... 4, 5, 8, 11

*Bell v. Willmott Storage Services, LLC*, 12 F.4th 1065 (9th Cir. 2021) ......................................... 7

*Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470 (6th Cir. 2007) .............................. 8

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ............................................................. 4

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) .................................................... 3

*Crispen v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086 (C.D. Cal. 2011) ................................ 6

*ECIMOS, LLC v. Carrier Corporation*, 971 F.3d 616 (6th Cir. 2020) ............................... 7, 8, 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .................................................... 3

*FenF, LLC v. Healio Health Inc.*, Case No. 5:08CV404, 2009 WL 10688713 (N.D. Ohio Sep. 4, 2009) ......................................................................................................................... 6

*Gordon v. Nextel Communications and Mullen Advertising, Inc.*, 345 F.3d 922 (6th Cir. 2003) ............................................................................................................................... 7

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985) .......................... 5, 10

*Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093 (6th Cir. 1995) ............................................................................................................................... 3, 9

*Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998) ............................................................................ 6

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) .............................................................. 3

*Malibu Media, LLC v. Pontello*, Case No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) ......................................................................................................................... 6

*Murphy v. Lazarev*, 589 Fed. Appx. 757 (6th Cir. 2014) .............................................................. 6

*Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381 (6th Cir. 1996) ....................................................................................................................... 3, 4, 5

*Robert L. Stark Enterprises, Inc. v. Neptune Design Group, LLC*, No. 1:16 CV 264, 2017 WL 1345195 (N.D. Ohio Apr. 12, 2017) ..................................................................... 6

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ...................................... 5

*Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004) ..................................................... 3

*Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574 (6th Cir. 2007) ................. 4, 5

**Statutes**

17 U.S.C. § 101 ............................................................................................................................ 10

17 U.S.C. § 102 .............................................................................................................................. 3

17 U.S.C. § 106 ............................................................................................................................. 6

17 U.S.C. § 107 ......................................................................................................................... 3, 4

17 U.S.C. § 410(c) ....................................................................................................................... 9

17 U.S.C. § 504(a) ....................................................................................................................... 7

17 U.S.C. § 504(b) .................................................................................................................. 7, 11

Pursuant to Judge Boyko's standing Trial Order (¶ 1), Plaintiff, James Hayden ("Hayden") submits this Trial Brief.

## I. STATEMENT OF FACTS

In this copyright infringement action, Mr. Hayden has asserted six copyrights he owns in tattoos that he created and inked on three NBA players: LeBron James, Tristan Thompson, and Danny Green (the "NBA Players"). The six copyrighted tattoos (the "Asserted Tattoos") consist of three tattoos Mr. Hayden created and inked on Mr. James ("Stars" on Mr. James's upper left shoulder, "Gloria" on Mr. James's upper right arm, and "Lion" on Mr. James's chest), two tattoos Mr. Hayden created inked on Mr. Green ("Fire" on Mr. Green's upper left arm and "Scroll" on Mr. Green's inner right arm), and one tattoo Mr. Hayden created and inked on Mr. Thompson ("Brother's Keeper" on Mr. Thompson's chest). After creating and inking them, Mr. Hayden procured copyright registrations from the US Copyright Office for each Asserted Tattoo.

Mr. Hayden will show at trial that each of the Asserted Tattoos are original and creative and entitled to full protection under the Copyright Act. Although each Asserted Tattoo speaks for itself, Mr. Hayden will testify about the substantial artistic skill it took to create and ink each of the Asserted Works on the three-dimensional bodies of the NBA Players and the numerous accolades and recognition he has received for his artistry. The NBA Players themselves will also confirm Mr. Hayden's artistic skill and creativity (through either live or deposition testimony).

Mr. Hayden has accused Defendants, Take-Two Interactive Games, Inc. and 2K Games, Inc. (collectively, "Take-Two"), of infringing his copyrights by replicating, adapting, and distributing the Asserted Tattoos in its NBA 2K video games. Indeed, Take-Two copied each of the Asserted Tattoos "wholesale"—completely and carefully recreating every detail of the Asserted Tattoos—and Take-Two cannot deny this. Take-Two does not dispute that it produced

digital avatars intended to look like the NBA Players in its games, "including with the tattoos they bear in real life." (Answer, Dkt. # 35, ¶¶ 112, 120, 128, 135, 142.) Because it cannot be disputed that Mr. Hayden owns copyrights in the Asserted Tattoos and that Take-Two copied the Asserted Tattoos in its NBA 2K video games, Mr. Hayden has moved for partial summary judgment on ownership and copying. If necessary, however, Mr. Hayden will present direct and indirect evidence that Take-Two intentionally copied his Asserted Tattoos. Further, Take-Two also cannot deny that it has distributed millions and millions of copies of its NBA 2K video games embodying these infringing derivatives of the Asserted Works.

