**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN, <br><br> Plaintiff, <br><br> **v.** <br><br> 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC., <br><br> Defendants. | CASE NO. 1:17-cv-02635-CAB |

## DEFENDANTS' OMNIBUS MOTION *IN LIMINE*

## TABLE OF CONTENTS

**Page**

I.  **MIL NO. 1 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT IMPLYING TAKE-TWO WITHHELD TELEMETRY DATA**...................................1

II.  **MIL NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING PLAINTIFF'S IRRELEVANT RELEASES AND PROJECTS**...................................2

III.  **MIL NO. 3 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S LICENSING OF OTHER WORKS**.........................7

IV.  **MIL NO. 4 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT REGARDING OTHER VIDEO GAME COMPANIES' AGREEMENTS**.................9

V.  **MIL NO. 5 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT CONCERNING PLAINTIFF'S OPINIONS ABOUT THE TATTOO INDUSTRY**...................................11

VI.  **MIL NO. 6 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT OF ACTUAL DAMAGES**...................................14

VII.  **MIL NO. 7 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S SALES OR REVENUE FROM UNACCUSED VIDEO GAMES**...................................15

VIII.  **MIL NO. 8 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S REVENUE FROM VIRTUAL CURRENCY**........17

IX.  **MIL NO. 9 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT ABOUT PLAINTIFF'S ALLEGED, UNDISCLOSED COMMUNICATIONS WITH ANY OF THE NBA PLAYERS**...................................19

X.  **MIL NO. 10 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT THAT RELIES ON PLAINTIFF'S EXPERT TESTIMONY THAT HAS BEEN EXCLUDED BY *DAUBERT* MOTIONS**...................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acuity Brands Lighting, Inc. v. Bickley*,
  No. 13 Civ. 366, 2015 WL 10551946 (E.D. Ky. Nov. 30, 2015)............................................14

*Asset Mktg. Sys., Inc. v. Gagnon*,
  542 F.3d 748 (9th Cir. 2008) ..................................................................................................4

*Authors Guild, Inc. v. HathiTrust*,
  755 F.3d 87 (2d Cir. 2014)......................................................................................................3

*Auto Konnect, LLC v. BMW of N. Am., LLC*,
  No. 18 Civ. 14019, 2022 WL 721526 (E.D. Mich. Mar. 9, 2022).........................................13

*Balsley v. LFP, Inc.*,
  691 F.3d 747 (6th Cir. 2012) ..........................................................................................17, 18

*Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*,
  596 F.3d 357 (6th Cir. 2010) ................................................................................................14

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006)....................................................................................................8

*Black & Decker v. Bosch Tools*,
  No. 04 Civ. 7955, 2006 WL 5156873 (N.D. Ill. Sept. 8, 2006) ............................................20

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006)....................................................................................................3

*Bouchat v. Baltimore Ravens Football Club, Inc.*,
  346 F.3d 514 (4th Cir. 2003) ................................................................................................18

*Brown v. Weber*,
  No. 11 Civ. 1390, 2014 WL 11531797 (W.D. Tenn. Jul. 11, 2014) ........................................4

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  No. 09 Civ. 261, 2014 WL 1350720 (W.D. Wisc. Apr. 4, 2014)...........................................11

*Easter Unlimited, Inc. v. Rozier*,
  No. 18 Civ. 06637, 2021 WL 4409729 (E.D.N.Y. Sept. 27, 2021)..........................................3

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985) ................................................................................................10

*Gordon v. Royal Palm Real Est. Inv. Fund I, LLLP*,
    No 09 Civ. 11770, 2022 WL 1431837 (E.D. Mich. May 5, 2022)..........................................13

*Kienitz v. Sconnie Nation LLC*,
    965 F. Supp. 2d 1042 (W.D. Wisc. 2013)................................................................................3

*Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc.*,
    No. 05 Civ. 70804, 2007 WL 1834714 (E.D. Mich. June 25, 2007)......................................1

*Manuel v. City of Chi.*,
    335 F.3d 592 (7th Cir. 2003) ..................................................................................................4

*Martinez v. Dart Trans, Inc.*,
    548 F. Supp. 3d 1107 (D.N.M. 2021) ......................................................................................2

*Morgutia-Johnson v. Hustedde*,
    No. 14 Civ. 127, 2015 WL 3507130 (E.D. Cal. June 3, 2015).............................................20

*Parillo v. Lowe's Home Ctrs., LLC*,
    No. 14 Civ. 369, 2017 WL 4124585 (S.D. Ohio Sept. 18, 2017)..........................................12

*Parker Hannifin Corp. v. Standard Motor Prods., Inc.*,
    No. 19 Civ. 00617, 2021 WL 5801850 (N.D. Ohio Dec. 7, 2021)..............................10, 12, 13

*Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*,
    338 F. App'x 329 (4th Cir. 2009) ..........................................................................................17

*Satija v. Permanent Gen. Assurance Corp. of Ohio*,
    No. 13 Civ. 82, 2014 WL 1664557 (N.D. Ohio Apr. 25, 2014).......................................17, 18

*Sjostrand v. Ohio State Univ.*,
    No. 11 Civ. 462, 2014 WL 4417767 (S.D. Ohio Sept. 8, 2014)............................................20

*SPEX Techs. v. Apricorn, Inc*,
    No. 16 Civ. 07349, 2020 WL 1289546 (C.D. Cal. Jan. 21, 2020) ........................................13

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014)................................................................................................3, 8

*Sweeney v. Correctional Med. Servs., Inc.*,
    No. 04 Civ. 40284, 2007 WL 2983967 (E.D. Mich. Oct. 12, 2007) ...................................1, 2

*Tamraz v. Lincoln Elec. Co.*,
    620 F.3d 665 (6th Cir. 2010) ................................................................................................12

*TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc.*,
    No. 11 Civ. 85, 2012 WL 2576367 (N.D. Ohio July 3, 2012)..........................................14, 15

*United States v. Terry*,
    No. 10 Cr. 390, 2011 WL 2149361 (N.D. Ohio May 31, 2011)..............................................11

*In re Welding Fume Prods. Liab. Litig.*,
    No. 03 Civ. 17000, 2010 WL 7699456 (N.D. Ohio June 4, 2010).........................................20

**Statutes**

17 U.S.C. § 504(b) ...........................................................................................................15, 16, 17

**Rules**

Fed. R. Civ. P. 26.............................................................................................................13, 14

Fed. R. Civ. P. 26(a) .................................................................................................10, 12, 14

Fed. R. Civ. P. 37(c)(1)............................................................................................................14

Fed. R. Evid. 401 ................................................................................................ *passim*

Fed. R. Evid. 402 ................................................................................................ *passim*

Fed. R. Evid. 403 ................................................................................................ *passim*

Fed. R. Evid. 701 .............................................................................................................12, 13

Fed. R. Evid. 702 .............................................................................................................12, 13

Defendants Take-Two Interactive Software, Inc., and 2K Games, Inc. (collectively, "Take-Two") move *in limine* to exclude certain testimony, evidence, or argument that they anticipate Plaintiff James Hayden ("Plaintiff") will seek to introduce at trial.  As discussed in greater detail below, Plaintiff claims that Take-Two's depiction of six tattoos (the "Tattoos") on three NBA players—Danny Green, LeBron James, and Tristan Thompson (the "NBA Players")—in six video games *NBA 2K16*, *NBA 2K17*, *NBA 2K18*, *NBA 2K19*, *NBA 2K20*, and *NBA 2K Mobile* ("*NBA 2K*") infringes his alleged copyrights.  Yet, such evidence goes well beyond the scope of his claim and is inadmissible under the Federal Rules of Evidence (the "Rules").  Thus, Take-Two respectfully requests an order excluding it from trial.[1]

## I.  MIL NO. 1 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT IMPLYING TAKE-TWO WITHHELD TELEMETRY DATA

Take-Two respectfully moves *in limine* to exclude any evidence, testimony, or argument that Take-Two withheld "telemetry data" showing how often a video game player uses one of the NBA Players, as this issue (1) was already decided by the Court and is thus barred by the law of the case doctrine and (2) is independently excludable under Rules 401–03.

**First**, this evidence should be excluded because the Court already held that this telemetry data does not exist.  The "law of the case doctrine" provides that a decision should govern the same issues in subsequent stages of a case, "to keep rulings consistent and avoid repetitious reconsideration of matters that have already been decided."  *Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc.*, No. 05 Civ. 70804, 2007 WL 1834714, at *7 (E.D. Mich. June 25, 2007); *see also Sweeney v. Correctional Med. Servs., Inc.*, No. 04 Civ. 40284, 2007 WL 2983967, at *1 (E.D. Mich. Oct. 12, 2007) (deciding motion *in limine* based on law of the case doctrine).

---

[1] Take-Two offered to exchange lists of motions *in limine* prior to filing in the hopes of reaching agreement on some or all of them.  Plaintiff declined.  To the extent that the parties reach agreements after filing, Take-Two intends to ask Plaintiff to file a stipulation to that effect.

During discovery, Plaintiff sought "[t]elemetry data showing the extent to which the NBA Players are used by users while playing the Accused Games."  Dkt. 50 (Disc. Ord.) at 2. Yet, as Take-Two's corporate representative explained, Take-Two "do[es] not track the frequency with which users of the accused games play with a particular NBA player."  Ex. A (J. Thomas Dep. Tr.) at 296:1–4.  Thus, the Court denied Plaintiff's request.  Disc. Ord. at 2–3. Nevertheless, Plaintiff continues to argue that Take-Two: (1) tracks the frequency with which the NBA Players are selected or played by users of the Accused Games in telemetry data, Dkt. 108 (Pl.'s Opp. Mtn. Excld. Malkiewicz) at 7 n.6; and (2) "opted not to disclose its 'telemetric' data," *id.* at 9.  Plaintiff should be precluded from arguing that Take-Two withheld nonexistent data.

***Second***, Rules 401–03 independently warrant exclusion.  That Take-Two did not produce something that does not exist is not relevant any issue in this case.  Permitting Plaintiff to wrongly imply that Take-Two was hiding unfavorable telemetry would mislead the jury and unfairly prejudice Take-Two.  *See Martinez v. Dart Trans, Inc.*, 548 F. Supp. 3d 1107, 1116 (D.N.M. 2021) (excluding evidence of an issue the court already decided as "irrelevant and [because it] would confuse the issues at trial").

## II.     MIL NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING PLAINTIFF'S IRRELEVANT RELEASES AND PROJECTS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument concerning Plaintiff's irrelevant alleged releases and projects with third parties,[2] which he contends is proof of market harm under the fourth fair use factor.  Exclusion is warranted because such projects and agreements are not relevant to market harm and substantially risk confusing the jury.  *See* Fed. R. Evid. 401–03.

---

[2] Take-Two has included in its exhibit list certain documents related to some of the purported releases and projects described herein, which it may use if the Court does not grant Take-Two's requested relief.

