# EXHIBIT E

HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES HAYDEN,                    )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )   Case No.
                                 )   1:17-cv-02635-CAB
2K GAMES, INC.and                )
TAKE-TWO INTERACTIVE             )
SOFTWARE, INC.,                  )
                                 )
          Defendants.            )

   HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER


          The video recorded deposition of MICHAL A.
MALKIEWICZ, called by the Defendants for
examination, pursuant to Notice, and pursuant to the
Rules of Civil Procedure for the United States
District Courts, taken stenographically by Sandra L.
Rocca, CSR, RMR, RDR, CRR, at 300 North LaSalle
Street, Chicago, Illinois, on the 19th of August,
2021, at the hour of 9:11 a.m.

Job No.: 2864

HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 133

1  your opinions are not relevant, right?

2       MR. McMULLEN:  Objection, calls for a legal

3  conclusion.

4    A  I mean, they could be relevant if someone is

5  interested in knowing what the value to Take-Two is

6  of depicting tattoos realistically, but wouldn't be

7  relevant to copyright infringement claims if

8  copyrights are not valid or infringed.

9    Q  You understand that there are different

10  types of damages that can be recovered by a

11  copyright owner in an infringement case, right?

12       MR. McMULLEN:  Calls for a legal conclusion.

13  You can answer.

14    A  I'm generally aware as to the entitlement or

15  what the Copyright Act says.

16    Q  One type of copyright damages is called

17  actual damages, is that right?

18       MR. McMULLEN:  Same objection.

19    A  Well, it's certainly one of the ways that

20  one of the let's say three types of damages has been

21  described has been called actual damages.

22    Q  You don't have any opinions on whether

23  Mr. Hayden suffered any actual damages in this case,

24  right?

25       MR. McMULLEN:  Objection, calls for a legal

HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 134

1    conclusion.  You can answer.

2        A  That is fair.  I don't -- that was not part

3    of my assignment and I don't have an opinion or have

4    not developed an opinion on it.

5        Q  You've not identified any business

6    Mr. Hayden lost, correct?

7        A  Well, it's a little bit tautological.  I

8    have not analyzed any -- any of that kind of lost

9    business opportunities, only in the context of if --

10   my assumption is that there is a valid copyright

11   infringement claim, then presumably, in the but-for

12   world there would have been a business relationship

13   between the defendant and the plaintiff, but again,

14   not in the context of actual damages.  That's just

15   sort of a tautological inference, I think.

16       Q  In the context of actual damages, you have

17   not identified any business Mr. Hayden lost,

18   correct?

19          MR. McMULLEN:  Objection, calls for a legal

20   conclusion.  You can answer.

21       A  So yeah, I have not analyzed Plaintiff's

22   actual damages in the form of lost profits, lost

23   business opportunities or the other categories that

24   may or may not be available to Mr. Hayden under the

25   Copyright Act.  My assignment was very specific in

HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 145

1   precision such as, for example, consumer surveys.

2       Q  You're not aware of any licenses related to

3   use of tattoos in video games, true?

4           MR. McMULLEN:  Objection, vague.

5       A  Not sufficiently similar to the

6   circumstances of this case.  We've discussed at this

7   deposition Take-Two, for example, licensing or

8   hiring tattooists to provide new designs of tattoos

9   as an example.  There I -- you know, I'm aware of

10  other video game franchises, not the NBA 2K, that

11  has engaged in some licensing activity around

12  tattoos like NFL Madden, for example.  But as far as

13  I recall, the financial information behind these

14  transactions is not publicly available.

15      Q  So you do not have any evidence of licenses

16  related to the use of real world tattoos in video

17  games, isn't that right?

18          MR. McMULLEN:  Objection, vague, calls for a

19  legal conclusion.

20      A  Right.  It was not part of my analysis

21  per se, but I've seen quite a few licenses in this

22  case and I have not -- at least none ring a bell as

23  to ones that would be in the context of what you

24  described, so the real-life tattoos licensed for a

25  video game reproduction of an avatar.

HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 146

1      Q  You're not aware of any licenses for the use

2   of real world tattoos in video games to be

3   reproduced on the person on whom they are inked in

4   real life, right?

5           MR. McMULLEN:  Can I hear that back, please?

6           (Record read as requested.)

7           MR. McMULLEN:  Objection, vague, form.

8      A  Otherwise -- I'm sorry.  Other than the NFL

9   Madden, sort of general knowledge of existence of

10  such license, but not the actual details of it, I do

11  not.

12     Q  Well, and your knowledge of a potential

13  Madden license is only based on speculation, right?

14     A  It's based on market research.

15     Q  But you have not seen anyone from EA who has

16  said we have a license, right?

17     A  Not that I recall, but I wouldn't be

18  surprised either way.  It was not a focus of my

19  analysis.

20     Q  It's not just that you don't recall.  You

21  have not seen anyone from EA saying they licensed

22  the tattoos in their game, right?

23     A  It is that I don't recall.  I mean, I've

24  seen references to that topic.  It's possible that

25  there was some discussion with a company