# EXHIBIT C

**Proposed Jury Instructions**

Where Plaintiff and Take-Two have disputed instructions, those are labeled as "Disputed" and each party's proposal is separately indicated.

**[AGREED] Jury Instruction No. 1: General Instructions**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, then you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, then you must disregard that impression. You are the sole judges of the facts of this case.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.


Authority:
Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2021-2022 ed.) (modified).

**[AGREED] Jury Instruction No. 2: Burden of Proof**

Plaintiff, James Hayden has the burden to prove every essential element of his claim by a preponderance of the evidence. If plaintiff James Hayden should fail to establish any essential element of his claim by a preponderance of the evidence, you should find for defendants, 2K Games, Inc. and Take-Two Interactive Software, Inc. as to that claim. I will explain the elements of Plaintiff's claims later.

In turn, the defendants, 2K Games, Inc. and Take-Two Interactive Software, Inc., have the burden of establishing every essential element of their affirmative defenses. I will explain the elements of 2K Games, Inc.'s and Take-Two Interactive Software, Inc.'s affirmative defenses later.

"Establish by a preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more probable than not. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard applicable in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds. Preponderance simply means more likely true than not true.

Authority:
Kevin F. O'Malley et al., 3 Fed. Jury Prac. & Instr. § 104.01 (6th Ed.) (modified).

**[AGREED] Jury Instruction No. 3: Evidence**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven. Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Certain things are not to be considered as evidence. These are:

- Any testimony or exhibits I may have stricken from the record and told you to disregard. Such testimony or exhibits are not evidence and may not be considered.
- Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.
- Questions and objections or comments by lawyers. Attorneys have a duty to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or my ruling on it except, as explained just now, you may not consider evidence I strike.
- The lawyers' opening statements and closing arguments are not evidence. Their purpose is to discuss the issues and the evidence and assist you in interpreting them.

Authority:
Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2021-2022 ed.).

**[AGREED] Jury Instruction No. 4: Witnesses**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that single witness.

Authority:
Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2021-2022 ed.).

**[AGREED] Jury Instruction No. 5: Expert Witnesses**

   When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

<u>Authority:</u>
Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2021-2022 ed.).

**[AGREED] Jury Instruction No. 6: Deposition Testimony**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, then that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers were shown to you by video.

This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

[This instruction is included if it becomes necessary due to Deposition Testimony being introduced during the trial.]

Authority:
Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2021-2022 ed.).

**[AGREED] Jury Instruction No. 7: Demonstrative Evidence**

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence.

Authority:
Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2021-2022 ed.).

**[DISPUTED] Jury Instruction No. 8: Copyright Introduction**

To help you understand the evidence in this case, I will explain some of the legal terms you have heard during the trial.

[**Mr. Hayden:** To start, what is a "copyright?" A copyright is the name for the protection the law extends to an author of a work against the unauthorized appropriation of that work by others. Examples of works include paintings, drawings, photographs and books. To be protected under copyright law, the work must exist in a fixed form, be original, and contain at least some degree of creativity. Copyrights apply to specific works, not people. You are probably accustomed to hearing the word "author" used for writings, such as a novel, but under copyright law, any creator of an original work that is protectable is referred to as an author. That is the term we use in copyright law for the creator of an original work.

The copyright owner generally has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time. One who reproduces a copyrighted work or prepares derivative works during the term of the copyright infringes the copyright, unless given permission to do so by the copyright owner.

For a copyright to be valid, the work does not need to be unique or novel, it must simply be "original." "Original," is a specific legal term used in copyright law. It means that the work was independently created by the author and that it possesses at least some minimal degree of creativity. The bar to meet the requirement of creativity is extremely low, even a slight amount will suffice.

The owner of a copyright—has among other rights—the exclusive right to do, and to authorize others to do, the following: (1) to reproduce the copyrighted work in copies; (2) to prepare derivative works that are based on the copyrighted work; and (3) to distribute copies of, including derivative works based on, the copyrighted work to the public by sale, rental, lease, or lending. One who violates any of these exclusive rights infringes the copyright.

"Copying" is a shorthand reference to any infringement of the copyright holder's exclusive rights, not just literal copying.

A "derivative work" is a work that is based upon one or more preexisting works, including a revision, transformation, or adaptation of that preexisting work. A work may be "copied" by creating a derivative work; that is, a work that revises, transforms or adapts the work.][1]

---

[1] **Mr. Hayden** believes the language in his proposed instruction will be helpful to a jury in understanding the context of the remaining instructions, clearly explains the basics of what a copyright is and the background of copyrights to the jury, and obviates the need to have several separate instructions on issues like "Originality" or "Authorship."

**Take-Two** believes that it is confusing and repetitive to put so many concepts into an opening instruction that does not provide a complete description of the concepts being discussed.  For

[**Take-Two:** Copyright law defines when unauthorized copying of original works is permitted and not permitted.  When copying is not permitted, it is called infringement.  I will explain to you what it means for a work to be original and protected by copyright, and what kinds of copying are not permitted under the law.][2]

With that quick discussion of some of the terms used throughout the trial, I will refresh your memory regarding the nature of this suit. In this case, Plaintiff, James Hayden [**Mr. Hayden:** is the owner of] [**Take-Two:** claims to own] copyrights to six [**Mr. Hayden:** visual works that he created as][3] tattoos on three NBA players: LeBron James, Tristan Thompson, and Danny Green. The tattoos are entitled "Gloria," "Lion," "Shoulder Stars," "Fire," "Scroll," and "Brother's Keeper." I may refer to these six tattoos as the "Asserted Tattoos." Mr. Hayden claims that Defendants, 2K Games, Inc. and Take-Two Interactive Software, Inc., copied the Asserted Tattoos by creating derivatives of his Asserted Tattoos in producing their NBA 2K basketball video games and then distributing these for sale [**Mr. Hayden:** all without Mr. Hayden's permission as copyright owner],[4] and that such copying was an infringement of his copyrights. The video games at issue are *NBA 2K16*, *NBA 2K17*, *NBA 2K18*, *NBA 2K19*, *NBA 2K20*, and *NBA 2K Mobile*.  Sometimes I will refer to them as the "*NBA 2K* Games." Mr. Hayden is seeking damages from Defendants for copyright infringement.

Defendants deny infringing the Tattoos and assert four affirmative defenses that would mean that they did not infringe.  Defendants' affirmative defenses are license, *de minimis* use,

---

example, Plaintiff's instruction addresses some issues concerning originality, but does not address the idea/expression dichotomy or the *scènes à faire* doctrine, which are discussed in the instruction on originality below.  *See* Disputed Instruction No. 11.  Thus, Take-Two suggests breaking out these complicated concepts, such as authorship and originality, into separate instructions where they can be defined once and completely.  This is consistent with the Ninth Circuit Model Jury Instructions, which provide separate instructions on concepts, such as originality and authorship. *See* Ninth Cir. Model Jury Instruction Nos. 17.5–17.15 (modified).

[2] **Take-Two** believes that this instruction sufficiently introduces the concept of copyright.  Take-Two objects to Plaintiff's instruction to the extent "visual works that he created as tattoos" is redundant and suggests to the jury that Plaintiff authored the works at issue when that is disputed.

[3] **Take-Two** believes that two of the elements on which Plaintiff bears the burden of proof are ownership and authorship, which is for the jury to decide and should not be assumed in these instructions.

[4] **Take-Two** believes that, given that it has a license defense, stating in the jury instruction that such use was without Mr. Hayden's permission would confuse the jury.

**Mr. Hayden** disagrees that this is confusing, as it accurately describes what "Mr. Hayden claims" in this case.

fair use, and waiver.  I will describe copyright infringement and each of these affirmative
defenses in more detail later on.

<u>Plaintiff's Authority:</u>
*See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991); *ECIMOS, LLC v.
Carrier Corp.*, 971 F.3d 616, 631 (6th Cir. 2020); 17 U.S.C. § 106; Kevin F. O'Malley et al., 3
Fed. Jury Prac. & Instr. § 104.01 (6th Ed.) (modified).

