UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES HAYDEN,** | ) | **CASE NO. 1:17CV2635** |
| | ) | |
| Plaintiff, | ) | **SENIOR JUDGE** |
| | ) | **CHRISTOPHER A. BOYKO** |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **2K GAMES, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #98*SEALED & ECF DKT #100*PUBLIC VERSION) of Plaintiff James Hayden to Exclude the Expert Testimony of James E. Malackowski. For the following reasons, the Motion is denied.

## I. BACKGROUND

Plaintiff James Hayden filed his original Complaint on December 18, 2017. His Fourth Amended Complaint was filed on August 19, 2019, alleging copyright infringement by Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. Defendant Take-Two is a worldwide developer, publisher and marketer of interactive entertainment and video games. Plaintiff alleges that he is the tattoo artist who inked the copyrighted Tattoos on NBA players Danny Green, LeBron James and Tristan Thompson, individuals depicted in Take-Two's popular basketball simulation series NBA 2K.

James E. Malackowski is the Co-Founder and Chief Executive Officer of Ocean Tomo, LLC, the Intellectual Capital Merchant Banc™ firm providing industry-leading

financial products and services related to intellectual property, including financial expert testimony, valuation, strategy consulting, patent analytics, investment management and transaction brokerage.

On more than fifty occasions, Mr. Malackowski has served as an expert in U.S. Federal Court, State Court, Court of Chancery, the Ontario Superior Court of Justice and international arbitrations on questions relating to intellectual property economics, including valuation, reasonable royalties, lost profits, price erosion and commercial success.

Mr. Malackowski is a graduate of the University of Notre Dame with majors in Accountancy and Philosophy. He is certified/accredited in Financial Forensics, Business Valuation and Blockchain Fundamentals. He is a Certified Licensing Professional and a Registered Certified Public Accountant in the State of Illinois; and has been certified to receive United States Sensitive Security Information (SSI) as governed by Title 49 Code of Federal Regulations.

Ocean Tomo, LLC and Mr. Malackowski were retained by Defendants Take-Two Interactive Software, Inc. and 2K Games, Inc. in August of 2019, to develop opinions regarding the form and amount of compensation, if any, available to Plaintiff if Defendants are found liable to him for Copyright Infringement.

In his Report (ECF DKT #98-1*SEALED) provided on May 27, 2021, Mr. Malackowski summarizes his opinions in this way:

Plaintiff has not experienced any actual damages as a result of the alleged copyright infringement by Defendants. Plaintiff has not marketed his copyrights for use in video games and he is not a developer or marketer of video games. Plaintiff has identified no evidence of

lost customers or lost licensing opportunities for the copyrighted Tattoos.

Based on the reports of Dr. Nina Jablonski and Dr. Ian Bogost, there is no market for licensing tattoos on the athletes on whom the tattoos are inked in real life for depiction in video games. Moreover, such a market is unlikely to develop.

Tattoos were not identified in Dr. E. Deborah Jay's survey as an important reason for purchasing the NBA 2K games. No sales are motivated by the inclusion of the Tattoos in these video games.

Using Dr. Bogost's calculations that each Tattoo represents one-tenth of the player's torso and arms, and Dr. Bogost's comparison of the size of the Tattoos to the entire computer program, Mr. Malackowski finds that the profits applicable to the number of the Tattoos found to infringe Mr. Hayden's copyrights, if all of the Tattoos are found to be infringed by the Accused Video Games, amounts to at most between $15,444 and $15,626. (*Id.* at 42).

However, Mr. Malackowski further concludes that because Dr. Jay's survey shows that no sales can be attributed to the depiction in these video games of the Tattoos, there are "no calculable damages to award to Mr. Hayden under this measure of copyright infringement damages." (*Id.* at 43).

In his Motion to Exclude, Plaintiff contends that Mr. Malackowski uses unreliable methods and data to artificially suppress the amount of damages to which Plaintiff is entitled in the form of Defendants' profits. Mr. Malackowski improperly eliminates other categories of monetary damages to which Plaintiff is legally entitled. Plaintiff complains that the Report relies upon the faulty surveys and reports of other proposed Defendant experts. Plaintiff asserts that his own damages expert, Michal A. Malkiewicz, holds the opinion that there

should be an additional apportionment of Take-Two's profits from its sales of virtual currency ("VC") within the video games to the copyrighted Tattoos.

