UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HAYDEN, | ) | CASE NO. 1:17CV2635 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| 2K GAMES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #99*SEALED & #104* PUBLIC VERSION) of Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. to Exclude Testimony, Argument or Evidence Regarding the Expert Reports and Opinions of Michal A. Malkiewicz. For the following reasons, the Motion is denied.

## I. BACKGROUND

Plaintiff James Hayden filed his original Complaint on December 18, 2017. His Fourth Amended Complaint was filed on August 19, 2019, alleging copyright infringement by Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. Defendant Take-Two is a worldwide developer, publisher and marketer of interactive entertainment and video games. Plaintiff alleges that he is the tattoo artist who inked the copyrighted Tattoos on NBA players Danny Green, LeBron James and Tristan Thompson, individuals depicted in Take-Two's popular basketball simulation series NBA 2K.

Michal A. Malkiewicz is a Vice President at Charles River Associates, an international

consulting and expert services firm. He received Bachelor of Arts degrees in Economics and Environmental Studies and a Master of Business Administration degree from the University of Chicago. He was awarded concentrations in Accounting, Analytic Finance, Economics, Econometrics & Statistics, and International Business, and a Certificate in Marketing Analytics. He also holds a Master of Science degree in Applied Economics from Johns Hopkins University, where he obtained a Certificate in Forecasting Practice from the International Institute of Forecasters.

Over the last 15 years, Mr. Malkiewicz has applied his education and experience to resolving legal questions, including those related to the evaluation of damages and monetary relief in copyright and other intellectual property infringement or misappropriation disputes.

Mr. Malkiewicz has appeared as a consultant or a testifying expert before U.S. and foreign courts, U.S. and foreign regulatory agencies, the U.S. International Trade Commission, and U.S. and international arbitration organizations.

Mr. Malkiewicz was retained by Plaintiff to evaluate certain economic and financial issues related to Plaintiff's Copyright Infringement claims against Defendants. He was asked to assume Defendants' liability for infringement of the copyrighted Tattoos, analyze the monetary relief available to Plaintiff and quantify disgorgement damages.

In his Report (ECF DKT #99-4*SEALED) provided on May 27, 2021, Mr. Malkiewicz reaches the following conclusions to a reasonable degree of economic certainty:

1. The evidence demonstrates that the depictions of tattoo designs in general, and of the copyrighted Tattoos in particular, on the avatars of NBA players on whom the tattoos are

inked in real life, are a valuable feature of the NBA 2K video games recognized as such by Defendants and the purchasers of the games.

2. Excluding NBA 2K21, Defendants' net revenues from sales of the Accused Games for the period through March 31, 2021, are $3,171.9 million.

3. Excluding NBA 2K21, Defendants' gross profits from sales of the Accused Games for the period through March 31, 2021, are $1,961.0 million.

4. Mr. Malkiewicz reserves the right to modify or supplement this Report, in the event that Defendants prepare a calculation of deductible expenses and/or elements of profits realized from sales of the Accused Games attributable to factors other than the copyrighted Tattoos.

In the Motion to Exclude (ECF DKT #99-1*SEALED), Defendants object to Mr. Malkiewicz's "partial and improperly inflated" disgorgement of profits calculation. Defendants argue that Mr. Malkiewicz's opinions violate Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

Defendants assert that Mr. Malkiewicz is not qualified to opine on how the average user interacts with NBA 2K; and his testimony is inadmissible because it is based on the untested assumption that players with higher in-game and real-life ratings will appear more frequently in NBA 2K than players with lower ratings. Mr. Malkiewicz uses that assumption to opine that Plaintiff is entitled to more of Defendants' profits — that Plaintiff's "higher-rated" Tattoos have a greater impact on NBA 2K's profits.

Defendants further contend that Mr. Malkiewicz's apportionment of Defendants' profits attributable to the alleged infringement of Plaintiff's Tattoos and his disgorgement

analysis are contrary to the Copyright Act. He artificially inflates his numbers by including justifiably deductible expenses and profits attributable to all tattoos depicted in the video games, not just the profits attributable to Plaintiff's Tattoos.

Defendants complain that Mr. Malkiewicz improperly includes revenue from sales of virtual currency ("VC") in his disgorgement figure, despite the fact that VC is not related to infringement of Plaintiff's copyrighted Tattoos.

In opposition (ECF DKT #108*SEALED), Plaintiff responds that Mr. Malkiewicz was not retained to offer, nor does he offer, opinions about how the average user interacts with NBA 2K. Mr. Malkiewicz provides a valid report of Defendants' gross revenue. He explains the calculations supporting his probability conclusion that the avatars of LeBron James, Danny Green and Tristan Thompson are more prominent than the average NBA 2K player's avatar. (ECF DKT #99-4 at 53-56).

