**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN, | CASE NO. 1:17-cv-02635-CAB |
| Plaintiff, | |
| **v.** | |
| 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC., | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**<u>OMNIBUS MOTIONS IN LIMINE</u>**

**TABLE OF CONTENTS**

**Page**

I.     **NBA PLAYERS' DECLARATIONS AND DEPOSITION TESTIMONY** .................1

     A.     The NBA Players' Declarations are Admissible ..................................... 1

     B.     The NBA Players' Other Statements Are Admissible ............................. 3

     C.     Take-Two's Questions of the NBA Players Were Not Leading............................ 7

II.     **THIRD-PARTY DECLARATIONS FROM OTHER LITIGATIONS** ......................9

     A.     The Tattooists' Statements Are Relevant to Issues in this Case............................ 9

     B.     The Tattooists' Statements Should Not Be Excluded as Hearsay ....................... 11

     C.     Plaintiff's Rule 403 and Rule 26 Challenges Should Be Denied......................... 13

III.     **THE VENETIAN RESORT'S LOGO** ...........................................................14

     A.     Evidence of the Venetian Resort Logo is Relevant to Multiple Issues................ 15

     B.     Evidence of the Venetian Resort Logo is Properly Authenticated ...................... 16

IV.     **POLICY IMPACT OF AN INFRINGEMENT FINDING** ...........................................18

V.     **MR. HAYDEN'S OWN TATTOOS** ...........................................................19

VI.     **ADVICE OF COUNSEL**...........................................................................20

VII.     **CERTAIN EXPERT OPINIONS**.............................................................20

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Bahamas Agr. Indus. Ltd. v. Riley Stoker Corp.*,
    526 F.2d 1174 (6th Cir. 1975) ............................................................8

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006)............................................................11

*Castle v. Kingsport Publ'g Corp.*,
    No. 19 Civ. 92, 2020 WL 7348157 (E.D.Tenn. Dec. 14, 2020) ............................16

*Chivers v. Central Noble Cmty. Schs.*,
    423 F. Supp. 2d 835 (N.D. Ind. 2006) ............................................11

*Coach, Inc. v. D 4 L Apparel*,
    No. 11 Civ. 185, 2013 WL 489658 (W.D. Tex. Feb. 7, 2013) ............................17

*Deere & Co. v. FIMCO Inc.*,
    260 F. Supp. 3d 830 (W.D. Ky. 2017)............................................12, 13

*Eli Rsch., LLC v. Must Have Info Inc.*,
    No. 2:13 Civ. 695, 2015 WL 6501070 (M.D. Fla. Oct. 22, 2015) ............................17

*Elyria-Lorain Broad. Co. v. Lorain J. Co.*,
    298 F.2d 356 (6th Cir. 1961) ............................................................7

*Est. of Smith v. Cash Money Recs, Inc.*,
    253 F. Supp. 3d 737 (S.D.N.Y. 2017)............................................11

*F.T.C. v. Amy Travel Serv., Inc.*,
    875 F.2d 564 (7th Cir. 1989) ............................................................12

*Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*,
    499 U.S. 340 (1991)............................................................15

*Google LLC v. Oracle Am., Inc.*,
    141 S. Ct. 1183 (2021)............................................................7, 18

*Harris v. J.B. Robinson Jewelers*,
    627 F.3d 235 (6th Cir. 2010) ............................................................4

*House v. Players' Dugout, Inc.*,
    No. 16 Civ. 594, 2021 WL 4898071 (W.D. Ky. Oct. 20, 2021)............................7

*Innovention Toys, LLC v. MGA Ent.*,
   No. 07 Civ. 6510, 2012 WL 5398476 (E.D. La. Nov. 4, 2012) .................................................2

*Keller Logistics Grp, Inc. v. Navistar, Inc.*,
   No. 3:19 Civ. 735, 2021 WL 4528990 (N.D. Ohio Apr. 29, 2021)...........................................4

*Lott v. Tradesmen Int'l, Inc.*,
   No. 5:09 Civ. 183, 2013 WL 245127 (E.D. Ky. Jan. 22, 2013) ................................................8

*Massa v. Schleeter*,
   No. 3:13 Civ. 1132, 2014 WL 546829 (N.D. Ohio Feb. 10, 2014) ...........................................1

*Peppers v. Washington Cnty., Tenn.*,
   686 Fed. Appx. 328 (6th Cir. 2017).........................................................................................13

*Photographic Illustrators Corp. v. Orgill, Inc.*,
   953 F.3d 56 (1st Cir. 2020).......................................................................................................9

*Psychopathic Recs., Inc. v. Anderson*,
   No. 08 Civ. 13407, 2009 WL 2591385 (E.D. Mich. Aug. 24, 2009) .....................................15

*Roy v. Austin Co.*,
   194 F.3d 840 (7th Cir. 1999) .................................................................................................7, 8

*Sem-Torq, Inc. v. K Mart Corp.*,
   936 F.2d 851 (6th Cir. 1991) ..............................................................................................15, 16

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
   449 F. Supp. 3d 333 (S.D.N.Y. 2020).......................................................................................6

*Sperberg v. Goodyear Tire Rubber Co.*,
   519 F.2d 708 (6th Cir. 1975) ...............................................................................................9, 18

*Stryker Corp. v. XL Ins. Am.*,
   No. 4:01 Civ. 157, 2007 WL 172401 (W.D. Mich. Jan. 18, 2007) ...........................................2

*Stuart v. Wilson*,
   442 F.3d 506 (6th Cir. 2006) ...................................................................................................12

*Swartz v. DiCarlo*,
   No. 12 Civ. 3112, 2018 WL 10483103 (N.D. Ohio Sept. 13, 2018) ..................................17, 18

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014)........................................................................................................18

*United States v. Barlow*,
   693 F.2d 954 (6th Cir. 1982) ...................................................................................................12

*United States v. Brawner*,
    173 F.3d 966 (6th Cir. 1999) ...........................................................................6

*United States v. Craig*,
    953 F.3d 898 (6th Cir. 2020) .........................................................................17

*United States v. Dimora*,
    843 F. Supp. 2d 799 (N.D. Ohio 2012)..........................................................14

