**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN,<br><br>Plaintiff,<br><br>v.<br><br>2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>Defendants. | CASE NO. 1:17-cv-02635-CAB |

**DEFENDANTS' BRIEF ON *WARHOL V. GOLDSMITH***

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. *Bill Graham* and its Progeny Were Affirmed by the Second Circuit in *Warhol* and Support Fair Use Here .......... 3

B. Take-Two's Use is Distinguishable from the Non-Transformative Uses Identified by the Second Circuit in *Warhol* .......... 6

C. *Warhol* Further Clarifies that the Court, Not the Jury, Should Decide Fair Use .......... 8

III. CONCLUSION .......... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol, Found. for the Visual Arts, Inc. v. Goldsmith*,
11 F.4th 26 (2d. Cir. 2021) .......... *passim*

*Andy Warhol, Found. for the Visual Arts, Inc. v. Goldsmith*,
382 F. Supp. 3d 312 (S.D.N.Y. 2019).......... 3

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
Pet. for a Write of Cert., No. 21-869 (2d Cir. Dec. 9, 2021) .......... 1, 7

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith,*
Br. of Amici Curiae Copyright Law Professors in Support of Pet. For Cert.,
No. 21-869, (2d Cir. Jan. 10, 2022) .......... 8

*Authors Guild, Inc. v. HathiTrust*,
755 F.3d 87 (2d Cir. 2014).......... 4

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015).......... 4

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006).......... 3, 4, 6

*Blanch v. Koons*,
467 F.3d 244 (2006).......... 6

*Bouchat v. Balt. Ravens Ltd. P'ship*,
737 F.3d 932 (4th Cir. 2013) .......... 4

*Cariou v. Prince*,
714 F.3d 694 (2d Cir. 2013).......... 6

*Google LLC v. Oracle Am., Inc.*,
141 S.Ct. 1183 (2021).......... *passim*

*Kelly v. Arriba Soft Corp.*,
336 F.3d 811 (9th Cir. 2003) .......... 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) .......... 5

*Rogers v. Koons*,
960 F.2d 301 (2d Cir. 1992).......... 6, 7

*Sarl Louis Feraud Int'l v. Viewfinder Inc.*,
627 F. Supp. 2d 123 (S.D.N.Y. 2008)....................5

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
709 F.3d 1273 (9th Cir. 2013)....................4

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
449 F. Supp. 3d 333 (S.D.N.Y. 2020)....................4

Pursuant to the Court's February 1, 2021 Order (Dkt. 202), Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. (together, "Take-Two") respectfully submit this brief concerning the impact on this action of the United States Supreme Court case, *Andy Warhol Foundation for Visual Arts, Inc. v. Goldsmith*, which was argued on October 12, 2022 and which is still undecided as of the filing of this brief. In particular, the Court seeks the Parties' input on *Warhol*'s implications for the fair use defense in this case, and transformativeness in particular.

## I. INTRODUCTION

A further articulation by the Supreme Court of what constitutes transformative use is likely to be helpful to this case, and will also likely underscore why Take-Two's use of the tattoos-at-issue in this case is transformative. As explained below, even if the Supreme Court affirms the Second Circuit's finding of no fair use/non-transformativeness, it will not likely change the line of cases on which Take-Two relies here to support a finding of fair use. On the other hand, should the Supreme Court reverse the Second Circuit and find the use is transformative/fair, it will likely only strengthen Take-Two's fair use defense. Either way, the case is likely to support the rule that the ultimate question of fair use is for the court, not the jury, to decide.

Fair use cases implicating "transformativeness" can generally be divided into two categories: (1) cases involving uses for different ***purposes***, which the Supreme Court reaffirmed as transformative in *Google LLC v. Oracle America, Inc.*, 141 S.Ct. 1183, 1203–04 (2021); and (2) cases involving uses that share the same high level purpose, but are nonetheless transformative because they alter the original work with ***new expression***, ***meaning, or message***. As detailed below, in *Warhol*, the Second Circuit recognized and reaffirmed these two lines of transformativeness cases, finding that Warhol's use fit into neither category. Not only did the works at issue share the same purpose, the Second Circuit reasoned, but Warhol's use retained

the essential elements of the source material, without sufficiently adding to or altering it. Thus, the use was not transformative. The narrow issue before the Supreme Court is whether, despite the fact that Warhol used the Goldsmith photograph for the same overarching purpose as Goldsmith and without significant alteration or addition, Warhol's copying is nonetheless transformative because it conveys a different meaning or message from the original work.

