# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JAMES HAYDEN,** | ) |
| Plaintiff, | ) CASE NO. 1:17-cv-02635-CAB |
| v. | ) JUDGE CHRISTOPHER A. BOYKO |
| **2K GAMES, INC., et al.,** | ) |
| Defendants. | ) |

# PLAINTIFF'S BRIEF REGARDING IMPACT OF *WARHOL* CASE

**I.     INTRODUCTION**

The forthcoming Supreme Court decision in *Andy Warhol Foundation for Visual Arts, Inc. v. Goldsmith* ("*Warhol*") is highly unlikely to have any impact on this case given the unique facts in Warhol, which are simply not present here. In *Warhol*, artist Andy Warhol modified an original black and white photo of the musician Prince into a brightly colored, highly stylized print. In this case, on the other hand, Take-Two makes an *exact copy* of the copyrighted tattoos in question ("Tattoos") and replicates them in its NBA 2K video games. Other than adapting the size of the tattoos to its game, Take-Two is not changing the works *at all*. Thus, the issue before the Supreme Court—whether Warhol's modification of the Prince photo conveyed a different "meaning or message"—is simply not present here, where Take-Two is copying the Tattoos *exactly*.



| Goldsmith Photograph | Orange Prince | Hayden "Gloria" Tattoo | Take-Two Copy of "Gloria" in NBA 2K16 |
|---|---|---|---|

The Petitioner in *Warhol*, the Andy Warhol Foundation, asks the Supreme Court whether the Second Circuit erred by ignoring the different ***"meaning or message"*** conveyed in Andy Warhol's "Orange Prince" work when determining whether the work was "transformative" under

1

the first fair use factor. Although the answer to this question may impact appropriation artists who modify, adapt, and transform pre-existing works into new artwork, imbuing them with new messages and meanings, it is of no import here.

Take-Two is undoubtedly *not* an artist like Andy Warhol seeking to convey new meaning or message by modifying another artist's work. Take-Two actually *avoids* modifying the Tattoos in question because Take-Two purports to maximize "realism" in its NBA 2K games. It generates *exact* copies of the Tattoos to purportedly display the NBA players in its game exactly as they appear in real life. Take-Two's exact copying adds no new meaning or message—and any argument Take-Two might make now regarding such new meaning or message is nothing more than a "head fake" and should be ignored. No outcome in *Warhol* will affect the fair-use analysis in this case nor justify Take-Two's wholesale, facsimile, commercial copying as fair use. This case should proceed on its current schedule and go to trial on June 14, 2023.

## II.   WARHOL CASE BACKGROUND

On October 20, 2022, the Court ordered the parties to file, "contemporaneous briefing on the impact of the U.S. Supreme Court case of *Andy Warhol Foundation for Visual Arts, Inc. v. Goldsmith*, which was argued on October 12, 2022. (Dkt. # 201 at 2.) The Court seeks the parties' input regarding 'fair use,' a mixed question of law and fact that the Court left for trial in this matter." (*Id.*)

The Copyright Act codified the "fair use" exception to copyright infringement, which allows some copying for limited purposes such as criticism, comment, news reporting, teaching, scholarship, and research. *See* 17 U.S.C. § 107. Section 107 provides four factors that courts must examine together to determine if a use is "fair":

1. The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2

2. The nature of the copyrighted work;

3. The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4. The effect of the use upon the potential market for or value of the copyrighted work.

The Supreme Court has held that no one factor is dispositive and there are no "bright-line rules"—the determination calls for "case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994). The statutory factors should not "be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." *Id.* Likewise, this Court noted in its opinion denying Take-Two's motion for summary judgment, "fair use is an open-ended and context-sensitive inquiry." *Hayden v. 2K Games, Inc.*, No. 1:17CV2635, 2022 WL 4356211 at *6 (N.D. Ohio, Sep. 20, 2022) (quoting *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) (cleaned up.)).

