# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HAYDEN, | ) | Case No. 1:17-cv-02635 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | |
| 2K GAMES, INC. and TAKE-TWO | ) | |
| INTERACTIVE SOFTWARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S TRIAL BRIEF

# TABLE OF CONTENTS

I.    STATEMENT OF FACTS ............................................................................................. 1

II.   DISCUSSION OF CONTROLLING LAW ............................................................... 3

   A.   Copyright Infringement .......................................................................................... 3

   B.   Fair Use .................................................................................................................. 4

   C.   Implied License ...................................................................................................... 8

   D.   *De Minimis* Use ..................................................................................................... 9

   E.   Waiver .................................................................................................................. 10

   F.   Damages ............................................................................................................... 11

III.  PROPOSED WITNESS LIST ................................................................................. 12

IV.   EXHIBIT INDEX .................................................................................................... 13

V.    DISCUSSION OF EVIDENTIARY ISSUES ......................................................... 13

   A.   Burden of Proof in Establishing Take-Two's Profits .......................................... 13

   B.   Declaration Testimony of LeBron James, Danny Green, and Tristan Thompson .......... 14

   C.   Third-Party Declarations and Deposition Testimony from Other Litigations ............... 15

   D.   Venetian Trademark and Playing Card ................................................................ 16

   E.   Policy Impact of a Finding of Infringement ........................................................ 16

   F.   Mr. Hayden's Own Tattoos .................................................................................. 17

   G.   Dr. Nina Jablonski's Expert Testimony .............................................................. 17

VI.   ESTIMATE OF TRIAL LENGTH ......................................................................... 18

VII.  PROPOSED VOIR DIRE QUESTIONS ................................................................ 18

VIII. JURY INSTRUCTIONS ......................................................................................... 18

IX.   SPECIAL INTERROGATORIES AND VERDICT FORMS ................................. 18

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812 (S.D. Ill. 2020) ........ 5, 10

*American Geophysical Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994) .................................... 8

*Balsley v. LFP, Inc.*, 691 F.3d 747 (6th Cir. 2012) ................................................................ passim

*Bell v. Willmott Storage Services, LLC*, 12 F.4th 1065 (9th Cir. 2021) ........................................ 9

*Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470 (6th Cir. 2007) ........................... 11

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ............................................................ 5

*Crispen v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086 (C.D. Cal. 2011) ................................ 9

*Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714 (E.D. Mich. 2013) ............... 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .................................................. 4

*FenF, LLC v. Healio Health Inc.*, Case No. 5:08CV404, 2009 WL 10688713 (N.D. Ohio
  Sep. 4, 2009) ............................................................................................................................... 8

*Gordon v. Nextel Communications and Mullen Advertising, Inc.*, 345 F.3d 922 (6th Cir.
  2003) ....................................................................................................................................... 9, 10

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985) ........................... 6, 7

*Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998) ....................................................................... 8, 9

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) ............................................................. 4

*Malibu Media, LLC v. Pontello*, Case No. 13-12197, 2013 WL 12180709 (E.D. Mich.
  Nov. 19, 2013) ............................................................................................................................. 8

*Murphy v. Lazarev*, 589 Fed. Appx. 757 (6th Cir. 2014) ............................................................. 8

*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) .............................................. 6

*Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381 (6th Cir.
  1996) ................................................................................................................................... passim

*QSI-Fostoria D.C., LLC v. General Elec. Capital Business Asset Funding Corp.*, 389
  Fed. Appx. 480 (6th Cir. 2010) ................................................................................................ 10

*Robert L. Stark Enterprises, Inc. v. Neptune Design Group, LLC*, No. 1:16 CV 264, 2017
  WL 1345195 (N.D. Ohio Apr. 12, 2017) ................................................................................... 9

*Smith v. Thomas*, 911 F.3d 378 (6th Cir. 2018) ..................................................................... 3, 12

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ..................................... 8

*Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004) .................................................... 4

*Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574 (6th Cir. 2007) ......... 4, 5, 6, 7

**Statutes**

17 U.S.C. § 106 ............................................................................................................................... 8

17 U.S.C. § 107..................................................................................................................... 4, 7

17 U.S.C. § 504(b) ............................................................................................................. 11, 14

Pursuant to Judge Boyko's standing Trial Order (¶ 1), Plaintiff, James Hayden ("Hayden") submits this Trial Brief.

