# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| JAMES HAYDEN, | CASE NO. 1:17-cv-02635-CAB |
| Plaintiff, | |
| v. | |
| 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC., | |
| Defendants. | |

## DEFENDANTS 2K GAMES, INC. AND TAKE-TWO INTERACTIVE SOFTWARE, INC.'S OMNIBUS MOTION *IN LIMINE*

# TABLE OF CONTENTS

**Page**

I.   **MIL NO. 1 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT IMPLYING TAKE-TWO WITHHELD TELEMETRY DATA**...................................1

II.  **MIL NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING PLAINTIFF'S AGREEMENTS AND PROJECTS**..........................2

III. **MIL NO. 3 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S LICENSING OF OTHER WORKS**........................9

IV.  **MIL NO. 4 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT REGARDING OTHER VIDEO GAME COMPANIES' AGREEMENTS**................10

V.   **MIL NO. 5 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT CONCERNING PLAINTIFF'S OPINIONS ABOUT THE TATTOO INDUSTRY**...................................................................................................13

VI.  **MIL NO. 6 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT OF ACTUAL DAMAGES**............................................................................15

IX.  **MIL NO. 7 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT ABOUT PLAINTIFF'S ALLEGED, UNDISCLOSED COMMUNICATIONS WITH ANY OF THE NBA PLAYERS**.........................................................17

VIII. **MIL NO. 8 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S REVENUE FROM VIRTUAL CURRENCY**........20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abrams v. Nucor Steel Marion, Inc.*,
694 Fed. Appx. 974 (6th Cir. 2017) ....................................................................................19

*Acuity Brands Lighting, Inc. v. Bickley*,
No. 13 Civ. 366, 2015 WL 10551946 (E.D. Ky. Nov. 30, 2015) ........................................16

*Am. Geophysical Union v. Texaco Inc.*,
60 F.3d 913 (2d Cir. 1994) ...................................................................................................2

*Aslan v. Ferrari N. Am., Inc.*,
No. 16 Civ. 02574, 2018 WL 6321635 (C.D. Cal. Oct. 19, 2018) .......................................1

*Asset Mktg. Sys., Inc. v. Gagnon*,
542 F.3d 748 (9th Cir. 2008) ................................................................................................5

*Authors Guild, Inc. v. HathiTrust*,
755 F.3d 87 (2d Cir. 2014) ...............................................................................................2, 3

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015) .................................................................................................3

*Auto Konnect, LLC v. BMW of N. Am., LLC*,
No. 18 Civ. 14019, 2022 WL 721526 (E.D. Mich. Mar. 9, 2022) ......................................14

*Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*,
596 F.3d 357 (6th Cir. 2010) ..............................................................................................15

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006) .........................................................................................2, 4, 9

*Bond v. Blum*,
317 F.3d 385 (4th Cir. 2003) ................................................................................................3

*Boyce v. Exec. Dir. of Cook Cty. Dept. of Corrections*,
No. 96 Civ. 3703, 2001 WL 648951 (N.D. Ill. Jun. 4, 2001) .............................................20

*Brown v. Weber*,
No. 11 Civ. 1390, 2014 WL 11531797 (W.D. Tenn. Jul. 11, 2014) .....................................5

*Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*,
388 F.3d 976 (6th Cir. 2004) ..............................................................................................18

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
No. 09 Civ. 261, 2014 WL 1350720 (W.D. Wisc. Apr. 4, 2014)...........................................13

*Duffy v. Penguin Books USA Inc.*,
4 F. Supp. 2d 268 (S.D.N.Y. 1998)..........................................................................................4

*Engebretsen v. Fairchild Aircraft Corp.*,
21 F.3d 721 (6th Cir. 1994) .....................................................................................................9

*Erskine v. Consol. Rail Corp.*,
814 F.2d 266 (6th Cir. 1987) ..................................................................................................19

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
772 F.2d 505 (9th Cir. 1985) ..................................................................................................11

*Google LLC v. Oracle Am., Inc.*,
141 S.Ct. 1183 (2021)..........................................................................................................3, 10

*Google LLC v. Oracle Am., Inc.*,
750 F.3d 1339 (Fed. Cir. 2014)...............................................................................................10

*Gordon v. Royal Palm Real Est. Inv. Fund I, LLLP*,
No. 09 Civ. 11770, 2022 WL 1431837 (E.D. Mich. May 5, 2022)........................................15

*Hardesty v. Kroger Co.*,
No. 16 Civ. 298, 2022 WL 742847 (S.D. Ohio Mar. 11, 2022) ......................................18, 19

*Hofheinz v. AMC Prods., Inc.*,
147 F. Supp. 2d 127 (E.D.N.Y. 2001) ......................................................................................4

*Kendall Holdings, Ltd. v. Eden Cryogenics LLC*,
No. 8 Civ. 390, 2015 WL 12999710 (S.D. Ohio Apr. 17, 2015)............................................19

*Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc.*,
No. 05 Civ. 70804, 2007 WL 1834714 (E.D. Mich. June 25, 2007).........................................1

*Manuel v. City of Chi.*,
335 F.3d 592 (7th Cir. 2003) ....................................................................................................5

*Martinez v. Dart Trans, Inc.*,
548 F. Supp. 3d 1107 (D.N.M. 2021) .......................................................................................2

*Parillo v. Lowe's Home Ctrs., LLC*,
No. 14 Civ. 369, 2017 WL 4124585 (S.D. Ohio Sept. 18, 2017)...........................................13

*Parker Hannifin Corp. v. Standard Motor Prods., Inc.*,
No. 19 Civ. 00617, 2021 WL 5801850 (N.D. Ohio Dec. 7, 2021).............................12, 13, 14

*Princeton Univ. Press v. Michigan Document Servs., Inc.*,
    99 F.3d 1381 (6th Cir. 1996) ................................................................................4

