IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HAYDEN, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:17-cv-02635-CAB |
| | ) | |
| v. | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| 2K GAMES, INC., et al., | ) | **PUBLIC VERSION—REDACTED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OMNIBUS MOTION *IN LIMINE***

## <u>TABLE OF CONTENTS</u>

I.      MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT
        CONCERNING THIRD-PARTY PLAYER DECLARATIONS AND
        INADMISSIBLE DEPOSITION TESTIMONY ................................................................. 1

        A.      Mr. James', Mr. Thompson's, and Mr. Green's declarations are
                inadmissible hearsay ....................................................................................... 1

        B.      Testimony related to certain statements in the Player Declarations are
                inadmissible legal and expert opinions, based on speculation, and are
                irrelevant, and should thus be excluded ......................................................... 2

        C.      Mr. James', Mr. Thompson's, and Mr. Green's deposition responses to
                improper leading questions should be excluded ............................................. 5

II.     MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT
        CONCERNING THIRD-PARTY DECLARATIONS FROM OTHER
        LITIGATIONS ........................................................................................................... 7

III.    MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT
        CONCERNING THE VENETIAN RESORT'S LOGO ..................................................... 9

IV.     MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT
        CONCERNING POLICY IMPACT OF AN INFRINGEMENT FINDING ................... 10

V.      MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT
        CONCERNING MR. HAYDEN'S OWN TATTOOS ..................................................... 11

VI.     MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT
        CONCERNING ADVICE OF COUNSEL ..................................................................... 11

VII.    MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. NINA
        JABLONSKI ............................................................................................................. 12

ii

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*01 Communique Laboratory, Inc. v. Citrix systems, Inc.*, No. 1:06-cv-00253, 2015
WL 13649574 (N.D. Ohio Apr. 17, 2015)................................................................. 12

*Peppers v. Washington County, Tennessee*, 686 Fed. Appx. 328 (6th Cir. 2017)......................... 8

*Swartz v. DiCarlo*, No. 1:12-cv-3112, 2018 WL 10483103 (N.D. Ohio Sep. 13,
2018) ................................................................................................................ 10

*U.S. v. Kuehne*, 547 F.3d 667 (6th Cir. 2008)............................................................. 6

*United States v. Craig*, 953 F.3d 898 (6th Cir. 2020) ................................................... 10

*Weinstein v. Siemens*, 756 F. Supp. 2d 839 (E.D. Mich. 2010) ................................. 2, 8

### <u>RULES</u>

Federal Rule of Civil Procedure 26 ................................................................... 3, 8

Federal Rule of Evidence 401 ....................................................................... passim

Federal Rule of Evidence 402 ....................................................................... passim

Federal Rule of Evidence 403 ....................................................................... passim

Federal Rule of Evidence 611 ....................................................................... 5, 6, 7

Federal Rule of Evidence 801 ................................................................... 1, 2, 5, 8

Federal Rule of Evidence 802 ................................................................... 1, 2, 5, 8

Federal Rule of Evidence 804 ............................................................................. 8

Federal Rule of Evidence 901 ........................................................................ 9, 10

iii

Plaintiff James Hayden hereby moves *in limine* to exclude certain testimony, evidence, or argument that Mr. Hayden anticipates Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. (collectively, "Take-Two") will seek to introduce at trial. As discussed in greater detail below, the anticipated evidence is inadmissible under the Federal Rules of Evidence (the "Rules"), and therefore Plaintiff respectfully requests an order barring Take-Two from submitting such evidence at trial.

Under the Federal Rules of Evidence, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. A court may also exclude relevant evidence if "its probative value is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403.

Under the Federal Rules of Evidence, hearsay is not admissible unless Federal Rules of Evidence, or other rules prescribed by the Supreme Court provides otherwise. Fed R. Evid. 802. "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801.

## I.     MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING THIRD-PARTY PLAYER DECLARATIONS AND INADMISSIBLE DEPOSITION TESTIMONY

### A.     Mr. James', Mr. Thompson's, and Mr. Green's declarations are inadmissible hearsay.

Take-Two may attempt to reference, introduce evidence, testify, or elicit testimony about the declarations of LeBron James, Danny Green, and/or Tristan Thompson (the "Players"; Dkt # 95-2–4, the "Player Declarations"), which Take-Two submitted for the first time in support of its

Motion for Summary Judgment (Dkt. # 95). These Player Declarations, however, fall squarely within the hearsay rule and should thus be excluded. Fed. R. Evid. 801, 802.

