# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| JAMES HAYDEN,<br><br>                    Plaintiff,<br><br>        v.<br><br>2K GAMES, INC. and TAKE-TWO<br>INTERACTIVE SOFTWARE, INC.,<br><br>                    Defendants. | CASE NO. 1:17-cv-02635-CAB |

**DEFENDANTS 2K GAMES, INC. AND
TAKE-TWO INTERACTIVE SOFTWARE, INC.'S
OPPOSITION TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE**

## TABLE OF CONTENTS

I.  NBA PLAYERS' DECLARATIONS AND DEPOSITION TESTIMONY ................1

    A.  The NBA Players' Testimony is Admissible ........................................................ 1

    B.  The NBA Players' Declarations Are Admissible .................................................... 5

    C.  Take-Two's Questions of the NBA Players Were Not Leading............................ 7

II.  THIRD-PARTY DECLARATIONS FROM OTHER LITIGATIONS .....................9

    A.  The Tattooists' Statements Are Relevant to Multiple Issues in this Case ............. 9

    B.  The Tattooists' Statements Should Not Be Excluded as Hearsay ....................... 11

    C.  Plaintiff's Rule 403 and Rule 26 Challenges Should Be Denied........................ 13

III.  THE VENETIAN RESORT'S LOGO ...........................................................................13

    A.  Evidence of the Venetian Resort Logo is Relevant to Multiple Issues................ 14

    B.  Evidence of the Venetian Resort Logo is Properly Authenticated ...................... 15

IV.  POLICY IMPACT OF AN INFRINGEMENT FINDING ...........................................16

V.  MR. HAYDEN'S OWN TATTOOS .............................................................................17

VI.  ADVICE OF COUNSEL................................................................................................18

VII.  DR. NINA JABLONSKI'S TESTIMONY ...................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*16 Casa Duse, LLC v. Merkin*,
    791 F.3d 247 (2d Cir. 2015)....................................................................20

*Aalmuhammed v. Lee*,
    202 F.3d 1227 (9th Cir. 2000) ...............................................................20

*Bahamas Agr. Indus. Ltd. v. Riley Stoker Corp.*,
    526 F.2d 1174 (6th Cir. 1975) ..................................................................8

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006)....................................................................11

*Brod v. Gen. Publ'g Grp., Inc.*,
    32 F. App'x 231 (9th Cir. 2002) .............................................................20

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)................................................................................20

*Castle v. Kingsport Publ'g Corp.*,
    No. 19 Civ. 92, 2020 WL 7348157 (E.D. Tenn. Dec. 14, 2020)............15

*Chivers v. Central Noble Cmty. Schs.*,
    423 F. Supp. 2d 835 (N.D. Ind. 2006) ...................................................11

*Coach, Inc. v. D 4 L Apparel*,
    No. 11 Civ. 185, 2013 WL 489658 (W.D. Tex. Feb. 7, 2013) ..............16

*Deere & Co. v. FIMCO Inc.*,
    260 F. Supp. 3d 830 (W.D. Ky. 2017) ..............................................12, 13

*Durham Indus., Inc. v. Tomy Corp.*,
    630 F.2d 905 (2d Cir. 1980)....................................................................20

*Eli Rsch., LLC v. Must Have Info Inc.*,
    No. 13 Civ. 695, 2015 WL 6501070 (M.D. Fla. Oct. 22, 2015)............16

*Elyria-Lorain Broad. Co. v. Lorain J. Co.*,
    298 F.2d 356 (6th Cir. 1961) ...................................................................7

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
    122 F.3d 1211 (9th Cir. 1997) ................................................................15

*Est. of Smith v. Cash Money Recs., Inc.*,
 253 F. Supp. 3d 737 (S.D.N.Y. 2017) .................................................................11

*F.T.C. v. Amy Travel Serv., Inc.*,
 875 F.2d 564 (7th Cir. 1989) .............................................................................12

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*,
 499 U.S. 340 (1991) ...........................................................................................14

*Google LLC v. Oracle Am., Inc.*,
 141 S. Ct. 1183 (2021) ............................................................................5, 17, 20

*Harris v. J.B. Robinson Jewelers*,
 627 F.3d 235 (6th Cir. 2010) ...............................................................................2

*House v. Players' Dugout, Inc.*,
 No. 16 Civ. 594, 2021 WL 4898071 (W.D. Ky. Oct. 20, 2021).......................7, 8

*Innovention Toys, LLC v. MGA Ent. Inc.*,
 No. 07 Civ. 6510, 2012 WL 5398476 (E.D. La. Nov. 4, 2012)............................6

*Keller Logistics Grp, Inc. v. Navistar, Inc.*,
 No. 19 Civ. 735, 2021 WL 4528990 (N.D. Ohio Apr. 29, 2021) .........................2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 387 F.3d 522 (6th Cir. 2004) .............................................................................19

*Lott v. Tradesmen Int'l, Inc.*,
 No. 09 Civ. 183, 2013 WL 245127 (E.D. Ky. Jan. 22, 2013) ..............................9

*Massa v. Schleeter*,
 No. 13 Civ. 1132, 2014 WL 546829 (N.D. Ohio Feb. 10, 2014) .........................6

*Melanie Howard Music, Inc. v. Warner Bros. Recs., Inc.*,
 No. 08 Civ. 0979, 2009 WL 3784611 (M.D. Tenn. Nov. 10, 2009) ...................21

*Peppers v. Washington Cnty., Tenn.*,
 686 Fed. Appx. 328 (6th Cir. 2017).....................................................................13

*Photographic Illustrators Corp. v. Orgill, Inc.*,
 953 F.3d 56 (1st Cir. 2020)..................................................................................10

*Psychopathic Recs., Inc. v. Anderson*,
 No. 08 Civ. 13407, 2009 WL 2591385 (E.D. Mich. Aug. 24, 2009) ...................14

*Roy v. Austin Co.*,
 194 F.3d 840 (7th Cir. 1999) ................................................................................8

*Sem-Torq, Inc. v. K Mart Corp.*,
  936 F.2d 851 (6th Cir. 1991) .........................................................................14, 15

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
  449 F. Supp. 3d 333 (S.D.N.Y. 2020)........................................................................4

*Sperberg v. Goodyear Tire & Rubber Co.*,
  519 F.2d 708 (6th Cir. 1975) ...............................................................................9, 17

*Stryker Corp. v. XL Ins. Am.*,
  No. 01 Civ. 157, 2007 WL 172401 (W.D. Mich. Jan. 18, 2007)..............................6

