# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|  |  |
|---|---|
| JAMES HAYDEN, | ) |
|  | ) |
| Plaintiff, | ) CASE NO. 1:17-cv-02635-CAB |
|  | ) |
| v. | ) JUDGE CHRISTOPHER A. BOYKO |
|  | ) |
| 2K GAMES, INC., et al., | ) |
|  | ) |
| Defendants. | ) |

## PLAINTIFF'S BRIEF IN RESPONSE TO ORDER TO SHOW CAUSE

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................ 1

II. Referral to the Copyright Office regarding the Lion and Brother's Keeper tattoos is neither mandatory nor appropriate in this case ................................................ 2

   A. Take-Two has not submitted facts that support a claim under 17 U.S.C. § 411(b) ............................................................................................................................. 2

      1. Mr. Hayden's applications for copyright registration did not contain knowing inaccuracies ................................................................................................. 5

      2. The alleged inaccuracies would not have resulted in refusal of registration .................................................................................................................. 8

   B. This Court's finding that Hayden's tattoos are "original" bars Take-Two's attempt to relitigate that issue by the doctrine of law of the case ............................................ 10

III. The supplemental registrations for "Fire" and "Scroll" should not be referred to the Copyright Office ................................................................................................ 12

   A. Mr. Hayden did not knowingly include inaccurate information in his supplemental registrations ............................................................................................ 13

   B. Even if the Copyright Office knew of the litigation, it still would have registered Hayden's supplemental registrations ...................................................... 14

IV. Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Bayoh v. Afropunk Fest 2015 LLC*, No. 18cv5820, 2020 WL 229978 (S.D.N.Y. 2020) .................................................................................................................... 3

*Covetrus Inc. v. Actian Corp.*, No. 2:21-cv-00097, 2022 WL 17417289 (D. Me. Dec. 2, 2022) ............................................................................................... 3, 14, 15

*Duncan v. Blackbird Products Grp., LLC*, No. 17-03404-CV, 2021 WL 7042880 (W.D. Mo. Mar. 3, 2021) ............................................................................................ 3

*FenF, LLC v. Groupon, Inc.*, 19-12278, 2021 WL 8650619 (E.D. Mich. Mar. 29, 2021) ................................................................................................................. 15

*Fleming v. Parnell*, No. C13-5062, 2014 WL 1247678 (W.D. Wa. Mar. 24, 2014) ...................... 3

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-cv-42, 2019 WL 4647305 (S.D. Ohio Sep. 24, 2019) ............................................................... passim

*Goode Time Productions, LLC v. Just*, No. 4:19-CV-058, 2021 WL 9880871 (E.D. Tex. July 2, 2021) ............................................................................................ 14

*Gray v. White*, 18 F. 4th 463 (5th Cir. 2021) .................................................................. 5

*Guino v. Beseder, Inc.*, No. CV 03-1310, 2009 WL 2497447 (D. Ariz. Aug. 13, 2009) ................................................................................................................. 11

*Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. CV 16-0084, 2017 WL 2404918 (C.D. Cal. Mar. 6, 2017) ................................................................................ 3

*Microsoft Corp. v. Technology Enters., LLC*, 805 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011) ................................................................................................................. 11

*Olem Shoe Corp. v. Washington Shoe Co.*, Case No. 1:09-cv-23494-CIV (S.D. Fla.) .................................................................................................................... passim

*Schenck v. Orosz*, 105 F. Supp. 3d 812 (M.D. Tenn. 2015) .................................................. 2, 6, 8

*Strategic Marketing, Inc. v. Great Blue Heron Software*, No. 15-cv-80032, 2016 WL 11783289 (S.D. Fla. Aug. 26, 2016) .......................................................................... 3

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941 (2022) ..................................... 8

**Statutes**

17 U.S.C. § 105 .................................................................................................................... 6

17 U.S.C. § 508 .................................................................................................................. 13

**Other Authorities**

Compendium of U.S. Copyright Office Practices § 621.9(D)(5) ............................................ 6, 14

**Rules**

37 C.F.R. § 202.1(a) .............................................................................................................. 6

I. **Introduction**

Plaintiff, James Hayden, submits this Brief in response to the Court's Show Cause Order, asking whether certain questions about Mr. Hayden's copyright registrations should be sent to the Copyright Office under 17 U.S.C. § 411(b)(2). (Show Cause Order, Dkt. # 217.)

