UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES HAYDEN,<br><br>        Plaintiff,<br><br>    v.<br><br>2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>        Defendants. | CASE NO. 1:17-cv-02635-CAB |

**DEFENDANTS 2K GAMES, INC. AND
TAKE-TWO INTERACTIVE SOFTWARE, INC.'S
<u>RESPONSE TO ORDER TO SHOW CAUSE</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 3

    A. Referral to the Copyright Office Will Show Plaintiff Has Not Met the Pre-Suit Registration Requirement ................................................................. 3

    B. The Supplemental Registrations Would Not Have Been Granted Had the Copyright Office Been Notified of this Litigation ................................ 10

III. CONCLUSION .................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*,
    499 U.S. 340 (1991) .................................................................................................. 2, 5, 6

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
    No. 3:17 Civ. 42, 2019 WL 4647305 (S.D. Ohio Sept. 24, 2019) ......................................... 10

*Gomba Music, Inc. v. Avant*,
    62 F. Supp. 3d 632 (E.D. Mich. 2014) ................................................................................ 10

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    142 S. Ct. 941 (2022) ............................................................................................................ 2

**Statutes**

17 U.S.C. § 103 ............................................................................................................... *passim*

17 U.S.C. § 409 ................................................................................................................ 5, 6, 7, 9

17 U.S.C. § 411 ............................................................................................................... *passim*

17 U.S.C. § 508 ....................................................................................................................... 10

**Rules**

Local Rule 3.13(c)(2) ............................................................................................................ 1, 11

**Other Authorities**

Compendium of U.S. Copyright Office Practices (3d ed.), *available at*
    https://www.copyright.gov/comp3/ ............................................................................... 10, 13

REPORT ON THE FILING OR DETERMINATION OF AN ACTION OR APPEAL REGARDING
    A COPYRIGHT, *available at*
    https://www.ohnd.uscourts.gov/sites/ohnd/files/AO121.pdf ................................................. 11

Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. (collectively, "Take-Two") respectfully submit this response to the Order to Show Cause. Dkt. 217 (Ord.).

## I. INTRODUCTION

A fundamental part of the copyright system is its reliance on applicants to make truthful and accurate disclosures of pre-existing works when applying for a copyright registration. This is critical. It enables the Copyright Office to determine whether the work is sufficiently original to register, and it allows the public to understand whether the claimed copyright has a more limited scope than the entire work.

This case presents these precise problems. Plaintiff James Hayden did not disclose to the Copyright Office that (1) the Brother's Keeper Tattoo on Tristan Thompson was copied from the Bible and the Sistine Chapel; (2) the Lion Tattoo on LeBron James was copied from the registered trademark of the Venetian Resort; (3) the Scroll Tattoo is comprised mainly of work by another tattooist to which Plaintiff merely added unauthorized shading and *de minimis* other material; and (4) the Fire Tattoo likewise is an unauthorized derivative work of a preexisting tattoo. These facts directly undermine Plaintiff's claim that the tattoos are original. As a result, when Plaintiff applied to register these tattoos without disclosing them, his material misrepresentations allowed him to obtain registrations in unauthorized derivative works and works that he did not independently create. Nor was this an innocent mistake—it is impossible for Plaintiff to assert that he was not aware of the very pre-existing sources that he copied to create the tattoos.

In addition to his lack of candor before the Copyright Office, Plaintiff violated Local Rule 3.13(c)(2) by failing to file form AO 121 when he commenced this litigation. As a result of Plaintiff's failure to follow the Local Rules, it appears that the Clerk of the Court did not transmit form AO 121 to the Copyright Office, notifying it that this litigation had been filed. Plaintiff

1

then applied for two supplemental registrations to address his material misrepresentations and alter the scope of what was covered by the original registrations. And, despite filing four complaints, he never filed form AO 121. As Plaintiff did not inform the Copyright Office of this litigation, the Copyright Office appears to have been unaware of this litigation or how granting supplemental registrations might impact it.

