# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| JAMES HAYDEN, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:17-cv-02635-CAB |
| | ) | |
| v. | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| 2K GAMES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S BRIEF IN RESPONSE TO ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

I.   Introduction .............................................................................................. 1

II.  Referral to the Copyright Office regarding the Lion and Brother's Keeper
tattoos is neither mandatory nor appropriate in this case ................................. 2

   A.   Take-Two has not submitted facts that support a claim under 17 U.S.C. §
411(b) .......................................................................................................... 2

      1.   Mr. Hayden's applications for copyright registration did not contain
knowing inaccuracies ..................................................................................... 5

      2.   The alleged inaccuracies would not have resulted in refusal of
registration ..................................................................................................... 8

   B.   This Court's finding that Hayden's tattoos are "original" bars Take-Two's
attempt to relitigate that issue by the doctrine of law of the case ........................... 10

III. The supplemental registrations for "Fire" and "Scroll" should not be
referred to the Copyright Office ................................................................. 12

   A.   Mr. Hayden did not knowingly include inaccurate information in his
supplemental registrations ........................................................................... 13

   B.   Even if the Copyright Office knew of the litigation, it still would have
registered Hayden's supplemental registrations ........................................... 14

IV. Conclusion ............................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Bayoh v. Afropunk Fest 2015 LLC*, No. 18cv5820, 2020 WL 229978 (S.D.N.Y. 2020) ........................................................................................................... 3

*Covetrus Inc. v. Actian Corp.*, No. 2:21-cv-00097, 2022 WL 17417289 (D. Me. Dec. 2, 2022) ...................................................................................... 3, 14, 15

*Duncan v. Blackbird Products Grp., LLC*, No. 17-03404-CV, 2021 WL 7042880 (W.D. Mo. Mar. 3, 2021) ............................................................................. 3

*FenF, LLC v. Groupon, Inc.*, 19-12278, 2021 WL 8650619 (E.D. Mich. Mar. 29, 2021) ..................................................................................................... 15

*Fleming v. Parnell*, No. C13-5062, 2014 WL 1247678 (W.D. Wa. Mar. 24, 2014) .................... 3

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-cv-42, 2019 WL 4647305 (S.D. Ohio Sep. 24, 2019) .......................................................... passim

*Goode Time Productions, LLC v. Just*, No. 4:19-CV-058, 2021 WL 9880871 (E.D. Tex. July 2, 2021) ............................................................................. 14

*Gray v. White*, 18 F. 4th 463 (5th Cir. 2021) ...................................................... 5

*Guino v. Beseder, Inc.*, No. CV 03-1310, 2009 WL 2497447 (D. Ariz. Aug. 13, 2009) ..................................................................................................... 11

*Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. CV 16-0084, 2017 WL 2404918 (C.D. Cal. Mar. 6, 2017) ....................................................................... 3

*Microsoft Corp. v. Technology Enters., LLC*, 805 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011) .................................................................................................. 11

*Olem Shoe Corp. v. Washington Shoe Co.*, Case No. 1:09-cv-23494-CIV (S.D. Fla.) ...................................................................................................... passim

*Schenck v. Orosz*, 105 F. Supp. 3d 812 (M.D. Tenn. 2015) .................................................. 2, 6, 8

*Strategic Marketing, Inc. v. Great Blue Heron Software*, No. 15-cv-80032, 2016 WL 11783289 (S.D. Fla. Aug. 26, 2016) ............................................................... 3

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941 (2022) ...................................... 8

**Statutes**

17 U.S.C. § 105 .................................................................................................... 6

17 U.S.C. § 508 .................................................................................................. 13

**Other Authorities**

Compendium of U.S. Copyright Office Practices § 621.9(D)(5) ............................................ 6, 14

**Rules**

37 C.F.R. § 202.1(a) .............................................................................................. 6

## I. Introduction

Plaintiff, James Hayden, submits this Brief in response to the Court's Show Cause Order, asking whether certain questions about Mr. Hayden's copyright registrations should be sent to the Copyright Office under 17 U.S.C. § 411(b)(2). (Show Cause Order, Dkt. # 217.)

Plaintiff respectfully submits that it is neither necessary nor appropriate to refer these questions to the Register of Copyrights. Section 411(b)(2) does not provide any mandate that a Court *must* submit any allegation of purported fraud or mistake to the Copyright office for guidance, as the language of the section (and the Court's Order) implies. Instead, both courts and the Copyright Office have interpreted § 411(b)(2) to recognize a court's discretion in determining whether to seek the Copyright Office's guidance in order to avoid abuse of the process and balance a court's inherent power to control its own docket. More particularly, referral is *not* appropriate where there lacks sufficient facts showing that (1) the applicant knowingly submitted an application containing inaccurate information, and (2) the inaccuracy, if known, would have resulted in refusal of registration. Take-Two's bare-bones allegations of "Fraud on the Copyright Office" (*see* Defendants' Trial Br., Dkt. #215, pp. 26–27) and the facts in this case fail to meet this standard for any of Mr. Hayden's copyright applications.

Most importantly, the validity of Mr. Hayden's copyrights was squarely in front of this Court on Mr. Hayden's Motion for Partial Summary Judgment. (*See* Mot. for Partial Sum. J., Dkt. # 93, pp. 5–6.) The Court decided this issue in favor of Mr. Hayden in finding the copyrights "original and entitled to protection," a holding which is the law of this case. (*See* Order, Dkt. #193, pp. 5–9.) Further, although Take-Two challenged Mr. Hayden's copyrights on originality, Take-Two was silent on fraud. Indeed, this Court correctly observed, "there has been no suggestion of misfeasance or fraud on the Copyright Office." (*Id.*, at p. 7.) This Court is not

mandated to entertain, let alone act on, Take-Two's footnote in its jury instructions threatening to "request a referral to the Copyright Office" *after* trial on an issue that has already been decided as a matter of law. This (along with many of Take-Two's proposed jury instruction) is simply a last-ditch attempt to relitigate the originality and validity of Mr. Hayden's copyrights. Take-Two seeks to use its jury instructions as an out-of-time motion to reconsider and re-do the summary judgment opinion. This misguided attempt should be rejected—this Court has already held all Mr. Hayden's copyrights are "original and entitled to protection," and that is law of the case.

Mr. Hayden respectfully opposes referral of these questions to the Copyright Office.

## II. Referral to the Copyright Office regarding the Lion and Brother's Keeper tattoos is neither mandatory nor appropriate in this case.

### A. Take-Two has not submitted facts that support a claim under 17 U.S.C. § 411(b).

Take-Two's bare-bones allegations of "Fraud on the Copyright Office" do not trigger a mandatory referral to the Copyright Office under 17 U.S.C. § 411(b)(2). In its Answer, Take-Two makes this bald allegation but then did nothing with it throughout the case until the footnotes in the jury instructions. Although Section 411(b)(2) suggests referral is mandatory in cases where a party simply *alleges* inaccurate information was included on an application for copyright registration, neither courts nor the Copyright Office have interpreted it this way. Such an interpretation "creates serious potential for abuse by introducing a mechanism by which infringers can throw up roadblocks to merited infringement lawsuits, simply by 'alleging' technical violations of underlying copyright registrations." *Schenck v. Orosz*, 105 F. Supp. 3d 812, 818 (M.D. Tenn. 2015); *see also Olem Shoe Corp. v. Washington Shoe Co.*, Case No. 1:09-cv-23494-CIV (S.D. Fla.) (Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) (Attached as Ex. A)). The Register of Copyrights has clarified that courts have discretion to determine whether the claims have factual support. (*See* Ex. A, pp. 10–12.)

The Office noted that "in many, and perhaps most, cases in which it is alleged that there is a misstatement on an application . . . there may be little need for the assistance of the Register because the answer will be apparent." (*Id.* at 11.) Thus, the Office acknowledges courts' leeway to "refrain from issuing requests to the Register" where "the bare allegations are unsupported by any facts," for example by "entertain[ing] a motion for partial summary judgment prior to referring certain questions to the register." (*Id.*) Courts, in turn, have consistently interpreted this guidance to only require a referral where **(1)** the defendants adequately alleged a violation under § 411(b)(1) and (2) (i.e., that the applicant knowingly submitted an inaccurate application and that the Register would have refused registration having known of the inaccuracy.), and **(2)** those allegations are factually supported. *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-cv-42, 2019 WL 4647305, at *9 (S.D. Ohio Sep. 24, 2019) (denying motion for referral because the allegations unsupported); *see also, e.g.*, *Covetrus Inc. v. Actian Corp.*, No. 2:21-cv-00097, 2022 WL 17417289, at *3 (D. Me. Dec. 2, 2022) ("Conceivably, an inadequate showing of materiality of an error or mistake might also undermine a motion to refer[.]").

Indeed, courts *routinely* deny motions for referral where the facts do not support a claim under § 411(b). *See Freeplay*, 2019 WL 4647305, at *9; *Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. CV 16-0084, 2017 WL 2404918, at *5 (C.D. Cal. Mar. 6, 2017); *Olem Shoe Corp. v. Washington Shoe Co.*, No. 09-23494-CIV, 2011 WL 6202282, at *6 (S.D. Fla. Dec. 1,2011); *Strategic Marketing, Inc. v. Great Blue Heron Software*, No. 15-cv-80032, 2016 WL 11783289, at *4 (S.D. Fla. Aug. 26, 2016); *Fleming v. Parnell*, No. C13-5062, 2014 WL 1247678, at *4 (W.D. Wa. Mar. 24, 2014); *Bayoh v. Afropunk Fest 2015 LLC*, No. 18cv5820, 2020 WL 229978, at *4 (S.D.N.Y. 2020); *Duncan v. Blackbird Products Grp., LLC*, No. 17-03404-CV, 2021 WL 7042880, at *13 (W.D. Mo. Mar. 3, 2021).

