UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES HAYDEN,<br><br>    Plaintiff,<br><br>v.<br><br>2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>    Defendants. | CASE NO. 1:17-cv-02635-CAB |

**DEFENDANTS' PROPOSED CASE MANAGEMENT SCHEDULE**

Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. (collectively, "Take-Two"), respectfully submit the following proposed case management schedule pursuant to the Court's Order of August 23, 2023. We submit this proposal to address two issues, namely, the case schedule going forward (including the trial date) and Plaintiff's recent filing of a new complaint.

Plaintiff's proposal setting trial the week of January 8, 2024 should not be adopted by the Court for two reasons. ***First***, Take-Two's counsel and witnesses have a number of specific conflicts with Plaintiff's proposed schedule. As Take-Two informed Plaintiff before his submission and as discussed below, these conflicts include other trials scheduled for late 2023 and early 2024. These conflicts make Plaintiff's proposal unworkable and prejudicial to Take-Two. ***Second***, instead of setting a trial date, Take-Two requests that the Court set a schedule for Take-Two to move for summary judgment in light of the Register of Copyright's guidance. Specifically, as the Register's submissions makes clear, Plaintiff did not satisfy the pre-suit registration requirement for the four tattoos she addressed, and he committed fraud on the

1

Copyright Office. If the Court grants Take-Two's anticipated motion, it would significantly narrow the issues for trial and streamline pre-trial submissions. Plaintiff's proposed schedule does not allow sufficient time for Take-Two to move for summary judgment and obtain a ruling prior to pre-trial submissions, which it proposes scheduling for one month from now. Accordingly, as detailed below, Take-Two proposes a schedule that contemplates summary judgment on these narrow issues as a first step, so that issue can be decided before trial is scheduled. If the Court would prefer to set a trial date, the earliest date that is feasible for Take-Two's counsel and witnesses is April 15, 2024.

Plaintiff's proposal for how this Court should approach his recently-filed lawsuit asserting allegations of infringement involving NBA 2K21 should also be rejected. Plaintiff contends that the present case and the new case should be consolidated without permitting the parties to go through discovery on NBA 2K21. This is a blatant attempt to skirt the Court's prior order preventing Plaintiff from amending the Complaint to include NBA 2K21 so belatedly, when the parties had already gone through fact and expert discovery. As detailed below, allowing NBA 2K21 to be added to this case without discovery, despite its impact on issues such as damages, would prejudice Take-Two's ability to prepare an adequate defense to this new allegation of infringement.

    A.  **Plaintiff's Proposed Schedule is Prejudicial to Defendants**

Plaintiff's proposal to schedule trial for January 8, 2024 should be rejected as Take-Two's counsel and witnesses have significant, pre-existing conflicts that would foreclose their participation on that date. In particular, Take-Two is aware of the following conflicts with Plaintiff's proposed trial and pre-trial dates. ***First***, Take-Two's Ohio counsel, Matthew Cavanaugh, is lead counsel in a different trial scheduled to start on January 30, 2024 (*Boardman Molded Products, Inc. v. Involta, LLC*, Case No. 2021-CV-02140, Court of Common Pleas,

Mahoning County, Ohio). Mr. Cavanaugh will be preparing for that trial throughout the month of January, making participating in a January 8, 2024 trial in this case very challenging. Mr. Cavanagh has been working on this litigation for years, and his inability to participate in the trial in this action would be prejudicial to Take-Two. **Second**, Take-Two's lead counsel, Dale Cendali, along with multiple core members of the trial team, are scheduled to be in the Central District of California for a trial from November 27 to at least December 13, 2024 (*Teradyne, Inc. v. Astronics Test Systems, Inc.*, Case No. 20-2713, Central District of California). This trial, combined with the holidays at the end of the month, will make preparations for an early January trial very difficult for most of Take-Two's trial team. **Third**, Take-Two's tattoo expert, Nina Jablonski, has planned international travel the week of January 8, 2024 and would be unable to testify live at trial during that week. As a result of these multiple, significant conflicts, scheduling trial during the week of January 8, 2024 would be impractical for and prejudicial to Take-Two.

      **B.**     **Summary Judgment Should be Decided before Trial is Scheduled**

Based on the Register of Copyright's guidance, Take-Two seeks to move for summary judgment on two grounds, which could sigficiantly streamline the issues for trial and impact pre-trial submissions. In particular, Take-Two respectfully requests that the Court permit briefing on on the following two issues prior to scheduling trial.

