# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES HAYDEN, | CASE NO. 1:17-cv-02635-CAB |
|        Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| v. | |
| 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC., | |
|        Defendants. | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
### 2K GAMES, INC. AND TAKE-TWO INTERACTIVE SOFTWARE, INC.'S
### <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .................................................................... 1

**STATEMENT OF MATERIAL FACTS** ...................................................... 4

    I.    THE FOUR TATTOOS ..................................................... 4

    II.    THE INACCURATE COPYRIGHT APPLICATIONS........................... 6

    III.    REFERRAL TO THE COPYRIGHT OFFICE ................................. 7

**ARGUMENT** ............................................................................................ 8

    I.    PLAINTIFF HAS NOT MET THE PRE-SUIT REGISTRATION
        REQUIREMENT ...................................................... 8

        A.    Plaintiff Knew the Pre-Suit Registrations for the Four Tattoos
            Were Inaccurate ................................................ 9

        B.    The Copyright Office Would Have Refused the Pre-Suit
            Registrations Had It Known of the Inaccuracies ....................... 12

    II.    PLAINTIFF COMMITTED FRAUD ON THE COPYRIGHT OFFICE............. 14

**CONCLUSION** ......................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Automated Sols. Corp. v. Paragon Data Sys., Inc.*,
No. 1:05 Civ. 1519, 2006 WL 5803366 (N.D. Ohio June 30, 2006)......................................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................................................8

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
139 S. Ct. 881 (2019)..........................................................................................................8, 9

*GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*,
782 F. Supp. 763 (W.D.N.Y. 1991)....................................................................................16

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
140 S. Ct. 768 (2020)..........................................................................................................10

*LADS Network Sols., Inc. v. Agilis Sys., LLC*,
No. 4:19 Civ. 11, 2022 WL 4534738 (E.D. Mo. Sept. 28, 2022)....................................10, 13

*Lieb v. Korangy Publ'g, Inc.*,
No. 15 Civ. 40, 2022 WL 1124850 (E.D.N.Y. Apr. 14, 2022)..............................................11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..............................................................................................................8

*McCants v. Tolliver*,
No. 1:11 Civ. 664, 2011 WL 2893058 (N.D. Ohio July 15, 2011) ......................................16

*Neman Bros. & Assoc. v. Interfocus, Inc.*,
No. 2:20 Civ. 11181, 2023 WL 115558 (C.D. Cal. Jan. 4, 2023) ..............................10, 11, 13

*Oliver v. Meow Wolf, Inc.*,
No. 20 Civ. 237, 2023 WL 4353541 (D.N.M. July 5, 2023)....................................10, 12, 13

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*,
507 U.S. 380 (1993)............................................................................................................12

*Rawls v. Paradise Artists, Inc.*
No. 3:18 Civ. 417, 2020 WL 1493610 (M.D. Tenn. Mar. 27, 2020)....................................10

*Rich & Rich P'ship v. Poetman Recs. USA, Inc.*,
714 F. Supp. 2d 657 (E.D. Ky. 2010) ..............................................................................14, 16

*Russ Berrie & Co. v. Jerry Elsner Co.*,
    482 F. Supp. 980 (S.D N.Y. 1980)..........................................................................14

*Tacori Enters. v. Rego Mfg.*,
    No. 1:05 Civ. 2241, 2008 WL 4426343 (N.D. Ohio Sept. 25, 2008)....................................14

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    595 U.S. 178 (2022)...............................................................................9, 10, 11

**Statutes**

17 U.S.C. § 409(9) ...................................................................................................9

17 U.S.C. § 411 ........................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................8

**Other Authorities**

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES
    § 621.1 (3d ed. 2014) .......................................................................7, 9, 12

Defendants Take-Two Interactive Software, Inc. and 2K Games, Inc. (collectively, "Take-Two") respectfully submit this memorandum in support of their motion for partial summary judgment that (1) Plaintiff James Hayden's ("Plaintiff") registrations for the Lion Tattoo on LeBron James, the Fire Tattoo on Danny Green, the Scroll Tattoo on Danny Green, and the Brother's Keeper Tattoo on Tristan Thompson (collectively, the "Four Tattoos") do not satisfy the Copyright Act's pre-suit registration requirement, and (2) Plaintiff's false statements in his applications to register the Four Tattoos constituted fraud on the Copyright Office.  As explained below, there are no genuine disputes of material fact on these two issues, and Take-Two is thus entitled to judgment as a matter of law.  Accordingly, this case should proceed to trial on only two of the six tattoos in which Plaintiff asserts rights, the Gloria Tattoo and the Shoulder Stars Tattoo.

