UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI,
EASTERN DIVISION

| | |
|---|---|
| LADS NETWORK SOLUTIONS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:19-cv-00011-SEP ) ) Sarah E. Pitlyk, District Judge |
| AGILIS SYSTEMS, LLC, ARCHLOGIX, LLC, and GILEAD GROUP, LLC, | ) ) ) |
| Defendants. | ) ) |

# RESPONSE OF THE REGISTER OF COPYRIGHTS

# TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)

On March 26, 2021, the Court requested advice from the Register of Copyrights ("Register") pursuant to 17 U.S.C. § 411(b)(2) on the following question:

> [W]ould the Register of Copyrights have refused Copyright Registration No. TX 7-906-822, if it had known that the deposit material/source code submitted with the application and ultimately receiving Copyright Registration No. TX 7-906-822 included source code created after the purported publication date of May 1, 2000, seen on the application and certificate of registration?[1]

The Register hereby submits her response. In sum, based on the legal standards and examining practices set forth below, if the Office had been aware that the deposit submitted on September 15, 2014 included source code created after the May 1, 2000 publication date provided in the application, it would not have registered the work. The Office would, however, have attempted to resolve the variance between the deposit and application materials by giving

---

[1] Request for Advice Pursuant to 17 U.S.C. § 411(b)(2) at 1, ECF No. 134 ("Request").

the applicant the option to either provide the appropriate deposit or to correct the year of completion and date of first publication listed on the application. If either option had been taken up, the error would have been cured and the Office would have issued the registration.

## BACKGROUND

### I. Examination History

A review of the records of the U.S. Copyright Office ("Copyright Office" or "Office") shows the following:

On March 12, 2014, the Copyright Office received an application to register a literary work, namely a computer program called "GPStrac." The application identified LADS Network Solutions, Inc. ("LADS Network Solutions") as the work made for hire author and copyright claimant of the work. Although the application stated that the work was completed in 2000, and first published on May 1, 2000, the deposit copy contained a copyright notice that was dated 2004.

On September 4, 2014, after noting a variance between the information provided in the application and the copyright notice on the work submitted, a registration specialist asked the correspondent listed in the application whether the applicant sought to register a revised 2004 version of the work or the 2000 version described in the application.[2] The specialist advised that if LADS Network Solutions wished to register the 2004 version, it should "provide a brief description of the author's contributions" and describe the contribution as a "revised computer program."[3] In addition, the specialist noted that the applicant must provide "the year in which the revised version was completed" and the date and nation of first publication for the version

---

[2] Email from Melissa Wells Saharko, Registration Specialist, Copyright Office, to Daniel Huber (Sept. 4, 2014), ECF No. 131-2.

[3] *Id.*

submitted.[4] The specialist informed LADS Network Solutions that she would "describe the preexisting material as 'previous version of work'" with the applicant's authorization.[5] The specialist also advised, "[o]n the other hand, if you wish to register the version described on the original application (published in 2000), please send this version."[6]

On September 15, 2014, in response to the specialist's inquiry, LADS Network Solutions submitted what it described as "a copy of the May 1, 2000 version of GPStrac."[7] The first page of the new deposit copy contained the following statement: "GPStrac Source Code as of May 1, 2000 Copyright by LADS Network Solutions, Inc."

Based on LADS Network Solutions' representation that the new deposit copy was the 2000 version of the work described in the application, the Office registered the computer program on September 16, 2014, with an effective date of registration ("EDR") of September 16, 2014, and assigned registration number TX0007906822. The Office had no further reason to question the applicant's representations and accepted them as true and accurate.

## II. The Court's Request

In this case, LADS Network Solutions has acknowledged "that some, but not all, of the source code reflected in [the deposit copy] that was submitted to the Copyright Office on September 15, 2014, and which ultimately received Copyright Registration No. TX 7-906-822, contained source code created after May 1, 2000," the publication date provided in the application.[8] Defendants therefore contend that LADS Network Solutions' registration "contains

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] Email from Daniel Huber to Melissa Wells Saharko (Sept. 15, 2014), ECF No. 131-4.

[8] Joint Referral to the Copyright Office at 3, ECF No. 131.

3

inaccurate information, such information was included with knowledge of its inaccuracy, and the Register of Copyrights would have refused registration if it knew of the inaccurate information."[9]

Based on Defendants' allegations, the Court requested the advice of the Register.

## ANALYSIS

### I. Relevant Statutes, Regulations, and Agency Practice

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 409, and 410. Regulations governing applications for registration are codified in title 37 of the Code of Federal Regulations at 37 C.F.R. §§ 202.1 to 202.24. The principles that govern how the Office examines registration applications are found in the *Compendium of U.S. Copyright Office Practices*. LADS Network Solutions filed its application in March 2014. The governing principles the Office would have applied at that time are set forth in the *Compendium of U.S. Copyright Office Practices, Second Edition* (referred to as "COMPENDIUM II").[10] In this response, the Register cites the current, third edition of the Compendium (referred to as "COMPENDIUM (THIRD)"), which was released and became effective December 22, 2014, and was last updated in 2021, where the relevant practices have not materially changed, and cites COMPENDIUM II if the relevant practices have materially changed or where helpful to further illustrate Office practices.[11]

---

[9] Request at 1.

