**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JAMES HAYDEN, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:17-cv-02635-CAB |
| | ) | |
| v. | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| 2K GAMES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION**
**<u>FOR PARTIAL SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF MATERIAL FACTS ............................................................. 4

III.  LAW AND ARGUMENT ...................................................................................... 6

  A.  Hayden's original registrations for the Tattoos satisfy the pre-suit registration requirement ......................................................................................... 7

    1.  Take-Two has not shown that Hayden indisputably knew his registration applications failed to comply with the Copyright Act ............................................. 8

    2.  Take-Two has not conclusively shown—and *cannot* show—that the asserted omissions were material to the Register of Copyrights' registration decisions ................... 14

  B.  Hayden did not commit fraud on the Copyright Office .................................... 19

IV.  CONCLUSION .................................................................................................... 20

i

## **TABLE OF AUTHORITIES**

**Cases**

*Adriana's Insurance Services, Inc. v. Auto International Insurance Agency, Inc.*,
No. 8:22-cv-00174, 2023 WL 8000227 (C.D. Cal. Aug. 18, 2023)..................................... 8, 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................................................................. 6

*Covetrus Inc. v. Actian Corp.*, No. 2:21-cv-00097, 2023 WL 6389059 (D. Maine
Oct. 2, 2023) ....................................................................................................................... 9, 15

*dmarcian, Inc. v. DMARC Advisor*, No. 1:21-cv-00067, 2023 WL 3971433
(W.D.N.C. June 12, 2023)...................................................................................................... 14

*Gaffney v. Muhammad Ali Enterprises LLC*, No. 18CIV8770, 2022 WL 4095953
(S.D.N.Y. Sep. 7, 2022) ......................................................................................................... 14

*Hayden v. 2K Games, Inc.*, 629 F. Supp. 3d 736 (N.D. Ohio 2022) ................................... 8

*Houser v. Powerdot, Inc.*, No. 1:21CV915, 2023 WL 7181680 (N.D. Ohio Aug.
30, 2023) ................................................................................................................................ 6

*In re Welding Fume Prod. Liab. Litig.*, No. 1:03CV17000, 2007 WL 1087605
(N.D. Ohio Apr. 9, 2007) .................................................................................................... 8, 14

*LADS Network Sols., Inc. v. Agilis Sys., LLC*, No. 4:19-CV-00011-SEP, 2022 WL
4534738 (E.D. Mo. Sept. 28, 2022)..................................................................................... 13, 17

*Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339 (6th Cir. 1994)................................................ 6

*Lieb v. Korangy Publishing, Inc.*, CV 15-0040, 2022 WL 1124850 (E.D.N.Y. Apr.
14, 2022) ................................................................................................................................ 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...................... 6

*Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*, No. 2:20-cv-11181, 2023 WL
115558 (Jan. 4, 2023)........................................................................................................... 11, 17

*Oliver v. Meow Wolf, Inc.*, No. 20-237, 2023 WL 4353541 (D.N.M. July 5, 2023)..................... 17

*ReportHost LLC v. Spectora Inc.*, No. 22-cv-00457, 2023 WL 2782285 (D. Colo.
Mar. 29, 2023)....................................................................................................................... 14

*Roberts v. Gordy*, 877 F.3d 1024 (11th Cir. 2017) ......................................................... 19

*Schenck v. Orosz,* 105 F. Supp. 3d 812 (M.D. Tenn. 2015) .................................................. 10, 15

*See Tacori Enterprises v. Rego Mfg.*, No. 1:05CV2241, 2008 WL 4426343 (N.D.
Ohio Sept. 25, 2008)............................................................................................................. 19

*Talavera v. Global Payments, Inc.*, No. 21-CV-1585, 2023 WL 3080701 (S.D.
Cal. Apr. 25, 2023)................................................................................................................ 15

*Trucks, Inc. v. United States*, 234 F.3d 1340 (11th Cir. 2000) ....................................... 8

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054 (9th Cir. 2022) ....................... 19

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022)............................... passim

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017) ....................................... 16

*Universal Dyeing & Printing, Inc. v. Knitwork Prods. II, LLC*, No. 2:17-cv-05660,
   2019 WL 2613448 (C.D. Cal. June 26, 2019) ........................................................... 16

**Other Authorities**

17 U.S.C. § 411(b)(1) ............................................................................................... 3, 4, 7

17 U.S.C. § 411(b)(1)(B) ................................................................................................ 14

H.R. REP. 110-617, 23 ..................................................................................................... 7

H.R. REP. 110-617, 24 ................................................................................................... 15

US Copyright Office, Compendium of US Copyright Offices Practices   § 503.5
   (3d ed. 2014) ............................................................................................................ 10

US Copyright Office, Compendium of US Copyright Offices Practices § 621.2
   (3d ed. 2014) ............................................................................................................ 10

## I.    INTRODUCTION

Defendant Take-Two[1] is attempting for ***the third time*** to avoid liability for infringing Plaintiff Jimmy Hayden's copyrights by attacking their validity based on the same recycled facts. Take-Two's regurgitated arguments are no more persuasive or grounded in law on this occasion than they were in their previous rejected attempts. Take-Two's last two attempts involve alleging fraud or intent to mislead the Copyright Office. Not only did the Register of Copyrights reject this premise, but fraud is an issue that requires Take-Two to show that Hayden had an actual, subjective awareness of both the facts and the law when the purported fraud was committed— also known as scienter—and thus depends on Hayden's state of mind. But, as this Court has already ruled, following controlling case law, "[i]ntent is a fact question" (Dkt. #193, p. 17) and not amenable to summary judgment—especially based on the facts in the case at bar. Take-Two's Motion[2] attempts to lead the Court into reversible error, contradicting the Court's previous holdings on this issue, contradicting controlling case law, and contradicting the orders of the US Copyright Office. Take-Two's Motion should be denied.

