# EXHIBIT C

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES HAYDEN,  CASE NO: 1:17CV2635

      Plaintiff,

       v.

2K GAMES, INC., et al.,

      Defendants.
-------------------------------

Deposition of JAMES HAYDEN

Cleveland, Ohio

Wednesday, October 30, 2019 - 9:04 a.m.

Reported by:

Angela Nixon, RMR, CRR

Job No.: 26345

Page 82

1  show what he wanted the lion tattoo to look like?
2              MR. MCMULLEN: Objection. I'm sorry, go ahead.
3  A.         It was a reference card, like a playing card.
4              THE COURT: A what card?
5  A.         Playing, like a playing card.
6  Q.         Did he come into your shop with a playing card
7  that depicted a lion?
8  A.         Yeah.
9  Q.         And did he ask you to put -- ink that lion on
10 him?
11 A.         He said do something like this.
12 Q.         And did you say okay?
13 A.         Yes.
14 Q.         Did you know that one of Mr. James nicknames was
15 Lion?
16 A.         No.
17             MR. MCMULLEN: Objection.
18 BY MS. CENDALI:
19 Q.         So in inking the lion tattoo on Mr. James, you
20 tried to copy the playing card that he gave you, right?
21             MR. MCMULLEN: Objection.
22 A.         I didn't try to copy.
23 Q.         You didn't try to copy?
24 A.         I wanted to come up with my own design, style of
25 it.

Page 83

1  Q.      So just to be clear, did -- are you saying that
2  you didn't copy how the wings would be placed on the lion
3  from the playing card?
4          MR. MCMULLEN: Objection.
5  A.      Yes.
6  Q.      Are you saying that you didn't come up with the
7  idea of the lion's body position on the playing card?
8          MR. MCMULLEN: Can we hear that back, please?
9          (Whereupon the court reporter read back the
10             previous question.)
11         MR. MCMULLEN: Objection.
12 A.      I'm not saying that.
13 Q.      Isn't it true that you copied the body position
14 of the lion on the playing card when you inked the tattoo?
15         MR. MCMULLEN: Objection.
16 A.      I don't remember the playing card. I just
17 remember the tattoo.
18 Q.      Well, you knew that he came in and had the
19 tattoo --
20 A.      Uh-huh.
21 Q.      Excuse me. You knew that Mr. James came in and
22 showed you the playing card, and he said, according to you,
23 that he wanted a tattoo like this, right?
24         MR. MCMULLEN: Objection.
25 A.      Similar.

Page 84

```
 1   Q.      Similar to this?
 2   A.      Uh-huh.
 3   Q.      And isn't it true that you copied the -- how the
 4   wings were placed on the lion from the playing card?
 5           MR. MCMULLEN:  Objection.
 6   A.      No.
 7   Q.      Isn't it true that you copied how the wings
 8   looked from the playing card?
 9           MR. MCMULLEN:  Objection.
10   A.      No.
11   Q.      Isn't it true you copied the facial impression of
12   the lion from the playing card?
13           MR. MCMULLEN:  Objection.
14   A.      Not true.
15   Q.      Isn't it true you -- that you copied the idea of
16   the lion holding the shield from the playing card?
17           MR. MCMULLEN:  Objection.
18   A.      Nope.
19   Q.      Did Mr. James tell you where on his body he
20   wanted the lion inked?
21   A.      Yes.
22   Q.      What did he tell you?
23   A.      On his chest.
24   Q.      Did he tell you what colors he wanted you to use?
25   A.      No, I can't remember.
```

Page 86

1  wings and the V as the image on the playing card Mr. James
2  gave you?
3         MR. MCMULLEN:  Objection.
4  A.     Do I recognize -- I don't know if I recognize
5  that.
6  Q.     Isn't it true Mr. James gave you a Venetian
7  playing card?
8  A.     I can't remember.
9         MR. MCMULLEN:  Objection.  Go ahead.
10 BY MS. CENDALI:
11 Q.     Isn't it true that the image of the lion on the
12 playing card looked like the Venetian lion that we're
13 looking at in Exhibit 7?
14        MR. MCMULLEN:  Objection.  Can you read that
15 back?
16            (Whereupon the court reporter read back the
17            previous question.)
18 A.     They look different.
19 Q.     How do they look different?
20 A.     One's tattooed on skin looks like to me, and they
21 have different shading and everything.
22 Q.     I'm asking you -- I think you may have
23 misunderstood my question.  Let me ask it again.
24        Isn't it true that the image of the lion on the
25 playing card looked like the image of the lion on Exhibit

