# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW M. LIEB<br><br>v.<br><br>KORANGY PUBLISHING INC.<br>(d/b/a THE REAL DEAL) | No. 2:15-cv-40-AYS<br><br>Magistrate Judge Ann Y. Shields |

**REPORT OF THE UNITED STATES REGARDING
THE COURT'S REQUEST FOR THE ADVICE OF
THE REGISTER OF COPYRIGHTS PURSUANT TO 17 U.S.C. § 411**

The UNITED STATES OF AMERICA, by its undersigned counsel, appear specially on behalf of the Register of Copyrights ("Register") for the purpose of respectfully responding to the Court's August 5, 2022 Scheduling Order (Unnumbered Docket Entry, dated August 5, 2022), and submitting the *Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 41(b)(2)*.

In accordance with 17 U.S.C. § 411(b)(2), the Court requested the advice of the Register as to whether the Copyright Office would have refused registration had it known that Plaintiff failed to identify in the application previously published material that formed the basis of the registered work. Docket Nos. 50, 52-1 (Apr. 15, 2022). Upon learning of the Court's request, the Register informed the Court that it anticipated that it would provide a response by August 31, 2022, barring unforeseen circumstances. Docket No. 55 (Aug. 3, 2022). The Court then directed the Government to report back no later than September 15, 2022, regarding the status of the Register's response. (Unnumbered Docket Entry, dated August 5, 2022).

The United States respectfully reports that the Register has completed her Response to the Court's request. The Register's Response is filed as an attachment to this Report.

Dated: Central Islip, New York
      August 24, 2022

Respectfully submitted,

*Counsel for the United States Copyright Office*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BREON PEACE
United States Attorney
Eastern District of New York

*s/Gary L. Hausken*
GARY L. HAUSKEN
Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0342
gary.hausken@usdoj.gov

JAMES KNAPP
Digitally signed by JAMES KNAPP
Date: 2022.08.24 18:20:44 -04'00'

JAMES H. KNAPP
Assistant United States Attorney
(631) 715-7879
james.knapp@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

ANDREW M. LIEB,

    Plaintiff,

        v.

KORANGY PUBLISHING INC.
(d/b/a THE REAL DEAL)

    Defendant.

No. 2:15-cv-40-AYS

Magistrate Judge Ann Y. Shields

## RESPONSE OF THE REGISTER OF COPYRIGHTS
## TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)

On April 14, 2022, pursuant to 17 U.S.C. § 411(b)(2), the Court requested advice from the Register of Copyrights ("Register") on whether the U.S. Copyright Office ("Copyright Office" or "Office") would have refused registration had it known of Plaintiff Andrew M. Lieb's "failure to identify the previously published material upon which the HuffPost Article was based, i.e., the Dan's Papers Article."[1]

The Register hereby submits her response. Based on the legal standards and examining practices set forth below, the Office would not have registered the article claimed in the TX0007932377 registration (the "HuffPost Article") if it had known that the article was based on a virtually-identical, previously-published work (the "Dan's Papers Article"), which the applicant did not disclose to the Office. The Register notes that her conclusion regarding the

---

[1] Mem. and Order at 28, ECF No. 52 ("April 14 Order" or "Order") (emphasis in original). As described in the notice filed by the United States on August 3, 2022, due to the manner in which the Order was transmitted, the Office did not become aware that this Court had sought the Register's advice until July 14, 2022. Notice Regarding Req. for the Views of the Register of Copyrights Pursuant to 17 U.S.C. § 411, ECF No. 55 (the "Notice"). As advised in the Notice, the Office agreed to submit a response to the Court no later than August 31, 2022.

1

TX0007932377 registration does not bar Plaintiff from filing a new application to register his original article, referred to by the Court as the Dan's Paper Article.

## BACKGROUND

### I. Examination History

A review of the records of the Office reveals the following:

On November 12, 2014, the Office received an application to register an article titled "10 Surprises When Inheriting Real Estate" (subsequently identified by the Court as the "HuffPost Article"). The application identified Plaintiff Andrew M. Lieb as the author and copyright claimant of the work. It stated that the work was completed in 2014 and first published in the United States on October 31, 2014. It did not identify the article as a derivative work or disclose that it incorporated preexisting material. Based on the information provided in the application, the Office had no reason to question the applicant's representations and accepted them as true and accurate. The Office registered the claim with an effective date of registration ("EDR")[2] of November 12, 2014, and assigned it registration number TX0007932377 (the "Registration").