Mr. Hayden will also present evidence demonstrating that Take-Two's copying was not "fair"—rather, it was exploitative, intentional, and undeniably commercial in nature. He will also present evidence establishing that Take-Two's verbatim copying is visible and ubiquitous throughout the gameplay of the Accused Games, contradicting Take-Two's claim that its copying is *de minimis*. Further, Mr. Hayden will present evidence demonstrating that he had *no* intention of authorizing a third-party video game maker to recreate his Asserted Tattoos for massive commercial gain when he created and inked the Asserted Tattoos, refuting Take-Two's claim that its copying was authorized.

Indeed, Take-Two has profited immensely from the NBA 2K games at issue in this case [1] that contain verbatim copies of the Asserted Tattoos. Mr. Hayden is seeking damages under 17 U.S.C. § 504 in the form of actual damages and Take-Two's profits. Mr. Hayden will establish at trial Take-Two's gross profits for the Accused Games and that a significant portion of those profits are attributable to Take-Two's illicit copying.

---

[1] The NBA 2K games at issue ("Accused Games") are NBA 2K16, NBA 2K17, NBA 2K18, NBA 2K19, NBA 2K20, and NBA 2K Mobile.

## II. DISCUSSION OF CONTROLLING LAW

### A. Copyright Infringement

To establish copyright infringement, Mr. Hayden must prove, "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (*citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

The owner of the copyright is the author of the work—in other words, "the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (*citing* 17 U.S.C. § 102). And a certificate of copyright "creates a presumption of the copyright's validity." *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995). "Although the presumption may be rebutted, it is the burden of the party challenging the copyright to do so." *Id.*

### B. Fair Use

Take-Two claims that its copying falls under the "fair use" exception. Take-Two has the burden of proving this defense. *Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, 1390 fn. 5 (6th Cir. 1996). The Copyright Statute created the "fair use" exception to "preserve the potential future use of artistic works for purposes of teaching, research, criticism, and news reporting." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003); 17 U.S.C. § 107 ("criticism, comment, news reporting, teaching . . ., scholarship, or research"). In determining fair use, the Copyright Act (§ 107) provides four factors that courts are to consider:

1. The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2. The nature of the copyrighted work;

3

3. The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4. The effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

In assessing the *first factor*, courts look to whether the infringing work is "transformative" and whether it is for "commercial or noncommercial purposes." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 582 (6th Cir. 2007). Where the purpose of copying is to "profit from the exploitation of the copyrighted material without paying the customary price," the Sixth Circuit routinely finds no fair use. *Balsley v. LFP, Inc.*, 691 F.3d 747, 758 (6th Cir. 2012); *see also, e.g.*, *Zomba*, 491 F.3d at 582 and *Princeton*, 99 F.3d at 1383 ("commercial exploitation of the copyrighted materials did not constitute fair use"). To be transformative, the new work must "add[] something new, with a further purpose or different character, altering the first with new expression, meaning or message[.]" *Zomba*, 491 F.3d at 582 (*quoting Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). Verbatim or facsimile copies of a work, conversely, "add[] nothing new to the original and accordingly ha[ve] virtually no transformative value." *Id.* at 582; *see also Princeton*, 99 F.3d at 1389 and *Balsley*, 691 F.3d at 759. Defendants here were admittedly striving to replicate the Asserted Tattoos as exactly as possible. "Where 'an original work is merely retransmitted in a different medium' . . . the work is not 'transformative.'" *Balsley*, 691 F.3d at 579.

In assessing the *second factor*, courts must evaluate "the extent to which [the work] is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination[.]" *Balsley*, 691 F.3d at 759. In evaluating the second fair use factor, at least one court, assessing facts very similar to this case, has found that "[t]he art of creating a

4

tattoo naturally entails creative and expressive efforts[,]". *Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812, 822 (S.D. Ill. 2020). The Asserted Tattoos are clearly creative, artistic works.