The fourth fair use factor considers the impact of a defendant's use of a copyrighted work on "the potential licensing revenues for traditional, reasonable, or likely to be developed markets" for that work. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014). Cognizable market harm is limited to "market substitution," *i.e.*, the harm that results where the secondary use of a work "substitutes" for the original work. *See Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 100 (2d Cir. 2014) (where digitization of books to create a full-text search was at issue, the fact that some libraries "might be willing to purchase licenses in order to engage in this transformative use," was "irrelevant" without market substitution). Courts also consider whether there is evidence that the defendant's use is the type for which Plaintiff normally requires authorization. *See Easter Unlimited, Inc. v. Rozier*, No. 18 Civ. 06637, 2021 WL 4409729, at *16–*17 (E.D.N.Y. Sept. 27, 2021). Where a Plaintiff never before licensed the work at issue for the particular use at issue, this factor favors fair use. *See Blanch v. Koons*, 467 F.3d 244, 258 (2d Cir. 2006) (admission that copyright owner had "never licensed any of her photographs for" the use made by defendant weighed in favor of fair use).

The particular projects that Plaintiff seeks to introduce at trial, detailed below, involve **different** works being used for wholly **different** purposes from those at issue. As a result, they neither bear on whether there is currently a market for licensing tattoos as part of a person's likeness in a video game, nor are they relevant to whether such a market is traditional, reasonable, or likely to develop. *See*, *e.g.*, *Kienitz v. Sconnie Nation LLC*, 965 F. Supp. 2d 1042 (W.D. Wisc. 2013) (considering whether the plaintiff would have licensed the photograph *at issue* for the *same* purpose as the defendant in assessing market harm). And because they involve different works and uses, they have no relevance to whether the Tattoos in *NBA 2K* harm the market for the original Tattoos by substituting for them. *See Authors Guild*, 755 F.3d at 100.

Nor are they relevant to implied license. Plaintiff points to four alleged releases for tattoos he inked on Mr. James. Dkt. 109-49 (Hayden Decl.) ¶¶ 20, 23–25. These are not relevant because Mr. James is not a party, and they are dated ***nine to thirteen years after*** the tattoos were inked. *See Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008) (considering conduct "at the time of the creation and delivery"). This warrants exclusion. Fed. R. Evid. 402.

These projects separately should be excluded as any marginal relevance (and there is none) is outweighed by their risk of jury confusion. Fed. R. Evid. 403. Many of these involve ***unsigned or nonexistent*** releases and contracts, making it unclear whether they were ever in fact entered into and the scope and/or content of what is being licensed (or whether there even *is* a license). This risks trial devolving into "mini-trials," wherein the jury will need to parse the facts of these other, unrelated releases and projects. *See Manuel v. City of Chi.*, 335 F.3d 592, 597 (7th Cir. 2003) ("potential for confusing or even misleading the jury by engaging in a series of mini-trials" outweighed "slight probative value" of evidence); *Brown v. Weber*, No. 11 Civ. 1390, 2014 WL 11531797, *1 (W.D. Tenn. Jul. 11, 2014) ("admission of . . . evidence would inevitably require an inordinate amount of time be spent conducting mini-trials").

In particular, each of the following projects is irrelevant and prejudicial, and evidence, testimony, and argument on each should therefore be excluded:



█████████████ : Plaintiff may seek to introduce evidence of █████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ *See* Ex. B (████████████) (emphasis added). Plaintiff admitted that the shoes did not depict Mr. James with the Tattoos he has in real life. Ex. C (Hayden Tr.) at 179:17–19 (agreeing "the shoes didn't have pictures of Mr. James on them, they just had . . . parts of these designs"). This is█████

███████████████████████████████████████████████████

████████████████████ *Id.* at 179:20–23 (agreeing it "had nothing to do with video games").

████████████████████: Plaintiff may seek to introduce evidence at trial that, ██████

███████████████████████████████████████████████████

███████████████ *See, e.g.*, Dkt 109-50 (███████████).  Plaintiff testified in his deposition that

he performed two such projects, during which Nike purportedly flew him out to Portland,

Oregon to airbrush mannequins.  Ex. C (Hayden Tr.) at 182:13–21; 183:8–13 (agreeing "Nike

was contracting with you to air brush these designs").  █████████████████████

█████—the testimony suggests that Mr. Hayden was being paid for his ***labor*** of flying out to

airbrush mannequins, not copyrights in the tattoos.  No contracts related to these projects were

produced, and the projects have nothing to do with tattoos in video games.  *Id.* at 184:2–5.

████████████████████: Plaintiff may seek to introduce evidence at trial that, ██████

███████████████████████████████████████████████████

█████████████████████ *See* Dkt. 109-51 (████████████).  Plaintiff has

not produced any contract for this project███████████████████████████████

██████████████████████████████ *Id.* █████████████████████

███████████████████████████████████████████ *Id.*

████████████████████: Plaintiff may seek to introduce evidence of ████████

███████████████████████████████████████████████████

██████████████.  *See* Dkt. 109-52–53 (███████████); Ex. C (Hayden Tr.) 187:5–7.

Plaintiff admitted that he could not ████████████████████████ Dkt. 109-49

(Hayden Decl.) ¶¶ 18–19, and any terms are unknown.  ███████████████████

████████████████████████████

███████████████: Plaintiff may seek to introduce evidence of ████████████ ████████████████████████████████████████████████████. *See* Dkt. 109-54 (███████████). It is unclear whether this was ever signed and, if it was, what the terms were. Plaintiff admitted that he could not "recall if the agreement was signed or not." Dkt. 109-49 (Hayden Decl.) ¶ 20. It does not involve the use of tattoos in video games or similar media.

██████████████████████: Plaintiff may seek to introduce evidence of a purported ████ ████████████████████████████████████████████████████████. An invoice for the purported release was produced, *see* Dkt. 109-57 (███████), but the purported release itself was not. It is unclear whether it was ever signed or what the terms would have been. Plaintiff could not "████████████████████████ Dkt. 109-49 (Hayden Decl.) ¶ 21. ████████████████████████████████ ████████████████████████.