<u>Defendants' Authority:</u>  Ninth Cir. Model Jury Instruction Nos. 17.5–17.15 (modified); *Feist
Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

**[AGREED] Jury Instruction No. 9: Copyright Infringement**

      Plaintiff, Mr. Hayden, contends that Defendants, 2K Games and Take-Two Interactive Software, directly infringed his copyrights in the Asserted Tattoos. To prove infringement, Plaintiff must prove the following by a preponderance of the evidence:

1. Plaintiff owns a valid copyright in the Asserted Tattoos; and

2. Defendants copied elements of the Asserted Tattoos that are original.

Authority:
*See* 17 U.S.C. § 106; *see also Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004); *citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2021-2022 ed.) (modified).

**[DISPUTED] Jury Instruction No. 10: Ownership**

Plaintiff has the burden to prove by a preponderance of the evidence that he owns a valid copyright in the Asserted Tattoos.

[**Mr. Hayden:** Under the Copyright Act, the ownership of a copyright vests initially in the author or authors of the work. Generally speaking, the author is the party who actually creates the work, that is, the person who takes an idea and turns it into a fixed, tangible expression.][5]

[**Take-Two:** To prove that he is the owner of a valid copyright, Plaintiff must show by a preponderance of the evidence that:

1.   Each Tattoo is original to Plaintiff;

2.   Each Tattoo is fixed in a tangible medium; and

3.   Plaintiff authored each Tattoo.

A certificate of copyright registration, obtained before or within five years after the first publication of the work, is evidence that the copyright is valid and the registrant owns the copyright. [**Mr. Hayden:** Plaintiff's certificates of registration create a presumption of validity and ownership. Although the presumption may be rebutted, it is the burden of the party challenging the copyright to do so.] [**Take-Two:** The presumption of validity may be rebutted if Take-Two can offer offer some evidence or proof to dispute or deny validity, including where a copyrighted work was copied from a pre-existing work.][6]

---

[5] **Mr. Hayden** proposes the language in the first paragraph because it concisely and accurately describes ownership and authorship without requiring a separate instruction. Plaintiff object to Defendants' language because it fails to describe authorship and conflates validity with ownership. There are already separate instructions on originality and fixation. This instruction should be about determining *who* owns the copyright, not validity.

**Take-Two** believes its language is more consistent with the elements of copyright ownership and the Ninth Circuit Model Jury Instruction, which provides that Plaintiff must prove: "(1) the plaintiff's work is original; and (2) the plaintiff is the author or creator of the work."  Ninth Circuit Model Jury Civil Jury Instruction No. 17.6; *see also* Seventh Circuit Pattern Jury Instruction No. 12.4.1.

[6] **Take-Two** believes that Plaintiff's copyright registrations are not entitled to a presumption of validity.  First, Plaintiff seems to argue in these instructions that the Asserted Tattoos are unpublished, which would make the presumption inapplicable under § 410(c). *See Williams v. Warner/Chappell Music*, No. 07 Civ. 2683, 2007 WL 9751921, at *4 (C.D. Cal. Sept. 26, 2007); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04 Civ. 0604, 2004 WL 1781009, at *6 (S.D.N.Y. Aug. 10, 2004) (finding nothing in the Copyright Act "speaks to what kind of evidentiary weight should be afforded, prima facie or otherwise, to *unpublished* works.")

<u>Plaintiff's Authority</u>:
*See* 17 U.S.C. § 102; 17 U.S.C. § 201(a); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995); Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2021-2022 ed.) (modified).

<u>Defendants' Authority</u>: *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004).

---

As Take-Two explained in its opposition to Plaintiff's partial motion for summary judgment, if the date of publication is when the Tattoos were inked, they were filed more than five years after publication and, thus, the presumption does not apply.  Dkt. 112.  If the works were unpublished, as Plaintiff suggests herein, then the works are not entitled to the presumption. And even if they are entitled to the presumption, Take-Two contends that language is needed to explain what it takes to rebut the presumption, which is a low bar.

**Mr. Hayden** disagrees that any of his works are not entitled to a presumption of validity. Take-Two has not cited any evidence that any of his Asserted Works were published five years before registration (Take-Two has cited the certificates of registration, apparently conflating date of "creation" with date of "publication"). Hayden also objects to Take-Two's proposed language because there is no need to *suggest* what evidence would rebut the presumption when there are separate instructions on Originality and Fraud on the Copyright Office.

## [DISPUTED] Jury Instruction No. 11: Originality

[**Mr. Hayden:** In contesting the validity of the Asserted Tattoos, Defendants contend that certain of Plaintiff's Asserted Works are not original. Because certificates of registration create a presumption of validity, it is Defendants' burden to prove that every element of the Asserted Tattoos is not original.] [**Take-Two:** Plaintiff must prove by a preponderance of the evidence that each Tattoo was original.][7]

A work is original if it was created independently, as opposed to being copied from another work or a work in the public domain. [**Mr. Hayden:** The selection, organization, and orientation of pre-existing elements can satisfy the originality requirement.] To be original, the work also must contain at least some minimal degree of creativity. [**Mr. Hayden:** The required level of creativity is extremely low; even a slight amount will suffice.][8]

[**Take-Two:** Elements of a work that are not original, and therefore not protected by copyright law, include: (a) facts, ideas, or concepts embodied in the Tattoos; (b) fonts and typefaces; (c) names; (d) images and motifs that are standard in tattooing; (e) anything copied from a preexisting work; and (f) anything in the public domain.][9]

---

[7] **Mr. Hayden's** language regarding the burden accurately represents the legal burdens given that Plaintiff has copyright registrations, which cannot be disputed, and is legally correct.

**Take-Two** contends that three of the Tattoos are not entitled to a presumption, as they were registered more than five years after publication.  *See* 17 U.S.C. § 410(c), Dkt. 112 at 7.  Where there is a presumption, Take-Two need only "offer some evidence or proof to dispute or deny the plaintiff's prima facie case." *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).  Moreover, the presumption of validity already is addressed in the prior instruction, making it unnecessary and confusing to address it twice.  In addition, there is no legal requirement that Take-Two prove every element of the Asserted Works is *not* original.

[8] **Take-Two** contends that the parties already have agreed to an instruction on the requisite level of creativity, quoting language from the Supreme Court's *Feist* decision.  Plaintiff's additional language from the opinion is unnecessary and, without the context from the Supreme Court's opinion, may confuse the jury.

**Mr. Hayden** disagrees that the instruction on the requisite level of creativity would be confusing. It is an accurate statement of the law verbatim from the Supreme Court's decision in *Feist*.

[9] **Mr. Hayden** objects to Defendants' because it is argumentative, leading, prejudicial, and incomplete.

<u>Plaintiff's Authority</u>: *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995); *Hiller, LLC v. Success Group International Learning Alliance, LLC*, 976 F.3d 620, 625 (6th Cir. 2020); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

<u>Defendants' Authority</u>: 17 U.S.C. §§ 101 (definition of "derivative work"), 102(a), 103; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991); *Sem-Torq v. K Mart Corp.*, 936 F.2d 851, 854 (6th Cir. 1991); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980); *Psychopathic Recs., Inc. v. Anderson*, No. 08 Civ. 13407, 2009 WL 2591385, at *2 (E.D. Mich. Aug. 24, 2009); *Ray v. Credit Union One*, No. 06 Civ. 11694, 2007 WL 522700, at *2 (E.D. Mich. Feb. 14, 2007); *Hayden v. 2K Games, Inc.*, 375 F. Supp. 3d 823, 827 (N.D. Ohio 2019)

---

==Take-Two== believes that this language is more consistent with the cited authority. *See* Ninth Circuit Model Civil Jury Instruction No. 17.14 (modified).  It would be misleading not to inform the jury on the limits of copyright protection.

**[DISPUTED]<sup>10</sup> Jury Instruction No. 12: Fixation**

[**Mr. Hayden:** In contesting the validity of the Asserted Tattoos, Defendants contend that certain of Plaintiff's Asserted Works are not fixed in a tangible medium. Because certificates of registration create a presumption of validity, it is Defendants' burden to prove that the Asserted Tattoos are not fixed in a tangible medium.]

[**Take-Two:** Plaintiff must prove by a preponderance of the evidence that each Tattoo was fixed.]

A work is fixed in a tangible medium when it is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.