In opposition, Defendants point out that Plaintiff has not challenged Mr. Malackowski's qualifications nor objected to his opinion on the lack of a viable market. Plaintiff lacks a concrete objection to the amount of damages Mr. Malackowski estimates; rather, Plaintiff is dissatisfied with the number.

In response to the virtual currency issue, Defendants contend that Mr. Malackowski has analyzed the evidence and demonstrated why no such relationship between the use of the Tattoos in the NBA 2K games and VC exists, because: (a) the Tattoos cannot be purchased [with VC] from the NBA 2K tattoo store, (b) the tattoo shop and MyPlayer tattoo customization feature in NBA 2K for which VC can be used do not include the Tattoos, (c) the Neighborhood feature for which VC can be used does not include the Tattoos and (d) none of the statements made by Take-Two concerning recurrent consumer spending (i.e., VC) in NBA 2K references the Tattoos. (See Rebuttal Report, ECF DKT #98-2*SEALED, summary at 18–19).

## II. LAW AND ANALYSIS

**Expert Testimony**

Pursuant to Federal Rule of Evidence 702, an expert by virtue of knowledge, skill, experience, training or education may provide testimony to assist the trier of fact to understand the evidence or to determine a fact in issue if the expert testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has applied the principles and methods reliably to the facts of the case.

The standard set in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) requires "that an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and that the expert appropriately "fits" the facts of the case into the theories and methods he or she espouses." *Redmond v. United States*, 194 F.Supp.3d 606, 615 (E.D. Mich. 2016) (citing *Daubert*, 509 U.S. at 591-93). "[E]xpert testimony is not admissible unless it will be helpful to the factfinder." *Redmond, id.* Expert testimony is not helpful when it is unreliable or irrelevant or "when it merely deals with a proposition that is not beyond the ken of common knowledge." *Id.* "The proponent of expert testimony must establish all the foundational elements of admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

The objective of *Daubert*'s "gatekeeping" function is to ensure the reliability and relevancy of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Supreme Court has held this "gatekeeping" obligation applies not only to scientific testimony, but to all expert testimony. *Id.* at 147. Courts are not required to hold a formal hearing on *Daubert* challenges. *See Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir.1999). "[N]o matter how good" experts' "credentials" may be, they are "not permitted to speculate." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) *quoting Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

To reiterate, an expert may testify in the form of an opinion if it will assist the trier of fact and if the testimony is the product of reliable principles and methods. Federal Rule of

Evidence 702; *Redmond*, 194 F.Supp.3d at 614-615.

**Copyright Infringement and Damages**

"Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act." *Cotter v. Christus Gardens, Inc.*, 238 F.3d 420 (6th Cir. 2000) (quoting H.R.Rep. No. 94-1476, at 161 (1976), reprinted in 17 U.S.C.A. § 504, at 146 (West 1996)).

17 U.S.C. § 504(b):

> (b) Actual Damages and Profits.--The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

Upon review of Mr. Malackowski's Report and the applicable law, the Court finds that his opinions and testimony are relevant, reliable and helpful to the factfinder.

Plaintiff does not substantively object to Mr. Malackowski's credentials nor to his market opinion; but Plaintiff strenuously objects to the conclusion that he has suffered nearly no calculable damages due to Defendants' alleged infringement.

Plaintiff's challenge that Mr. Malackowski depends upon unreliable surveys and faulty data proposed by Defendants' other experts is unpersuasive at this point in the litigation. The Court has considered the opinions of Dr. Jablonski, Dr. Jay and Dr. Bogost and has ruled them admissible to a substantial degree. Thus, Mr. Malackowski is entitled to look to their findings (within the admissibility parameters set by the Court) as he would to other evidence provided

in the case.

Plaintiff takes issue with Mr. Malackowski's failure to apportion any of Defendants' profits from virtual currency purchased within the NBA 2K games as attributable to infringement of the Tattoos; and points to his own damages expert's calculation of virtual currency profits. A dispute between experts on the calculation of available damages is subject to cross-examination. Furthermore, the jury will be instructed that they can choose to believe all or part or none of any witness's testimony.

### III. CONCLUSION

The Court determines that Mr. Malackowski's report and opinions are relevant and reliable and will assist the trier of fact. Therefore, the Motion (ECF DKT #98*SEALED & ECF DKT #100*PUBLIC VERSION) of Plaintiff James Hayden to Exclude the Expert Testimony of James E. Malackowski is denied.

**IT IS SO ORDERED.**

**DATE: August 15, 2022**

    s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**