Moreover, Mr. Malkiewicz's disgorgement analysis is consistent with the Copyright Act and coincides with the copyright owner's burden to present proof of the alleged infringer's gross revenues. Defendants are attacking Plaintiff's damages expert in an effort to shift their burden onto Plaintiff. The Copyright Act places the burden on the infringer to prove that portions of profit are attributable to factors other than the copyrighted works.

In Plaintiff's view, Mr. Malkiewicz correctly opines that gross revenue "reasonably related" to the infringement includes virtual currency ("VC"), which is earned, purchased and redeemed as part of the Accused Games.

## II. LAW AND ANALYSIS

**Expert Testimony**

Pursuant to Federal Rule of Evidence 702, an expert by virtue of knowledge, skill, experience, training or education may provide testimony to assist the trier of fact to understand the evidence or to determine a fact in issue if the expert testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has applied the principles and methods reliably to the facts of the case.

The standard set in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) requires "that an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and that the expert appropriately "fits" the facts of the case into the theories and methods he or she espouses." *Redmond v. United States*, 194 F.Supp.3d 606, 615 (E.D. Mich. 2016) (citing *Daubert*, 509 U.S. at 591-93). "[E]xpert testimony is not admissible unless it will be helpful to the factfinder." *Redmond, id.* Expert testimony is not helpful when it is unreliable or irrelevant or "when it merely deals with a proposition that is not beyond the ken of common knowledge." *Id.* "The proponent of expert testimony must establish all the foundational elements of admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

The objective of *Daubert*'s "gatekeeping" function is to ensure the reliability and relevancy of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Supreme Court has held this "gatekeeping" obligation applies not only to

scientific testimony, but to all expert testimony. *Id.* at 147. Courts are not required to hold a formal hearing on *Daubert* challenges. *See Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir.1999). "[N]o matter how good" experts' "credentials" may be, they are "not permitted to speculate." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) *quoting Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

To reiterate, an expert may testify in the form of an opinion if it will assist the trier of fact and if the testimony is the product of reliable principles and methods. Federal Rule of Evidence 702; *Redmond*, 194 F.Supp.3d at 614-615.

**Copyright Infringement and Damages**

"Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act." *Cotter v. Christus Gardens, Inc.*, 238 F.3d 420 (6th Cir. 2000) (quoting H.R.Rep. No. 94-1476, at 161 (1976), reprinted in 17 U.S.C.A. § 504, at 146 (West 1996)).

17 U.S.C. § 504(b):

(b) Actual Damages and Profits.--The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

The copyright owner must prove actual damages and lost profits by a preponderance of the evidence. *Smith v. Thomas*, 911 F.3d 378, 381 (6th Cir. 2018). Copyright infringers must "prove their deductible expenses with specificity." *Singletary Constr., LLC v. Reda Home*

*Builders, Inc.*, 815 F. App'x 892, 899–900 (6th Cir. 2020). If a defendant does not meet its burden, the gross revenue figure is left to stand as the complete measure of lost profit damages. *Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012).

Upon review of Mr. Malkiewicz's Report and the applicable law, the Court finds that his opinions and testimony are relevant, reliable and helpful to the factfinder. The sole caveat is that neither Plaintiff nor his damages expert, Mr. Malkiewicz, shall be permitted to present testimony regarding profits, revenues, player preferences or otherwise for NBA 2K games issued beyond NBA 2K20. The Court denied leave to file a fifth amended complaint adding additional versions of the games and that is the law of the case.

The Court in recent months has found that the opinions and reports of Plaintiff's market expert, Justin Lenzo, and survey expert, H. Tolga Bilgicer, are admissible for the most part. Therefore, Mr. Malkiewicz can rely upon their findings, along with other evidence in the case, within the parameters the Court has outlined.

The challenges Defendants assert regarding the inclusion of revenues from virtual currency; the supposed incorporation of profits from all player tattoos versus the copyrighted Tattoos only; and the purportedly overstated and unreliable profit calculations are all subjects for cross-examination. As the Court previously noted, the jury will be instructed that they can choose to believe all or part or none of any witness's testimony.

### III. CONCLUSION

The Court determines that Mr. Malkiewicz's report and opinions are relevant and reliable and will assist the trier of fact. Therefore, the Motion (ECF DKT #99*SEALED & ECF DKT #104*PUBLIC VERSION) of Defendants 2K Games, Inc. and Take-Two

Interactive Software, Inc. to Exclude Testimony, Argument or Evidence Regarding the Expert Reports and Opinions of Michal A. Malkiewicz is denied.

    **IT IS SO ORDERED.**

    **DATE: August 22, 2022**

                                         s/Christopher A. Boyko
                                         **CHRISTOPHER A. BOYKO**
                                         **Senior United States District Judge**