*United States v. Laster*,
    258 F.3d 525 (6th Cir. 2001) .........................................................................12

*United States v. Shoupe*,
    548 F.2d 636 (6th Cir. 1977) ...........................................................................8

*United States v. Wandahsega*,
    924 F.3d 868 (6th Cir. 2019) .........................................................................12

*United States v. Williams*,
    737 F. App'x 235 (6th Cir. 2018) .....................................................................4

*Vaughan v. City of Shaker Heights*,
    No. 1:10 Civ. 609, 2015 WL 1650202 (N.D. Ohio Apr. 14, 2015).................3

*Weinstein v. Siemens*,
    756 F. Supp. 2d 839 (E.D. Mich. 2010)..........................................................13

*Wilchombe v. TeeVee Toons, Inc.*,
    555 F.3d 949 (11th Cir. 2009) ....................................................................9, 11

*Woods v. Lecureux*,
    110 F.3d 1215 (6th Cir. 1997) ..........................................................................8

**Statutes**

15 U.S.C. § 1057(f)...........................................................................................17

17 U.S.C. § 103(a) ......................................................................................15, 16

17 U.S.C. § 107 ................................................................................................18

17 U.S.C. § 411(b).............................................................................................16

**Rules**

Fed. R. Civ. P. 26 .........................................................................................13, 14

Fed. R. Evid. 403 ...............................................................................................13

Fed. R. Evid. 602 ...................................................................................................5, 6, 7

Fed. R. Evid. 701 ...................................................................................................4, 14

Fed. R. Evid. 801(d) ....................................................................................................2

Fed. R. Evid. 807 ...............................................................................................1, 11, 13

Fed. R. Evid. 902 .......................................................................................................16

Take-Two Interactive Software, Inc., and 2K Games, Inc. (collectively, "Take-Two")
oppose James Hayden's ("Plaintiff") Omnibus Motions *in Limine*.  Dkt. No. 169 ("Pl.'s Br.").

## I.      NBA PLAYERS' DECLARATIONS AND DEPOSITION TESTIMONY

In support of its motion for summary judgment, Take-Two attached declarations from the
three NBA players on whom the tattoos at issue in this litigation were inked, LeBron James,
Tristan Thompson, and Danny Green (the "NBA Players").  Dkt. 95-2–4 (the "NBA Player
Declarations").  Although Plaintiff clearly knew about the NBA Players before this lawsuit (he
inked them and named them in his Complaint, after all) and Take-Two had included them on its
initial disclosures from the beginning of the lawsuit, Plaintiff moved to strike the declarations.
This Court denied that motion.  Dkt. 146.  Instead, in a "quest for the truth," this Court permitted
Plaintiff to depose the NBA Players.  Now, realizing that the NBA Players' declarations and
deposition testimony show why Take-Two is not liable for copyright infringement, Plaintiff
moves to exclude evidence, testimony, or argument concerning the declarations and deposition
testimony.  As discussed below, this critical evidence should not be excluded.

### A.      The NBA Players' Declarations are Admissible

Plaintiff first moves to exclude the NBA Player Declarations on hearsay grounds.  Pl.'s
Br. 1–2.  Plaintiff's motion fails for at least two reasons.  ***First***, to the extent the NBA Player
Declarations are hearsay, they are admissible under the residual hearsay exception, which
provides a catch-all exception for statements with "sufficient guarantees of trustworthiness" that
are "more probative on the point for which it is being offered than any other evidence."  Fed. R.
Evid. 807; *see Massa v. Schleeter*, No. 3:13 Civ. 1132, 2014 WL 546829, at *2 (N.D. Ohio Feb.
10, 2014) (voluntary eyewitness statement fell under the residual exception).  Here, the NBA
Player Declarations were offered by individuals who were present when the Tattoos were inked
on their bodies and subject to extensive cross-examination during their depositions.  *See* Ex. A

1

(Green Tr.) 140:5–141:8, 142:20–144:10 (testifying to his first-hand experience getting inked by Plaintiff); Ex. B (James Tr.) 34:12– 23 (same); Ex. C (Thompson Tr.) 44:3–10, 45:7–15 (same). As such, the declarations are admissible.  *See Stryker Corp. v. XL Ins. Am.*, No. 4:01 Civ. 157, 2007 WL 172401, at *4 (W.D. Mich. Jan. 18, 2007) (deposition offered a guarantee of trustworthiness, such that "admission of this evidence supports the general purpose of the Rules of Evidence"); *Innovention Toys, LLC v. MGA Ent.,* No. 07 Civ. 6510, 2012 WL 5398476 (E.D. La. Nov. 4, 2012) (finding that because the defendants had "opportunity to cross-examine" declarant about his declaration during a deposition, "the reliability and trustworthiness issues that often come with hearsay statements are not present" and the declaration was thus admissible at trial).  The deposition testimony explicitly confirmed the veracity of the declarations.  *See* Dkt. 162-02–04 (NBA Player Dep. Tr. Excerpts).  Moreover, the declarations are highly probative, as they go directly to Take-Two's fair use and license defenses.  *See* Dkt. 162 (Defs.' Suppl. Rpl. Summ. J.).

**Second**, pursuant to Federal Rule of Evidence 801(d), the NBA Player Declarations are not hearsay.  That Rule provides that where a "declarant testifies and is subject to cross examination about a prior statement," the statement is not hearsay where it is "consistent with the declarant's testimony and is offered [] to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying."  The NBA Players testified and were cross examined extensively by both Parties during their depositions.  *See*, *e.g.*, Dkt. 162-02–04 (NBA Player Dep. Tr. Excerpts).  Plaintiff has indicated, in both previous motions and in his motion *in limine*, that he intends to argue that the NBA Players' deposition testimony was based on an improper motive.  Dkt. 156 at 6–7 (asserting the NBA Players "are strongly biased in favor of Take-Two due to financial self-interest"); Dkt. 169

2

at 2 (same).[1]  Take-Two should be permitted to rely on these declarations to show that the NBA

Players' deposition testimony, which Take-Two intends to present at trial, is consistent with their

prior sworn statements.  *See Vaughan v. City of Shaker Heights*, No. 1:10 Civ. 609, 2015 WL

1650202, at *16 (N.D. Ohio Apr. 14, 2015) (finding that prior hearing testimony could be used at

trial where witness sat for a deposition during which he was extensively cross examined by

counsel for both parties).