Take-Two's use of tattoos in *NBA 2K* serves a fundamentally different purpose from the original tattoos, and thus falls within the first line of cases recognized and reaffirmed by the Second Circuit in *Warhol* as implicating transformative uses. *See infra* 3–4. Indeed, this Court expressly recognized the different purposes, finding "Defendants' purpose of creating realism and accuracy is distinguishable from Plaintiff's aims." Dkt. 193 (Op. re Defs.' Mot. Summ. J.) at 12–13. In addition to the different purposes, this is not a situation in which the copyrighted work only minimally alters or adds to the secondary work—there is extensive other expression, beyond the tattoos, in *NBA 2K*. Thus, from the perspective of Plaintiff here, even if the Supreme Court affirms the Second Circuit's opinion in *Warhol*, at best the outcome would reaffirm that Take-Two's use is transformative. Alternatively, the Supreme Court could choose to strengthen the fair use defense by overturning the Second Circuit's opinion and finding fair use even where a copyrighted photograph is prominently used as source material for a new visual artwork with minimal addition or alteration. If that happens, such a decision could simply bolster the already extensive case law supporting a finding of transformativeness in this situation, where *extensive* material was added to the original work and the purposes are plainly different.

## II. ARGUMENT

### A. *Bill Graham* and its Progeny Were Affirmed by the Second Circuit in *Warhol* and Support Fair Use Here

In *Warhol*, the district court granted summary judgment to the plaintiff, Andy Warhol Foundation ("AWF") on its fair use defense, finding that Warhol's series of silkscreen prints and pencil illustrations (the "Prince Series," below right) made transformative use of a photograph by Lynn Goldsmith (the "Goldsmith Photograph," below left). *See Andy Warhol, Found. for the Visual Arts, Inc. v. Goldsmith*, 382 F. Supp. 3d 312, 316 (S.D.N.Y. 2019).






The district court noted that Warhol's work employed "new aesthetics with creative and communicative results distinct" from the original. *Id.* at 325–26. The district court paid particular attention to the works' respective formulations of Prince's identity, with the Goldsmith Photograph portraying Prince as uncomfortable and "vulnerable," and the Prince Series portraying him as "iconic" and "large-than-life." *Id.* at 326.

On appeal, the Second Circuit reversed and found no fair use. In so doing, it distinguished Warhol's use from a line of transformativeness cases involving copying that serves a "plainly different" purpose from the original. *See Andy Warhol, Found. for the Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 40 (2d. Cir. 2021). The Second Circuit gave, as a paradigmatic example of this type of case, *Bill Graham Archives v. Dorling Kindersley Limited*, which held that the reproduction of Grateful Dead concert posters in a book about the band was transformative because the historical purpose of accurately depicting the posters differed from

the original purpose the posters served. 448 F.3d 605, 609–610 (2d Cir. 2006). In *Bill Graham*, the transformative purpose was strengthened by the manner in which the defendant displayed the images. *Id*. at 611. The defendant "significantly reduced the size of the reproductions," conveying the historical content as needed without focusing on their expressive value. *Id.* And the defendant combined the expression with "textual material" and "original graphical artwork," which further ensured that the images were employed to "enrich the presentation of the cultural history of the Grateful Dead, not to exploit copyrighted artwork for commercial gain." *Id.*

In *Warhol*, the Second Circuit also gave the example of *Authors Guild, Inc. v. HathiTrust*, which found that Google's database of books permitting the searcher to view a "snippet" from the original text showing the context in which a word or phrase had appeared was transformative. 755 F.3d 87, 95 (2d Cir. 2014) (distinguishing purpose of the author in writing a book from purpose of the defendant in "enabling full-text search"); *see also Authors Guild v. Google, Inc.*, 804 F.3d 202, 216–17 (2d Cir. 2015) (copying for purpose of enabling a search for identification of books was highly transformative). Likewise, in *Google*, the Supreme Court found that copying programming language to create new products and expand the usefulness of smart phones was a transformative purpose that differed from the original. 141 S.Ct. at 1203–04. As a result, *Warhol* did not disturb the long line of cases finding that use of a work for a different purpose, such as use for a historical purpose rather than an expressive purpose as in *Bill Graham*, is transformative. *See*, *e.g.*, *Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 940 (4th Cir. 2013) (transformative to use, "not for its expressive content, but rather for its factual content" and as a "historical guidepost"); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013) (using *Ed Sullivan Show* clip "as a biographical anchor" within the fictional musical was transformative). This includes *Solid Oak Sketches, LLC v. 2K Games, Inc.*, which