In *Warhol*, the Supreme Court is examining only the *first* factor of this balancing test. More specifically, the Supreme Court is examining only *one aspect* of the first factor. Courts must ask two questions in assessing the first factor: (1) whether an allegedly infringing work is "transformative," and (2) whether its purpose is "commercial or noncommercial." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 582 (6th Cir. 2007). The question Petitioner presented to the Supreme Court in *Warhol* is limited to the first question above—the "transformative use" analysis of the first fair-use factor:

> This Court has repeatedly made clear that a work of art is "transformative" for purposes of fair use under the Copyright Act if it conveys a different "meaning[] or message" from its source material. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1202 (2021). In the decision below, the Second Circuit nonetheless held that a court is in fact forbidden from trying to "ascertain the intent behind or meaning of the works at issue." Pet. App. 22a-23a. Instead, the court concluded that even where a

3

new work indisputably conveys a distinct meaning or message, the work is not transformative if it "recognizably deriv[es] from, and retain[s] the essential elements of, its source material." *Id.* at 24a. The question presented is:

> Whether a work of art is "transformative" when it conveys a different meaning or message from its source material (as this Court, the Ninth Circuit, and other courts of appeals have held), or whether a court is forbidden from considering the meaning of the accused work where it "recognizably deriv[es] from" its source material (as the Second Circuit has held).

(Brief for Petitioner at i, *Andy Warhol Foundation for Visual Arts v. Goldsmith*, No. 21-869 (argued Oct. 12, 2022), 2022 WL 2137072, at *i.)

The dispute in *Warhol* dates back to events from over four decades ago. In late 1981, photographer Lynn Goldsmith photographed the musician Prince at her studio for Newsweek Magazine. (*See* Brief for Respondents at 6–7, 2022 WL 3327464, at *6–7.) During the photoshoot, Prince was noticeably uncomfortable, shy, and reserved, so Goldsmith tried "to get action" from Prince by applying makeup to him to accentuate his features (*i.e.*, lip gloss to make the lighting pop, purple eye shadow to highlight Prince's eyes in an effort to accentuate his sensuality, and shade to feature Prince's chiseled bone structure). (*Id.*)

Four years later, in 1984, Vanity Fair approached Goldsmith seeking a photograph that could be used as an "artist reference" for the cover of a magazine that would feature an article about Prince. (*See* Brief for Respondents at *10.) Vanity Fair licensed a Goldsmith photograph for $400, a stipulation that the photograph could only be used in the November 1984 issue, and other promises from the magazine. (*See id.* at *10.) Vanity Fair then commissioned Andy Warhol to create an illustration based on Goldsmith's photograph. (*See id.*)

Warhol used various techniques to adapt "Goldsmith's intimate depiction [of Prince] into an 'iconic, larger-than-life figure,' stripping Prince of the 'humanity . . . embodie[d] in [the] photograph to comment on the manner in which society encounters and consumes celebrity." (Petition for a Writ of Certiorari at 10, *Andy Warhol Foundation for Visual Arts v. Goldsmith*,

4

No. 21-869 (argued Oct. 12, 2022), 2021 WL 5913520, at *10.) "Warhol cropped the image to remove Prince's torso, resized it, altered the angle of Prince's face, and changed tones, lighting, and detail. Warhol also added layers of bright and unnatural colors, conspicuous hand-drawn outlines and line screens, and stark black shading that exaggerated Prince's features." (*Id.* at *9–10.) Warhol's goal was to, "subtly alter[] the photorealistic source material in a variety of ways that dehumanize the person depicted—and thus imbue the preexisting content with a new meaning." (*Id.* at *8.) Warhol's end result was "a flat, impersonal, disembodied, mask-like appearance," referred to as "Purple Prince." (Brief for Petitioner at *19.)



Without Goldsmith's approval, Warhol also made another 15 similarly stylized works based on the Goldsmith photograph (the "Prince Series"). (*See id.* at *11.) When Warhol died in 1987, the Andy Warhol Foundation ("AWF") assumed ownership of the Prince Series. (*See id.* at *15.)

5

Decades later, in 2016, Vanity Fair's parent company, Condé Nast, entered into a licensing agreement with AWF to use a different Warhol work from the Prince Series ("Orange Prince") and published a special Prince tribute edition commemorating the icon after his death. (*See id.* at *16.) Condé Nast paid AWF $10,250 to use Orange Prince. (*See id.* at *16.) This work is the accused infringement at issue in *Warhol*.