## I.     STATEMENT OF FACTS

In this copyright action, Mr. Hayden has asserted that Defendants infringe six copyrights he owns in tattoos that he created and inked on three NBA players: LeBron James, Tristan Thompson, and Danny Green (the "NBA Players"). The six copyrighted tattoos (the "Tattoos") consist of three tattoos Mr. Hayden created and inked on Mr. James ("Stars" on Mr. James's upper left shoulder, "Gloria" on Mr. James's upper right arm, and "Lion" on Mr. James's chest), two tattoos Mr. Hayden created and inked on Mr. Green ("Fire" on Mr. Green's upper left arm and "Scroll" on Mr. Green's inner right arm), and one tattoo Mr. Hayden created and inked on Mr. Thompson ("Brother's Keeper" on Mr. Thompson's chest). After creating and inking them, Mr. Hayden procured copyright registrations from the US Copyright Office for each Asserted Tattoo.

After learning that Defendants had replicated his Tattoos (identically) in their video games without his permission, Mr. Hayden attempted to reach out to Defendants. They ignored his communications. Thereafter, he filed the instant action.

This Court granted in part Mr. Hayden's Motion for Partial Summary Judgment, finding that (1) Mr. Hayden's "works are original and entitled to protection" and (2) Take-Two's conduct "constitutes factual copying[.]" (Summ. J. Order, Dkt. # 193, p. 9.) Accordingly, the only issues left for trial are (1) "whether there is actionable copying in light of their defenses": *de minimis use*, fair use, implied license, and waiver, and (2) if Take-Two's copying is actionable, the measure of damages. (*Id.*)

At the Parties' March 30, 2023 Status Conference, this Court indicated that because fair use is a mixed question of law and fact, the Court will defer certain factual disputes to the jury and the Court will make the ultimate legal determination of fair use. In this Court's summary judgement order, it made the following findings related to fair use:

1. "It is undisputed that Defendants' purpose in developing and marketing the NBA 2K video games is commercial; so, the use of the Tattoos in the games is commercial." (*Id.* at p. 13.)

2. "Plaintiff's work is, without question, expressive and creative rather than factual and informational." (*Id.* at 14.)

3. "The Tattoos are used in their entirety[.]" (*Id.*)

In light of these findings and for the reasons set forth in the following Discussion of Controlling Law, Mr. Hayden believes the jury should make the following determinations:

1. In assessing the purpose and character of Take-Two's use of the copyrighted works, was its copying transformative?

2. If Take-Two's copying was transformative, was such transformation more consequential to the purpose and character of its use than Take-Two's commercial purpose?

3. Is there an existing or potential market for licensing the Tattoos?

4. If so, has Take-Two's unauthorized copying harmed the existing or potential market for licensing the Tattoos?

Mr. Hayden will present evidence demonstrating that Take-Two's copying was not "transformative," and, in any event, Take-Two's commercial purpose outweighs any purported "transformation" of the Tattoos in the Accused Games. Mr. Hayden will also present evidence

demonstrating that there is an existing market for licensing the Tattoos and that Take-Two's unauthorized copying has harmed that market. Ultimately, Mr. Hayden will present evidence that, along with the Court's prior findings, will preclude a finding of fair use as a matter of law.

Mr. Hayden will also present evidence establishing that Take-Two's verbatim copying of the Tattoos in their entirety is visible and ubiquitous throughout the gameplay of the Accused Games, precluding Take-Two's claim that its copying is *de minimis*. Further, Mr. Hayden will present evidence demonstrating that he had *no* intention of authorizing a third-party video game maker to recreate his Tattoos when he created and inked the Tattoos, refuting Take-Two's claim that its copying was somehow indirectly authorized. Finally, Mr. Hayden will present evidence that he never intentionally relinquished his copyright rights in his Tattoos.

Take-Two has profited immensely from the NBA 2K games at issue in this case [1] that contain verbatim copies of the Tattoos. Mr. Hayden is seeking damages under 17 U.S.C. § 504 in the form of Take-Two's profits. Mr. Hayden will establish at trial Take-Two's gross revenue for the Accused Games and rebut Take-Two's implausible claims that *none* of its enormous profits are attributable to its illicit copying. In the alternative, Mr. Hayden reserves his rights to elect statutory damages before final judgment pursuant to 17 U.S.C. § 504(c)(1) and reserves his rights to seek attorney's fees. *See Smith v. Thomas*, 911 F.3d 378, 382 (6th Cir. 2018) ("plaintiffs are entitled to simultaneously seek actual damages and statutory damages in the alternative").