*Satija v. Permanent Gen. Assurance Corp. of Ohio*,
    No. 13 Civ. 82, 2014 WL 1664557 (N.D. Ohio Apr. 25, 2014)................................20

*Silitonga v. Kentucky State Univ.*,
    No. 16 Civ. 29, 2018 WL 3969951 (E.D. Ky. Aug. 20, 2018)................................19

*SPEX Techs. v. Apricorn, Inc*,
    No. 16 Civ. 07349, 2020 WL 1289546 (C.D. Cal. Jan. 21, 2020)..........................15

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014)..................................................................................2, 9

*Sweeney v. Correctional Med. Servs., Inc.*,
    No. 04 Civ. 40284, 2007 WL 2983967 (E.D. Mich. Oct. 12, 2007) ........................1

*Tamraz v. Lincoln Elec. Co.*,
    620 F.3d 665 (6th Cir. 2010) ...............................................................................13

*TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc.*,
    No. 11 Civ. 85, 2012 WL 2576367 (N.D. Ohio July 3, 2012)..........................15, 17

*United States v. Terry*,
    No. 10 Cr. 390, 2011 WL 2149361 (N.D. Ohio May 31, 2011)..............................13

*Vance, By & Through Hammons v. United States*,
    182 F.3d 920 (6th Cir. 1999) ...............................................................................19

*Woods v. International Harvester Co.*,
    697 F.2d 635 (5th Cir. 1983) ...............................................................................19

**Statutes**

17 U.S.C. § 504(b) ....................................................................................................16

**Rules**

Fed. R. Civ. P. 26 ................................................................................14, 15, 16, 18

Fed. R. Civ. P. 26(a) ...........................................................................................12, 13, 15

Fed. R. Civ. P. 37 ................................................................................................18, 19

Fed. R. Civ. P. 37(c)(1)........................................................................................15, 18

Fed. R. Evid. 401 .............................................................................................1, 9, 20

Fed. R. Evid. 402 ...................................................................................................5, 9, 20

Fed. R. Evid. 403 ........................................................................................... *passim*

Fed. R. Evid. 701 ..............................................................................................14

Fed. R. Evid. 702 .....................................................................................13, 14, 20

Fed. R. Evid. 801 .....................................................................................12, 17, 19

Fed. R. Evid. 802 .....................................................................................12, 17, 19

Fed. R. Evid. 803 .........................................................................................12, 17

Fed. R. Evid. 804 .........................................................................................12, 17

**Other Authorities**

4 Nimmer on Copyright § 13.05[A][4]...........................................................................4

## I.    MIL NO. 1 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT IMPLYING TAKE-TWO WITHHELD TELEMETRY DATA

Take-Two respectfully moves *in limine* to exclude any evidence, testimony, or argument that Take-Two withheld "telemetry data" showing how often a video game player uses one of the NBA Players (*i.e.*, "player-based" data).[1]  ***First***, the Court already held that this player-based telemetry data does not exist.  That decision governs this later stage of the case "to keep rulings consistent and avoid repetitious reconsideration of matters that have already been decided."  *See Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc.*, No. 05 Civ. 70804, 2007 WL 1834714, at *7 (E.D. Mich. June 25, 2007); *see also Sweeney v. Correctional Med. Servs., Inc.*, No. 04 Civ. 40284, 2007 WL 2983967, at *1 (E.D. Mich. Oct. 12, 2007) (granting MIL based on law of the case doctrine).  During discovery, Plaintiff sought "[t]elemetry data showing the extent to which the NBA Players are used by users while playing the Accused Games."  Dkt. 50 (Disc. Ord.) at 2.  Take-Two ███████████████████████████████████████████████████ ██████████████████████  Ex. A (J. Thomas Tr.) at 296:1–4.[2]  Thus, the Court denied the request.  Disc. Ord. 2–3.  Yet, Plaintiff continues to argue that Take-Two: (1) tracks player-based telemetry data, Dkt. 108 (Pl.'s Opp. Mtn. Excld. Malkiewicz) at 7 n.6; and (2) "opted not to disclose its 'telemetric' data," *id.* at 9.  Plaintiff should be precluded from arguing so to the jury.

***Second***, Rules 401 and 403 also require exclusion.  That Take-Two did not produce something that does not exist is not relevant.  *See Aslan v. Ferrari N. Am., Inc.*, No. 16 Civ. 02574, 2018 WL 6321635, at *4 (C.D. Cal. Oct. 19, 2018) (excluding argument that defendant failed to produce documents).  Permitting Plaintiff to wrongly imply that Take-Two was hiding unfavorable

---

[1] Capitalized terms not defined here were defined in Take-Two's opening summary judgment brief.  *See* Dkt. 95-01.
[2] Any reliance on Jason Argent's testimony is misplaced.  Jeff Thomas, not Mr. Argent, testified to this topic during his 30(b)(6) deposition, and Mr. Argent stated that he ████████████████████████████████
██████████████████████████████  Ex. B (Argent Tr.) at 216:19–25.

telemetry would mislead the jury and unfairly prejudice Take-Two.  *See Martinez v. Dart Trans, Inc.*, 548 F. Supp. 3d 1107, 1116 (D.N.M. 2021).

## II.    MIL NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING PLAINTIFF'S AGREEMENTS AND PROJECTS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument concerning Plaintiff's agreements and projects with third parties, which Plaintiff contends is both proof of market effects under the fourth fair use factor and a refutation of Take-Two's license defense.  Neither of these explanations makes sense, and exclusion is warranted because (1) such agreements and projects are not relevant, and (2) they risk substantially risk confusing the jury.