The declarations are out-of-court statements that Take-Two may offer in evidence to prove the truth of the matters asserted in the declarations. *See* Fed R. Evid. 801. Third-party declarations are "classically categorized as hearsay" because they would not be subject to cross-examination at trial. *Weinstein v. Siemens*, 756 F. Supp. 2d 839, 849 (E.D. Mich. 2010). This is sufficient to preclude them from trial. Further, upon deposing the Players, it is now clear that the testimony from the Player Declarations is unreliable and would not be helpful for the jury at trial. (*See* Suppl. Opp., Dkt. # 156.) The Players are not impartial declarants ████████████████ ████████████████████████, the Player Declarations are riddled with inconsistencies and are simply instruments carefully drafted by Take-Two—not the Players—devoted more to supporting Take-Two's legal positions than disclosing the impartial truth. (*Id.*) To the extent any testimony from the Players is submitted at trial, it should either be through live testimony or through the admissible testimony from their depositions.  The Player Declarations are inadmissible hearsay and should be excluded in their entirety.

> **B.**     **Testimony related to certain statements in the Player Declarations are inadmissible legal and expert opinions, based on speculation, and are irrelevant, and should thus be excluded.**

To the extent Mr. James, Mr. Thompson, or Mr. Green (the "Athletes") are called to testify or their deposition testimony is submitted at trial, their testimony related to certain legal/expert opinions and speculative statements from their Player Declarations and depositions should be precluded.

For example, in their declarations and in their depositions, the Players submitted several legal opinions related to their "rights" in Mr. Hayden's works and their "rights" in licensing those works:

- "My understanding is that my tattoos are a part of my body and likeness, and I have the right to have my tattoos visible when people or companies depict what I look like." (James Decl., Dkt. # 95-2, ¶ 10, *see also* ¶¶ 12, 13, 14.)

- "I believe that the Brother's Keeper Tattoo is part of my likeness." (Thompson Decl., Dkt. # 95-3, ¶ 11, *see also* ¶ 13.)

- "As someone who regularly gets tattoos, it is my understanding that these tattoos were mine to do with what I wanted . . . ." (Green Decl., Dkt. # 95-4, ¶ 6, *see also* ¶¶ 11, 14.)

None of the Players are lawyers and Take-Two has not identified any of the Players as experts under Fed. R. Civ. P. 26(a)(2). Thus, their opinions related their ownership rights or licensing rights related to Mr. Hayden's copyrights are improper, not relevant to the case, and, at minimum, more prejudicial than probative. Fed. R. Evid. 401, 403. Any testimony related to these topics should thus be precluded and Take-Two should be precluded from relying on them.

Further, the Players made claims suggesting certain industry standards in the tattoo industry, but the Players have not been designated as experts nor do they qualify as experts on these topics. At minimum, these claims about other tattoo artists are not relevant to the case:

- "In the eighteen years since I've been playing professional basketball, this case is the first time that any tattooist has suggested to me that I can't license my likeness without getting permission of the tattooists who inked my tattoos. No tattooist has ever told me I needed their permission to be shown with my tattoos, even when it was clear I was a public basketball player." (James Decl., Dkt. # 95-2, ¶ 11.)

- "I have dozens of tattoos inked by numerous tattooists, and none of them ever told me I needed their permission to show my tattoos, even as a public basketball player who regularly appears in media." (Green Decl., Dkt. # 95-4, ¶ 13.)

3

The Players' tattoos inked by other tattoo artists are not at issue in this case and are most likely *not* registered copyrights. Further, the issue of whether these other tattoo artists told the Players they needed the tattoo artists' permission to show their tattoos is also irrelevant because Mr. Hayden is not asserting any claims against the *Players* for doing anything without his permission. Thus, any facts related to procuring those unrelated tattoos are not of consequence in determining any claims or defenses in this case. They are not relevant and should be excluded. Fed. R. Evid. 401, 402. Moreover, even if the Court finds them relevant, they would be more prejudicial than probative and should be excluded under Federal Rule of Evidence 403.

In addition, the Players made several speculative statements about Mr. Hayden's state of mind and his intentions related to the tattoo works at issue:

- "Mr. Hayden must have understood that I regularly appeared on television and in other media." (Thompson Decl., Dkt. # 95-3, ¶ 8, *see also* ¶ 12.)

- "It was clear to me that he understood that was my job, that I was a former teammate of Mr. James, and that I regularly appeared on television and in different forms of media." (Green Decl., Dkt. # 95-4, ¶ 9, *see also* ¶ 14.)