*Stuart v. Wilson*,
  442 F.3d 506 (6th Cir. 2006) ....................................................................................12

*Swartz v. DiCarlo*,
  No. 12 Civ. 3112, 2018 WL 10483103 (N.D. Ohio Sept. 13, 2018) ................16, 17

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014)........................................................................................17

*U. S. v. Barlow*,
  693 F.2d 954 (6th Cir. 1982) ....................................................................................12

*U. S. v. Brawner*,
  173 F.3d 966 (6th Cir. 1999) ......................................................................................4

*U. S. v. Dimora*,
  843 F. Supp. 2d 799 (N.D. Ohio 2012)....................................................................13

*U. S. v. Shoupe*,
  548 F.2d 636 (6th Cir. 1977) ......................................................................................9

*United States v. Craig*,
  953 F.3d 898 (6th Cir. 2020) ....................................................................................16

*United States v. Laster*,
  258 F.3d 525 (6th Cir. 2001) ....................................................................................12

*United States v. Wandahsega*,
  924 F.3d 868 (6th Cir. 2019) ....................................................................................11

*United States v. Williams*,
  737 F. App'x 235 (6th Cir. 2018) ...............................................................................1

*Vaughan v. City of Shaker Heights*,
  No. 10 Civ. 609, 2015 WL 1650202 (N.D. Ohio Apr. 14, 2015)...............................7

*Weinstein v. Siemens,*
    756 F. Supp. 2d 839 (E.D. Mich. 2010)................................................................13

*Wilchombe v. TeeVee Toons, Inc.*,
    555 F.3d 949 (11th Cir. 2009) .....................................................................10, 11

*Woods v. Lecureux*,
    110 F.3d 1215 (6th Cir. 1997) .................................................................................8

**Statutes**

15 U.S.C. § 1057(f) ....................................................................................................16

17 U.S.C. § 102(a) ........................................................................................................3

17 U.S.C. § 103(a) ................................................................................................14, 15

17 U.S.C. § 107 ..........................................................................................................17

17 U.S.C. § 411(b) .....................................................................................................15

**Rules**

Fed. R. Civ. P. 26 ......................................................................................................13

Fed. R. Evid. 403 ......................................................................................................13

Fed. R. Evid. 602 ....................................................................................................4, 5

Fed. R. Evid. 701 .................................................................................................2, 13

Fed. R. Evid. 801(d) ...................................................................................................6

Fed. R. Evid. 807 .........................................................................................6, 11, 13

Fed. R. Evid. 902 ......................................................................................................16

Take-Two Interactive Software, Inc., and 2K Games, Inc. (collectively, "Take-Two")

oppose James Hayden's ("Plaintiff") Omnibus Motions *in Limine*. Dkt. 212 ("Pl.'s Br.").

## I.    NBA PLAYERS' DECLARATIONS AND DEPOSITION TESTIMONY

In support of its motion for summary judgment, Take-Two attached declarations from the

NBA players on whom the tattoos at issue were inked, LeBron James, Tristan Thompson, and

Danny Green (the "NBA Players"). Dkt. 95-2–4 (the "NBA Player Declarations"). Although

Plaintiff knew of the NBA Players before this lawsuit and Take-Two included them on its initial

disclosures, Plaintiff moved to strike the declarations. This Court denied that motion. Dkt. 146.

Instead, in a "quest for the truth," this Court permitted Plaintiff to depose the NBA Players.

Realizing that the NBA Players' declarations and testimony undermines his claims, Plaintiff

seeks a second bite at the apple and moves to exclude evidence, testimony, or argument

concerning the testimony and declarations. This critical evidence should not be excluded.

### A.    The NBA Players' Testimony is Admissible

**Statements about the NBA Players' Experiences**. Plaintiff seeks to exclude as

improper opinions, irrelevant, and unduly prejudicial, testimony by the NBA Players that the

Tattoos are part of their likeness that they are free to use, and that no tattooist has ever told them

otherwise. Plaintiff wrongly claims that this testimony consists of "legal opinions related to their

'rights' in Mr. Hayden's works and their 'rights' in licensing those works," and "claims

suggesting certain industry standards." Pl.'s Br. 2–3. *First*, the statements describe the NBA

Players' personal knowledge and first-hand experiences with their own tattoos as percipient

witnesses, which is "not opinion testimony." *See United States v. Williams*, 737 F. App'x 235,

241 (6th Cir. 2018). For example, many of the statements are factual descriptions of the NBA

Players' experiences as tattooed professional basketball players. Pl.'s Br. 3 (quoting Mr.

James: "[i]n the eighteen years since I've been playing professional basketball, this case is the

first time that any tattooist has suggested to me that I can't license my likeness without getting permission of the tattooists who inked my tattoos," and a similar statement by Mr. Green). Others are the NBA Players' own understanding of their own Tattoos on their own bodies. *Id.* (quoting Mr. Green: "As someone who regularly gets tattoos, it is my understanding that these tattoos were mine to do with what I wanted").  This is not opinion testimony.

**Second**, even if these statements were opinions, they are admissible lay opinions because they are "rationally based" on the NBA Players' "perception." *See* Fed. R. Evid. 701(a).  The Sixth Circuit "favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Keller Logistics Grp, Inc. v. Navistar, Inc.*, No. 19 Civ. 735, 2021 WL 4528990, at *3–4 (N.D. Ohio Apr. 29, 2021) (truckers' opinions of the value of trucks based on their firsthand observations permissible); *see Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) (witness's testimony within the realm of ordinary experience).  Here, the NBA Players were deposed and explained that the basis for their statements is their personal knowledge being inked.  Dkt. 95-3 (Green Decl.) ¶ 6 (beliefs based on the fact that he regularly gets tattoos); Dkt. 95-4 (Thompson Decl.) ¶¶ 11–12 (explaining personal experience with tattoos from multiple tattooists); Dkt. 95-2 (James Decl.) ¶ 10 (explaining belief in his ability to be shown as he appears); *see also* Ex. B (James Dep. Tr.) 109:20–110:2 (has over 20 tattoos and has worked with tattooists other than Mr. Hayden).[1]

**Third**, the NBA Players' testimony that the Tattoos are part of their likenesses and that no tattooist has limited their ability to use or show their Tattoos is relevant to Take-Two's license