Plaintiff respectfully submits that it is neither necessary nor appropriate to refer these questions to the Register of Copyrights. Section 411(b)(2) does not provide any mandate that a Court *must* submit any allegation of purported fraud or mistake to the Copyright office for guidance, as the language of the section (and the Court's Order) implies. Instead, both courts and the Copyright Office have interpreted § 411(b)(2) to recognize a court's discretion in determining whether to seek the Copyright Office's guidance in order to avoid abuse of the process and balance a court's inherent power to control its own docket. More particularly, referral is *not* appropriate where there lacks sufficient facts showing that (1) the applicant knowingly submitted an application containing inaccurate information, and (2) the inaccuracy, if known, would have resulted in refusal of registration. Take-Two's bare-bones allegations of "Fraud on the Copyright Office" (*see* Defendants' Trial Br., Dkt. #215, pp. 26–27) and the facts in this case fail to meet this standard for any of Mr. Hayden's copyright applications.

Most importantly, the validity of Mr. Hayden's copyrights was squarely in front of this Court on Mr. Hayden's Motion for Partial Summary Judgment. (*See* Mot. for Partial Sum. J., Dkt. # 93, pp. 5–6.) The Court decided this issue in favor of Mr. Hayden in finding the copyrights "original and entitled to protection," a holding which is the law of this case. (*See* Order, Dkt. #193, pp. 5–9.) Further, although Take-Two challenged Mr. Hayden's copyrights on originality, Take-Two was silent on fraud. Indeed, this Court correctly observed, "there has been no suggestion of misfeasance or fraud on the Copyright Office." (*Id.*, at p. 7.) This Court is not

1

mandated to entertain, let alone act on, Take-Two's footnote in its jury instructions threatening to "request a referral to the Copyright Office" *after* trial on an issue that has already been decided as a matter of law. This (along with many of Take-Two's proposed jury instruction) is simply a last-ditch attempt to relitigate the originality and validity of Mr. Hayden's copyrights. Take-Two seeks to use its jury instructions as an out-of-time motion to reconsider and re-do the summary judgment opinion. This misguided attempt should be rejected—this Court has already held all Mr. Hayden's copyrights are "original and entitled to protection," and that is law of the case.

Mr. Hayden respectfully opposes referral of these questions to the Copyright Office.

**II.   Referral to the Copyright Office regarding the Lion and Brother's Keeper tattoos is neither mandatory nor appropriate in this case.**

A. Take-Two has not submitted facts that support a claim under 17 U.S.C. § 411(b).

Take-Two's bare-bones allegations of "Fraud on the Copyright Office" do not trigger a mandatory referral to the Copyright Office under 17 U.S.C. § 411(b)(2). In its Answer, Take-Two makes this bald allegation but then did nothing with it throughout the case until the footnotes in the jury instructions. Although Section 411(b)(2) suggests referral is mandatory in cases where a party simply *alleges* inaccurate information was included on an application for copyright registration, neither courts nor the Copyright Office have interpreted it this way. Such an interpretation "creates serious potential for abuse by introducing a mechanism by which infringers can throw up roadblocks to merited infringement lawsuits, simply by 'alleging' technical violations of underlying copyright registrations." *Schenck v. Orosz*, 105 F. Supp. 3d 812, 818 (M.D. Tenn. 2015); *see also Olem Shoe Corp. v. Washington Shoe Co.*, Case No. 1:09-cv-23494-CIV (S.D. Fla.) (Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) (Attached as Ex. A)). The Register of Copyrights has clarified that courts have discretion to determine whether the claims have factual support. (*See* Ex. A, pp. 10–12.)