In light of Plaintiff's material misrepresentations, Take-Two agrees with the Court that a referral to the Copyright Office is required. Although Take-Two initially intended to request such a referral after trial as occurred in *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941 (2022), Take-Two has no cause to object to the Court's immediate referral of this matter to the Copyright Office to resolve the issue and properly inform the Copyright Office of the litigation. In fact, due to the dispositive impact that the Copyright Office's decision may have, and in light of the efficiency and jurisdictional concerns raised by this Court about issuing an *advisory* decision, Take-Two now believes the better course is to refer these registration matters to the Copyright Office now and not conduct a trial until after the Copyright Office issues its decisions.

Take-Two also submits that, when the Court refers the matter to the Copyright Office, the Office will confirm that had it known of Plaintiff's many misrepresentations it would have refused to register these works. This is because, as described below, copyright protection requires independent creation and does not extend to unauthorized derivative works. *See Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 346 (1991); 17 U.S.C. § 103(a). If the Copyright Office makes such a finding, Take-Two also contends that Plaintiff cannot meet 17 U.S.C. § 411(a)'s requirement that his works be registered before commencing this lawsuit. Such a finding would dispose of most of the registrations in this case, leaving only two tattoos,

2

both of which were inked on LeBron James—the Gloria Tattoo and the Shoulder Stars Tattoo—which, as Take-Two explained, are unprotectable *scenes-a-faire*, consisting of common tropes in tattooing, short phrases, and public domain material. See Dkt. 112 at 10–11. Accordingly, as referral could have a significant impact on the scope of the forthcoming trial, Take-Two agrees that referral now is appropriate and efficient.

## II. ARGUMENT

### A. Referral to the Copyright Office Will Show Plaintiff Has Not Met the Pre-Suit Registration Requirement

Four of Plaintiff's copyright registrations, submitted on his behalf by his attorney, contain numerous material inaccuracies of which he undeniably knew because they relate to the origins of the material that he claims to have inked. These inaccuracies have significant implications for this lawsuit. Pursuant to 17 U.S.C. § 411(a), "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(b)(1) provides that, if a certificate of registration contains inaccurate information, it satisfies the registration requirement *unless* "(a) the inaccurate information was included on the application for registration with knowledge that it was inaccurate; and (b) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2) provides that, where knowingly inaccurate information is alleged, the court "shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." Take-Two contends that Plaintiff's copyright registrations contain knowingly inaccurate information and, thus, this Court is required to request that the Register advise it as to whether the inaccurate information would have caused the registrations to be refused.

3

Take-Two expects referral to the Copyright Office to show that the Office would have refused registration.  ***First***, the Brother's Keeper Tattoo (Reg. No. VAu-001-292-453) on Tristan Thompson's chest was copied from Michelangelo's iconic Sistine Chapel fresco, "The Creation of Adam," with the phrase "my brother's keeper" copied from the Biblical story of Cain and Abel.  A side-by-side comparison of Michelangelo's work with Plaintiff's is shown below.

 

The Sistine Chapel                                   Brother's Keeper Tattoo

Mr. Thompson himself explained that "The words 'My Brother's Keeper' are from the Book of Genesis and reference the story of Cain and Abel," and that "the image of the hand of God reaching out to touch the hand of man," is "part of the Sistine Chapel."  Dkt. 101-04 (T. Thompson Decl.) ¶ 6; Dkt. 162-04 (T. Thompson Dep. Tr.) at 96:17–98:8.  Mr. Hayden did not disclose that the Brother's Keeper Tattoo was copied from pre-existing sources when he registered it with the Copyright Office.  *See* Dkt 101-49 (Copyright Application) at 74–87.[1]  This is despite the fact that a copyright application requires disclosing: "if the copyright claimant is not the author, a brief statement of how the claimant obtained ownership of the copyright," "an identification of any preexisting work or works that it is based on or incorporates," and "any other information regarded by the Register of Copyrights as bearing upon the preparation or

---

[1] There is no supplemental registration for the Brother's Keeper Tattoo.

identification of the work or the existence, ownership, or duration of the copyright." *See* 17 U.S.C. § 409 (5), (9), & (10).