Take-Two, of course, has never moved this Court for a referral to the Copyright Office. Its "fraud on the copyright" allegations contain little factual support and are certainly insufficient to justify further delaying trial in this case so questions may be referred to the Register. In its trial brief, Take-Two provides one paragraph alleging that "[t]he facts will show that Plaintiff knew that the Brother's Keeper and Lion Tattoos copied from pre-existing works he did not author, specifically a logo from a playing card for the Venetian Hotel and Michelangelo's famous 'Creation of Adam' on the ceiling of the Sistine Chapel." (Take-Two Trial Brief, p. 27, Dkt. # 215.) Take-Two's naked assertions include no facts suggesting Mr. Hayden knew additional information was required in either copyright application to avoid an alleged inaccuracy, nor do they allege any facts suggesting the registrations would have been refused if such additional information had been submitted.

Further, despite Mr. Hayden serving an interrogatory explicitly requesting that Take-Two "[d]escribe the factual basis for each of Your affirmative defenses [*i.e.*, including "Fraud on the Copyright Office"]," Take-Two's wholly conclusory, one-sentence response failed to provide *any* factual support: "Plaintiff committed fraud on the Copyright Office by failing to disclose that one or more of the Tattoos was created based on a pre-existing work, to which Plaintiff holds to rights." (Ex. B, Excerpt from Take-Two's Responses to First Set of Interrogatories.") Take-Two provided no facts establishing the elements under § 411(b)(1). Then, implicitly acknowledging the thin (to be charitable) basis for its fraud claim, Take-Two made ***no*** 'fraud on the Copyright Office' argument in opposition to Mr. Hayden's Motion for Partial Summary Judgment, which explicitly sought adjudication on the validity of his copyrights. (*See* Take-Two Opposition, generally, Dkt. # 112.) Although Take-Two did identify the so-called "pre-existing sources" (a playing card alleged by Take-Two to be from "the Venetian Resort," which has never been

4

produced, and the Sistine Chapel), Take-Two did not allege that Mr. Hayden's registrations were

invalid because he did not include his sources of inspiration in his application. Moreover, after

due consideration of the parties' detailed briefing on the issue (including Take-Two's foregoing

contentions), this Court found "that Plaintiff's works are original and entitled to protection."

(Dkt. # 193, p. 9.)

Take-Two's allegations fall well-short of justifying referral to the Register. Its

"reservation of rights" in a footnote to a jury instruction, suggesting that it *may* request a referral

after trial, simply amounts to a request for this Court to reconsider an issue it has already

adjudicated: that Mr. Hayden's copyrights are original and entitled to protection. Not only is that

issue decided in Mr. Hayden's favor, Take-Two has waived the right to alter that judgment via a

request to the Register because this argument had to be set forth during summary judgment—and

Take-Two did not do that. *See Gray v. White*, 18 F. 4th 463, 469 (5th Cir. 2021) ("when a party

fails to raise an argument in opposition to a motion for summary judgment and instead raises it

for the first time in a motion to alter or amend judgment, that argument is waived").

1. Mr. Hayden's applications for copyright registration did not contain
   knowing inaccuracies.

Not only do Take-Two's allegations fall short and are waived, but the facts also

contradict their allegations. Mr. Hayden did not knowingly submit any inaccuracies in his

copyright applications for any of the Asserted Tattoos. ***First,*** Mr. Hayden's sources of inspiration

for the Lion and Brother's Keeper tattoos are well-known public-domain material—not the kind

of pre-existing content the Copyright Office requires in application for registration. According to

the Compendium of U.S. Copyright Office Practices ("Compendium"), "[i]f an applicant fails to

complete the New Material Included and/or Material Excluded fields in an online application . . .

the application may be accepted if the scope of the claim is clearly defined by the deposit

copy(ies). If so, the registration specialist may register the claim without communicating with the applicant, or may add an annotation to clarify the scope of the claim, if appropriate." (Compendium, § 621.9(D)(5).) As an example, the Compendium explains that not identifying "Biblical text" that is included in song lyrics is okay because it "is clearly in the public domain[.]" (*Id.*)[1] Likewise, courts have held that it is not necessary to disclaim pre-existing work that is clearly in the public domain, for example, the Canadian flag: "it is absurd to claim that [the applicant] needed to disclose certain widely disseminated public domain materials to the Copyright Office. For example, are the defendants actually claiming that the plaintiffs committed fraud on the Copyright Office by failing to disclose that someone other than plaintiffs created the Canadian national flag?" *Schenck*, 105 F. Supp. 3d at 818; *see also Olem Shoe*, 2011 WL 6202282, at *8 (holding that applicant did not need to disclose previously sold patterns depicting "polka-dots").

Both the Sistine Chapel and Lion of Venice imagery, sources of inspiration for the Brother's Keeper and Lion Tattoos, respectively, are widely disseminated public domain materials. Mr. Hayden did not need to disclose them in his copyright registration applications because they are clear from the deposit copies. Take-Two admits that Michelangelo's "Creation of Adam" painting on the Sistine Chapel is "famous"—that is undeniable. Likewise with the Lion of Venice imagery that was a source of inspiration for the Lion Tattoo (and was allegedly depicted on a playing card that Mr. James purportedly brought with him to one of his tattoo sessions with Mr. Hayden). The Lion of Venice (also identified as the Lion of Saint Mark)

---

[1] Similarly, the text in the Brother's Keeper Tattoo is an unprotectable short phrase that constitutes "Unclaimable Material *That Need Not Be Excluded* from the Application" (emphasis added). See Compendium 621.2: "An application is submitted for a musical work titled Ask Not What Your Country Can Do For You. The chorus contains the phrase, 'Ask what you can do for your country,' which was taken from President Kennedy's inaugural address. The New Material Included/Material Excluded fields may be left blank, because the copyright law does not protect short phrases or works of the United States Government. See 17 U.S.C. § 105, 37 C.F.R. § 202.1(a)."

imagery (winged lion with a book or shield) is old, well-known, and widely disseminated,[2] as shown in the *many* particular expressions of this imagery one may readily find via a Google image search:



The Lion Tattoo, while inspired by the Lion of Venice imagery, contains Mr. Hayden's original expressive authorship, including the lion's facial expression, the shield design, and the mane, to name a few, all *in addition to* the countless expressive elements (*e.g*., shading, line thickness, density, color, orientation, etc.) manifest in Mr. Hayden's embodiment of the image in the Tattoo. (*See* Dkt. #193, p. 8; *see, also*, Hayden Summ. J. Reply Br., p. 6–8; Dkt. #139; *see also*, Dkt. #109-18 at 82:6–11, 19–25, 83:21–84:18, 86:11–21, 87:20–25, 118:16–18, 124:1–7.) Premising a fraud on the copyright office claim on not disclosing such widely known and

---

[2] Although the Lion of Venice and Sistine Chapel imagery is well-known, this does not mean Mr. Hayden's particular expressions are not copyrightable or do not contain original expression. They both do, and as this Court has already found that they are "original and entitled to protection." (Order, p. 9; *see also*, Hayden Summary Judgment Reply Br., p. 6–8; Dkt. # 139.)

disseminated imagery that has been in the public domain for centuries has been found by another court to be "absurd." *Schenck*, 105 F. Supp. 3d at 818.

**Second**, even accepting for the sake of argument that Mr. Hayden should have included his sources of inspiration in his application, he did not knowingly omit them. Mr. Hayden testified during his deposition that he did not believe he had to disclose these sources of inspiration because he independently created the tattoos. (Ex. C, Hayden Dep., 128:4–129:5, 135:1–136:9.) Take-Two counsel did not ask him if he *knew* that omitting his sources of inspiration was a mistake or if he was intentionally withholding information. He was not.

Accordingly, there is no basis to allege that Mr. Hayden knowingly provided inaccurate information in his copyright applications for the Lion and Brother's Keeper Tattoos. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 942 (2022) ("legal and factual knowledge" of the inaccuracy is required under § 411(b)).

### 2. The alleged inaccuracies would not have resulted in refusal of registration.

Take-Two has also failed to allege in any filing or discovery response that the Register would have refused registration for the Lion and Brother's Keeper Tattoos had it known that the Lion of Venice and the Sistine Chapel imagery were sources of inspiration. This is because there would have been no reason for refusal. At the time of filing Mr. Hayden's applications, presuming the Register had known the Lion of Venice and Sistine Chapel imagery were sources of inspiration (and, as explained above, it likely *did* know, based on the deposit copies) and determined that they should be identified as preexisting works, the Register would have contacted Mr. Hayden and annotated or amended the application accordingly, so it was allowable: "[T]he usual practice of the Office," where preexisting work is not identified, "would be to contact the applicant to question the inaccurate information," and "[i]n the course of

corresponding with the application, the Office might annotate or amend the application to include an identification of any preexisting work or works on which it is based or which it incorporates and a brief, general statement of the additional material covered by the copyright claim being registered." (Ex. A, Response of the Register in *Olem*, p. 8.) Accordingly, "[c]orrection of such inaccurate information may then allow for registration of any copyrightable authorship in the work." (*Id.*)

Moreover, and perhaps more importantly, the question of whether there is any "copyrightable authorship" in the Lion and Brother's Keeper Tattoos beyond the preexisting materials has been adjudicated affirmatively by this Court. (Dkt. # 193, pp. 7–9.) And that adjudication was based on a much more fully developed record than the Copyright Office would have had when Mr. Hayden filed his applications, even if he had excluded the preexisting material. This Court was fully briefed by the Parties on the issue, including nearly five-pages of argument from Take-Two that the Tattoos lacked originality (Dkt. #112, pp. 7–11) and found—correctly—that the Tattoos are "original and entitled to protection."