*First*, Take-Two plans to move for summary judgment on four of the tattoos because Plaintiff failed to satisfy the *pre-suit* registration requirement. 17 U.S.C. § 411(a) provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(b) provides that a certificate of registration satisfies the registration requirement even if it contains inaccurate information **<u>unless</u>** (1) the inaccurate information was

included with knowledge that it was inaccurate and (2) the inaccuracy of the information, if known, would have caused the Register of Copyright to refuse the registration.

Plaintiff's "Brother's Keeper Tattoo," "Lion Tattoo," "Scroll Tattoo," and "Fire Tattoo" works were not properly registered before this lawsuit was filed. The four pre-suit registrations for those works,[1] do not satisfy the Section 411(a) because they contain inaccuracies that would have caused the Copyright Office to refuse them as they fail under Section 411(b).

With regard to the *first element* of Section 411(b), there is no dispute that the certificates of registration for these four tattoos are inaccurate. They are inaccurate because Plaintiff did not disclose that these tattoos included an appreciable amount of public domain material and material owned by a third party, including material from a playing card for the Venetian Hotel, the Sistine Chapel, and pre-existing tattoos created by two other authors to which Plaintiff merely added minor additions. Plaintiff's failure to disclose this material is contrary to the Copyright Office's rules requiring identification thereof. Dkt. 231-1 ("Response of Register") at 8. Plaintiff knew of the inaccuracies, which ultimately came out during questioning in his deposition. *See e.g.*, **Exhibit A** (Hayden Dep. Tr.) 132:2-19 (Q: "Did you disclose anything to the Copyright Office about the fact that the figure [] in the flame tattoo and the phrase "I hold my own" were not inked by you?" A: "I don't know.". . . Q: "You don't see anything listed, do you?" A: "In the limitation of Copyright Claim?" Q: "Correct." A. "No.").

---

[1] As to the other registrations at issue this in lawsuit, two are for tattoos on which Take-Two does not intend to move, the "Gloria Tattoo" and the "Shoulder Stars Tattoo." The remaining two are supplementary registrations for the "Scroll Tattoo" and the "Fire Tattoo" that were registered after this lawsuit was filed and, thus, do not satisfy 17 U.S.C. § 411(a). As the original registrations and supplementary registrations for these tattoos coexist (one does not replace the other), the supplementary registrations cannot retroactively satisfy the pre-suit registration requirement. Compendium, Chapter 1800, Section 1802. ("The effective date of registration for the basic registration and the effective date of registration for the supplementary registration will coexist with each other in the registration record.").

With regard to the *second element* of Section 411(b), the Register of Copyrights made clear in its guidance that it would have *refused* these registrations had it known the designs included an "appreciable amount" of public domain material or material owned by a third party that the applicant did not exclude from the application.  Response of Register at 1-2.[2]   In other words, the inaccuracy, if known, would indeed have caused the Register to refuse the four registrations, and thus these certificates do not satisfy the registration requirement under 17 U.S.C. § 411(a).  As a result, Plaintiff did not have a valid registration in any of these four works *prior to filing this lawsuit*, as is required by the Copyright Act, and Take-Two plans to argue that as a result, the claims should be dismissed with regard to each of them.  *See Fourth Est. Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881, 888 (2019).

*Second*, separately from whether Plaintiff has satisfied Section 411(a), he committed fraud when he knowingly submitted materially inaccurate applications to the Copyright Office.  Fraud is an affirmative defense and renders a copyright unenforceable.  A claim for fraud on the Copyright Office has three elements: (1) the application for copyright registration is factually inaccurate; (2) the inaccuracies were willful or deliberate, and (3) the Copyright Office relied on

---

[2]  Quoting the Register of Copyright's decision out of context, Plaintiff claims that it would not have refused to register the works here, Dkt. 233 at 4, but it tellingly leaves this sentence out: "The Register hereby responds that, based on the legal standards and examining practices set forth below, *the Office would not have registered the tattoo designs if it had known that the designs included an "appreciable amount" of public domain material or material owned by a third party that the applicant did not exclude in his application for registration*."  Response of Register at 1-2 (emphasis added).  Plaintiff also points to two supplementary registrations in an attempt to dodge 17 U.S.C. § 411, but the Copyright Office explicitly declined to make a finding as to whether Plaintiff satisfied the pre-suit registration requirement based on these later-filed supplementary registrations.  Here, the supplementary registrations were submitted in the middle of the lawsuit and significantly curtailed the scope of the work at issue.  Plaintiff cannot skirt the *pre-suit* registration requirement by knowingly registering broad and inaccurate copyright registrations to get his foot in the door of a lawsuit and supplementing only when he is *found out* by Take-Two during the course of discovery.