## PRELIMINARY STATEMENT

Truthful and accurate copyright applications are fundamental to the copyright system. The Copyright Office relies on the applicant to truthfully identify any material he did not author, so it can be excluded from the registration of ownership.  Where an applicant knowingly fails to disclose this information to the Copyright Office, his obfuscation not only inhibits the Copyright Office's ability to accurately determine registrability, it also enables the untruthful applicant to obtain a registration for material that he knows he did not author and does not own.  As a result, known, material inaccuracies in a copyright application, including as a result of a knowing failure to disclose preexisting works, render the resulting inaccurate registration insufficient to meet the pre-suit registration requirement under 17 U.S.C. § 411.  Moreover, deliberately misleading the Copyright Office constitutes fraud on the Copyright Office, which has the separate consequence of rendering the copyright invalid and unenforceable.

That is precisely what happened here.  ***First***, Plaintiff has not met the **pre-suit**

- 1 -

**registration requirement** under 17 U.S.C. § 411(a) for the Four Tattoos.  Section 411(a) prohibits a civil action for copyright infringement from being instituted until a copyright claim has been registered or refused.  Inaccurate registrations are not sufficient to meet that requirement where (A) inaccurate information was included in the application for registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.  In this case, both elements are established based on undisputed facts.

Plaintiff admitted that each of the Four Tattoos was copied from preexisting sources: (1) the Lion Tattoo on LeBron James was copied from a playing card; (2) the Fire Tattoo on Danny Green is composed mainly of the work of another tattooist; (3) the Scroll Tattoo on Danny Green is likewise composed mainly of the work of another tattooist; and (4) the Brother's Keeper Tattoo on Tristan Thompson was copied from the Bible and the Sistine Chapel.  Yet, when Plaintiff applied to register the Four Tattoos, he falsely claimed to be the ***sole author*** of the entirety of the works and did not disclose any of the preexisting works to the Copyright Office.  This was not an innocent or clerical mistake.  The instructions for the copyright application forms that Plaintiff submitted clearly require the disclosure of preexisting works, as does the Compendium of U.S. Copyright Office Practices, the Copyright Office's definitive practice and policy guide.  Yet, despite knowing firsthand of the preexisting works and Plaintiff's copying of them, as he eventually admitted (despite attempts to obscure the truth) in discovery, Plaintiff never mentioned them.  And Plaintiff submitted his applications through an experienced intellectual property attorney.  This simply is not a situation in which Plaintiff misunderstood an esoteric point of law.

The Court recognized the significance of Plaintiff's misrepresentation when it referred

the matter to the Copyright Office to determine whether the Office would have refused the registrations had it known the truth.  The answer was yes.  The Register of Copyrights stated that the Copyright Office "***would not have registered the tattoo designs*** if it had known that the designs included an 'appreciable amount' of public domain material or material owned by a third party that the applicant did not exclude in his application for registration."  Dkt. 231-1 (Resp. of the Rgstr. of Copyrights) at 1–2 (emphasis added).  Thus, there is no factual dispute on the second element of § 411(b) either.  This alone is dispositive: Plaintiff cannot assert the Four Tattoos in this case.

*Second*, Plaintiff's knowing failure to disclose preexisting works to the Copyright Office, a falsehood that allowed him to obtain registrations purporting to cover material that he did not create and does not own, constitutes **fraud on the Copyright Office.**  Although the pre-suit registration requirement is critical and needs to be met before a copyright suit can commence, the affirmative defense of fraud on the Copyright Office goes a step further and precludes enforcement of copyrights that were obtained fraudulently.  The defense applies where (a) an application for a copyright registration is factually inaccurate, (b) the inaccuracies were presented willfully or deliberately, and (c) the Copyright Office relied on those misrepresentations.  There is no dispute that the applications were inaccurate, because they did not identify or exclude the preexisting works, or that the Copyright Office relied on Plaintiff's misrepresentations of authorship, as it would have refused the registrations had it known of them. Plaintiff's knowing failure to disclose preexisting works that he does not own, and did not create, meets the scienter standard.  Thus, fraud on the Copyright Office has been established as a matter of law and Plaintiff's copyright in the Four Tattoos are invalid and unenforceable.

Accordingly, Take-Two respectfully requests that this Court grant its Motion and dismiss Plaintiff's claims as to the Four Tattoos with prejudice.