[10] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (2d ed. 1988) ("COMPENDIUM II"), https://www.copyright.gov/history/comp/compendium-two-1988-chap600-1900.pdf.

[11] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) ("COMPENDIUM (THIRD)"), https://copyright.gov/comp3/docs/compendium.pdf.

4

### A. Year of Completion and Date of Publication

Under the Copyright Act, an application must include "the year in which creation of the work was completed."[12] In defining when a work is "created," the statute states: "[W]here a work is prepared over a period of time, the portion of [the work] that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work."[13] Under the governing regulation, "year of completion" means "the latest year in which the creation of any copyrightable element was completed."[14]

The statutory requirements for copyright registration dictate that applications shall include the date and nation of a work's first publication if the work has been published.[15] The COMPENDIUM (THIRD) requires applicants to identify the date on which a published work was first published with the authorization of the copyright owner.[16] Publication is defined as the "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[17] Likewise, "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or

---

[12] 17 U.S.C. § 409(7).

[13] *Id.* § 101; *see also* COMPENDIUM (THIRD) §§ 611.1(B), 721.9(D).

[14] 37 C.F.R. § 202.3(c)(4).

[15] 17 U.S.C. § 409(8).

[16] COMPENDIUM (THIRD) § 612.4.

[17] 17 U.S.C. § 101 (defining "publication").

public display, constitutes publication," provided that the offer is made by or with the authority of the copyright owner and copies of the work exist at the time the offer is made.[18]

In preparing an application, "the applicant should provide the year of completion for the specific version that is being registered."[19] Likewise, if a work is published, an applicant should provide the specific month, day, and year that copies of the specific work deposited for registration were distributed for the first time or were first offered to a group of persons for further distribution, public performance, or public display.[20] The Copyright Act generally requires two complete copies of the best edition of published works to be deposited with the application, but authorizes the Register to permit the deposit of only one copy of a work in certain circumstances.[21] For computer programs, the Office enacted regulations requiring applicants to deposit only one copy of at least the first and last 25 pages of the work, as well as any page containing a copyright notice.[22] To comply with the requirement that the deposit copy be "complete," the regulations and COMPENDIUM II required applicants to submit copies that were "physically undamaged and include all elements of the applicable unit of publication of the work."[23]

According to the COMPENDIUM II, if the date of creation or date of first publication provided in the application was inconsistent with other dates appearing on the application or the

---

[18] *Id.*; COMPENDIUM (THIRD) §§ 1906, 1906.3.

[19] COMPENDIUM (THIRD) § 611.1(B).

[20] *Id.* §§ 612.6(A), 612.7(G).

[21] 17 U.S.C. §§ 408(b)(2), (c).

[22] COMPENDIUM II 806.12(a)(1) (citing 37 C.F.R. 202.20(c)(2)(vii)(A) (1988)).

[23] COMPENDIUM II § 805.02 (citing 37 C.F.R. § 202.20(b)(2)(ii)).

6

deposit, Office practice was for the registration specialist to communicate with the applicant regarding the inconsistency.[24]

### B. Registration of Multiple Versions of a Computer Program

As an overarching principle, the Office generally requires that separate works be registered separately.[25] The Copyright Act states: "where the work has been prepared in different versions, each version constitutes a separate work."[26] The Office will register multiple versions of a published work, provided that each version contains a sufficient amount of copyrightable authorship that does not appear in the other versions, if the applicant submits "a separate application, a separate filing fee, and a separate set of deposit copies for each version."[27] A registration for a specific version of a published computer program covers only the new material that the author contributed to that version.[28] It does not cover material that was previously published.[29]

In pertinent part, the statutory requirements for copyright registration dictate that an application for registration of a compilation or derivative work include "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the

---

[24] COMPENDIUM II §§ 620.03, 621.07.

[25] *See* COMPENDIUM (THIRD) § 511. There are limited exceptions to this rule, including for registration of collective works, published works using the "unit of publication" option, and group registration for serials, newspapers, newsletters, contributions to periodicals, unpublished photographs, published photographs, databases, short online literary works, musical works published on the same album, and secure test items. *See* 37 C.F.R. §§ 202.3(b)(5), 202.4; COMPENDIUM (THIRD) §§ 511, 512.2 n.2.

[26] 17 U.S.C. § 101 (defining "created").

[27] COMPENDIUM (THIRD) § 512.2.

[28] *Id.* § 721.8.

[29] *Id.* § 721.8.