The only new fact that Take-Two identified since this Court's previous ruling that "Plaintiff's works are original and entitled to protection" (*id.* at 9) is that the Register of Copyright indicated it "would not have registered the tattoo designs if it had known that the designs included an 'appreciable amount' of public domain material or material owned by a third party that the applicant did not exclude in his application for registration." (Motion, p. 8.) However, Take-Two omitted from its brief entire passages and facts from the Register's Response that defeat its Motion:

---

[1] "Take-Two" collectively refers to defendants Take-Two Interactive Software, Inc. and 2K Games, Inc.

[2] "Motion" refers to Take-Two's Memorandum of Law in Support of Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc.'s Motion for Partial Summary Judgment" (Dkt. #247-1.)

- Rather than refuse registration, "[h]ad the Office known about these issues at the time of the applications, it would have sought the applicant's permission to amend the claims." (Dkt. #231-1, p. 2.)

- **"The Register further responds that the applicant appropriately utilized the supplementary registration procedures to amend the claim to copyright for two of the tattoo designs,** "Fire D.G." and "Scroll D.G." (*Id.* (emphasis added).)

- As to the *Lion* tattoo: "The Register considers Mr. Hayden's modifications to the Venetian Resort logo, which include his structured interpretation of the lion's face and mane, variations to the wing and shield, and shading applied to the body and shield, to be sufficiently creative to warrant registration." (*Id.* at 13.)

- As to the *Brother's Keeper* tattoo: "Having reviewed the two works after receiving the Court's Request, the Register believes that the non-standard shapes and shading surrounding the phrase constitute a sufficient amount of additional creative authorship to be registered as a derivative work." (*Id.* at 16.)

- As to the *Fire* tattoo: "Here, Mr. Hayden's depiction of flames added sufficient creative authorship to be registered as a derivative work." (*Id.* at 17.)

- As to the *Scroll* tattoo: "Here, Mr. Hayden added more than a sufficient amount of creative authorship, which includes a character at the top of the scroll, additional cloud-like design elements, and shading throughout the design, to be registered as a derivative work." (*Id.* at 18.)

- "Mr. Hayden may likewise file supplementary registration applications to correct the omissions in the Lion and Brother's Keeper T.T. Registrations by excluding the preexisting designs from his claims to copyright. **As explained above, both of these works modify the works on which they are based in a manner that is sufficiently creative to warrant registration."** (*Id.* at 19 (emphasis added).)

Moreover, there is no deposition testimony or other evidence in the record that meet the stringent summary judgement standard of showing no material dispute as to Hayden's state of mind on the issue of fraud and scienter. Hayden's deposition testimony coupled with his declaration filed concurrently herewith conclusively show that there was no actual subjective awareness on the part of Hayden of any inaccuracies in his application, let alone an intent to mislead anyone, including the Copyright Office. At the very least, the evidence in the record raises disputed issues of fact on this issue that warrant denial of Take-Two's Motion—just as the Court held over a year ago.

2

Put simply, there is no question that Hayden's asserted tattoos, including the four Take-Two attacks here, are copyrightable, each containing sufficient originality and creativity under the Copyright Act. ***That issue is decided.*** This Court said so: "Plaintiff's works are original and entitled to protection." (Dkt. #193, p. 9.) And the Register of Copyrights said so, finding each of the four works at issue "***sufficiently creative to warrant registration.***" (Dkt. #231-1, pp. 13, 16–18 (emphasis added).) Despite originality and creativity being decided, Take-Two treats part of its Motion as a request for reconsideration—albeit one that is out of time. Any attack on originality or creativity can simply be brushed aside. The only issue here is whether certain good-faith inaccuracies in Hayden's copyright applications when initially filed absolve Take-Two of infringing Hayden's ***indisputably copyrightable works***. They do not.

Take-Two seeks absolution based on a hyper-technicality that Congress has expressly rejected. Congress enacted a safe harbor for registrations that contain inaccuracies (17 U.S.C. § 411(b)(1)), precisely to close the very loophole that Take-Two seeks to exploit through its Motion. The alleged inaccuracies fall under this safe harbor because (1) he did not know his applications contained inaccuracies, and (2) the inaccuracies could easily be fixed (as the Copyright Office has already held) and were thus immaterial. 17 U.S.C. § 411(b)(1). Accordingly, the sole question for the Court is whether there is *any factual dispute* about whether Hayden's innocent registration inaccuracies fall under this safe harbor, viewing all facts and inferences in the light most favorable to Hayden. In view of the facts in the record and the Register of Copyright's rulings on this issue, Take-Two has not met—and cannot possibly meet—its burden for summary judgment.