Page 88

1  Q.       I'm not talking about your tattoo.  I'm asking
2  you, Exhibit 7, the Venetian lion, do you recall it
3  differing in any way from what was on the playing card?
4           MR. MCMULLEN:  Objection, asked and answered.
5  A.       I can't remember.
6  Q.       Did you keep a copy of the playing card?
7  A.       No.
8  Q.       Did you keep the playing card?
9  A.       No.
10 Q.       Isn't it true that Mr. James had gone to the
11 Venetian?
12          MR. MCMULLEN:  Objection.
13 A.       I don't know.
14 Q.       Just to be clear, your -- your testimony is that
15 you did not copy that -- the Venetian lion when you inked
16 the lion on Mr. James that's reflected in Exhibit 6; is
17 that your testimony?
18          MR. MCMULLEN:  Objection.
19 A.       Could you rephrase it -- state that again.
20 Q.       Is it your testimony that you did not copy the
21 Venetian lion when you inked the lion tattoo on Mr. James,
22 which is reflected in Exhibit 6?
23          MR. MCMULLEN:  Objection.
24 A.       They look totally different.
25 Q.       So your testimony is you did not copy the

Page 128

1   A.         So the page is here?

2   Q.         Yes, that's the Bates numbered page.

3   A.         All right.

4   Q.         And do you see section 4, it says 4 Limitation of

5 Copyright Claim, do you see that?

6   A.         Yes.

7   Q.         And do you see in section 4a it states (Reading:)

8 Material excluded from this claim (material previously

9 registered, previously published, or not owned by this

10 claimant), do you see that?

11   A.         I'm reading with you.

12   Q.         Okay. Isn't it true that nothing was disclosed

13 on this form about the fact that you used a -- the playing

14 card that Mr. James brought in to create the lion tattoo?

15              MR. MCMULLEN: Objection.

16   A.         Could you say that again, restate that?

17              MS. CENDALI: Please read it back.

18              (Whereupon the court reporter read back the

19                previous question.)

20              MR. MCMULLEN: I'll restate my objection.

21   A.         I want you to restate the question if you could.

22   Q.         Why can't you answer my question?

23   A.         I have a hard time understanding what you're

24 asking.

25   Q.         You didn't tell the copyright office when this

Page 129

1 copyright application was submitted that the lion tattoo
2 had been based on the playing card that Mr. James brought
3 in, did you?
4       MR. MCMULLEN: Objection.
5 A. No, because I draw that tattoo on with a marker.
6 Q. You didn't, in this form, do anything to tell the
7 copyright office that Mr. James had brought in a tattoo of
8 a lion and that he asked you to do something similar to
9 that, correct?
10       MR. MCMULLEN: Objection.
11 A. I guess not.
12       THE COURT REPORTER: I'm sorry, what did you say?
13 A. I guess not.
14 Q. Is Kimberly Textoris one of the lawyers
15 representing you in this action?
16 A. Yes.
17 Q. And did she file your copyright registrations on
18 your behalf?
19 A. Yes.
20 Q. So let's take a look at what's been marked as
21 Defendant's Exhibit 14, a document that appears to be a
22 copyright registration baring Bates Numbers Take-Two 148
23 through 204. And turning, if you would, to Page 200 of
24 that document. Is that a drawing you made after the fact
25 to recreate the look of the star tattoo you inked on

Page 136

```
 1                MR. MCMULLEN:  Objection.
 2    A.          I don't know, I drew it on with marker.  Like I
 3    said, I'm an artist.
 4    Q.          Well, you drew it on with a marker, but
 5    Michelangelo was an artist too, right, and you knew about
 6    his design with the two fingertips touching one another, or
 7    the two hands, right?
 8    A.          That may be true, but Michelangelo designs
 9    weren't recreated and copy written and used by NBA 2K.
10    Q.          You didn't mention, when you submitted this
11    copyright application to the copyright office, that --
12    anything about Michelangelo's hands, correct?
13                MR. MCMULLEN:  Objection.
14    A.          Has nothing to do with Michelangelo.
15    Q.          You didn't disclose that there was any
16    preexisting material when you submitted the application
17    reflected in Exhibit 17, isn't that true?
18                MR. MCMULLEN:  Objection.
19    A.          Not true.
20    Q.          Where do you disclose?  Please look at Page 185.
21    A.          What about it?  I saw it earlier.
22    Q.          Okay.  Where, on Page 185 of -- do you disclose
23    anything about Michelangelo?
24                MR. MCMULLEN:  Objection.
25    A.          It has nothing to do with Michelangelo, this
```

1   copyright has nothing to do with Michelangelo.
2   Q.      So you made disclosures with regard to him in
3   this application, correct?
4           MR. MCMULLEN: Objection.
5   A.      Michelangelo has nothing to do with my copyright
6   or my art.
7   Q.      And so -- all right.
8           Let's take a look at -- have you inked any other
9   professional athletes other than Mr. Green, Mr. Thompson
10  and Mr. James?
11  A.      Yes.
12  Q.      Who?
13  A.      Kyrie Irving, Shaquille O'Neal, Moe Williams,
14  Boobie Gibson, Shannon Brown, the list goes on, quite a
15  few.
16  Q.      All right. Did you tell any of these people when
17  you inked them that they needed your permission to be
18  depicted with their tattoos?
19          MR. MCMULLEN: Objection.
20  A.      No.
21  Q.      Have you ever inked the tattoos that you inked on
22  Mr. James on someone else?
23  A.      No. They're one of a kind.
24  Q.      Well, why didn't you ink them on somebody else?
25          MR. MCMULLEN: Objection.