### II. The Court's Request

In its April 14 Order, the Court reviewed the facts before it and analyzed the copyright issues raised by the two articles authored by Plaintiff. It concluded that "Plaintiff made a knowing misrepresentation to the Register of Copyrights sufficient to require that this matter be referred thereto to determine whether the registration would have been refused."[3] According to the Order, Plaintiff's "knowing misrepresentation" was his representation to the Office that the HuffPost Article was "an original, unpublished first version that was not based upon an earlier

---

[2] The EDR is the date the Office received a completed application, correct deposit copy, and the proper filing fee. 17 U.S.C. § 410(d).
[3] Order at 32.

2

published article."[4]  In fact, after its review of both articles, the Court determined that the HuffPost Article was "a near verbatim transcription" of an article Plaintiff previously publicized on another website (identified by the Court as the "Dan's Paper Article").  Because the HuffPost Article was therefore a derivative work of the Dan's Paper Article,[5] the Court held that Plaintiff's "failure to include the Dan's Papers Article" in its registration application should not be excused as inadvertent.  It noted that the Copyright Office "provided the clearest of directions" regarding the need to disclose when a work incorporates preexisting material.[6]  Following the two-step inquiry set forth in Section 411(b) of the Copyright Act, the Court ruled that Plaintiff "presented inaccurate information to the Copyright Office with knowledge of its factual and legal inaccuracy"[7] and asked the Office to "advise the Court as to whether it would have refused Plaintiff's registration had it known of the information that he knowingly failed to disclose."[8]

## ANALYSIS

### I. Relevant Statutes, Regulations, and Agency Practice

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 409, and 410.  Regulations governing applications for registration are codified in title 37 of the Code of Federal Regulations at 37 C.F.R. §§ 202.1 to 202.24.  Further, the principles that govern how the Office examines registration applications are set out in the *Compendium of U.S. Copyright Office Practices*, an administrative manual that instructs agency staff regarding their statutory and regulatory duties and provides expert guidance to copyright applicants, practitioners, scholars, courts, and

---

[4] *Id.* at 28, 32.
[5] *Id.* at 29.
[6] *Id.* at 28, 31
[7] *Id.* at 31.
[8] *Id.* at 32.

3

members of the general public regarding Office practices and related principles of law. The Office publishes regular revisions of the *Compendium of U.S. Copyright Office Practices* to provide additional guidance where necessary and to reflect changes in the law and/or Office practices, which revisions are provided for public comment prior to finalization.

Because Plaintiff filed his application in November 2014, the governing principles the Office would have applied at that time are set forth in the *Compendium of U.S. Copyright Office Practices, Second Edition* (referred to as "COMPENDIUM II").[9] The current edition of the *Compendium* is *Compendium of U.S. Copyright Office Practices, Third Edition* (referred to as "COMPENDIUM (THIRD)"),[10] which was released and became effective December 22, 2014 and was last updated in 2021. In this response, the Register has relied on COMPENDIUM (THIRD), where the Office's relevant practices have not materially changed since the prior edition, and on COMPENDIUM II, where the relevant practices have materially changed.

A. **Derivative Works and Registration of Multiple Versions of a Work**

A derivative work is a work that is "based upon one or more preexisting works" or comprises "editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship."[11] For derivative works, the Copyright Act requires that an application for registration shall include "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."[12] Identifying the new or revised material the author has contributed to a work and any material that is not claimed "is essential to

---

[9] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (2d ed. 1988) ("COMPENDIUM II"), https://www.copyright.gov/history/comp/compendium-two-1988-chap600-1900.pdf.
[10] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) ("COMPENDIUM (THIRD)"), https://copyright.gov/comp3/docs/compendium.pdf.
[11] 17 U.S.C. § 101 (defining "derivative work").
[12] *Id.* § 409(9).