In assessing the ***third factor***, the more of what is taken, "the greater the affront to the interests of the copyright owner, and the less likely that a taking will qualify as a fair use." *Zomba*, 491 F.3d at 583; *see also Princeton*, 99 F.3d at 1389. "[C]opying an entire work militates against a finding of fair use." *Balsley*, 691 F.3d at 760.

In assessing the ***fourth factor***, the court must evaluate whether the copying, should it become "widespread, [] would adversely affect the potential market for the copyrighted work." *Princeton*, 99 F.3d at 1386 (*quoting Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 568 (1985)). Because Take-Two's use is commercial, it is Take-Two's burden to prove its copying does not harm the potential market for Mr. Hayden's tattoos. *Id.* at 1385. "[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Balsley*, 691 F.3d at 760 (*quoting Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)). In addition, where "the copyright holder clearly does have an interest in exploiting a licensing market—and especially where the copyright holder has actually succeeded in doing so —'it is appropriate that potential licensing revenues for []copying be considered in a fair use analysis.'" *Princeton*, 99 F.3d at 1387 (*quoting American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994)).

### C.  Implied License

Take-Two claims that its copying was authorized by Mr. Hayden via an implied license. Authorization to copy the Asserted Tattoo must come from Mr. Hayden, as he has the *exclusive* right to authorize others to reproduce, distribute, display and prepare derivative works from the

5

copyrighted work. 17 U.S.C. § 106. Although courts have held under certain circumstances, a copyright holder may convey a non-exclusive implied copyright license, such an implied license is "for a particular purpose." *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998). Implied licenses are not the norm—they are only found "in narrow circumstances." *FenF, LLC v. Healio Health Inc.*, Case No. 5:08CV404, 2009 WL 10688713, at *4 (N.D. Ohio Sep. 4, 2009); *see also, e.g.*, *Malibu Media, LLC v. Pontello*, Case No. 13-12197, 2013 WL 12180709, at *3 (E.D. Mich. Nov. 19, 2013) (same).

The key to finding an implied license is the intent of the copyright holder. *Murphy v. Lazarev*, 589 Fed. Appx. 757, 765 (6th Cir. 2014); *see also Robert L. Stark Enterprises, Inc. v. Neptune Design Group, LLC*, No. 1:16 CV 264, 2017 WL 1345195, at *10 (N.D. Ohio Apr. 12, 2017). The copyright owner's testimony as to his intent is relevant in determining this factor. *See Johnson*, 149 F.3d at 500 (considering copyright owner's testimony about his intent in finding no implied license). It is Take-Two's burden to prove (1) Mr. Hayden intended to grant the NBA Players an implied license, and (2) that such license's scope included the authority for the NBA Players to then permit third parties to recreate the Asserted Tattoo in video games. *See Crispen v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1093 (C.D. Cal. 2011) ("Where a license or its terms may be implied, finding there was an implied license does not end the inquiry. We must also ask what the scope of the license was, and whether [Defendant] exceeded it.")

### D. *De Minimis* Use

Take-Two claims its copying of the Asserted Tattoo does not constitute copyright infringement because it is *de minimis*. To establish its use is *de minimis*, Take-Two must prove by a preponderance of the evidence that their copying is so trivial that it cannot be found to be substantially similar to the copyrighted works. *Gordon v. Nextel Communications and Mullen*

6

*Advertising, Inc.*, 345 F.3d 922, 924 (6th Cir. 2003) Courts have rejected the *de minimis* use defense where the copying is "total" or "wholesale." *Bell v. Willmott Storage Services, LLC*, 12 F.4th 1065, 1079 (9th Cir. 2021) ("Wholesale copying or reproduction of another's protected work . . . by definition cannot be *de minimis* copying"). "In determining whether the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied, as well as the observability of the copyrighted work in the allegedly infringing work." *Gordon*, 345 F.3d at 924. In a case with facts *very* similar to those here—against *these same Defendants*—the U.S. District Court for the Southern District of Illinois found that recreating copyrighted tattoos on digital avatars was not *de minimis*: "The defense has been successfully invoked to allow copying of a small and usually insignificant portion of the copyrighted works, not the wholesale copying of works in their entirety as occurred here." *Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812, 823 (S.D. Ill. 2020).