██████████████████████: Plaintiff may seek to introduce evidence of a███████████ ████████████████████████████████████████████████████ ██████ *See* Dkt. 109-56 (███████████████). ████████████████████████████ ████████████████████████████████████████████████ so it is not clear whether and under what terms it was entered into. *Id.*

█████████████████: Plaintiff may seek to introduce evidence of█████████████████ ██████████████████████████████████████. Dkt. 109-57 (Release). ████ ████████████████████████████████████████████████████████████ ██████████████████████ which suggests that Plaintiff was trying to create evidence of a market after the fact. ██████████████████████. *Id.* ████████████████████████ ██████████████████████████████.



████████: Plaintiff may seek to introduce evidence of ████████

████████████████████████████████████████████

█ Dkt. 109-58 (████).  This release, ████████████████████

████ suggesting that Plaintiff was trying to create evidence of a market after the fact. ████████

████████████████████████████████████ It is

therefore irrelevant and prejudicial.

████████: Plaintiff may seek to introduce evidence of a████████████

████████████.  Dkt. 109-59 (████).  This release, ████████████

████████████████ suggesting that Plaintiff was trying to create evidence of a

market after the fact.  It also was not produced during discovery, so Take-Two has been unable

to take discovery on it and has not received any documents from Mr. Hayden about the

circumstances in which it was entered. ████████████████████

████████ *Id.*

As the foregoing are irrelevant and prejudicial, they should be excluded.

## III.  MIL NO. 3 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S LICENSING OF OTHER WORKS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument

concerning Take-Two's licensing of different works for wholly different purposes than those at

issue in this litigation.[3]  Plaintiff has argued that Take-Two's willingness to pay licenses for

wholly different works for different purposes shows that a market is likely to form for depicting

the Tattoos on the NBA Players bodies.  Dkt. 109 (Pl.'s Mem. Opp. Mot. Summ. J.) at 10

---

[3] Take-Two has included in its exhibit list certain documents related to the licensing of content in *NBA 2K*, which it may use if the Court does not grant Take-Two's requested relief.  Also, to be clear, it does not seek to exclude evidence of its agreements with the NBA and NBPA that allow Take-Two to depict the NBA players.

(arguing that Take-Two's use of the Tattoos "is no different than with other IP assets" and that Take-Two uses "assets and elements protected by intellectual property," such as "music").

This argument and evidence is irrelevant and unduly prejudicial. See Fed. R. Evid. 401–03. As explained above, the fourth fair use factor considers the impact of a defendant's use of a copyrighted work on "the potential licensing revenues for traditional, reasonable, or likely to be developed markets" for that work. *See supra* 3. And licensing of *different* works for *different* purposes *is not relevant* to whether a market is likely to form for the use in this case, *i.e.*, depicting real-world people with their tattoos in a video game. *See supra* 3; *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006) (although in other contexts fees had been paid for reproduction of images, "we do not find a harm to BGA's license market merely because DK did not pay a fee for BGA's copyrighted images"). Nor is the fact that Take-Two is *willing* to pay to license other works *for other purposes* (such as background music) relevant to whether a potential market exists for real-life tattoos in *NBA 2K*. *See Swatch*, 756 F.3d at 91 ("it is a given in every fair use case that plaintiff suffers a loss of a potential market if that potential is defined as the theoretical market for licensing the very use at bar."); *see also generally* Dkts. 97-1 & 137 (Defs.' Mem. Supp. Mot. Excld. Lenzo).

That Take-Two pays for one type of content for one type of purpose is irrelevant to whether it is fair use to include the Tattoos in its video game. *See Bill Graham*, 448 F.3d at 614. Yet, Plaintiff has made clear that he intends to use Take-Two's licenses with ████, its ████ ████ licenses, licenses related to ████████, agreements covering ████████ ████████, and music, to make this argument. *See* Ex. D (Nov. 12, 2019 Email Agreement re Production); Dkt. 50 at 4 (Mem. Opp. re music payment). None of these relate to replicating a person's likeness as they actually look or involve the deeply personal situation of someone

8

getting a tattoo inked on their body.  Allowing this evidence is not only irrelevant, it would be highly prejudicial to Take-Two.  The point that Plaintiff wants to argue is as clear as it wrong: it is that the depiction of Plaintiff's tattoos in *NBA 2K* "is no different" than the use of software, a trademarked logo, or another piece of intellectual property. Dkt. 109, at 10 (arguing Take-Two's depiction of Tattoos is "no different than" other works except that Take-Two has not paid Plaintiff).  Plaintiff clearly hopes that the jury will assume that because some intellectual property is paid for different purposes, then the Tattoos must be paid for too.  This argument is legally wrong, and it would be unfairly prejudicial to allow Plaintiff to make it.

## IV.    MIL NO. 4 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT REGARDING OTHER VIDEO GAME COMPANIES' AGREEMENTS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument regarding licensing of irrelevant content in video games other than *NBA 2K* as such evidence is (1) irrelevant, and (2) poses an undue risk of jury confusion and unfair prejudice.

Plaintiff's lawsuit is based only on six video games (*NBA 2K16–NBA 2K20* and *NBA 2K Mobile*).  *See* Dkt. 33 (4th Am. Compl.).  Plaintiff does not assert copyright claims against non-*NBA 2K* video games.  Plaintiff nonetheless has shown that he intends to introduce evidence related licensing of unaccused video games.  For example, his experts have hypothesized that other video game companies license content, including trademarks and tattoos, for inclusion in their video games.  Such speculation is not relevant to any issues in this case and should be excluded.