Plaintiff's Authority: 17 U.S.C. § 101 (definition of "fixed"); *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995)

Defendant's Authority:
17 U.S.C. § 101 (definition of "fixed"); *Strombock v. New Line Cinema*, 384 F.3d 283, 301 (6th Cir. 2004.

---

<sup>10</sup> **Mr. Hayden** objects to having a separate instruction on "Fixation" as its meaning is plain and referenced in the Mr. Hayden's proposed "Ownership" instruction. Mr. Hayden's language regarding the burden is legally correct given that Mr. Hayden has copyright registrations. Defendants have not cited any evidence showing that Mr. Hayden published the Asserted Works five years before registration. Mr. Hayden objects to Take-Two's language as misrepresenting the burden of proof and the statutory definition of "fixed." Their language is legally incorrect

**Take-Two** believes that the works are not entitled to the presumption, or the presumption has been rebutted, and therefore Plaintiff must prove fixation as an element of the claim and must be instructed on its technical meaning under copyright law. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Contrary to Plaintiff's position on the presumption, three of the Tattoos are not entitled to a presumption at all, and the evidence necessary to rebut the presumption is minimal. *See Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement.").

**[DISPUTED] Jury Instruction No. 13: Registration**

[**Take-Two:** A copyright owner may obtain a certificate of registration from the Copyright Office.  A plaintiff cannot bring a copyright case for any work until it has been registered with the U.S. Copyright Office, which occurs when the Register of Copyrights issues a registration certificate after examining a properly filed application. Plaintiff must prove by a preponderance of the evidence that each Tattoo was registered before he filed this lawsuit.][11]

Authority:

17 U.S.C. § 410(c); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*; 139 S. Ct. 881, 888–92 (2019); *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

---

[11] **Mr. Hayden** objects to this instruction as a whole because it is undisputed that Mr. Hayden owns copyright registrations for each Asserted Tattoo. Whether those certificates resulted from a "properly filed application" is a legal issue that Defendants have not brought before this Court and is not an appropriate factual issue for a jury to decide.

**Take-Two** contends that this is an element of the claim and it is in dispute, as Take-Two asserts that the registrations contain inaccurate information and are therefore are not valid.

## [DISPUTED] Jury Instruction No. 14: Fraud on the Copyright Office

In contesting the validity of the Asserted Tattoos, Defendants contend that the copyrights on the Asserted Tattoos are invalid.  [**Mr. Hayden**: due to fraud on the Copyright Office]

[**Plaintiff:**  Because certificates of registration create a presumption of validity, it is Defendants' burden to prove that this allegation. In so doing, Defendants must prove (1) the applications for the copyrights were factually inaccurate; (2) the inaccuracies were willful or deliberate; and (3) the Copyright Office relied on those misrepresentations. Neither innocent misstatements, nor deliberate, but nonmaterial misstatements, will overcome the presumption of validity.]**12**

[**Take-Two:** Even if Plaintiff can show that his copyright registrations are entitled to a presumption of validity, you may find that his copyright registrations in the Tattoos are invalid and the presumption has been rebutted if Defendants can show (1) the copyright registrations contains inaccurate information; (2) Plaintiff knew the information contained in the registrations was inaccurate; and (3) the inaccuracy, if known, would have caused the Register of Copyrights to refuse the registration.]13 [**Mr. Hayden:** Neither innocent misstatements, nor deliberate, but nonmaterial misstatements, will overcome the presumption of validity.]

---

12 **Mr. Hayden's** proposed language regarding the burden and test for fraud on the Copyright Office accurately represents the law. **Mr. Hayden** objects to Defendants' language because it fails to note Defendants' burden and incorrectly omits that the inaccuracies must be *willful* or *deliberate*. Defendants' language is legally incorrect.

**Take-Two** disagrees that all of Plaintiff's copyright registrations are entitled to a presumption of validity.

13 **Take-Two** argues that 17 U.S.C. § 411(b) codified the defense of fraud on the Copyright Office, so it is the proper standard to apply here.  *See* U.S., Annual Report of the Register of Copyrights, Fiscal Year Ending, September 30, 2008 12-13.  Take-Two's proposed instruction quotes language directly from 17 U.S.C. § 411(b), which provides that a certificate of registration with inaccurate information does not meet the requirements of registration under the statute where "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."

**Mr. Hayden** notes that 17 U.S.C. § 411(b) does not set forth the test for the defense of Fraud on the Copyright Office, further demonstrating why Defendants' proposed language is legally incorrect.

<u>Plaintiff's Authority</u>: *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, 3:17-cv-42, 2019 WL 4647305 at *7 (S.D. Ohio Sep. 24, 2019); *Jedson Engineering, Inc. v. Spirit Const. Services, Inc.*, 720 F. Supp. 2d 904, 913 (S.D. Ohio 2010).

<u>Defendants' Authority:</u>
17 U.S.C. § 411(b); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941 (2022); *Automated Solutions Corp. v. Paragon Data Sys., Inc.,* No. 1:05 CV 1519, 2008 WL 2404972, at *11 (N.D. Ohio June 11, 2008); U.S., Annual Report of the Register of Copyrights, Fiscal Year Ending, September 30, 2008 12-13.

## [DISPUTED][14] Jury Instruction No. 15: Authorship

[**Plaintiff**: In contesting the validity of the Asserted Tattoos, Defendants contend that Plaintiff is not the author of certain of Plaintiff's Asserted Works. Because certificates of registration create a presumption of validity, it is Defendants' burden to prove that Plaintiff is not the author. As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection.]

[**Take-Two:** Plaintiff must prove by a preponderance of the evidence that he is the author of the Tattoos. The creator of an original work is called the author of that work. An author is the inventor or mastermind of an original work, controlling the whole work's creation, and causing it to come into being. Merely fixing an idea into tangible medium of expression does not make the person who fixes the work the author. If the fixer follows another person's instructions and fixes the work according to those instructions, or if the other person exercised decision-making authority over what changes were made and what was included, the fixer is not the author of the work.]

Plaintiff's Authority: 17 U.S.C. § 102; *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).

Defendant's Authority:

---

[14] **Mr. Hayden** objects to having a separate instruction for authorship, as a description of authorship is already included in Mr. Hayden's proposed "Ownership" instruction. If needed, Mr. Hayden's instruction is more appropriate, as it accurately describes the burden and the authorship language is verbatim from controlling authority. Defendants must rebut the presumption of validity at trial—not in the jury instructions. Defendants' instruction inaccurately reflects their cited authority, contains attorney argument, and improperly raises the legal bar for authorship requirement. Defendants' language is legally incorrect.

**Take-Two** believes that the works are not entitled to the presumption, or the presumption has been rebutted, and therefore Plaintiff must prove authorship as an element of the claim and must be instructed on its technical meaning under copyright law. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Contrary to Plaintiff's position on the presumption, three of the Tattoos are not entitled to a presumption at all as there were not filed within five years of publication, and the evidence necessary to rebut the presumption is minimal. *See Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."). Moreover, Take-Two's instruction quotes directly from Supreme Court case law. *See Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884) ("'author' involves originating, making, producing, as the inventive or master mind").

17 U.S.C. § 201(a); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 57–58 (1884); *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 260 (2d Cir. 2015); *Brod v. General Publishing Group, Inc.,* 32 F. App'x 231 (9th Cir. 2002).

**[DISPUTED] Jury Instruction No. 16: Copying**

[==Take-Two:==  Plaintiff must prove by preponderance of the evidence both (1) factual copying and (2) legally actionable copying to prevail on his copyright claim.  To show factual copying, Plaintiff must prove that Defendants actually used the Asserted Tattoos to create the NBA 2K Games.  To show legally actionable copying, Plaintiff must show that the NBA 2K Games and the Asserted Tattoos are substantially similar.  To determine substantial similarity, you must filter out the unoriginal or unprotectable elements of the Asserted Tattoos, and compare only the protectable elements of the Asserted Tattoos to the NBA 2K Games.]**[15]**

[==Take-Two:== Factual] Copying may be established, as is the case with other facts, by direct or circumstantial evidence. An example of direct evidence would be an admission by Defendants that all or part of the work was copied. Direct evidence may also be the credible testimony of a witness who saw the work being copied. An example of circumstantial evidence would be that Defendants exerted efforts to obtain a copy of Plaintiff's work, and Defendant's work appeared soon after Defendant obtained a copy. [==Take-Two:== In determining whether Plaintiff has proved copying, you may consider evidence that Defendants only copied unprotectable expression, that Defendants' work was created independently, or that Defendants had authority to copy the Tattoos.]