### B.   The NBA Players' Other Statements Are Admissible

Plaintiff next moves to prevent the NBA Players from testifying to what Plaintiff

contends alternatively are (1) legal or expert opinions or (2) speculative statements.  Plaintiff

also argues these statements are irrelevant or more prejudicial than probative.  As they are none

of these things, they should not be excluded.

#### 1.   Statements about the NBA Players' Likenesses and Experiences

Plaintiff seeks to exclude as improper opinions, irrelevant, and unduly prejudicial,

testimony by the NBA Players that the Tattoos are part of their likeness that they are free to use,

and that no tattooist has ever told them otherwise.  Plaintiff claims that this testimony consists of

"legal opinions related to their 'rights' in Mr. Hayden's works and their 'rights' in licensing

those works," and "claims suggesting certain industry standards."  Pl.'s Br. 2–3.  That is wrong

for several reasons.  ***First***, the statements are not opinions as they describe the NBA Players'

personal knowledge and first-hand experiences with their own tattoos as percipient witnesses,

---

[1]   Plaintiff contends that the NBA Players are biased because ███████████████████████.
Pl.'s Br. 2.  Plaintiff deposed the NBA Players on this subject, but the NBA Players actually testified that they
were impartial.  Mr. James testified that ███████████████████████████████████████████
███████████████████████████████████████████████████.  Ex. B (James Tr.) 73:3–73:8.
Although Mr. Green ████████████████████████████████████████████████████████████
███████████████████████████████████.  Ex. A (Green Tr.) 87:16–90:15.  Far from being biased against Plaintiff, Mr. Green
testified that ████████████████████, *id.*, 15:8–17:3, which certainly does not suggest impartiality in
favor of Take-Two.  Mr. Thompson testified that ███████████████████████████████
███████████████████.  Ex. C (Thompson Tr.) 36:22–37:1.

which is "not opinion testimony." *See United States v. Williams*, 737 F. App'x 235, 241 (6th Cir. 2018).  For example, many of the statements to which Plaintiff points are merely factual descriptions of what the NBA Player has experienced as a tattooed professional basketball player. Pl.'s Br. 3 (quoting Mr. James's testimony that, "[i]n the eighteen years since I've been playing professional basketball, this case is the first time that any tattooist has suggested to me that I can't license my likeness without getting permission of the tattooists who inked my tattoos," and a similar statement by Mr. Green).  Other testimony is about the NBA Players' own understanding of the Tattoos on their own bodies based on their direct experience. *Id.* (quoting Mr. Green's testimony, "As someone who regularly gets tattoos, it is my understanding that these tattoos were mine to do with what I wanted").  This is not opinion testimony.

**Second**, even if these statements were opinions, they are admissible lay opinions because they are "rationally based" on the NBA Players' "perception." *See* Fed. R. Evid. 701(a).  The Sixth Circuit "favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Keller Logistics Grp, Inc. v. Navistar, Inc.*, No. 3:19 Civ. 735, 2021 WL 4528990, at *3–4 (N.D. Ohio Apr. 29, 2021) (finding truckers' opinions of the value of comparable trucks in the market based on their firsthand observations permissible); *see Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) (finding witness's testimony within the realm of ordinary experience).  Here, the NBA Players were deposed and explained that the basis for their statements is their personal knowledge being inked.  Dkt. 95-3 (Green Decl.) ¶ 6 (explaining how his beliefs are based on the fact that he regularly gets tattoos); Dkt. 95-4 (Thompson Decl.) ¶¶ 11–12 (explaining his personal experience as a professional athlete with tattoos from multiple tattooists); Dkt. 95-2 (James Decl.) ¶ 10 (explaining his belief in his ability to be shown as he appears); *see also* Ex. B

(James Dep. Tr.) 109:20–110:2 (testifying he has over 20 tattoos and has worked with tattooists other than Mr. Hayden).  Indeed, it is hard to imagine a group of people with more lay expertise about tattoos than professional athletes.

*Third*, the NBA Players' testimony that the Tattoos are part of their likenesses and that no tattooist has limited their ability to use or show their Tattoos is relevant to Take-Two's license and fair use defenses.  *See* Dkt. 162 (Defs.' Suppl. Rpl. Summ. J.), at 4–17.  So is the fact that the NBA Players, heavily tattooed professional athletes (including tattoos inked by tattooists other than Plaintiff), have *never* been told that they could not license their tattoos without permission; this is relevant to industry standards and norms.  *Id.*, at 14–17.  The probative value of these statements outweighs any prejudicial effect, the latter of which Plaintiff has not even identified.   Plaintiff's assertion that the statements are not relevant because they were inked by different tattooists (who Plaintiff speculates might not own copyright registrations, Pl.'s Br. 4) misses the point, because the fact that *other* tattooists were *not* limiting the NBA Players' ability to license their likenesses undermines Plaintiff's unsupported and self-serving claims that there is a market for the depiction of real people with their actual tattoos.  Dkt. 162 (Defs.' Suppl. Rpl. Summ. J.), at 9–10.  These statements are also relevant to implied license, as they show the industry practice.  *Id.* at 14–17.