relied heavily on *Bill Graham* in finding that the use of tattoos on NBA players in *NBA 2K* is transformative. 449 F. Supp. 3d 333, 343–45 (S.D.N.Y. 2020) (showing tattoos on real people in video games was transformative).

This Court has already recognized that Defendants' use of the tattoos in *NBA 2K* serves a different purpose from Plaintiff's use—"Defendants' ultimate purpose is realism; whereas Plaintiff created body art and imagery which hold personal meaning to three NBA players." Op. re Defs.' Mot. Summ. J. 12–13. And as in many of the cases discussed above, Take-Two minimized the expressive value of the tattoos by reducing them in size and placing them in context of an assortment of audiovisual material, including graphics, characters, a fictitious plot, gameplay, and music, and when the tattoos are depicted, they appear in a reduced size from real life and among a plethora of other visual and auditory elements. Dkt. 193 (Defs.' Mot. for Summ. J.) at 13–14. Thus, Take-Two's use falls squarely within the first line of cases finding transformativeness that the Second Circuit in *Warhol* explicitly left undisturbed. *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 544 (6th Cir. 2004) (finding work used "for a different purpose" supported fair use and concluding that the plaintiff failed to establish likelihood of success on the merits); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003); *Sarl Louis Feraud Int'l v. Viewfinder Inc.*, 627 F. Supp. 2d 123, 128 (S.D.N.Y. 2008) (use was transformative where work was reduced to smaller, 2D image imbued with defendant's own creative expression).

As a result, even if the Supreme Court affirms the Second Circuit's finding of no fair use in *Warhol*, which is the best possible scenario for Plaintiff, the line of cases supporting a finding of transformativeness where the purposes are different, including cases where the use was for a historical purpose and the expressive value of the original was minimized, will continue to

support finding fair use here. *See Google*, 141 S. Ct. at 1203 (looking at the purpose of the use and finding it was transformative where Google's purpose was to create *new* products and expand the use and usefulness of Android-based smartphones).

**B. Take-Two's Use is Distinguishable from the Non-Transformative Uses Identified by the Second Circuit in *Warhol***

The Second Circuit in *Warhol* distinguished the *Bill Graham* line of cases from a line of cases involving visual artworks that share the "same overarching purpose." 11 F.4th at 40. In this context, the Second Circuit reasoned that a use is transformative where the original work is used as a "***raw material***" to create new artwork standing apart from the original. *Id.* at 38–41. For example, in *Blanch v. Koons*, the artist Jeff Koons used a photograph of women's shoes as part of a larger work in which he set it alongside several other similar photographs, with changes in color, background, and size. 467 F.3d 244, 253 (2006) (finding fair use where photograph was used to create collage); *see also Cariou v. Prince*, 714 F. 3d 694, 710 (2d Cir. 2013) (finding fair use in part where photograph was used to create collage). By contrast, where the copyrighted work as "a ***major if not dominant component***" of the secondary artistic work, the use was not transformative. *Warhol*, 11 F.4th. at 38–41 (emphasis added). In *Rogers v. Koons*, for example, the artist Jeff Koons created a brightly colored sculpture derived from a photograph of a couple holding a group of puppies, which the Court held was not fair use despite Koons' claim that the sculpture served as social criticism. 960 F. 2d 301, 305 (2d Cir. 1992).