In April 2017, after Goldsmith learned of Orange Prince and informed AWF that it infringed her copyright, AWF sued Goldsmith in the Southern District of New York for a declaratory judgment that Orange Prince did not infringe Goldsmith's copyright or that, alternatively, AWF's use was fair. (*See id.* at *17.)

The district court granted AWF summary judgment, finding Orange Prince to be fair use, reasoning that, "[t]he Prince Series works can reasonably be perceived to have transformed Prince from a vulnerable, uncomfortable person to an iconic, larger-than-life figure." *See Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 382 F. Supp. 3d 312, 325-26 (S.D.N.Y 2019).

On appeal, the Second Circuit reversed the district court, holding that all four factors weighed against fair use when considered holistically. *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 37 (2d. Cir. 2021). The Second Circuit took particular issue with the district court's "transformative use" reasoning, concluding that it "was error" because "whether a work is transformative cannot turn merely on the stated or perceived intent of the

6

artist or the meaning or impression that a critic—or for that matter, a judge—draws from the work. Were it otherwise, the law may well 'recogniz[e] any alteration as transformative.'" *Id.* at 41–42 (*quoting* 4 Melville B. Nimmer, *Nimmer on Copyright* § 13.05(B)(6)).

The Supreme Court granted certiorari in March 2022 and heard oral argument on October 12, 2022. The Petitioner, AWF, has argued that the Second Circuit improperly "rejected a transformativeness test that considers the meaning or message of an artistic work as part of the fair use analysis—and instead mandated an inquiry focused on the degree of visual similarity between the two works." (Brief for Petitioner, at *2.) In response, the Respondent, Linda Goldsmith, argues that Petitioner is proposing a new "meaning or message" test for transformativeness that "is completely unworkable and arbitrary" and that Orange Prince "is a classic case of nontransformativeness" and asks the Supreme Court to affirm the Second Circuit's decision. (Brief for Respondents, at *2–3.)

As this case was one of the first cases heard in the current Supreme Court session, the Court *could* issue a decision anytime from now until the summer recess, which usually begins by the end of June.[1]

## III.   ARGUMENT

Here there is no change whatsoever to Mr. Hayden's works, let alone the exhaustive modification found in *Warhol*. Take-Two exactly copies the Tattoos and incorporates them into its games to appear on a TV or monitor, conveying no new meaning or message. Indeed, Take-Two takes care to ensure that is the case—meticulously preserving the exact expression in Mr. Hayden's Tattoos so that they appear "realistically" in the Accused Video Games. Take-Two does not argue otherwise. "Realism" is Take-Two's aim—not a new work of art with an arguably

---

[1] https://www.supremecourt.gov/visiting/visitorsguidetooralargument.aspx

different meaning or message, like in *Warhol*. Thus, whether or not the Supreme Court holds that the new meaning or message of an accused work is relevant to the first fair use factor, Take-Two's unauthorized copying will still *not* be fair use. Thus, the Supreme Court's decision will not affect the parties' trial strategies or arguments. The case should proceed to trial on June 14, 2023, as scheduled.

> A. Unlike the accused work in *Warhol*, Take-Two concedes that its verbatim copies add no new expression to Mr. Hayden's Tattoos.

There is no plausible decision in *Warhol* that would warrant delaying the June 14 trial.[2] The *Warhol* case is about two visually distinct works—the original photograph and the derivative, an Andy Warhol screen print based on that original photograph. The question before the Supreme Court is whether Andy Warhol's visually distinctive artistic work is "transformative" under the first fair-use factor for conveying a new meaning or message. According to the Petitioner in *Warhol*, the photograph depicts Prince as a "vulnerable human being," whereas the Warhol print depicts him as an "iconic, larger-than-life figure." (Brief for Petitioner, at *24.) This visual distinction, according to Petitioner, conveys a different meaning and message that makes the Warhol print transformative.