## II. DISCUSSION OF CONTROLLING LAW

### A. Copyright Infringement

To establish copyright infringement, Mr. Hayden must prove, "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Stromback v.*

---

[1] The NBA 2K games at issue ("Accused Games") are NBA 2K16, NBA 2K17, NBA 2K18, NBA 2K19, NBA 2K20, and NBA 2K Mobile.

*New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (*citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). This Court has already found that Mr. Hayden owns valid copyrights in his Tattoos and that Take-Two has, in fact, copied his Tattoos. (Dkt. # 193, p. 9.)

### B.  Fair Use

Take-Two claims that its copying falls under the "fair use" exception. Take-Two has the burden of proving this defense. *Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, 1390 fn. 5 (6th Cir. 1996). The Copyright Statute created the "fair use" exception to "preserve the potential future use of artistic works for purposes of teaching, research, criticism, and news reporting." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003); 17 U.S.C. § 107 ("criticism, comment, news reporting, teaching . . ., scholarship, or research"). In determining fair use, the Copyright Act (§ 107) provides four factors that courts are to consider:

1. The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2. The nature of the copyrighted work;

3. The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4. The effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

In assessing the ***first factor***, courts look to whether the infringing work is "transformative" and whether it is for "commercial or noncommercial purposes." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 582 (6th Cir. 2007). Where the purpose of copying is to "profit from the exploitation of the copyrighted material without paying the customary price," the *Sixth Circuit routinely finds no fair use. Balsley v. LFP, Inc.*, 691 F.3d

747, 758 (6th Cir. 2012); *see also, e.g.*, *Zomba*, 491 F.3d at 582 and *Princeton*, 99 F.3d at 1383

("commercial exploitation of the copyrighted materials did not constitute fair use"). To be

transformative, the new work must "add[] something new, with a further purpose or different

character, altering the first with new expression, meaning or message[.]" *Zomba*, 491 F.3d at 582

(*quoting Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). Verbatim or facsimile

copies of a work, conversely, "add[] nothing new to the original and accordingly ha[ve] virtually

no transformative value." *Id.* at 582; *see also Princeton*, 99 F.3d at 1389 and *Balsley*, 691 F.3d at

759. *Defendants here were admittedly striving to replicate the Asserted Tattoos as exactly as*

*possible.* (Dkt. # 193, p. 9.) "Where 'an original work is merely retransmitted in a different

medium' . . . the work is not 'transformative.'" *Balsley*, 691 F.3d at 579.

 As to this factor, this Court has already found "the use of the Tattoos in the games is

commercial." (Dkt. # 193, p. 13.) The Court found factual disputes and deferred findings as to

the following two questions to the jury: "whether—or to what extent—Defendants' use is

transformative and what weight should be accorded to commercialism." (*Id.*) Accordingly, Mr.

Hayden has proposed jury instructions to determine those factual disputes.

 In assessing the ***second factor***, courts must evaluate "the extent to which [the work] is a

creative work enjoying broader copyright protection as opposed to a factual work requiring

broader dissemination[.]" *Balsley*, 691 F.3d at 759. In evaluating the second fair use factor, at

least one court, assessing facts very similar to this case, has found that "[t]he art of creating a

tattoo naturally entails creative and expressive efforts[,]". *Alexander v. Take-Two Interactive*

*Software, Inc.*, 489 F. Supp. 3d 812, 822 (S.D. Ill. 2020).

 As to this factor, this Court has already found that "Plaintiff's work is, without question,

expressive and creative rather than factual and informational" and that "[t]his aspect weights in

Plaintiff's favor." (Dkt. # 193, p. 14.) The Court further held that "publication favors Defendants' position." (*Id.*) To the extent the Court intended to allow the jury to weigh publication against the expressive and creative nature in determining whether this factor weighs in favor or against fair use, this would be clear legal error. Publication is only considered when the plaintiff's right of first publication is implicated. *Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012) ("The artist's right of first publication does not apply in this case, so we discuss only whether the work was factual or creative.") (*citing Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000)); *see also Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985) ("Courts . . . consider[] two aspects of the work in evaluating this factor: first, the extent to which it is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination, and second, whether it is unpublished, in which case the right of first publication is implicated.") In this case, accepting *arguendo* the Court's finding that the works were published, the only relevant issue is whether the Tattoos are creative. Because this Court has found that they are, there is nothing left for the jury to decide, and this factor should be found to weigh against fair use as a matter of law. Accordingly, Mr. Hayden has not submitted jury instructions related to the nature of the works and submits that the jury should not be asked or permitted to find on that factor.