**Market Effects**.  The fourth fair use factor considers the impact of a defendant's use of a copyrighted work on the "potential licensing revenues for traditional, reasonable, or likely to be developed markets" for that work.  *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 91 (2d Cir. 2014).  Cognizable market harm is limited to "market substitution," *i.e.*, the harm that results where the secondary use of a work "substitutes" for the original work.  *See Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99–100 (2d Cir. 2014) (where digitization of books to create a full-text search was at issue, the fact that some libraries "might be willing to purchase licenses in order to engage in this transformative use" was "irrelevant" without market substitution); Dkt. 193 (Summ. J. Op.) at 14 (quoting *Authors Guild*).  The Court has already found that there is no market for tattoos in video games, Dkt. 175 (Op. on Mot. to Excld. Lenzo) at 7, and these projects have no relevance to whether there is a potential market or substitution therein.

***First***, these projects and agreements involve uses that ***differ*** from Take-Two's use.  A potential market for one use cannot be shown by licenses for ***different*** uses.[3]  *See Bill Graham*

---

[3] Nor can Plaintiff point to these projects and agreements to show *he* would be willing to license tattoos in video games.  Such an argument violates the circular reasoning that courts warn against as it is true in virtually every fair use case.  *See Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930, n.17 (2d Cir. 1994) ("copyright holder can

*Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006) (although fees paid for reproducing images for other uses, no harm to relevant market of defendant's use).  For example, books have many actual markets.  If a plaintiff could merely point to other book licenses, every court finding fair use of a book should have concluded a potential market existed.  That is not the case.  *See*, *e.g.*, *Authors Guild v. Google, Inc.*, 804 F.3d 202, 224 (2d Cir. 2015) (no market harm); *Authors Guild,* 755 F.3d at 99–100; *Bond v. Blum*, 317 F.3d 385, 396–97 (4th Cir. 2003). Likewise, in *Google LLC v. Oracle Am., Inc.*, there was no potential market for using code in the Android platform despite Oracle's many previous licenses for other uses.  141 S.Ct. 1183, 1207 (2021).  Here, many of Plaintiff's agreements do not even relate to the depiction of tattoos on people who bear them in real life, and those that do relate to different media: ***none*** involve video games, and several expressly carve them out.  *Infra* 7–8.

For Plaintiff to now argue that these projects and agreements show a potential market for tattoos in video games would contradict the position Plaintiff has taken throughout this case: faced with the fact that NBA Players appear regularly in media with their tattoos without licenses from Plaintiff, Plaintiff has repeatedly attempted to differentiate other media from video games—he testified that people do ***not*** need his permission to appear in photographs on social media or in basketball games on television because they are "in human form" or "regular life form" rather than "avatar" form.  Ex. C (Hayden Dep. Tr.) at 144:22–145:17 (agreeing it was "okay if [Mr. James'] tattoos are shown because he's not an avatar" when he appears in a photograph), 148:2–10. Plaintiff should not be able to point to these projects and agreements to prove a potential market for a use he simultaneously claims is unlike any other media in which the NBA Players appear.

***Second***, many of these agreements and projects were only entered under the specter of this

---

always assert some degree of adverse [e]ffect on its potential licensing revenues as a consequence of the [defendant's use] . . . simply because the copyright holder has not been paid a fee to permit that particular use").

litigation, years after the Tattoos appeared in *NBA 2K*.  Thus, they are irrelevant to whether Take-Two's use had an effect on the normal market for the Tattoos at that time.  *See*, *e.g.*, *Duffy v. Penguin Books USA Inc.*, 4 F. Supp. 2d 268, 275 (S.D.N.Y. 1998) (looking at contemporaneous evidence to determine market harm); *Bill Graham Archives*, 448 F.3d at 614 (evidence must show market was reasonable, traditional, or likely to develop).[4]  The fact that, years after-the-fact, companies fearful of similar litigation might license a work is not evidence of market harm.  *See Hofheinz v. AMC Prods., Inc.*, 147 F. Supp. 2d 127, 141 (E.D.N.Y. 2001) (alleged infringers "are likely to seek a license to avoid entering the murky realm of fair use law during the course of litigation").  Indeed, the well-known Nimmer treatise expressly cautions that "copyright owners may not preempt exploitation of transformative markets, which they would not 'in general develop or license others to develop,' by actually developing or licensing others to develop those markets."  *See* 4 Nimmer § 13.05[A][4], at 13-181 to -182 (recognizing "danger of circularity" where original copyright owner redefines "potential market" by developing or licensing others to develop that market).  Here, the only projects and agreements involving the depiction of any of the Tattoos on any of the NBA Players ***post-date*** this lawsuit; such under-the-gun agreements (some even called or originating as "releases" of rights), cannot show whether there was a traditional, reasonable, or likely to be developed market at the time of Take-Two's use.

**License**.  These projects and agreements are irrelevant to the existence of an implied license between the NBA Players and the Plaintiff.  Most do not involve any of the NBA Players or their tattoos, and thus are not evidence of Plaintiff's intent concerning these players and these

---

[4] *Princeton Univ. Press v. Michigan Document Servs., Inc.* did not find that licenses for uses different from a defendant's use could be considered in the market harm analysis.  99 F.3d 1381, 1387 (6th Cir. 1996).  Rather, the court considered that other *copy shops* paid permission fees to duplicate work, while the *copy shop* at issue did not—in other words, even in *Princeton*, the Sixth Circuit was comparing apples to apples, not apples to oranges.  *Id.* at 1387 (considering the fact that other copy shops paying permission for copying of materials).

works.  ***None*** of the projects or agreements involve Messrs. Thompson or Green at all, and thus tell us nothing of Plaintiff's intent regarding those players.  Plaintiff points to only three alleged releases for tattoos he inked on Mr. James and only four belatedly produced licenses involving Mr. James, all of which are dated nine to fourteen years ***after*** the tattoos were inked on Mr. James. Dkt. 109-49 (Hayden Decl.) ¶¶ 20, 23–25.  These agreements also all date from ***after this lawsuit was filed***, despite the fact that Mr. James was regularly appearing in media with his tattoos ever since he was inked almost a decade prior.  This suggests they are *post-hoc* attempts to upend the norms and expectations of both Mr. Hayden and Mr. James; such agreements, so distant in time from the inking and after litigation was already filed, certainly say nothing of Plaintiff's objective intent at the time he inked Mr. James, which is the relevant inquiry in the implied license analysis. *See Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008) (considering conduct "at the time of the creation and delivery").  This warrants exclusion.  Fed. R. Evid. 402.