The Players made these claims with no factual basis—they have no way of knowing Mr. Hayden's state of mind or intentions. The Players' speculation on these facts is thus not relevant and, at minimum, more prejudicial than probative. They should be excluded under Federal Rules of Evidence 401, 402, and 403, and Take-Two should be precluded from relying on them.

The Players also make speculative claims about how others may view Mr. Hayden's works and other peoples' expectations in the tattoo industry:

- "There is no way anyone would be able to make out my tattoo's design when I'm wearing my jersey." (Thompson Decl., Dkt. # 95-3, ¶ 10.)

- "If this lawsuit were successful, it would change that expectation, and make it very difficult for people like me, who enjoy getting tattoos, to continue to get them without worrying that they will have continuing obligations to their tattooist simply because they want to show their body as it looks with their own tattoos." (Green Decl., Dkt. # 95-4, ¶ 14.)

The Players are again speculating and have no factual basis for these claims. They should thus be excluded from testifying to these unfounded opinions and Take-Two should be precluded from relying on them at trial, as they are not relevant and more prejudicial than probative. Fed. R. Evid. 401, 402, 403.

Accordingly, Mr. Hayden respectfully moves to exclude the Player Declarations in full, as they are improper hearsay, and moves to preclude Take-Two from introducing them, referring to them, or otherwise relying on them at trial. Fed. R. Evid. 801, 802. And if Take-Two calls the Players to testify at trial, Mr. Hayden also respectfully moves to preclude them from testifying to the improper opinions and statements identified above, as they are not relevant, without basis, and, at minimum, more prejudicial than probative. Fed. R. Evid. 401, 402, 403.

### C.     Mr. James', Mr. Thompson's, and Mr. Green's deposition responses to improper leading questions should be excluded.

To the extent Take-Two attempts to reference, introduce, or otherwise rely on the deposition testimony elicited during Take-Two's examination of the Players in lieu of calling them as witnesses at trial, Mr. Hayden objects to certain testimony elicited in response to improper leading questions from Take-Two's counsel. The Federal Rules of Evidence preclude this kind of leading examination at trial, and Take-Two should not be permitted to side-step this rule simply because the questions were asked during a deposition. Fed. R. Evid. 611(c).

During each of the Players' respective depositions, Take-Two's counsel asked numerous, highly suggestive, leading questions on redirect. For instance, during Mr. Thompson's deposition, Take-Two's counsel asked, "My question to you, Mr. Thompson, is, do you wear different types of basketball jerseys?  In other words, are some kind of cut with a V, and do some have kind of a round neck at the top, for example?" (Ex. A, Thompson Dep. at 102:21-25). Further, during Mr. James' deposition, Take-Two's counsel similarly asked leading questions such as, "Is it fair to say that your tattoos are very personal about how you want to be seen to the world?" (Ex. B, James Dep. at 118:18-20). At Mr. Green's deposition, Take-Two's counsel asked, "And the basketball player is supposed to be an image of you, correct?" (Ex. C, Green Dep. at 148:20-21). These are just a few of the leading questions Take-Two's counsel asked in their redirect examinations of the Players.

What is more, on redirect, **Take-Two's counsel read nearly every paragraph of the Players' Declarations into the record verbatim, then asked, for example, "Did I read that accurately?"** (*Id.* at 152:12).Or, **"Was what I read true?"** (*Id.* at 152:14). Mr. Hayden's counsel repeatedly objected to Take-Two counsel's overtly leading and highly improper questions. This tactic was a transparent attempt to backdoor the Player Declarations into the record (as noted above, they are rank hearsay and manifestly inadmissible), since Take-Two is choosing not to call the Players to testify in person. Mr. Hayden objects to this tactic and moves to exclude this testimony from being used at trial.

Federal Rule of Evidence 611(c) prohibits leading questions at trial, particularly from the party who calls the witness. *See* Fed. R. Evid. 611(c); *see also U.S. v. Kuehne*, 547 F.3d 667, 692 (6th Cir. 2008) (applying Rule 611(c) to require prohibiting the use of leading questions on direct examination with limited exceptions). Take-Two should not be allowed to circumvent this rule

by using this deposition testimony at trial. The vast majority of the questions Take-Two asked on redirect consisted of either improper leading questions or improper verbatim reading of the Players' Declarations (to which Mr. Hayden's counsel repeatedly objected). (*See* Ex A, Thompson Dep. at 93:9-108:5; Ex. B, James Dep. at 106:9-129:1; Ex. C, Green Dep. at 132:5-179:23.) Take-Two counsel was free to ask the Players proper questions on the topics in their declarations, but Take-Two counsel chose to read the declarations verbatim into the record—this is improper. Accordingly, Mr. Hayden respectfully moves to exclude the deposition testimony elicited from leading questions asked during Take-Twos' examination of Messrs. James, Green, and Thompson should Take-Two attempt to submit this testimony at trial. Fed. R. Evid. 611(c).