---

[1]  This is entirely unlike Take-Two's Motion *in Limine* No. 5 to preclude Plaintiff from testifying about his speculation about the tattoo industry, not his perception.  *See* Dkt. 212 (Take-Two's *MILs*) at 13–15.  As Take-Two explained in its Motion, "Plaintiff's beliefs about the 'common' practice 'in virtually every kind of commissioned art,' are based on his speculation about the entire tattoo and art industry, ***not his perception***," and his "legal conclusions regarding licensing in the tattoo industry," would be improper "even by a properly disclosed expert."  *Id.* at 14 (emphasis added).

and fair use defenses.  *See* Dkt. 162 (Defs.' Suppl. Rpl. Summ. J.) at 4–17; Dkt. 193 (Summ. J. Op.) at 13 (explaining Tattoos "hold personal meaning for the three NBA Players").  So is the fact that the NBA Players, heavily tattooed professional athletes (including tattoos inked by tattooists other than Plaintiff), have ***never*** been told that they could not license their tattoos without permission; this is relevant to industry standards and norms.  Dkt. 162 (Defs.' Suppl. Rpl. Summ. J.) at 14–17; Dkt. 193 (Summ. J. Op.) at 17 (finding that "anything that colors that conduct, including the parties' expressions of intent," and "the greater context that surrounds their agreement," is relevant to license).  The probative value of these statements outweighs any prejudicial effect, the latter of which Plaintiff has not even identified.   Plaintiff's assertion that the statements are not relevant because they were inked by different tattooists (who Plaintiff speculates might not own copyright registrations, Pl.'s Br. 4)[2] misses the point, because the fact that ***other*** tattooists were ***not*** limiting the NBA Players' ability to license their likenesses under normal market conditions undermines Plaintiff's unsupported and self-serving novel claims that there is a market.  Dkt. 162 (Defs.' Suppl. Rpl. Summ. J.) at 9–10.

Plaintiff's assertion that he is "not asserting any claims against the *Players*," Pl.'s Br. 4, also misses the point because he *is* asserting that without his permission, the Players may not be shown in *NBA 2K* as they look in real life with their Tattoos showing despite the fact that every single player testified that he had authorized himself to appear in the game as he actually looks, *i.e.*, including his tattoos.  While Plaintiff may have made the tactical decision not to name the NBA Players as defendants, this cannot hide that the practical effect of his claim is that the NBA Players do not have the right to license their likeness to Take-Two without Plaintiff's permission.

---

[2]    This also mischaracterizes the requirements for copyright because "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression"; it does not depend on having filed a registration.  17 U.S.C. § 102(a).

**Statements Concerning the NBA Players' Appearance in Media**.  Plaintiff next moves to exclude as speculative, irrelevant, and prejudicial Mr. Thompson's and Mr. Green's statements that Mr. Hayden must have known they appeared in media.  Pl.'s Br. 4.  These statements are squarely within the NBA Players' personal knowledge and, thus, admissible.  *See* Fed. R. Evid. 602.  Each player specifically discussed with Mr. Hayden that they were professional NBA basketball players.  Ex. A (Green Tr.) 52:13–16 (testifying he gave Mr. Hayden tickets to attend his NBA games); Dkt. 101-4 (Thompson Decl.) ¶ 8 (stating he and Mr. Hayden "would discuss that I was a professional NBA basketball player for the Cleveland Cavaliers.").  Such statements are relevant to the existence of a license, as they show that despite knowing they were professional athletes, Mr. Hayden took no action to limit their use of the tattoos in media.  *See Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 340 (S.D.N.Y. 2020) (tattooists did not limit use of tattoos even though they knew players were likely to appear "in public, on television, in commercials, or in other forms of media"); Dkt. 193 (Summ. J. Op.) at 16 (Plaintiff not objecting to NBA Players "appearing in public, on stage or in a game, or being photographed, or even appearing on television").  Plaintiff has not identified any unfair prejudice outweighing probative value.  *See U. S. v. Brawner*, 173 F.3d 966, 970–71 (6th Cir. 1999) (evidence that hurts a party's case is "obviously prejudicial" but "not ***unfairly*** prejudicial" (emphasis added)).  In fact, Plaintiff has argued elsewhere that Mr. Hayden's knowledge and subjective intent *is* relevant.  *See* Dkt. 109 (Pl.'s Opp. Defs.' Summ. J.) at 20.

**Statements Concerning the Visibility of Mr. Thompson's Tattoo**.  Plaintiff also moves to exclude as speculative, irrelevant, and prejudicial statements about how the Tattoos are seen, quoting Mr. Thompson.  Pl.'s Br. 4 (quoting Mr. Thompson: "There is no way anyone would be able to make out my tattoo's design when I'm wearing my jersey.").  Mr. Thompson,

and all of the NBA Players, have personal knowledge of their own tattoo on their own bodies.
Thus, the statement is not speculative.  Fed. R. Evid. 602.  Further, tattoo visibility is relevant at
least to 1) whether anyone purchased the game for the Tattoos because it is implausible that
anyone would purchase *NBA 2K* for Tattoos that they could not see on Mr. Thompson, 2) the
third fair use factor, and 3) damages.  The relevance outweighs any unfair prejudice.

**Statements Concerning Expectations of Tattooed Athletes**.  Plaintiff also moves to
exclude as speculative, irrelevant, and unfairly prejudicial Mr. Green's statement about the
impact this lawsuit would have on expectations of tattooed people like him.  Pl.'s Br. 4–5.  Mr.
Green knows what his expectations are, and the impact it would have on him if his Tattoos,
permanently inked on his body, were controlled by someone else, and it is therefore not
speculative.  Fed. R. Evid. 602.  And such testimony is relevant at least to market harm, as well
as license, to the extent it shows industry practice.  *See Google LLC v. Oracle Am., Inc.*, 141 S.
Ct. 1183, 1208 (2021) (copyright would harm the public by increasing costs and creating other
difficulties for the creation of new works).  The relevance outweighs any prejudice.