2

The Office noted that "in many, and perhaps most, cases in which it is alleged that there is a misstatement on an application . . . there may be little need for the assistance of the Register because the answer will be apparent." (*Id.* at 11.) Thus, the Office acknowledges courts' leeway to "refrain from issuing requests to the Register" where "the bare allegations are unsupported by any facts," for example by "entertain[ing] a motion for partial summary judgment prior to referring certain questions to the register." (*Id.*) Courts, in turn, have consistently interpreted this guidance to only require a referral where (**1**) the defendants adequately alleged a violation under § 411(b)(1) and (2) (i.e., that the applicant knowingly submitted an inaccurate application and that the Register would have refused registration having known of the inaccuracy.), and (**2**) those allegations are factually supported. *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-cv-42, 2019 WL 4647305, at *9 (S.D. Ohio Sep. 24, 2019) (denying motion for referral because the allegations unsupported); *see also, e.g.*, *Covetrus Inc. v. Actian Corp.*, No. 2:21-cv-00097, 2022 WL 17417289, at *3 (D. Me. Dec. 2, 2022) ("Conceivably, an inadequate showing of materiality of an error or mistake might also undermine a motion to refer[.]").

Indeed, courts *routinely* deny motions for referral where the facts do not support a claim under § 411(b). *See Freeplay*, 2019 WL 4647305, at *9; *Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. CV 16-0084, 2017 WL 2404918, at *5 (C.D. Cal. Mar. 6, 2017); *Olem Shoe Corp. v. Washington Shoe Co.*, No. 09-23494-CIV, 2011 WL 6202282, at *6 (S.D. Fla. Dec. 1,2011); *Strategic Marketing, Inc. v. Great Blue Heron Software*, No. 15-cv-80032, 2016 WL 11783289, at *4 (S.D. Fla. Aug. 26, 2016); *Fleming v. Parnell*, No. C13-5062, 2014 WL 1247678, at *4 (W.D. Wa. Mar. 24, 2014); *Bayoh v. Afropunk Fest 2015 LLC*, No. 18cv5820, 2020 WL 229978, at *4 (S.D.N.Y. 2020); *Duncan v. Blackbird Products Grp., LLC*, No. 17-03404-CV, 2021 WL 7042880, at *13 (W.D. Mo. Mar. 3, 2021).

3

Take-Two, of course, has never moved this Court for a referral to the Copyright Office. Its "fraud on the copyright" allegations contain little factual support and are certainly insufficient to justify further delaying trial in this case so questions may be referred to the Register. In its trial brief, Take-Two provides one paragraph alleging that "[t]he facts will show that Plaintiff knew that the Brother's Keeper and Lion Tattoos copied from pre-existing works he did not author, specifically a logo from a playing card for the Venetian Hotel and Michelangelo's famous 'Creation of Adam' on the ceiling of the Sistine Chapel." (Take-Two Trial Brief, p. 27, Dkt. # 215.) Take-Two's naked assertions include no facts suggesting Mr. Hayden knew additional information was required in either copyright application to avoid an alleged inaccuracy, nor do they allege any facts suggesting the registrations would have been refused if such additional information had been submitted.

Further, despite Mr. Hayden serving an interrogatory explicitly requesting that Take-Two "[d]escribe the factual basis for each of Your affirmative defenses [*i.e.*, including "Fraud on the Copyright Office"]," Take-Two's wholly conclusory, one-sentence response failed to provide *any* factual support: "Plaintiff committed fraud on the Copyright Office by failing to disclose that one or more of the Tattoos was created based on a pre-existing work, to which Plaintiff holds to rights." (Ex. B, Excerpt from Take-Two's Responses to First Set of Interrogatories.") Take-Two provided no facts establishing the elements under § 411(b)(1). Then, implicitly acknowledging the thin (to be charitable) basis for its fraud claim, Take-Two made ***no*** 'fraud on the Copyright Office' argument in opposition to Mr. Hayden's Motion for Partial Summary Judgment, which explicitly sought adjudication on the validity of his copyrights. (*See* Take-Two Opposition, generally, Dkt. # 112.) Although Take-Two did identify the so-called "pre-existing sources" (a playing card alleged by Take-Two to be from "the Venetian Resort," which has never been

4

produced, and the Sistine Chapel), Take-Two did not allege that Mr. Hayden's registrations were invalid because he did not include his sources of inspiration in his application. Moreover, after due consideration of the parties' detailed briefing on the issue (including Take-Two's foregoing contentions), this Court found "that Plaintiff's works are original and entitled to protection." (Dkt. # 193, p. 9.)