Take-Two submits that had this information been properly disclosed, the Copyright Office would have refused to register the work on two bases. As an initial matter, it does not meet the independent creation requirement for originality. *See Feist*, 499 U.S. at 346. Further, under 17 U.S.C. § 103(b), copyright protection does not extend to pre-existing material employed in a work, the My Brother's Keeper Tattoo is comprised entirely of such pre-existing material, and the selection of a Biblical phrase paired with a chapel fresco is not minimally creative. Pursuant to 17 U.S.C. § 411(b), the Copyright Office should be asked whether it would have refused to register the Brother's Keeper Tattoo had Plaintiff disclosed these pre-existing sources.

***Second***, the Lion Tattoo (Reg. No. VAu-001-271-044) on LeBron James was copied from a playing card from the Venetian Resort. *See* Dkt. 212-08 (Venetian Playing Cards); Dkt. 101-48 (Venetian Trademark Registration).

 

Venetian Resort Logo　　　Lion Tattoo

This is confirmed not only by comparing the two (as shown above), but by the testimony of both Mr. Hayden and Mr. James. Dkt. 101-21 (J. Hayden Dep. Tr.) at 81:25–82:8, 83:21–25, 116:20–117:2 (Q: "Did Mr. James bring anything into your shop to show what he wanted the lion tattoo to look like?" A: "It was a reference card, like a playing card." Q: "Did he come into

5

your shop with a playing card that depicted a lion?" A: "Yeah."); Dkt. 101-02 (L. James Decl.) ¶ 8 ("The picture of a lion holding a shield was on a deck of playing cards from the Venetian Resort that I brought with me to Mr. Hayden."); Dkt. 162-03 (L. James Dep. Tr.) at 116:11–23. Mr. Hayden did not disclose that the Lion Tattoo was copied from a pre-existing logo when he registered it with the Copyright Office. *See* Dkt 101-49 (Copyright Application) at 16–30.[2] This is despite the fact a copyright application requires disclosing: "if the copyright claimant is not the author, a brief statement of how the claimant obtained ownership of the copyright," "an identification of any preexisting work or works that it is based on or incorporates," and "any other information regarded by the Register of Copyrights as bearing upon the preparation or identification of the work or the existence, ownership, or duration of the copyright." *See* 17 U.S.C. § 409 (5), (9) & (10).

Take-Two submits that had this information been properly disclosed, the Copyright Office would have refused to register the work on the same two bases. It does not meet the independent creation prong of originality because it was copied. *See Feist*, 499 U.S. at 346. Moreover, under 17 U.S.C. § 103(a), copyright protection does not extend to unauthorized derivative works, and Plaintiff inked the Lion Tattoo using the Venetian hotel logo without permission. Pursuant to 17 U.S.C. § 411(b), the Copyright Office should be asked whether it would have refused to register the Lion Tattoo had Plaintiff disclosed it was copied from this pre-existing source.

***Third***, the Scroll Tattoo (Reg. No. VAu-001-287-545) on Danny Green is an unauthorized derivative work, comprised primarily of elements inked by another tattooist. *See* Dkt. 95-22 (Hayden Dep. Tr.) at 99:13–100:7. As shown below, Mr. Green's arm before

---

[2] There is no supplemental registration for the Lion Tattoo.

6

Plaintiff inked the Scroll Tattoo already had a scroll with the names "Rashad," "Devonte," and "Dante" (left). Plaintiff merely added shading and illustrations around on the edges (right).




Before      After

There is no evidence in the record that Plaintiff had permission from the prior tattooist to create a derivative work of the pre-existing scroll on Mr. Green's body. When he had his lawyer apply to register the Scroll Tattoo, Plaintiff did not disclose this other author or limit his claim in the tattoo in any way. Dkt. 94-09 (Copyright Registration) at 1–3; Dkt. 101-49 (Copyright Application). This is despite the fact a copyright application requires disclosing: "if the copyright claimant is not the author, a brief statement of how the claimant obtained ownership of the copyright," "an identification of any preexisting work or works that it is based on or incorporates," and "any other information regarded by the Register of Copyrights as bearing upon the preparation or identification of the work or the existence, ownership, or duration of the copyright." *See* 17 U.S.C. 409 (5), (9) & (10). Midway through this lawsuit, Plaintiff applied for a supplemental registration that would include a limitation of claim consistent with these undisputed facts. This is further evidence that, when he applied for the original copyright registration, Plaintiff knowingly misrepresented to the Copyright Office that he created the tattoo in its entirety when he did not. Further, Plaintiff never disclosed—not in the application for the original registration or the supplemental registration—that the tattoo was based on material