In contrast, had Mr. Hayden identified the preexisting material in his initial online application for copyright registration, he would have simply referenced the excluded material in very general terms (e.g., "some public domain material") (*see* Compendium, 621.8(E)) and indicated the type of new material included in similarly general terms (e.g., "original 2-D material") (*see id.*). Accordingly, even if the Register new of Mr. Hayden's sources of inspiration, it would have allowed registration—the inaccuracies alleged by Take-Two would not have been material to registrability.

**B.** <u>This Court's finding that Hayden's tattoos are "original" bars Take-Two's attempt to relitigate that issue by the doctrine of law of the case.</u>

The validity of Mr. Hayden's copyrights was squarely before the Court on summary judgment, thoroughly briefed, and this Court found that Mr. Hayden's Tattoos were "original and entitled to protection." (Order, p. 9, Dkt. #193.) That holding is the law of the case. Take-Two should not be rewarded for sand-bagging its purported "fraud on the Copyright Office" defense until trial, or worse *after* trial, in an attempt to relitigate an issue that has been decided.

In October 2021, Mr. Hayden moved for partial summary judgment that he owned valid copyrights, as evidenced in part by his Certificates of Registration. (*See* Mot. for Partial Sum. J., Dkt. # 93, pp. 5–6.) At that time, Take-Two could have contested the validity of Mr. Hayden's Certificates of Registration and asserted its fraud on the copyright office claims, but it did not. *See Freeplay Music*, 2019 WL 4647305, at *3 (explaining that a copyright registration establishes a presumption of validity, but "[i]f the challenging party proves that the copyright holder committed fraud in the application for the copyright, the presumption of validity will be rebutted"). In Take-Two's Opposition, it devoted nearly five pages in an attempt to "rebut[] any presumption of validity," *but was silent as to fraud*. (Take-Two Opp., Dkt. #112, pp. 6–11.) Rather, Take-Two challenged the originality of the Tattoos, alleging that they "were copied from pre-existing sources" and "comprise standard tattooing tropes and uncopyrightable elements." (*Id.*) This Court reviewed the briefing, acknowledged Take-Two's arguments, including Take-Two's allegations that "[t]he 'Brother's Keeper' Tattoo was copied from Michelangelo's Sistine Chapel fresco" and "[t]he 'Lion' Tattoo is copied from the logo on a playing card from the Venetian Resort in Las Vegas[,]" and correctly found that "*Plaintiff's works are original and entitled to protection.*" (Order, Dkt. #193, pp. 7–8 (emphasis added).)

10

Resolving this matter on partial summary judgment without a referral to the Copyright Office was appropriate and supported by case law and the Register's own guidance. The Register has said courts "may refrain from issuing requests to the Register" where "the bare allegations are unsupported by any facts" and "[t]he court could, for example, entertain a motion for partial summary judgment prior to referring certain questions to the Register." (Ex. A, p. 11.) That was appropriate in this case and is exactly what this Court did. The issue was squarely in front of this Court and Take-Two made "no suggestion of misfeasance or fraud on the Copyright Office." (Order, Dkt. #193, p. 7.) This is now "law of the case." Other courts have similarly denied motions for referral to the Register or attempts to relitigate copyright validity due to "law of the case" after validity was confirmed on summary judgment. *See Guino v. Beseder, Inc.*, No. CV 03-1310, 2009 WL 2497447, at *1 (D. Ariz. Aug. 13, 2009) (denying referral because "the Court has already determined, on several occasions, that the copyrights at issue are valid. . . . As far as law of this case is concerned, these copyrights are valid."); *see also Microsoft Corp. v. Technology Enters., LLC*, 805 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011) ("[i]t has already been decided in this case that the copyrights at issue are valid. That was the premise of the Court's previous summary judgment ruling . . . and that is law of the case.").

Put simply, this Court is not mandated to delay trial further based on Take-Two's "threat" to "request a referral to the Copyright Office" at the 11th hour in a jury instruction footnote. This Court has discretion as to whether and when to refer questions to the Copyright Office—but in this case, the Court has already considered Take-Two's arguments as to the validity of Mr. Hayden's copyrights and found the Tattoos "original and protectible." (Order, Dkt. #193, p. 7.) Moreover, when the issue was squarely in front of this Court, Take-Two had the opportunity— but failed—to make any "suggestion of misfeasance or fraud on the Copyright Office." (*Id.*)

11

Take-Two's footnote should not derail this case that is set for trial in just over one month. Referral to the Copyright Office is neither required nor appropriate.

## III. The supplemental registrations for "Fire" and "Scroll" should not be referred to the Copyright Office.

It is also neither mandatory nor appropriate to refer questions to the Copyright Office concerning the supplemental registrations for the "Fire" and "Scroll" registrations. (Dkt. #93-8, 9.) Mr. Hayden applied for supplemental registration in good faith to correct inadvertent inaccuracies in his "Fire" and "Scroll" applications, when they were first learned about during discovery in this case. Upon learning of these inaccuracies, Mr. Hayden promptly filed supplemental applications for registration to ensure that the Copyright Office was aware of such preexisting works and his registrations reflected this narrowed scope. Mr. Hayden's supplemental registrations have been accepted by the Copyright Office and there is no reason to request further consideration of these applications.

As an initial matter, Take-Two has not made *any* allegation that Mr. Hayden's supplemental registrations for the "Fire" and "Scroll" Tattoos contain inaccurate information. So § 411(b)(2) is not implicated and referral is not necessary for this reason alone. Moreover, the facts and law simply do not support such an allegation. Mr. Hayden was not obligated to inform the Copyright Office of pending litigation and, even if the Register knew of the pending litigation, it still would have registered the supplemental applications. Even so, in the unlikely event the Register would not have accepted the supplemental registrations because there was pending litigation, it is not clear that would have affected this case. Mr. Hayden's initial registrations would still be in effect and he acknowledged through discovery the scope of his original authorship in Mr. Green's Tattoos. (Dkt. #109-37.) There is nothing fraudulent about either of the applications for registration for the "Fire" and "Scroll" Tattoos, and this Court has

found both copyrights to be "original and entitled to protection." This case should move forward with a jury trial on Take-Two's liability, as scheduled.

        A.  <u>Mr. Hayden did not knowingly include inaccurate information in his supplemental registrations.</u>

Mr. Hayden did not include any inaccurate information in his supplemental registrations for the "Fire" and "Scroll" tattoos (even if he did not notify the Register of pending litigation). The U.S. Code requires that the "clerks of the courts of the United States shall send written notification to the Register of Copyrights setting forth, as far as is shown by the papers filed with the court, the names and addresses of the parties and the title, author, and registration number of each work involved in the action." 17 U.S.C. § 508. Although there are mechanisms by which a plaintiff may assist the clerk of courts,[3] there is no statute or guidance in the Compendium requiring the *applicant* to provide that notification to the Copyright Office. The applications for copyright registration, including supplemental registration, do not request information about pending litigation and there is no appropriate input box for which to include that information in the electronic or paper application forms. (Ex. D, Supplemental Registration Form.)

This very issue was addressed in *Freeplay Music*, a case this Court cited in its Show Cause Order. In *Freeplay Music*, the defendant moved for summary judgment or referral to the Copyright Office, asserting that the plaintiff committed fraud on the copyright office by not informing the Register of pending litigation when it filed its supplemental registration. *Freeplay*, 2019 WL 4647305, at *7. In denying that motion, the court explained that "[n]either the

---

[3] Form AO121 is a form that includes the requisite information under § 508 for the clerk to notify the Register. Upon investigating this matter, it became clear that due to inadvertence, a completed AO121 form was not filed. This form assists the clerk with its duty to inform the Register. The requisite information for this form, however, was included in Mr. Hayden's initial Complaint (Dkt. # 1) and the civil cover sheet that he filed, including a designation that his case involved copyright infringement and the registration numbers asserted.

Copyright Compendium nor 17 U.S.C. § 410 imposes an express duty on the copyright holder to notify the Copyright Office of pending litigation when filing a supplemental registration." *Id.*

Accordingly, Mr. Hayden not informing the Copyright Office of pending litigation cannot be a basis for fraud on the Copyright Office or invalidating Mr. Hayden's registrations. Delaying trial to refer this question to the Register is neither necessary nor appropriate.

> **B.** <u>Even if the Copyright Office knew of the litigation, it still would have registered Hayden's supplemental registrations.</u>

Even assuming, for the sake of argument, that Mr. Hayden should have told the Register of pending litigation when he applied for supplemental registration, there is no reason to believe the Register would have refused registration. Supplemental registrations during litigation *are not* limited to correcting spelling mistakes, clerical errors, or changes to the title of the work. (*See* Show Cause Order, Dkt. #217, p. 3.) Although the Compendium lists these as "examples," they are not an exhaustive list. As here, "[a] supplementary registration may be used to correct or amplify the claim that has been asserted in the basic registration. Specifically, it may be used to correct or amend the information that appears on the certificate of registration in the fields/spaces marked Author Created, Limitation of Copyright Claim, Nature of Authorship, and/or Material Added to This Work." (Compendium, 1802.6(J).) In fact, there are numerous cases in which the Copyright Office has accepted supplemental registrations during litigation for changes, including changes that are subject to fraud allegations. *See Olem Shoe Corp.*, 2011 WL 6202282, at *3 (allowing supplemental registration to exclude pre-existing materials); *Covetrus*, 2022 WL 17417289, at *2 (allowing supplemental registration to correct inaccuracies alleged to render certificates invalid); *Goode Time Productions, LLC v. Just*, No. 4:19-CV-058, 2021 WL 9880871, at *2 (E.D. Tex. July 2, 2021) (allowing supplemental registration to correct publication status); *FenF, LLC v. Groupon, Inc.*, 19-12278, 2021 WL 8650619, at *2 (E.D.