5

those misrepresentations. *See Tacori Enters. v. Rego Mfg.*, No. 05 Civ. 2241, 2008 WL 4426343, at *14 (N.D. Ohio Sept. 25, 2008).³

Each of these elements are met with respect to the four tattoos. As discussed above, the applications were inaccurate and Plaintiff knew it. By concealing the fact that the tattoos Plaintiff sought to register were primarily composed of material Plaintiff did not create, including the fact that material was created by a ***different*** tattoo artist, Plaintiff was able to obtain broad copyright registrations in material he admittedly does not own. He was able to bring a lawsuit asserting rights in this material, even when his true rights were far more restricted. Only when he was found out through the discovery process, over a year into this litigation, did Plaintiff apply for supplementary registrations with a radically curtailed scope, and even then, he only did so for two of the registrations. This is far from an innocent clerical error. Plaintiff knowingly made material misstatements to the Copyright Office that go to the nature of the materials to be copyrighted or contested claims of authorship in order to bring a lawsuit based on broader rights. *Id.* at *30 (describing the types of material misstatements that constitute fraud on the Copyright Office). As a result, Plaintiff committed fraud on the Copyright Office and his copyrights in these four tattoos should be deemed unenforceable.

Take-Two's planned summary judgment motion on these two grounds, if granted, would curtail the issues for trial and have a considerable impact on the pre-trial submissions and

---

³ Plaintiff contends that 17 U.S.C. § 411 codified the fraud on the Copyright Office defense, citing a Ninth Circuit opinion, but the Sixth Circuit has not made that finding, Dkt. 233 at 2. Fraud is a separate defense in this Circuit. *Tacori*, 2008 WL 4426343, at *14 (treating fraud as a separate affirmative defense); *Automated Sols. Corp. v. Paragon Data Sys., Inc.,* No. 05 Civ. 1519, 2008 WL 2404972, at *10 (N.D. Ohio June 11, 2008) (finding pleading that alleged fraud on the Copyright Office where it asserted "that Automated intentionally omitted Charlotte Carino as an author of the SCDS code and that this omission 'might have caused the Copyright Office to reject'").

judicial economy. If these four tattoos are no longer in the case, then only two tattoos on a single NBA player remain: the Gloria Tattoo and the Shoulder Stars Tattoo on LeBron James. Two NBA players, Danny Green and Tristan Thompson, would no longer be implicated by the claims at all, as the tattoos inked on them would no longer be in the case. And the fact that an even smaller portion of *NBA 2K* is at issue would impact damages and apportionment of profits. Thus, Take-Two submits that briefing on these issues should occur before trial is scheduled, and proposes the following schedule:

| Deadline | Date |
|---|---|
| Take-Two's Summary Judgment Opening Brief | October 31, 2023 |
| Plaintiff's Summary Judgment Opposition | November 21, 2023 |
| Take-Two's Summary Judgment Reply | December 12, 2023 |

**C.     Alternatively, The Trial Should Be Scheduled for April 15, 2024**

If the Court prefers to schedule trial now, Take-Two alternatively proposes the below schedule with a trial start-date of April 15, 2024. This builds in sufficient time for summary judgment motions, gives time for the parties to complete pre-trial submissions in the spring, and avoids other early 2024 conflicts that Take-Two's counsel and experts are facing. In particular, core members of Take-Two's trial team are scheduled to be in Eastern District of Pennsylvania for a trial from February 21, 2024 to at least March 15, 2024 (*Unisys Corporation v. Leon Gilbert & Michael McGarvey*, 2:23-cv-00555-PD, Eastern District of Pennsylvania). Take-Two's damages expert, James Malackowski, has other trials scheduled for the weeks of January 21, 2024, February 26, 2024, March 24, 2024, and April 1, 2024. Take-Two's tattoo expert, Dr. Jablonski, has significant international travel planned, including for the week of January 25, 2024, February 8, 2024, and March 22, 2024 through April 13, 2024. And Take-Two's video game expert has significant conflicts in March 2024 as well.