## STATEMENT OF MATERIAL FACTS

**I.     THE FOUR TATTOOS**

In 2008, Plaintiff inked a lion on professional basketball player LeBron James's chest (below left) ("Lion Tattoo") by copying a lion from a playing card that Mr. James provided to Plaintiff.  Dkt. 101-2 (Decl. of LeBron James ("James Decl.")) ¶ 8; Decl. of Miranda D. Means ("Means Decl.") Exs. 3 (James Dep. Tr.) 48:10–50:9 (████████████████████████████████████████████████████████████████████████████████████████████████████████); 1 (Pl.'s Dep. Tr.) 81:25–82:13, 83:21–25 (testifying that Mr. James came into his "shop with a playing card depicting a lion" and asking for something similar); 6 (Pl.'s Resp. 1st Interrogs.) No. 1 ("A playing card that Mr. James showed Hayden was one source of inspiration for the Lion tattoo."); 7 (Pl.'s Resp. 1st RFAs) Nos. 78, 101–03; 2 (Tovanche Dep. Tr.) 116:9–119:13.  Mr. James explained that the playing card, which Plaintiff also remembered Mr. James bringing into the shop, came from the Venetian Hotel (bottom right).[1] Dkt. 101-2 (James Decl.) ¶ 8; *see also* Dkt. 216-8 (Venetian Playing Cards); Dkt. 101-48 (Venetian Trademark Registration).



**Lion Tattoo**



**Venetian Hotel Logo**

---

[1]     Plaintiff remembers copying from the playing card that Mr. James brought in, but does not remember where the playing card was from; but whether the playing card in fact came from the Venetian Hotel or some other hotel is not a ***material*** dispute.  What matters is that the Lion Tattoo was copied from a preexisting work that Plaintiff did not create and did not identify and exclude.  There is no dispute on that.

In or around 2012, Plaintiff inked additional flames ("After" image below left) ("Fire Tattoo") on professional basketball player Danny Green's left shoulder around Mr. Green's preexisting tattoo of a basketball player with flames around his image and the words "I hold my own" beneath him, which was created by a different tattooist ("Before" image below left).  Dkt. 101-3 (Decl. of Danny Green ("Green Decl.")) ¶¶ 5–6; Means Decl. Exs. 4 (Green Dep. Tr.) 147:20–148:19 (█████████████████████████████████████████ ███████████████████████████████████████); 1 (Pl.'s Dep. Tr.) 91:4–14; 93:3–94:11; 6 (Pl.'s Resp. 1st Interrogs.) No. 1.  Also in or around 2012, Danny Green asked Plaintiff to ink clouds on Mr. Green's right inner arm ("After" image below right) ("Scroll Tattoo") around a preexisting scroll tattoo with the names of Mr. Green's brothers, which was also created by a different tattooist ("Before" image below right).  Dkt. 101-3 (Green Decl.) ¶¶ 5, 7; Means Decl. Exs. 4 (Green Dep. Tr.) 153:23–156:14; 1 (Pl.'s Dep. Tr.) 98:24–99:1, 99:23–100:10.



**Before**       **After**       **Before**       **After**

Finally, in or around 2012, Plaintiff inked the words "My Brother's Keeper" and an image of two fingers touching (below right) ("Brother's Keeper Tattoo") on professional basketball player Tristan Thompson's chest.  Dkt. 101-4 (Decl. of Tristan Thompson ("Thompson Decl.")) ¶ 5; Means Decl. Ex. 1 (Pl.'s Dep. Tr.) 112:24–113:15.  Mr. Thompson explained that "The words 'My Brother's Keeper' are from the Book of Genesis and reference the story of Cain and Abel" and that "the image of the hand of God reaching out to touch the

hand of man" is "part of the Sistine Chapel."  Dkt. 101-4 (Thompson Decl.) ¶ 6; Means Decl.

Ex. 5 (Thompson Dep. Tr.) 96:20–98:8.  Plaintiff's own co-worker admitted that the Brother's

Keeper Tattoo "Looks like, looks like the hand of God touching man" "similar to" Michangelo's

Sistine Chapel.  Means Decl. Ex. 2 (Tovanche Dep. Tr.) 156:12–16.  The Sistine Chapel is

shown below left.  This is consistent with Plaintiff's testimony and discovery responses

describing the Sistine Chapel and the Bible as preexisting materials.  *Id.* Exs. 6 (Pl.'s Resp. 1st

Interrogs.) No. 1; 1 (Pl.'s Dep. Tr.) 116:20–117:2; 7 (Pl.'s Resp. 1st RFAs) Nos. 123–124, 126.