7

additional material covered by the copyright claim being registered."[30] Identifying the new or revised material the author has contributed to a work and any material that is not claimed "is essential to defining the claim that is being registered" and "ensures that the public record will be accurate."[31]

The COMPENDIUM II required applicants who sought to register derivative textual works that included a "substantial" amount of preexisting material that had been previously registered or published to exclude the preexisting material and describe the new material included in the derivative work.[32] The COMPENDIUM II defined "substantial" to mean that the preexisting material represents, "in relation to the work as a whole," a "significant portion of the work."[33]

For example, consider an applicant who seeks to register version 3.0 of a software program, which contains large sections of code that appeared in versions 1.0 and 2.0 of the same program. If the applicant distributed copies of versions 1.0 and 2.0 of the program to the public before it filed its application to register version 3.0, versions 1.0 and 2.0 would be considered previously published. The application to register version 3.0 of the program would therefore cover only new material that appears in version 3.0, and the applicant should exclude material that had been previously published in versions 1.0 and 2.0 from the claim.[34] In contrast, an applicant would not be required to exclude previously published material if the software program

---

[30] 17 U.S.C. § 409(9).

[31] COMPENDIUM (THIRD) § 621.1.

[32] COMPENDIUM II §§ 306.01, 325.01(b).

[33] *Id.* § 325.01(b).

[34] COMPENDIUM (THIRD) § 721.8.

8

contains a total of 5,000 lines of program text, and only fifty of those were previously published.[35]

### C. Other Copyright Office Regulations and Practices

Copyright Office regulations require applicants to make "[a] declaration [] that the information provided within the application is correct to the best of the [applicant's] knowledge."[36] Generally the Office "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records."[37]

In responding to the Court's questions, the Register applies the foregoing governing statutory and regulatory standards and examining principles. The Register notes that it is not unusual for an examiner to correspond with an applicant about factual assertions if the assertions appear to conflict with other information provided in the application materials.[38] Accordingly, if the Office becomes aware of an error at the time of application, such as the omission of the statement regarding preexisting material or a date of creation that is inconsistent with a deposit, or has questions about facts asserted in the application, it provides the applicant an opportunity to correct the error or verify the facts within a specified period of time.[39] If the applicant responds

---

[35] COMPENDIUM II § 325.01(a); COMPENDIUM (THIRD) § 721.8.

[36] 37 C.F.R. § 202.3(c)(3)(iii).

[37] COMPENDIUM (THIRD) § 602.4(C).

[38] *Id.* § 602.4(C).

[39] Generally, when a registration specialist corresponds with an applicant, the applicant will be given 45 days to respond to the specialist's questions concerning issues in the application materials. COMPENDIUM (THIRD) §§ 605.6 (B), (D).

9

in a timely fashion to the satisfaction of the Office, the Office can proceed with the registration. The Register's response herein is thus premised on the fact that any errors identified were not timely corrected through such a process.

## II.     Register's Responses to Court's Questions

Based on the foregoing statutory and regulatory standards, and its examining practices, if the Office had been aware, prior to registration, that the work submitted on September 15, 2014 included source code created after the May 1, 2000 publication date provided in the application, it would not have registered the work.  As explained above, the deposit copy provided must depict all elements of the work that the applicant intends to register, which is the work for which the applicant has provided the year of completion and date of first publication on the application.[40]

Because LADS Network Solutions did not provide a deposit copy that depicted the work it sought to register, the Office would not have granted a registration based on the application that was submitted.  If the Office had known that the deposit provided did not depict the work as it existed on the date of completion and date of first publication noted in the application, it would have corresponded with LADS Network Solutions to request that it amend its application.  One option available to LADS Network Solutions would have been to submit a new deposit that contained the version of the work that was actually published on May 1, 2000, upon receipt of which the Office could have registered the work.[41]  Thus, the error could have been cured had

---

[40] *See* COMPENDIUM II § 805.02.

[41] *Id.*

LADS Network Solutions provided the appropriate deposit for the earlier-published version. If LADS Network Solutions could not provide a copy of that version, then the Office would have refused registration.

Alternatively, if LADS Network Solutions sought registration for the version of the software it submitted on September 15, 2014, it could have provided the correct year of completion and date of first publication for that version of the software.[42] If that later-published version of the software included a substantial amount of material that did not appear in the previous versions, the Office would have informed LADS Network Solutions that it must describe its contribution to the work (*e.g.*, "revised computer program") and exclude the previously published versions of the computer program (*i.e.*, the version of the software that was published on May 1, 2000).[43] If LADS Network Solutions refused to exclude previous versions from the registration or to provide the year of completion and date of first publication for the version submitted on September 15, 2014, then the Office would have refused registration.

Dated: August 2, 2021

*Shira Perlmutter*

Shira Perlmutter
Register of Copyrights and Director
of the U.S. Copyright Office

---

[42] COMPENDIUM (THIRD) §§ 611.2(A), 612.7(E).

[43] *Id.* § 721.8.