There are two independently sufficient reasons to deny Take-Two's Motion. ***First***, there is, at minimum, a material factual dispute as to whether Hayden knew his registrations were

inaccurate. Hayden explains in his deposition and in the attached declaration that he lacked such knowledge, and questions about state of mind should not be decided on summary judgment. What is more, given the legal ambiguities about identifying sources of inspiration in applications (*i.e.*, what constitutes an "appreciable amount" of pre-existing material?) and the fact that there exists *no* guidance in the Compendium for registering tattoos, Hayden cannot be found to have *known* his applications were legally inaccurate. Take-Two's Motion should be denied for this reason alone. ***Second***, the Register of Copyright's Response conclusively found that Hayden's works are registerable despite the inaccuracies. This finding alone secures Hayden's registrations within the safe harbor and thus, as a matter of law, they "satisf[y] the requirements of [section 411] and section 412[.]" 17 U.S.C. § 411(b)(1). At barest minimum, there are genuine factual disputes that preclude summary judgment. Granting summary judgment under these circumstances would be reversible error.

## II.     STATEMENT OF MATERIAL FACTS

### *Hayden's Asserted Tattoos*

Jimmy Hayden, is a "go-to" tattoo artist, known for creating original tattoos for some of the most famous players in the NBA, who travel across the country to see him. (Dkt. #109-49, ¶ 3.) From 2007 to 2012, Jimmy inked multiple tattoos on LeBron James, Tristan Thompson, and Danny Green. Jimmy asserted six of these tattoos in this case after learning Take-Two was willfully copying them in its NBA 2K video games. Four of these tattoos—Jimmy's *Lion*, *Brother's Keeper*, *Fire*, and *Scroll* tattoos (collectively, the "Tattoos")—are the subject of Take-Two's Motion.

Jimmy created and inked the Tattoos using considerable artistic skill and vision. (*Id.* at ¶ 9.) Creating and inking a quality tattoo requires significant perception, vision, dexterity, and

skill, given a human body's irregular surface. (*Id.*) Creating each of the Tattoos required countless artistic decisions and acts in execution. (*Id.*) On September 6, 2016, Jimmy applied to register the *Lion* tattoo, and on August 11, 2017, Jimmy applied to register the *Brother's Keeper*, *Fire*, and *Scroll* tattoos. Jimmy received valid copyright registrations from the Copyright Office for each of the Tattoos. These were the first and only copyright registrations Jimmy ever filed. (Ex. B, Hayden Declaration, ¶ 8.)

### *Hayden's Motion for Summary Judgment*

On October 25, 2021, Hayden moved this Court for entry of summary judgment that he owned valid copyrights for each of the Tattoos and two others not at issue in Take-Two's Motion. (Dkt. #93.) In opposition, Take-Two contested the validity of Hayden's Tattoos, arguing that the *Lion* and *Brother's Keeper* tattoos were "copied from pre-existing sources." (Dkt. #112, pp. 7–9.) Take-Two made the same factual assertions it makes in its present Motion, including that the *Lion* tattoo was "impermissibly copied" from a playing card and that the *Brother's Keeper* tattoo was "copied from Michelangelo's 'Creation of Adam' fresco painted on the ceiling of the Sistine Chapel[.]" (*Id.*) Despite Take-Two's arguments, on September 20, 2022, this Court granted Hayden's Motion for Partial Summary Judgment, finding his asserted tattoos to be "original and entitled to protection." (Dkt. #193, p. 9.)

### *Referral to the Copyright Office*

On the eve of (then-scheduled) trial, in a ***footnote in its proposed jury instructions***, Take-Two purported to "reserve[] its right to request a referral to the Copyright Office under § 411(b) to determine whether [certain alleged] inaccuracies [in Hayden's applications for registration] would have resulted in a refusal of the registrations." (Dkt. #217, p. 1.) This prompted the Court to continue the trial and refer a set of questions to the Register of Copyrights to determine

5

whether the Register would have refused registration for the Tattoos if it knew of the purported inaccuracies. (Dkt. #229.) On August 21, 2023, the Register of Copyrights responded with key holdings, confirming that **(1) the Tattoos are registrable, (2) Hayden had "appropriately utilized the supplementary registration procedures to amend the claim to copyright for two of the tattoo designs, [*Fire*] and [*Scroll*]," and (3) Mr. Hayden can "likewise file supplementary registration applications to correct the omissions in the [*Lion*] and [*Brother's Keeper*] Registrations."** (Dkt. #231-1, at pp. 2, 13, 16–19.)[3] The Register further confirmed that Hayden's Tattoos are "sufficiently creative to warrant registration." (*See id.* at pp. 13, 16–18.) In the face of these findings—findings that Take-Two totally avoided discussing in its Motion—Take-Two now seeks, again, a ruling that invalidates the Tattoos. Take-Two's Motion should be denied.

## III.     LAW AND ARGUMENT

Summary judgment is only appropriate in cases where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Houser v. Powerdot, Inc.*, No. 1:21CV915, 2023 WL 7181680, at *2 (N.D. Ohio Aug. 30, 2023). It is Take-Two's burden "to conclusively show no genuine issue of material fact exists." *Id.* (*citing Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994)). Conclusory assertions are not enough. *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring). "A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party." *Houser*, 2023 WL 7181680, at *2 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

---

[3] Upon resolution of the instant Motion, Hayden intends to "likewise file supplementary registration applications to correct the omissions in the [Lion] and [Brother's Keeper] Registrations," *id.*, and reiterates his request that the Court direct the Register of Copyrights to review and act on the supplementary registration applications expeditiously. (*See* Dkt. #233.)