4

defining the claim that is being registered" and "ensures that the public record will be accurate."[13]

At the time that Plaintiff applied to register the HuffPost Article, COMPENDIUM II required an application for a derivative work to identify preexisting and new or revised material if the derivative work incorporated "substantial amounts of previously registered, previously published, or public domain material."[14] It defined "substantial" to mean that the preexisting material represents, "in relation to the work as a whole," a "significant portion of the work."[15]

When examining an application for registration of a derivative work, the Office reviews whether the work contains new authorship with a sufficient amount of original expression to satisfy the requirements for copyrightability.[16] This is the same standard as that required for a copyright in any other work. The author must "contribute[] something more than a 'merely trivial' variation."[17] Thus, "the key inquiry is whether there is sufficient nontrivial expressive variation in the derivative work to make it distinguishable from the [preexisting] work in some meaningful way."[18] If granted, a registration for a derivative work covers only the new creative expression added by the author, not the expression in the preexisting work.[19]

Accordingly, the Office will register multiple versions of a published work, provided that each version contains a sufficient amount of copyrightable authorship that does not appear in the other versions, and if the applicant submits the requisite application, filing fee, and a deposit for each version.[20] A registration for a specific version of a published work covers only the new

---

[13] COMPENDIUM (THIRD) § 621.1.
[14] COMPENDIUM II § 626.02; *see also id*. §§ 306.01, 626.01(a).
[15] *Id.* § 325.01(b) (defining "substantial" in the context of registering derivative computer programs).
[16] COMPENDIUM (THIRD) § 311.2 (citing *Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775, 782 (2d Cir. 1994)).
[17] *Id.* (quoting *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102–03 (2d Cir. 1951)).
[18] *Id.* (quoting *Schrock v. Learning Curve International, Inc.*, 586 F.3d 513, 521 (7th Cir. 2009)).
[19] *Id.*
[20] *Id.* § 512.2; Compendium II § 610.02.

material that the author contributed to that version, including any copyrightable changes, revisions, additions, or other modifications that appear in the deposit copy for that version.[21] It does not cover material that was previously published.

B.     The Role of Supplementary Registration

The Copyright Office recognizes that there sometimes may be a need for a registrant to correct certain errors or provide additional information after a registration has issued. It therefore permits the filing of an application for a supplementary registration to correct certain errors or amplify the information provided in a copyright registration.[22] But the availability of a supplementary registration to correct errors is limited. COMPENDIUM (THIRD) provides that a supplementary registration can be used to "correct or amend the information that appears on the certificate of registration in the fields/spaces marked Author Created, Limitation of Copyright Claim, Nature of Authorship, and/or Material Added to This Work," so long as the authorship described in the application for supplementary registration is registrable.[23] The Office will not, however, issue a supplementary registration to correct an error in, or replace, the deposit copy or copies submitted with the application for basic registration.[24]

If an application to correct or amplify the registration record is approved, the Office will prepare a certificate of supplementary registration that contains pertinent information from the application, create a public record that identifies and describes the changes or revisions that have

---

[21] COMPENDIUM (THIRD) § 512.2.
[22] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; COMPENDIUM (THIRD) § 1802. However, the Office may decline to issue a supplementary registration when it is aware that there is actual or prospective litigation involving a basic registration (1) if the proposed change would be directly at issue in the litigation, and (2) if the proposed amendment may confuse or complicate the pending dispute. COMPENDIUM (THIRD) § 1802.9(G).
[23] COMPENDIUM (THIRD) § 1802.6(J).
[24] 37 C.F.R. § 202.6(d)(4)(ii); COMPENDIUM (THIRD) § 1802.7(D).

6

been made to the registration, and assign a separate registration number and EDR[25] to the supplementary registration.[26] The Office will not cancel or replace the basic registration or the public record for that registration. Likewise, the Office will not change the information or EDR set forth in the basic registration. Instead, the basic registration and the supplementary registration, including the EDRs for each, coexist with each other in the public record because the "supplementary registration augments — but does not supersede — the information set forth in the basic registration."[27]

## II. Register's Response to Court's Request

Based on the foregoing governing statutory and regulatory standards, and its examining practices, had the Office been aware that the HuffPost Article, registration number TX0007932377, was based on a "virtually identical" previously published article, it would have refused to register the work. As discussed above, an applicant is generally required to identify any preexisting work or works that a derivative work is based on or incorporates and provide a general statement of the additional material covered by the copyright being registered.[28] The guidance in COMPENDIUM II required an application for a derivative work to identify preexisting and new or revised material if the derivative work incorporated "substantial amounts of previously registered, previously published, or public domain material."[29] In all cases, to be registrable as a derivative work, the new or revised material must represent a sufficient amount of creative expression.