### E. Damages

If Mr. Hayden prevails on his copyright infringement claim, he is entitled to recover "the copyright owner's actual damages *and* any additional profits of the infringer[.]" 17 U.S.C. § 504(a) (emphasis added).

"Actual damages" are the amount of damages Mr. Hayden suffered as a result of the infringement. *ECIMOS, LLC v. Carrier Corporation*, 971 F.3d 616, 631 (6th Cir. 2020). This may be measured, for example, by the "profits lost as a result of the infringement." *Id.* at 632.

In addition to actual damages, Mr. Hayden is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The Sixth Circuit has unambiguously explained the

7

plaintiff's burden in proving profits: "Plaintiffs have only one requirement: to prove Defendant's gross revenue." *ECIMOS*, 971 F.3d at 635 (*quoting Balsley*, 691 F.3d at 768). Although the plaintiff must show that the profits "have a reasonable relationship to the infringing activity," this burden is relatively low and may be established by demonstrating the profits of the broader work that encompasses the copyrighted work (*e.g.*, the total profits of an album that copied only a part of a single copyrighted song, *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 483 (6th Cir. 2007), the total profits of a magazine issue that copied a single copyrighted photograph, *Balsley*, 691 F.3d at 769). This burden, as the Sixth Circuit has clearly explained, should not be confused with the *defendant's* burden to "prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work[.]" *ECIMOS*, 971 F.3d at 634; *see also Balsley*, 691 F.3d at 767. Thus, Mr. Hayden must prove the gross revenue of the Accused Games, which use the Asserted Tattoos. Then it is Take-Two's burden to prove any deductible expenses and the elements of profit attributable to factors other than the copyrighted work. *Id.*

## III. PROPOSED WITNESS LIST

Mr. Hayden intends to call the following witnesses who will testify in his support:

| Witness | Brief Description of Subject Matter of the Testimony |
|---|---|
| James Hayden (Plaintiff) | Authorship, ownership, creation of the Asserted Tattoos; customs of tattoo industry; lack of intent for license; licensing history for his works; personal knowledge related to Accused Games. |
| Darren Palmer (Calfee employee who played and captured video footage of Accused Games submitted as exhibits to Opposition to Summary Judgment) | Creation and authentication of exhibits showing clips of Accused Games (Dkt # 109-2, 109-3, 109-4, 109-5, 109-6); personal knowledge related to gameplay of the Accused Games. |
| Justin Lenzo (Economic expert) | Commercial benefit of the Asserted Tattoos to Defendants; market formation in tattoo design |

8

| | |
|---|---|
| | licensing; analysis of Jay survey and Jay opinion; opinion submitted in support of Plaintiff's Opposition to Summary Judgment (Dkt. # 109-43). |
| Tolga Bilgicer (Survey expert) | Analysis of Jay survey and Jay opinion; survey results demonstrating that tattoos are a reason customers buy the Accused Games; opinion submitted in support of Plaintiff's Opposition to Summary Judgment (Dkt # 109-46). |
| Michal Malkiewicz (Damages expert) | Plaintiff's damages; Defendants' gross and net revenue; Defendants' gross and net profit; analysis of Malackowski opinions; Defendants' revenues and profits associated with tattoos and the Asserted Tattoos; opinions submitted in support of Plaintiff's Motion for Partial Summary Judgment (Dkt #93-11) and Opposition to Summary Judgment (Dkt # 109-47). |

## IV. EXHIBIT INDEX

Mr. Hayden has attached an index of all proposed exhibits along with a brief description of each exhibit attached as **Exhibit A.**

## V. DISCUSSION OF EVIDENTIARY ISSUES

Mr. Hayden anticipates the following evidentiary issues likely to arise at trial.

### A. Burden of Proof in the Validity and Ownership of Copyrights in the Asserted Tattoos

Mr. Hayden owns copyright registrations for all six Asserted Tattoos. He produced and submitted these registrations to this Court through his Motion for Partial Summary Judgment (Dkt. # 93-5–10). This accords Mr. Hayden a presumption in the validity and ownership of the Asserted Tattoos. 17 U.S.C. § 410(c); *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995).