**First**, as discussed above, licensing of different works for different purposes is not relevant to market harm.  *See supra* 3.  Plaintiff apparently intends to use speculation about other video game companies for exactly this purpose.  For example, in Dr. Lenzo's expert report, he contends that Electronic Arts ("EA") "has license agreements with at least the Fédération Internationale de Football Association (FIFA) and the National Football League (NFL), with the latter reportedly

associated with $1.5 billion in licensing fees and marketing commitments to the NFL and NFL Players' Association over five years."  Dkt. 97-3 (Lenzo Reb. Rpt.) ¶ 86.  Of course, it is not surprising that the NFL and FIFA would license content, such as ***trademarks***, for inclusion in video games.  It has absolutely nothing to do with the claims here or with tattoos that are a part of someone's real, personal likeness.  *See supra* 3; *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 n.8 (9th Cir. 1985) (affirming exclusion of evidence concerning "other Broadway shows" not at issue).

***Second***, to the extent that Plaintiff seeks to introduce speculation about other video game companies allegedly licensing to include tattoos, there is no reason to believe that happened and such evidence would be wholly unreliable.  For example, Plaintiff has speculatively argued in briefing that, "it has been reported that, '[T]he NFL Players Association and EA required the tattoo artists that designed tattoos for players to sign waivers giving the NFLPA and the video game company rights to reproduce the tattoos'" and that "[NFL Quarterback] Kaepernick got the necessary permission from the artists."  Dkt. 117 (Pl.'s Opp. Mot. Excld. Lenzo), at 7-8, n. 2.  His experts made similar claims at their depositions.  For example, Dr. Lenzo claimed that "the press reported that [EA] would only [incorporate tattoos] when they could secure permission."  Ex. F (Lenzo Dep. Tr.) at 274:17–19.  Similarly, Mr. Malkiewicz claimed that "[he's] aware of other video game franchises, not the *NBA 2K*, that has engaged in some licensing activity around tattoos like *NFL Madden*[.]"  Ex. E (Malkiewicz Dep. Tr.) at 145:9–12. Yet, neither expert disclosed this opinion in their reports.[4]  This is not surprising.  Dr. Lenzo admitted that he (1) "***[didn't] observe*** specific licenses," (2) ***does not know*** whether any tattooist were paid to include their tattoo designs in *NFL Madden*, and (3) did not include this information in his report because "it's ***not . . . directly***

---

[4] This is an independent basis for exclusion under Rule 26(a)(2)(B).  *See Parker Hannifin Corp. v. Standard Motor Prods., Inc.*, No. 19 Civ. 00617, 2021 WL 5801850, at *1 (N.D. Ohio Dec. 7, 2021).

*relevant* to [his] analysis which is focused on NBA 2K[.]" Ex. F (Lenzo Dep. Tr.) at 274:12–13, 20–25, 275:5–10 (emphasis added). Similarly, Mr. Malkiewicz admitted his alleged knowledge is based on "***sort of general knowledge*** of existence of such license," without providing any documentary support. *See* Ex. E (Malkiewicz Dep. Tr.) at 146:8–11 (emphasis added). These alleged licenses, and reports about them, also are hearsay. They also were not produced in this litigation, and Plaintiff did not subpoena EA to request them. To the extent they even exist, their contents are entirely unknown.

 ***Third***, any marginal relevance of this speculative evidence (and there is none) is substantially outweighed by a danger of unfair prejudice. For one, baseless speculation about what one company (EA) may be doing about tattoos could lead jurors to believe that Take-Two should be taking that same (entirely speculative) action. For another, it would create confusing mini-trials regarding what other video game companies are doing about unrelated content, like FIFA trademarks, which distracts from the "central focus of the case," and is especially problematic as neither Dr. Lenzo nor Mr. Malkiewicz have cited to any support for their undisclosed testimony. *United States v. Terry*, No. 10 Cr. 390, 2011 WL 2149361, at *4 (N.D. Ohio May 31, 2011). And allowing Plaintiff to introduce such evidence as a way to put other large licensing numbers (*e.g.*, EA's alleged $1.5 billion in licensing fees), without context for what the deal actually entailed, to convince the jury that Plaintiff should be paid in this case for wholly different content would be extremely prejudicial. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, No. 09 Civ. 261, 2014 WL 1350720, at *8 (W.D. Wisc. Apr. 4, 2014) (excluding gross sales and profits unrelated to infringing articles as "unfairly prejudic[ial]" and likely to "artificially inflate damages").

## V.  MIL NO. 5 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT CONCERNING PLAINTIFF'S OPINIONS ABOUT THE TATTOO INDUSTRY

 Take-Two respectfully moves *in limine* to exclude Plaintiff from offering testimony

about the tattoo industry beyond his personal experiences, including any opinions about the

tattoo industry, the market for tattoos, common practices between tattooists and their patrons, the

relationship between the tattoo industry and the art industry, or Take-Two's impression of the

tattoo industry or art industry.  Plaintiff has already submitted a declaration in this case in which

he has done so.  Dkt. 109-49 (Hayden Decl.).  Yet, Plaintiff is not a disclosed expert under Rule

26(a)(2)(B), and his lay opinions run afoul of Rule 701.  Moreover, Plaintiff's lay opinions

should be excluded as prejudicial and irrelevant.  *See* Fed. R. Evid. 401–03.

    ***First***, Plaintiff's opinion testimony was never disclosed.  When a witness is offered as an

expert who will testify in the form of an opinion under Rule 702, their identity and subject matter

of their proposed testimony must be disclosed under Rule 26(a)(2)(B).  *See Parker Hannifin*

*Corp. v. Standard Motor Prods., Inc.*, No. 19 Civ. 617, 2021 WL 5801850, at *1 (N.D. Ohio

Dec. 7, 2021); *Parillo v. Lowe's Home Ctrs., LLC*, No. 14 Civ. 369, 2017 WL 4124585, at *2

(S.D. Ohio Sept. 18, 2017) ("None of Plaintiffs' lay witnesses was designated as an expert

(obviously) or otherwise shown to have the scientific, technical, or specialized knowledge to

provide opinion testimony . . . .").  Only then can courts ensure that the proposed testimony

satisfies Rule 702's reliability requirements and is not unfairly prejudicial under Rule 403.

*Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010).

    Here, Plaintiff was never disclosed as an expert in the tattoo industry.  Yet, he has already

offered opinion testimony in a declaration, and may try to do so at trial.  For example, despite

being just one tattooist, Plaintiff broadly declared that he "***believes***" that "in virtually ***every kind***

***of commissioned art***" it is "common between artists and their patrons" for artists to have "artistic

freedom to express the idea" that the patron brings with them.  Hayden Decl. ¶ 8 (emphasis

added).  Plaintiff also declared that it is his opinion that Take-Two has an "utter disconnect with,

and perhaps contempt for, the art world." *Id.* ¶ 11.  Setting aside whether Plaintiff would be qualified as an expert to offer opinions under Rule 702, there can be no dispute that these opinions were never disclosed under Rule 26.  *See Parker*, 2021 WL 5801850 at *1.

**Second**, Plaintiff may not offer his opinions under the guise of lay opinion testimony under Rule 701.  Lay witnesses are limited to testifying on opinions that are based on their perception, helpful to provide a clear understanding of their testimony or determining a fact, and are not based on scientific, technical, or other specialized knowledge.  *See* Fed. R. Evid. 701.  Plaintiff's beliefs about the "common" practice "in virtually every kind of commissioned art," Hayden Decl. ¶¶ 8, 11, seems to be based entirely on his speculation about the entire tattoo and art industry, not his perception.  This is not allowed.  *See Auto Konnect, LLC v. BMW of N. Am., LLC*, No. 18 Civ. 14019, 2022 WL 721526, at *4 (E.D. Mich. Mar. 9, 2022) ("BMWNA's employees can testify under Rule 701 as to their own personal knowledge of BMWNA's practices" but "may not testify concerning the general automotive industry outside of BMWNA or other topics beyond their own perceptions").  Plaintiff may offer additional opinions about the general tattoo industry outside of his own tattoo parlor beyond what he stated in his declaration, and such testimony, if offered, should be precluded for the same reasons.

**Third**, Plaintiff's proposed testimony is irrelevant and prejudicial.  Plaintiff's belief that Take-Two has "contempt" for the art world, and other derogatory comments, are not relevant to whether Plaintiff is entitled to any rights in tattoos depicted on players in *NBA 2K* whatsoever and would only serve to confuse and inflame a jury.  *See SPEX Techs. v. Apricorn, Inc*, No. 16 Civ. 07349, 2020 WL 1289546, at *2 (C.D. Cal. Jan. 21, 2020) (excluding "derogatory comments" on motion *in limine* as irrelevant and prejudicial); *Gordon v. Royal Palm Real Est. Inv. Fund I, LLLP*, No 09 Civ. 11770, 2022 WL 1431837, at *3-5 (E.D. Mich. May 5, 2022)

13

(excluding evidence of alleged defamation as inflammatory and irrelevant and prejudicial ).

## VI.    MIL NO. 6 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT OF ACTUAL DAMAGES

Take-Two respectfully moves *in limine* to preclude Plaintiff from asserting that he is entitled to actual damages.  Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), Plaintiff was required to provide "a computation of each category of damages claimed" as well as "the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  When "a party fails to provide information" required by Rule 26, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Courts in this Circuit regularly exclude evidence of damages when a party fails to disclose a corresponding computation.  *See Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 369 (6th Cir. 2010) (affirming exclusion of "evidence of lost-profits damages" where plaintiff failed to produce computation of damages); *TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc.*, No. 11 Civ. 85, 2012 WL 2576367, at *4 (N.D. Ohio July 3, 2012) (granting motion *in limine* "to preclude defendants from presenting damage evidence as to 'lost profits'" where "defendants did not provide TCF with a computation of alleged lost profits in their initial Rule 26 disclosures" and did not disclose a "'computation' of their alleged lost profits"); *Acuity Brands Lighting, Inc. v. Bickley*, No. 13 Civ. 366, 2015 WL 10551946, at *5 (E.D. Ky. Nov. 30, 2015), *R&R adopted*, 2016 WL 1171541 (E.D. Ky. Mar. 24, 2016) (excluding damages where "Plaintiffs never provided a Rule-compliant computation of their alleged lost profits damages").

Despite multiple opportunities, Plaintiff has never disclosed the required computation of actual damages.  In Plaintiff's Rule 26 disclosures, under the section titled "Computation of

Damages," Plaintiff simply stated that he "is entitled to either actual damages and profits under

17 U.S.C. § 504(b)" but "cannot calculate the amount of actual damages . . . without discovery."

Ex. G at 4.  Discovery has been closed for almost a year, and Plaintiff still has not provided this

calculation in any form.  Further, in response to Take-Two's Interrogatory No. 14 seeking "any

damage or lost revenue (both in dollars)" that Plaintiff claims resulted from the alleged

infringement, Plaintiff broadly contended that Take-Two "has harmed Hayden's ability to

develop and profit from this market," identified documents with no explanation of how those

documents are responsive to this question and did not compute actual damages.  Ex. H at 19–20

(Pl.'s Second Suppl. Resp. to Take-Two's First Interrogs.).  And Plaintiff's experts,

Mr. Malkiewicz and Dr. Lenzo, did not compute actual damages.  Ex. E (Malkiewicz Tr.)

133:22– 134:4 (agreeing he does not "have any opinions on whether Mr. Hayden suffered any

actual damages in this case"); Ex. F (Lenzo. Tr.) 34:3–8 (agreeing he is "not offering any

opinion that Mr. Hayden suffered any actual damages in this case").