In considering the evidence, you should take into account all the evidence presented by Plaintiff and Defendants and give the evidence the weight you think it deserves, whether it is direct or circumstantial evidence.

Plaintiff's Authority: Alan N. Harris et al., Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation (1st ed. 2008) (modified).

---

[15] ==Mr. Hayden== objects to Defendants' language throughout this instruction because it addresses issues already described in other instructions (*e.g.*, the protectability of the copyright and authorization) and attempts to complicate "copying" with considerations about Defendants affirmative defenses which are addressed in separate instructions (*see* Instruction Nos. 11, 18, and 24).

==Take-Two== asserts that this instruction is consistent with the law, as proving copying of protectable elements of the work is an element of Plaintiff's claim. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (finding a plaintiff must show both "ownership of a valid copyright" *and* "that the defendant copied protectable elements of the work." and distinguishing between factual and legal copying).  In *Lexmark*, the Sixth Circuit considered not only whether the work was original, but whether original parts of expression were copied.  *Id.* This is not an affirmative defense, but a part of Plaintiff's claim on which he bears the burden of proof.

<u>Defendant's Authority</u>: Alan N. Harris et al., Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation (1st ed. 2008) (modified); Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2021-2022 ed.) (modified); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004); *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 536-39 (6th Cir. 2020); *see also Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004); *Parker v. Winwood*, 938 F.3d 833, 836 (6th Cir. 2019); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006); *Kohus v. Mariol*, 328 F.3d 848, 853-57 (6th Cir. 2003); *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999);  *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004); *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 67 (1st Cir. 2009); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534–35 (6th Cir. 2004); *Tiseo Architects, Inc. v. B&B Pools Service & Supply Co.*, 495 F.3d 344, 348 (6th Cir. 2007); *Ellis v. Diffie*, 177 F.3d 503, 507 (6th Cir. 1999); *Great Minds v. FedEx Office & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018).

## [DISPUTED][16] Jury Instruction No. 17: Indirect Infringement

[**Take-Two:** Plaintiff claims that Defendants are also liable for indirectly infringing his Asserted Tattoos. To prove indirect infringement, Plaintiff must show that Defendants' customers or players of *NBA 2K* directly infringed his copyrights in the Asserted Tattoos, as defined in the instructions I just gave you.

Plaintiff also must prove either that Defendants, with knowledge of the infringing activity, intentionally induced or encouraged direct copyright infringement of their customers or players of the *NBA 2K* Games or Plaintiff must show that Defendants had the right and ability to control their customers or players of *NBA 2K* Games' actions and have received a direct financial benefit from their customers or players of *NBA 2K* Games' infringement of Plaintiff's copyrights in the Asserted Tattoos.

If you find that there has been no direct infringement of the Tattoos, then you should find for Defendants on this claim.]

[**Mr. Hayden**: Plaintiff claims that Defendants are also liable for indirectly infringing his Asserted Tattoos. To prove indirect infringement, Plaintiff must show that Defendant, with knowledge of the infringing activity, either:

1.  intentionally induced or encouraged others to infringe his copyrights in the Asserted Tattoos, or

2.  had the right and ability to control others' activity that resulted in infringing Mr. Hayden's copyrights in Asserted Tattoos and have received a direct financial benefit from such infringement.]

Plaintiff's Authority: *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31 (2005)

Defendants' Authority:

---

[16] **Mr. Hayden** objects to Defendants' language because it is confusing, redundant, and unnecessary. It also specifically calls out "customers or players" as the direct infringers, which is improperly limiting. The direct infringer can be any third-party. Mr. Hayden's proposed language more accurately tracks the case law and uses more neutral language.

**Take-Two** asserts that its language correctly recites the test laid out in *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31 (2005), and the last sentence is necessary because without direct infringement, there can be no indirect infringement, a fact that Plaintiff's instruction leaves out. *See Matthew Bender & Co., Inc. v. West Publ'g Co.,* 158 F.3d 693, 706 (2d Cir. 1998); *Subafilms, Ltd. v. MGM–Pathe Commc'ns Co.,* 24 F.3d 1088, 1092 (9th Cir. 1994).  Moreover, Plaintiff has not identified any other alleged direct infringers, other than customers and players.

*MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31 (2005); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971); *Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004); *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615 (6th Cir. 2004); *Matthew Bender & Co., Inc. v. West Publ'g Co.,* 158 F.3d 693, 706 (2d Cir. 1998); *Subafilms, Ltd. v. MGM–Pathe Commc'ns Co.,* 24 F.3d 1088, 1092 (9th Cir. 1994).

**[DISPUTED] Jury Instruction No. 18: Affirmative Defenses**

[**Mr. Hayden**: Defendants have asserted four affirmative defenses. It is Defendants' burden to prove these defenses by a preponderance of the evidence. If you find that Defendants have proved all the elements of one or more of these affirmative defenses, your verdict should be for Defendants. If you find that Plaintiff proved the elements of his copyright claim and Defendants did not prove one or more of their affirmative defenses, your verdict should be for Plaintiff.][17]

[**Take-Two:** Defendants assert that, even if Plaintiff establishes the elements of his copyright claims, there was no infringement because any copying was authorized by Plaintiff or the law.  Plaintiff disagrees.]  Defendants' affirmative defenses are:

1. Fair Use

2. Implied License;

3. De Minimis Use; and

4. Waiver.

I will explain what each of these affirmative defenses mean.

[**Take-Two:** If you find that Defendants have proved one or more of these affirmative defenses, your verdict should be for Defendants.  If you find that Plaintiff proved the elements of his copyright claim and Defendants did not prove any of their affirmative defenses, your verdict should be for Plaintiff.]

---

[17] **Mr. Hayden** proposes this language because it accurately reflects the burden of proof for Defendants' affirmative defenses.

**Take-Two** believes its proposals are less redundant, and ensure that the jury understands that affirmative defenses can apply even if Plaintiff proves copyright infringement.  *See*, *e.g.*, *See Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583–84 (1994) (fair use applied even where copying would otherwise "be an infringement" of the plaintiff's copyrights).

## [DISPUTED] Jury Instruction No. 19: The Defense of Fair Use

[**Take-Two:** One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest.  Such use of a copyrighted work is called a fair use.  Defendants claim even if they copied protected expression in Plaintiff's work, that copying is not copyright infringement because the use qualifies as "fair use." Defendants have the burden of proving fair use by a preponderance of the evidence.  In determining fair use, the factors you must consider include:][18]

[**Mr. Hayden:**  Under certain circumstances, the doctrine of fair use permits a person to use copyrighted material without the permission of the copyright owner. The purpose of the fair use doctrine is to permit limited copying from copyrighted works in specific circumstances that authors reasonably expect and that allow productive use of the work without unfairly undermining the protection afforded by copyright law. According to the Copyright Act, fair use can include, but is not limited to, uses such as criticism, comment, news reporting, teaching, scholarship, or research. To determine whether Defendants' use qualifies as "fair use," you must consider four specific factors:][19]

    1.   The purpose and character of the Defendants' use including whether such use is of a commercial nature or is for nonprofit educational purposes;

    2.   The nature of Plaintiff's work;

---

[18] **Take-Two's** proposed instruction quotes from the Ninth Circuit Model Jury Instruction No. 17.22.  Moreover, it is Supreme Court precedent that transformativeness is part of the first factor.  *See Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583–84 (1994) ("Under the first of the four factors . . . the enquiry focuses on whether the new work merely supersedes the objects of the original creation, or whether and to what extent it is 'transformative,' altering the original with new expression, meaning, or message.")

**Mr. Hayden** objects to Take-Two's language as being redundant, inaccurate, and attorney argument, and thus legally incorrect.

[19] **Mr. Hayden's** language is important and accurate context for understanding what constitutes fair use and includes the statutory purposes and examples (e.g., criticism, comment, etc.).