2.  Statements Concerning the NBA Players' Appearance in Media

Plaintiff next moves to exclude as speculative, irrelevant, and prejudicial Mr. Thompson's and Mr. Green's statements that Mr. Hayden must have known they appeared in media.  Pl.'s Br. 4.  These statements are squarely within the NBA Players' personal knowledge and, thus, admissible.  *See* Fed. R. Evid. 602.  Each player specifically discussed with Mr. Hayden that they were professional NBA basketball players.  Ex. A (Green Tr.) 52:13–16 (testifying he gave Mr. Hayden tickets to attend his NBA games); Dkt. 95-4 (Thompson Decl.) ¶

8 (stating he and Mr. Hayden "would discuss that I was a professional NBA basketball player for the Cleveland Cavaliers.").  Moreover, such statements are relevant to Take-Two's license defense as it shows that, despite knowing that these were NBA players who would be depicted in public, Mr. Hayden took no action to stop them from so appearing and showing their Tattoos.  *See Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 340 (S.D.N.Y. 2020) (tattooists did not limit use of tattoos even though they knew players were likely to appear "in public, on television, in commercials, or in other forms of media").  Again, Plaintiff has not identified any unfair prejudice outweighing the probative value of these statements.  *See United States v. Brawner*, 173 F.3d 966, 970-71 (6th Cir. 1999) (evidence that hurts a party's case is "obviously prejudicial" but "not ***unfairly*** prejudicial" (emphasis added)). And in fact, Plaintiff has argued elsewhere that Mr. Hayden's knowledge and subjective intent *is* relevant.  *See* Dkt. 109 (Pl.'s Opp. Defs.' Summ. J.), at 20.

3.     Statements Concerning the Visibility of Mr. Thompson's Tattoo

Plaintiff also moves to exclude as speculative, irrelevant, and prejudicial Mr. Thompson's statement about his tattoo's visibility.  Pl.'s Br. 4 (quoting Mr. Thompson's statement "There is no way anyone would be able to make out my tattoo's design when I'm wearing my jersey.").  Mr. Thompson has personal knowledge of his own tattoo on his own body.  Thus, the statement is not speculative.  Fed. R. Evid. 602.  Further, the visibility of his tattoos is relevant at least to whether anyone purchased the game for the Tattoos because it is implausible that anyone would purchase *NBA 2K* for Tattoos that they could not see on Mr. Thompson.  The relevance outweighs any unfair prejudice (which Plaintiff again fails to identify).

4.     Statements Concerning Expectations of Tattooed Athletes

Plaintiff further moves to exclude as speculative, irrelevant, and unfairly prejudicial Mr. Green's statement about the impact this lawsuit would have on expectations of tattooed people

6

like him. Pl.'s Br. 4–5. Mr. Green knows what his expectations are, and the impact it would have on him if his Tattoos, permanently inked on his body, were in fact owned by someone else, and it is therefore not speculative. Fed. R. Evid. 602. And such testimony is relevant at least to market harm, as well as license, to the extent it shows industry practice. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1208 (2021) (fair use where copyright would harm the public by increasing costs and creating other difficulties for the creation of new works). The relevance outweighs any prejudice (which Plaintiff again fails to identify).

### C. Take-Two's Questions of the NBA Players Were Not Leading

Plaintiff also seeks to exclude deposition testimony by the NBA Players on the basis that Take-Two's counsel allegedly asked leading questions. Pl.'s Br. 5–7. This argument fails for multiple reasons. ***First***, "a party who has not objected to a leading question at the taking of a deposition may not subsequently object to it when the deposition is introduced at the trial." *Elyria-Lorain Broad. Co. v. Lorain J. Co.*, 298 F.2d 356, 360 (6th Cir. 1961); *House v. Players' Dugout, Inc.*, No. 16 Civ. 594, 2021 WL 4898071, at *9 (W.D. Ky. Oct. 20, 2021) ("Objections . . . that are waivable include leading questions . . . ." (citing *Elyria-Lorain*, 298 F.2d at 360)); *see also Roy v. Austin Co.*, 194 F.3d 840, 844 (7th Cir. 1999) (affirming trial court ruling allowing potentially leading deposition testimony to be shown to jury because counsel's "failure to make an objection at the time [of the deposition] precluded [counsel] from keeping [the witness's] answers from the jury"). Here, Plaintiff did not object to a single question as leading (or even object to "form") during Mr. Thompson's and Mr. James's depositions. *See* Pl.'s Br. Exs. A & B. As a result, Plaintiff waived his leading objection as to these two players. This waiver of objection is especially important because there was no opportunity to re-ask the question in a different form now that the deposition has concluded. *See House*, 2021 WL 4898071, at *9 ("It is important that objections be made during the process of taking the

deposition, so that the deposition retains some use at the time of trial; otherwise counsel would be encouraged to wait until trial before making any objections . . . ." (quoting *Bahamas Agr. Indus. Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1181 (6th Cir. 1975)).

**Second**, the questions asked by Take-Two's counsel were not leading.  "It is elementary that a leading question is one that suggests an answer," *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997), such as where a witness is "improperly led . . . into giving testimony that was not [their] own." *Roy v. Austin Co.*, 194 F.3d 840, 845 (7th Cir. 1999).  For example, in *Roy*, the court found that the following were ***not*** leading questions: "Were you offended or insulted by Mr. Roy's conduct?"; "Had you ever been subjected to conduct like this . . . ?"; and "Did you tell Mr. Melsop in the telephone call that . . . ?"  194 F.3d at 845.  The court held that to "say that when he was asked [these questions] . . . he was being improperly led by . . . counsel into giving testimony that was not his own ***is silly***." *Id.* at 844–45 (emphasis added).  The court also noted that even if these questions were "no more than mildly leading," the witness "was an intelligent witness," such that he would not be misled by them.  *Id.*  Likewise, here, Plaintiff points to questions that were similarly non-leading: "do you wear different types of basketball jerseys?"; "Is it fair to say that your tattoos are very personal about how you want to be seen to the world?"; "Did I read that accurately?"; and "Was what I read true?"  Pl.'s Br. 5–6.

**Third**, even if the Court determines that Plaintiff did not waive his objections and that the questions were leading, "[i]t is well recognized that the use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court," *United States v. Shoupe*, 548 F.2d 636, 641 (6th Cir. 1977), and may be permitted absent "prejudice or clear injustice." *Lott v. Tradesmen Int'l, Inc.*, No. 5:09 Civ. 183, 2013 WL 245127, at *2 (E.D. Ky. Jan. 22, 2013).  Here, each of the NBA Players was extensively examined by Plaintiff's counsel

on the subject matter of their declarations.  If anything, there would be "prejudice or clear injustice" to Defendants were Plaintiff permitted to introduce testimony elicited by his counsel of the subject of the NBA Players' declarations but exclude testimony elicited by Take-Two's counsel on the same subject.[2]

At bottom, it is apparent that Plaintiff is trying to prevent the jury from hearing directly from the NBA Players about what actually happened during each of their tattoo sessions.  This is the very antithesis of the "quest for the truth" to which this Court set the parties, Dkt. 146, at 2, and it should be rejected.