The Second Circuit found that unlike the cases involving collage, the use of the Goldsmith Photograph in the Prince Series was not transformative because it retained the "essential elements" of the Goldsmith Photograph without significantly "adding to or altering" those elements. *Id.* at 43. In reversing the district court, the Second Circuit found the subjective intent to portray Prince as "vulnerable," and Warhol's countervailing attempt to strip him of that

vulnerability, was insufficient to render the work transformative. *Id*. at 41 ("Whether a work is transformative," the court reasoned, "cannot turn merely on the stated or perceived intent of the artist or the meaning or impression that a critic—or for that matter, a judge—draws from the work."). Instead, the focus of the transformativeness inquiry, in the Second Circuit's view, was on the use of the source material, not the "subjective" meaning. *Id.* at 42. AWF's appeal to the Supreme Court thus implicates the narrow question: "Whether a work of art is 'transformative' when it conveys a different meaning or message from its source material (as this Court, the Ninth Circuit, and other courts of appeals have held), or whether a court is forbidden from considering the meaning of the accused work where it 'recognizably deriv[es] from' its source material (as the Second Circuit has held)." Pet. for a Writ of Cert., *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, No. 21-869 (2d Cir. Dec. 9, 2021).

Unlike the appellants in *Warhol*, Take-Two is not relying purely on new meaning and message to argue that a use that is otherwise for the same purpose as the original, and that dominates the secondary work, is nonetheless fair. As an initial matter, Take-Two used the tattoos for a different purpose—realism—which as described above puts its use in line with the extensive case law finding transformativeness in such circumstances. *See supra* 3–5. This puts Take-Two's use in the first line of cases considered by the Second Circuit, not the second. But in the context of the second line, Take-Two's use plainly differs from the cases finding no transformativeness. This is not a situation, as in *Rogers*, where the tattoos serve the same purpose as the original and are being used as a "major if not dominant component" of *NBA 2K*. *See Warhol*, 11 4th at 41. Indeed, as detailed above, the expressive value of the tattoos is minimized in *NBA 2K*. *See supra* 5. Thus, even if the Supreme Court affirms the Second

Circuit's decision in *Warhol* and finds that Warhol's use is not transformative, such a finding would not undermine Take-Two's argument for transformativeness here.

* * *

It is also possible that the Supreme Court will overturn the Second Circuit and find Warhol's use is transformative, thereby expanding fair use beyond the categories described by the Second Circuit. Indeed, the Supreme Court could find that changes in meaning and message alone can be transformative even where the source material is dominant in the secondary work, as certain amici have insisted it should. *See, e.g.*, Br. of Amici Curiae Copyright Law Professors in Support of Pet. for Cert. at 7, 18–19, *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith,* No. 21-869, (2d Cir. Jan. 10, 2022) (urging that "Considering meaning is often the only way to make sense of why a transformative work is transformative."). Such a finding would only further support a finding of fair use in this case as a matter of law, where the use of the tattoos in *NBA 2K* is far less than in *Warhol*.

### C. *Warhol* Further Clarifies that the Court, Not the Jury, Should Decide Fair Use

From a procedural perspective, *Warhol* is yet another example in a long line of cases where courts decide fair use on summary judgment (the district court found fair use as a matter of law and the Second Circuit found no fair use as a matter of law, but neither found that the issue should be decided by a jury). Indeed, deciding fair use as a matter of law is consistent with the Supreme Court's recent holding in *Google* that the "ultimate question" of fair use is a legal question ***for the court*** to decide, not the jury. 141 S.Ct. at 1199 (finding fair use "primarily involves legal work," including a review of cases that "provide legal interpretations of the fair use provision," and concluding that there is no right to have a jury resolve a fair use defense).

The jury's role in the fair use analysis, by contrast, is to decide "subsidiary" factual questions, where those questions are in dispute. *Id.* at 1200.

In *Warhol*, the Supreme Court is unlikely to diverge from its prior view that the court, ***not*** the jury, should be deciding the ultimate question of fair use. As in *Warhol*, here the material facts are not in dispute; the works speak for themselves and show the context in which the tattoos appear. And, as the Court recognized already, there is no question that Plaintiffs and Defendants used the tattoos for different purposes. As there are no subsidiary factual questions for the jury to decide in this case, Defendants expect that *Warhol* will lend further support to a finding of fair use by the Court in this case.

## III. CONCLUSION

For the foregoing reasons, the Supreme Court's decision in *Warhol* is likely to strengthen the view that Take-Two's use of the tattoos is transformative.

Dated: New York, NY
March 13, 2023

*/s/ Dale M. Cendali*

Dale M. Cendali (admitted *pro hac vice)*
Joshua L. Simmons (admitted *pro hac vice*)
Chris Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.*