Take-Two's copying, on the other hand, is, by its own acknowledgment, categorically *non*-transformative. Take-Two's copying adds no new meaning or message—Take-Two's recreations are literal copies of the Tattoos. Take-Two does not dispute this (*see* Supp. Reply Br., Dkt. # 162, p. 6), nor has it ever contended, including at summary judgment (Dkt. # 95-1) or in its trial brief (Dkt. # 174), that its copies create a "new meaning or message." This makes the central issue in *Warhol* simply inapplicable to this case. Take-Two's copies were intentionally,

---

[2] *A fortiori*, no *Warhol* decision would change (or even warrant reconsideration of) this Court's decision denying Take-Two's motion for summary judgment.

pointedly verbatim, thereby scrupulously *preserving* whatever meaning or message is expressed in Mr. Hayden's Tattoos. (Supp. Reply Br., Dkt. # 162, p. 6.) Moreover, this Court has already held that Take-Two copied Mr. Hayden's Tattoos, in fact, and that Take-Two intended to make verbatim copies: "Defendants do not dispute that the NBA Players tattoos are included on the bodies of the avatars in NBA 2K" and "Take-Two's purpose was to replicate the NBA Players *exactly as they really look*[.]" *Hayden*, 2022 WL 4356211, at *5. Take-Two did not even try to "change slight details" of Mr. Hayden's Tattoos.[3]

And to the extent Take-Two claims that the additional gameplay features of the Accused Games add new message or meaning, that argument is waived—Take-Two did not raise the argument in its summary judgment briefing (Dkt. # 95-1) or trial brief (Dkt. # 174). Additionally, as acknowledged in the *Warhol Amicus* Brief written by Take-Two's own counsel, "'the addition of new expression to an existing work is not a get-out-of-jail-free card that renders the use of the original transformative'"(*Amicus* Brief at *18 (*quoting Dr. Seuss Enter., L.P. v. ComicMix LLC*, 983 F.3d 443, 453–54 (9th Cir. 2020)) and "[i]f the presence of new expression, alone, made use of a copyrighted work transformative . . . then all derivative works would be transformative as a matter of law, rendering the derivative work right meaningless." (*Id*. at *20.) Take-Two has not previously claimed any "new meaning" and cannot now argue in earnest that its works convey a different meaning or message.

Accordingly, even if the Supreme Court finds in favor of Petitioner and holds that the Warhol prints are transformative because they convey a new meaning/message, it will not help

---

[3] In a Brief for *Amicus Curiae* Association of American Publishers, Take-Two counsel in *this* case decried the argument of Petitioner and putative infringer, AWF, that "this Court should overturn centuries of precedent and long-settled expectations in favor of an unfathomable standard that would make fair use the rule." Brief for *Amicus Curiae* Association of American Publishers in Support of Respondents, 2022 WL 3574327, at *18 ("*Amicus* Brief"). "Under Petitioner's treatment of transformativeness, a secondary user could change slight details of a protected work and claim immunity from infringement due to the work's 'new' meaning or message." *Id.*

9

Take-Two here. Take-Two has not cited *any* Supreme Court or Sixth Circuit precedent that would support a transformative use finding, as a matter of law, when the putative infringer has copied entire works, verbatim, for a commercial purpose. The decision in *Warhol* will not be the first. *See Campbell*, 510 U.S. at 589 (fair use, but not verbatim copying and not the entire copyrighted work); *Google LLC v. Oracle America, Inc.*, 141 S. Ct. 1183, 1205 (2021) (fair use, but only 0.4% of work was copied); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985) (no fair use for commercial copying); *Princeton Univ. Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, 1386 (6th Cir. 1996) (no fair use for verbatim, commercial copying); *Balsley v. LFP, Inc.*, 691 F.3d 747, 760 (6th Cir. 2012) (no fair use for verbatim copying of entire work); *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 277 (6th Cir. 2009) (no fair use for verbatim copying that "revealed a dearth of transformative character").

Thus, the *Warhol* decision will not have any appreciable effect on this case. The Court's decision denying Take-Two's motion for summary judgment, stating that "reasonable jurors could disagree about whether—or to what extent—Defendants' use is transformative and what weight should be accorded to commercialism," will remain sound and supported by the binding precedents. *Hayden*, 2022 WL 4356211 at *6–8.

> B. Any impact from the Warhol Case will be limited to only one aspect of one of the four fair use factors; it will not be dispositive of the fair use analysis.