In assessing the **third factor**, the more of what is taken, "the greater the affront to the interests of the copyright owner, and the less likely that a taking will qualify as a fair use." *Zomba*, 491 F.3d at 583; *see also Princeton*, 99 F.3d at 1389. "[C]opying an entire work militates against a finding of fair use." *Balsley*, 691 F.3d at 760.

As to this factor, this Court has already found that "[t]he Tattoos are used in their entirety[.]" (Dkt. # 193, p. 14.) The Court, however, also found that "the degree of observability

6

is up to the jury, as is the importance of their use to the video game as a whole." (*Id.*) The degree of observability and the importance of their use to the video game as a whole are not appropriate considerations for this fair use factor and it would be legal error to submit same to the jury. Mr. Hayden is unaware of any controlling authority that permits this consideration in fair use analysis.[2] Rather, the Sixth Circuit case law is unequivocal that the pertinent consideration is how much of the *copyrighted work* is copied. *See Princeton Univ. Press v. Michigan Doc. Services, Inc.*, 99 F.3d 1381, 1389 (6th Cir. 1996); *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 583 (6th Cir. 2007); *Balsley v. LFP, Inc.*, 691 F.3d 747, 760 (6th Cir. 2012). The statutory language also clearly limits this analysis to the "amount and substantiality of *the portion used in relation to the copyrighted work as a whole.*" 17 U.S.C. § 107 (emphasis added). The jury should not be permitted to consider "the degree of observability and the importance of their use to the video game as a whole" in determining whether this factor weighs for or against fair use. Because this Court has already found that the Tattoos were copied "in their entirety," this factor should weigh against fair use as a matter of law. Accordingly, Mr. Hayden has not submitted jury instructions as to this fair use factor.

In assessing the **fourth factor**, the court must evaluate whether the copying, should it become "widespread, [] would adversely affect the potential market for the copyrighted work." *Princeton*, 99 F.3d at 1386 (*quoting Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 568 (1985)). Because Take-Two's use is indisputably commercial, it is Take-Two's burden to prove its copying does not harm the potential market for Mr. Hayden's tattoos. *Id.* at 1385. "[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Balsley*, 691 F.3d at 760

---

[2] The degree of observability may be pertinent to the defense of *de minimis* use.  *See infra*.

(*quoting Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)). In addition, where "the copyright holder clearly does have an interest in exploiting a licensing market—and especially where the copyright holder has actually succeeded in doing so —'it is appropriate that potential licensing revenues for []copying be considered in a fair use analysis.'" *Princeton*, 99 F.3d at 1387 (*quoting American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994)).

As to this factor, the Court determined that there are "genuine factual disputes [] within the jury's purview." (Dkt. # 193, p. 15.) Accordingly, Mr. Hayden has submitted jury instructions to assist the jury in determining whether this factor weighs for or against fair use.

### C.  Implied License

Take-Two claims that its copying was authorized by Mr. Hayden via an implied license. Authorization to copy the Tattoos must come from Mr. Hayden alone, as he has the *exclusive* right to authorize others to reproduce, distribute, display and prepare derivative works from the copyrighted works. 17 U.S.C. § 106. Although courts have held under certain circumstances, a copyright holder may convey a non-exclusive implied copyright license, such an implied license is "for a particular purpose." *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998). Implied licenses are not the norm—they are only found "in narrow circumstances." *FenF, LLC v. Healio Health Inc.*, Case No. 5:08CV404, 2009 WL 10688713, at *4 (N.D. Ohio Sep. 4, 2009); *see also, e.g.*, *Malibu Media, LLC v. Pontello*, Case No. 13-12197, 2013 WL 12180709, at *3 (E.D. Mich. Nov. 19, 2013) (same).