These projects and agreements separately should be excluded due to their risk of jury confusion.  Fed. R. Evid. 403.  Many involve ***unsigned or nonexistent*** releases and contracts, making it unclear whether they were actually entered into and the scope and/or content of what is being licensed (or whether there even ***is*** a license for the tattoos).  These numerous ambiguities create the risk of trial devolving into "mini-trials," wherein the jury will need to parse the facts of these other, unrelated releases and projects involving different media and circumstances.  *See Manuel v. City of Chi.*, 335 F.3d 592, 597 (7th Cir. 2003) (excluding evidence due to confusion and risk of misleading jury through "series of mini-trials"); *Brown v. Weber*, No. 11 Civ. 1390, 2014 WL 11531797, at *1 (W.D. Tenn. Jul. 11, 2014) (same).

Below, these principles are applied to Plaintiff's potential trial evidence:

████████████████████████████████████████████████████████

███████████████████████ *See* Ex. D.  This is █████████████████████████

███████████████████████████████████████████████████████████

Ex. C (Hayden Tr.) at 179:17–19 (agreeing "the shoes didn't have pictures of Mr. James on them,

they just had . . . parts of these designs"); 179:20–23.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

*See, e.g.*, Dkt 109-50; Ex. C (Hayden Tr.) at 182:13–21; 183:8–13 (agreeing "Nike was contracting

with you to air brush these designs").  No contract has been produced for this project, and it ███

███████████████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████ *See*

Dkt. 109-51 ██████████████████████████████████████

████████████████████████████████████████████████ *Id.*

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████ *See* Dkt. 109-52–53; Ex. E; Ex. C (Hayden Tr.) 187:5–7. ██████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████ *See* Dkt. 109-54 ████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████ Dkt. 109-49 (Hayden Decl.) ¶ 20.

███████████████████████████████████████████████████████████

███████████████████████████████████████ *See* Dkt. 109-57. ██████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ Dkt. 109-49 (Hayden Decl.) ¶ 21.

████████████████████████████████████████████████████

██████████████████████████████████ *See* Dkt. 109-56 ███████████

███████████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████████████

██████████████ Dkt. 109-57.

██████████████████████ suggesting that Plaintiff was trying to create evidence of a

market after the fact that does not bear on market effects at the time Take-Two's use commenced;

████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Dkt. 109-58. ████████████

██████████████████████████ suggesting that Plaintiff was trying to create evidence

of a market after the fact; ████████████████████████

████████████████████████████████████████████ Dkt. 109-

59 ████████████████████████████████████████████ which

suggests that Plaintiff was trying to create evidence of a market after the fact that does not bear on

market effects at the time Take-Two's use commenced, (b) was not produced during discovery, so

Take-Two has been unable to take discovery on it, (c) █████████████████████

███████████████████████████ *Id.*

*See* Ex. F.

which suggests that Plaintiff was trying to create evidence of a market after the fact that does not bear on market effects at the time Take-Two's use commenced, (c) was not produced during discovery, so Take-Two has been unable to take discovery on it, (d) *Id.*

*See* Ex. G. which suggests that Plaintiff was trying to create evidence of a market after the fact that does not bear on market effects at the time Take-Two's use commenced, (b) was not produced during discovery, and in fact was not produced to Take-Two until 2023, over a year after it was signed, so Take-Two has been unable to take discovery on it, (c) *Id.*

*See* Ex. H. which suggests that Plaintiff was trying to create evidence of a market after the fact that does not bear on market effects at the time Take-Two's use commenced, (b) was not produced during discovery, so Take-Two has been unable to take discovery on it, (c)

*Id.*

*See* Ex. I.[5]

---

[5] Take-Two has included in its exhibit list certain documents related to some of the purported releases and projects described herein, which it may use if the Court does not grant Take-Two's requested relief.

## III.    MIL NO. 3 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S LICENSING OF OTHER WORKS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument concerning Take-Two's licensing of different works for different purposes than those at issue in this litigation (*i.e.*, not tattoos on people).  Plaintiff has argued that this shows a potential market for depicting the Tattoos on the NBA Players bodies.[6]  Dkt. 109 (Pl.'s Mem. Opp. Mot. Summ. J.) at 10.  Not so.  This evidence is irrelevant and unduly prejudicial.  *See* Fed. R. Evid. 401–03.

Licenses for different content, for which there is an established market (such as trademarks), do not show that a market for licensing tattoos in video games exists, and indeed, the Court has already found that no such market exists.  Dkt. 175 at 7–8.  Nor is the fact that Take-Two pays for **different** works for **different** purposes, including expressive purposes, relevant to whether a market is likely to form for the type of work and use in this case, *i.e.*, depicting real-world people with their tattoos in a video game.  *See supra* 3; *Bill Graham*, 448 F.3d at 614; *see Swatch*, 756 F.3d at 91.[7]  Yet, Plaintiff has made clear that he intends to use Take-Two's licenses with ██████ its ██████████ licenses, licenses related to ████████████ agreements covering ███████████████████████████████████ to make this argument.  *See* Ex. J (Nov. 12, 2019 Email Agreement re Production); Dkt. 50 at 4 (Mem. Opp. re music payment).  None of these relate to replicating a person's likeness as they actually look or involve the deeply personal situation of someone getting a tattoo inked on their body.  None of these licenses even involve Take-Two's purpose in using the Tattoos in *NBA 2K*, which the Court found was for purposes of

---

[6] Even if Dr. Lenzo relied on such licenses in reaching his conclusions that does not make them admissible at trial. *See Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728–29 (6th Cir. 1994) (finding inadmissible evidence relied on by an expert "should not be admitted if the risk of prejudice substantially outweighs their probative value").  Nor has the Court already ruled that these licenses are *admissible* at trial.  Rather, the Court held that there (1) is no market for licensing tattoos in video games and (2) Dr. Lenzo could opine based on the evidence he considered as to whether tattoo artists would be willing to license their tattoos in video games.  Dkt. 175 7–8.