## II.  MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING THIRD-PARTY DECLARATIONS FROM OTHER LITIGATIONS

Take-Two may attempt to reference, introduce evidence, testify, or elicit testimony about third-party declarations and deposition testimony from other tattoo artists from other litigations (*e.g.*, *Solid Oak Sketches, LLC v. 2K Games et al.* or *Alexander v. Take-Two Interactive Software, Inc., et al.*). Take-Two has referenced these third-party declarations (from Thomas Ray Cornett, DeShawn Morris, Justin White, and Gary Glatstein, Exs. 3–5, 7 to Jablonski Op., Dkt. # 95-10) and deposition testimony (*e.g.*, from Catherine Alexander, Ex. 8 to Jablonski Op.) from these other litigations in its Motion for Summary Judgment (*see, e.g.*, Dkt. #95), and its experts have cited them in their reports (*see, e.g., id.* at pp. 6–7). For one example, Take-Two has relied on these litigation-driven declarations and deposition testimony from third-party tattoo artists submitted in other litigations to improperly try to establish *Mr. Hayden's* intentions or state of mind when he inked the tattoos at issue in this case and to try to establish tattoo industry "customs." (*See, e.g., id.*)

7

These third-party declarations, however, fall squarely within the hearsay rule and should be excluded. Fed. R. Evid. 801, 802. The declarations are out-of-court statements (submitted in a different proceeding to which Mr. Hayden was not a party) that Take-Two may offer in evidence to prove the truth of the matter asserted in the declarations. *See* Fed. R. Evid. 801. Third-party declarations are "classically categorized as hearsay" because they would not be subject to cross-examination at trial. *Weinstein v. Siemens*, 756 F. Supp. 2d 839, 849 (E.D. Mich. 2010). And likewise, deposition testimony, even where the witness is unavailable for trial, is inadmissible hearsay when the party did not have an opportunity to cross-examine the witness. *See Peppers v. Washington County, Tennessee*, 686 Fed. Appx. 328, 332 (6th Cir. 2017); *see also* Fed. R. Evid. 804(b)(1). Mr. Hayden was not a party to the *Alexander v. Take-Two* litigation and was not present at the deposition of Catherine Alexander. This is sufficient to preclude the third-party declarations and deposition testimony from being used or relied on in any way at trial.

Moreover, the opinions and statements of these third-party tattoo artists are not relevant to the claims and defenses in this case and thus should also be excluded under Federal Rule of Evidence 401. The opinions and statements from third-party tattoo artists about tattoos not at issue in this case are of no consequence in determining this action. Accordingly, they are not relevant and should be excluded. *See* Fed. R. Evid. 401, 402. Moreover, the opinions and statements from third-party tattoo artists about purported tattoo industry norms are neither relevant nor properly submitted expert testimony under Federal Rule of Civil Procedure 26. Take-Two did not identify any of these third-party tattoo artists as experts under Rule 26, so Take-Two should not be permitted to rely on these opinions about purported tattoo industry standards at trial. At minimum, allowing this third-party testimony at trial would be more prejudicial than probative and thus should also be excluded under Federal Rule of Evidence 403.

Mr. Hayden thus respectfully moves to preclude Take-Two from referencing, introducing evidence, testifying, or eliciting testimony about these third-party declarations and deposition testimony from other litigations.  All this information, to the extent Take-Two attempts to introduce it at trial, should be excluded.

### III.    MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING THE VENETIAN RESORT'S LOGO

2K Games, Inc. and Take-Two Interactive Software, Inc. (collectively, "Take-Two") may attempt to reference, introduce evidence, testify, or elicit testimony about a so-called "Venetian Resort logo," in particular, an image from a deck of playing cards allegedly from the "Venetian Resort" [1] (Ex. H) and a trademark registration for said Venetian Resort (Ex. I). This purported evidence is neither relevant nor has it been properly authenticated. It should be excluded under each of Fed. R. of Evid. 403 and 901(a) .