**B.      The NBA Players' Declarations Are Admissible**

Plaintiff also moves to exclude as hearsay the NBA Player Declarations, which Plaintiff
introduced as exhibits during the NBA Players' depositions.  Pl.'s Br. 1–2.  This Court ***already***
denied Plaintiff's motion to exclude these declarations, Dkt. 146, and it should deny Plaintiff's
second attempt to exclude them.  ***First***, the NBA Player Declarations (if hearsay), are admissible
under the residual exception, as they have "sufficient guarantees of trustworthiness" that are
"more probative on the point for which it is being offered than any other evidence."  Fed. R.
Evid. 807; *see Massa v. Schleeter*, No. 13 Civ. 1132, 2014 WL 546829, at *2 (N.D. Ohio Feb.
10, 2014) (voluntary eyewitness statement fell under the residual exception).  Here, the
declarations are from the players themselves, who were actually present when the Tattoos were

5

inked on their bodies and who were extensively cross-examined about them during their

depositions.  *See* Ex. A (Green Tr.) 140:5–141:8, 142:20–144:10 (testifying to his first-hand

experience getting inked by Plaintiff); Ex. B (James Tr.) 34:12– 23 (same); Ex. C (Thompson

Tr.) 44:3–10, 45:7–15 (same).  As such, they are admissible.  *See Stryker Corp. v. XL Ins. Am.*,

No. 01 Civ. 157, 2007 WL 172401, at *4 (W.D. Mich. Jan. 18, 2007) (deposition offered a

guarantee of trustworthiness, such that "admission of this evidence supports the general purpose

of the Rules of Evidence"); *Innovention Toys, LLC v. MGA Ent. Inc.,* No. 07 Civ. 6510, 2012

WL 5398476, at *3 (E.D. La. Nov. 4, 2012) (declaration admissible because defendants'

"opportunity to cross-examine" declarant rendered "the reliability and trustworthiness issues that

often come with hearsay statements [] not present").  The depositions explicitly confirmed the

declarations' veracity.  *See* Dkt. 162-02–04 (NBA Player Dep. Tr. Excerpts).  And the

declarations are highly probative, as they go directly to Take-Two's fair use and license

defenses.  *See* Dkt. 162 (Defs.' Suppl. Rpl. Summ. J.).

    ***Second***, pursuant to Federal Rule of Evidence 801(d), the NBA Player Declarations are

not hearsay.  That Rule provides that where a "declarant testifies and is subject to cross

examination about a prior statement," the statement is not hearsay where it is "consistent with the

declarant's testimony and is offered [] to rebut an express or implied charge that the declarant

recently fabricated it or acted from a recent improper influence or motive in so testifying."  The

NBA Players testified and were cross examined extensively by both Parties during their

depositions.  *See*, *e.g.*, Dkt. 162-02–04 (NBA Player Dep. Tr. Excerpts).  Plaintiff has indicated,

in both previous motions and in his motion *in limine*, that he intends to argue that the NBA

Players' deposition testimony was based on an improper motive.  Dkt. 156 at 1 (asserting the

NBA Players "are strongly biased in favor of Take-Two due to financial self-interest"); Pl.'s Br.

at 2 (same).[3]  Take-Two should be permitted to rely on these declarations to show that the NBA

Players' deposition testimony, which Take-Two intends to present at trial, is consistent with their

prior sworn statements.  *See Vaughan v. City of Shaker Heights*, No. 10 Civ. 609, 2015 WL

1650202, at *16 (N.D. Ohio Apr. 14, 2015) (prior hearing testimony usable at trial where witness

sat for a deposition and was cross examined by both parties' counsel).

## C.    Take-Two's Questions of the NBA Players Were Not Leading

Plaintiff also seeks to exclude deposition testimony by the NBA Players on the basis that

Take-Two's counsel allegedly asked leading questions.  Pl.'s Br. 5–7.  This argument fails for

multiple reasons.  ***First***, "a party who has not objected to a leading question at the taking of a

deposition may not subsequently object to it when the deposition is introduced at the trial."

*Elyria-Lorain Broad. Co. v. Lorain J. Co.*, 298 F.2d 356, 360 (6th Cir. 1961); *House v. Players'*

*Dugout, Inc.*, No. 16 Civ. 594, 2021 WL 4898071, at *9 (W.D. Ky. Oct. 20, 2021) ("Objections

. . . that are waivable include leading questions . . . ." (citing *Elyria-Lorain*, 298 F.2d at 360));

*see also Roy v. Austin Co.*, 194 F.3d 840, 844 (7th Cir. 1999)).  Here, Plaintiff did not object to a

single question as leading (or even object to "form") during Mr. Thompson's and Mr. James's

depositions.  *See* Pl.'s Br. Exs. A & B.  As a result, Plaintiff waived his leading objection as to

these two players.  This waiver of objection is especially important because there was no

opportunity to re-ask the question in a different form now that the deposition has concluded.  *See*

---

[3]    Plaintiff contends that the NBA Players are biased because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Pl.'s Br. 2.  Plaintiff deposed the NBA Players on this subject, but the NBA Players actually testified that they
were impartial.  Mr. James testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Ex. B (James Tr.) 73:3–8.
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Ex. A (Green Tr.) 87:16–90:15.  Moreover, far from being biased against Plaintiff,
Mr. Green testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.*, 15:8–17:3, which certainly does not suggest bias in
favor of Take-Two.  Finally, Mr. Thompson testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Ex. C (Thompson Tr.) 36:22–37:1.  All of these statements rebut Plaintiff's
assertions and are proper.

*House*, 2021 WL 4898071, at *9 (objections must be made during deposition, "otherwise counsel would be encouraged to wait until trial before making any objections . . . ." (quoting *Bahamas Agr. Indus. Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1181 (6th Cir. 1975)).

**Second**, the questions asked by Take-Two's counsel were not leading.  "It is elementary that a leading question is one that suggests an answer," *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997), such as where a witness is "improperly led . . . into giving testimony that was not [their] own." *Roy v. Austin Co.*, 194 F.3d 840, 845 (7th Cir. 1999).  For example, in *Roy*, the following were **not** leading questions: "Were you offended or insulted by Mr. Roy's conduct?"; "Had you ever been subjected to conduct like this . . . ?"; and "Did you tell Mr. Melsop in the telephone call that . . . ?"  194 F.3d at 845.  The court held that to "say that when he was asked [these questions] . . . he was being improperly led by . . . counsel into giving testimony that was not his own **is silly**." *Id.* at 844–45 (emphasis added).  Even if these questions were "no more than mildly leading," the court also found the witness "was an intelligent witness," and would not be misled.  *Id.*  Here, Plaintiff points to questions that were similarly non-leading: "do you wear different types of basketball jerseys?"; "are some kind of cut with a V, and do some have kind of a round neck at the top, for example?"; "the basketball player is supposed to be an image of you, correct?"; "Is it fair to say that your tattoos are very personal about how you want to be seen to the world?"; "Did I read that accurately?"; and "Was what I read true?"  Pl.'s Br. 5–6.