Take-Two's allegations fall well-short of justifying referral to the Register. Its "reservation of rights" in a footnote to a jury instruction, suggesting that it *may* request a referral after trial, simply amounts to a request for this Court to reconsider an issue it has already adjudicated: that Mr. Hayden's copyrights are original and entitled to protection. Not only is that issue decided in Mr. Hayden's favor, Take-Two has waived the right to alter that judgment via a request to the Register because this argument had to be set forth during summary judgment—and Take-Two did not do that. *See Gray v. White*, 18 F. 4th 463, 469 (5th Cir. 2021) ("when a party fails to raise an argument in opposition to a motion for summary judgment and instead raises it for the first time in a motion to alter or amend judgment, that argument is waived").

1. Mr. Hayden's applications for copyright registration did not contain knowing inaccuracies.

Not only do Take-Two's allegations fall short and are waived, but the facts also contradict their allegations. Mr. Hayden did not knowingly submit any inaccuracies in his copyright applications for any of the Asserted Tattoos. **First,** Mr. Hayden's sources of inspiration for the Lion and Brother's Keeper tattoos are well-known public-domain material—not the kind of pre-existing content the Copyright Office requires in application for registration. According to the Compendium of U.S. Copyright Office Practices ("Compendium"), "[i]f an applicant fails to complete the New Material Included and/or Material Excluded fields in an online application . . . the application may be accepted if the scope of the claim is clearly defined by the deposit

5

copy(ies). If so, the registration specialist may register the claim without communicating with the applicant, or may add an annotation to clarify the scope of the claim, if appropriate." (Compendium, § 621.9(D)(5).) As an example, the Compendium explains that not identifying "Biblical text" that is included in song lyrics is okay because it "is clearly in the public domain[.]" (*Id.*)[1] Likewise, courts have held that it is not necessary to disclaim pre-existing work that is clearly in the public domain, for example, the Canadian flag: "it is absurd to claim that [the applicant] needed to disclose certain widely disseminated public domain materials to the Copyright Office. For example, are the defendants actually claiming that the plaintiffs committed fraud on the Copyright Office by failing to disclose that someone other than plaintiffs created the Canadian national flag?" *Schenck*, 105 F. Supp. 3d at 818; *see also Olem Shoe*, 2011 WL 6202282, at *8 (holding that applicant did not need to disclose previously sold patterns depicting "polka-dots").

Both the Sistine Chapel and Lion of Venice imagery, sources of inspiration for the Brother's Keeper and Lion Tattoos, respectively, are widely disseminated public domain materials. Mr. Hayden did not need to disclose them in his copyright registration applications because they are clear from the deposit copies. Take-Two admits that Michelangelo's "Creation of Adam" painting on the Sistine Chapel is "famous"—that is undeniable. Likewise with the Lion of Venice imagery that was a source of inspiration for the Lion Tattoo (and was allegedly depicted on a playing card that Mr. James purportedly brought with him to one of his tattoo sessions with Mr. Hayden). The Lion of Venice (also identified as the Lion of Saint Mark)

---

[1] Similarly, the text in the Brother's Keeper Tattoo is an unprotectable short phrase that constitutes "Unclaimable Material *That Need Not Be Excluded* from the Application" (emphasis added). See Compendium 621.2: "An application is submitted for a musical work titled Ask Not What Your Country Can Do For You. The chorus contains the phrase, 'Ask what you can do for your country,' which was taken from President Kennedy's inaugural address. The New Material Included/Material Excluded fields may be left blank, because the copyright law does not protect short phrases or works of the United States Government. See 17 U.S.C. § 105, 37 C.F.R. § 202.1(a)."

imagery (winged lion with a book or shield) is old, well-known, and widely disseminated,[2] as shown in the *many* particular expressions of this imagery one may readily find via a Google image search:



The Lion Tattoo, while inspired by the Lion of Venice imagery, contains Mr. Hayden's original expressive authorship, including the lion's facial expression, the shield design, and the mane, to name a few, all *in addition to* the countless expressive elements (*e.g.*, shading, line thickness, density, color, orientation, etc.) manifest in Mr. Hayden's embodiment of the image in the Tattoo. (*See* Dkt. #193, p. 8; *see, also*, Hayden Summ. J. Reply Br., p. 6–8; Dkt. #139; *see also*, Dkt. #109-18 at 82:6–11, 19–25, 83:21–84:18, 86:11–21, 87:20–25, 118:16–18, 124:1–7.) Premising a fraud on the copyright office claim on not disclosing such widely known and

---

[2] Although the Lion of Venice and Sistine Chapel imagery is well-known, this does not mean Mr. Hayden's particular expressions are not copyrightable or do not contain original expression. They both do, and as this Court has already found that they are "original and entitled to protection." (Order, p. 9; *see also*, Hayden Summary Judgment Reply Br., p. 6–8; Dkt. # 139.)

7

disseminated imagery that has been in the public domain for centuries has been found by another court to be "absurd." *Schenck*, 105 F. Supp. 3d at 818.

***Second***, even accepting for the sake of argument that Mr. Hayden should have included his sources of inspiration in his application, he did not knowingly omit them. Mr. Hayden testified during his deposition that he did not believe he had to disclose these sources of inspiration because he independently created the tattoos. (Ex. C, Hayden Dep., 128:4–129:5, 135:1–136:9.) Take-Two counsel did not ask him if he *knew* that omitting his sources of inspiration was a mistake or if he was intentionally withholding information. He was not.

Accordingly, there is no basis to allege that Mr. Hayden knowingly provided inaccurate information in his copyright applications for the Lion and Brother's Keeper Tattoos. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 942 (2022) ("legal and factual knowledge" of the inaccuracy is required under § 411(b)).

2. <u>The alleged inaccuracies would not have resulted in refusal of registration.</u>

Take-Two has also failed to allege in any filing or discovery response that the Register would have refused registration for the Lion and Brother's Keeper Tattoos had it known that the Lion of Venice and the Sistine Chapel imagery were sources of inspiration. This is because there would have been no reason for refusal. At the time of filing Mr. Hayden's applications, presuming the Register had known the Lion of Venice and Sistine Chapel imagery were sources of inspiration (and, as explained above, it likely *did* know, based on the deposit copies) and determined that they should be identified as preexisting works, the Register would have contacted Mr. Hayden and annotated or amended the application accordingly, so it was allowable: "[T]he usual practice of the Office," where preexisting work is not identified, "would be to contact the applicant to question the inaccurate information," and "[i]n the course of

8

corresponding with the application, the Office might annotate or amend the application to include an identification of any preexisting work or works on which it is based or which it incorporates and a brief, general statement of the additional material covered by the copyright claim being registered." (Ex. A, Response of the Register in *Olem*, p. 8.) Accordingly, "[c]orrection of such inaccurate information may then allow for registration of any copyrightable authorship in the work." (*Id.*)

Moreover, and perhaps more importantly, the question of whether there is any "copyrightable authorship" in the Lion and Brother's Keeper Tattoos beyond the preexisting materials has been adjudicated affirmatively by this Court. (Dkt. # 193, pp. 7–9.) And that adjudication was based on a much more fully developed record than the Copyright Office would have had when Mr. Hayden filed his applications, even if he had excluded the preexisting material. This Court was fully briefed by the Parties on the issue, including nearly five-pages of argument from Take-Two that the Tattoos lacked originality (Dkt. #112, pp. 7–11) and found—correctly—that the Tattoos are "original and entitled to protection."

In contrast, had Mr. Hayden identified the preexisting material in his initial online application for copyright registration, he would have simply referenced the excluded material in very general terms (e.g., "some public domain material") (*see* Compendium, 621.8(E)) and indicated the type of new material included in similarly general terms (e.g., "original 2-D material") (*see id.*). Accordingly, even if the Register new of Mr. Hayden's sources of inspiration, it would have allowed registration—the inaccuracies alleged by Take-Two would not have been material to registrability.