7

created by *a different tattooist* from whom Plaintiff did not have permission to create a derivative work and, thus, the tattoo is not copyrightable. 17 U.S.C. § 103(a). Moreover, with regard to the supplemental registration, these are material changes, not minor clerical errors, and thus the supplemental registration should not have been issued in the midst of this lawsuit. *Infra* 10–13.

Take-Two submits that had this information been properly disclosed, the Copyright Office would have refused the original application and the supplemental registration. Pursuant to 17 U.S.C. § 411(b), the Copyright Office should be asked whether it would have refused to register the Scroll Tattoo had Plaintiff disclosed it was derived from another author's work.

**Fourth**, the Fire Tattoo (Reg. VAu-001-287-552) on Danny Green is an unauthorized derivative work, comprised primarily of elements inked by another tattooist. *See* Ex. A (Hayden Dep. Tr.) at 93:6–96:19. A side-by-side of Mr. Green's arm before and after Plaintiff inked the Fire Tattoo is shown below, illustrating how the entire basketball player, some of the flames, the text, and initials were already on Mr. Green's body before he was inked by Plaintiff, and Plaintiff merely added additional flames—the main portion of the tattoo was inked by a different tattoo artist.





Plaintiff testified that he did not ask the permission of the first tattooist, did not ask permission to modify the work, and did not think he had to ask permission from the tattooist so long as he had permission to modify the tattoo from Mr. Green. *See* Dkt. 101-21 (Hayden Dep.

8

Tr.) at 94:9–23.  When he had his lawyer apply to register the Fire Tattoo, Plaintiff did not disclose this other author or limit the claim in any way.  Dkt. 94-09 (Copyright Registration) at 1–3; Dkt. 101-49 (Copyright Application).  This is despite the fact a copyright application requires disclosing: "if the copyright claimant is not the author, a brief statement of how the claimant obtained ownership of the copyright," "an identification of any preexisting work or works that it is based on or incorporates," and "any other information regarded by the Register of Copyrights as bearing upon the preparation or identification of the work or the existence, ownership, or duration of the copyright."  *See* 17 U.S.C. 409 (5), (9), & (10).  Midway through this lawsuit, Plaintiff applied for a supplemental registration that would include a limitation of claim consistent with these undisputed facts.  This is further evidence that, when Plaintiff applied for the original registration, he knowingly misrepresented to the Copyright Office that he created the tattoo in its entirety when he did not.  Further, Plaintiff never disclosed—not in the application for the original registration or for the supplemental registration—that the tattoo was based on material created by *a different tattooist* from whom Plaintiff did not have permission to create a derivative work and, thus, the tattoo is not copyrightable.  17 U.S.C. § 103(a).  Moreover, with regard to the supplemental registration, these are material changes, not minor clerical errors, and thus the supplemental registration should not have been issued in the midst of this lawsuit.  *Infra* 10–13.

      Take-Two submits that had this information been properly disclosed, the Copyright Office would have refused the original application and the supplemental registration.  Pursuant to 17 U.S.C. § 411(b), the Copyright Office should be asked whether it would have refused to register the Fire Tattoo had Plaintiff disclosed it was derived from another author's work.[3]

---

[3]    Each of the inaccuracies described herein related to the Brother's Keeper Tattoo, Lion Tattoo, Fire Tattoo, and Scroll Tattoo, also bear on Take-Two's common law fraud on the Copyright Office defense.  Even if the Court

9

## B. The Supplemental Registrations Would Not Have Been Granted Had the Copyright Office Been Notified of this Litigation