14

Mich. Mar. 29, 2021) (allowing supplemental registration to correct "work-for-hire" status). The guidance from District of Maine in *Covetrus* is helpful:

> Plaintiffs have not cited authority to the effect that there exists a litigation bar preventing copyright owners from supplementing certificates of registration after an alleged infringer files suit to invalidate their certificates. Instead, Plaintiffs proceed as though the rules of discovery should disfavor the practice of supplementation during civil litigation. But it would seem a poor policy to take that approach, at least in a litigation in which the alleged infringer has petitioned the court to stay proceedings to refer multiple questions to the Register to undermine the validity of the certificates of registration and the Register has, in the interim, issued supplemental registrations.

*Covetrus*, 2022 WL 17417289, at *2. The reasoning in *Covetrus* applies with full force here. To the extent Take-Two ever intended to attack the "Fire" and "Scroll" registrations with fraud claims (**it has not**), the supplemental registrations provide guidance (indeed, should resolve the matter entirely) as to the materiality of any inaccuracies. *Olem Shoe Corp.*, 2011 WL 6202282, at *6 ("To the extent the Register has already offered clear guidance on how it would handle a matter in issue, the Court similarly believes it may refrain from re-issuing duplicative or self-evident questions.")  Mr. Hayden has not done anything underhanded or nefarious—he, in good faith, sought to correct an inaccuracy regarding preexisting work in his initial applications and then promptly produced the certificates during discovery. *See Freeplay Music*, 2019 WL 4647305, at *8. The Register accepted the supplemental registrations, which demonstrates that these errors were not material. Take Two itself never alleged an "fraud" with regard to these supplemental registrations. Accordingly, it is neither necessary nor appropriate to refer any questions about the "Fire" or "Scroll" registrations to the Register.

## IV.    Conclusion

For the reasons set forth above, Mr. Hayden respectfully opposes the referral of any questions related to his copyright applications to the Register.

Dated: May 5, 2023

Respectfully submitted,

By: */s/ Andrew Alexander*
John Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Todd R. Tucker (Ohio Bar No. 0065617)
Andrew Alexander (Ohio Bar No. 0091167)
Josh A. Friedman (Ohio Bar No. 0091049)
Dustin Likens (Ohio Bar No. 0097891)
Brandon E. Brown (Ohio Bar No. 0097013)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
ttucker@calfee.com
aalexander@calfee.com
jfriedman@calfee.com
dlikens@calfee.com
bbrown@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2023, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's Electronic Filing System to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's System.

*/s/ Andrew Alexander*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-cv-23494-CIV-HUCK/O'SULLIVAN

OLEM SHOE CORP.,

     Plaintiff,

v.

WASHINGTON SHOE CO.,

     Defendant.

_____/

RESPONSE OF THE REGISTER OF COPYRIGHTS
TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)

On September 3, 2010, the Court issued a request to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2). When an allegation is made in legal proceedings that inaccurate information has been knowingly included on an application for copyright registration, a court is required by 17 U.S.C. § 411(b)(2) to seek the Register's advice about "whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." The request from the Court presents three questions for the Register, requesting a response by October 15, 2010.

**QUESTIONS PRESENTED**

The first question relates to Washington Shoe Company's August 9, 2007 registration for 2-dimensional art work applied to 3-dimensional rain boots entitled *Ditsy Dots.* (Registration Number VAu000756950). The court has inquired whether the

Register of Copyrights ("Register") would have refused registration for *Ditsy Dots* if she had known that, although Washington Shoe characterized the work as unpublished, Washington Shoe displayed the boots at a public trade show before submitting the application for registration. *Request to the Register of Copyrights Pursuant to 17 U.S.C. § 411(b)(2)* at 1.

The second question presented relates to Washington Shoe's January 8, 2010 registration for 2-dimensional art work applied to 3-dimensional rain boots entitled *Zebra Supreme-Olem.* (Registration Number VAu001007893). The court has inquired whether the Register would have refused registration for *Zebra Supreme-Olem* if she had known that, although Washington Shoe characterized the work as unpublished, Washington Shoe displayed the *Zebra Supreme-Olem* boots at a public trade show and sold the *Zebra Supreme-Olem* boots in retail stores before submitting the application for registration. *Id.* at 1.

The final question presented relates to Washington Shoe's registration for 2-dimensional art work applied to 3-dimensional rain boots entitled *Ditsy Dots.* (Registration Number VAu000756950). The court has inquired whether the Register would have refused registration for *Ditsy Dots* if she had known that, although Washington Shoe did not identify the work as being a derivative work, Washington Shoe created the artwork by altering a work, *Rose Zebra Supreme,* which had previously been registered. (Registration No. VAu000988278, filed May 21, 2009). *Id.* at 2.

**BACKGROUND**

The Copyright Office ("Office") is an office of public record without enforcement or investigative authority. One of its primary responsibilities is to examine applications to register copyright claims to determine whether they satisfy the requirements of the copyright law. Applications are the primary basis for the public record established and maintained by the Office, and they must meet the statutory requirements outlined in 17 U.S.C. §§ 408(a), 409, and 410. Regulations governing submission of applications are codified in title 37 of the *Code of Federal Regulations*. Guidelines and procedures for internal examination practices are in *The Compendium of Copyright Office Practices II* (hereafter, *Compendium II*). See chapter 100, *Compendium II*.

The statutory requirements for copyright registration dictate that applications shall include the date and nation of a work's first publication if the work has been published. 17 U.S.C. § 409(8); *Compendium II* § 701.02(8). Works may be published via the distribution of copies or phonorecords of the work to the public by sale or other transfer of ownership, or by rental, lease, or lending. Additionally, the offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. However, a public performance or public display of a work does not of itself constitute publication. 17 U.S.C. § 101 (definition of "publication"); *Compendium II* §§ 902, 905, 905.02, 905.05. The statutory requirements for copyright registration also dictate that in the case of a compilation or

3

derivative work, an application shall include an identification of any preexisting work or works that the work being registered is based on or incorporates and a brief, general statement of the additional material covered by the copyright claim being registered. 17 U.S.C. § 409(9); *Compendium II* §§ 701.02(8)-(9).

A fundamental examining principle is that review for compliance with legal requirements does not, "subject to certain exceptions, extend beyond the material deposited to make that registration." *Compendium II* § 108.04. An additional examining principle is that the Office does not usually make findings of fact when examining applications. *Compendium II* § 108.05. However, there are two instances in which the Office will contact an applicant to make inquiries: (1) where there are statements or other evidence within the scope of the application documents that require explanation or clarification, such as an apparent inconsistency, and (2) when the Office takes administrative notice of matters of general knowledge to question applications that appear to contain inaccurate information. *Compendium II* §§ 108.05(a), 108.05(b), 605.01.

The Office will not ordinarily attempt to decide whether or not publication has occurred but will generally leave this decision to the applicant. *Compendium II* § 904(1). However, where the Office has information which is at variance with a statement concerning publication provided by the applicant, or where the appearance of the copy or phonorecord deposited seems clearly inconsistent with such a statement, the Office will correspond with the applicant. *Id.* at § 904(6). Furthermore, where the applicant seeks

4

registration as an unpublished work and provides the Office with a statement of facts which clearly shows that publication has occurred, the Office will not register a claim to copyright in the work as unpublished. *Id.* at § 904(5). In a situation in which the Office would refuse to register a claim to copyright because of an error or omission on the application, in the course of corresponding with the applicant the Office may annotate or amend an application (e.g., to state the date of publication), which may then allow for registration of copyrightable authorship. *Id.* at § 605.03(4).

**ANALYSIS**

Question One

If the Register had known that, although Washington Shoe characterized *Ditsy Dots* as unpublished, Washington Shoe displayed the boots at a public trade show before submitting that application for registration of the copyright, the Register *would not* have refused registration.

Information regarding Washington Shoe displaying the *Ditsy Dots* boots at a public trade show before submitting its application for registration would not be at variance with the statement concerning publication provided by Washington Shoe, because a public display of a work does not of itself constitute publication. 17 U.S.C. § 101 (definition of "publication"); *Compendium II* §§ 904(6), 902. Therefore, the Office

would follow its general practice of accepting the applicant's determination as to whether publication has occurred. *Compendium II* § 904(1).


### Question Two


If the Register had known that, although Washington Shoe characterized *Zebra Supreme-Olem* as unpublished, Washington Shoe displayed the boots at a public trade show and sold the boots in retail stores before filing the registration, the Register most likely *would have refused* registration of the work as unpublished.


As indicated above, information regarding Washington Shoe displaying the *Zebra Supreme-Olem* boots at a public trade show before submitting its application for registration would not lead the Office to deviate from its general practice of leaving determinations as to whether publication has occurred to the applicant. However, information regarding Washington Shoe selling the *Zebra Supreme-Olem* boots in retail stores before submitting the application would be at variance with a statement concerning publication provided by Washington Shoe, because retail sales generally constitute "distribution of copies or phonorecords of the work to the public by sale or other transfer of ownership, or by rental, lease, or lending." *Compendium II* §§ 904(6), 902; 17 U.S.C. § 101. As such, the Office would follow its established practice and correspond with the applicant regarding such information. *Compendium II* § 904(6). If correspondence with the applicant resulted in a statement of facts that revealed that Washington Shoe sold the

*Zebra Supreme-Olem* boots to the public in retail stores, such facts would indicate that publication had occurred, and the Office would follow its established practice and refuse to register a claim to copyright in the work as unpublished. *Id.* at § 904(5).

While in such a situation the Office would have refused to register a claim to copyright in *Zebra Supreme-Olem* as unpublished, in the course of corresponding with the applicant the Office could annotate or amend the application to indicate that the work had indeed been published on the date of the first retail sales. *Id.* at § 605.03(4). Correction of such inaccurate information would then allow for registration of the work as a published work.