7

| Deadline | Date |
|---|---|
| Take-Two's Summary Judgment Opening Brief | October 31, 2023 |
| Plaintiff's Summary Judgment Opposition | November 21, 2023 |
| Take-Two's Summary Judgment Reply | December 12, 2023 |
| Pre-Trial Submissions (Trial Briefs, Motions in Limine, Deposition Designations) | February 12, 2024 |
| Oppositions to Motions in Limine/Counter-Designations | March 12, 2024 |

### D.   *NBA 2K21* Should Not Be Belatedly Added to this Case

As a threshold matter, Plaintiff's case management proposal seeking to consolidate a case filed on August 31, 2023 involving *NBA 2K21* (the "1721 Case") with this case and allow the 1721 Case to move forward without discovery contradicts his initial agreement to stay that case pending the resolution of this one.  *See* **Exhibit B** (Email Correspondence with A. Alexander) (**"**We disagree that adding NBA 2K21 would require any additional fact or expert discovery, but we can agree to staying the 1721 Case pending resolution of the 2635 Case.").  Take-Two respectfully submits that the 1721 case should be stayed pending the resolution of this case, and had understood that Plaintiff was in accord.  When Take-Two reached out to Plaintiff about submitting a joint motion on this issue, however, counsel for Plaintiff insisted on including language about consolidation in the motion that framed it as an *alternative* to a stay.  Take-Two thus intends to proceed with a motion to stay the 1721 case.

Take-Two strongly disagrees with Plaintiff's contention that the 1721 Case should be consolidated with this one without any additional fact or expert discovery thereupon.  This request is no more than an end-run around the Court's prior order denying Plaintiff's motion to amend the complaint to include *NBA 2K21*.  Dkt. 147 (Order).  On March 22, 2022, Plaintiff sought leave to amend the complaint in this case to add *NBA 2K21* and *NBA 2K22*, games that were released in September 2020 and 2021 respectively, despite the fact that the deadline to

8

amend the complaint was August 19, 2019. Dkt. 140 (Pl.'s Mot. to Amend). At the time, Plaintiff had known about *NBA 2K21* for **18 months** (it has now been **three years**) and had no explanation for its failure to diligently move to amend as soon as it learned of the new game. Dkt. 142 (Take-Two's Opposition to Mot. For Leave to File Fifth Amend. Compl.) Instead, Plaintiff waited until after summary judgment was fully briefed to bring the motion to amend, and never once attempted to justify his extensive delay. The Court accordingly denied Plaintiff's motion to amend and noted that he did not diligently move the Court's permission. Dkt. 147 (Order).

Now, over a year since the Court denied the motion to amend, Plaintiff brings a new lawsuit asserting that *NBA 2K21* infringes his rights in the tattoos. He seeks to consolidate that new lawsuit with this one without going through any additional discovery. Plaintiff provides no explanation for his additional delay in bringing this separate lawsuit, and his request to consolidate without discovery on *NBA 2K21* poses the same issues as amending. Take-Two is deprived of factual and expert discovery on this game. This is not a "clerical matter," as Plaintiff suggests, Dkt. 233 at 5, it is a new alleged infringing work for which Plaintiff is presumably seeking damages (including disgorgement of profits). Take-Two would be deprived of its ability to prepare an adequate defense to Plaintiff's accusations of infringement with regard to *NBA 2K21* if this other lawsuit were combined with the current one on Plaintiff's rapid timeline. While Take-Two proposed staying this new lawsuit, Take-Two cannot agree to consolidate and have this new lawsuit move forward without permitting new discovery to be taken on this game, including both fact and expert discovery.

It also bears noting that Plaintiff's significant delay in raising a dispute related to *NBA 2K21* undermines Plaintiff's attempts to rush this matter to trial in early January on a timeline that prejudices Take-Two.

Case: 1:17-cv-02635-CAB Doc #: 234 Filed: 09/13/23 10 of 12. PageID #: 16062

Dated:  September 13, 2023

/s/ *Dale M. Cendali*
Dale M. Cendali (admitted *pro hac vice*)
Joshua L. Simmons (admitted *pro hac vice*)
Chris Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Yungmoon Chang (admitted *pro hac vice*)
Kirkland & Ellis LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4359
yungmoon.chang@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 13, 2023, a copy of the foregoing was filed electronically.  Notice of this filing was sent by operation of the Court's Electronic Filing System to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's System.

                                                                          */s/ Dale M. Cendali*
                                                                          Dale M. Cendali