**The Sistine Chapel**             **Brother's Keeper Tattoo**

## II.        THE INACCURATE COPYRIGHT APPLICATIONS

On August 11, 2017, Plaintiff applied to register the Four Tattoos with the Copyright

Office through his attorney, Kimberly Pinter, *née* Textoris, an intellectual property attorney at

Calfee, Halter & Griswold.  Dkt. 101-49 ("Copyright Applications"); Means Decl. Ex. 1 (Pl.'s

Dep. Tr.) 129:14–19.  Section Four of each of the Copyright Applications asked Plaintiff to list

"Material excluded from this claim," including "*Material previously registered, previously*

*published, or not owned by this claimant*."  *See*, *e.g.*, Dkt. 101-49 (Copyright Applications) at 20

(emphasis in original).  At the time Plaintiff applied to register the Four Tattoos, the

Compendium further stated that if a work "contains an appreciable amount of unclaimable

material, the applicant should ***identify*** the unclaimable material that appears in that work and

should ***exclude*** that material from the claim [by providing] a brief, accurate description of the

unclaimable material in the appropriate field/space of the application."  U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (the "COMPENDIUM") § 621.1 (3d ed. 2014) (emphasis added).

Plaintiff's Copyright Applications nonetheless identified Plaintiff as the *sole* author and copyright claimant of the entirety of each of the Four Tattoos.  *See* Dkt. 101-49 (Copyright Applications); Dkt. 231-1 (Resp. of the Rgstr. of Copyrights) at 3.  In his application to register the Lion Tattoo, Plaintiff *neither identified nor excluded* the image of the lion on the playing card that Mr. James had brought him, nor otherwise disclosed it to the Copyright Office.  Dkt. 101-49 (Copyright Applications) at 16–24 (Lion Tattoo); Means Decl. Ex. 1 (Pl.'s Dep. Tr.) 128:25–129:5 (Q: "You didn't tell the copyright office when this copyright application was submitted that the lion tattoo had been based on a playing card that Mr. James brought in, did you?" A: "No, because I draw that tattoo on with a marker.").  In his applications to register the Fire Tattoo and the Scroll Tattoo, Plaintiff *neither identified nor excluded* the portions of the tattoos that had been inked by other tattooists, nor otherwise disclosed them to the Copyright Office.  Dkt. 101-49 (Copyright Applications) at 46–54 (Fire Tattoo), 60–68 (Scroll Tattoo).  And in his application to register the Brother's Keeper Tattoo, Plaintiff *neither identified nor excluded* the phrase from the Bible or the image from the ceiling of the Sistine Chapel, either. *Id.* at 74–82 (Brother's Keeper Tattoo).

As a result of these inaccuracies, Plaintiff was able to obtain registrations that covered the entirety of the Four Tattoos prior to filing this lawsuit and to assert rights in them in the Complaint, even though he did not create most portions of these tattoos.  Dkt. 1 ¶¶ 50–56, 64–84, 89–92, 97–108.

## III.     <u>REFERRAL TO THE COPYRIGHT OFFICE</u>

Pursuant to 17 U.S.C. § 411(b)(2), on May 25, 2023, this Court referred a set of questions

to the Register of Copyrights to determine whether the Copyright Office would have refused

Plaintiff's applications to register the Four Tattoos had it known of the inaccuracies contained in

them.  Dkt. 229 (Request to Rgstr. of Copyrights).  On August 21, 2023, the Register of

Copyrights provided its response.  Dkt. 231-1 (Resp. of the Rgstr. of Copyrights).  The Register

of Copyrights determined that the preexisting material used in the Four Tattoos is the type that

"should have been identified and excluded from the claim to copyright." *Id.* at 12–18.  As relates

to Take-Two's Motion, the Register concluded that the Copyright Office "***would not have***

***registered the tattoo designs if it had known that the designs included an 'appreciable amount'***

***of public domain material or material owned by a third party that the applicant did not***

***exclude in his application for registration.***"  *Id.* at 1–2 (emphasis added).

## ARGUMENT

Courts grant summary judgment if there is "no genuine dispute as to any material fact"

and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant

informs "the district court of the basis for its motion" and the matter "it believes demonstrate[s]

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  Then, the non-moving party must present evidence establishing disputed issues as to

material facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–

87 (1986).  Conclusory allegations and unsupported speculation are insufficient. *See id.*