6

**A.** ***Hayden's original registrations for the Tattoos satisfy the pre-suit registration requirement.***

Hayden's copyright registrations satisfy the pre-suit requirements under 17 U.S.C. § 411, even if they contained inaccuracies. Under the 411(b)(1) safe harbor, "[a] certificate of registration satisfies the requirements under [section 411] and section 412, ***regardless of whether the certificate contains any inaccurate information***, unless—(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse the registration." 17 U.S.C. § 411(b)(1) (emphasis added). Take-Two must show there are no material disputed issues of fact on ***both*** elements (A) and (B) to succeed on its Motion. But Take-Two can demonstrate neither. Congress enacted Section 411(b) to make it ***easier*** for rights holders to secure judgments and explicitly close the loophole infringers had used to evade liability due to innocent inaccuracies in registrations. *See* H.R. REP. 110-617, 23 ("Title I [] makes it easier for rights holders to secure judgments that deter infringing activities and reduce the incentives available to intellectual property thieves."). Congress understood that "[i]t has [] been argued in litigation that a mistake in the registration documents, such as checking the wrong box on the registration form, renders a registration invalid[,]" and thus enacted the 411(b) safe harbor "[t]o prevent intellectual property thieves from exploiting this potential loophole[.]" *Id.* at 24; *see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 187 (2022) (finding that Congress enacted § 411(b) to "eliminat[e] loopholes that might prevent enforcement of otherwise validly registered copyrights"). Hayden's alleged inaccuracies fall under this safe harbor, and his registrations are thus valid.

Take-Two "must meet a very high burden of proof to overcome [the] presumption [of validity]." *Adriana's Insurance Services, Inc. v. Auto International Insurance Agency, Inc.*, No.

8:22-cv-00174, 2023 WL 8000227, at *4 (C.D. Cal. Aug. 18, 2023). Take-Two has not met and cannot meet this high burden. Thus, summary judgment is inappropriate, and Take-Two's Motion should be denied.

   1. <u>Take-Two has not shown that Hayden indisputably knew his registration applications failed to comply with the Copyright Act.</u>

Take-Two has not shown, let alone **indisputably shown,** that Jimmy Hayden knew his registration applications failed to comply with 17 U.S.C. § 409(9). Under the Supreme Court's decision in *Unicolors*, Take-Two must show Jimmy had "actual, subjective awareness of both the facts **and the law**." 595 U.S. at 185 (emphasis added) ("If Unicolors was not aware of the legal requirement that rendered information in its application inaccurate, it could not have included the inaccurate information 'with knowledge that it was inaccurate.'"). Moreover, questions about state of mind should not be decided at summary judgment. *In re Welding Fume Prod. Liab. Litig.*, No. 1:03CV17000, 2007 WL 1087605, at *10 (N.D. Ohio Apr. 9, 2007) (citing *Trucks, Inc. v. United States*, 234 F.3d 1340, 1343 (11th Cir. 2000)); *see also Hayden v. 2K Games, Inc.*, 629 F. Supp. 3d 736, 749 (N.D. Ohio 2022) ("Intent is a fact question.")

Take-Two has not set forth **any** evidence, let alone indisputable evidence, that Hayden *actually* knew, as a matter of law, that his registration applications contained inaccuracies. At best, Take-Two uses speculation conjured from thin air, and avers that Hayden "understood the fundamentals about the registration process" and was represented by counsel. (Motion, p. 12.) Based on these two conclusory assertions alone, Take-Two concludes that Hayden "cannot plead … a mistake of law." (*Id.*) But neither of these two assertions is sufficient to establish *as a matter of law* that Hayden knew his applications contained inaccuracies.

Moreover, the averment that Hayden "understood fundamentals about the registration process" is completely unsupported by any facts in the record. Take-Two cites no deposition

8

testimony or anything else in the factual record that actually supports this conclusory leap. The fact that Hayden recalled that "[he] or someone on [his] behalf, needed to sign a certification" (Motion, p. 12) proves nothing. Indeed, the asserted tattoos in this case were the first and only copyright registration applications Hayden ever filed. (Ex. B, Hayden Decl., ¶ 8.) Take-Two's entire Motion rests on this conclusory and incorrect averment regarding Hayden's purported understanding of the registration process. For this reason alone, it should be denied.

Even if an applicant "should have known" that his application contained inaccuracies, this falls short of actual knowledge required under § 411(b)(1)(A). *Covetrus Inc. v. Actian Corp.*, No. 2:21-cv-00097, 2023 WL 6389059 at *5 (D. Maine Oct. 2, 2023) ("the standard of review for a section 411(b) court proceeding should differentiate between evidence that a certificate holder 'should have known' that its application (as supplemented) or its deposit contained a misstatement (which would not require invalidation) and evidence that the certificate holder knew or was willfully blind to the fact that the application or deposit would not receive a certificate in the absence of the misstatement (which would require invalidation).")

Take-Two's Motion relies entirely on this incorrect "should have known" standard as opposed to any actual knowledge. The purported inaccuracies at issue stem from Hayden not identifying (1) certain pre-existing materials that were sources of inspiration (*e.g.*, the playing card logo and a design on the ceiling of the Sistine Chapel) in the Lion and Brother's Keeper Tattoos, and (2) pre-existing tattoos that were already inked near the Scroll and Fire Tattoos.