---

[25] The EDR for the supplementary registration "is the day on which an acceptable application and filing fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for supplementary registration, have all been received in the Copyright Office." COMPENDIUM (THIRD) § 1802.12.
[26] *Id.* § 1802.10. The Office will also place a note in the public record for the supplementary registration that cross-references the registration number and the year of registration for the basic registration. *Id.* § 1802.11.
[27] *Id.* § 1802; 17 U.S.C. § 408(d).
[28] 17 U.S.C. § 409(9).
[29] COMPENDIUM II § 626.02; *see also id.* §§ 306.01, 626.01(a).

7

Based on the Court's April 14 Order, the HuffPost Article was "virtually identical" to a previously published article. Indeed, a comparison between the Dan's Papers Article and the HuffPost Article reveals very few changes between the two articles.[30] Plaintiff replaced several words (*e.g.*, changing "Hamptons estate" to "estate" or "real estate"), and added only one sentence and a brief parenthetical. Thus, the HuffPost Article incorporated "substantial amounts" of the previously published Dan's Papers Article and Plaintiff was required to identify in his registration application that the HuffPost Article was based on a prior work.

Had the Office been aware that the HuffPost Article incorporated a prior published version and that the prior version constituted a substantial portion of the second work, it would not have registered the claim as submitted. Instead, the registration specialist would have corresponded with Plaintiff to request that he disclaim the preexisting material and clarify the new material that he added. Based on a review of the two articles, it does not appear that the newly-added material is substantial enough to warrant registration of the HuffPost Article as a derivative work.[31] Thus, upon determining that the newly-added material did not amount to copyrightable authorship, the registration specialist would have refused to register the claim in the HuffPost Article, and would have instructed the applicant to file a new application to register the Dan's Papers Article. Because of the insubstantial differences between the two articles, a registration for the Dan's Papers Article would effectively cover the content of the HuffPost Article.

---

[30] *See* Decl. of Barry J. Friedberg in Supp. of Defs.' Mot. for Summ. J., Ex. D, ECF No. 47-6. Note, the deposit that was submitted with the Registration does not match the text of the HuffPost Article that appears in the exhibit to this declaration. The text in the declaration exhibit contains a short biography of Plaintiff that was not included in the deposit.

[31] *See* COMPENDIUM (THIRD) § 311.2; Decl. of Barry J. Friedberg in Supp. of Defs.' Mot. for Summ. J., Exs. A, C, D, ECF Nos. 47-3, 47-5, 47-6.

8

As noted above, a supplementary registration may be used to correct certain errors or amplify the information provided in a copyright registration.[32] The material claimed in such an application, however, must be registrable.[33] As the new material added in the HuffPost Article is not sufficiently creative to be copyrightable, the Office would not issue a supplementary registration to amend the Registration to exclude the preexisting text. Plaintiff also could not obtain a supplementary registration for the purpose of converting the registration for the HuffPost Article into a registration for the Dan's Papers Article because a deposit may not be altered through a supplementary registration.[34] To obtain a registration for his Dan's Papers Article, the Plaintiff should submit a new application for registration of this work.

## CONCLUSION

After review of the available facts in this action along with the Court's thorough analysis and application of the relevant law, regulations, and the Office's practices, the Register hereby advises the Court that the Office would have refused the registration if it had been aware of the errors in Plaintiff's application. Plaintiff may file a new application to register the Dan's Paper Article.

Dated: August 23, 2022

*Shira Perlmutter*

Shira Perlmutter
Register of Copyrights and Director
of the U.S. Copyright Office
(202) 707-8350
sperlmutter@copyright.gov

---

[32] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; COMPENDIUM (THIRD) § 1802.
[33] COMPENDIUM (THIRD) § 1802.6(J).
[34] 37 C.F.R. § 202.6(d)(4)(ii); COMPENDIUM (THIRD) § 1802.7(D).

9