Take-Two disputes this presumption (and seeks jury instructions related to the Asserted Works' validity that would *misplace* the burden on Mr. Hayden), apparently because it believes that the certificates of registration evidence a date of publication over five years before the Asserted Works were registered. This is wrong. None of the certificates of registration identify a date of publication; rather, each identifies the date of "completion." (*See*, Dkt. # 93-5–10.) For example, the registration for the "Gloria" tattoo states, "Year of Completion: 2007."[2] (Dkt. # 93-6.) Mr. Hayden contests Take-Two's allegation that any of the Asserted Works have been "published." The Copyright Act defines "publication" as: "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." The Act further states that "a public performance or display of a work does not of itself constitute publication." 17 U.S.C. § 101. And *Take-Two's* sale of its games cannot constitute publication, as the Supreme Court has made clear that the right of first publication belongs to the *copyright owner*. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 555 (1985). Accordingly, Mr. Hayden is entitled to a presumption of ownership and validity in the Asserted Tattoos, and it is Take-Two's burden to prove otherwise.

### B. Burden of Proof in Establishing Take-Two's Profits

The Copyright Act entitles a copyright owner to recover "any profits of the infringer that are attributable to the infringement" and not included in its actual damages, and explicitly assigns the burdens of proving same: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than

---

[2] And even accepting Defendants' plainly incorrect interpretation of the certificates of registration, the "Fire," "Scroll," and "Brother's Keeper's" years of completion were within five years of their effective dates of registration. (*See* Dkt # 93-8–10.)

the copyrighted work." 17 U.S.C. § 504(b). The Sixth Circuit has repeatedly confirmed this allocation of burdens. *See ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 634 (6th Cir. 2020); *Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012). Take-Two, however, argues that it is *Mr. Hayden's* initial burden to show the amount of Take-Two's profits that were attributable to the infringement and/or that *Mr. Hayden* must show a causal connection between Take-Two's profits and its infringement of the Asserted Tattoos.

While Mr. Hayden can and will demonstrate this at trial, if and as necessary, it is *not* his initial burden. Take-Two's contention has been expressly rejected multiple times by the Sixth Circuit. *ECIMOS*, 971 F.3d at 634 (this "position is directly refuted by both the text of 17 U.S.C. § 504(b) and the cases that have addressed it"); *Balsley*, 691 F.3d at 769. The Sixth Circuit has held that "Section 504(b) *unambiguously provides* that the burden on the copyright owner is 'to present proof *only of the infringer's gross revenue*' of the infringing product, while the infringer must show not only 'expenses' but also the amount of the 'profit attributable to factors other than the copyrighted work.'" *ECIMOS*, 971 F.3d at 635 (quoting *Balsley*, 691 F.3d at 767). This approach, prescribed by both statute and case law, is properly set forth in Mr. Hayden's proposed jury instructions.

### C. Declaration Testimony of LeBron James, Danny Green, and Tristan Thompson

Take-Two submitted declarations from LeBron James, Danny Green, and Tristan Thompson in support of its Motion for Summary Judgment. (*See* Dkt. # 101-2, 101-3, and 101-4.) Mr. Hayden then deposed each player on the substance of those depositions. Mr. Hayden objects to the use of the declarations at trial for all the reasons set forth in its Motion in Limine, including that they are inadmissible hearsay. (Dkt. # 169.) In addition, to the extent Take-Two calls the NBA Players as witnesses or attempts to introduce deposition testimony in lieu of

11

calling the NBA Players as witnesses, Mr. Hayden objects to certain topics and testimony for the reasons set forth in its Motion in Limine (Dkt. # 169). For example, in their declarations, the NBA Players make statements that would be (1) inadmissible speculation about Mr. Hayden's state of mind and his intentions in creating the Asserted Works and (2) inadmissible expert testimony about their legal "rights" in the Asserted Tattoos, licensing the Asserted Tattoos, and tattoo industry standards. Finally, to the extent Take-Two attempts to introduce the NBA Players' declaration testimony through their depositions, Mr. Hayden objects for the reasons set forth in his Motion in Limine (Dkt. # 169). At their depositions (and over repeated objection), Take-Two's counsel improperly just read the Players' declarations into the record. This artifice does not cure the hearsay nature of these otherwise demonstrably unreliable declarations (*see*, Supp'l Opp., Dkt # 162).