The time to disclose an actual damages computation has long passed.  Fact and expert

discovery are closed, and Take-Two has had no opportunity to take discovery on Plaintiff's

computation of alleged actual damages because he has never provided one.  The parties are now

preparing for trial.  The appropriate remedy is to grant Take-Two's motion *in limine* to exclude

actual damages.  *See TCF*, 2012 WL 2576367, at *4.

## VII.  MIL NO. 7 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S SALES OR REVENUE FROM UNACCUSED VIDEO GAMES

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument of

Take-Two's sales, revenues, or profits from unaccused video games, including *NBA 2K21* and

*NBA 2K22*, as they are irrelevant and unduly prejudicial. *See* Fed. R. Evid. 401–03.[5]

**First**, evidence of Take-Two's sales or revenue generated from unaccused games is inadmissible as irrelevant under Rules 401 and 402 because Plaintiff may not seek any such revenue as damages. The Copyright Act permits Plaintiff to seek "the actual damages suffered by him or her **as a result of the infringement**, and any profits of the infringer that are **attributable to the infringement** and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b) (emphasis added). The only video games that are accused of copyright infringement in this case are *NBA 2K16*, *NBA 2K17*, *NBA 2K18*, *NBA 2K19*, *NBA 2K20*, and *NBA 2K Mobile*. *See* Dkt. 33 (4th Am. Compl.). Plaintiff, however, apparently intends to introduce evidence of Take-Two's revenue from other games, including at least *NBA 2K21*. For example, Plaintiff's damages expert, Mr. Malkiewicz, relies on this information for his profit disgorgement analysis. Dkt. 99-4, ("Malkiewicz Rpt.") at 5, 30–32 (discussing *NBA 2K21* revenue). Plaintiff may alternatively attempt to introduce such revenue through Take-Two's fact witnesses at trial. Notably, Plaintiff already tried to amend the Complaint to add *NBA 2K21* and *NBA 2K22* as accused games, which the Court denied. *See* Dkt. 147 (Ord. Denying Pl.'s Mot. to Am. Comp.). Thus, any evidence of revenue generated from *NBA 2K21*, *NBA 2K22*, or any other game not accused of infringement is not relevant.[6]

**Second**, this evidence should also be excluded as unduly prejudicial. To the extent that Plaintiff tries to introduce revenue from *NBA 2K21*, *NBA 2K22*, and any other unaccused game, it would be solely to inflate the amount of total revenue from which the jury may award profit-disgorgement damages even though Plaintiff may not receive damages for the unaccused games.

---

[5] In May 2021, to avoid a discovery dispute Take-Two produced revenue information for *NBA 2K21*, although it believed such revenue was not relevant. *See* Dkt. 142 at 5 (Defs.' Opp. Mot. to Am. Comp.).

[6] Take-Two does not concede the relevance of any Take-Two revenue as none of Take-Two's profits are attributable to the depiction of the six Tattoos.

As one example, Plaintiff's damages expert Mr. Malkiewicz identified in his report that Take-Two has made hundreds of millions of dollars in profits from *NBA 2K21* alone and included proposed testimony "that *NBA 2K21* has sold-in over 10 million copies and that net bookings as well as recurrent consumer spending for the *NBA 2K* series exceeded Take-Two's expectations," and "NBA 2K21 is currently the most popular game on Apple Arcade."  Dkt. 99-4 (Malkiewicz Op. Rpt.), at 5, 31–32.  Alternatively, Plaintiff may try to cross-examine Take-Two's witnesses about the financial success of unaccused games.  Such testimony should be excluded as it would simply be a way to circumvent the Court's ruling excluding *NBA 2K21* (and *NBA 2K22*) from this case, Dkt. 147, and would serve no other purpose than to inflate the pool of revenue from which the jury will be asked to determine damages (if any).  *See supra* 11.

## VIII.  MIL NO. 8 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S REVENUE FROM VIRTUAL CURRENCY

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument of Take-Two's revenues from sales of virtual currency ("VC"), as it is irrelevant and unduly prejudicial.  *See* Fed. R. Evid. 401–03.

A plaintiff may seek as damages "any profits of the infringer that are ***attributable*** to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b) (emphasis added).  When seeking profits, the plaintiff "must show a 'reasonable relationship' between revenues and the act of infringement."  *Satija v. Permanent Gen. Assurance Corp. of Ohio*, No. 13 Civ. 82, 2014 WL 1664557, at *6 (N.D. Ohio Apr. 25, 2014) (quoting *Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012)).  This includes showing "some causal link between the infringement and the particular profit stream."  *Satija*, 2014 WL 1664557, at *6 (quoting *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*, 338 F. App'x 329, 333 (4th Cir. 2009)).  Mere "speculative evidence" does not suffice to show this link.

17

*Satija*, 2014 WL 1664557, at *6; *see also Balsley*, 691 F.3d 747 at 769 ("gross revenue number must have a reasonable relationship—relevance, in other words—to the infringing activity"); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) ("unsupported speculation" of causal link between "infringing Flying B logo" used by Baltimore Ravens football team and merchandise sales not sufficient to recover damages from such sales).