**Take-Two** believes that Plaintiff's proposed language is not consistent with the law and, rather, is intended to bias the jury.  For example, contrary to Plaintiff's suggestion that fair use applies only where "authors reasonably expect" it, fair use does not turn on what authors expect.  Likewise, listing examples of fair use may confuse the jury into believing that Take-Two's use cannot be fair use because it is not included in the list provided.

3.  The amount and substantiality of the portion used in relation to Plaintiff's work as a whole; and

4.  The effect of Defendants' use on the potential market for or value of Plaintiff's work.

All of the factors should be weighed together.  It is up to you to decide how much weight to give each factor, but you must consider all of them.

<u>Plaintiff's Authority</u>: 17 U.S.C. § 107; *Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, 1390 fn. 5 (6th Cir. 1996); Alan N. Harris et al., Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation (1st ed. 2008) (modified).

<u>Defendant's Authority</u>: *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583–84 (1994); *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 544 (6th Cir. 2004).

**[DISPUTED][20] Jury Instruction No. 20: The Purpose and Character of the Use**

[**Mr. Hayden**: In considering the purpose and character of the use, you must determine how Defendants used the copyrighted work. Is the use of the copyrighted work by Defendants one that is primarily for nonprofit educational purposes or is it primarily for commercial purposes? Have Defendants used Plaintiff's work as part of an original work created by Defendants? Have Defendants transformed the copyrighted work, altering it with new expression, meaning, or message? If the answers to the last two questions are "yes," and if the use is primarily for nonprofit educational purposes as opposed to commercial gain, then you may find that this factor weighs in favor of a finding of fair use. If not, then you may find that this factor weighs against a finding of fair use.]

[**Take-Two**: In considering the purpose and character of the use, you should consider how Defendants used the copyrighted work. You should consider whether Defendants use the Tattoos in the *NBA 2K* Games is for the same purpose as Plaintiff, or whether instead they use the Tattoos with a further purpose or different character.  This is known as the "transformative use" inquiry.  Although transformative use is not necessary for a finding of fair use, the goal of copyright is generally furthered by the creation of transformative works, and the more transformative the new work, the less the significance of other factors, like commercialism, that may weigh against a finding of fair use.  A secondary use can be transformative in function or purpose even without altering or actually adding to the original work.  In determining whether the *NBA 2K* Games are transformative, you may consider (a) whether Defendants use the Tattoos for the same purpose as Plaintiff or for a different purpose; (b) the size of the Tattoos in the real world compared to their size in the *NBA 2K* Games; (c) whether the Tattoos are combined with

---

[20] **Mr. Hayden's** proposed language is impartial and substantively verbatim from the cited model instruction. Mr. Hayden objects to Defendants' proposed language because it inaccurately describes the law and is *severely* biased and drafted to emphasize one consideration (transformative use) over other considerations (e.g., commercial use, which Defendants also inaccurately describe) so as to suit the arguments Defendants' intend to make at trial. Defendants' proposed language is legally incorrect.

**Take-Two** contends that Plaintiff's proposed instruction creates a three part test that a work be transformative, used as part of an original work, and used primarily for nonprofit educational purposes as opposed to commercial gain in order to be fair use; that is not the law.  *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 544 (6th Cir. 2004) (finding "it is not the case that *any* profit-making purpose weighs against fair use").  Take-Two's instruction quotes directly from the cited authority, and is consistent with the black letter law. *See, e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583–84 (1994) (considering "whether the new work merely supersed[s] the objects of the original creation, or instead adds something new, with a further purpose or different character").  Take-Two's proposed language is also necessary to help the jury understand what facts it can consider in assessing this factor.

other material or put in a context that minimizes their value as graphical works; and (d) how often the Tattoos appear in the *NBA 2K* Games compared to other elements in the games.

You also should consider whether Defendants' use of the Tattoos was commercial in nature or for non-commercial purposes, which you can determine based on whether Defendants directly profited from their use of the Tattoos.]

<u>Plaintiff's Authority</u>: 17 U.S.C. § 107; *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 582 (6th Cir. 2007); *Balsley v. LFP, Inc.*, 691 F.3d 747, 758 (6th Cir. 2012); *Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, 1383 (6th Cir. 1996); Alan N. Harris et al., Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation (1st ed. 2008) (modified).

<u>Defendants' Authority</u>: 17 U.S.C. § 107; *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583–84 (1994); *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 544 (6th Cir. 2004); *Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 940 (4th Cir. 2013); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609–612 (2d Cir. 2006); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 346–350 (S.D.N.Y. 2020); *Castle v. Kingsport Publ'g Corp.*, No. 19 Civ. 92, 2020 WL 7348157, at *5 (E.D. Tenn. Dec. 14, 2020); *Monster Commc'ns, Inc. v. Turner Broad. Sys, Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996); *Kelly v. Arriba Soft Corp.* 336 F.3d 811, 818 (9th Cir. 2003); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980); *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014); *Final Charge to the Jury, Oracle America, Inc. v. Google Inc.,* No. 10 Civ. 03561 (modified).

### [DISPUTED] Jury Instruction No. 21: The Nature of Plaintiff's Work

In considering the nature of Plaintiff's work, you should evaluate the extent to which the Tattoos are creative works (for example, a work of fiction), which enjoy broader copyright protection, as opposed to a factual works (for example, a newspaper article), which allows for broader dissemination. You should also consider whether the Tattoos are published or unpublished.  Works are published when they are distributed to the public [**Mr. Hayden:** by sale or other transfer of ownership by the copyright owner.] [**Take-Two:**  by distribution of copies of a work for purposes of further distribution, public performance, or public display.  A work is not creative if it is a mere reproduction of a prior work in a different medium.] [21]

If you determine that the work is creative, then then you may find that this factor weighs against a finding of fair use.  [**Take-Two:** If you find that the *NBA 2K* Games' use of the Tattoos is related to its role conveying historical facts, then the creative nature of the Tattoos matters much less than it otherwise would.] [22]

Plaintiff's Authority: 17 U.S.C. § 101 (Definition of "Publication"); *Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985).

---

[21] **Mr. Hayden's** proposed text provides important language from the definition of "published" in the Copyright Act and case law. Mr. Hayden objects to Defendants' proposed language because it is inaccurate and incomplete. In particular, this factor (the nature of *Mr. Hayden's work*) does not consider how Defendants used it—that is a consideration for the first factor. Defendants' language is legally incorrect.

**Take-Two** contends that its proposal quotes directly from precedent and provides helpful context to the jury on what is creative.  *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980) ("mere reproduction" into a "different medium" was not sufficiently original).  Take-Two's definition of "publish" is consistent with the definition provided in the Copyright Act.  17 U.S.C. § 101.

[22] **Take-Two** asserts that this instruction is proper because it is black letter Supreme Court law precedent that the second factor is entitled to less weight in cases where a work is transformative, and it is necessary to explain to the jury that the weight afforded to this factor is directly related to Factor 1.  *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609–613 (2d Cir. 2006) ("Accordingly, we hold that even though BGA's images are creative works, which are a core concern of copyright protection, the second factor has limited weight in our analysis because the purpose of DK's use was to emphasize the images' historical rather than creative value."); *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 586 (1994) (second factor not "likely to help much" where use was transformative).

<u>Defendants' Authority</u>: *Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985); *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583–84 (1994); *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 544 (6th Cir. 2004); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980); *Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 940 (4th Cir. 2013); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609–612 (2d Cir. 2006); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 346–350 (S.D.N.Y. 2020); *Castle v. Kingsport Publ'g Corp.*, No. 19 Civ. 92, 2020 WL 7348157, at *5 (E.D. Tenn. Dec. 14, 2020); *Monster Commc'ns, Inc. v. Turner Broad. Sys, Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996); *Kelly v. Arriba Soft Corp.* 336 F.3d 811, 818 (9th Cir. 2003); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980); *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014).

**[DISPUTED] Jury Instruction No. 22: The Amount and Substantiality of the Portion of Plaintiff's Work Used in Relation to the Copyrighted Work as a Whole**

When you consider amount and substantiality of the portion of Plaintiff's work used in relation to the copyrighted work as a whole, you should consider how much of Plaintiff's work Defendants took and how important that portion is to Plaintiff's work. If you find that all or a substantial portion of the copyrighted work has been used by Defendants, you may find that this factor weighs against a finding of fair use. Copying an entire work [**Mr. Hayden:** weighs] [**Take-Two:** can weigh] against a finding of fair use [**Take-Two:** but it does not necessarily weigh against fair use where it is reasonable in relation to the purpose of the copying.].**23**

Plaintiff's Authority: *Balsley v. LFP, Inc.*, 691 F.3d 747, 760 (6th Cir. 2012); Alan N. Harris et al., Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation (1st ed. 2008) (modified).