## II.    THIRD-PARTY DECLARATIONS FROM OTHER LITIGATIONS

Plaintiff seeks to exclude evidence of "third-party declarations and deposition testimony from other tattoo artists from other litigations" by arguing that they are not relevant and are hearsay.  Pl.'s Br. 7–8.  Contrary to Plaintiff's arguments, the statements are relevant to multiple issues in this case, they are not hearsay because they are simply what others in the industry tell their clients (not whether what was said was true), and in any event should be permitted under the residual hearsay exception.

### A.    The Tattooists' Statements Are Relevant to Issues in this Case

The statements are relevant to multiple issues in this case.  *First*, one of Take-Two's affirmative defenses is that it was licensed to depict the tattoos.  As numerous courts have held, industry practice serves as evidence of such a license.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (music industry practice determined implied license); *Photographic Illustrators Corp. v. Orgill, Inc.*, 953 F.3d 56, 65 (1st Cir. 2020) ("nature of the

---

[2]    At a minimum, the Court should address Plaintiff's arguments after all deposition designations, counter-designations, and objections have been submitted to the Court so that the Court knows what the Parties intend to play for the jury and what the objections to the individual questions and answers are, as opposed to Plaintiff's broad-brush attempt to preclude all testimony now.  *See Sperberg v. Goodyear Tire Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders *in limine* which exclude broad categories of evidence should rarely be employed").

business" made it "obvious" that plaintiff wanted defendant to use the asserted work, *i.e.*, the nature of the work implied a license).

Plaintiff's sweeping *in limine* request seeks to preclude precisely such evidence of industry practice, including declarations from two tattooists who inked LeBron James, one of the NBA Players.  Specifically, Plaintiff seeks to exclude evidence, testimony, or argument regarding the following statements:

- Thomas Cornett, a tattooist with over 20 years of experience, stated that he has tattooed numerous athletes and that he "would never tell an athlete that he or she needs my permission to display their tattoos when they appear in any media."  Dkt. 95-10 at Ex. 3 ¶ 8.

- DeShawn Morris, AKA Shawn Rome, a tattooist who has inked multiple tattoos on LeBron James, two of which are part of this lawsuit, stated that he knew the tattoos would be displayed if Mr. James appeared in media and that he "did not discuss any limitations on [Mr. James'] use of the tattoos."  *Id.* Ex. 4 ¶ 11.

- Justin Wright, a tattooist with over ten years of experience who inked multiple tattoos on LeBron James, stated that he knew Mr. James likely would appear in public and that he intended the tattoos to become part of Mr. James' likeness.  *Id.* Ex. 5 ¶ 8.

- Gary Glatstein, a tattooist with over thirty years of experience (as a tattooist and tattoo shop owner), stated that a "client comes in, pays for a tattoo, and leaves when the tattoo is finished" and that once the transaction ends, "the client can go about his life with no strings attached."  *Id.* Ex. 7 ¶ 10.

- Catherine Alexander, who began tattooing in 2001, testified that she has never told a client that they needed her permission before being photographed, being depicted on a

TV show, being shown on a t-shirt or merchandise, or appearing in a video game, with their tattoos.  *Id.* Ex. 8 at 65:2–66:8.

These statements are relevant to prove, among other things, that other tattooists who tattoo athletes without litigation-driven motives say they have not required permission for athletes to appear in video games.  *See* Dkt. 95-1 (Take-Two's Mem. Supp. Summ. J.), at 21–24.

**Second**, the statements are relevant to fair use.  The fourth fair use factor considers whether a market for the use at bar is likely to develop.  Relevant to that analysis is the past practice.  *See Blanch v. Koons*, 467 F.3d 244, 258 (2d Cir. 2006) (admission that copyright owner had "never licensed any of her photographs for" the use made by defendant weighed in favor of fair use); *Est. of Smith v. Cash Money Recs, Inc.*, 253 F. Supp. 3d 737, 752 (S.D.N.Y. 2017) (fourth factor favored fair use where "Plaintiffs never attempted to establish a market for licensed derivative uses . . . until Defendants used the recording on the Album").  Here, statements by other tattooists that they did not tell their clients they required permission before the client may be shown in media shows there is no potential market for the use of tattoos made by Take-Two.  *See id.*; *see also* Dkt. 95-1 (Take-Two's Mem. Supp. Summ. J.), at 18–21.

## B.    The Tattooists' Statements Should Not Be Excluded as Hearsay

Moreover, these statements are not hearsay as they are not being offered for the truth of the matter asserted, but rather to show what other tattooists in the industry ***tell*** their clients.  This shows what the "common practice in the . . . industry" is.  *Wilchombe*, 555 F.3d at 957; *see also Chivers v. Central Noble Cmty. Schs.*, 423 F. Supp. 2d 835, 840 (N.D. Ind. 2006) (prior statements not hearsay when offered to prove what was said, not that what was said was true).

Even if the statements were hearsay, they would still be admissible under the residual exception to the hearsay rule.  Rule 807(a) provides a hearsay statement may be admitted if: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as

evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." *United States v. Wandahsega*, 924 F.3d 868, 881 (6th Cir. 2019). Here, all elements are met.

*First*, statements "made under oath subject to perjury penalties" in which "the affiants describe facts about which they have personal knowledge" show that they "possess sufficient guarantees of trustworthiness." *See United States v. Barlow*, 693 F.2d 954, 962 (6th Cir. 1982) (witness's testimony of which "she had personal knowledge" contained "substantial" guarantees of trustworthiness); *see also F.T.C. v. Amy Travel Serv., Inc.*, 875 F.2d 564, 576 (7th Cir. 1989), *overruled on other grounds by F.T.C. v. Credit Bureau Ctr., LLC*, 937 F.3d 764 (7th Cir. 2019). Here, the testimony describes the means through which the tattooist has personal knowledge of the tattoo industry and was made under penalty of perjury. Additionally, Plaintiff has not established any motive to fabricate. *See Stuart v. Wilson*, 442 F.3d 506, 524 (6th Cir. 2006) ("lack of a motive to fabricate the statements . . . indicate that the statements were reliable").