Even setting aside the fact that the Take-Two's copies of Mr. Hayden's Tattoos convey no new meaning or message, the limited scope of the question posed by Petitioner in *Warhol* ("Whether a work of art is 'transformative' when it conveys a different meaning or message from its source material…") also blunts any potential impact of the prospective *Warhol* decision on this case and will not warrant delaying trial. There is no foreseeable scenario in which the

10

*Warhol* decision will reach beyond *one* element (transformation) in *one* of the four fair-use factors ("purpose and character" of the use).

In assessing the first fair-use factor, courts must ask two questions: (1) is the work transformative and (2) is the copying for commercial or noncommercial purposes? *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 582 (6th Cir. 2007); 17 U.S.C. § 107. In its decision denying Take-Two's summary judgment motion on fair use, this Court considered both. While finding that (1) "Defendants' purpose of creating realism and accuracy is distinguishable from Plaintiff's aims," the Court pointedly made *no* determination that such purpose rendered Defendants' copying transformative; and conversely, (2) "[i]t is *undisputed* that Defendants' purpose in developing and marketing the NBA 2K video games is *commercial*[.]" *Hayden*, 2022 WL 4356211, at *6 (emphases added). This Court ultimately found that "reasonable jurors could disagree about whether—or to what extent—Defendants' use is transformative and what weight should be accorded to commercialism." *Id.* at 13.

This will remain the case even after *Warhol*. **First**, neither party in *Warhol* even *asked* the Court to alter longstanding precedent that fair use is a mixed question of law and fact, which a jury *should* decide when there are genuine issues of material fact. *See Reed v. Freebird Film Productions, Inc.*, 664 F. Supp. 2d 840, 846 (N.D. Ohio 2009). Juries routinely decide fair use, including in courts in this Circuit, when fair use is not clear as a matter of law. *See, e.g.*, *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 278 (6th Cir. 2009) (holding that the jury's finding of no fair use despite the work being transformative was reasonable); *see also Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir. 2012) (holding that "the jury was not unreasonable in weighing the four statutory factors of the fair use defense in Plaintiffs' favor").

11

The *Warhol* decision certainly cannot change either the disputed or undisputed facts in this case, which the Court has already determined.

***Second***, even if the Supreme Court refines the transformative use test in some way, the fact finder must consider transformative use in light of the adjudicated *commercial* nature of Defendants' use. *See Zomba*, 491 F.3d at 582. Neither party in *Warhol* asked the Supreme Court to excise that statutory requirement. *See* 17 U.S.C. § 107. In fact, all parties in *Warhol* agreed that the commercial nature of copying must be considered and that, in *Warhol*, it weighs against the Petitioner. The Petitioner in *Warhol* conceded at oral argument "that there is a[] commercial purpose and so that might be a factor that would cut against us when assessing Factor 1." (Ex. A, *Warhol* Oral Argument Excerpt, pp. 9–10.) Thus, at minimum, this Court's finding that "reasonable jurors could disagree about . . . what weight should be accorded to commercialism" will be undisturbed, making fair use as a matter of law inappropriate. *Hayden*, 2022 WL 4356211 at *7.

What is more, this Court also found the other three fair-use factors (nature of the work, amount and substantiality used, and effect on potential market) appropriate for the jury's consideration. *Id.* at *7–8. There is no reason to expect the Supreme Court will opine on any of those three factors. And neither Petitioner nor Respondent are asking the Court to find the "purpose and character" factor dispositive in the fair use analysis. The Supreme Court has held that none of the four factors should "be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. There is no reason to think the *Warhol* decision will change that. Accordingly, whatever the Supreme Court holds with regard to the first factor, the other three factors must also be weighed, which this Court has deferred to the jury. *Hayden*, 2022 WL 4356211, at * 7–8.