The key to finding an implied license is the intent of the copyright holder. *Murphy v. Lazarev*, 589 Fed. Appx. 757, 765 (6th Cir. 2014); *see also Robert L. Stark Enterprises, Inc. v. Neptune Design Group, LLC*, No. 1:16 CV 264, 2017 WL 1345195, at *10 (N.D. Ohio Apr. 12,

2017). The copyright owner's testimony as to his intent is relevant in determining this factor. *See Johnson*, 149 F.3d at 500 (considering copyright owner's testimony about his intent in finding no implied license). It is Take-Two's burden to prove (1) Mr. Hayden intended to grant the NBA Players an implied license, and (2) that such license's scope included the authority for the NBA Players to then permit third parties to recreate the Tattoos in video games. *See Crispen v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1093 (C.D. Cal. 2011) ("Where a license or its terms may be implied, finding there was an implied license does not end the inquiry. We must also ask what the scope of the license was, and whether [Defendant] exceeded it.")

This Court found that "intent is a fact question," deferring the issue to the jury. Accordingly, Mr. Hayden has submitted jury instructions to assist the jury in determining whether Defendants have met their burden to show *both* that Mr. Hayden intended to grant licenses to the NBA Players in his Tattoos *and* that such licenses included the right to sublicense the replication of the Tattoos in video games.

### D. *De Minimis* Use

Take-Two claims its copying of the Asserted Tattoo does not constitute copyright infringement because it is *de minimis*. To establish its use is *de minimis*, Take-Two must prove by a preponderance of the evidence that their copying is so trivial that it cannot be found to be substantially similar to the copyrighted works. *Gordon v. Nextel Communications and Mullen Advertising, Inc.*, 345 F.3d 922, 924 (6th Cir. 2003) Courts have rejected the *de minimis* use defense where the copying is "total" or "wholesale." *Bell v. Willmott Storage Services, LLC*, 12 F.4th 1065, 1079 (9th Cir. 2021) ("Wholesale copying or reproduction of another's protected work . . . *by definition **cannot** be de minimis copying*") (emphasis added). "In determining whether the allegedly infringing work falls below the quantitative threshold of substantial

similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied, as well as the observability of the copyrighted work in the allegedly infringing work." *Gordon*, 345 F.3d at 924. In a case with facts *very* similar to those here—against *these same Defendants*—the U.S. District Court for the Southern District of Illinois found that recreating copyrighted tattoos on digital avatars in video games was not *de minimis*: "The defense has been successfully invoked to allow copying of a small and usually insignificant portion of the copyrighted works, not the wholesale copying of works in their entirety as occurred here." *Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812, 823 (S.D. Ill. 2020).

This Court has found that "[w]hether the Tattoos are observable and whether Defendants' replication diminishes the original works are questions of fact for the jury." (Dkt. # 193, p. 10.) Accordingly, Mr. Hayden has submitted jury instructions to assist the jury in determining whether Defendants have met their burden on this defense.

### E.  Waiver

Take-Two claims that Mr. Hayden has waived enforcing his copyrights. To establish that Mr. Hayden waived enforcing his copyrights, Defendants must prove with "clear and unequivocal evidence" that Mr. Hayden voluntarily and intentionally relinquished his copyright rights, with full knowledge of all the facts. *QSI-Fostoria D.C., LLC v. General Elec. Capital Business Asset Funding Corp.*, 389 Fed. Appx. 480, 487 (6th Cir. 2010); *see also Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 736 (E.D. Mich. 2013). Moreover, mere silence does not amount to waiver. *Id.*

To Mr. Hayden's knowledge, there is absolutely no evidence of record nor even any *bona fide* assertion by Defendants, beyond the formality of their pleading, that he has waived

enforcement of his rights. The Court should find no waiver as a matter of law and the jury should not be asked or permitted to make a finding on this defense.

### F.  Damages

If Mr. Hayden prevails on his copyright infringement claim, he is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The Sixth Circuit has unambiguously explained the plaintiff's burden in proving profits: "Plaintiffs have only one requirement: to prove Defendant's gross revenue." *ECIMOS*, 971 F.3d at 635 (*quoting Balsley*, 691 F.3d at 768). Although the plaintiff must show that the profits "have a reasonable relationship to the infringing activity," this burden is relatively low and may be established by demonstrating the profits of the broader work that encompasses the copyrighted work (*e.g.*, the total profits of an album that copied only a part of a single copyrighted song, *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 483 (6th Cir. 2007), or the total profits of a magazine issue that copied a single copyrighted photograph, *Balsley*, 691 F.3d at 769). This burden, as the Sixth Circuit has clearly explained, should not be confused with the *defendant's* burden to "prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work[.]" *ECIMOS*, 971 F.3d at 634; *see also Balsley*, 691 F.3d at 767. Thus, Mr. Hayden must prove the gross revenue of the Accused Games, which use the Tattoos. Then it is *Take-Two's* burden to prove any deductible expenses and the elements of profit attributable to factors other than the copyrighted work. *Id.*

In the alternative, Mr. Hayden reserves his rights to elect statutory damages before final judgment pursuant to 17 U.S.C. § 504(c)(1) and reserves his rights to seek attorney's fees. *See*

*Smith v. Thomas*, 911 F.3d 378, 382 (6th Cir. 2018) ("plaintiffs are entitled to simultaneously seek actual damages and statutory damages in the alternative").