[7] Plaintiff has taken the position that *Bill Graham* stands for the proposition that the fourth fair use factor is not probative where defendant's use was different from their original purpose.  Yet, that is precisely the case here.

9

realism.  Some of these licenses involve ***trademarks***, which implicate different laws than copyrights do (and which the average person is apt to confuse).

This evidence would also be highly prejudicial to Take-Two.  The point that Plaintiff wants to argue is as clear as it is wrong: it is that the depiction of Plaintiff's tattoos in *NBA 2K* "is no different" than the use of software or a trademarked logo.  Dkt. 109 at 10 (arguing Take-Two's depiction of Tattoos is "no different than" other works except that Take-Two has not paid Plaintiff).  Plaintiff clearly hopes that the jury will assume that because *some* types of works are licensed for in *NBA 2K* for entirely different uses, then *all* works must be licensed.  And Plaintiff also clearly hopes that the jury will be unable to distinguish between different types of intellectual property, such as trademarks and the rules governing their fair use (which are, of course, completely different from the fair use standard for copyright).[8]  The jury could be confused into thinking that the mere existence of licenses for certain types of purposes means that such licenses are *required*, or that use without a license is never permissible.  Plaintiff's argument is legally wrong, highly confusing, and it would be unfairly prejudicial to allow Plaintiff to make it.[9]

## IV.   MIL NO. 4 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT REGARDING OTHER VIDEO GAME COMPANIES' AGREEMENTS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument regarding theoretical or highly speculative licensing of irrelevant content in video games other than *NBA 2K*.  Plaintiff's lawsuit is based only on six video games (*NBA 2K16–NBA 2K20* and *NBA 2K Mobile*).  *See* Dkt. 33 (4th Am. Compl.).  Plaintiff does not assert claims against non-*NBA*

---

[8] Merely seeking a license for a particular use does not mean that use is not fair use without a license, or that a license is required for such use.  In *Google v. Oracle*, for example, the defendant had sought a license and the parties were unable to reach an agreement, but the Supreme Court still found the defendant's use to be fair.  141 S.Ct. 1183 (2021); 750 F.3d 1339, 1350 (Fed. Cir. 2014) (describing the parties' attempts to reach a licensing agreement).
[9] Take-Two has included in its exhibit list certain documents related to the licensing of content in *NBA 2K*, which it may use if the Court does not grant Take-Two's requested relief.  Also, to be clear, it does not seek to exclude evidence of its agreements with the NBA and NBAPA that allow Take-Two to depict the NBA players.

*2K* video games.  Plaintiff nonetheless intends to introduce evidence related licensing of unaccused video games.  For example, his experts have ***hypothesized*** that other video game companies would have licensed content for inclusion in their video games.  There are no such licenses in the record.  None have any been produced in this case.  Plaintiff has not subpoenaed any other video game companies for such licenses, or deposed such companies to determine if such licenses exist.

Rank speculation that other companies license certain content (of unknown kind or purpose) is not relevant to any issues in this case and should be excluded.  ***First***, as discussed above, licensing of different works for different purposes is not relevant to market harm.  *See supra* 3.  Plaintiff apparently intends to use speculation about other video game companies for exactly this purpose.  For example, in Dr. Lenzo's expert report, he contends that Electronic Arts ("EA") "has license agreements with at least the Fédération Internationale de Football Association (FIFA) and the National Football League (NFL), with the latter reportedly associated with $1.5 billion in licensing fees and marketing commitments to the NFL and NFL Players' Association over five years."  Dkt. 97-3 (Lenzo Reb. Rpt.) ¶ 86.  Of course, it is not surprising that the NFL and FIFA would license content, such as their ***trademarks***, for inclusion in video games.  It has absolutely nothing to do with the claims here or with tattoos that are a part of someone's real, personal likeness.  *See supra* 3; *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 n.8 (9th Cir. 1985) (affirming exclusion of evidence concerning "other Broadway shows" not at issue).

***Second***, beyond unsubstantiated hearsay, there is nothing more than bare speculation that other video game companies might license tattoos.  Plaintiff has argued that "it has been reported that, '[T]he NFL Players Association and EA required the tattoo artists that designed tattoos for players to sign waivers giving the NFLPA and the video game company rights to reproduce the tattoos'" and that "[NFL Quarterback] Kaepernick got the necessary permission from the artists."

Dkt. 117 (Pl.'s Opp. Mot. Excld. Lenzo), at 7–8, n. 2.  His experts made similar claims at their depositions.  For example, Dr. Lenzo claimed, that ███████████████████████████ ████████████████████████████████████ Ex. K (Lenzo Tr.) at 274:17–19. Similarly, Mr. Malkiewicz claimed that ████████████████████████████████ ███████████████████████████████████████████ Ex. L (Malkiewicz Tr.) at 145:9–12.  Such ██████ from the ██████ on these supposed licenses are inadmissible hearsay that are being offered for the truth of the matter asserted, and which meet no exception under Rules 801–804.  The mere fact that an expert relies on them does not make them independently admissible.  Moreover, they were not even produced in this litigation, and Plaintiff did not subpoena EA to request them.  Thus, to the extent they even exist (and there is no evidence that they do), their contents, including which rights were being licensed, are entirely unknown.