In Take-Two's Motion for Summary Judgment, Take-Two claimed that Mr. Hayden copied the Venetian Resort logo in creating his asserted Lion tattoo. (Dkt. # 95, p.28.)  Take-Two's reference to the Venetian Resort logo was to challenge to the originality of one of the Asserted Tattoos, which has now been adjudicated in this Court's Summary Judgment Opinion (Dkt. #193, p. 9.): "[T]he Court finds that the Plaintiff's works are original and entitled to protection… Now, the burden shifts to Defendants – whether there is actionable copying in light of their defenses." (*Id.*)  Neither the referenced trademark registration nor ebay listing for the deck of cards is relevant in any way to the remaining issue of "whether there is actionable copying" of Mr. Hayden's Tattoos.  Based on its clear irrelevance to the remaining issues in the case, any attempt by Take-

---

[1] Take-Two counsel used an image of an auction listing on eBay.com (unrelated to Mr. Hayden) for a deck of Venetian playing cards as an exhibit for the deposition of Mr. Hayden.

Two to offer this "evidence" at trial would manifestly be more prejudicial than probative and, thus, it should be excluded under Fed. R. Evid. 401 and 403.

Furthermore, Take-Two has failed to authenticate the Venetian Resort trademark or the deck of cards from the eBay listing as the image that Mr. James reportedly provided Mr. Hayden when Mr. Hayden inked the Lion tattoo.  "[T]he Federal Rules of Evidence require authentication or identification of items offered into evidence. The burden is on the proponent to produce 'evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Swartz v. DiCarlo*, No. 1:12-cv-3112, 2018 WL 10483103, *1 (N.D. Ohio Sep. 13, 2018) (J. Boyko) (*quoting* Fed. R. Evid. 901(a)). Although Mr. James was deposed, Take-Two counsel did not show him either image (the deck of cards or the Venetian logo) or ask him whether they are the images he provided to Mr. Hayden. Moreover, Mr. Hayden has testified that the images in the exhibits looked ***different*** than the image Mr. James provided him, thereby confirming that they were not the same. (Ex. D, Hayden Dep., 85:22–88:9, 216:10–217:14.).  *See United States v. Craig*, 953 F.3d 898, 902 (6th Cir. 2020) (excluding video of masked individual where party "failed to introduce evidence that [the defendant] was the masked individual in the video" and "the only witness to whom the video was shown, denied that he was the masked individual").

Thus, Take-Two should be precluded from referencing, introducing evidence, testifying, or eliciting testimony about the so-called "Venetian Resort logo," including, in particular, the image from a deck of playing cards allegedly from the Venetian Resort (Ex. H) and a trademark registration for the Venetian Resort (Ex. I).

## IV.   MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING POLICY IMPACT OF AN INFRINGEMENT FINDING

Take-Two has indicated in its briefing and elsewhere that it may present testimony and evidence at trial about the purported negative consequences a ruling in Mr. Hayden's favor

would have on the markets for tattoos and video games and the public in general. (*See, e.g.*, Jablonski Op., Dkt. # 95-10, ¶¶ 41–45.) As one example, Take-Two may try to submit evidence and testimony that an infringement finding will harm Take-Two's and other video game makers' ability to create video games, including the NBA 2K franchise. As another example, Take-Two may try to submit evidence and testimony that an infringement finding will harm the tattoo industry or even the public's ability as a whole to express themselves. This, however, is all pure speculation and should not be allowed into evidence or to impact the jury's decision on liability or damages. It is simply not relevant, is speculation, and is more prejudicial than probative. It is thus excludable under Federal Rule of Evidence 401, 402 and/or 403.

## V.  MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING MR. HAYDEN'S OWN TATTOOS

Take-Two has indicated in its briefing and elsewhere that it may present testimony and evidence at trial about Mr. Hayden's own tattoos and whether he has sought permission from other tattoos artists when he appears in public or shows himself in social media. (*See, e.g.*, Mot. for Summary J., Dkt. # 95, p. 7.) This testimony and evidence should be excluded because it is not relevant and is more prejudicial than probative. No one disputes, or indeed claims, that Mr. Hayden has been in a video game or anything similar to a video game. His practices with regards to appearing *in public* and *showing himself in social media* is not related to any claims or defenses in this case. And, again, this case is not about Mr. Hayden versus the Players (i.e., the tattoo recipients)—it is about a video game company that recreated the tattoos in a video game. This subject matter is thus excludable under Federal Rule of Evidence 401, 402 and/or 403.