**Third**, even if the Court determines that Plaintiff did not waive objections and that the questions were leading, "[i]t is well recognized that the use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court," *U. S. v. Shoupe*, 548 F.2d 636, 641 (6th Cir. 1977), and may be permitted absent "prejudice or clear injustice." *Lott v. Tradesmen Int'l, Inc.*, No. 09 Civ. 183, 2013 WL 245127, at *2 (E.D. Ky. Jan. 22, 2013).  Here,

each of the NBA Players was extensively examined by Plaintiff's counsel on the subject matter of their declarations.  Take-Two would suffer "prejudice or clear injustice" if Plaintiff's counsel's examination on the NBA Players' declarations were allowed but Take-Two's counsel's examination on the same subject were excluded.[4]  It should not go unnoticed that Plaintiff sought to take the NBA Players' depositions and now wants to limit the Court's and the jury's ability to see and hear what the NBA Players said.

At bottom, Plaintiff seeks to prevent the jury from hearing directly from the NBA Players about what happened during each of their tattoo sessions.  This is the very antithesis of the "quest for the truth" to which this Court set the parties, Dkt. 146 at 2, and it should be rejected.

## II.     THIRD-PARTY DECLARATIONS FROM OTHER LITIGATIONS

Plaintiff seeks to exclude "third-party declarations and deposition testimony from other tattoo artists from other litigations," Pl.'s Br. 7–9, but: (1) the statements are relevant to multiple issues, (2) they are not hearsay because they reflect what others tell their clients (not whether what was said was true), and (3) should be permitted under the residual hearsay exception.

### A.     The Tattooists' Statements Are Relevant to Multiple Issues in this Case

*First*, industry practice is evidence of Take-Two's affirmative defense that it was licensed to depict the tattoos.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (music industry practice determined implied license); *Photographic Illustrators Corp. v. Orgill, Inc.*, 953 F.3d 56, 65 (1st Cir. 2020) ("nature of the business" made it "obvious" that plaintiff wanted defendant to use the asserted work, *i.e.*, nature of the work implied a license).

---

[4]     At a minimum, the Court should address Plaintiff's arguments after all deposition designations, counter-designations, and objections have been submitted to the Court so that the Court knows what the Parties intend to play for the jury and what the objections to the individual questions and answers are, as opposed to Plaintiff's broad-brush attempt to preclude all testimony now.  *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders *in limine* which exclude broad categories of evidence should rarely be employed").

Plaintiff's sweeping request seeks to preclude precisely such evidence, including declarations from two tattooists who, like Plaintiff, inked LeBron James, one of the NBA Players:

- Thomas Cornett, a tattooist with decades of experience, stated he has tattooed numerous athletes and that he "would never tell an athlete that he or she needs my permission to display their tattoos when they appear in any media."  Dkt. 95-10 at Ex. 3 ¶ 8.

- DeShawn Morris, AKA Shawn Rome, a tattooist who has inked multiple tattoos on LeBron James, knew they would be displayed if Mr. James appeared in media and that he "did not discuss any limitations on [Mr. James'] use of the tattoos."  *Id.* Ex. 4 ¶ 11.

- Justin Wright, a tattooist with over ten years of experience who inked multiple tattoos on LeBron James, stated that he knew Mr. James likely would appear in public and that he intended the tattoos to become part of Mr. James' likeness.  *Id.* Ex. 5 ¶ 8.

- Gary Glatstein, a tattooist with over thirty years of experience, stated that a "client comes in, pays for a tattoo, and leaves when the tattoo is finished" and that once the transaction ends, "the client can go about his life with no strings attached."  *Id.* Ex. 7 ¶ 10.

- Catherine Alexander, who began tattooing in 2001, testified that she has never told a client that they needed her permission before being photographed, being depicted on a TV show, being shown on a t-shirt or merchandise, or appearing in a video game, with their tattoos.  *Id.* Ex. 8 at 65:2–66:8.

These statements are relevant to prove, among other things, that other tattooists who tattoo athletes without litigation-driven motives say they have not required permission for athletes to appear in video games.  *See* Dkt. 95-1 (Take-Two's Mem. Supp. Summ. J.) at 21–24.

**Second**, the statements are relevant to the fourth fair use factor, which considers whether a market for the use at bar is likely to develop.  Relevant to that analysis is past practice.  *See*

*Blanch v. Koons*, 467 F.3d 244, 258 (2d Cir. 2006) (admission that copyright owner had "never licensed any of her photographs for" the use by defendant weighed in favor of fair use); *Est. of Smith v. Cash Money Recs., Inc.*, 253 F. Supp. 3d 737, 752 (S.D.N.Y. 2017) (fourth factor favored fair use where "Plaintiffs never attempted to establish a market for licensed derivative uses . . . until Defendants used the recording on the Album").  That tattooists did not tell clients they required permission before appearing in media shows there is no potential market for Take-Two's use of tattoos.  *See id.*; *see also* Dkt. 95-1 (Take-Two's Mem. Supp. Summ. J.) at 18–21.

### B.     The Tattooists' Statements Should Not Be Excluded as Hearsay

Moreover, these statements are not hearsay as they are not being offered for their truth, but rather to show what other tattooists in the industry ***tell*** their clients, *i.e.*, what the "common practice in the . . . industry" is.  *Wilchombe*, 555 F.3d at 957; *see also Chivers v. Central Noble Cmty. Schs.*, 423 F. Supp. 2d 835, 840 (N.D. Ind. 2006) (prior statements not hearsay when offered to prove what was said).   Even if hearsay, the statements would still be admissible under the Rule 807(a), the residual exception, if: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice."  *United States v. Wandahsega*, 924 F.3d 868, 881 (6th Cir. 2019).