9

B. <u>This Court's finding that Hayden's tattoos are "original" bars Take-Two's attempt to relitigate that issue by the doctrine of law of the case.</u>

The validity of Mr. Hayden's copyrights was squarely before the Court on summary judgment, thoroughly briefed, and this Court found that Mr. Hayden's Tattoos were "original and entitled to protection." (Order, p. 9, Dkt. #193.) That holding is the law of the case. Take-Two should not be rewarded for sand-bagging its purported "fraud on the Copyright Office" defense until trial, or worse *after* trial, in an attempt to relitigate an issue that has been decided.

In October 2021, Mr. Hayden moved for partial summary judgment that he owned valid copyrights, as evidenced in part by his Certificates of Registration. (*See* Mot. for Partial Sum. J., Dkt. # 93, pp. 5–6.) At that time, Take-Two could have contested the validity of Mr. Hayden's Certificates of Registration and asserted its fraud on the copyright office claims, but it did not. *See Freeplay Music*, 2019 WL 4647305, at *3 (explaining that a copyright registration establishes a presumption of validity, but "[i]f the challenging party proves that the copyright holder committed fraud in the application for the copyright, the presumption of validity will be rebutted"). In Take-Two's Opposition, it devoted nearly five pages in an attempt to "rebut[] any presumption of validity," *but was silent as to fraud*. (Take-Two Opp., Dkt. #112, pp. 6–11.) Rather, Take-Two challenged the originality of the Tattoos, alleging that they "were copied from pre-existing sources" and "comprise standard tattooing tropes and uncopyrightable elements." (*Id.*) This Court reviewed the briefing, acknowledged Take-Two's arguments, including Take-Two's allegations that "[t]he 'Brother's Keeper' Tattoo was copied from Michelangelo's Sistine Chapel fresco" and "[t]he 'Lion' Tattoo is copied from the logo on a playing card from the Venetian Resort in Las Vegas[,]" and correctly found that *"Plaintiff's works are original and entitled to protection."* (Order, Dkt. #193, pp. 7–8 (emphasis added).)

10

Resolving this matter on partial summary judgment without a referral to the Copyright Office was appropriate and supported by case law and the Register's own guidance. The Register has said courts "may refrain from issuing requests to the Register" where "the bare allegations are unsupported by any facts" and "[t]he court could, for example, entertain a motion for partial summary judgment prior to referring certain questions to the Register." (Ex. A, p. 11.) That was appropriate in this case and is exactly what this Court did. The issue was squarely in front of this Court and Take-Two made "no suggestion of misfeasance or fraud on the Copyright Office." (Order, Dkt. #193, p. 7.) This is now "law of the case." Other courts have similarly denied motions for referral to the Register or attempts to relitigate copyright validity due to "law of the case" after validity was confirmed on summary judgment. *See Guino v. Beseder, Inc.*, No. CV 03-1310, 2009 WL 2497447, at *1 (D. Ariz. Aug. 13, 2009) (denying referral because "the Court has already determined, on several occasions, that the copyrights at issue are valid. . . . As far as law of this case is concerned, these copyrights are valid."); *see also Microsoft Corp. v. Technology Enters., LLC*, 805 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011) ("[i]t has already been decided in this case that the copyrights at issue are valid. That was the premise of the Court's previous summary judgment ruling . . . and that is law of the case.").

Put simply, this Court is not mandated to delay trial further based on Take-Two's "threat" to "request a referral to the Copyright Office" at the 11th hour in a jury instruction footnote. This Court has discretion as to whether and when to refer questions to the Copyright Office—but in this case, the Court has already considered Take-Two's arguments as to the validity of Mr. Hayden's copyrights and found the Tattoos "original and protectible." (Order, Dkt. #193, p. 7.) Moreover, when the issue was squarely in front of this Court, Take-Two had the opportunity— but failed—to make any "suggestion of misfeasance or fraud on the Copyright Office." (*Id.*)

11

Take-Two's footnote should not derail this case that is set for trial in just over one month. Referral to the Copyright Office is neither required nor appropriate.