In addition to the Copyright Office refusing to register the four tattoos discussed above had it known the true facts concerning their creation, it also would have refused to issue Plaintiffs' supplemental registrations for the Scroll Tattoo and Fire Tattoo if it had been aware of this litigation. The policy of the Copyright Office as set forth in the Copyright Compendium is that "[i]f the U.S. Copyright Office is aware that there is actual or prospective litigation or an adverse claim involving a basic registration, the Office may decline to issue a supplementary registration until the applicant has confirmed in writing that the dispute has been resolved." Compendium of U.S. Copyright Office Practices § 1802.9(G), *available at* https://www.copyright.gov/comp3/ (hereinafter "Compendium")). Circumstances where the Office may decline to issue a supplementary registration include "if it seems likely that the proposed change would be directly at issue in the litigation" or "the proposed change, correction, or amplification may confuse or complicate the pending dispute." *Id.*

Plaintiff never notified the Copyright Office of this litigation despite being required to do so. Pursuant to 17 U.S.C. § 508, courts must "send written notification to the Register of Copyrights setting forth, as far as is shown by the papers filed in the court, the names and addresses of the parties and the title, author, and registration number of each work involved in the action." 17 U.S.C. § 508(a). This Court effectuates this statutory directive by requiring that,

---

does not refer this issue or the Copyright Office indicates that it would nevertheless have issued the registrations, the common law defense of fraud on the Copyright Office provides that a copyright is invalid where: "(1)the application for the copyright is factually inaccurate; (2) the inaccuracies were willful or deliberate; and (3) the Copyright Office relied on those misrepresentations." *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17 Civ. 42, 2019 WL 4647305, at *7 (S.D. Ohio Sept. 24, 2019); *Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 642 (E.D. Mich. 2014) (allowing declaratory action for invalidity based on fraud on the copyright office). Unlike 17 U.S.C. § 411(b), the Copyright Office does not need to inform the Court that it would have refused the registration nor that it would have done so for such misrepresentations to constitute fraud.

10

"[i]n all cases involving copyright claims," the party filing the complaint "***must file*** an AO 121 Report on the Filing or Determination of an Action or Appeal Regarding a Copyright Form identifying the copyright registration number(s)." LR 3.13(c)(2) (emphasis added). That form is readily available on this Court's website. *See* REPORT ON THE FILING OR DETERMINATION OF AN ACTION OR APPEAL REGARDING A COPYRIGHT, *available at* https://www.ohnd.uscourts.gov/sites/ohnd/files/AO121.pdf. Despite this requirement, Plaintiff never filed the required form. As a result, it does not appear that the form was transmitted to the Copyright Office and, when Plaintiff applied for the supplemental registrations, the Copyright Office did not know that the original registrations were at issue in this litigation.

Had the Copyright Office been aware of this litigation, it would have refused to issue Plaintiff's supplemental registrations. As explained above, Danny Green already had pre-existing tattoos on his arms at the time that Plaintiff inked him, to which Plaintiff merely added shading and *de minimis* other material. *Supra* 6. Shortly before Plaintiff filed this litigation, he filed his registrations for copyrights in the Fire Tattoo and Scroll Tattoo along with the following deposit copies, showing the entirety of the Fire Tattoo and Scroll Tattoo. He did not indicate the material that he did not create, and he did not exclude it from his claim:

|  |  |
|---|---|
| **Fire D.G.** (*see* Dkt. 95-50 at 56) | **Scroll D.G.** (*see* Dkt. 95-50 at 70) |