### Question Three

If the Register had known that, although Washington Shoe did not identify *Ditsy Dots* as being a derivative work, Washington Shoe created *Ditsy Dots* by altering its previously registered work *Rose Zebra Supreme*, the Register would have refused registration of *Ditsy Dots* as a non-derivative work unless Washington Shoe included information about the preexisting work and a brief, general statement of the additional material covered by the copyright claim in the appropriate spaces on the application for copyright registration.

Title 17 and the Office's practices clearly require that in the case of a compilation or derivative work, applications shall include an identification of any preexisting work or works that it is based on or incorporates, as well as a brief, general statement of the

additional material covered by the copyright claim being registered.  17 U.S.C. § 409(9); *Compendium II* § 701.02(9).

While the Office would, under the circumstances described in Question Three, be compelled to refuse to register a claim to copyright in the work as a non-derivative work if the Office were aware the work actually was a derivative work, the usual practice of the Office under such circumstances would be to contact the applicant to question the inaccurate information. *Id.* at 108.05(b).  In the course of corresponding with the applicant, the Office might annotate or amend the application to include an identification of any preexisting work or works on which it is based or which it incorporates and a brief, general statement of the additional material covered by the copyright claim being registered. *Compendium II* § 605.03(4).  Correction of such inaccurate information may then allow for registration of any copyrightable authorship in the work.

Based on the Register's review of the court's *Order on Motion for Issuance of Request to Register of Copyrights*, it seems apparent to the Register that court intended to pose a different Question Three – a question based on the assumption that Washington Shoe created the artwork for *Zebra Supreme-Olem* (Registration Number VAu001007893), rather than *Ditsy Dots* (Registration Number VAu000756950), by altering its previously registered work *Rose Zebra Supreme* (Registration No. VAu000988278).  Regardless of the works at issue, the applicable law as well as the Register's practices dictate that the Office would be compelled to refuse to register a claim to copyright in the work as a non-derivative work if the Office were aware the

8

work actually was a derivative work. As indicated above, in such a circumstance the Office would contact the applicant to question the inaccurate information. *Id.* at 108.05(b). In the course of corresponding with the applicant, the Office might annotate or amend the application to include an identification of any preexisting work or works on which it is based or which it incorporates and a brief, general statement of the additional material covered by the copyright claim being registered. *Compendium II* § 605.03(4). Correction of such inaccurate information may then allow for registration of any *copyrightable* authorship in the work.

If a corrected application for registration for *Zebra Supreme-Olem* had identified *Rose Zebra Supreme* as a previously existing work on which *Zebra Supreme-Olem* is based or which it incorporates, and if the accompanying brief, general statement identified the additional material covered by the copyright claim as (1) removal of the rose designs and (2) addition[1] and/or removal of silver lining from the zebra stripes, the Register would have refused registration, because the additional material, viewed alone or in combination, would fall short of constituting original authorship.[2] The mere removal of the rose designs does not constitute original authorship. The same is true with

---

[1] Washington Shoe has asserted to the Court that creation of *Zebra Supreme-Olem* began from an original design referred to as "Zebra Supreme Silver," which included a pattern of roses placed over the zebra background. The next steps in creation of *Zebra Supreme-Olem* involved (1) removing the silver lining from the stripes and (2) removing the roses and replacing the silver lining. See D.E. 79-1, Affidavit Of Roel Salonga at ¶ 3. However, based on the Register's review of the deposits for *Zebra Supreme-Olem* and *Rose Zebra Supreme*, the creation of *Zebra Supreme-Olem* appears to have entailed removal of the roses from *Rose Zebra Supreme* and the mere addition of the silver lining to *Zebra Supreme-Olem.* In any event, the Register would not find sufficient derivative work authorship in *Zebra Supreme-Olem* whether it included a silver lining that was not present in *Rose Zebra Supreme* or whether it deleted a silver lining that had been present in *Rose ZebraSupreme*, or whether both steps were part of the creation. The addition or the subtraction of a silver lining that simply follows the contours of the preexisting black stripes is insufficiently original to constitute copyrightable authorship.
[2] Such a decision to refuse registration for *Zebra Supreme-Olem* would not affect the registration or copyright protection for *Rose Zebra Supreme*.

regard to the addition and/or removal of the silver lining, which is not the result of the authorship choices but rather is dictated by the available space between the black zebra stripes and by the preexisting contours of those stripes.

## ISSUES REGARDING 411(b)(2) REFERRALS IN GENERAL

The Register notes the court's concern regarding the structure of 17 U.S.C. § 411(b)(2) and the potential that the provision might be abused by litigants. See, Footnote 4 of the *Order on Motion for Issuance of Request to Register of Copyrights*. Since the Office played an instrumental role in the amendment of 17 U.S.C. § 411(b)(2) as part of the Prioritizing Resources and Organization for Intellectual Property Act of 2008, the Register takes this opportunity to relay its insight regarding the provision. The amendment to 17 U.S.C. § 411(b)(2) was adopted in order to address situations in which courts of appeals have misunderstood Copyright Office registration practices and came to erroneous conclusions about alleged misstatements on applications for registration. See *Raquel v. Education Management. Corp.*, 196 F.3d 171, 177 (3d Cir. Pa. 1999), *vacated and remanded,* 531 U.S. 952 (2000)[3]; See also *Greenberg v. National Geographic Society*, 244 F.3d 1267, 1273 (11th Cir. Fla. 2001).[4] As a result of these decisions, 17 U.S.C. § 411(b)(2) was amended to ensure that no court holds that a certificate is invalid

---

[3] In *Raquel,* the Supreme Court vacated the Third Circuit's decision that concluded that a statement regarding the "nature of this work" on an application was inaccurate and would have occasioned the rejection by the Register of Copyrights of Raquel's application for copyright registration if the Register had realized it was inaccurate. The case was remanded for further consideration in light of the position asserted by the Solicitor General in his brief for the United States, as amicus curiae, filed September 20, 2000, and the Copyright Office's July 5, 2000, Statement of Policy, 65 Fed. Reg. 41508, both of which identified the Third Circuit's misunderstanding of longstanding Copyright Office registration practices

[4] In that case, the Eleventh Circuit misunderstood the Copyright Office's longstanding registration practices regarding identification of authorship identified in an application for registration.

due to what it considers to be a misstatement on an application without first obtaining the input of the Register as to whether the application was properly filed or, in the words of § 411(b)(2), "whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." The Register readily admits that in many, and perhaps even most, cases in which it is alleged that there is a misstatement on an application that might lead a court to conclude that the registration cannot be relied upon as satisfying the statutory prerequisite for an infringement suit, there may be little need for the assistance of the Register because the answer will be apparent. However, 17 U.S.C. § 411(b)(2) was enacted because a court will not always know what information would or would not make a difference in the Register's determination whether to register a copyright.

While 17 U.S.C. § 411(b)(2) requires the court to seek the Register's advice when there is an allegation that an application contains inaccurate information, the Register observes that the statute says nothing about the timing of the request. The Register suggests that, at a minimum, the court retains the power to delay the request until a factual record has been developed, e.g., through affidavits or discovery. The Register believes that if a court concludes that the bare allegations are unsupported by any facts, the court would be free to refrain from issuing requests to the Register. The court could, for example, entertain a motion for partial summary judgment prior to referring certain questions to the Register. If the court concludes that there is no factual basis for certain allegations, such as an allegation that the plaintiff is not the author or copyright owner of the work in question, the court might come to a conclusion on such

issues as a matter of law, in which case there may be no need to refer the question to the Register. In other words, before asking the Register whether she would have refused to register a copyright if she had known about a particular alleged misstatement of fact on an application, a court should feel free to determine whether there is in fact a misstatement of fact.[5]

In addition, the Register agrees with the Court's conclusion that a court will not be bound by the Register's response to a request made pursuant to § 411(b). However, since the issue is whether the inaccuracy of the misstatement on the application would have caused the Register to refuse registration, the Register respectfully submits that it would be appropriate for the court to give deference to the Register's response in such matters, since the Register is in the best position to state what the Register would or would not do under the stated circumstances.

Dated:   October 14, 2010

*Marybeth Peters*

MARYBETH PETERS
Register of Copyrights

---

[5] The Register cautions, however, that if that issue depends even in part on interpretation or understanding of the Copyright Office's registration practices, the more prudent practice – and the practice anticipated in § 411(b) – would be to refer the question to the Register. For example, in *Raquel, supra*, the court misunderstood the purpose of the "Nature of this Work" space on the copyright registration application and concluded that the copyright claimant had made a false statement of fact in completing that part of the application. The court's conclusion was based on an misunderstanding of the function of the "Nature of this Work" space on the application, a misunderstanding that could have been corrected if the court had sought the guidance of the Register.

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES HAYDEN, | CASE NO. 1:17-cv-02635-CAB |
| Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| v. | **DEFENDANT TAKE-TWO INTERACTIVE SOFTWARE INC.'S SEVENTH AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF JAMES HAYDEN'S FIRST SET OF INTERROGATORIES** |
| 2K GAMES, INC. et al., | |
| Defendants. | |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Take-Two Interactive Software, Inc. ("Take-Two"), by and through its undersigned counsel, hereby amends its responses to Plaintiff James Hayden's ("Hayden" or "Plaintiff") Interrogatories, served on May 2, 2019 (the "First Set of Interrogatories" and each individually, an "Interrogatory") in the above-captioned action ("Litigation") as follows:

use the NBA Players' likenesses in its *NBA 2K* games. Mr. James and Mr. Green also directly authorized the use of their likenesses by Take-Two. Mr. Hayden's authorization of the NBA Players to permit the depiction of their tattoos as part of their likenesses may be granted orally, or may be implied from conduct. Here, each Tattoo was created at the request of the NBA Player on whom it was inked, and inked on that player's body by the tattooist for the tattoo. Plaintiff never informed the NBA Players that they would ever need to return to him for his permission to show their likenesses in any media. Indeed, once a tattoo has been inked on to the client's skin, the tattooist exercises no control over it because the tattoo itself is part of the client's body. Thus, the client is free to authorize the use or dissemination of his or her likeness in whatever way he or she sees fit without the necessity of seeking permission from the tattooist. The NBA Players have done so here.