## I.  PLAINTIFF HAS NOT MET THE PRE-SUIT REGISTRATION REQUIREMENT

17 U.S.C. § 411(a) provides that "no civil action for infringement of the copyright in any

United States work shall be instituted until preregistration or registration of the copyright claim

has been made in accordance with this title."  The Supreme Court held in *Fourth Estate Public*

*Benefit Corporation v. Wall-Street.com, LLC*, that "*[b]efore* pursuing an infringement claim in

court, [] a copyright claimant generally ***must*** comply with § 411(a)'s requirement that

'registration of the copyright claim has been made.'" 139 S. Ct. 881, 887 (2019) (emphasis added).  17 U.S.C. § 411(b) provides that a certificate of registration satisfies this requirement even if it contains inaccurate information **unless** "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181 (2022).  As detailed below, the undisputed facts support judgment as a matter of law that Plaintiff's pre-suit registrations for the Four Tattoos do not satisfy 17 U.S.C. § 411.

### A.    Plaintiff Knew the Pre-Suit Registrations for the Four Tattoos Were Inaccurate

There can be no dispute that the pre-suit registrations for the Four Tattoos are inaccurate.  An application for registration must include "an identification of any preexisting work or works that [the work to be registered] is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."  17 U.S.C. § 409(9).  The Compendium provides that if a work "contains an appreciable amount of unclaimable material," which includes material in the public domain and material owned by a third party, "the applicant should identify the unclaimable material that appears in [their] work and should exclude that material from the claim."  COMPENDIUM § 621.1; *see also id.* at Glossary: 19 (defining "Unclaimable material" for the purposes of copyright registration).  Consistent with these requirements, the form to apply to register a copyright includes a section requiring disclosure of preexisting material.  *See*, *e.g.*, Dkt. 101-49 (Copyright Applications) at 20.

Despite these requirements, it is undisputed that Plaintiff failed to disclose that the Four Tattoos were based on preexisting material.  *See supra* pp. 6–7.  It is undisputed that the Four Tattoos contain substantial material that Plaintiff did not create, including material from the

public domain (the famous fresco on the ceiling of the Sistine Chapel and the Bible) and material owned by others (the lion on a playing card and large portions of tattoos inked by someone else). *See supra* pp. 4–6.  Plaintiff's own deposition testimony, interrogatory responses, and admissions, as well as the declarations and deposition testimony of Messrs. Green, James, and Thompson, and the deposition testimony of Plaintiff's colleague Mr. Tovanche all are in accord. *Id.*  As the Register of Copyrights informed this Court, this preexisting material "**should have been identified and excluded from the claim to copyright.**"  Dkt. 231-1 (Resp. of the Rgstr. of Copyrights) at 12–18 (emphasis added).  As this unclaimable material was not disclosed to the Copyright Office, the registrations for the Four Tattoos do not reflect it and, as a result, are inaccurate.[2]

Nor is there a dispute that Plaintiff knowingly failed to make the necessary disclosures. A copyright claimant has requisite knowledge of an inaccuracy where he proceeds despite being "aware" of the facts underlying the inaccuracy.  *Unicolors*, 595 U.S. at 184 ("'[K]nowledge' has historically 'meant and still means the fact or condition of being aware of something.'" (quoting *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020)); *see also Neman Bros. & Assoc. v. Interfocus, Inc.*, No. 2:20 Civ. 11181, 2023 WL 115558, at *8–*10 (C.D. Cal. Jan. 4, 2023) (claimant knowingly submitted a registration application containing inaccuracies where it had knowledge of the underlying facts relating to the inaccuracies, e.g., that many parts of the collection it sought to register had third-party authors); *Oliver v. Meow Wolf, Inc.*, No. 20 Civ.

---

[2]    Although Plaintiff also obtained two supplementary registrations for the Fire Tattoo and Scroll Tattoo **after** this lawsuit was filed, these do not satisfy 17 U.S.C. § 411 because they postdate the lawsuit.  Supplementary registrations can be used to correct inaccuracies in approved registrations in certain circumstances, but supplementary registrations are effective only as of when they are approved—not as of when the original registration was approved.  *LADS Network Sols., Inc. v. Agilis Sys., LLC*, No. 4:19 Civ. 11, 2022 WL 4534738, at *6 (E.D. Mo. Sept. 28, 2022).  Accordingly, a registrant must obtain the corrective supplementary registration before filing suit; a supplementary registration cannot be used, mid-suit, to reach back in time and satisfy § 411. *See Rawls v. Paradise Artists, Inc.* No. 3:18 Civ. 417, 2020 WL 1493610, at *5 (M.D. Tenn. Mar. 27, 2020) (collecting cases holding that post-filing registration does not cure earlier failure).