The facts in the record show that Hayden *did not know* that omitting these pre-existing materials in his registration applications was an inaccuracy. Indeed, it is inherently difficult for even a seasoned legal practitioner to know what pre-existing material should be identified in a registration application. The legal threshold for what constitutes an "***appreciable amount***" of

9

unclaimable material is not an obvious, straightforward determination for either a layperson or an attorney, especially under the circumstances of registering tattoos. The Copyright Compendium provides that "unclaimable material should be disclaimed only if it represents an appreciable portion *of the work as a whole*" (US Copyright Office, Compendium of US Copyright Offices Practices (the "Compendium") § 621.2 (3d ed. 2014) (emphasis added)), and that the "Material Excluded" field does not need to be completed for "common symbols and shapes, and the like" (Compendium § 503.5). Out of the Compendium's extensive 1,396 pages, less than a page (§ 621.2) is dedicated to explaining the gray area between "a minimal amount of unclaimable material" (which need not be identified or disclaimed) and "an appreciable amount of unclaimable material" (which is supposed to be identified and disclaimed). What is more, the Compendium offers *no* guidance with respect to registering tattoos. Put simply, reasonable minds may differ as to what meets this threshold. Lay people, seasoned intellectual property attorneys, judges, and the Copyright Office might reach differing conclusions on what should be excluded in an application. There is no way Hayden should have known or could have known with legal certainty what to exclude or not exclude, especially since attorneys and courts often disagree on this issue.

For example, the court in *Schenck v. Orosz*[4] found it "absurd" to require an applicant "to disclose certain widely disseminated public domain materials to the Copyright Office," including the Canadian flag;[5] whereas the Register of Copyrights stated in its Response in this case that an applicant *is* "required to exclude material that is 'clearly in the public domain.'" (Dkt. #231-1, n. 49.) Further, Take-Two and its counsel asserted that the phrase "My Brother's Keeper" should

---

[4] 105 F. Supp. 3d 812, 821 (M.D. Tenn. 2015).

[5] *Schenck*, 105 F. Supp. 3d at 821.

have been excluded in Hayden's application for his *Brother's Keeper* tattoo (Dkt. #225, p. 4), but the Register of Copyrights found to the contrary: "'My Brother's Keeper,' which as a short phrase, is not copyrightable and did not need to be excluded." (*Id.* at 15.)

Indeed, Take-Two's own copyright applications for its NBA 2K video games, which undeniably consist of a multitude of pre-existing works, including Hayden's tattoos, demonstrate that Take-Two was uncertain of when and what to exclude as to pre-existing materials in its own applications. For example, Take-Two's NBA 2K20, NBA 2K21, and NBA 2K23 registrations did not exclude *any* pre-existing material, despite doing so in its application to register NBA 2K22. (Ex. A.) By Take-Two's argument, are all its registrations for its games invalid?

Obviously, this is not a clear-cut, black and white exercise, even for legal practitioners. Hayden cannot be imputed with knowledge of these inaccuracies based on Take-Two's vague and unsupported conclusion that he "understood fundamentals about the registration process"[6] and was represented by counsel. (Motion, p. 12.) Having a lawyer does not mean Jimmy should be—by default—imputed with knowledge of legal inaccuracies, especially ones involving ambiguous legal issues. Indeed, the Supreme Court in *Unicolors* acknowledged that applicants, whether attorneys or laypeople, may make application innocent mistakes "as a result of a legal, as well as a factual, error." *Unicolors*, 595 U.S. at 187. Perforce, *Take-Two* cannot assert there are no undisputed facts about what *Hayden* "understood."

---

[6] The cases Take-Two cites finding that the applicant had knowledge of the legal inaccuracies are distinguishable. In *Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*, No. 2:20-cv-11181, 2023 WL 115558 at *9 (Jan. 4, 2023), the applicant had filed over 350 copyright registration applications and was party to at least 60 copyright infringement litigations. The asserted tattoos in this case were the first and only copyright registration applications Hayden ever filed, and this copyright infringement case is the first case Hayden has ever filed. (Ex. B, Hayden Decl., ¶¶ 8, 9.) In *Lieb v. Korangy Publishing, Inc.*, CV 15-0040, 2022 WL 1124850, at *2 (E.D.N.Y. Apr. 14, 2022), the applicant failed to disclose a nearly verbatim previously published article the author published just weeks before authoring the registered work, which itself expressly identified the work as being "adapted from" the earlier work. The legal issue in *Lieb* is much more straight forward and factually distinct from the issue here.

Hayden has always considered the Tattoos to be entirely his creation and did not believe there was anything to exclude as unclaimable on his applications. (Ex. B, Hayden Decl., ¶¶ 10–13.) Hayden used his artistic skill to make countless artistic judgments in creating each of these original works as a whole, including "the precise shape, style, expression, shading, line thickness, density, color, and orientation[.]" (Dkt. #109-49, ¶ 9.) Although the Register of Copyrights pronounced that he should have excluded certain pre-existing materials, Hayden did not know his applications contained inaccuracies when he submitted them. (Ex. B, ¶¶ 10–15.)

In creating the *Lion* tattoo, Hayden testified that, although he looked at a playing card before creating the tattoo, he "wanted to come up with [his] own design, style of it." (Ex. C, Hayden Dep., 82:19–25.) In fact, he testified that he did not even "remember the playing card" when Take-Two counsel pressed him on if and what he "copied." (*Id.* at 83:1–84:18.) During the deposition, after Take-Two's counsel showed Hayden the playing card logo, Hayden explained the differences he perceived between that logo and the *Lion* tattoo: "One's tattooed on skin looks like to me, and they have different shading and everything." (*Id.* at 86:18–21.) "They look totally different." (*Id.* at 88:20–24.) When applying for registration for the *Lion* tattoo, Hayden did not believe or know as a legal matter that the playing card logo constituted an "appreciable amount" of unclaimable material that was required to be excluded because the *Lion* tattoo was his own original work. (Ex. B, ¶ 12; *see also* Ex. C, 128:25–129:5.)