### D. Third-Party Declarations and Deposition Testimony from Other Litigations

For the reason set forth in his Motion in Limine (Dkt. # 169), Mr. Hayden objects to Take-Two referencing, introducing as evidence, eliciting testimony, or otherwise submitting evidence related to testimony from other tattoo artists not at issue in this litigation. For example, Take-Two has referenced third-party declarations (from Thomas Ray Cornett, DeShawn Morris, Justin White, and Gary Glatstein) and deposition testimony (e.g., from Catherine Alexander) from *Solid Oak Sketches, LLC v. 2K Games et al.* and *Alexander v. Take-Interactive Software, Inc., et al.* in its Motion for Summary Judgment (*see, e.g.*, Dkt. # 101). This testimony is hearsay, not relevant to the claims and defenses in this case, and far more prejudicial than probative. Accordingly, it should be excluded. (*See* Motion in Limine, Dkt. # 169.)

### E.  Venetian Trademark and Playing Card

For the reasons set forth in his Motion in Limine (Dkt. # 169), Mr. Hayden objects to Take-Two referencing, introducing as evidence, eliciting testimony, or otherwise submitting evidence related to an unauthenticated deck of playing cards purportedly taken from the "Venetian Resort" and a certain trademark registration for such Venetian Resort. Take-Two submitted the latter in its Motion for Summary Judgment and introduced the former as an exhibit in deposing Mr. Hayden. Neither document has been properly authenticated, and in fact no one with personal knowledge of the creation of the Asserted Works has stated that either document was used in the creation of any Asserted Works. Without proper authentication, these documents are inadmissible. (Motion in Limine, Dkt. # 169.)

### F.  Policy Impact of a Finding of Infringement

Take-Two has indicated in its briefing and elsewhere that it may present testimony and evidence at trial about the purported negative consequences a ruling in Mr. Hayden's favor would have on the markets for tattoos and video games and the public in general. (*See, e.g.*, Jablonski Op., Dkt. # 85-A.) For the reasons set forth in Mr. Hayden's Motion in Limine, such testimony and evidence should be excluded. The impact the decision in this case has on tattoo artists, tattoo recipients, video game producers, and the public is pure speculation, is not relevant to the instant dispute, and is more prejudicial than probative. It should thus be excluded. (Motion in Limine, Dkt. # 169.)

### G.  Mr. Hayden's Own Tattoos

Take-Two has indicated in its briefing and elsewhere that it may present testimony and evidence at trial about Mr. Hayden's own tattoos and whether he has sought permission from other tattoos artists when he appears in public or shows himself in social media. (Mot. for Summary J., Dkt. # 95, p. 7.) For the reasons set forth in Mr. Hayden's Motion in Limine, such

testimony and evidence should be excluded. At minimum it is irrelevant and more prejudicial than probative. It is undisputed that Mr. Hayden has never created or been depicted through an avatar in a video game or anything remotely similar thereto. His practices with regards to appearing in public and on social media is not relevant to any claim or defense in this case and should be excluded. (Motion in Limine, Dkt. # 169.)

### VI. ESTIMATE OF TRIAL LENGTH

Mr. Hayden estimates that this trial will require approximately five seven-hour trial days.

### VII. PROPOSED VOIR DIRE QUESTIONS

Mr. Hayden has attached his proposed *voir dire* questions as **Exhibit B.**

### VIII. JURY INSTRUCTIONS

Mr. Hayden and Take-Two have met and conferred to attempt to reach agreement on the instructions to be submitted to the jury. Mr. Hayden has attached as **Exhibit C** proposed jury instructions identifying the instructions that the parties have agreed on and any disputed instructions.

### IX. SPECIAL INTERROGATORIES AND VERDICT FORMS

Mr. Hayden has attached his proposed special interrogatories and verdict forms as **Exhibit D**.

Dated: August 1, 2022  Respectfully submitted,

By: */s/ Andrew Alexander*
John S. Cipolla (Ohio Bar No. 0043614)
Daniel J. McMullen (Ohio Bar No. 0034380)
Andrew W. Alexander (Ohio Bar No. 0091167)
Dustin D. Likens (Ohio Bar No. 0097891)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
aalexander@calfee.com
dlikens@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 1, 2022, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

                                                */s/ Andrew W. Alexander*
                                                One of the attorneys for Plaintiff