Take-Two's revenues from sales of VC should be excluded under Rules 401–02 because there is no "non-speculative evidence" of a causal link between sales of VC and the alleged infringement, and thus it is not relevant to any damages that Plaintiff is entitled to seek.  As Take-Two explained in its motion to exclude Mr. Malkiewicz's expert testimony concerning VC, Dkt. 99-1 at 2–3, 14–15, VC is something that *NBA 2K* users can purchase to unlock features of *NBA 2K* more quickly.  Dkt. 99-3 (Malkiewicz Tr.) 188:10–11.  These features include "gain[ing] additional skills and attributes," obtaining "My Player accessories" and "acquir[ing] officially licensed gear from the NBA store," among others.  *Id.* at 194:1–3, 195:19–20, 195:25–196:6.  VC can be purchased, but it also can be earned through game play.  *Id.* at 197:20–25. Regardless of whether a user buys or earns VC, the six tattoos that appear on the three NBA players that are at issue in this case are already included in *NBA 2K* at the time that the game is purchased.  *Id.* at 203:9–14.  Further, VC (a) does not depict the Tattoos, *id.* 204:11–17; (b) cannot be used to purchase the Tattoos, *id.* 189:8–11; and (c) cannot be used to see the Tattoos more clearly, *id.* 201:16–202:2.

Plaintiff may try to introduce evidence of VC at trial.  For example, Mr. Malkiewicz seeks to introduce Take-Two's revenues and profits from sales of *NBA 2K* as a single, combined number inclusive of revenue from Take-Two's sales of the six accused *NBA 2K* video games that depict the six tattoos at issue **plus** additional revenue from its sales of VC.  To calculate this

figure, Mr. Malkiewicz multiplied Take-Two's revenues from sales of each the six accused *NBA 2K* games, Dkt. 99-4 (Malkiewicz Rpt.), at Schedules 4 ("Net Sales (Full Game)"), 8, 9, by his estimate of the amount of VC Take-Two sold per game. *Id.* ¶¶ 113–14, Schedule 4 ("Net Sales (Total)"). This inflates Take-Two's revenue by more than 60% and is what he seeks to present to the jury. *Id.* at Schedule 3 ("Net Revenues (Full Game & Recurrent)"). Plaintiff may also attempt to cross-examine Take-Two's witnesses about VC. As to prejudice, presenting VC revenue would serve no other purpose than to improperly inflate the pool of revenue from which Plaintiff is attempting to seek damages. *See supra* 11.

## IX.    MIL NO. 9 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT ABOUT PLAINTIFF'S ALLEGED, UNDISCLOSED COMMUNICATIONS WITH ANY OF THE NBA PLAYERS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument concerning Plaintiff's alleged communications with any of the NBA Players because they were not produced during discovery.

Take-Two sought discovery on all of Plaintiff's alleged communications with the NBA Players in multiple ways. Take-Two served an interrogatory in May 2019 asking for a description of all communications with the NBA Players "CONCERNING the ASSERTED WORKS." Ex. I (Pl.'s Resp. to Interrog. No. 4). It requested copies of any communications. Ex. J (Defs.' RFP Nos. 33–35). And it asked about them during Plaintiff's deposition in October 2019. Ex. C (Hayden Dep. Tr.) 106:4–6. Plaintiff testified that he had "produced all communications with Mr. James, Mr. Green and Mr. Thompson," *id.*, but none were produced, and that he never communicated with the players about this lawsuit, *id.* at 217:15–18.

Yet, Plaintiff may now seek to introduce this alleged evidence at trial. For example, at Mr. Green's recent deposition, Plaintiff's counsel asked whether he recalled a dinner with Plaintiff "while [he] played for the Spurs, and [was] in town to play the Cavs." Ex. K (Green

Dep. Tr.) 54:21–55:4.  Mr. Green last played for the Spurs in 2018, before discovery commenced

in this lawsuit.[7]  He also was asked whether Plaintiff "explained his copyright lawsuit against

*NBA 2K*" and whether Mr. Green "text[ed] him good luck after that dinner," which he did not

recall.  *Id.* at 52:25–53:7, 54:4–9.  Having avoided discovery of this and other conversations,

Plaintiff should not be permitted to introduce such evidence for the first time at trial.  *See*

*Sjostrand v. Ohio State Univ.*, No. 11 Civ. 462, 2014 WL 4417767, at *4 (S.D. Ohio Sept. 8,

2014) ("exclud[ing] [documents] that fell within . . . document requests but were not produced

during discovery").

## X.  MIL NO. 10 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT THAT RELIES ON PLAINTIFF'S EXPERT TESTIMONY THAT HAS BEEN EXCLUDED BY *DAUBERT* MOTIONS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument that

relies on any of Plaintiff's expert testimony that has been excluded by Take-Two's *Daubert*

motions.  Take-Two's motions to exclude Dr. Justin Lenzo's expert opinions and Mr. Michal A.

Malkiewicz's expert opinions remain pending.  *See* Dkts. 103–04.  To the extent that Dr. Lenzo

and Mr. Malkiewicz's opinions are excluded, Plaintiff's witnesses should be precluded from

referencing or repeating their proposed testimony.  *See In re Welding Fume Prods. Liab. Litig.*,

No. 03 Civ. 17000, 2010 WL 7699456, at *63 (N.D. Ohio June 4, 2010) (witness "may not

simply parrot or recite the opinions and knowledge of other expert"); *see also Black & Decker v.*

*Bosch Tools*, No. 04 Civ. 7955, 2006 WL 5156873, at *1 (N.D. Ill. Sept. 8, 2006) (witness not

permitted "under the guise of giving expert testimony, to in effect become the mouthpiece" of

another); *Morgutia-Johnson v. Hustedde*, No. 14 Civ. 127, 2015 WL 3507130, at *7 (E.D. Cal.

June 3, 2015) (excluding expert "from relying on any other previously excluded evidence").

---

[7] *See* Ex. L (Danny Green Stats, available at https://www.nba.com/stats/player/201980).

Dated: August 1, 2022

/s/ Dale M. Cendali
Dale M. Cendali (*pro hac vice*)
Joshua L. Simmons (*pro hac vice*)
Chris Ilardi (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Take-Two 2K Games, Inc. and
Take-Two Interactive Software, Inc.*