Defendants' Authority: *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583–84 (1994); *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 544 (6th Cir. 2004); *Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 940 (4th Cir. 2013); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609–612 (2d Cir. 2006); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 346–350 (S.D.N.Y. 2020); *Castle v. Kingsport Publ'g Corp.*, No. 19 Civ. 92, 2020 WL 7348157, at *5 (E.D. Tenn. Dec. 14, 2020); *Monster Commc'ns, Inc. v. Turner Broad. Sys, Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996); *Kelly v. Arriba Soft Corp.* 336 F.3d 811, 818 (9th Cir. 2003); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980); *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014).

---

23 **Mr. Hayden** objects to Take-Two's language because it addresses Defendants' *use* of the work, which is already covered by Instruction No. 20 discussing the "Purpose and Character of the Use." The language thus overemphasizes that separate factor and is thus legally incorrect.

**Take-Two** contends that its instruction is more accurate and quotes directly from the law of this district.  *See Design Basics, LLC v. Petros Homes, Inc.*, 240 F. Supp. 3d 712, 722 (N.D. Ohio 2017) ("The question is whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying.").

**[DISPUTED] Jury Instruction No. 23: The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work**

In considering the effect of the Defendants' use on the potential market for or value of the copyrighted work, you should consider whether Defendant's use [**Mr. Hayden:** has reduced the potential demand for Plaintiff's work or lessened the value of the Plaintiff's work. Where the Plaintiff clearly has an interest in licensing his works—and especially where the Plaintiff has actually succeeded in doing so—it is appropriate that potential licensing revenues for copying be considered.] [**Take-Two:** of the Tattoos in the *NBA 2K* Games harms an existing market for the Tattoos or a market for the Tattoos that was reasonable, traditional, or likely to be developed in the future. You also may consider whether consumers would purchase the *NBA 2K* Games instead of the Tattoos.]²⁴  You also should consider whether widespread conduct like Defendants' would result in a substantially adverse impact on the potential market for the Asserted Tattoos.

Plaintiff's Authority: *Balsley v. LFP, Inc.*, 691 F.3d 747, 760 (6th Cir. 2012); *Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, 1388 (6th Cir. 1996).

Defendants' Authority: *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583–84 (1994); *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 544 (6th Cir. 2004); *Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 940 (4th Cir. 2013); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013); *Bill Graham Archives v. Dorling*

---

²⁴ **Mr. Hayden** proposes its language because it accurately describes the law and is *necessary* for the jury to understand in the context of the facts of this case—namely that **Mr. Hayden** has received licensing revenue for his Asserted Tattoos. This licensing language is directly from controlling precedent from the Sixth Circuit. *Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, 1388 (6th Cir. 1996). The language proposed by Defendants is not relevant to the facts of this case.

**Take-Two** proposes language that reflects the black letter law definition of market harm. *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006) (finding "we look at the impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets" (internal quotations omitted)). Take-Two objects to Plaintiff's instruction, as it is comprised of attorney argument that does not come from case law and goes beyond this accepted definition.  In particular, Take-Two notes that the phrase "interest in licensing" could confuse the jury into thinking it should consider whether Plaintiff had some hypothetical wish to license the Asserted Tattoos, when *Princeton University Press v. Michigan Document Services, Inc.*, makes clear that the question is whether the market is "traditional, reasonable, or likely to develop."  *See* 99 F.3d 1381, 1388 (6th Cir. 1996).

*Kindersley Ltd.*, 448 F.3d 605, 609–612 (2d Cir. 2006); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 346–350 (S.D.N.Y. 2020); *Castle v. Kingsport Publ'g Corp.*, No. 19 Civ. 92, 2020 WL 7348157, at *5 (E.D. Tenn. Dec. 14, 2020); *Monster Commc'ns, Inc. v. Turner Broad. Sys, Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996); *Kelly v. Arriba Soft Corp.* 336 F.3d 811, 818 (9th Cir. 2003); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980); *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014).

**[DISPUTED]²⁵ Jury Instruction No. 24: [Mr. Hayden: Implied] License**

[**Mr. Hayden:** Defendants assert that Plaintiff gave Defendants an implied license to use the copyrighted works. The burden is on Defendants to prove the existence of a license by a preponderance of the evidence.

A copyright holder may convey a non-exclusive implied copyright license for a particular use. Implied licenses are only found in narrow circumstances. The key to finding an implied license is in the intent of the copyright holder.

In order to find that an implied license was granted by Mr. Hayden that authorizes the Defendants' use of his copyrighted works, you must find that Mr. Hayden intended to grant a license that included the right to sublicense the use of his copyrights in the Asserted Tattoos to third-party video game makers for recreation and adaptation in video games.]

[**Take-Two**: If Defendants' use of the tattoos was authorized by Plaintiff, it is not copyright infringement.  Such authorization is called a license.  A license may authorize the licensed person or entity to license additional persons or entities.  This is referred to as a "sub-license."  The burden is on Defendants to prove the existence of a license by a preponderance of the evidence.  A license may be granted in a contract or through an oral agreement, which is called an explicit license.  A license also may be granted by conduct, which is called an implicit license.

---

²⁵**Mr. Hayden's** proposed instruction is simple, impartial, and accurately describes the implied license law in this Circuit. **Mr. Hayden** objects to Defendants' proposed instruction as overly complicated, inaccurate (as it applies a test not adopted by this Circuit), *highly biased*, and containing significant attorney argument. The instruction reads like Defendants' summary judgment brief and walks the jury through Defendants' convoluted licensing argument as if it is the law. Defendants' instruction is highly objectionable and legally incorrect.

**Take-Two** provides an instruction that follows the three-step test that has been accepted in this Circuit, and consistent with language in the Ninth Circuit Model Jury Instruction No. 17.25 (modified). *See Mahavisno v. Compendia Biosci., Inc.*, 164 F. Supp. 3d 964, 968–69 (E.D. Mich. 2016).  Plaintiff ignores that law in its instruction and does not follow any accepted legal test for implied license.  Plaintiff's instruction also does not accurately reflect what Take-Two is asserting: that Mr. Hayden impliedly licensed the Tattoos to *the NBA Players*, who granted Take-Two a sublicense.  And Plaintiff omits basic definitions, such as what a license or an implied license is, and what intent means, both of which require explanation to avoid confusing the jury.

Defendants contends that they are not liable for copyright infringement because Plaintiff granted the NBA Players an implied license in the Asserted Tattoos, and the NBA Players in turn granted Plaintiff an explicit license in the Asserted Tattoos through contracts with the NBA and NBAPA.

In order to show the existence of an implied license between the NBA Players and Plaintiff, Defendants have the burden of proving by a preponderance of the evidence that:

1.    the NBA Players requested that Plaintiff create the Asserted Tattoos;

2.    Plaintiff made the Asserted Tattoos and delivered them to the NBA Players; and

3.    Plaintiff intended that the NBA Players copy and distribute, and allow others to copy and distribute, Plaintiff's work.[26]

As to the third prong, you may consider whether the parties were engaged in a short term, discrete transaction, which supports a finding of an implied license.  You may also consider whether Plaintiff used written contracts providing that the Tattoos be used only with Plaintiff's express permission.  The lack of such contracts would support a finding of an implied license. Plaintiff's conduct at the time the Tattoos were created should also be considered.  Silence or lack of objection may be equivalent to a license.  You also may consider common industry practice in determining whether there is an implied license.[27]

If Defendants prove the existence of a license, the burden shifts to Plaintiff to show that the NBA Players acted outside the scope of the license.  Absent a limitation imposed on the implied license at the time the Tattoos were inked on the NBA Players, the license would permit all uses of the Tattoos.][28]

---

[26] **Mr. Hayden** objects to this three-factor test because Take-Two has not cited (and Mr. Hayden is unaware of) any controlling precedent that has adopted this 3-factor test. The Sixth Circuit has adopted a totality of the circumstances analysis focusing on the intent of the copyright holder and the *scope* (i.e., "particular purpose") of any such license. *See Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998). Moreover, the third factor as proposed by Take-Two inserts the language "and allow others to copy distribute," which is not supported by any case law.