*Second*, as explained above, the statements are relevant to tattoo industry customs, which are germane to Take-Two's license defense. *United States v. Laster*, 258 F.3d 525, 529–30 (6th Cir. 2001) (no error in admitting statements if they are "material").

*Third*, the statements are more probative than any other evidence that can be obtained through reasonable efforts. They are direct evidence of industry customs and practices, which viewed in the context of "the need for the statement in the case as compared to the costs of obtaining alternative evidence," weighs in Take-Two's favor. *See Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 843 (W.D. Ky. 2017) (citing cases where, *e.g.*, it would be "unreasonable" to hale all surveyed physicians into court, to "bring letter-writers into court to swear, under oath

and subject to cross-examination, that the contents of their letters were true," and to "bring in the record custodians from different parts of the country to prove this simple fact").

*Fourth*, the statements will serve the interests of justice.  Here, their real-world experience in the tattoo industry increases the likelihood that the jury will ascertain the truth about its customs and practices.  For example, to the extent Plaintiff testifies that the standard in the tattoo industry is that permission is required to display one's tattoo, the jury should be permitted to hear otherwise.  *See Deere*, 260 F. Supp. 3d at 844 (finding it "only just and fair" to admit salespeople's statements regarding their customers, based on the opposing party's reliance on those conversations).

Moreover, Plaintiff had notice that Take-Two intended to rely on these statements long before the motion *in limine* deadline.  *Id.* (holding notice before trial, including "declarant's name and address," satisfied Rule 807(b)).  The declarations and deposition transcript were appended to the expert report of Dr. Jablonski, which was served on May 27, 2021, well over a year before Plaintiff's motions *in limine* were filed on August 1, 2022.  Accordingly, the statements are admissible.[3]

### C.  Plaintiff's Rule 403 and Rule 26 Challenges Should Be Denied

Plaintiff's remaining arguments also lack merit.  *First*, Plaintiff argues in passing that "allowing this third-party testimony at trial would be more prejudicial than probative."  Pl.'s Br. 8.  But Plaintiff makes no attempt to explain why.  Nor could he, as permitting the jury to hear only Mr. Hayden's testimony, without the context of how other tattooists view the practices

---

[3]  Plaintiff's cited authority does not warrant a different outcome.  Pl.'s Br. 7–8.  In *Weinstein v. Siemens*, the court ruled that employees' statements made at the direction of their employer were binding as to the employer, and were thus admissible as party admissions.  756 F. Supp. 2d 839, 849 (E.D. Mich. 2010).  In *Peppers v. Washington County, Tennessee*, the court held the district court did not abuse its discretion by excluding prior testimony as prejudicial, but noted that the "district court was confronted with a difficult choice."  686 Fed. Appx. 328, 332 (6th Cir. 2017).  The court further held that "it would be an abuse of discretion for a district court to weigh witness credibility and exclude proffered testimony on that basis."  *Id.* at 333.  Thus, Plaintiff's argument that these statements are "litigation-driven" should be disregarded.  Pl.'s Br. 7.

and customs of the tattoo industry, will present the view of only the Plaintiff while excluding the views of other non-biased tattooists.  *See United States v. Dimora*, 843 F. Supp. 2d 799, 826 (N.D. Ohio 2012) ("[I]n balancing its probative value against the danger of unfair prejudice, the Court is inclined to allow this evidence to rebut any such defense raised by [defendant.]").

**Second**, Plaintiff argues that the "opinions and statements from third-party tattoo artists about purported tattoo industry norms are neither relevant nor properly submitted expert testimony under Federal Rule of Civil Procedure 26."  Pl.'s Br. 8.  But Take-Two has never offered these statements as expert testimony.  Rather, as explained above, each declarant explained the basis by which he has personal knowledge from working in the tattoo industry, and presented information "rationally based on the witness's perception," consistent with lay witness testimony.  Fed. R. Evid. 701.  Thus, Plaintiff's motion should be denied.

## III.    THE VENETIAN RESORT'S LOGO

Plaintiff moves to exclude all evidence of the source material for the Lion Tattoo on LeBron James's chest on the basis of relevance and authentication.  In essence, he seeks to erase any "referenc[e]" to or "testimony about" this material (Pl.'s Br. 10) because, as shown below, the Venetian Resort's logo and the playing card bearing that logo that Plaintiff copied reveal the lack of originality of his asserted tattoo.

| Plaintiff Wants to Exclude | | Plaintiff Wants to Use |
|:---:|:---:|:---:|
| Venetian Resort Logo[4] | Venetian Playing Card[5] | Lion Tattoo Registration[6] |
|  |  |  |

---

[4]    *See* Ex. D (Trademark Registration for The Venetian).
[5]    *See* Ex. E (Venetian Playing Card).
[6]    *See* Ex. F (Pl.'s Copyright Application).

As discussed below, given that this evidence clearly show that the Lion Tattoo was not original and is authenticated, Plaintiff's motion should be denied.

### A.     Evidence of the Venetian Resort Logo is Relevant to Multiple Issues

Evidence of the Venetian Resort logo is relevant to multiple issues.  ***First***, whether Plaintiff copied the Lion Tattoo from another source is highly relevant to infringement.  To "establish infringement," Plaintiff must prove "copying of constituent elements of the work that are original."  *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  To prove originality, Plaintiff must show that the work was "independently created," "as opposed to [being] copied from other works."  *Sem-Torq, Inc. v. K Mart Corp.*, 936 F.2d 851, 854 (6th Cir. 1991) (citing *Feist*, 499 U.S. at 345).  Further, "protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." 17 U.S.C. § 103(a); *see Psychopathic Recs., Inc. v. Anderson*, No. 08 Civ. 13407, 2009 WL 2591385, at *2 (E.D. Mich. Aug. 24, 2009) ("no copyright protection" for derivative work of other copyright).