12

In deferring the three remaining fair-use factors to the jury, this Court found factual disputes for each. *Id.* As to the second factor, the nature of the copyrighted work, this Court held that the Tattoos are "without question, expressive and creative rather than factual and informational," which "weighs in Plaintiff's favor," but "publication favors Defendants' position." *Id.* at 14. The jury will still have to weigh this factor. As to the third factor, the amount and substantiality of the portion used in relation to the copyrighted work as a whole, this Court held that "[t]he Tattoos are used in their entirety, but the degree of observability is up to the jury, as is the importance of their use to the video game as a whole." *Id.* Likewise, the jury will still have to weigh this factor. As to the fourth factor, the effect on the potential market, this Court found that "genuine factual disputes are within the jury's purview." *Id.* Again, the jury will have to weigh this factor, no matter the Supreme Court's decision in *Warhol*.

Neither the applicable legal standard for fair use nor the facts in dispute related to the four statutory fair-use factors will change because of *Warhol*—they *must* be considered, and this Court's ruling that they are "within the jury's purview" will not be affected by the *Warhol* decision. Accordingly, there is no reason to delay trial again in this action while awaiting a *Warhol* decision that will not change the issues to be adjudicated.

    C. <u>The Parties can proceed to trial despite the pending *Warhol* decision without risk of disruption.</u>

The prospect of the *Warhol* decision issuing sometime before or possibly even after the trial in this case is not a reason to reschedule it again. The focus of the *Warhol* case is on *one* element of *one* of the four fair-use factors, and Take-Two's fair use defense is just one of multiple affirmative defenses it intends to assert at trial. And even within that limited scope, the wholly disparate context of *Warhol* compared to this case makes the potential impact of a decision in the former even more negligible. Petitioner in *Warhol* asks the Supreme Court

13

whether an otherwise infringing work's "meaning or message" can determine the transformative use analysis in the first fair use factor—a question wholly absent from this case.

Accordingly, the *Warhol* decision will not alter Plaintiff's case at trial and, presumably, should not alter Take-Two's strategy. Take-Two purportedly intends to assert four affirmative defenses at trial: (1) fair use, (2) implied license, (3) de minimis use, and (4) waiver. (*See* Take-Two Trial Br., Ex. C, Dkt. # 174-3, PageID #: 14134.) The *Warhol* decision is only even *potentially* relevant to its fair use defense, and only one element of one factor in that. Particularly telling, Take-Two's fair use argument is that it "uses the six tattoos at issue [] for a different, transformative purpose" (*see* Take-Two Summary Judgment Brief, p. 2, Dkt. # 95-1, p. 2)—*not* that Take-Two transformed the Tattoos to convey a new meaning or message. Take-Two's proposed jury instruction for the first fair use factor does not even *mention* "meaning or message." (*See* Take-Two Trial Br., Ex. C, Dkt. # 174-3, PageID #: 14138.) And to the extent the *Warhol* decision issues before trial and arguably provides some guidance Take-Two claims is relevant to its "different purpose" argument, Take-Two can either incorporate it into its revised proposed jury instructions, which are not due until April 20, 2023 (*see* Dkt. #202) or move for leave to revise its jury instructions before trial, *if* warranted. The trial in this case has already been postponed. The remote possibility that the *Warhol* decision may prompt a party to propose a likely insubstantial revision to one of dozens of jury instructions is simply not a good (or sufficient) reason to further delay trial.

## IV. CONCLUSION

It is *extremely* unlikely that the *Warhol* decision—*any* Warhol decision—will impact this case. The narrow issue before the Supreme Court deals with a single element in one fair-use factor, based on an argument that Take-Two has not previously made (and *cannot* make) in this

14

case. Fair use is context-specific, and the facts and circumstances of the *Warhol* case are far removed from those in this case. Trial should proceed as presently re-scheduled—Mr. Hayden is ready to adjudicate his claims.

Dated: March 13, 2023                                  Respectfully submitted,

By: */s/ Andrew Alexander*
John Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Todd Tucker (Ohio Bar No. 0065617)
Andrew Alexander (Ohio Bar No. 0091167)
Josh Friedman (Ohio Bar No. 0091049)
Dustin Likens (Ohio Bar No. 0097891)
Brandon Brown (Ohio Bar No. 0097013)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
ttucker@calfee.com
aalexander@calfee.com
jfriedman@calfee.com
dlikens@calfee.com
bbrown@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2023, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

                                               */s/ Andrew Alexander*
                                               One of the attorneys for Plaintiff