III.    **PROPOSED WITNESS LIST**

Mr. Hayden intends to call the following witnesses who will testify in his support and reserves the right to call any witnesses in rebuttal that Take-Two calls as a witness:

| Witness | Brief Description of Subject Matter of the Testimony |
|---|---|
| James Hayden (Plaintiff) | Creation of the Asserted Tattoos; customs of tattoo industry; lack of intent for license; licensing history for his works; personal knowledge related to Accused Games. |
| Justin Lenzo (Economic expert) | Commercial benefit of the Asserted Tattoos to Defendants; market formation in tattoo design licensing; analysis of Jay survey and Jay opinion; opinion submitted in support of Plaintiff's Opposition to Summary Judgment (Dkt. # 109-43). |
| Tolga Bilgicer (Survey expert) | Analysis of Jay survey and Jay opinion; survey results demonstrating that tattoos are a reason customers buy the Accused Games; opinion submitted in support of Plaintiff's Opposition to Summary Judgment (Dkt # 109-46). |
| Michal Malkiewicz (Damages expert) | Plaintiff's damages; Defendants' gross and net revenue; Defendants' gross and net profit; analysis of Malackowski opinions; Defendants' revenues and profits associated with tattoos and the Asserted Tattoos; opinions submitted in support of Plaintiff's Motion for Partial Summary Judgment (Dkt #93-11) and Opposition to Summary Judgment (Dkt # 109-47). |
| Michael Stauffer | Creation of the Accused Games, copying, value of tattoos in Accused Games, customer demand for tattoos in Accused Games, marketing, authentication of documents |

In addition, Mr. Hayden has identified the following witnesses, portions of whose deposition transcripts may be submitted as evidence:

12

| Deposition Witness | Brief Description of Subject Matter of the Testimony |
|---|---|
| Alfie Brody | Willfulness, copying, marketing and sales of the Accused Games, authentication of documents |
| Anton Dawson | Creation of the Accused Games, copying, willfulness, authentication of documents |
| Michael Stauffer | Creation of the Accused Games, copying, value of tattoos in Accused Games, customer demand for tattoos in Accused Games, marketing, authentication of documents |
| Corie Zhang | Creation of the Accused Games, copying |
| Winnie Hsieh | Creation of the Accused Games, copying |
| Joel Friesch | Willfulness, copying, gameplay, creation of the Accused Games, marketing, authentication of documents |
| Jeff Thomas | Willfulness, copying, gameplay, creation of the Accused Games, authentication of documents |
| Jason Argent | Willfulness, copying, gameplay, creation of the Accused Games, marketing and sales of Accused Games, authentication of documents |
| LeBron James | Creation of Asserted Tattoos |
| Tristan Thompson | Creation of Asserted Tattoos |
| Danny Green | Creation of Asserted Tattoos |

## IV.    EXHIBIT INDEX

Mr. Hayden has attached an index of all proposed exhibits along with a brief description of each exhibit attached as **Exhibit A.**

## V.    DISCUSSION OF EVIDENTIARY ISSUES

Mr. Hayden anticipates the following evidentiary issues likely to arise at trial.

### A.  Burden of Proof in Establishing Take-Two's Profits

The Copyright Act entitles a copyright owner to recover "any profits of the infringer that are attributable to the infringement" and not included in its actual damages, and explicitly assigns the burdens of proving same: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to

prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). The Sixth Circuit has repeatedly confirmed this allocation of burdens. *See ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 634 (6th Cir. 2020); *Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012). Take-Two, however, argues that it is *Mr. Hayden's* initial burden to show the amount of Take-Two's profits that were attributable to the infringement and/or that *Mr. Hayden* must show a causal connection between Take-Two's profits and its infringement of the Tattoos. (*See* Take-Two Initial Proposed Jury Instructions, Dkt. # 174-3, PageID #: 14152 ("To recover any of Defendants' profits, Plaintiff must prove by a preponderance of the evidence that Defendants' use of the Tattoos in the *NBA 2K* Games caused Defendants' profits.").)