 **Third**, neither expert disclosed this opinion in their reports.[10]  This is not surprising. Dr. Lenzo admitted he (1) ████████████████████████ (2) **does not know** whether any tattooist were paid to include their tattoos in *NFL Madden*, and (3) did not include this information in his report because ████████████████████████████████████████ ██████ Ex. K (Lenzo Tr.) at 274:12–13, 20–25, 275:5–10 (emphasis added).  Mr. Malkiewicz admitted he merely had ████████████████████████████████ without providing any documentary support.  *See* Ex. L (Malkiewicz Tr.) at 146:8–11 (emphasis added).

 **Fourth**, there is a significant danger of unfair prejudice here.  For one, baseless speculation about what one company (EA) may be doing about tattoos, particularly coming from a purported expert, could lead jurors to believe that Take-Two should be taking that same (entirely speculative) action.  For another, it would create confusing mini-trials regarding what other video game

---

[10] This is an independent basis for exclusion under Rule 26(a)(2)(B).  *See Parker Hannifin Corp. v. Standard Motor Prods., Inc.*, No. 19 Civ. 00617, 2021 WL 5801850, at *1 (N.D. Ohio Dec. 7, 2021).

companies are doing about unrelated content, like FIFA trademarks, which distracts from the "central focus of the case," and is especially problematic as neither Dr. Lenzo nor Mr. Malkiewicz cite support for their undisclosed opinions.  *United States v. Terry*, No. 10 Cr. 390, 2011 WL 2149361, at *4 (N.D. Ohio May 31, 2011).  And allowing Plaintiff to introduce such evidence as a way to put other large licensing numbers (*e.g.*, EA's alleged $1.5 billion in licensing fees), without context for what the deal actually entailed or the scope of rights it involved, to convince the jury that Plaintiff should be paid in this case for wholly different content, would be extremely prejudicial.  *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, No. 09 Civ. 261, 2014 WL 1350720, at *8 (W.D. Wisc. Apr. 4, 2014) (excluding gross sales and profits unrelated to infringing articles as "unfairly prejudic[ial]" and likely to "artificially inflate damages").

## V.  MIL NO. 5 TO EXCLUDE TESTIMONY, EVIDENCE OR ARGUMENT CONCERNING PLAINTIFF'S OPINIONS ABOUT THE TATTOO INDUSTRY

Take-Two respectfully moves *in limine* to exclude Plaintiff from offering testimony about the tattoo industry **beyond his personal experiences**, including any opinions about the tattoo industry, the market for tattoos, common tattooing practices, the relationship between the tattoo industry and the art industry, or Take-Two's impression of such industries.

*First*, Plaintiff's opinion testimony was never disclosed.  When a witness is offered as an expert to testify in the form of an opinion under Rule 702, their identity and the subject matter of their testimony must be disclosed under Rule 26(a)(2)(B).  *See Parker Hannifin Corp. v. Standard Motor Prods., Inc.*, No. 19 Civ. 617, 2021 WL 5801850, at *1 (N.D. Ohio Dec. 7, 2021); *Parillo v. Lowe's Home Ctrs., LLC*, No. 14 Civ. 369, 2017 WL 4124585, at *2 (S.D. Ohio Sept. 18, 2017).  Only then can courts ensure that the proposed testimony satisfies Rule 702 and is not unfairly prejudicial under Rule 403.  *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010).  Despite not being disclosed as an expert, Plaintiff broadly declared that he "**believes**" that "in

virtually *every kind of commissioned art*" it is "common between artists and their patrons" for artists to have "artistic freedom to express the idea" that the patron brings with them.  Dkt. 109-49 (Hayden Decl.) ¶ 8 (emphasis added).  Plaintiff also declared that it is his opinion that Take-Two has an "utter disconnect with, and perhaps contempt for, the art world."  *Id.* ¶ 11.  Setting aside whether Plaintiff would even be qualified as an expert under Rule 702, there can be no dispute that these opinions were never disclosed under Rule 26, and thus should not be presented to the jury. *See Parker*, 2021 WL 5801850 at *1.

**Second**, Plaintiff may not offer his opinions under the guise of lay opinion testimony under Rule 701.  Lay witnesses may testify based on their perception, not based on scientific, technical, or other specialized knowledge.  *See* Fed. R. Evid. 701.  Plaintiff's beliefs about the "common" practice "in virtually every kind of commissioned art," Hayden Decl. ¶¶ 8, 11, are based on his speculation about the entire tattoo and art industry, not his perception.  This is not allowed.  *See Auto Konnect, LLC v. BMW of N. Am., LLC*, No. 18 Civ. 14019, 2022 WL 721526, at *4 (E.D. Mich. Mar. 9, 2022) ("BMWNA's employees can testify under Rule 701 as to their own personal knowledge of BMWNA's practices" but "may not testify concerning the general automotive industry outside of BMWNA or other topics beyond their own perceptions").  Similarly, Plaintiff's declaration purports to offer legal conclusions regarding licensing in the tattoo industry, which this Court already determined was improper, even by a properly disclosed by an expert.  *Compare* Hayden Decl. ¶ 27 ("I have never granted a blanket license to any client that would allow them to authorize a third-party to re-create my works in video games."), *with* Dkt. 150 (holding Dr. Jablonski "cannot make the legal determinations of who owns the tattoos and who has the right to display them").  Finally, any opinions of Plaintiff about the tattoo industry *as a whole* should also be excluded as prejudicial, as they are not based on factual evidence or personal knowledge.

14

*Third*, Plaintiff's proposed testimony is irrelevant and prejudicial.  Plaintiff's belief that Take-Two has "utter disconnect with, and perhaps contempt for, the art world" is not relevant to whether Plaintiff is entitled to any rights in tattoos depicted on players in *NBA 2K* whatsoever. Hayden Decl. ¶ 11; *see SPEX Techs. v. Apricorn, Inc*, No. 16 Civ. 07349, 2020 WL 1289546, at *2 (C.D. Cal. Jan. 21, 2020) (excluding "derogatory comments" on motion *in limine* as irrelevant and prejudicial); *Gordon v. Royal Palm Real Est. Inv. Fund I, LLLP*, No. 09 Civ. 11770, 2022 WL 1431837, at *3–5 (E.D. Mich. May 5, 2022) (excluding evidence of alleged defamation as inflammatory and irrelevant and prejudicial).  Moreover, Plaintiff's broad and unsupported statements regarding the industry, for example, that it "is unreasonable and foolish to suggest that once someone creates a piece of art depicting a lion or stars, all creativity in depicting lions or stars has been exhausted," Hayden Decl. ¶ 11, should also be excluded as prejudicial.