## VI.  MOTION TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING ADVICE OF COUNSEL

Take-Two has waived any argument that its infringement is not willful because it relied on advice of counsel. Accordingly, Take-Two should not be permitted to submit evidence or

testimony supporting such a defense. Mr. Hayden served an interrogatory on this topic, asking, "Did You seek or obtain an opinion of counsel regarding the legal implications of the depiction of basketball players with the tattoos they bear in real life in NBA 2K Games and, if so, when did you seek and when did you obtain such an opinion?" (Ex. E, Excerpts of Take-Two's Interrogatory Responses, Response No. 10.) Take-Two's response to this interrogatory was, "Take-Two does not intend to rely on an opinion of counsel at this time." (*Id.*) Take-Two has not since amended its response to this interrogatory or produced any opinion of counsel. Moreover, during its 30(b)(6) depositions, Take-Two asserted attorney-client privilege and did not answer questions regarding the substance of any advice of counsel related to its copying. (*See, e.g.*, Ex. F, Argent Dep., 152:2–10, 177:12–179:25; Ex. G, Thomas Dep., 264:17–265:25.) Accordingly, Take-Two should be excluded from presenting evidence or testimony related to its reliance on advice of counsel in determining whether it believed its copying constituted copyright infringement. *See 01 Communique Laboratory, Inc. v. Citrix systems, Inc.*, No. 1:06-cv-00253, 2015 WL 13649574, at *3 (N.D. Ohio Apr. 17, 2015) (holding that a party cannot use "the attorney-client privilege as both a 'sword and shield,' which may lead to an inequitable result").

## VII.   MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. NINA JABLONSKI

Take-Two has indicated in its briefing and elsewhere that it may present the expert testimony of Dr. Nina Jablonski at trial.  Dr. Jablonski offers opinions on numerous subjects on behalf of Defendants in her report, including (1) the history of tattooing; (2) the relationship between client and tattoo artist; and (3) customs within the tattoo industry.  Previously, Plaintiff moved to exclude Dr. Jablonski's testimony from use at trial based on several grounds.  This Court granted that motion in part and denied it in part. (Opinion and Order, DKT #150.)  In that opinion, the Court stated that "Dr. Jablonski can speak to the history and growing popularity of tattoos

12

worldwide" and that "she may discuss the tattoo process generally and that the tattooist's client chooses and controls the content." (Id., at p. 5.)   However, this Court also stated that "it is inappropriate for Dr. Jablonski to testify about what tattooists and clients "expect" and "intend" after an "inking session" is completed." (Id., at p. 6.)   Finally, this Court held that Dr. Jablonski was not qualified in the areas of business, economics, or marketing to offer her views on the existence or likelihood of a market for licensing tattoos.

Expert testimony is not admissible unless it will be helpful to the factfinder.  (Opinion and Order, DKT #150, p.4).  Dr. Jablonski's remaining allowed testimony regarding the general process and culture of tattooing is only possibly relevant to the originality of the Asserted Tattoos. But this Court already determined that "Plaintiff's works are original and entitled to protection." (Summary Judgment Opinion, DKT #193, p. 9.) Take-Two may claim that it is also relevant to the nature of the works under the fair use doctrine, but this Court has already found that the Asserted Works are "without question, expressive and creative[.]" (Id. at p. 14.)

The only remaining issue in this case, apart from damages, is "whether there is actionable copying in light of [Take-Two's] defenses." (Id. at p. 9.) Dr. Jablonski's opinions regarding the history of tattooing and the relationship between the artist and their customer fails to assist the trier of fact on any of Take-Two's defenses, which include fair use, de minimis use, and implied license. The inclusion of Dr. Jablonski's testimony would be much more prejudicial than probative and is likely to confuse the jury as to what topics are at issue at trial and is therefore excludable under Fed. R. Evid 401, 403, 702, and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Accordingly, Plaintiff requests that Take-Two be precluded from referencing or eliciting testimony regarding Dr. Jablonski's opinions.

Dated: April 21, 2023

Respectfully submitted,

By: */s/ Andrew Alexander*
John Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Todd R. Tucker (Ohio Bar No. 0065617)
Andrew Alexander (Ohio Bar No. 0091167)
Josh A. Friedman (Ohio Bar No. 0091049)
Dustin Likens (Ohio Bar No. 0097891)
Brandon E. Brown (Ohio Bar No. 0097013)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
ttucker@calfee.com
aalexander@calfee.com
jfriedman@calfee.com
dlikens@calfee.com
bbrown@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2023, a copy of the foregoing was served on counsel of record via email.

_/s/ Andrew Alexander_____

One of the attorneys for Plaintiff