All elements are met.  ***First***, statements "made under oath subject to perjury penalties" in which "the affiants describe facts about which they have personal knowledge" show that they "possess sufficient guarantees of trustworthiness."  *F.T.C. v. Amy Travel Serv., Inc.*, 875 F.2d 564, 576 (7th Cir. 1989), *overruled on other grounds by F.T.C. v. Credit Bureau Ctr., LLC*, 937 F.3d 764 (7th Cir. 2019); *see also U. S. v. Barlow*, 693 F.2d 954, 962 (6th Cir. 1982) ( "personal knowledge" contains "substantial" guarantees of trustworthiness).  Here, the testimony describes

11

how the tattooist has personal knowledge of the tattoo industry and was made under penalty of perjury.  Plaintiff also has not established any "motive to fabricate the statements [which] indicate[s] that the statements were reliable."  *See Stuart v. Wilson*, 442 F.3d 506, 524 (6th Cir. 2006).  **Second**, as explained above, the statements are material to the license defense.  *United States v. Laster*, 258 F.3d 525, 529–30 (6th Cir. 2001) (no error admitting "material" statements). **Third**, the statements are direct evidence of industry customs and practices, which in the context of "the need for the statement in the case as compared to the costs of obtaining alternative evidence," weighs in Take-Two's favor.  *See Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 843 (W.D. Ky. 2017) ("unreasonable" to "bring letter-writers into court to swear, under oath and subject to cross-examination, that the contents of their letters were true").  **Fourth**, real-world experience in the tattoo industry increases the likelihood that the jury will ascertain the truth about its customs and practices.  If Plaintiff testifies that the tattoo industry requires tattooed people to get permission to show their tattoos, the jury should be able to hear otherwise.  *See Deere*, 260 F. Supp. 3d at 844 (finding it "only just and fair" to admit salespeople's statements regarding their customers, based on the opposing party's reliance on those conversations).

Moreover, Plaintiff has long had notice that Take-Two intended to rely on these statements.  *Id.* (holding notice before trial, including "declarant's name and address," satisfied Rule 807(b)).  The declarations and deposition transcript were appended to the expert report of Dr. Jablonski, which was served on May 27, 2021, nearly two years before Plaintiff's motions *in limine* were filed on April 21, 2023.  Accordingly, the statements are admissible.[5]

---

[5] Plaintiff's cited authority does not warrant a different outcome.  Pl.'s Br. 7–9.  In *Weinstein v. Siemens*, employees' statements made at the direction of their employer were binding as to the employer, and were thus admissible as party admissions.  756 F. Supp. 2d 839, 849 (E.D. Mich. 2010).  In *Peppers v. Washington County, Tennessee*, the court held the district court did not abuse its discretion by excluding prior testimony as prejudicial, but noted that the "district court was confronted with a difficult choice."  686 Fed. Appx. 328, 332 (6th Cir. 2017).  The court further held that "it would be an abuse of discretion for a district court to weigh witness credibility and exclude proffered testimony on that basis."  *Id.* at 333.

### C.  Plaintiff's Rule 403 and Rule 26 Challenges Should Be Denied

Plaintiff's remaining arguments also lack merit.  *First*, Plaintiff argues that "allowing this third-party testimony at trial would be more prejudicial than probative," but makes no attempt to explain why.  Pl.'s Br. 8.  Nor could he, as permitting only Mr. Hayden's testimony will present the view of only the Plaintiff while excluding the views of other non-biased tattooists.  *See U. S. v. Dimora*, 843 F. Supp. 2d 799, 826 (N.D. Ohio 2012) ("[I]n balancing its probative value against the danger of unfair prejudice, the Court is inclined to allow this evidence to rebut any such defense raised by [defendant.]").  *Second*, Plaintiff argues that the "opinions and statements from third-party tattoo artists about purported tattoo industry norms" constitute expert testimony.  Pl.'s Br. 8.  But each declarant's statements are based on personal knowledge and present information "rationally based on the witness's perception," consistent with lay witness testimony, not expert testimony.  Fed. R. Evid. 701.

## III.  THE VENETIAN RESORT'S LOGO

Plaintiff moves to exclude all evidence of the source material for the Lion Tattoo on LeBron James's chest on the basis of relevance and authentication.  In essence, he seeks to erase any "referenc[e]" to or "testimony about" this material (Pl.'s Br. 9) because, as shown below, the Venetian Resort's logo and the playing card bearing that logo that Plaintiff copied reveal that his asserted tattoo was not independently created.  Plaintiff's arguments are meritless.

| Plaintiff Wants to Exclude | | Plaintiff Wants to Use |
|---|---|---|
| **Venetian Resort Logo[6]** | **Venetian Playing Card[7]** | **Lion Tattoo Registration[8]** |
|  |  |  |

[6]  *See* Ex. D (Trademark Registration for The Venetian).
[7]  *See* Ex. E (Venetian Playing Card).
[8]  *See* Ex. F (Pl.'s Copyright Application).

## A.      Evidence of the Venetian Resort Logo is Relevant to Multiple Issues

Evidence of the Venetian Resort logo is relevant to multiple issues. *First*, it is highly relevant to infringement. To "establish infringement," Plaintiff must prove "copying of constituent elements of the work that are original." *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). To prove originality, Plaintiff must show that the work was "independently created," "as opposed to [being] copied from other works." *Sem-Torq, Inc. v. K Mart Corp.*, 936 F.2d 851, 854 (6th Cir. 1991) (citing *Feist*, 499 U.S. at 346). "[P]rotection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." 17 U.S.C. § 103(a); *see Psychopathic Recs., Inc. v. Anderson*, No. 08 Civ. 13407, 2009 WL 2591385, at *2 (E.D. Mich. Aug. 24, 2009) ("no copyright protection" for derivative work of other copyright). Here, the evidence Plaintiff seeks to exclude shows the Lion Tattoo was not independently created, as it was copied from a ███████████████████████████████████████████ ███████████████ that Mr. James brought with him to get his tattoo. Ex. B (James Tr.) at 116:11–117:2.[9] Although the Court found that the Tattoos met the low bar for creativity to be protectable, *see* Dkt. 193 (Summ. J. Op.) 8–9, it did not find that the Tattoos were independently created. The Court also found that any "presumption of validity is rebuttable." *Id.* 5–6. Evidence that a work is "copied from another's work" is sufficient to rebut the presumption.

---

[9] Plaintiff admits that in 2008, LeBron James ████████████████████████████████ ███████████████████████████████████████████████ and then he did. Ex. G (Pl.'s. Tr.) 82:6–8, 83:21– 25, 84:19–23; *see also* Dkt. 109 (Pl.'s Opp. Defs.' Summ. J.) at 28 (admitting that "a playing card . . . offered inspiration for the *Lion*" tattoo). Mr. James testified that he brought to Plaintiff a █████████████████████████████████████████████████ Ex. B (James Tr.) at 116:11–117:2, which is a casino. *See* Ex. D (Trademark Registration for The Venetian); *see also* Ex. B (James Tr. 50:2–7) ███████████████████████████████████████████████ He further testified that the Lion Tattoo on his chest is ███████████████████ *Id.* at 55:8–19 ████████████████████████████████

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217-18 (9th Cir. 1997).