### III. The supplemental registrations for "Fire" and "Scroll" should not be referred to the Copyright Office.

It is also neither mandatory nor appropriate to refer questions to the Copyright Office concerning the supplemental registrations for the "Fire" and "Scroll" registrations. (Dkt. #93-8, 9.) Mr. Hayden applied for supplemental registration in good faith to correct inadvertent inaccuracies in his "Fire" and "Scroll" applications, when they were first learned about during discovery in this case. Upon learning of these inaccuracies, Mr. Hayden promptly filed supplemental applications for registration to ensure that the Copyright Office was aware of such preexisting works and his registrations reflected this narrowed scope. Mr. Hayden's supplemental registrations have been accepted by the Copyright Office and there is no reason to request further consideration of these applications.

As an initial matter, Take-Two has not made *any* allegation that Mr. Hayden's supplemental registrations for the "Fire" and "Scroll" Tattoos contain inaccurate information. So § 411(b)(2) is not implicated and referral is not necessary for this reason alone. Moreover, the facts and law simply do not support such an allegation. Mr. Hayden was not obligated to inform the Copyright Office of pending litigation and, even if the Register knew of the pending litigation, it still would have registered the supplemental applications. Even so, in the unlikely event the Register would not have accepted the supplemental registrations because there was pending litigation, it is not clear that would have affected this case. Mr. Hayden's initial registrations would still be in effect and he acknowledged through discovery the scope of his original authorship in Mr. Green's Tattoos. (Dkt. #109-37.) There is nothing fraudulent about either of the applications for registration for the "Fire" and "Scroll" Tattoos, and this Court has

12

found both copyrights to be "original and entitled to protection." This case should move forward with a jury trial on Take-Two's liability, as scheduled.

      A. <u>Mr. Hayden did not knowingly include inaccurate information in his supplemental registrations.</u>

Mr. Hayden did not include any inaccurate information in his supplemental registrations for the "Fire" and "Scroll" tattoos (even if he did not notify the Register of pending litigation). The U.S. Code requires that the "clerks of the courts of the United States shall send written notification to the Register of Copyrights setting forth, as far as is shown by the papers filed with the court, the names and addresses of the parties and the title, author, and registration number of each work involved in the action." 17 U.S.C. § 508. Although there are mechanisms by which a plaintiff may assist the clerk of courts,[3] there is no statute or guidance in the Compendium requiring the *applicant* to provide that notification to the Copyright Office. The applications for copyright registration, including supplemental registration, do not request information about pending litigation and there is no appropriate input box for which to include that information in the electronic or paper application forms. (Ex. D, Supplemental Registration Form.)

This very issue was addressed in *Freeplay Music*, a case this Court cited in its Show Cause Order. In *Freeplay Music*, the defendant moved for summary judgment or referral to the Copyright Office, asserting that the plaintiff committed fraud on the copyright office by not informing the Register of pending litigation when it filed its supplemental registration. *Freeplay*, 2019 WL 4647305, at *7. In denying that motion, the court explained that "[n]either the

---

[3] Form AO121 is a form that includes the requisite information under § 508 for the clerk to notify the Register. Upon investigating this matter, it became clear that due to inadvertence, a completed AO121 form was not filed. This form assists the clerk with its duty to inform the Register. The requisite information for this form, however, was included in Mr. Hayden's initial Complaint (Dkt. # 1) and the civil cover sheet that he filed, including a designation that his case involved copyright infringement and the registration numbers asserted.

Copyright Compendium nor 17 U.S.C. § 410 imposes an express duty on the copyright holder to notify the Copyright Office of pending litigation when filing a supplemental registration." *Id.*

Accordingly, Mr. Hayden not informing the Copyright Office of pending litigation cannot be a basis for fraud on the Copyright Office or invalidating Mr. Hayden's registrations. Delaying trial to refer this question to the Register is neither necessary nor appropriate.