11

Plaintiff then sued Take-Two for copyright infringement, asserting that he "created the following design on Mr. Green," indicating the entirety of the Fire Tattoo and Scroll Tattoo that are inked on Danny Green, asserting that he was the "author" of the designs, and claiming that each design was "an original work of authorship by HAYDEN." *See* Dkt. 1 (Compl.) ¶¶ 64–66, 67–69; *see also* Dkt. 3 (First. Am. Compl.) ¶¶ 65–67, 72–74 (same); Dkt. 12 (Sec. Am. Compl.) ¶¶ 66–68, 73–75 (same).  In June 2019 (midway through this litigation), Plaintiff responded to an interrogatory by admitting that the Fire Tattoo and Scroll Tattoo were each based on material created by *a different tattooist*.  *See* Ex. B (Pl.'s Obj. & Resps. to Take-Two's First Set of Interrogs.) at 8–9.  Plaintiff then applied for supplemental registrations in which he excluded significant portions of each of the two tattoos.  For the Fire Tattoo, he excluded "2-D artwork, Outline of character, outline of additional shapes, and text."  *See* Dkt. 94-08 (Fire D.G. Suppl. Cert. of Reg.) at 6.  For the Scroll Tattoo, he excluded "2-D artwork, Outline of scroll and text within the scroll."  *See* Dkt. 94-09 (Scroll D.G. Suppl. Cert. of Reg.) at 6.  As this Court found, what remained were only "the enhancements, accents, shading and other design elements surrounding existing tattoos (presumably by another artist)."  Ord. 2.  As Plaintiff is the person who inked the additions, he knew at the time that he filed his copyright registrations in the Scroll Tattoo and Fire Tattoo that he did not author the work that he was registering.[4]

The elements that Plaintiff excluded from his registration in the middle of this litigation were hotly disputed by the parties.  Plaintiff's complaints accused Take-Two of infringing the entirety of the Scroll Tattoo and Fire Tattoo.  Only after Take-Two propounded an interrogatory on Plaintiff asking him to explain the conception and creation of the Fire Tattoo and Scroll

---

[4]   Even in his Fourth Amendment (and currently operative) Complaint, Plaintiff attaches only his original registrations for the Scroll Tattoo and the Fire Tattoo that do not indicate any material excluded from his copyright claim.  *See* Dkt. 33 (Fourth Am. Compl.) Exs. F & G.  Nor does he attach the supplemental registrations thereto.

12

Tattoo did he apply for supplemental registrations. The significant changes that Plaintiff made in applying for his supplemental registrations, however, were not minor changes such as "spelling mistakes, clerical errors, or changes to the title of the work," which may be supplemented during litigation. Compendium § 1802.9(G). Rather, they were an attempt to carve out the pre-existing work of an entirely different tattooist or tattooists, despite the fact that Plaintiff was aware when he first applied for his copyright registrations that they were based on a pre-existing work. *See* Dkt. 101-03 (Decl. of Danny Green) ¶¶ 6–7. Thus, the Office should advise whether, had it been aware of this litigation, these "material changes bearing on authorship and originality would have resulted in a refusal of registration." Ord. 3.

Further, even in Plaintiff's applications for the supplemental registrations, he did not disclose that the tattoos were unauthorized derivative works, making them not proper subject matter for registration. *See supra* 6. Had the Office been aware of this litigation when it reviewed the applications it would have also been aware that Plaintiff's registrations were for unauthorized derivative works. Thus, and relatedly, the Office should be asked whether its knowledge of the pending litigation would have caused it to refuse the supplemental registrations as involving unauthorized derivative works.

### III. CONCLUSION

For the foregoing reasons, Take-Two requests that this Court request that the Copyright Office indicate (a) whether the inaccuracies in Plaintiff's applications for copyright, if known, would have caused the Copyright Office to refuse registration for the Brother's Keeper Tattoo, the Lion Tattoo, the Scroll Tattoo, and the Fire Tattoo; and (b) whether the knowledge of this pending litigation and the material changes bearing on authorship and originality would have resulted in a refusal to issue the supplemental registrations for the Scroll Tattoo and the Fire Tattoo.

Dated: May 5, 2023

/s/ *Dale M. Cendali*
Dale M. Cendali (*pro hac vice*)
Joshua L. Simmons (*pro hac vice*)
Chris Ilardi (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Yungmoon Chang (*pro hac vice*)
Kirkland & Ellis LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4359
yungmoon.chang@kirkland.com

Matthew J. Cavanagh (0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Take-Two 2K Games, Inc. and Take-Two Interactive Software, Inc.*

14