Take-Two's discovery efforts in this Litigation are ongoing, and Take-Two reserves the right to modify and/or supplement this response in light of facts learned during discovery.

## INTERROGATORY NO. 13:

Describe the factual basis for each of Your affirmative defenses, identify all documents that You contend support each such affirmative defense and identify all persons with knowledge of facts relating to the affirmative defenses.

## SECOND AMENDED RESPONSE TO INTERROGATORY NO. 13:

Take-Two incorporates by reference the above-stated General Objections as if fully set forth herein. Take-Two objects to this Interrogatory to the extent that the term "You[r]" is overly broad as indicated in General Objection No. 11. Take-Two objects to this Interrogatory as overly broad and unduly burdensome to the extent that it seeks all facts and all documents regarding the affirmative defenses without limitation. Take-Two objects to this Interrogatory to the extent that it calls for confidential information, trade secrets, or proprietary business

information.  Take-Two will provide such information subject to a Protective Order issued by the Court governing the parties to this Litigation.  Take-Two objects to this Interrogatory to the extent that it seeks information that is or will be in the possession of Plaintiff by referring to documents, taking depositions, or any other means of obtaining discovery in this Litigation that is more convenient, efficient, practical, and less burdensome.  Take-Two objects to this Interrogatory as exceeding the number allowed under Federal Rule of Civil Procedure 33(a)(1). Take-Two objects to this Interrogatory to the extent that it is compound and contains at least eight subparts, each of which constitutes a separate interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(1).  Take-Two further objects that discovery is not complete in this case as depositions have not all been taken.  Further, no expert discovery has taken place.  Thus, this Interrogatory is premature as the factual record on Take-Two's affirmative defenses is incomplete.

Plaintiff has indicated that he believes that Take-Two should supplement its response to this interrogatory pursuant to Federal Rule of Civil Procedure 26(e) to provide information concerning *NBA 2K21*.  That is improper and objectionable for several reasons.  ***First***, Plaintiff defined the "Accused Games" to mean "NBA 2K16, NBA 2K17, NBA 2K18, and any other game identified as infringing in any other amended complaint filed in the above-referenced action."  Plaintiff, however, did not amend his complaint to include *NBA 2K21*.  Thus, *NBA 2K21* is not an Accused Game and, thus, no supplementation to address it is required.  ***Second***, in response to this interrogatory, Take-Two agreed to provide a response with regard to *NBA 2K16, NBA 2K17*, *NBA 2K18*, *NBA 2K19*, *NBA 2K20*, and *NBA 2K Mobile*.  Plaintiff did not raise a dispute with the scope of the response not including *NBA 2K21* and, thus, it also has waived its ability to seek that information now, even if it had amended its complaint.  ***Third***, the fact

28

discovery deadline in this case was January 31, 2020. *See* Dkt. 43. When Plaintiff previously sought belated fact discovery, the Court determined the specific parameters of that discovery and ordered that "[n]o further fact discovery will be allowed." Dkt. 50 at 4. Thus, having been denied further discovery during the actual fact discovery period, it is improper for Plaintiff to an attempt a workaround to seek additional discovery concerning a game that is not part of this case now.

Based on the limited record to date, and subject to, as limited by, and without waiver of the foregoing objections, Take-Two responds as follows:

Plaintiff cannot state a claim upon which relief may be granted for at least the reasons described in Take-Two's responses to this Interrogatory. Moreover, it is Plaintiff's burden to establish copyright infringement. Plaintiff has not established that he independently created the Tattoos or that they are creative. Further, to the extent that Plaintiff is asserting copyrights in tattoos other than the registered tattoos identified in the Complaint (the "Tattoos"), such claims are barred. Moreover, it is Plaintiff's burden to prove that the Tattoos are substantially similar to *NBA 2K*. Plaintiff has not established these requirements.

Take-Two's use of the Tattoos is *de minimis*. In the average game of *NBA 2K*, the NBA Players will not appear, and by extension, the NBA Players' Tattoos will not appear. Additionally, even when the NBA Players do appear and when the NBA Players' Tattoos appear, each quarter in *NBA 2K* lasts only a few minutes. Further, in *NBA 2K*, the NBA Players' Tattoos appear smaller than the size that they appear in real life. When depicted, the NBA Players' Tattoos are also depicted near other visual and auditory elements, such as the basketball, the hoop, the court, the players, coaches, and referees, cheerleaders, spectators, the stadium, and the game clock and scoring system, making them nearly impossible to pick out. In addition, other

29

elements often obstruct the NBA Players' Tattoos, making them impossible to see. The NBA Players' Tattoos also may appear out of focus, as the players are often moving and often very quickly. The NBA Players' Tattoos also play no role in *NBA 2K's* plot. Also, the NBA Players' Tattoos are a fractional piece of the *NBA 2K* program.

Take-Two's use of the Tattoos is fair use. First, Take-Two's use is transformative as the original purpose of the tattoos was to serve as a reflection of the personal expression of the three NBA Players on which they were inked, and Take-Two's purpose is to factually and realistically depict the NBA Players as they actually look in real life. The Tattoos appearing in Take-Two's video game appear much smaller than they do in real life as the NBA Players appear much smaller than they appear in real life. The NBA Players' Tattoos also appear among a plethora of other visual and auditory elements, and any expressive value of the NBA Players' Tattoos has been diminished significantly by *NBA 2K's* other elements, particularly as the NBA Players' Tattoos appear on fluid, moving 3D players while the user is trying to play a fast-moving, interactive game. Second, the NBA Players Tattoos are not creative as they copy pre-existing works and use common elements of tattoos, and any creativity is outweighed by the fact that Take-Two's depiction of the NBA Players' Tattoos realistically depicts real-world subject matter, and the NBA Players' Tattoos were published prior to their inclusion in *NBA 2K*. Third, Take-Two's copying was reasonable in light of its purpose of depicting real life accurately. Fourth, Take-Two has not harmed the market for the NBA Players' Tattoos.

Take-Two's use is authorized, Plaintiff consented to such use, and Plaintiff has waived and is estopped from asserting copyright infringement. Take-Two incorporates by reference its response to Plaintiff's Interrogatory No. 12.

Plaintiff committed fraud on the Copyright Office by failing to disclose that one or more of the Tattoos was created based on a pre-existing work, to which Plaintiff holds no rights.

Take-Two's discovery efforts in this Litigation are ongoing, and Take-Two reserves the right to modify and/or supplement this response in light of facts learned during discovery.

Dated: May 14, 2021        */s/ Dale M. Cendali*

Dale M. Cendali (admitted *pro hac vice*)
Joshua L. Simmons (admitted *pro hac vice*)
Christopher T. Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.*

# EXHIBIT C

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


JAMES HAYDEN,                    CASE NO: 1:17CV2635

        Plaintiff,

         v.

2K GAMES, INC., et al.,

        Defendants.

------------------------------




              Deposition of JAMES HAYDEN

                  Cleveland, Ohio

        Wednesday, October 30, 2019 - 9:04 a.m.












Reported by:

Angela Nixon, RMR, CRR

Job No.: 26345

1    A.         So the page is here?

2    Q.         Yes, that's the Bates numbered page.

3    A.         All right.

4    Q.         And do you see section 4, it says 4 Limitation of

5    Copyright Claim, do you see that?

6    A.         Yes.

7    Q.         And do you see in section 4a it states (Reading:)

8    Material excluded from this claim (material previously

9    registered, previously published, or not owned by this

10   claimant), do you see that?

11   A.         I'm reading with you.

12   Q.         Okay.  Isn't it true that nothing was disclosed

13   on this form about the fact that you used a -- the playing

14   card that Mr. James brought in to create the lion tattoo?

15              MR. MCMULLEN:  Objection.

16   A.         Could you say that again, restate that?

17              MS. CENDALI:  Please read it back.

18                   (Whereupon the court reporter read back the

19                    previous question.)

20              MR. MCMULLEN:  I'll restate my objection.

21   A.         I want you to restate the question if you could.

22   Q.         Why can't you answer my question?

23   A.         I have a hard time understanding what you're

24   asking.

25   Q.         You didn't tell the copyright office when this

1   copyright application was submitted that the lion tattoo

2   had been based on the playing card that Mr. James brought

3   in, did you?

4           MR. MCMULLEN:  Objection.

5   A.      No, because I draw that tattoo on with a marker.

6   Q.      You didn't, in this form, do anything to tell the

7   copyright office that Mr. James had brought in a tattoo of

8   a lion and that he asked you to do something similar to

9   that, correct?

10          MR. MCMULLEN:  Objection.

11  A.      I guess not.

12          THE COURT REPORTER:  I'm sorry, what did you say?

13  A.      I guess not.

14  Q.      Is Kimberly Textoris one of the lawyers

15  representing you in this action?

16  A.      Yes.

17  Q.      And did she file your copyright registrations on

18  your behalf?