237, 2023 WL 4353541, at *5 (D.N.M. July 5, 2023) (registrations were invalid where plaintiff had listed herself as the sole author of a collection even though she knew she was not the author of one of the pieces in the collection).  Although, in certain circumstances, a legal mistake (as opposed to a factual misrepresentation) might excuse an inaccuracy, "courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law." *Unicolors*, 595 U.S. at 187.  In assessing mistakes of law, courts consider evidence such as the application form's instructions, relevant Compendium provisions, and the existence of the U.S. Copyright Office's many avenues for supplying assistance to registrants. *Neman Bros.*, 2023 WL 115558, at *9 (finding the form and relevant sections of the Compendium clearly explain authorship requirements); *Lieb v. Korangy Publ'g, Inc.*, No. 15 Civ. 40, 2022 WL 1124850, at *14 (E.D.N.Y. Apr. 14, 2022) ("[T]his is a case where the USCO provided the clearest of directions and the registrant knowingly ignored them.").

Plaintiff cannot plead ignorance of facts or a mistake of law here.  With regard to the ***facts***, the inaccuracies concern the circumstances under which Plaintiff created the Four Tattoos. Plaintiff undoubtedly knew he was not the sole author of the Four Tattoos; he experienced their creation firsthand, testified about how they incorporated preexisting public domain sources or other creators' works, and described these sources and works in his discovery responses. *See supra* pp. 4–6.  This is sufficient to show knowledge. *Neman Bros.*, 2023 WL 115558, at *8 (invalidating copyright registration where claimant "had knowledge of the underlying facts relating to those inaccuracies—i.e., that many of the designs it registered as part of the unpublished collection registrations had third-party authors" and where there was no evidence that claimant had made a good-faith mistake of law).

Likewise, there is no evidence of *legal* error here; in fact, the evidence shows the opposite.  The application was submitted by Plaintiff's lawyer, Calfee's Vice Chair of its Intellectual Property practice group, and there is no suggestion that she would not have known what information legally needed to be disclosed in the application.  *See* Means Decl. Ex. 8 (https://www.calfee.com/professionals-kimberly-a-pinter).[3]  And Plaintiff understood fundamentals about the registration process.  *Id.* Ex. 1 (Pl.'s Dep. Tr.) 127:10–16 (Q: "And do you understand that in order to get a copyright registration, you, or someone on your [] behalf, needed to sign a certification?" A: "As — as I recollect.").  Moreover, this is not an esoteric Copyright Office rule that required extensive interpretation; the applications themselves plainly asked Plaintiff to disclose "material [] not owned by this claimant."  *See, e.g.*, Dkt. 101-49 (Copyright Applications) at 20.  The Compendium provides clear guidance as well.  *See* Compendium § 621.1.  And where in doubt, the Copyright Office provides contact information for applicants with questions.  *See*, *e.g.*, Means Decl. Ex. 9 (TAKE-TWO_00000211) at TAKE-TWO_00000214 ("If you have questions or need assistance, Copyright Office contact information can be found at http://www.copyright.gov/help/index.html#general.").  It is undisputed that Plaintiff did not follow that clear instruction or communicate any confusion about it to the Copyright Office.

## B. The Copyright Office Would Have Refused the Pre-Suit Registrations Had It Known of the Inaccuracies

Just as there is no genuine dispute that Plaintiff knew of, but did not identify or exclude, the preexisting material on which the Four Tattoos were based, there is no dispute that the Copyright Office would have refused the pre-suit registrations for the Four Tattoos had it known

---

[3]  Civil litigants voluntarily choose their counsel and "cannot [] avoid the consequences of the acts or omissions of this freely selected agent." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 397 (1993); *Oliver*, 2023 WL 4353541, at *7 (finding that even if it was plaintiff's lawyer who knew of the inaccuracy, not plaintiff, the court would still "be required to hold [plaintiff] accountable for it").

of the inaccuracies in the applications.  The Register of Copyrights said so, finding the Copyright Office "would not have registered the tattoo designs if it had known that the designs included an 'appreciable amount' of public domain material or material owned by a third party that the applicant did not exclude in his application for registration."  Dkt. 231-1 (Resp. of the Rgstr. of Copyrights) at 1–2.  As a result, Plaintiff's registrations in the Four Tattoos are invalid as a matter of law under 17 U.S.C. § 411, and the Court should grant this Motion.