Similarly, in creating the *Brother's Keeper* tattoo, Hayden did not know that the hand design needed to be excluded—in his view, the tattoo he created "has nothing to do with Michelangelo." (Ex. C, 136:22–137:6.) Hayden has always considered the *Brother's Keeper* tattoo to be a separate original work that was simply inspired by a small portion of the Sistine

Chapel. (Ex. B, ¶ 13.) He did not know or believe that he was required to exclude the hand design. (*Id.*)

In creating the *Fire* and *Scroll* tattoos, Hayden did not know when he applied for copyright registration that he should exclude the tattoos that were near where he inked his original works. (*Id.* at ¶¶ 14–15.) Hayden understood and intended to only register the works that he created and inked and had no intention of his registration covering the tattoos that were already inked on Mr. Green's arms. (*Id.*) During the litigation, Hayden decided to file supplementary applications to ensure that his intention to only register the works he created and inked was clear. (*Id.*) These were then accepted by the Copyright Office without question and the Register of Copyrights has since blessed these registrations: "the applicant appropriately utilized the supplementary registration procedures to amend the claim to copyright for [the *Fire* and *Scroll* tattoos]." (Dkt. #231-1.) Take-Two's assertion that a supplementary registration cannot be used to "reach back in time" to satisfy the pre-suit registration requirement (Motion, p. 10, n. 2) is a red herring. The issue is whether Hayden's *original* registrations satisfy the pre-suit registration requirement under § 411(b).[7] As set forth in this brief, they do because they fall under the § 411(b) safe harbor.

Put simply, the mere fact that Hayden did not exclude certain pre-existing material from his registration applications cannot be considered a *knowing* inaccuracy, especially in view of his express testimony and declaration otherwise and the ambiguities about what meets the "appreciable amount" standard. *See Gaffney v. Muhammad Ali Enterprises LLC*, No.

---

[7] The cases Take-Two cites—*LADS Network Sols., Inc. v. Agilis Sys., LLC* and *Rawls v. Paradise Artists, Inc.*—do not find differently. *First*, in *LADS*, the court had already ruled that the plaintiff's original registrations were invalid under 17 U.S.C. § 411(b). The court merely noted that the plaintiff's supplemental registration *alone* did not satisfy the pre-suit registration requirement. *LADS Network Sols., Inc. v. Agilis Sys., LLC*, No. 4:19-CV-00011-SEP, 2022 WL 4534738, at *6 (E.D. Mo. Sept. 28, 2022). *Second*, neither *Rawls* nor any of the cases "collected" in *Rawls* even discuss supplementary registrations. At most, *Rawls* (and the cases "collected" therein) merely stands for the proposition that post-filing copyright registrations *alone* don't satisfy the pre-suit registration requirement.

18CIV8770, 2022 WL 4095953, at *6 (S.D.N.Y. Sep. 7, 2022) (finding lack of actual knowledge where applicant averred he did not believe the registrations were inaccurate); *see also ReportHost LLC v. Spectora Inc.*, No. 22-cv-00457, 2023 WL 2782285, at *3 (D. Colo. Mar. 29, 2023) (finding applicant did not knowingly include inaccuracies in his application due to the "complexity of the relevant rule that [the applicant] allegedly inaccurately construed"). Take-Two has not met and cannot meet its burden in establishing that these inaccuracies were submitted *with knowledge*. At barest minimum, it is a disputed question of fact. *In re Welding*, 2007 WL 1087605, at *10; *see also dmarcian, Inc. v. DMARC Advisor*, No. 1:21-cv-00067, 2023 WL 3971433, at *5 (W.D.N.C. June 12, 2023) (finding that determining whether applicant had actual knowledge of a mistake "would require a determination of scienter, a 'fact intensive determination, often appropriately decided by a jury'"). Thus, Take-Two's Motion should be denied for this reason alone.

2. Take-Two has not conclusively shown—and *cannot* show—that the asserted omissions were material to the Register of Copyrights' registration decisions.

Take-Two also fails to show as a matter of law that Hayden's inaccuracies were material to the Register's registration decisions. Take-Two cannot possibly meet this showing in view of the Register of Copyrights findings in its Response.

Hayden's inaccuracies fall under the § 411(b) safe harbor unless "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(B). Thus, the issue is whether or not the Register's Response (Dkt. #231-1) demonstrates it would have refused registration having known of the inaccuracies. Nowhere in the Register's Response does the Register say it would have "refused to register" the Tattoos. Instead, the Register found each Tattoo "sufficiently creative to warrant registration" and that "it would have sought the applicant's permission to amend the claims." (Dkt. #231-1, pp. 2, 13.)

This holding puts a stake in the heart of Take-Two's Motion, and on this basis alone, Take-Two's Motion should be denied. Take-Two completely failed to address or even mention these findings in its Motion. Take-Two's mischaracterization of the Register's Response runs counter to the Register's holdings, the case law, the legislative purpose of § 411(b), and common sense.