[27] **Mr. Hayden** objects to this language because it is attorney argument and unsupported by controlling law. In fact, in *Johnson*, 149 F.3d at 501, the lack of a written contract was a reason the Sixth Circuit found no implied license. It also emphasizes certain facts that Take-Two intends to argue at trial.

[28] **Mr. Hayden** also objects to this language as it is attorney argument, biased, and unsupported by any controlling case law.

<u>Plaintiff's Authority:</u>
*Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998); *FenF, LLC v. Healio Health Inc.*, Case No. 5:08CV404, 2009 WL 10688713, at *4 (N.D. Ohio Sep. 4, 2009); *Murphy v. Lazarev*, 589 Fed. Appx. 757, 765 (6th Cir. 2014); *Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1093 (C.D. Cal 2011); Alan N. Harris et al., Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation (1st ed. 2008) (modified).

<u>Defendants' Authority</u>: 17 U.S.C. §§ 101, 106, 204(a); *Murphy v. Lazarev*, 589 F. App'x 757, 765 (6th Cir. 2014); *Great Minds v. FedEx Office & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018); *Mahavisno v. Compendia Biosci., Inc.*, 164 F. Supp. 3d 964, 968–69 (E.D. Mich. 2016); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996); *Photographic Illustrators, Corp. v. Orgill, Inc.*, 953 F. 3d 56, 61 (1st Cir. 2020); *Foad Consulting Grp., Inc. v. Azzalino*, 270 F. 3d 821 (9th Cir. 2001); *Reinicke v. Creative Empire, LLC*, 38 F. Supp. 3d 1192, 1200 (S.D. Cal. 2014); *LimeCoral, Ltd. v. CareerBuilder, LLC*, 889 F.3d 847, 851 (7th Cir. 2018); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009); *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 345–346 (S.D.N.Y. 2020); *Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 908 (E.D. Mo. 2015).

**[DISPUTED][29] Jury Instruction No. 25: *De Minimis* Use Defense**

[**Mr. Hayden:** Defendants assert that their use of the copyrighted works does not constitute copyright infringement because their use is *de minimis*. To establish that Defendants' use of the copyrighted works is *de minimis* and thus not actionable, the Defendants must prove by a preponderance of the evidence that their copying is so trivial that it cannot be found to be substantially similar to the copyrighted works. In determining whether Defendants' use is *de minimis*, you may look to the amount of the copyrighted work that was copied as well as the observability of the copyrighted work in the allegedly infringing work. A finding that the Defendants copied the copyrighted works wholesale weighs against a finding of *de minimis* use.]

[**Defendant:** *De minimis* use of a work is not copyright infringement.  To establish that Defendants' use of the copyrighted works is *de minimis* and thus not actionable, Defendants must prove by a preponderance of the evidence that their copying is too trivial to support the claim.  In determining whether Defendants' use is *de minimis*, you may look to the amount of the copyrighted work that was copied as well as the observability of the Tattoos in the *NBA 2K* Games, including the length of time that they appear, their prominence in the games, and whether they are primarily in the background, or often obstructed from view.  The lighting, positioning, focus, and camera angles used are relevant to the prominence of the Tattoos in the *NBA 2K* Games.  You should consider whether Defendants copied the copyrighted works wholesale, but you may find *de minimis* use even where the entire work was copied.]

Plaintiff's Authority: *Gordon v. Nextel Communications and Mullen Advertising, Inc.*, 345 F.3d 922, 924 (6th Cir. 2003); *Bell v. Wilmott Storage Services, LLC*, 12 F.4th 1065, 1079 (9th Cir. 2021).

Defendants' Authority:  *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 878 (9th Cir. 2016); *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 924 (6th Cir. 2003); *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998); *G.R. Leonard & Co. v. Stack*, 386 F.2d 38, 40 (7th Cir. 1967); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 343–345 (S.D.N.Y. 2020); *Gottlieb Dev. LLC v. Paramount Pictures, Corp.*, 590 F. Supp. 2d

---

[29] **Mr. Hayden's** proposed language accurately states the law in this Circuit and importantly ties the test to substantial similarity, which Defendants' proposed instruction improperly omits. Mr. Hayden also objects to Defendants' proposed language because the phrase "fall below the quantitative threshold" is confusing, especially when not linked to the phrase "substantial similarity."

**Take-Two** asserts that it is Plaintiff's burden to prove substantial similarity, so by conflating actionable copying with the affirmative defense of *de minimis* use, Plaintiff attempts to abnegate its own burden.  Take-Two's proposed language is consistent with the case law on observability.

625, 632 (S.D.N.Y. 2008); *MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 89 F.3d 1548, 1560 (11th Cir. 1996).

**[DISPUTED]30 Jury Instruction No. 26: Waiver**

Defendants assert that Plaintiff waived enforcing his copyrights.  To establish their waiver defense, Defendants must prove by a preponderance of the evidence that Plaintiff voluntarily, and intentionally relinquished his known [**Mr. Hayden:** copyright] right.

Defendants' Authority:

*Stratton v. Portfolio Recovery Assoc., LLC*, 770 F.3d 443 (6th Cir. 2014); *Soos & Assocs., Inc. v. Five Guys Enters., LLC*, 425 F. Supp. 3d 1004, 1012 (N.D. Ill. 2019); *Design Basics LLC v. Campbellsport Bldg. Supply, Inc.*, No. 13 Civ. 560, 2016 WL 3189202, at *9 (E.D. Wis. June 7, 2016).

---

30 **Mr. Hayden** objects to this instruction in its entirety, as Defendants have not cited any case in this Circuit that has applied the waiver defense to copyright rights. The Defendants entire waiver defense is legally incorrect and should not be permitted to be presented to the jury.

**Take-Two** argues that waiver is an available defense in this Circuit and Plaintiff has not identified a case in which the Sixth Circuit has limited its application in the copyright infringement context. *See Stratton v. Portfolio Recovery Assoc., LLC*, 770 F.3d 443 (6th Cir. 2014) (applying waiver defense).

## [DISPUTED] Jury Instruction No. 27: Damages

If you find for Plaintiff on his copyright infringement claim and that Defendants failed to prove any of their affirmative defenses, then [**Mr. Hayden**: Plaintiff is entitled to recover damages in the form of actual damages suffered from the infringement and any profits of the Defendants that are attributable to the infringement.] [**Take-Two:** you must consider the amount of damages, if any, that Plaintiff is entitled to recover. Plaintiff may recover any actual damages suffered from the infringement and any profits of the Defendants that are attributable to the infringement, to the extent such profits are not taken into account in computing actual damages.].[31]  I will define these terms in the following instructions.

Plaintiff's Authority: 17 U.S.C. § 504(b); *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 634 (6th Cir. 2020); *Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012); Jury Instructions from *Balsley v. LFP, Inc.*, 1:08-cv-00491-SO (6th Cir. 2012).

Defendants' Authority: 17 U.S.C. § 504.

---

[31] **Mr. Hayden** objects to Defendants' proposed instruction because it *suggests* that he may not be entitled to any damages.  This should be an impartial instruction of the law.  Take-Two's proposition that Mr. Hayden's damages could be zero if he "did not suffer any damages" (see comment below) appears to conflate actual damages and Defendants' profits.

**Take-Two** contends that Take-Two's instruction is neutral, telling the jury that it must consider the amount of damages, which indeed could be nothing if Plaintiff did not suffer any damages and no profits are attributable to the alleged infringement.  Take-Two also asserts that Plaintiff has waived the right to seek actual damages in this case, and objects to including any instruction on actual damages.

### [DISPUTED] Jury Instruction No. 28: Actual Damages

To receive actual damages, Plaintiff must prove by a preponderance of the evidence that he suffered actual losses as a result of Defendants' [**Mr. Hayden:** unauthorized][32] use of the Asserted Tattoos in the *NBA 2K* Games.  Examples of actual losses from copyright infringement include:

-   What a willing buyer reasonably would have paid Plaintiff to obtain a license to use the Asserted Tattoos in the *NBA 2K* Games;

-   The decrease in market value of the Asserted Tattoos caused by their use in the *NBA 2K* Games;

[**Take-Two:** If the relationship between the actual losses suffered and the use of the Tattoos is unduly speculative, Plaintiff is not entitled to actual damages.  If Plaintiff fails to show by non-speculative evidence that licensing the Tattoos had a fair market value, Plaintiff is not entitled to actual damages.