Here, the evidence Plaintiff seeks to exclude shows that Plaintiff copied the Venetian Resort logo and, thus, the Lion Tattoo is not original and cannot be infringed.  The background facts are not in dispute—Plaintiff admits that in 2008, LeBron James "c[a]me into [his] shop with a playing card that depicted a lion," asked Plaintiff to ink something "similar" to it "on his chest," and then he did.  Ex. G (Pl.'s Tr.) 82:6–8, 83:21–25, 84:19–23; *see also* Dkt. 109 (Pl.'s Opp. Defs.' Summ. J.), at 28 (admitting that "a playing card . . . offered inspiration for the *Lion* tattoo).  Consistent with this, LeBron James testified that he brought to Plaintiff a "███████ ████████████████████████████████████████████████████" Ex. B (James Tr.) at 116:11–117:2, which is a casino.  *See* Ex. D (Trademark Registration for The Venetian); *see also* Ex. B (James Tr. 50:2–7) ("████████████████████████

██████████████████████████████████████████████████████

████████████████████████.").  He further testified that the Lion Tattoo on his chest

is "████████████████████████."  *Id.* at 55:8–19 ("████████████████

██████████████████████████████████████████████████████

████████.").  Thus, while Plaintiff admits that a lion on a deck of playing cards is the source of

the Lion Tattoo, he asks to exclude the evidence that illustrates these events.  *See* Dkt. 95-1

(Defs.' Suppl. Rpl. Summ. J.), at 27–29.  This evidence shows that the Lion Tattoo is not original

and does not have copyright protection, and thus there is no infringement.  *Id.*, at 27–28.

   ***Second***, the evidence is relevant to whether Plaintiff committed fraud on the Copyright

Office, which exists where (1) the Plaintiff's copyright registration contains inaccurate

information; (2) Plaintiff knew the information contained in the registration was inaccurate; and

(3) the inaccuracy, if known, would have caused the Register of Copyrights to refuse the

registration.  *See* 17 U.S.C. § 411(b).  Here, Plaintiff did not disclose that he copied the Lion

Tattoo to the Copyright Office, despite knowing it came from another source and, thus, it should

not have been registered.  *Supra* 15; *see also* 17 U.S.C. § 103(a).

   ***Third***, the evidence is relevant to Take-Two's fair use defense, because one factor

considers whether "whether the work was [] 'factual or creative.'"  *Castle v. Kingsport Publ'g

Corp.*, No. 19 Civ. 92, 2020 WL 7348157, at *6 (E.D.Tenn. Dec. 14, 2020).  As Plaintiff simply

"copied [the Lion Tattoo] from other works, [*i.e.*, the Venetian Resort logo]," *Sem-Torq*, 936

F.2d at 854, the Lion Tattoo is not creative.  Thus, the evidence is relevant.

   **B.   Evidence of the Venetian Resort Logo is Properly Authenticated**

   Plaintiff also argues that the Venetian Resort logo is not properly authenticated.  Pl.'s Br.

9–10.  Plaintiff's arguments fail.  ***First***, with respect to the trademark registration, as a public

record, it "qualifies as a self-authenticating document under Federal Rule of Evidence 902."

16

*Coach, Inc. v. D 4 L Apparel*, No. 11 Civ. 185, 2013 WL 489658, at *5 (W.D. Tex. Feb. 7,

2013); *see also Eli Rsch., LLC v. Must Have Info Inc.*, No. 2:13 Civ. 695, 2015 WL 6501070, at

*3 (M.D. Fla. Oct. 22, 2015) (trademark registration is "self-authenticating"); 15 U.S.C.

§ 1057(f) ("copies of registrations . . . authenticated by the seal of the [PTO] and certified by the

Director . . . shall be evidence in all cases wherein the originals would be evidence").  The

attached Exhibit D is a certified copy of the trademark registration that bears the seal of the

United States Patent and Trademark Office and the signature of a certifying officer and, thus, is

self-authenticating.  *See Eli Rsch.*, 2015 WL 6501070, at *3; *Coach*, 2013 WL 489658, at *5.

  *Second*, as to the playing card, Plaintiff does not dispute that Exhibit E (Venetian Playing

Card) that he seeks to exclude is an authentic printout from eBay, containing the date it was

printed and the URL from which it was obtained.  Pl.'s Br. 9–10.  Instead, he challenges whether

the exhibit depicts the same card that Mr. James brought with him to the tattoo session.  *Id.*

Moreover, contrary to Plaintiff's argument in his brief, he did not deny at his deposition that the

card he was shown is the same as the card that Mr. James brought to Plaintiff.  Instead, he

testified that, while the specific card "doesn't look like the one from ten years ago," he did not

"know one way or the other" whether it was and does not "remember what it looked like."  Ex. G

(Pl.'s Dep. Tr.) 216:10–217:9.  Given his ambiguous testimony, the jury is well-equipped to look

at the playing card (and the trademark registration) and compare it to the Lion Tattoo, and also

consider LeBron James's testimony that the playing cards he brought came from the Venetian

Resort.  Ex. B (James Tr.) 50:2–7, 116:11–117:2.[7]

---

[7] This is unlike the situation in the cases cited by Plaintiff.  In *United States v. Craig*, the defendant denied that he
was the masked individual in a video that was nevertheless shown to the jury, and there was no other evidence
proving that he was, rendering it unauthenticated.  953 F.3d 898, 903 (6th Cir. 2020).  Had he been unmasked in
the video, the result would have been different because the jury would have been able to see for itself whether
the individual in the video was the defendant.  *Id.*  Here, of course, the jury will be able to see the trademark
registration and the playing card and see for itself that they are the same design as the Lion Tattoo.  *See* Exs. D–
F.  And in *Swartz v. DiCarlo*, the court noted that the "Federal Rules of Evidence require authentication or

## IV.    POLICY IMPACT OF AN INFRINGEMENT FINDING

Plaintiff moves to exclude evidence of the "negative consequences a ruling in Mr. Hayden's favor would have on the markets for tattoos and video games and the public in general," arguing it is irrelevant and prejudicial.  Pl.'s Br. 11.  As an initial matter, Plaintiff's motion lacks sufficient specificity as to what it proposes to exclude and should be denied on that basis alone.  *See Sperberg*, 519 F.2d at 712 ("Orders *in limine* which exclude broad categories of evidence should rarely be employed").[8]