While Mr. Hayden can and will rebut Take-Two's accounting of its expenses and attribution of its profits at trial,  it is *not* his initial burden to do so. Take-Two's contention has been expressly rejected multiple times by the Sixth Circuit. *ECIMOS*, 971 F.3d at 634 (this "position is directly refuted by both the text of 17 U.S.C. § 504(b) and the cases that have addressed it"); *Balsley*, 691 F.3d at 769. The Sixth Circuit has held that "Section 504(b) *unambiguously provides* that the burden on the copyright owner is 'to present proof *only of the infringer's gross revenue*' of the infringing product, while the infringer must show not only 'expenses' but also the amount of the 'profit attributable to factors other than the copyrighted work.'" *ECIMOS*, 971 F.3d at 635 (quoting *Balsley*, 691 F.3d at 767). This approach, prescribed by both statute and case law, is properly set forth in Mr. Hayden's proposed jury instructions.

### B.  Declaration Testimony of LeBron James, Danny Green, and Tristan Thompson

Take-Two submitted declarations from LeBron James, Danny Green, and Tristan Thompson in support of its Motion for Summary Judgment. (*See* Dkt. # 101-2, 101-3, and 101-

4.) Mr. Hayden then deposed each player on the substance of those depositions. Mr. Hayden objects to the use of the declarations at trial for all the reasons set forth in its Motion *in Limine*, including that they are inadmissible hearsay. In addition, to the extent Take-Two calls the NBA Players as witnesses or attempts to introduce deposition testimony in lieu of calling the NBA Players as witnesses, Mr. Hayden objects to certain topics and testimony for the reasons set forth in its Motion *in Limine*. For example, in their declarations, the NBA Players make statements that would be (1) inadmissible speculation about Mr. Hayden's state of mind and his intentions in creating the Tattoos and (2) inadmissible expert testimony about their legal "rights" in the Tattoos, licensing the Tattoos, and tattoo industry standards. Finally, to the extent Take-Two attempts to introduce the NBA Players' *declaration* testimony through their *depositions*, Mr. Hayden objects for the reasons set forth in his Motion *in Limine*. At their depositions (and over repeated objections), Take-Two's counsel improperly *read* the Players' declarations into the record, nominally soliciting their confirmations of same in the form of highly leading "questions." This artifice does not cure the hearsay nature of these otherwise demonstrably unreliable declarations (*see*, Supp'l Opp., Dkt # 162).

### C.  Third-Party Declarations and Deposition Testimony from Other Litigations

For the reason set forth in his Motion *in Limine*, Mr. Hayden objects to Take-Two referencing, introducing as evidence, eliciting testimony, or otherwise submitting evidence related to testimony from other tattoo artists not at issue in this litigation. For example, Take-Two has referenced third-party declarations (from Thomas Ray Cornett, DeShawn Morris, Justin White, and Gary Glatstein) and deposition testimony (e.g., from Catherine Alexander) from *Solid Oak Sketches, LLC v. 2K Games et al.* and *Alexander v. Take-Interactive Software, Inc., et al.* in its Motion for Summary Judgment (*see, e.g.*, Dkt. # 101). This testimony is hearsay, not relevant

15

to the claims and defenses in this case, and far more prejudicial than probative. Accordingly, it should be excluded.

### D.  Venetian Trademark and Playing Card

For the reasons set forth in his Motion *in Limine*, Mr. Hayden objects to Take-Two referencing, introducing as evidence, eliciting testimony, or otherwise submitting evidence related to an unauthenticated deck of playing cards purportedly taken from the so-called "Venetian Resort" and a certain trademark registration for such Venetian Resort logo. Take-Two submitted the latter in its Motion for Summary Judgment and introduced the former as an exhibit in deposing Mr. Hayden. Neither document has been properly authenticated, and in fact no one with personal knowledge of the creation of the Tattoos has stated that either document was used in the creation of any Tattoos. Without proper authentication, these documents are inadmissible. What is more, Take-Two's challenge to the originality of Mr. Hayden's Tattoos has already been adjudicated by this Court in Mr. Hayden's favor. (Dkt. # 193, p. 9.) The purported Venetian Resort logo and playing card have no relevance to "whether there is actionable copying in light of [Take-Two's] defenses." (*Id.*)