## VI.    MIL NO. 6 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT OF ACTUAL DAMAGES

Take-Two respectfully moves *in limine* to preclude Plaintiff from asserting that he is entitled to actual damages.  Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), Plaintiff was required to provide "a computation of each category of damages claimed" as well as "the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  When "a party fails to provide information" required by Rule 26, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Courts in this Circuit regularly exclude evidence of damages when a party fails to disclose a corresponding computation.  *See Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 369 (6th Cir. 2010) (affirming exclusion of "evidence of lost-profits damages" where plaintiff failed to produce computation of damages); *TCF Inventory*

*Fin., Inc. v. Northshore Outdoor, Inc.*, No. 11 Civ. 85, 2012 WL 2576367, at *4 (N.D. Ohio July 3, 2012) (granting motion *in limine* "to preclude defendants from presenting damage evidence as to 'lost profits'" where "defendants did not provide TCF with a computation of alleged lost profits in their initial Rule 26 disclosures" and did not disclose a "'computation' of their alleged lost profits"); *Acuity Brands Lighting, Inc. v. Bickley*, No. 13 Civ. 366, 2015 WL 10551946, at *5 (E.D. Ky. Nov. 30, 2015), *R&R adopted*, 2016 WL 1171541 (E.D. Ky. Mar. 24, 2016) (excluding damages where "Plaintiffs never provided a Rule-compliant computation").

Plaintiff has never disclosed the required computation of actual damages.  In Plaintiff's Rule 26 disclosures, under the section titled "Computation of Damages," Plaintiff simply stated that he "is entitled to either actual damages and profits under 17 U.S.C. § 504(b)" but "cannot calculate the amount of actual damages . . . without discovery."  Ex. M at 4.  Discovery has been closed since August 2021.  During his deposition, Plaintiff could not identify any lost income or lost licensing opportunities from the alleged infringement, or "any facts that [he] believe[s] would justify a particular damages amount."  Ex. C (Hayden Tr.) at 210:15–211:2, 212:11–16, 213:25–214:1.  Further, in response to an interrogatory asking Plaintiff to identify "any damage or lost revenue (both in dollars)" Plaintiff claims resulted from the alleged infringement, Plaintiff merely contended that Take-Two "has harmed Hayden's ability to develop and profit from this market," identified documents with no explanation of how those documents are responsive to this question, and still did not compute actual damages.  Ex. N at (Pl.'s Second Suppl. Resp. to Take-Two's First Interrogs.) 19–20.  Even when Take-Two previously filed a motion *in limine* on this issue in August 2022, Plaintiff ***still*** refused to provide a calculation and simply asserted that the jury will have evidence of "what Take-Two has been willing to pay to license IP for use in its game" and "what Mr. Hayden has received for licensing his tattoos in the past."  Dkt. 191 (Pl.'s Opp. to Defs.'

First Mot. in Lim.) at 14.  Plaintiff, however, has never contended that his alleged actual damages are comparable to any amounts identified in any documents produced in this case, including any releases or licenses.  And Plaintiff's experts did not compute actual damages.  Ex. L (Malkiewicz Tr.) 133:22–134:4 (agreeing he does not ███████████████████████████████████ ███████████████████████████████); Ex. K (Lenzo. Tr.) 34:3–9 (agreeing he is ██████████████ ███████████████████████████████████████).

The time to disclose an actual damages computation has long passed.  Fact and expert discovery are closed, and Take-Two has had no opportunity to take discovery on Plaintiff's computation of alleged actual damages because he has never provided one.  The parties are now preparing for trial.  The appropriate remedy is to grant Take-Two's motion *in limine* to exclude actual damages.  *See TCF*, 2012 WL 2576367, at *4.

## IX.  MIL NO. 7 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT ABOUT PLAINTIFF'S ALLEGED, UNDISCLOSED COMMUNICATIONS WITH ANY OF THE NBA PLAYERS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument concerning Plaintiff's undisclosed alleged communications with any of the NBA Players because they (1) were not produced during discovery; and (2) are inadmissible hearsay, meeting no exception under Rules 801–804.

Take-Two sought targeted discovery on all of Plaintiff's alleged communications with the NBA Players in multiple ways.  Take-Two served an interrogatory in May 2019 asking for a description of all communications with the NBA Players "CONCERNING the ASSERTED WORKS."  Ex. O (Pl.'s Resp. to Interrog. No. 4).  It requested copies of any communications. Ex. P (Defs.' RFP Nos. 33–35).  And it asked about them during Plaintiff's deposition in October 2019.  Ex. C (Hayden Tr.) 106:4–6.  Plaintiff testified that he had "produced all communications with Mr. James, Mr. Green and Mr. Thompson," *id.*, but none were produced, and he testified that

he never communicated with the players about this lawsuit, *id.* at 217:15–18 ("Q. Now, besides your communications with Randy Mims, have you ever had communications with anyone else about this lawsuit? A. No."), 217:22–25 ("Q. … Before you brought this lawsuit, did you discuss the possibility of suing Take-Two with anyone other than your attorneys? A. No.")

Yet, Plaintiff may now seek to introduce undisclosed evidence of alleged communications with the NBA Players at trial.  For example, at Mr. Green's deposition, ***Plaintiff's counsel*** asked whether he recalled a dinner with Plaintiff ███████████████████████████████

█████████████ Ex. Q (Green Tr.) at 54:21–55:4.  Mr. Green last played for the Spurs in 2018, before discovery commenced.  Ex. R. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████. Ex. Q (Green Tr.) at 52:25–53:7, 54:4–9.