**Second**, the evidence is relevant to whether Plaintiff committed fraud on the Copyright Office. *See* 17 U.S.C. § 411(b). The application to register Plaintiff's copyright in the Lion Tattoo required him to disclose any material not owned by him. Dkt. 95–50 (Pl.'s Copyright Application) at 20. Here, Plaintiff did not disclose that he copied the Lion Tattoo to the Copyright Office, despite knowing it came from another source and, thus, it should not have been registered. *Supra* 14; *see also* 17 U.S.C. § 103(a).

**Third**, the evidence is relevant to Take-Two's fair use defense, because one factor considers whether "whether the work was [] 'factual or creative.'" *Castle v. Kingsport Publ'g Corp.*, No. 19 Civ. 92, 2020 WL 7348157, at *6 (E.D. Tenn. Dec. 14, 2020). As Plaintiff simply "copied [the Lion Tattoo] from other works, [*i.e.*, the Venetian Resort logo]," *Sem-Torq*, 936 F.2d at 854, the Lion Tattoo is not creative. Thus, the evidence is relevant.

### B.      Evidence of the Venetian Resort Logo is Properly Authenticated

Plaintiff's arguments that the Venetian Resort logo is not properly authenticated also fail. Pl.'s Br. 9–10. **First**, the trademark registration is a public record that "qualifies as a self-authenticating document under Federal Rule of Evidence 902." *Coach, Inc. v. D 4 L Apparel*, No. 11 Civ. 185, 2013 WL 489658, at *5 (W.D. Tex. Feb. 7, 2013); *see also Eli Rsch., LLC v. Must Have Info Inc.*, No. 13 Civ. 695, 2015 WL 6501070, at *3 (M.D. Fla. Oct. 22, 2015) (registration is "self-authenticating"); 15 U.S.C. § 1057(f) (certified registrations "shall be evidence in all cases wherein the originals would be evidence"). The attached Exhibit D is a certified copy of the trademark registration that bears the seal of the United States Patent and Trademark Office and the signature of a certifying officer and, thus, is self-authenticating. *See Eli Rsch.*, 2015 WL 6501070, at *3; *Coach*, 2013 WL 489658, at *5.

**Second**, Plaintiff does not dispute that Exhibit E (Venetian Playing Card) is an authentic

printout from eBay, containing the print date and URL from which it was obtained.  Pl.'s Br. 9–10.  Instead, he challenges whether the exhibit depicts the same card that Mr. James brought with him to the tattoo session.  *Id.*  Moreover, when Plaintiff was shown the card at his deposition, he testified that, while the specific card "doesn't look like the one from ten years ago," he did not "know one way or the other" whether it was the card Mr. James provided him and does not "remember what it looked like."  Ex. G (Pl.'s Dep. Tr.) 216:10–217:9.  Given his ambiguous testimony, the jury is well-equipped to look at the playing card (and the trademark registration) and compare it to the Lion Tattoo, and also consider Mr. James's testimony that the playing cards he brought came from the Venetian Resort.  Ex. B (James Tr.) 50:2–7, 116:11–117:2.[10]

## IV.     POLICY IMPACT OF AN INFRINGEMENT FINDING

Plaintiff moves to exclude evidence of the "negative consequences a ruling in Mr. Hayden's favor would have on the markets for tattoos and video games and the public in general," arguing it is irrelevant and prejudicial.  Pl.'s Br. 10–11.  Plaintiff's motion should be denied because it lacks specificity as to what it proposes to exclude.  *See Sperberg*, 519 F.2d at 712 ("Orders *in limine* which exclude broad categories of evidence should rarely be employed").[11]

Regardless, evidence and testimony of the market is relevant at least to the fourth fair use

---

[10]  This is unlike the situation in the cases cited by Plaintiff.  In *United States v. Craig*, the defendant denied that he was the masked individual in a video that was nevertheless shown to the jury, and there was no other evidence proving that he was, rendering it unauthenticated.  953 F.3d 898, 903 (6th Cir. 2020).  Had he been unmasked in the video, the result would have been different because the jury would have been able to see for itself whether the individual in the video was the defendant.  *Id.*  Here, of course, the jury will be able to see the trademark registration and the playing card and see for itself that they are the same design as the Lion Tattoo.  *See* Exs. D–F.  And in *Swartz v. DiCarlo*, the court noted that the "Federal Rules of Evidence require authentication or identification of items offered into evidence."  No. 12 Civ. 3112, 2018 WL 10483103, at *1 (N.D. Ohio Sept. 13, 2018).  As noted above, that is satisfied here because the items themselves have been identified and Plaintiff does not dispute where they came from; his dispute is a factual one as to whether he copied from these sources, which the jury can decide by visual inspection and considering the testimony of Plaintiff and Mr. James.

[11]  The only specific evidence that Plaintiff cites is Paragraphs 41 to 45 of Dr. Jablonski's report.  Pl.'s Br. 11.  Dr. Jablonski, however, will not testify as to whether Plaintiff's claim is a "marked departure from the customs and practices of the tattoo industry" per the Court's order.  Dkt. 150 (Ord. Mot. Exclude Jablonski), at 7.

factor, which examines "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.  *First*, it considers "a use's impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets."  *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 91 (2d Cir. 2014) (citations omitted).  As such, Take-Two must be permitted to argue about the market effects stemming from its challenged uses.  *Id.* (finding fourth factor weighed in favor of fair use where "[n]othing in the record [suggested] any possible market effect stemming from [defendant's] use" (citations omitted)).  *Second*, the fourth factor "must take into account the public benefits the copying will likely produce."  *Google,* 141 S. Ct. 1183, 1206.  Given the evidence that requiring video game publishers to license the tattoos that athletes bear in real life will increase costs and create other difficulties in creating new works, *E.g.*, Ex. H (Suppl. Reb. Rpt. of J. Malackowski) 16–17, the fourth factor weighs against fair use. *See Google*, 141 S. Ct. at 1208.  Likewise, such a requirement would lessen the rights of the tattooed in their own bodies, which would result in fewer customers obtaining tattoos, decreasing the tattoo business as a whole.  *E.g.*, Ex. H (Suppl. Reb. Rpt. of J. Malackowski) 16.  Take-Two is entitled to the opportunity to establish this at trial.