> B. <u>Even if the Copyright Office knew of the litigation, it still would have registered Hayden's supplemental registrations.</u>

Even assuming, for the sake of argument, that Mr. Hayden should have told the Register of pending litigation when he applied for supplemental registration, there is no reason to believe the Register would have refused registration. Supplemental registrations during litigation *are not* limited to correcting spelling mistakes, clerical errors, or changes to the title of the work. (*See* Show Cause Order, Dkt. #217, p. 3.) Although the Compendium lists these as "examples," they are not an exhaustive list. As here, "[a] supplementary registration may be used to correct or amplify the claim that has been asserted in the basic registration. Specifically, it may be used to correct or amend the information that appears on the certificate of registration in the fields/spaces marked Author Created, Limitation of Copyright Claim, Nature of Authorship, and/or Material Added to This Work." (Compendium, 1802.6(J).) In fact, there are numerous cases in which the Copyright Office has accepted supplemental registrations during litigation for changes, including changes that are subject to fraud allegations. *See Olem Shoe Corp.*, 2011 WL 6202282, at *3 (allowing supplemental registration to exclude pre-existing materials); *Covetrus*, 2022 WL 17417289, at *2 (allowing supplemental registration to correct inaccuracies alleged to render certificates invalid); *Goode Time Productions, LLC v. Just*, No. 4:19-CV-058, 2021 WL 9880871, at *2 (E.D. Tex. July 2, 2021) (allowing supplemental registration to correct publication status); *FenF, LLC v. Groupon, Inc.*, 19-12278, 2021 WL 8650619, at *2 (E.D.

14

Mich. Mar. 29, 2021) (allowing supplemental registration to correct "work-for-hire" status). The guidance from District of Maine in *Covetrus* is helpful:

> Plaintiffs have not cited authority to the effect that there exists a litigation bar preventing copyright owners from supplementing certificates of registration after an alleged infringer files suit to invalidate their certificates. Instead, Plaintiffs proceed as though the rules of discovery should disfavor the practice of supplementation during civil litigation. But it would seem a poor policy to take that approach, at least in a litigation in which the alleged infringer has petitioned the court to stay proceedings to refer multiple questions to the Register to undermine the validity of the certificates of registration and the Register has, in the interim, issued supplemental registrations.

*Covetrus*, 2022 WL 17417289, at *2. The reasoning in *Covetrus* applies with full force here. To the extent Take-Two ever intended to attack the "Fire" and "Scroll" registrations with fraud claims (**it has not**), the supplemental registrations provide guidance (indeed, should resolve the matter entirely) as to the materiality of any inaccuracies. *Olem Shoe Corp.*, 2011 WL 6202282, at *6 ("To the extent the Register has already offered clear guidance on how it would handle a matter in issue, the Court similarly believes it may refrain from re-issuing duplicative or self-evident questions.") Mr. Hayden has not done anything underhanded or nefarious—he, in good faith, sought to correct an inaccuracy regarding preexisting work in his initial applications and then promptly produced the certificates during discovery. *See Freeplay Music*, 2019 WL 4647305, at *8. The Register accepted the supplemental registrations, which demonstrates that these errors were not material. Take Two itself never alleged an "fraud" with regard to these supplemental registrations. Accordingly, it is neither necessary nor appropriate to refer any questions about the "Fire" or "Scroll" registrations to the Register.

**IV.  Conclusion**

For the reasons set forth above, Mr. Hayden respectfully opposes the referral of any questions related to his copyright applications to the Register.

15

Dated: May 5, 2023                                      Respectfully submitted,

By: */s/ Andrew Alexander*
John Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Todd R. Tucker (Ohio Bar No. 0065617)
Andrew Alexander (Ohio Bar No. 0091167)
Josh A. Friedman (Ohio Bar No. 0091049)
Dustin Likens (Ohio Bar No. 0097891)
Brandon E. Brown (Ohio Bar No. 0097013)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
ttucker@calfee.com
aalexander@calfee.com
jfriedman@calfee.com
dlikens@calfee.com
bbrown@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

16

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2023, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's Electronic Filing System to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's System.

                                           */s/ Andrew Alexander*