19  A.      Yes.

20  Q.      So let's take a look at what's been marked as

21  Defendant's Exhibit 14, a document that appears to be a

22  copyright registration baring Bates Numbers Take-Two 148

23  through 204.  And turning, if you would, to Page 200 of

24  that document.  Is that a drawing you made after the fact

25  to recreate the look of the star tattoo you inked on

1    Q.        Let's take a look at what's been marked as

2    Exhibit 17.  Defendants' Exhibit 17 is a document that

3    appears to be another copyright registration bearing Bates

4    Number Take-Two 184 through 225.  And turning, if you

5    would, to Bates Numbered Page 222 of the document, is that

6    a photograph of the -- my brother's keeper tattoo that you

7    inked on Mr. Thompson?

8    A.        It's a photograph that I drew on Mr. Thompson.

9    Q.        That reflects the -- that tattoo as it was inked

10   on him, isn't that true?

11   A.        Yes.

12   Q.        And isn't it true that nowhere in this document

13   do you disclose that those hands were modeled after the

14   Michelangelo hands?

15             MR. MCMULLEN:  Objection.

16   A.        Because they weren't.

17   Q.        So you just think you were not inspired by

18   Michelangelo's hands of the two hands touching --

19   fingertips touching one another when you did the design for

20   my brother's keeper?

21             MR. MCMULLEN:  Objection.

22   A.        Ask that question again.

23             MS. CENDALI:  Repeat it.

24             (Whereupon the court reporter read back the

25             previous question.)

 1                    MR. MCMULLEN:  Objection.

 2    A.           I don't know, I drew it on with marker.  Like I

 3    said, I'm an artist.

 4    Q.           Well, you drew it on with a marker, but

 5    Michelangelo was an artist too, right, and you knew about

 6    his design with the two fingertips touching one another, or

 7    the two hands, right?

 8    A.           That may be true, but Michelangelo designs

 9    weren't recreated and copy written and used by NBA 2K.

10    Q.           You didn't mention, when you submitted this

11    copyright application to the copyright office, that --

12    anything about Michelangelo's hands, correct?

13                    MR. MCMULLEN:  Objection.

14    A.           Has nothing to do with Michelangelo.

15    Q.           You didn't disclose that there was any

16    preexisting material when you submitted the application

17    reflected in Exhibit 17, isn't that true?

18                    MR. MCMULLEN:  Objection.

19    A.           Not true.

20    Q.           Where do you disclose?  Please look at Page 185.

21    A.           What about it?  I saw it earlier.

22    Q.           Okay.  Where, on Page 185 of -- do you disclose

23    anything about Michelangelo?

24                    MR. MCMULLEN:  Objection.

25    A.           It has nothing to do with Michelangelo, this

# EXHIBIT D

| | | | |
|---|---|---|---|
| **Case #:** | 1-12531782461 | **Type of Case:** | **Date Opened:** 5/5/2023 |
| **Application Format:** | Standard | | Supplementary Registration |

## Original Registration

A supplementary registration is a special type of registration that may be used to correct an error in an **_existing_** registration or to amplify the information given in an **_existing_** registration.

This application has strict eligibility requirements, which are listed below. If you do not meet all of these requirements, please return to the "Home" screen to select another registration option.

1. You must be the author of the work, the claimant who owns all rights initially belonging to the author, the owner of one or more of the exclusive rights in the work, or an authorized agent of the
author, claimant, or owner of an exclusive right.

2. This application may only be used to correct certain types of errors or to amplify certain information in an **_existing_** registration. It **_may not_** be used to amend a pending application. For detailed
information, click here.

3. This application **_may not_** be used:
- To reflect a change in ownership of the work.
- To register a new or revised version of a work.
- To correct an error or omission in a copy or phonorecord that was previously submitted to the Copyright Office.
- To question or challenge the validity of an existing registration.

To complete this application:

- Identify the registration you want to correct or amplify, and the "Type of Work" that best describes the work(s) covered by that registration.

- Complete each screen that appears in the application. Provide all the information that should have been included in the **_existing_** registration. Correct errors that appear in the **_existing_**
registration, and/or provide information needed to amplify the information stated in that registration. Provide a brief statement that identifies and explains the reasons for making the
correction and/or amplification. After making the correction and/or amplification, give the rest of the information exactly as it appears on the **_existing_** certificate of registration.

- Pay the **_non-refundable_** filing fee.

**Please Note: If you are correcting or amplifying a registration for a _group of unpublished works or a group of short online literary works, or a group of works published on the same album_, you must contact the Copyright Office _before_ you submit this application. You can reach the Office by email or by telephone at (202) 707-3000 or (877) 476-0778.**

**Need help? Click here to watch a video that provides step-by-step instructions for completing this application. Click here to read the help text.**

\* I Agree that I have read, understood, and meet all eligibility requirements described above for filing a Supplementary Registration:  ☐

\* Registration Number of Basic Registration (e.g. TXu003234533):  [＿＿＿＿＿＿＿]   Help

\* Year of Basic Registration (YYYY):  [＿＿＿＿＿＿＿]

\* Type Of Work:  [＿＿＿＿＿＿＿ ▼]

--Select a value in Type of Work--

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

Home | My Profile | Help | Contact Us | Log Out |

**Case #:** 1-12531803061        **Date Opened:** 5/5/2023

**Application Format:** Standard

[eCO Navigation Tips](#)



| Links | Completed |
|-------|-----------|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

Select the entry from the dropdown list that best describes the "Type of Work" you seek to register. Read the description below and then click the box below to confirm your selection. Click "Continue" to begin the application.

<span style="color:red">Type of Work cannot be changed after you click "Continue". <u>Click here</u> for more information.:</span>

**\* Type of Work:**  [ Work of the Visual Arts ▾ ]       Help

Visual Arts works include a wide range of pictorial, graphic, and sculptural works of art. This category also includes architectural works.

Examples of pictorial, graphic, and sculptural works include two-dimensional and three-dimensional works of fine, graphic, and applied art; photographs; prints and art reproductions; maps, and technical drawings. Examples of architectural works include buildings and architectural plans.

For more information about registration of pictorial, graphic, or sculptural works, please see [Circular 40](#).

<span style="color:red">**Important note:** You selected the "Standard Application" This application may be used to register **1 work** (including 1 collective work or 1 derivative work).</span>

<span style="color:red">You may register up to 10 unpublished works on the same application, but **YOU MUST** return to the "Home" screen and select the link for **"Register a Group of Unpublished Works"**. Click here if you need help finding this link, and click here to watch a video that provides step-by-step instructions for completing the application for a "Group of Unpublished Works."</span>

<span style="color:red">You are responsible for choosing the correct application form. The electronic registration system is not able to determine whether you selected the correct form or whether your claim will be registered. If you need help choosing the correct form, please visit our website at www.copyright.gov/help/</span>

<span style="color:red">**Important note for photographers:** To register multiple photos, please return to the "Home" screen, then select **"Register a Group of Photographs"** under the heading for "Other Registration Options". Click here if you need help finding this link.</span>

 **\* Click the box to confirm that you have read the description above and selected the entry that best describes the "type of work" you are registering.**

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

| | | | | |
|---|---|---|---|---|
| Case #: | 1-12531803061 | Type of Case: | Work of the Visual Arts | Date Opened: 5/5 |
| Application Format: | Standard | | | Su |

eCO Navigation Tips

## Titles

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

Give the title(s) exactly as it appears on the work. If there is no title, give an identifying phrase, or state 'untitled'.

To enter the title(s), click 'New'. After you enter the title, click 'Save'. Repeat this process for each additional title.

To edit or delete a title, click the appropriate link in the list below. When the list is complete and correct, click 'Continue' to save the information and proceed to the 'Publication/Completion' screen.

### All Titles

| Title of Work | Volume | Number | Issue Date | Ty |
|---|---|---|---|---|

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

Home |  | My Profile | Help | Contact Us | Log Out |

| Case #: | 1-12531803061 | | Date Opened: | 5/5/2023 |
| Application Format: | Standard | | | |

[eCO Navigation Tips](#)

## Publication/Completion

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

**Publication** results from the distribution of copies of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. A work is also "published" if there has been an offering to distribute copies to a group of persons for purposes of further distribution, public performance, or public display. A public performance or display does not, by itself, constitute "publication".

For information on the publication of works online, click [here.](#) Indicate whether this work has been published by. selecting either "yes" or "no" from the drop down list below.

**\*** Has this work been published?: [ ▾ ]

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

Home  |   My Profile  |  Help  |  Contact Us  |  Log Out  |

| | | | |
|---|---|---|---|
| **Case #:** | 1-12531803061 | **Type of Case:** Work of the Visual Arts | **Date Opened:** 5/ |
| **Application Format:** | Standard | | Su |

eCO Navigation Tips

## Authors

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

Name the author(s) of the work being registered, and give the requested information. Generally, the application should name all the authors of the authorship being registered.

Click 'New' to add an author, or, if you are an author and your name appears in the User Profile for this account, click 'Add Me'.

After you enter the author information, click 'Save'. Repeat this process for each additional author.

To edit or delete an author, click the appropriate link in the list below. When the list is complete and correct, click 'Continue' to save the information and proceed to the 'Claimants' screen.

### Authors

| Name | Organization Name | Work For Hire | Anonymous | Pseudonym |
|---|---|---|---|---|
| | | | | |

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

| | | | |
|---|---|---|---|
| **Case #:** | 1-12531803061 | **Type of Case:** | Work of the Visual Arts | **Date Opened:** | 5/5 |
| **Application Format:** | Standard | | | | Su |

eCO Navigation Tips

## Claimants

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

Please identify the copyright claimant(s) in this work. The author is the original copyright claimant. The claimant may also be a person or organization to whom copyright has been transferred.

To be named as a claimant by means of a transfer, a person or organization must own all rights under the U.S. copyright law.

In addition, a claimant must own the copyright in all the authorship covered by this registration.

Click "New" to add a claimant, or, if you are a claimant and your name appears in the User Profile for this account, click 'Add Me' to add your name and address into the claimants list.