That Plaintiff could have tried to correct the error or file a supplementary registration to correct it makes no difference because he *did not* do that prior to filing this lawsuit.  This was precisely the scenario in *Oliver*, and the court invalidated the registration on § 411 grounds there. 2023 WL 4353541, at *9; Means Decl. Ex. 12 (Resp. of the Rgstr. of Copyrights re: *Oliver*) at 1 (stating the Copyright Office would have given the applicant the opportunity to fix the error by filing a supplementary registration).  It was also true in *LADS Network Sols.*, where the court granted summary judgment invalidating the plaintiff's inaccurate registrations where the Register of Copyrights said it would have given the applicant the opportunity to cure the inaccuracy. 2022 WL 4534738, at *2; Means Decl. Ex. 10 (Resp. of the Rgstr. of Copyrights re: *LADS Network Sols.*) at 1–2.  And it was true in *Neman Bros.*, where the Copyright Office would have communicated with the applicant to try to fix the omission.  2023 WL 115558, at *13 (finding registrations invalid as a matter of law under 17 U.S.C. § 411); Means Decl. Ex. 11 (Resp. of the Rgstr. of Copyrights re: *Neman Bros.*) at 3.  In fact, it is virtually *always* true that an applicant can fix an inaccuracy, but to find that sufficient to trigger § 411(b)'s safe harbor would render 17 U.S.C. § 411's pre-suit registration requirement toothless.  Plaintiff did not make the required corrections before filing this lawsuit, as he should have done.

As Plaintiff's inaccurate registrations do not satisfy 17 U.S.C. § 411(a), and are not

excused by § 411(b), Plaintiff has not met the pre-suit registration requirement for the Four

Tattoos.  The Four Tattoos should therefore be dismissed from this case.

## II.  PLAINTIFF COMMITTED FRAUD ON THE COPYRIGHT OFFICE

Separately from the question of whether Plaintiff has met the pre-suit registration

requirement, Take-Two is entitled to judgment as a matter of law on its affirmative defense of

fraud on the Copyright Office.  The defense requires a showing that (a) the application for

copyright registration is factually inaccurate, (b) the inaccuracies were willful or deliberate, and

(c) the Copyright Office relied on those misrepresentations.  *Tacori Enters. v. Rego Mfg.*, No.

1:05 Civ. 2241, 2008 WL 4426343, at \*14 (N.D. Ohio Sept. 25, 2008).  As detailed above, the

first and third elements have been met here.  The applications for registration were factually

inaccurate because Plaintiff did not identify and exclude the "appreciable amount" of preexisting

material incorporated into the Four Tattoos he sought to register.  *See supra* pp. 6–7.  And the

Copyright Office relied on Plaintiff's misrepresentations in registering the copyrights, because

the Copyright Office would not have approved the applications had it known of the omitted

preexisting material.  *See supra* pp. 7–8.

That leaves the second element, whether the inaccuracies were willful or deliberate.  The

scienter requirement for fraud on the Copyright Office is met where the copyright holder

"knowingly" failed to inform the Copyright Office of preexisting works.  *See Rich & Rich P'ship

v. Poetman Recs. USA, Inc.*, 714 F. Supp. 2d 657, 663–64 (E.D. Ky. 2010) (Thapar, J.) ("[W]hen

an applicant knowingly fails to identify the derivative nature of the work, or the use of elements

not of the applicant's own creation, the court may decline to enforce the copyright.") (collecting

cases); *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, No. 1:05 Civ. 1519, 2006 WL

5803366, at \*12 (N.D. Ohio June 30, 2006) (inaccuracy must have been "knowing or

intentional" to constitute fraud); *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 987–

89 (S.D N.Y. 1980) (declining to enforce copyright where applicant knowingly failed to disclose preexisting work in the face of "specific and clear direction to disclose it") (collecting cases).

Here, Plaintiff knew that the Four Tattoos contain material that he did not create.  *See supra* pp. 9–12.  The instructions for applying to register the Four Tattoos could not have been clearer that this was something he needed to disclose.  *See supra* p. 9.  Yet, he did not disclose this preexisting material in his copyright applications filed before this lawsuit, allowing him to obtain registrations for far broader rights than he otherwise would have been able to obtain.  *See supra* pp. 12–14 (Copyright Office would not have approved Plaintiff's copyright registration applications as he submitted them); *see also* Means Decl. Ex. 1 (Pl.'s Dep. Tr.) 129:6–11 (Q: "You didn't, in this form, do anything to tell the copyright office that Mr. James had brought in a tattoo of a lion and that he asked you to do something similar to that, correct?" A: "I guess not."); 132:1–19 (Q: "[I]s there anything in the section on Limitation of Copyright Claim that discloses to the copyright office that the drawing of the basketball player and the phrase I hold my own and possibly the initials D.G. were not inked by you?" A: "I don't know."  Q: "You don't see anything listed do you?" A: "In Limitation on Copyright Claim?" Q: "Correct." A: "No."); 134:20–25.