Courts construe § 411(b)(1)(B) as asking whether the Register would have refused to issue certificates of registration *but for* the inaccuracies in the application. *Covetrus*, 2023 WL 6389059 at *6 (finding "the evidence does not suggest . . . that the Register would not have issued certificates of registrations *but for* the 'errors'") (emphasis added); *Schenck*, 105 F. Supp. 3d at 817 (construing 411(b)(1)(B) as asking whether "the Copyright Office would have refused to register the copyright ***had that inaccurate information not been included***") (emphasis added); *Talavera v. Global Payments, Inc.*, No. 21-CV-1585, 2023 WL 3080701, at *11 (S.D. Cal. Apr. 25, 2023) (construing 411(b)(1)(B) as asking whether "the Register of Copyrights would have denied Talavera's Registration ***but for the false statement***") (emphasis added). Put another way, would the Register allow the registration if the inaccuracies were removed or cured? *See Adriana's Insurance Services Inc. v. Auto International Insurance Agency, Inc.*, No. 8:22-cv-00174, 2023 WL 8000227, at *5 (C.D. Cal. Aug. 18, 2023) ("**Because the alleged inaccuracies in Plaintiff's copyright application were curable on that basis, Defendants cannot show that the Register of Copyrights would have refused registration**."). This interpretation is consistent with the legislative purpose of § 411(b): "[t]o prevent intellectual property thieves from exploiting th[e] potential loophole" of invalidating copyright registrations due to immaterial inaccuracies. H.R. REP. 110-617, 24; *see also*, *Unicolors*, 595 U.S. at 187 (finding that § 411(b) was enacted to "eliminat[e] loopholes that might prevent enforcement of otherwise validly registered copyrights").

15

Viewed in this context, the Register's Response undeniably and conclusively secures Hayden's registrations within the 411(b) safe harbor. The Register would *not* have refused registration but for the inaccuracies. Rather, the Register confirmed that if the registration specialist knew of the pre-existing material, they would have reviewed whether the works contained "new creative authorship with a sufficient amount of original expression," and if so, would have allowed them. (Dkt. #231-1, p. 13, 16–18.) And in the case of each of the Tattoos, the Register expressly found them to "be sufficiently creative to warrant registration." (*Id.*) Moreover, the Register found that "the applicant appropriately utilized the supplementary registration procedures to amend the claim to copyright for two of the tattoo designs, 'Fire D.G.' and 'Scroll D.G.' The Office determined that the applicant's contributions to these designs, with preexisting material excluded, is copyrightable." (*Id.* at p. 2.) The Register also confirmed that it would allow supplementary registration applications to correct the inaccuracies in the Lion and Brother's Keeper registrations: "Mr. Hayden may likewise file supplementary registration applications to correct the omissions in the Lion and Brother's Keeper T.T. Registrations by excluding the preexisting designs from his claims to copyright. As explained above, ***both of these works modify the works on which they are based in a manner that is sufficiently creative to warrant registration.***" (*Id.* at p. 19.)

Accordingly, the Register would *not* have refused registration but for the inaccuracies. *Universal Dyeing & Printing, Inc. v. Knitwork Prods. II, LLC*, No. 2:17-cv-05660, 2019 WL 2613448, at *5 (C.D. Cal. June 26, 2019) (finding the fact that the Copyright Office issued a certificate of supplementary registration after being informed of the errors "shows that the errors were not one that 'if known, would have caused the Register of Copyrights to refuse registration'"); *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) ("it is

clear that the mistake would not have caused the copyright office to refuse registration because the copyright office later approved Unicolor's request to correct the inadvertent exclusion"); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 854 (9th Cir. 2012) (finding issuance of supplementary registration shows the error was not material). To invalidate Hayden's registrations, despite the Register declaring that they are curable and would result in otherwise validly registered copyrights, would turn the purpose of the § 411(b)(1) safe harbor and the Supreme Court's guidance in *Unicolors* on its head.[8]

Yet this is what Take-Two asks this Court to do. (Motion, pp. 12–13.) Take-Two's argument is solely based on misconstruing one sentence—out of context—from the Register's 18-page Response (*id.*): "the Office would not have registered the tattoo designs if it had known that the designs included an 'appreciable amount' of public domain material or material owned by a third party that the applicant did not exclude in his application for registration." (*Id.* at pp. 1–2.) Take-Two spotlights this single sentence in a vacuum and ignores the substance of the other 18 pages of the Response, including the very next sentence. Not only did the Register not say *anywhere* in its Response it would have "refused registration" (the language used in 411(b)(1)(B)), but it followed up that sentence by explaining that it "would have sought the applicant's permission ***to amend the claims***" rather than refuse registration.[9] (*Id.* at p. 2 (emphasis added).)

---

[8] Hayden's request that this Court advise the Copyright Office to review supplementary registration applications for the Lion and Brother's Keeper Tattoos is still presently pending. (Dkt. #233.)

[9] Take-Two's reliance on *Oliver v. Meow Wolf, Inc.*, No. 20-237, 2023 WL 4353541 (D.N.M. July 5, 2023) should not be given weight. In *Oliver*, the Register's Response did not indicate that instead of refusing registration, the examiner would have "sought the applicant's permission to amend the claims," as the Register stated in its Response in this case. (*See* Motion, Ex. 12.) Moreover, the reasoning in *Oliver* appears to misapply and conflict with the spirit and purpose of § 411(b), and Hayden submits that this decision was in error. Further, the decision in *LADS Network Sols., Inc. v. Agilis Systems, LLC*, No. 4:19-cv-00011, 2022 WL 4534738, at *2 (E.D. Mo. Sep. 28, 2022) should also be afforded little weight, as the copyright holder did not dispute that the inaccuracies were material. The decision in *Neman Brothers & Assoc., Inc. v. Interfocus, Inc.*, 2:20-cv-11181, 2023 WL 115558 (C.D. Cal. Jan. 4, 2023) is also meaningfully distinguishable. The applicant in *Neman* filed group registrations—a requirement for which is that each