If you find that Plaintiff did not take reasonable actions to reduce his damages and that Plaintiff reasonably might have mitigated his damages had he taken such action, you should reduce the damages by the amount he could have mitigated.][33]

Defendants' Authority: 17 U.S.C. § 504(b); *Satija v. Permanent Gen. Assur. Corp. of Ohio*, 2014 WL 1664557 (N.D. Ohio Apr. 25, 2014); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 569 (7th Cir. 2003); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004); *Dash v. Mayweather*, 731 F.3d 303, 317 (4th Cir. 2013).

---

[32] **Take-Two** believes that including a reference to the term "unauthorized" in this instruction would be confusing to the jury as it will decide whether Take-Two's use was unauthorized or not.

**Mr. Hayden** disagrees that "unauthorized" in this instruction would be confusing, as such a finding is a prerequisite to damages.

[33] **Take-Two** believes this paragraph will help the jury understand mitigation and the causal requirements related to a showing of actual damages, which Plaintiff's instruction does not explain and which is part of the calculation of actual damages.

**Mr. Hayden** believes this language proposed by Defendants is argumentative and unnecessary for the jury to understand actual damages. There is already an instruction related to adequacy of evidence.

**[DISPUTED][34] Jury Instruction No. 29: Defendants' Profits**

[Plaintiff: Defendants' profits are determined by deducting all expenses from Defendants' gross revenue for the infringing games. Gross revenue means all of the money Defendants received from the use or sale of their games containing or using Plaintiff's copyrighted works. Expenses are all operating and production costs incurred by Defendants in producing their gross revenue.

Unless you find that a portion of the profit from the use or sale of a product or work containing or using a copyrighted work is attributable to factors other than use of the copyrighted work, the total profit is attributable to the infringement.

Plaintiff has the burden of proving gross revenue by a preponderance of the evidence. Defendants have the burden of proving the expenses and the portion of the profits attributable to factors other than the copyrighted work by a preponderance of the evidence.]

[Take-Two: Defendants' profits are determined by deducting all expenses from Defendants' gross revenue attributable to the infringement. Gross revenue means all of the money Defendants received from the use of the Tattoos in the *NBA 2K* Games. Expenses are all operating, distribution, marketing, and production costs incurred by Defendants in selling the *NBA 2K* Games.

To recover any of Defendants' profits, Plaintiff must prove by a preponderance of the evidence that Defendants' use of the Tattoos in the *NBA 2K* Games caused Defendants' profits. If

---

[34] Mr. Hayden objects to the Defendants' instruction because it is highly biased and critically incorrect in the law for determining profit damages under the Copyright Act. The Sixth Circuit has expressly and clearly ruled on this issue (see cited cases in Mr. Hayden's Authority). Plaintiff's proposed instructions reflect the Sixth Circuit law. Defendants' proposed instructions contain many critical errors, including but not limited to, "To recover any of Defendants' profits, Plaintiff must prove by a preponderance of the evidence that Defendants' use of the Tattoos in the *NBA 2K* Games caused Defendants' profits" and that it is Plaintiff's burden to "prove[] the existence of revenues that are due to the Tattoos[.]" These propositions are expressly contradicted by the Sixth Circuit. Defendants' instructions are *highly* erroneous and objectionable. Take-Two's language is wholly and completely legally incorrect.

Take-Two objects to Plaintiff's instruction to the extend it attempts to avoid the requirement that the profits be "attributable to the infringement," which is the language Take-Two includes in its proposed instruction and is the precise language in 17 U.S.C. § 504(b). The law requires that there be a "reasonable relationship between revenues and the act of infringement," which Take-Two's instruction also provides and which Plaintiff leaves out of his instruction. *See Satija v. Permanent Gen. Assurance Corp. of Ohio*, No. 13 Civ. 82, 2014 WL 1664557, at *6 (N.D. Ohio Apr. 25, 2014). It is not true that Plaintiff need only show revenues without a causal relationship, and to suggest so to the jury, as Plaintiff's instruction does, would be inconsistent with the law.

you find that the relationship between Defendants' profits and their use of the Tattoos in the *NBA 2K* Games is attenuated or speculative, Plaintiff is not entitled to any of Defendants' profits. Plaintiff is not entitled to profits if he can show only that Messrs. Green, James, and Thompson caused some of Defendants' profits, without showing that those profits were due to the Tattoos.

If Plaintiff proves the existence of revenues that are due to the Tattoos, then Defendants must prove their own expenses and any portion of their profits that resulted from factors other than infringement of Plaintiff's copyright.  Defendants have the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted works. Where it is clear that not all profits are attributable to the infringing material, the copyright owner is not entitled to recover all of the defendant's profits merely because the defendant fails to establish with certainty the portion attributable to non-infringing elements.

Moreover, you may consider any delay by Plaintiff in commencing this suit in accounting for Defendants' profits.  In so doing, you may consider whether Defendants relied on any delay by Plaintiff in bringing suit, taking into account when Plaintiff learned of the claims and whether any delay in bringing suit was unjustified or undue.  To the extent you find that Plaintiff unduly delayed in bringing his claims, you may reduce profits in an amount commensurate with the delay.][35]

Plaintiff's Authority: 17 U.S.C. § 504(b); *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 634 (6th Cir. 2020); *Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012); Jury Instructions from *Balsley v. LFP, Inc.*, 1:08-cv-00491-SO (6th Cir. 2012).

Defendants' Authority: *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 685–88 (2014); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 829–30 (9th Cir. 1985); *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th Cir. 2003); *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003); *Skidmore v. Led Zeppelin*, No. 15 Civ. 3462, 2016 WL 1442461 (C.D. Cal. Apr. 8, 2016).

---

[35] **Mr. Hayden** objects to this language because it is legally unsupported.

## [DISPUTED] Jury Instruction No. 30: Willfulness

Plaintiff alleges that Defendants have willfully infringed his copyrights. To prove willful infringement, Plaintiffs must establish that Defendants knew its conduct constituted copyright infringement. [**Mr. Hayden:** To the extent that Defendants presented evidence that they did not believe their conduct constitutes copyright infringement, you must not consider any evidence that Defendants relied on advice of any legal counsel or attorneys in arriving at their belief. Defendants are not permitted to introduce any such evidence and to the extent they still introduced evidence that you understand relates to reliance upon advice of any attorney or counsel, you must disregard it.]  [**Take-Two:** One who has been notified that the conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not willful for these purposes.][36]

Plaintiff's Authority: 17 U.S.C. § 504(b); *Kohus v. Graco Children's Products Inc.*, 13 F. Supp. 3d 829, 838 (S.D. Ohio 2014); *Coach, Inc. v. Chouman's Ass'n, Inc.*, No. 11-cv-15666, 2012 WL 6705412, at *4 (E.D. Mich. Dec. 26, 2012).

Defendants' Authority:  *Princeton University Press v. Michigan Document Services*, 99 F. 3d 1381, 1392 (6th Cir. 1996).

---

[36]**Mr. Hayden** objects to Take-Two's proposed language as it is redundant with the other language and suggestive. Mr. Hayden also believes that an instruction related to Take-Two's waiver of reliance on counsel is necessary, as its waiver of this defense is undisputed.

**Take-Two** contends that its proposed language comes directly from the case law. "*Princeton University Press v. Michigan Document Services*, 99 F. 3d 1381, 1392 ("one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes.").  The fact that a good faith belief that the use is non-infringing does not constitute willfulness is not clear from the prior sentence, which erroneously implies that knowledge alone is sufficient.  Take-Two objects to Plaintiff's proposed instruction to the extent it is highly confusing and improperly attempts to limit the type of evidence on which Take-Two can rely, while failing to provide any instruction to the jury on good faith.

### [AGREED] Jury Instruction No. 31: Duty to Deliberate

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times that you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, then rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, then the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

Authority:
Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2021-2022 ed.).