Regardless, evidence and testimony of the market is relevant at least to the fourth fair use factor, which examines "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.  ***First***, the fourth factor considers "a use's impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets."  *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 91 (2d Cir. 2014) (citations omitted).  As such, Take-Two must be permitted to argue about the market effects stemming from its challenged uses.  *Id.* (finding fourth factor weighed in favor of fair use where "[n]othing in the record [suggested] any possible market effect stemming from [defendant's use]" (citations omitted)).  ***Second***, the fourth factor "must take into account the public benefits the copying will likely produce."  *Google, LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1206 (2021).  Given the evidence that requiring video game publishers to license the tattoos that athletes bear in real life will increase costs and create other difficulties in creating new works, *E.g.*, Ex. H (Suppl. Reb. Rpt. of J. Malackowski) 16–17, the fourth factor weighs against fair use.  *See Google*, 141 S. Ct.

---

identification of items offered into evidence."  No. 12 Civ. 3112, 2018 WL 10483103, at *1 (N.D. Ohio Sept. 13, 2018).  As noted above, that is satisfied here because the items themselves have been identified and Plaintiff does not dispute where they came from; his dispute is a factual one as to whether he copied from these sources, which the jury can decide by visual inspection and considering the testimony of Plaintiff and Mr. James.

[8]    The only specific evidence that Plaintiff cites is Paragraphs 41 to 45 of Dr. Jablonski's report.  Pl.'s Br. 11.  Dr. Jablonski, however, will not testify as to whether Plaintiff's claim is a "marked departure from the customs and practices of the tattoo industry" per the Court's order.  Dkt. 150 (Ord. Mot. Exclude Jablonski), at 7.

at 1208.  Likewise, such a requirement would lessen the rights of the tattooed in their own bodies, which would result in fewer customers obtaining tattoos, decreasing the tattoo business as a whole.  *E.g.*, Ex. H (Suppl. Reb. Rpt. of J. Malackowski) 16.  Take-Two is entitled to the opportunity to establish this at trial as part of its fair use defense.

## V.     MR. HAYDEN'S OWN TATTOOS

Plaintiff moves to exclude evidence, testimony, or argument concerning Mr. Hayden's own tattoos on the grounds that such evidence is irrelevant and more prejudicial than probative. Such testimony is relevant to industry practice, as Mr. Hayden's own experience getting tattoos is further evidence that restrictions on how a tattooed person can show their tattoos are not the norm.  And to the extent Mr. Hayden did not need to obtain a license from his tattooists to show his tattoos in commercials, this is relevant to the lack of a market and thus goes to market harm. Moreover, this motion contradicts Plaintiff's prior positions.  He repeatedly has asserted that his subjective intent in inking the NBA Players is relevant to the issue of implied license.  Dkt. 109 (Pl.'s Opp. Defs.' Summ. J.), at 20.  Take-Two asserts this is not the law; courts in this Circuit consider ***objective*** evidence of intent, such as ***contemporaneous*** contracts preventing further uses of the work (which do not exist here),[9] oral limitations on further uses of the work (which do not exist here), or evidence of an industry practice of limiting use of the work (which does not exist here).  *See* Dkt. 162 (Defs.' Suppl. Rpl. Summ. J.), at 10–13.  But if Plaintiff is permitted to put his subjective intent at issue, Take-Two certainly should be permitted to interrogate Plaintiff's supposed intent.  Plaintiff's understanding of what he could do with his own tattoos is highly relevant to that; if Plaintiff believed he did not need to get permission to show his own tattoos in commercials or other media, it is unclear why he expected differently from his own clients.  Any

---

[9]    Contracts made years or decades later, such as certain releases with third parties, are not evidence of intent, for example, as they are not contemporaneous contracts.  *See* Dkt. 135 (Defs.' Rpl. Summ. J.), at 15.

possible prejudice (and Plaintiff does not even explain what the prejudice is) would not be unfair and is substantially outweighed by the probative value of this evidence.

## VI.  ADVICE OF COUNSEL

Plaintiff moves to exclude "evidence or testimony supporting" an advice of counsel defense.  Pl.'s Br. 12.  Plaintiff's motion is moot because Take-Two is not pursuing this defense.

## VII.  CERTAIN EXPERT OPINIONS

Plaintiff seeks "to preclude Take-Two from referencing, introducing evidence, testifying, or eliciting testimony relying on" the expert opinion of its damages expert, Mr. James Malackowski.  Pl.'s Br. 12–13.  Plaintiff's motion simply paraphrases the arguments that he made in his *Daubert* motion to exclude Mr. Malackowski's opinions, which the Court recently denied.  *See* Dkt. 178 (Ord. Denying Pl.'s Mot. Exclude Malackowski).  In that decision, the Court specifically found that Mr. Malackowski's "opinions and testimony are relevant, reliable and helpful to the factfinder," that he is entitled to rely on the admissible testimony of Take-Two's other experts, Dr. Jablonski, Dr. Jay and Dr. Bogost, and that he is allowed to testify that none of Take-Two's profits from virtual currency (or otherwise) are attributable to any alleged infringement.  *Id.* at 6–7.  Plaintiff's motion is thus moot as to Mr. Malackowski.

Plaintiff also seeks "to preclude Take-Two from referencing, introducing evidence, testifying, or eliciting testimony relying on Dr. Jablonski's and Dr. Bogost's excluded portions of their opinions."  Pl.'s Br. 13–14.  Take-Two will, of course, comply with the Court's orders on Drs. Jablonksi and Bogost.  Dkts. 150, 158.  To the extent that Plaintiff seeks relief beyond what the Court has already ordered, he has failed to articulate that and his request should be denied.

Dated: August 29, 2022

/s/ Dale M. Cendali
Dale M. Cendali (*pro hac vice*)
Joshua L. Simmons (*pro hac vice*)
Chris Ilardi (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Take-Two 2K Games, Inc. and*
*Take-Two Interactive Software, Inc.*