### E.  Policy Impact of a Finding of Infringement

Take-Two has indicated in its briefing and elsewhere that it may present testimony and evidence at trial about the purported negative consequences a ruling in Mr. Hayden's favor would have on the markets for tattoos and video games and the public in general. (*See, e.g.*, Jablonski Op., Dkt. # 85-A.) For the reasons set forth in Mr. Hayden's Motion *in Limine*, such testimony and evidence should be excluded. The impact the decision in this case has on tattoo artists, tattoo recipients, video game producers, and the public is pure speculation, is not relevant to the instant dispute, and is more prejudicial than probative. It should thus be excluded.

16

### F.  Mr. Hayden's Own Tattoos

Take-Two has indicated in its briefing and elsewhere that it may present testimony and evidence at trial about Mr. Hayden's own tattoos and whether he has sought permission from other tattoos artists when he appears in public or shows himself in social media. (Mot. for Summary J., Dkt. # 95, p. 7.) For the reasons set forth in Mr. Hayden's Motion *in Limine*, such testimony and evidence should be excluded. At minimum it is irrelevant and more prejudicial than probative. It is undisputed that Mr. Hayden has never created or been depicted as or through an avatar in a video game or anything remotely similar thereto. His practices with regards to appearing in public and on social media are not relevant to any claim or defense in this case and should be excluded.

### G.  Dr. Nina Jablonski's Expert Testimony

Take-Two has indicated that it may present the expert testimony of Dr. Nina Jablonski at trial. This Court has already excluded Dr. Jablonski's testimony related to what clients expect and intend after a tattoo inking session and the existence or likelihood of a market for licensing tattoos. (Dkt. # 150, p. 6.) The Court, however, permitted Dr. Jablonski to testify as to (1) "the history and growing popularity of tattoos worldwide"; "that tattoos are part of an individual's likeness and are used as means of self-expression"; "her views on common imagery utilized in tattoos like those appearing on LeBron James, Tristan Thompson, and Danny Green"; "the tattoo process generally and that the tattooist's client chooses and controls the content, the look and the placement of the inked image." (*Id.* at pp. 5–6.) These topics can only possibly relate to the issue of the originality of Mr. Hayden's Tattoos, which has now been ruled on by this Court in Mr. Hayden's favor. (Dkt. # 193, p. 9.) These issues have no relevance to the defenses of *de minimis* use, the factual disputes remaining for the fair-use determination, implied license (*i.e.*, Mr.

Hayden's intent on permitting third-party recreation in video games), or waiver. Accordingly, Dr. Jablonski's opinions are not relevant or helpful to the jury in determining any issues for its determination.  They should be excluded altogether.

## VI.   ESTIMATE OF TRIAL LENGTH

Mr. Hayden estimates that this trial will require approximately five seven-hour trial days.

## VII.   PROPOSED VOIR DIRE QUESTIONS

Mr. Hayden has attached his proposed *voir dire* questions as **Exhibit B.**

## VIII.   JURY INSTRUCTIONS

Mr. Hayden and Take-Two met and conferred before filing their initial proposed jury instructions to attempt to reach agreement on the instructions to be submitted to the jury. The Parties have again conferred to identify which instructions are still agreed on. Mr. Hayden has attached as **Exhibit C** his proposed jury instructions (agreed instructions are denoted as such).

## IX.   SPECIAL INTERROGATORIES AND VERDICT FORMS

Mr. Hayden has attached his proposed special interrogatories and verdict forms as **Exhibits D**.

18

Dated: April 20, 2023

Respectfully submitted,

By: */s/ Andrew Alexander*
John S. Cipolla (Ohio Bar No. 0043614)
Daniel J. McMullen (Ohio Bar No. 0034380)
Todd R. Tucker (Ohio Bar No. 0065617)
Andrew W. Alexander (Ohio Bar No. 0091167)
Josh A. Friedman (Ohio Bar No. 0091049)
Dustin D. Likens (Ohio Bar No. 0097891)
Brandon E. Brown (Ohio Bar No. 0097013)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
ttucker@calfee.com
aalexander@calfee.com
jfriedman@calfee.com
dlikens@calfee.com
bbrown@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

19

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2023, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

/s/ Andrew W. Alexander
One of the attorneys for Plaintiff