Having avoided discovery of this and other conversations, Plaintiff should not be permitted to introduce such evidence for the first time at trial.  ***First***, a party that "fails to provide information" required by Rule 26 "is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Hardesty v. Kroger Co.*, No. 16 Civ. 298, 2022 WL 742847, at *4 (S.D. Ohio Mar. 11, 2022) ("[e]xclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1), unless non-disclosure was substantially justified or harmless") (quoting *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004)).  As noted above, despite multiple discovery requests, Plaintiff never disclosed any alleged communications he may have had with the NBA Players regarding this lawsuit.  Plaintiff's failure to do so is neither justified nor harmless to Defendants.  Instead, it is a classic example of the prejudicial "trial by ambush" tactic that Rule

37 is meant to prevent. *See Hardesty,* 2022 WL 742847, at *4 ("Rule 37 exists to enforce discovery rules and orders and prevent abuse by future litigants.") (citing *Vance, By & Through Hammons v. United States*, 182 F.3d 920 (6th Cir. 1999)); *Erskine v. Consol. Rail Corp.*, 814 F.2d 266, 272 (6th Cir. 1987) ("[T]rial by ambush is not contemplated by the Federal Rules of Civil Procedure") (quoting *Woods v. International Harvester Co.*, 697 F.2d 635, 639 (5th Cir. 1983)); *Silitonga v. Kentucky State Univ.*, No. 16 Civ. 29, 2018 WL 3969951, at *4 (E.D. Ky. Aug. 20, 2018).

Plaintiff may argue that any harm can be cured by cross-examining Plaintiff at trial. That is not sufficient. The Federal Rules are meant to avoid surprise at trial. *See Hardesty,* 2022 WL 742847, at *4; *Erskine*, 814 F.2d at 272. Accordingly, the proper time for Take-Two to explore and question Mr. Hayden about any alleged communications he may have had with the NBA Players was during discovery. *Silitonga*, 2018 WL 3969951, at *4 ("Cross-examination at trial also would not sufficiently cure the surprise or portend a smooth trial . . . Defendants' proposal would force Plaintiffs to wait until trial to ask question[s] and get answers to which they were earlier entitled."); *see also Abrams v. Nucor Steel Marion, Inc.*, 694 Fed. Appx. 974, 982 (6th Cir. 2017) ("[A]t this stage of litigation, allowing the witnesses to testify would delay and disrupt the trial. Not only would Defendant need time to depose the four witnesses, but Defendant would also have to be given the opportunity and time to find rebuttal evidence or testimony.").

**Second**, any testimony Plaintiff may seek to introduce about his alleged conversations with the NBA Players would constitute inadmissible hearsay (and hearsay upon hearsay) under Rules 801 and 802 to the extent it is being offered for the truth of the matter asserted—*i.e.*, that the conversation supposedly occurred and that the NBA Player supposedly said what Plaintiff attributes to him. *See Kendall Holdings, Ltd. v. Eden Cryogenics LLC,* No. 8 Civ. 390, 2015 WL 12999710, at *8 (S.D. Ohio Apr. 17, 2015) ("The testimony was offered for the truth of the matter

asserted, rather than the fact that the conversation took place, and was properly excluded as hearsay."); *Boyce v. Exec. Dir. of Cook Cty. Dept. of Corrections*, No. 96 Civ. 3703, 2001 WL 648951, at *10 (N.D. Ill. Jun. 4, 2001) ("Insofar as the statement is offered to prove the truth of the matter asserted (*i.e.*, that the conversation actually occurred and what was said), it is hearsay and inadmissible.").

## VIII. MIL NO. 8 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S REVENUE FROM VIRTUAL CURRENCY

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument of Take-Two's revenues from sales of virtual currency ("VC"), as it is irrelevant and unduly prejudicial.  *See* Fed. R. Evid. 401–03.  Although during *Daubert* this Court did not exclude Mr. Malkiewicz's testimony about VC under Rule 702, *see* Dkt. 183, its Opinion did not address the relevance and undue prejudice of this evidence under Rules 401/403, and it should be excluded now.  A plaintiff seeking profits must show "some causal link between the infringement and the particular profit stream."  *Satija v. Permanent Gen. Assurance Corp. of Ohio*, No. 13 Civ. 82, 2014 WL 1664557, at *6 (N.D. Ohio Apr. 25, 2014) (internal citations omitted).  VC is something that *NBA 2K* users can earn or purchase and use to unlock additional features, such as player skills and attributes.  Dkt. 99-3 (Malkiewicz Tr.) 188:10–11, 194:1–3, 195:19–20, 195:25–196:6.  The Tattoos are already included in *NBA 2K* before any VC is purchased. *Id.* at 203:9–14.  VC (a) does not depict the Tattoos, *id.* 204:11–17; (b) cannot be used to purchase the Tattoos, *id.* 189:8–11; and (c) cannot be used to see the Tattoos more clearly, *id.* 201:16–202:2.  Because there is no causal link between it and the alleged infringement, it is not relevant and should be excluded. Allowing it to be introduced would also be unduly prejudicial—it inflates Take-Two's revenue by more than 60%.  *See* Dkt. 99-4 (Malkiewicz Rpt.) at Schedule 3 (including estimated "Recurrent" revenues, *i.e.*, from VC, in total revenue).

Dated:  April 20, 2023

/s/ Dale M. Cendali
Dale M. Cendali (*pro hac vice*)
Joshua L. Simmons (*pro hac vice*)
Chris Ilardi (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Yungmoon Chang (*pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4359
yungmoon.chang@kirkland.com

Matthew J. Cavanagh (0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Take-Two 2K Games, Inc. and Take-Two Interactive Software, Inc.*