## V.     MR. HAYDEN'S OWN TATTOOS

Plaintiff moves to exclude evidence, testimony, or argument concerning Mr. Hayden's own tattoos as irrelevant and more prejudicial than probative.  Such testimony is relevant to industry practice, as Plaintiff's own experience is further evidence that restrictions on how a tattooed person can show their tattoos are not the norm.  For example, Plaintiff testified that he did not think any tattooist ever told him that he needed permission before showing his tattoos in photographs, television, or video games, nor did he not seek permission before appearing in videos and commercials.  Dkt. 95-22 (Hayden Dep. Tr.) at 39:4–23.  Further, Plaintiff contends licenses entered into *after* this litigation was filed are evidence of a market for tattoos, but they

were entered under the threat of litigation and are thus irrelevant.  *See* Dkt. 212 (Defs.' Br.) at 2.

Evidence of Plaintiff's treatment of his own tattoos prior to this lawsuit is far more relevant to

that issue, since it actually implicates conduct in a normal market.  To the extent Mr. Hayden did

not obtain a license from his tattooists to show his tattoos in commercials prior to this litigation,

this is relevant to the lack of a market and thus goes to fair use.

Moreover, Plaintiff asserts that his subjective intent in inking the NBA Players is relevant

to the issue of license.  Dkt. 109 (Pl.'s Opp. Defs.' Summ. J.) at 20.  Take-Two asserts this is not

the law; courts in this Circuit consider **objective** evidence of intent, such as **contemporaneous**

contracts preventing further uses of the work (which do not exist here),[12] oral limitations on

further uses of the work (which do not exist here), or evidence of an industry practice of limiting

use of the work (which does not exist here).  *See* Dkt. 162 (Defs.' Suppl. Rpl. Summ. J.) at 10–

13.  This Court agreed, finding that "where objective evidence leads to the conclusion that the

copyright owner intended the defendant to use the copyrighted work, the copyright owner should

not later be able to sue for infringement."  Dkt. 193 (Summ. J. Op.) at 17.  But if Plaintiff is

permitted to put his subjective intent at issue, Take-Two should be permitted to interrogate his

supposed intent.  Any possible prejudice would not be unfair and is substantially outweighed by

the probative value of this evidence.

## VI.    ADVICE OF COUNSEL

Take-Two is not pursuing an advice of counsel defense, which moots Plaintiff's motion.

## VII.   DR. NINA JABLONSKI'S TESTIMONY

Plaintiff's second bite at the apple should be denied.  Plaintiff's attempt to exclude Dr.

Jablonski's testimony "in full" was denied, Dkt. 85 at 15, with the Court holding that:

---

[12]  Contracts made years or decades later, such as certain releases with third parties, are not evidence of intent, for example, as they are not contemporaneous contracts.  *See* Dkt. 135 (Defs.' Rpl. Summ. J.) at 15.

> [Dr. Jablonski may] opine that tattoos are part of an individual's likeness and are used as means of self-expression. She can also offer her views on common imagery utilized in tattoos like those appearing on LeBron James, Tristan Thompson and Danny Green. She may discuss the tattoo process generally and that the tattooist's client chooses and controls the content, the look and the placement of the inked image.

Dkt. 150 at 5–6.  Thus, Plaintiff's argument that Dr. Jablonski's testimony was limited to the "general process and culture of tattooing," Pl.'s Br. 13, is simply unsupported.  Though Plaintiff references that the NBA Players' tattoos met the low bar for creativity to be protectable, Dkt. 193 at 8–9, the Court also noted that "Dr. Jablonski's findings . . . are relevant to Plaintiff's burden of showing originality as well as to the defenses of fair use and implied license."  Dkt. 150 at 6.  Specifically, Dr. Jablonski's testimony is relevant to at least the following issues.

*First*, that the NBA Players' tattoos come from common imagery is relevant to whether the Tattoos are unprotectable *scène à faire*.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535 (6th Cir. 2004) (copyright does not protect elements that are "standard" or "stock").  Moreover, Dr. Jablonski's testimony that the Lion tattoo and Brother's Keeper tattoo come from pre-existing works, *i.e.*, the Venetian Hotel logo and the Sistine Chapel, respectively, is also relevant to the issue of independent creation.  *See Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980) (work is not original if it is a "mere reproduction of a [prior] work of art in a different medium").

*Second*, Dr. Jablonski's testimony is relevant to Plaintiff's burden on authorship. Dr. Jablonski is permitted to testify that the NBA Players direct the "content, the look and the placement of the inked images," *id.* at 5–6, which goes to Take-Two's argument that "Plaintiff did not author the Tattoos."  Dkt. 215 (Defs.' Am. Tr. Br.) at 11; *see 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 260 (2d Cir. 2015); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir.

2000) ("[A]n 'author superintend[s]' the work by exercising control.  This will likely be . . . 'the inventive or master mind' who 'creates, or gives effect to the idea.'").  Even though the NBA Players did not put ink to skin, their directions as to the substance and location of the Tattoos, as well as their final approval, makes them the authors of their tattoos.  *See Brod v. Gen. Publ'g Grp., Inc.*, 32 F. App'x 231, 235 (9th Cir. 2002) (defendant was co-author where it exercised control, including the idea for and final approval of plaintiff's photograph).

**Third**, Dr. Jablonski's testimony is relevant to fair use, including the purpose and character of the use.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  Dr. Jablonski may opine that the purpose of the tattoos is "as [a] means of self-expression," which differs from the purpose of accuracy in *NBA 2K*.  Dkt. 150 at 5.  Separately, the second fair use factor evaluates the nature of the work.  *See Google*, 141 S. Ct. at 1198.  This Court found the tattoos "expressive and creative," Pl.'s Br. 13, but Dr. Jablonski's opinions that tattoos are permanent, deeply personal, and come from common imagery remain relevant.

**Finally**, to evaluate whether Take-Two's use of the tattoos in the *NBA 2K* video games was authorized, "the circumstances and . . . the conduct between the parties" must be evaluated.  *Melanie Howard Music, Inc. v. Warner Bros. Recs., Inc.*, No. 08 Civ. 0979, 2009 WL 3784611, at *5 (M.D. Tenn. Nov. 10, 2009) (citations omitted).  Dr. Jablonski is permitted to opine with respect to such circumstances and that with respect to a client's conduct, he "chooses and controls the content, the look and the placement of the inked image."  Dkt. 150 at 5–6.

20

Dated: May 4, 2023

Respectfully Submitted,

*/s/ Dale M. Cendali*

Dale M. Cendali (*pro hac vice*)
Joshua L. Simmons (*pro hac vice*)
Chris Ilardi (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Yungmoon Chang (*pro hac vice*)
Kirkland & Ellis LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4359
yungmoon.chang@kirkland.com

Matthew J. Cavanagh (0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Take-Two 2K Games, Inc. and
Take-Two Interactive Software, Inc.*