After you enter the claimant information, click 'Save'. Repeat this process for each additional claimant.

To edit or delete a claimant, click the appropriate link in the list below. When the list is complete and correct, click 'Continue' to save the information and proceed to the 'Limitation of Claim' screen.

### Claimants

| Name | Organization Name | Transfer Statement | Address |
|---|---|---|---|
| | | | |

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

|  |  |  |  |
|---|---|---|---|
| **Case #:** | 1-12531803061 | **Date Opened:** | 5/5/2023 |
| **Application Format:** | Standard |  |  |

eCO Navigation Tips

## Limitation of Claim

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

Complete this screen to limit your claim if this work contains or is based on previously registered material, previously published material, material in the public domain or material not owned by this claimant. The purpose of this section is to exclude such material from the claim and identify the new material upon which the present claim is based.

**If your work does not contain any preexisting material, click "Continue" to proceed to the Rights and Permissions screen.**

| Material Excluded: | Previous Registration: | New Material Included: |
|---|---|---|
| ☐ 2-D Artwork | 1st Prev. Reg. #: _____ | ☐ 2-D Artwork |
| ☐ Photograph | Year: _____ | ☐ Photograph |
| ☐ Jewelry design | | ☐ Jewelry design |
| ☐ Architectural work | 2nd Prev. Reg. #: _____ | ☐ Architectural work |
| ☐ Sculpture | Year: _____ | ☐ Sculpture |
| ☐ Technical Drawing | | ☐ Technical Drawing |
| ☐ Map | | ☐ Map |
| Other: _____ | | Other: _____ |

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

Home | My Profile | Help | Contact Us | Log Out |

| | |
|---|---|
| **Case #:** 1-12531803061 | **Type of Case:** Work of the Visual Arts  **Date Opened:** 5/5 |
| **Application Format:** Standard | Su |

eCO Navigation Tips

## Rights & Permissions Information (Optional)

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

You may provide contact information for a person and/or organization to be contacted regarding copyright management information or permission to use this work.

**Important: If you prefer not to provide personally identifying information, you may list a third party agent or a post office box.**

**Individual:**

First Name:

Middle Name:

Last Name:

Email:

Phone:

Alternate Phone:

**Organization:**

Organization Name:

Address 1:

Address 2:

City:

State:

Postal Code:

Country:

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

Home | My Profile | Help | Contact Us | Log Out |

| Case #: | 1-12531803061 | Type of Case: | Work of the Visual Arts | Date Opened: | 5/ |
| Application Format: | Standard | | | | Su |

## Correspondent

eCO Navigation Tips

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

This is the person the Copyright Office will contact if it has questions about this application.

Completion of the name, email address and correspondence address is mandatory.

**Individual:**      **Organization:**

* First Name: [                    ]    Organization Name: [                    ]

Middle Name: [                    ]

* Last Name: [                    ]

* Email: [                    ]    * Address 1: [                    ]

Phone: [                    ]    Address 2: [                    ]

Alternate Phone: [                    ]    * City: [                    ]

Fax: [                    ]    State: [        ▼]

Postal Code: [                    ]

Country: [        ▼]

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

Home | My Profile | Help | Contact Us | Log Out

| | | | |
|---|---|---|---|
| **Case #:** | 1-12531803061 | **Type of Case:** | Work of the Visual Arts | **Date Opened:** | 5/5 |
| **Application Format:** | Standard | | | | Su |

eCO Navigation Tips

## Mail Certificate

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

This is the name and address to which the registration certificate should be mailed.

Completion of Individual and/or Organization Information, Address is mandatory.

**Individual:**

* First Name: [          ]

Middle Name: [          ]

* Last Name: [          ]

* Address 1: [          ]

Address 2: [          ]

* City: [          ]

**Organization:**

* Organization Name: [          ]

* State: [     ▼]

* Postal Code: [          ]

Country: [     ▼]

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

**Home** | **My Profile** | **Help** | **Contact Us** | **Log Out**

| | | | |
|---|---|---|---|
| **Case #:** | 1-12531803061 | **Type of Case:** Work of the Visual Arts | **Date Opened:** 5/5 |
| **Application Format:** | Standard | | Su |

**eCO Navigation Tips**

## Mail Certificate

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

This is the name and address to which the registration certificate should be mailed.

Completion of Individual and/or Organization Information, Address is mandatory.

**Individual:**

* First Name: [_____]

Middle Name: [_____]

* Last Name: [_____]

* Address 1: [_____]

Address 2: [_____]

* City: [_____]

**Organization:**

* Organization Name: [_____]

* State: [_____ ▾]

* Postal Code: [_____]

Country: [_____ ▾]

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

Home | My Profile | Help | Contact Us | Log Out |

| | |
|---|---|
| **Case #:** 1-12531803061 | **Date Opened:** 5/5/2023 |
| **Application Format:** Standard | |

[eCO Navigation Tips](#)

## Special Handling (Optional)

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

Special handling is expedited service that is available only to filers who satisfy one or more of the compelling reasons below. Special handling also carries a significant surcharge fee. If you do not qualify for special handling service, please click the Continue button without completing this screen.

Note: The significant special handling surcharge fee is non-refundable. Please click here to review the current fee.

☐ **Special Handling** (The information requested below is required for Special Handling claims)

**Compelling Reason(s)** (At least one must be selected)

☐ Pending or prospective litigation

☐ Customs matters

☐ Contract or publishing deadlines that necessitate the expedited issuance of a certificate

☐ **I certify** that I am the author, copyright claimant of exclusive rights, or the authorized agent of the author, copyright claimant of exclusive rights of this work.

**Explanation for Special Handling:**
This is the place to give any comments/instructions regarding special handling specific to this claim.

[                                                                 ]

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

Home | | My Profile | Help | Contact Us | Log Out |

| | |
|---|---|
| **Case #:** | 1-12531803061 |
| **Application Format:** | Standard |

**Date Opened:** 5/5/2023

eCO Navigation Tips

## Certification

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

Please summarize the corrections and/or amplifications made to the information provided in the basic registration

*  **Correction Explanation**   Help

**AND/OR**

*  **Amplification Explanation**   Help

The Application must be certified by the author, copyright claimant, or owner of exclusive right(s), or by the authorized agent of any of the preceding.

**17 USC 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided by section 409, or in any written statement filed with the application, shall be fined not more than $2500.**

☐   *  **I certify** that I am the author, copyright claimant, or owner of exclusive rights, or the authorized agent of the author, copyright claimant, or owner of exclusive rights of this work, that I reviewed the certificate of registration for this work, and that the information given in this application is correct to the best of my knowledge.

* **Name of certifying individual:** [          ]

*  **Submission Authority:** [          ▾]   Help

**Authorized agent of (name):** [          ]

**Applicant's Internal Tracking Number (Optional):** [          ]

**Note to Copyright Office (Optional):**
This is the place to give any comments specific to this claim, the application, or the deposit copy, if necessary.

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!

Home | My Profile | Help | Contact Us | Log Out |

## Review Submission

eCO Navigation Tips

Please review the entire submission on this screen. If you need to revise any information, return to the appropriate data entry screen to make the revision. When the entire submission is correct, click the "Add to Cart" button at the top of the screen. **Warning: Once you submit your application, you cannot make changes to it. Therefore, please review the information on this screen carefully before proceeding.**

### Case Summary

| Links | Completed |
|---|---|
| Type of Work | |
| Titles | |
| Publication/Completion | |
| Authors | |
| Claimants | |
| Limitation of Claim | |
| Rights & Permissions | |
| Correspondent | |
| Mail Certificate | |
| Special Handling | |
| Certification | |
| Review Submission | |

Case Number:      1-12531803061                 Application Format:   Standard

Contact Name:    Kimberly Textoris

### Basic Registration Details

| Basic Registration Number | Basic Registration Year | Type |
|---|---|---|
| VAu001287545 | 2017 | Work |

### All Titles

| Title of Work | Volume | Number | Issue Date |
|---|---|---|---|
| | | | |

### Publication/Completion

| Published Work | Year Created | Publication Date | Nation of First Publication | ISN Type |
|---|---|---|---|---|
| | | | | |

### Authors & Contributions

| Name | Organization Name | Work For Hire | Citizenship | Domicile | Year of Birth | Year of Death | Anonymous | Pseudonymous | Pseudonym | Text | Art | Pho |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |

### Claimants

| Name | Organization Name | Transfer Statement | Transfer Stmt Other |
|---|---|---|---|
| | | | |

### Claim Limitations review (VA)

| Material Excluded | New Material Included |
|---|---|
| Jewelry | Jewelry |
| Photograph | Photograph |
| 2D Artwork | 2D Artwork |
| Sculpture | Sculpture |
| Architectural | Architectural |
| Technical Drawing | Technical Drawing |
| Map | Map |
| Other | Other |

### Rights & Permissions

First Name:                                          Organization Name:

Middle Name:                                        Address 1:

Last Name:                                           Address 2:

Email:                                               City:

Phone:                                               State:

Alternate Phone:                                     Postal Code:

Country:

## Correspondent

| First Name: | | Organization Name: |
| Middle Name: | | Address 1: |
| Last Name: | | Address 2: |
| Email: | | City: |
| Phone: | | State: |
| Alternate Phone: | | Postal Code: |
| Fax: | | Country: |

## Mail Certificate

| First Name: | | Organization Name: |
| Middle Name: | | Address 1: |
| Last Name: | | Address 2: |
| | | City: |
| | | State: |
| | | Postal Code: |
| | | Country: |

## Certification

Name:  ,

Certified:

Special Handling:

Applicant's Internal Tracking Number:

Note to Copyright Office:

Amplification Explanation:

Correction Explanation:

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Take Our Survey!