Plaintiff's conduct throughout this lawsuit further shows that he understood these inaccuracies and attempted to obscure them.  For example, Plaintiff forgot what the lion on Mr. James' playing card actually looked like during his deposition, Means Decl. Ex. 1 (Pl.'s Dep. Tr.) 83:13–16 ("I don't remember the playing card."), despite definitively remembering that many specific elements were not copied from the very playing card he supposedly could not remember.  *Id.* (Pl.'s Dep. Tr.) 84:3–18.  Later, Plaintiff claimed that the playing card had a "Lion of Venice" on it that is so "well-known and widely disseminated" that it would not need to

- 15 -

be disclosed, which is contrary to the Copyright Office's finding that he was **required** to disclose this work.  Dkt. 224 (Pl.'s Resp. to Order to Show Cause) at 6–7; *but see* Dkt. 231-1 (Resp. of the Rgstr. of Copyrights) at 12 (disclosure and exclusion was required).  Similarly, when asked during his deposition about whether the Brother's Keeper Tattoo resembled the ceiling of the Sistine Chapel, Plaintiff tried to dodge the question by protesting that he had "never been there." Means Decl. Ex. 1 (Pl.'s Dep. Tr.) 119:21–25.  Plaintiff later reversed this position as well and claimed that the Sistine Chapel was so famous and widely disseminated that he did not need to disclose it, which, again, is contrary to the Register of Copyright's finding that disclosure of this work was indeed required.  Dkt. 224-3 (Pl.'s Resp. to Order to Show Cause) at 6; *but see* Dkt. 231-1 (Resp. of the Rgstr. of Copyrights) at 15–16 (disclosure and exclusion was required). Plaintiff thus willfully ignored what the Copyright Office required him to do, deciding that— despite clear instructions on the application otherwise—disclosing the works incorporated into his own was unnecessary.[4]  Thus, Plaintiff's scienter is clear, and the undisputed facts show that the three elements of fraud on the Copyright Office are met here.

As each of the three elements of fraud on the Copyright Office are met here, Plaintiff's copyrights in the Four Tattoos are invalid and unenforceable.  *See Rich*, 714 F. Supp. 2d at 664; *McCants v. Tolliver*, No. 1:11 Civ. 664, 2011 WL 2893058, at *6 (N.D. Ohio July 15, 2011) (collecting cases and concluding that where a copyright registration is invalidated due to fraud, the copyright "is simply 'unenforceable'" and nullifies the federal court's subject matter jurisdiction); *GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763, 774– 76 (W.D.N.Y. 1991) (granting summary judgment after finding plaintiff's copyright unenforceable where plaintiff knowingly omitted that its copyrights were "not original in every

---

[4]    This gave Plaintiff an advantage in this litigation, as he was able to claim far broader rights than he in fact owned in works that were composed primarily of the creativity of others, not his own.

detail, since they ma[d]e use of preexisting" material, of which plaintiff was "obviously aware"). Plaintiff was at all times "obviously aware" that his work incorporated preexisting materials, yet Plaintiff deliberately chose not to disclose this information to the Copyright Office. Accordingly, Plaintiff's fraud renders his copyrights in the Four Tattoos invalid and unenforceable.

## **CONCLUSION**

For the foregoing reasons, Take-Two respectfully requests that the Court grant its motion for partial summary judgment, finding that Plaintiff failed to satisfy the pre-suit registration requirement and committed fraud on the Copyright Office, and dismiss the Four Tattoos from this case with prejudice.

Dated:  New York, NY
          October 31, 2023

/s/ Dale M. Cendali
_____

Dale M. Cendali (admitted *pro hac vice*)
Joshua L. Simmons (admitted *pro hac vice*)
Chris Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Yungmoon Chang (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, 37th Floor
Los Angeles, CA 90067
Telephone: (310) 552-4359
yungmoon.chang@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and
Take-Two Interactive Software, Inc.*

## **L.R. 7.1(F) CERTIFICATION**

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track and that the foregoing memorandum complies with the applicable page limitation of twenty (20) pages.

October 31, 2023

/s/ Dale M. Cendali
_____
Dale M. Cendali (admitted *pro hac vice*)

*Attorney for Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.*