---

Finally, Take-Two's claim that "it is virtually ***always*** true that an applicant can fix an inaccuracy" (Motion, p. 13) is simply wrong. In fact, the Register's Response in *Lieb v. Korangy Publishing Inc.*, which Take-Two cites, provides an example where the Register would have "refused to register" a work because the inaccuracy was material. (Ex. D, *Lieb* Register Response, p. 8.) There, the Register explained that:

> the registration specialist would have corresponded with Plaintiff to request that he disclaim the preexisting material and clarify the new material he added. Based on a review of the two articles, it does not appear that the newly-added material is substantial enough to warrant registration of the HuffPost Article as a derivative work. Thus, upon determining that the newly-added material did not amount to copyrightable authorship, the registration specialist ***would have refused to register the claim*** in the HuffPost Article[.]

(*Id.* at p. 8 (emphasis added).) In the Response in *Lieb*, the Register applied the same approach as it did here under similar circumstances, found that newly-added material did *not* amount to copyrightable authorship, did *not* afford the applicant an opportunity to correct the inaccuracy, and *explicitly* stated that it would have "*refused to register the claim*." (*Id.*) In Hayden's case, the Register found that the newly-added material *was* "sufficiently creative to warrant registration," gave Hayden an opportunity to correct the inaccuracy, and—critically—did not say it "would have refused to register the claim." (Dkt. #231-1, pp. 13, 16–18.) The absence of that language in the Register's Response is dispositive.

Take-Two's interpretation of the Register's Response would, in fact, eviscerate the § 411 safe harbor altogether. It is clear that in *any* scenario where the Register is aware of an inaccuracy, the Register would correct it instead of registering the inaccurate application as is. The fact that the Register "would not have registered the tattoo designs" without first correcting

---

work must share a common author. (Motion, Ex. 11, p. 13.) The Register expressed "doubts as to whether the collections can meet this requirement," thus making it unlikely the inaccuracy could be remedied. (*Id.*)

the application is not relevant to this analysis. The relevant question is whether the Register would have—without qualification—"refused registration." Here, the Register has made clear that it is prepared to *grant* supplementary registration. Accordingly, Take-Two's Motion should be denied on this reason alone and its defenses should be denied as a matter of law.

### B. *Hayden did not commit fraud on the Copyright Office.*

Because the inaccuracies in Hayden's registration applications fall under the § 411(b) safe harbor, Take-Two's fraud on the copyright office defense also fails as a matter of law. The § 411(b) safe harbor was enacted to codify the fraud on the Copyright Office doctrine. *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1066 (9th Cir. 2022) ("[T]he clear implication of the Supreme Court's holding in this case is that … [§ 411(b)] was intended the codify the fraud of the Copyright Office doctrine.") (referencing *Unicolors,* 595 U.S. at 188). What is more, to establish fraud on the Copyright Office, Take-Two must meet an even higher standard of culpability. The party seeking to establish a fraud of the Copyright Office must show that the applicant *actually intended* to defraud the Copyright Office. *See Roberts v. Gordy*, 877 F.3d 1024, 1030 (11th Cir. 2017). Take-Two's wholly conclusory and unsupported assertion that "Plaintiff's conduct through this lawsuit … shows that he understood these inaccuracies and attempted to obscure them" (*see* Motion at 15) does not meet the "heavy burden" Take-Two bears to establish that Hayden *actually intended* to defraud the Copyright Office. *See Tacori Enterprises v. Rego Mfg.*, No. 1:05CV2241, 2008 WL 4426343, at *14 (N.D. Ohio Sept. 25, 2008). Again, this is merely a conclusory assertion by Take-Two with absolutely no factual support. He did not intend to defraud the Copyright Office as indicated by the facts in the record. (Ex. B, ¶ 10.) At the very least there is a disputed issue of fact regarding Hayden's intent. Thus, Take-Two's motion for summary judgment that Hayden's omission of the pre-existing materials

on his registration applications for his Tattoos constitutes fraud on the Copyright Office should be denied.

## IV.    CONCLUSION

The § 411(b)(1) safe harbor is meant to protect artists from precisely the scenario in this case: *i.e.*, where an infringer tries to escape liability based on immaterial inaccuracies in the registration applications for otherwise indisputably copyrightable works. The Register's rulings in favor of Hayden are outcome determinative on this issue. There are no facts in the record that support Take-Two's assertions of fraud. Moreover, Hayden's testimony and declaration and the Register's decisions raise disputed issues of material fact, at the very least, such that Take-Two's Motion should be denied. The Court should not only deny Take-Two's Motion, but also find that Take-Two's defenses of (1) pre-suit registration and (2) fraud on the Copyright Office fail as a matter of law.

Dated: November 30, 2023                                    Respectfully submitted,

By:  */s/ Andrew Alexander*
John Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Todd R. Tucker (Ohio Bar No. 0065617)
Andrew Alexander (Ohio Bar No. 0091167)
Josh A. Friedman (Ohio Bar No. 0091049)
Dustin Likens (Ohio Bar No. 0097891)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
ttucker@calfee.com
aalexander@calfee.com
jfriedman@calfee.com

dlikens@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2023, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's Electronic Filing System to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's System.

/s/ Andrew Alexander
