**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN, | CASE NO. 1:17-cv-02635-CAB |
| Plaintiff, | |
| | JUDGE CHRISTOPHER A. BOYKO |
| v. | |
| 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**2K GAMES, INC. AND TAKE-TWO INTERACTIVE SOFTWARE, INC.'S**
**<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ......................................................................................................... 5

    I.      PLAINTIFF HAS NOT MET THE PRE-SUIT REGISTRATION
           REQUIREMENT ......................................................................................... 5

           A.     Plaintiff Knew of the Inaccuracies in the Registrations for the Four
                  Tattoos................................................................................................ 6

           B.     The Copyright Office Confirmed that the Inaccuracies Were
                  Material .......................................................................................... 15

    II.     PLAINTIFF COMMITTED FRAUD ON THE COPYRIGHT OFFICE............. 17

CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adriana's Ins. Serv. Inc. v. Auto Int'l Ins. Agency, Inc.*,
    No. 8:22 Civ. 174, 2023 WL 8000227 (C.D. Cal. Aug. 18, 2023)..........................................11

*Automated Sols. Corp. v. Paragon Data Sys., Inc.*,
    No. 1:05 Civ. 1519, 2006 WL 5803366 (N.D. Ohio June 30, 2006)......................................18

*Baker Hughes Inc. v. S&S Chem., LLC*,
    836 F.3d 554 (6th Cir. 2016) ................................................................................................11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................................5

*Covetrus Inc. v. Actian Corp.*,
    No. 2:21 Civ. 97, 2023 WL 6389059 (D. Me. Oct. 2, 2023)...................................................12

*dmarcian, Inc. v. DMARC Advisor BV*,
    No. 1:21 Civ. 67, 2023 WL 3971433 (W.D.N.C. June 12, 2023) ..........................................11

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019)........................................................................................................5, 14

*Gaffney v. Muhammad Ali Enters., LLC*,
    No. 20 Civ. 7113, 2022 WL 4095953 (S.D.N.Y. Sept. 7, 2022)............................................14

*Geomatrix, LLC v. NSF Int'l*,
    82 F.4th 466 (6th Cir. 2023) .................................................................................................19

*Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*,
    58 F.3d 1093 (6th Cir. 1995) ................................................................................................10

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012) ................................................................................................16

*LADS Network Sols., Inc. v. Agilis Sys., LLC*,
    No. 4:19 Civ. 11, 2022 WL 4534738 (E.D. Mo. Sept. 28, 2022)....................................14, 15

*Lieb v. Korangy Publ'g, Inc.*,
    No. 15 Civ. 40, 2022 WL 1124850 (E.D.N.Y. Apr. 14, 2022).......................................7, 9, 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..........................................................................................................5, 19

*McCants v. Tolliver*,
    No. 1:11 Civ. 665, 2011 WL 2893058 (N.D. Ohio July 15, 2011) .......................................19

*Neman Bros. & Assoc. v. Interfocus, Inc.*,
    No. 2:20 Civ. 11181, 2023 WL 115558 (C.D. Cal. Jan. 4, 2023) ............................7, 8, 10, 15

*Oliver v. Meow Wolf, Inc.*,
    No. 20 Civ. 237, 2023 WL 4353541 (D.N.M. July 5, 2023) .............................................7, 15

*Parrett v. Am. Ship Bldg. Co.*,
    990 F.2d 854 (6th Cir. 1993) ...........................................................................................11

*Rawls v. Paradise Artists, Inc.*,
    No. 3:18 Civ. 417, 2020 WL 1493610 (M.D. Tenn. Mar. 27, 2020).......................................14

*ReportHost LLC v. Spectora Inc.*,
    No. 22 Civ. 457, 2023 WL 2782285 (D. Colo. Mar. 29, 2023).............................................14

*Rich & Rich P'ship v. Poetman Recs. USA, Inc.*,
    714 F. Supp. 2d 657 (E.D. Ky. 2010) ............................................................................18, 19

*Roberts v. Gordy*,
    877 F.3d 1024 (11th Cir. 2017) ...................................................................................18, 19

*Russ Berrie & Co. v. Jerry Elsner Co.*,
    482 F. Supp. 980 (S.D.N.Y. 1980).......................................................................................18

*Schenck v. Orosz*,
    105 F. Supp. 3d 812 (M.D. Tenn. 2015).............................................................................13

*Tacori Enters. v. Rego Mfg.*,
    No. 1:05 Civ. 2241, 2008 WL 4426343 (N.D. Ohio Sept. 25, 2008)...............................17, 18

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    52 F.4th 1054 (9th Cir. 2022) ...........................................................................................19

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    595 U.S. 178 (2022)....................................................................................... *passim*

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) ...........................................................................................16

*Universal Dyeing & Print., Inc. v. Knitwork Prods. II, LLC*,
    No. 2:17 Civ. 5660, 2019 WL 2613448 (C.D. Cal. June 26, 2019) .......................................16

*Van Horn v. Nationwide Prop. & Casualty Ins. Co.*,
    No. 1:08 Civ. 605, 2009 WL 1255115 (N.D. Ohio May 4, 2009)...........................................11

*In re Welding Fume Prods. Liab. Litig.*,
   No. 1:03 Civ. 17000, 2007 WL 1087605 (N.D. Ohio Apr. 9, 2007)......................................11

**Statutes**

17 U.S.C. § 103....................................................................................................................9

17 U.S.C. § 409....................................................................................................................8

17 U.S.C. § 411............................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 56.........................................................................................................5, 17

**Other Authorities**

U.S. COPYRIGHT OFFICE,
   COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2014) ........................7, 9, 12, 13

## PRELIMINARY STATEMENT

Although Plaintiff's Opposition attempts to downplay the admitted mistruths in his copyright registrations as mere "innocent registration inaccuracies," Dkt. 249 ("Opp.") at 3, Take-Two's Motion is not about a clerical error or a mischecked box.[1]  Plaintiff copied most of the material in the Four Tattoos, but registered them as though he were their ***sole*** author.  He then attempted to use his fraudulently obtained registrations as a crutch throughout this litigation, claiming their existence means that his underlying copyrights are presumptively valid as to the entirety of the Four Tattoos despite the undisputed fact that these tattoos were copied from preexisting material.  This misrepresentation had a practical effect, as it caused Take-Two to spend needless time and money trying to invalidate and debunk Plaintiff's claims.

The egregiousness of the inaccuracies in Plaintiff's registrations is exemplified by the Brother's Keeper Tattoo, which unmistakably copies from the work of Michelangelo.  Plaintiff managed to register the whole of the Brother's Keeper Tattoo as his own and has insisted that the tattoo "has nothing to do with Michelangelo."  Opp. 12.  Plaintiff ultimately admitted that the iconic image did in fact come from Michelangelo's Sistine Chapel fresco.  Mot. 6.





---

[1]    Capitalized terms not defined herein are defined in Take-Two's opening brief.  Dkt. 247-01 ("Mot.").

The other misstatements here are similarly egregious.  Plaintiff also represented that he was the sole author of the Lion Tattoo, Fire Tattoo, and Scroll Tattoo.  In actuality, the Lion Tattoo was copied without permission from the lion logo of a casino on one of its playing cards.  Mot. 4.  The Fire Tattoo is composed mostly of a basketball player inked by another tattoo artist.  Mot. 5.  Even the "scroll" in the Scroll Tattoo, along with the names within it, was created by somebody else.  *Id.*  Yet all of this preexisting material—the Michelangelo fresco, the casino logo, and the tattoos inked by others—was covered by Plaintiff's copyright registrations because he never disclosed his copying to the Copyright Office.  Plaintiff had no right to register material he did not create and does not own, and the Copyright Office has said that it would ***not*** have granted him the registrations he relied on in bringing this suit had it known the truth.

As detailed in Take-Two's Motion, two different legal principles stop Plaintiff from enforcing his copyrights in the Four Tattoos as a matter of law.  ***First***, Plaintiff's inaccurate registrations fail to satisfy the Copyright Act's pre-suit registration requirement under 17 U.S.C. § 411(a).  Inaccurate registrations are insufficient to meet this requirement where "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b).  Both elements are met here as a matter of law.  As to the <u>first element</u>, Plaintiff indisputably knew that these preexisting works existed—he testified about them and discussed them in interrogatories.  Mot. 4–6.  This makes sense.  As to the Fire and Scroll Tattoos, for example, Plaintiff obviously knew when he inked them that he was adding details to existing tattoos; he knew he was not inking blank skin.  The application forms plainly required identification and exclusion of preexisting works, and Plaintiff had ample resources, including the assistance of an experienced intellectual property

attorney, to confirm that these preexisting works needed to be identified and excluded from his applications. As Plaintiff has claimed that communications with his lawyer regarding these applications are privileged, he cannot now claim that his lawyer never told him of the requirement or misinformed him about it. Decl. of Miranda D. Means ("Means Decl. II") Ex. 14 (Pl.'s Privilege and Redactions Log) at 2, 3 (emails concerning filing copyright registrations withheld as privileged). And ultimately, the Copyright Office has clear materials instructing applicants on how to fill out an application and disclose preexisting works. Plaintiff was, at a minimum, willfully blind to the law, which too is sufficient to foreclose the safe harbor protection that Plaintiff invokes. Plaintiff likewise fails to meet the <u>second element</u> of § 411(b), because we now know thanks to the Court's referral to the Register of Copyrights that the Copyright Office would not have registered the Four Tattoos had it known of the inaccuracies in the registrations. Dkt. 231-01 (Resp. of the Rgstr. of Copyrights) at 1–2.

Although the material facts are undisputed, Plaintiff nevertheless strains to argue that there are factual disputes that preclude summary judgment. Yet, he has not raised a dispute as to any material fact relevant to either element:

- Plaintiff relies heavily on a declaration that he has submitted with his Opposition, indicating that he thought that he was the sole author of the Four Tattoos. This assertion is irrelevant because, at best, it relates to Plaintiff's use of his own, ***personal*** standard of authorship when applying to register the Four Tattoos. What matters to this Motion is that he ignored or refused to look at the Copyright Office's application form and guidelines, which contain clear instructions on what, in fact, is registrable. This is quintessential willful blindness. A contrary view would essentially render the disclosure requirement meaningless.

- Plaintiff claims that the rules on disclosure of preexisting works are complex or ambiguous.  That is not a factual dispute.  Moreover, that assertion flies in the face of the express language on the form that simply asked him to disclose "*Material previously registered, previously published, or not owned by this claimant*."  Dkt. 101-49 (Copyright Applications) at 20 (emphasis in original).  In addition, the Copyright Office provides numerous publications that are simple, clear, and specifically intended to provide guidance to unrepresented parties.  Of course, here Plaintiff was ***not*** an unrepresented party, because he had the benefit of an experienced intellectual property attorney (from Plaintiff's litigation counsels' own firm) to assist with completing his applications.  Someone represented by an experienced intellectual property attorney hardly can claim lack of guidance on the law.

- Plaintiff claims that if the inaccuracy can "easily be fixed," then it is immaterial.  This is not a factual dispute, either.  Moreover, Plaintiff is wrong.  "Easily be fixed" is not the statutory standard, and such a standard would both render 17 U.S.C. § 411(b) toothless and encourage a lack of candor with the Copyright Office.  Here, Take-Two was ultimately able to detect (with effort) Plaintiff's overreaching falsehoods and to pursue discovery about them, but that might not always be possible.

***Second***, Plaintiff's knowing failure to disclose the preexisting works constitutes fraud on the Copyright Office.  As detailed in Take-Two's Motion, fraud on the Copyright Office requires a showing that (a) the application for copyright registration is factually inaccurate, (b) the inaccuracies were willful or deliberate, and (c) the Copyright Office relied on those misrepresentations.  Plaintiff concedes element (a), and on element (c) there is no dispute that the Copyright Office relied on Plaintiff's misrepresentations because the Register of Copyrights

stated that her Office "would not have registered" the designs had it known the truth.  On element (b), Plaintiff does not contest, and thus tacitly admits, that the scienter standard is willfulness or deliberateness, not intent to deceive.  And as described below, there is no dispute that his inaccuracies were willful and deliberate.  Plaintiff admittedly knew how the Four Tattoos were created, knew that they were copied from preexisting works, and submitted his registration applications misrepresenting his authorship and ownership anyway.

There is nothing for a jury to decide on either of these issues.  The Court thus should grant summary judgment, dismiss the Four Tattoos from this case, and streamline the issues remaining for trial.

## ARGUMENT

Take-Two was responsible for "identifying each claim or defense [] on which summary judgment is sought," Fed. R. Civ. P. 56(a), and the materials that it "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It was then Plaintiff's burden to "establish that there is a genuine issue of material fact," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986), by "citing to particular parts of materials in the record."  Fed R. Civ. P. 56(c)(1)(A).  Plaintiff fails to satisfy that burden, and summary judgment is therefore appropriate as a matter of law.

## I.    PLAINTIFF HAS NOT MET THE PRE-SUIT REGISTRATION REQUIREMENT

As explained in Take-Two's Motion, 17 U.S.C. § 411(a) provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  Although Plaintiff may insist that his works are "original and entitled to protection," Opp. 3, 17, he does not dispute that neither originality nor potential registrability is sufficient to bring a copyright action without *also* meeting the pre-suit registration requirement.  Mot. 8–9 (citing *Fourth Est.*

*Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019)).  Congress also was clear about how the pre-suit registration requirement applies to inaccurate registrations: such registrations will ***not*** satisfy the requirement if "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  Mot. 9 (first quoting 17 U.S.C. § 411(b); then citing *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181 (2022)).[2]  Plaintiff disagrees legally about how this standard should apply to the facts of this case, but he does not raise a genuine dispute of material fact on either prong of the test.  As a result, the Court should find that Plaintiff has not met the pre-suit registration requirement as a matter of law and dismiss the Four Tattoos from this case.

### A.    Plaintiff Knew of the Inaccuracies in the Registrations for the Four Tattoos

Plaintiff does not dispute that the pre-suit registrations for the Four Tattoos are ***inaccurate***.  Mot. 9; *see* Opp. 3.   Plaintiff was required to identify for the Copyright Office any "*Material previously registered, previously published, or not owned by this claimant*" that he had incorporated into the Four Tattoos.  Mot. 6 (citing Dkt. 101-49 (Copyright Applications) at 20 (emphasis in original)).  The Four Tattoos contain substantial material that Plaintiff did not create, including preexisting tattoos owned by others to which Plaintiff merely added details.  Mot. 4–6.  Plaintiff's Copyright Applications nonetheless represent that Plaintiff created the entirety of each of the Four Tattoos, failing to identify or exclude any of this preexisting material.  Mot. 7 (first citing Dkt. 101-49 (Copyright Applications); then citing Dkt. 231-01 (Resp. of the Rgstr. of Copyrights) at 3).  As a result of these inaccuracies, Plaintiff was able to obtain registrations that covered the entirety of the Four Tattoos prior to filing this lawsuit, even

---

[2]    Plaintiff's Opposition tellingly misstates this standard and avoids directly quoting it.  For example, Plaintiff claims that § 411(b) provides a safe harbor where "the inaccuracies could easily be fixed," Opp. 3, which is nowhere to be found in the statute, 17 U.S.C. § 411(b).  *See supra* 4.

though he did not create and was not entitled to assert rights in most portions of these tattoos.

Knowledge of the facts underlying the inaccuracy satisfies the knowledge standard under 17 U.S.C. § 411(b).  Mot. 10–11; *see also Neman Bros. & Assoc. v. Interfocus, Inc.*, No. 2:20 Civ. 11181, 2023 WL 115558, at *8–*10 (C.D. Cal. Jan. 4, 2023) (invalidating copyright registration for fabric designs where claimant "had knowledge of the underlying facts relating to those inaccuracies" and where there was no evidence to support argument that claimant had made a good-faith mistake of law); *Oliver v. Meow Wolf, Inc.*, No. 20 Civ. 237, 2023 WL 4353541, at *5 (D.N.M. July 5, 2023) (registrations for multimedia art collections were invalid as a matter of law where plaintiff had listed herself as the sole author of a collection even though she knew that she had not authored one of the pieces in the collection).  Here, there is no genuine dispute that Plaintiff knew of the facts underlying the inaccuracy, namely, that he was not in fact the sole author of any of the Four Tattoos.[3]  He experienced their creation firsthand, testified about their creation and the preexisting works during his deposition, and described these specific preexisting works in his interrogatory responses and admissions.  This is sufficient.

Although the Supreme Court in *Unicolors* acknowledged that legal mistake can excuse a factual inaccuracy in a copyright registration where a legal concept is unclear, 595 U.S. at 185, ***there is simply no evidence of legal mistake here***.  In assessing legal mistake, courts look at the clarity of the application form, the COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (the "COMPENDIUM") (3d ed. 2014), and other reference materials put out by the Copyright Office, as well as the availability of guidance from registration specialists.  *Lieb v. Korangy Publ'g, Inc.*,

---

[3]    Plaintiff protests that he "has always considered the Tattoos to be entirely his creation," Opp. 12, but when he describes how they were created, he admits that they came from preexisting sources, *id.* at 12–13, which is consistent with the extensive deposition testimony and interrogatory responses confirming that the Four Tattoos were copied.  Mot. 4–6.  Plaintiff indisputably knew that these Four Tattoos were derived from preexisting sources.  He knew he was not inking blank skin, and he admitted that the players came to him asking him to touch up existing tattoos or to copy preexisting material.  *E.g.*, Mot. 5.  There is no need for the jury to decide whether Plaintiff was the sole author of the Four Tattoos he registered.  It is undisputed that he was not.

No. 15 Civ. 40, 2022 WL 1124850, at *8–*11 (E.D.N.Y. Apr. 14, 2022); *see also Neman Bros.*, 2023 WL 115558, at *9–*10 (finding knowledge as a matter of law where even viewing just the application instructions would "clearly alert" the plaintiff "to the legal requirements for authorship and derivative works").  Here, all of the evidence shows that Plaintiff knew of, or was at least willfully blind to, the requirement that he identify and exclude the preexisting material in the Four Tattoos from the registrations.

- On Plaintiff's behalf, an experienced intellectual property attorney certified copyright applications that asked Plaintiff, in plain English, to identify and exclude from the application "*Material previously registered, previously published, or not owned by this claimant*."  Mot. 6 (quoting Dkt. 101-49 (Copyright Applications) at 20).[4]  This is consistent with the statute, which clearly provides that applications for copyright registration must include "in the case of a [] derivative work, an identification of any preexisting work or works that ***it is based on or incorporates***."  17 U.S.C. § 409(9) (emphasis added).

- Plaintiff knew of the rule on disclosing preexisting works because he followed it in other circumstances; namely, when he contemporaneously applied to register a tattoo that was photographed, he excluded the photograph and limited the claim to just the tattoo.  Dkt. 101-49 at 53.  Plaintiff plainly knew that he could not claim authorship of an entire image if he did not create the whole thing, but he nevertheless obtained registrations in the whole of the Four Tattoos anyway.  To be clear, there was a

---

[4]  Plaintiff denies the importance of his having been represented by counsel, Opp. 11, but he fails to show why, on the facts presented here, imputing knowledge of the law from counsel to client would be inappropriate. *See* Mot. 12 n.3; *see also infra* 10 n.6 (Plaintiff is hiding behind attorney-client privilege).

tactical litigation advantage for plaintiff to present himself as the tattoos' sole author, both with regard to the merits and with regard to apportionment of damages.[5]

- The Copyright Office provides resources that are "easily understandable by anyone, including a lay person without a law degree." *See Lieb*, 2022 WL 1124850, at *13 (finding on summary judgment that there was no mistake of law concerning disclosure of derivative works). One of those resources, the Compendium, states clearly that if a work "contains an appreciable amount of unclaimable material, the applicant should ***identify*** the unclaimable material that appears in that work and should ***exclude*** that material from the claim [by providing] a brief, accurate description of the unclaimable material in the appropriate field/space of the application." Mot. 6–7 (citing COMPENDIUM § 621.1 (emphasis added)).

- The Copyright Applications also link to the Copyright Office's help page and provide contact information for applicants with questions. Mot. 12 (citing Dkt. 247-11 (TAKE-TWO_00000211) at TAKE-TWO_00000214); *see also Lieb*, 2022 WL 1124850, at *14 (granting summary judgment as to claimant's knowledge where claimant "chose not to avail himself of the invitation to communicate with the USCO via a Registration Specialist"). There is no evidence that Plaintiff ever contacted the

---

[5]  For example, Plaintiff admitted in his deposition that he did not obtain permission from the tattoo artist who created the original tattoo incorporated into the Fire Tattoo to create a derivative work based on their work. Means Decl. II. Ex. 13 (Pl.'s Dep. Tr.) at 94:6–14. Meanwhile, copyright "protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." 17 U.S.C. § 103(a); *see* Dkt. 95-01 (Defs.' Motion for Summary Judgment) at 27–28. Accordingly, the Court's Order that Plaintiff's contributions to the Four Tattoos are *original* and that the Four Tattoos are therefore "presumptively valid," Dkt. 193 at 9, does not preclude a later finding that Plaintiff's contributions are not *protected*. *See infra* 10 n.7 (rebutting presumption of validity). Contrary to Plaintiff's leading assertion, Opp. 1, the Court has yet to rule on whether Plaintiff's registrations in fact satisfy § 411, and in any case, an earlier interlocutory order "may be revised in the district court's discretion until final judgment." Dkt. 242 (Ord.) at 2.

Copyright Office with questions or confusion about what he should exclude or limit in his applications.

- Plaintiff submitted his copyright applications with the assistance of an experienced intellectual property attorney at Plaintiff's litigation counsels' firm, Calfee, Halter & Griswold.  Mot. 6 (first citing Dkt. 101-49 ("Copyright Applications"); then citing Dkt. 247-03 (Pl.'s Dep. Tr.) 129:14–19).  Plaintiff presumably could have asked her questions and clarified points in the application that remained unclear to him.  Moreover, counsel also could have asked Plaintiff about how the works were created before certifying the applications on his behalf.  But nowhere in his Opposition does Plaintiff claim that his attorney misunderstood the law, that he asked her any questions about the form, or that she failed to explain to him what the supposedly complex language on the form meant.[6]  Meanwhile Plaintiff has admitted that he was involved in, and understood fundamentals about, the application process.  Mot. 12 (citing Dkt. 247-03 (Pl.'s Dep. Tr.) 127:10–16 (Q: "And do you understand that in order to get a copyright registration, you, or someone on your [] behalf, needed to sign a certification?" A: "As — as I recollect.")).

Plaintiff does not raise a genuine dispute as to any material fact, and each of his arguments in Opposition are meritless.[7]  *First*, Plaintiff argues that the Court cannot decide 17

---

[6]  Plaintiff has chosen to hide behind attorney-client privilege instead.  *See* Means Decl. II Ex. 14 (Pl.'s Privilege and Redaction Log) at 2, 3.  But Plaintiff cannot use privilege as both a shield and a sword.  Where Plaintiff has produced no evidence from which the Court could find that Plaintiff and his attorney engaged in a good-faith assessment of what the registration application form required, summary judgment on § 411(b) is proper.  *See Neman Bros.*, 2023 WL 115558, at *10, *13 (granting summary judgment after finding that the plaintiff was "at least willfully blind" where it failed to provide evidence of good-faith consideration of the legal requirements in copyright applications).

[7]  Plaintiff appears to argue that the registrations' presumption of validity obviates the need to satisfy the pre-suit registration requirement.  Opp. 7.  That is wrong.  The presumption that a registration is valid and therefore satisfies the pre-suit registration requirement can be rebutted by proof that the certificate contains inaccuracies.  *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995).  Here, where

U.S.C. § 411(b) on summary judgment because "intent is a fact question." Opp. 1. But as detailed above, the standard for § 411(b) is actual knowledge, not intent. *Supra* 7. In *Unicolors*, the Supreme Court addressed the state of mind necessary to meet the "knowledge" requirement and refused to impose a stricter scienter requirement, noting that if Congress had intended to impose a standard other than simple knowledge, "it would have said so explicitly." 595 U.S. at 185. Regardless of the standard, Plaintiff's point is legally irrelevant: Both knowledge and intent, "like any other factual issue, can be resolved at the summary judgment stage when there are no genuine issues of material fact." *Van Horn v. Nationwide Prop. & Casualty Ins. Co.*, No. 1:08 Civ. 605, 2009 WL 1255115, at *7 (N.D. Ohio May 4, 2009) (citing *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993)); *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 563 (6th Cir. 2016). Indeed, in the case that Plaintiff relies on for this point, the court specifically noted that "the presence of issues involving state of mind, intent, or motivation does not automatically preclude summary judgment." *In re Welding Fume Prods. Liab. Litig.*, No. 1:03 Civ. 17000, 2007 WL 1087605, at *10 (N.D. Ohio Apr. 9, 2007) (internal quotation marks and citation omitted).[8]

 ***Second***, Plaintiff argues that Take-Two improperly applies a "should have known" standard in arguing that Plaintiff had knowledge of the inaccuracies in his applications. Opp. 9.

---

Plaintiff admits that his registration certificates contain inaccuracies, Take-Two has overcome this presumption. The burden accordingly is on Plaintiff to prove that he nevertheless has satisfied § 411 through the safe harbor. Plaintiff cannot meet this burden. Plaintiff's citation to *Adriana's Insurance Services Inc. v. Auto International Insurance Agency, Inc.* is of no help to him. That case is distinguishable because the parties there genuinely disputed whether there was even an inaccuracy in the applications, whereas here Plaintiff admits his certificates are inaccurate. No. 8:22 Civ. 174, 2023 WL 8000227, at *5 (C.D. Cal. Aug. 18, 2023); *see supra* 6. Plaintiff also points to *Adriana* to argue that curable errors are excusable, but in that case the plaintiff registered the work as a work-made-for-hire when the work in fact had been assigned to him; under either standard, however, the plaintiff owned the entire works he was registering. *Adriana*, 2023 WL 8000227, at *5. That is not the situation here.

[8] Plaintiff's reliance on *dmarcian, Inc. v. DMARC Advisor BV* for his contention that this issue cannot be decided on summary judgment is also inapt—the court there was deciding whether to refer the matter to the Copyright Office, and mentioned that knowledge is "often" appropriate for the jury, not that it ***must*** be decided by a jury. No. 1:21 Civ. 67, 2023 WL 3971433, at *5 (W.D.N.C. June 12, 2023).

Not so.  As discussed above, Take-Two relies on evidence that courts regularly rely on in finding actual knowledge under 17 U.S.C. § 411(b) as a matter of law.  *Supra* 8–10.  The evidence shows that, at the very least, Plaintiff was willfully blind to the Copyright Office's requirements, which is sufficient based on Plaintiff's own case citation.  Opp. 9 (citing *Covetrus Inc. v. Actian Corp.*, No. 2:21 Civ. 97, 2023 WL 6389059, at *5 (D. Me. Oct. 2, 2023)[9]); *see also Unicolors*, 595 U.S. at 187–88 ("Circumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information." (internal citation omitted)).

*Third*, Plaintiff claims that whether preexisting material is an "appreciable portion of the work as a whole" is not "obvious" for either a layperson or an attorney and that "reasonable minds may differ" about what counts as appreciable.  Opp. 9–10 (citing COMPENDIUM § 621.2).[10] In almost any case under 17 U.S.C. § 411(b), there are definitions to interpret (e.g., "compilation," "derivative work," "published," etc.).  That does not mean that Plaintiff lacked the requisite legal knowledge.  The word "appreciable" is not a nuanced legal term; it is plain

---

[9]  *Covetrus* is otherwise distinguishable.  It involved a very different type of legal error (whether the source code in a deposit copy was representative, which required an expert to scrutinize), and a version of the code that was allegedly infringed had a "more reliable registration" that was not at issue, so it was "not apparent what effect invalidation" would have on the reality of the case.  *Covetrus*, 2023 WL 6389059, at *6.  By contrast, the supposed legal error here is far more simplistic, and invalidation would streamline the case by disposing of four of the six tattoos being litigated, massively simplifying matters for trial.

[10]  Hoping to avoid the natural result of his inaccurate registrations, Plaintiff attempts to shift focus to the registrations for Take-Two's own copyrighted works, Opp. 11, but those registration are not at issue.  *See* Dkt. 17 (Ord.) at 10 (dismissing Plaintiff's claims related to Take-Two's copyright registrations from the case).  In any case, as Take-Two explained in its previous motion for summary judgment and has maintained throughout this litigation, Take-Two's use of preexisting works in its *NBA 2K* games was *de minimis*.  Dkt. 95-01 (Defs.' Memorandum of Law in Support of Motion for Summary Judgment) at 24–27.  Whereas preexisting works comprise an "appreciable amount" of Plaintiff's copyrighted works, they are insubstantial in Take-Two's.  Plaintiff's "gotcha!" serves only to highlight how significant preexisting material was to the Four Tattoos.  Plaintiff further claims that Take-Two's contention that Plaintiff should have disclosed the biblical verse shows that this rule is ambiguous because the Copyright Office found that the biblical verse is uncopyrightable and did not need to be disclosed.  Opp. 10–11.  Such an argument does not show any ambiguity in the word "appreciable;" it is about whether a work is copyrightable, and Plaintiff has not claimed to have any confusion about whether the preexisting works are copyrightable.

English.  The Cambridge Dictionary defines it as "large or important enough to be noticed."  Means Decl. II Ex. 15 (https://dictionary.cambridge.org/us/dictionary/learner-english/appreciable).  And this is not an edge case involving preexisting material being used in a minimal, difficult to observe way, in which reasonable minds realistically could differ.[11]  Plaintiff knew that he was inking "near" other works, Opp. 13, or referencing other preexisting material.  Mot. 4–6; *supra* 1–2.  And even were the term "appreciable" nuanced, Plaintiff had an experienced intellectual property attorney assist him with his applications.  *Supra* 10.  Plaintiff thus cannot claim that he was anything less than willfully blind as to the disclosure requirement.

**Fourth**, Plaintiff complains that the Compendium does not provide sufficient guidance on limitation of claims, contending that the guidance is limited to "less than a page" of the Compendium and that it never discusses tattoos.[12]  Opp. 10.  It is not clear how a specific discussion of tattoos would make a difference here—the Compendium's guidance applies to all types of works.  Moreover, excluding preexisting material is discussed throughout the Compendium, not just on one page.  *E.g.*, COMPENDIUM §§ 311.2, 503.5, 507.2, 613.6, 621.1, 621.3–621.8, 907.2.

**Finally**, Plaintiff's declaration attached to his Opposition does not create a material factual dispute.  Indeed, it affirmatively supports a finding of knowledge with regard to the Fire

---

[11]  Plaintiff attempts to minimize the inaccuracy by characterizing the preexisting tattoos in the Scroll and Fire Tattoos as ones "that were near where he inked his original works," Opp. 13, but that is a highly misleading characterization and is undermined by undisputed images of the tattoos themselves, depicted at Mot. 5.  These show that what he was doing was adding details or additions to existing works, not creating new ones that just happened to be nearby.

[12]  Plaintiff also alleges that the standard for excluding preexisting works is ambiguous because one court noted in dicta and without deciding the issue that it seemed "absurd" to require disclosure of widely disseminated public domain material.  Opp. 10 (*Schenck v. Orosz*, 105 F. Supp. 3d 812, 821 (M.D. Tenn. 2015)).  Plaintiff does not contend that he or his counsel relied on this case in preparing the applications for the Four Tattoos or explain why it would be reasonable to have relied on it in light of the plain language in the Compendium that instructs applicants that "[i]f the work submitted for registration contains unclaimable material, the applicant should exclude that material from the claim."  COMPENDIUM § 503.5.  The Compendium includes without qualification that "public domain material" falls within the category of "unclaimable material," *Id.* § 503.5(C), as does copyrightable material that is owned by a third party.  *Id.* § 503.5(D).

Tattoo and Scroll Tattoo, as Plaintiff states that he "understood and intended to only register the works that he created," acknowledging that his registrations should ***not*** have extended to the preexisting tattoos.  Opp. 13.  And while Plaintiff touts his supplementary registrations in these tattoos, he concedes that "[t]he issue is whether Hayden's *original* registrations satisfy the pre-suit registration requirement under § 411(b)."[13]  *Id.* (emphasis in original).  They do not.  With regard to the Lion Tattoo and Brother's Keeper Tattoo, Plaintiff's claims that he "always considered the Tattoos to be entirely his creation" do not create a material dispute either.  *Id.* at 12.  Plaintiff's personal views on authorship are not a substitute for the Copyright Office's rules.  Plaintiff's reliance on *Gaffney v. Muhammad Ali Enterprises, LLC* for his contention that simply averring lack of knowledge in a declaration is sufficient to create a factual issue is misplaced; there, the alleged inaccuracy was whether the work was published, and the applicant provided evidence to support his reasonable belief that the work had not been legally published.  No. 20 Civ. 7113, 2022 WL 4095953, at *6 (S.D.N.Y. Sept. 7, 2022).[14]  Here, by contrast, Plaintiff simply shrugs and says *post-hoc* that he thought he was the sole author despite knowing full well that he was not.  *See Unicolors*, 595 U.S. at 187 ("[C]ourts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law.").  That is not sufficient.

---

[13]  Plaintiff's attempts to distinguish *LADS Network Sols., Inc. v. Agilis Sys., LLC* and *Rawls v. Paradise Artists, Inc.* are unpersuasive.  Opp. 13 n.7.  In *LADS Networks Sols.*, the court held that supplementary registrations cannot be used to satisfy the pre-suit registration requirement if they were obtained after the plaintiff instituted the infringement action.  No. 4:19 Civ. 11, 2022 WL 4534738, at *6 (E.D. Mo. Sept. 28, 2022).  Whether Plaintiff filed for supplementary applications "[d]uring the litigation," Opp. 13, is thus irrelevant to whether he has met the ***pre***-suit registration requirement.  In *Rawls*, moreover, the court did indeed hold that, under *Fourth Estate*, a supplementary registration obtained after an action was instituted does not satisfy § 411, even where a plaintiff seeks leave to amend the operative complaint to assert only claims based on the supplementary registration.  No. 3:18 Civ. 417, 2020 WL 1493610, at *5–*6 (M.D. Tenn. Mar. 27, 2020) (granting motion to dismiss, collecting cases, and noting that allowing amendment to allege claims based on supplementary registrations obtained during the course of litigation would "undermine the objectives animating the *Fourth Estate* holding" (internal quotation marks and citation omitted)); *see Fourth Est.*, 139 S. Ct. at 892.

[14]  And as Plaintiff's citation to *ReportHost LLC v. Spectora Inc.* shows, the rules on what constitutes publication are complex and lack consensus.  No. 22 Civ. 457, 2023 WL 2782285, at *3 (D. Colo. Mar. 29, 2023).  Disclosure of preexisting works does not have the same complexity or controversy.

- 14 -

### B.      The Copyright Office Confirmed that the Inaccuracies Were Material

There also is no dispute that had the Copyright Office known of the "inaccuracy of the information" contained in Plaintiff's registrations, it would have refused registration.  17 U.S.C. § 411(b).  The Copyright Office answered this question already and found that it "***would not have registered the tattoo designs if it had known that the designs included an 'appreciable amount' of public domain material or material owned by a third party that the applicant did not exclude in his application for registration***."  Mot. 12–13 (citing Dkt. 231-01 (Resp. of the Rgstr. of Copyrights) at 1–2) (emphasis added).  As a result, Plaintiff's registrations in the Four Tattoos are invalid as a matter of law under 17 U.S.C. § 411, and the Court should grant Take-Two's Motion.

Plaintiff advances a series of meritless arguments in Opposition, but none can overcome this straightforward application of the clear statutory language in 17 U.S.C. § 411(b).  ***First***, Plaintiff argues that "nowhere in the Register's Response does the Register say it would have 'refused to register' the Tattoos."  Opp. 14, 17.  Plaintiff also contends that the Copyright Office never said it would not have registered the Four Tattoos "but for" the inaccuracies.  Opp. 16.  These arguments do not make sense.  The phrases "would not have registered" and "refused to register" are synonymous.  *See Neman Bros.*, 2023 WL 115558, at *13 (finding that the § 411(b) safe harbor does not apply where the Copyright Office stated that it "would not have registered" the suspect registrations).[15]  And the Copyright Office stated that it would not have registered the Four Tattoos had it known of the inaccuracies.  As the Copyright Office explained, the inaccurate information is Plaintiff's claim to be the "sole author" of each of the Four Tattoos.

---

[15]   Plaintiff's fails to meaningfully distinguish the Register's responses in *Oliver*, *LADS Network Sols.*, and *Neman Bros.*  *See* Opp. 17 n.9.  In all three cases, the courts found that the Register of Copyrights' conclusion that the Copyright Office would not have registered the contested registrations sufficient evidence of materiality to preclude availability of the § 411(b) safe harbor.  *See Oliver*, 2023 WL 4353541, at *8; *LADS Network Sols.*, 2022 WL 4534738, at *2; *Neman Bros.*, 2023 WL 115558, at *12–*13.

Dkt. 231-01 (Resp. of the Rgstr. of Copyrights) at 2–3.  The Copyright Office would not have granted Plaintiff a registration in the Four Tattoos had it known he was not their sole author—in other words, Plaintiff was not **entitled** to register the tattoo designs he submitted for registration. Although Plaintiff could attempt to register very small portions of the Four Tattoos, as he points out is demonstrated by his supplementary registrations, Opp. 16, that is not what his pre-suit registrations are for.[16]  Those registrations are invalid.

   **Second**, Plaintiff dives into legislative history to contend that the standard should be whether the inaccuracies can be corrected.  Opp. 16–19.  Almost any inaccuracy in an application can be cured in some way, so Plaintiff's misstatement of the standard would amount to 17 U.S.C. § 411(b) applying only when a work is completely uncopyrightable.  Opp. 18.[17] That cannot be correct.  Such a holding would mean that a claimant could **knowingly** register a work the majority of which he did not own, get his foot in the door of a litigation, and benefit from the presumption of validity in the entirety of the work.  For example, if a marketing assistant who wrote the text on the back cover of a *Harry Potter* novel knowingly claimed to have rights in the entirety of the book and sued someone based on those rights, surely that would

---

[16]  Plaintiff's citation to *Universal Dyeing & Print., Inc. v. Knitwork Prods. II, LLC* for this point is inapposite, and the distinctions between that case and this one further prove the materiality of Plaintiff's misrepresentations. **First**, the plaintiff there owned the preexisting material through assignment, whereas here Plaintiff has claimed ownership over material that he does not in fact own.  *Compare* No. 2:17 Civ. 5660, 2019 WL 2613448, at *1 (C.D. Cal. June 26, 2019), *with supra* 12–13.  **Second**, the plaintiff there had an inexperienced executive submit its registration applications, whereas here Plaintiff relied on an experienced intellectual property attorney to certify his.  *Compare Universal Dyeing*, 2019 WL 2613448, at *3, *with supra* 8–9.  And **third**, the court there speculated that the registrant's mistakes would not have caused the Copyright Office to refuse registration but lacked dispositive guidance from the Register of Copyrights on that point.  *Universal Dyeing*, 2019 WL 2613448, at *6–*7.  Indeed, in none of the cases that Plaintiff cites for the proposition that a supplementary registration proves immateriality under § 411(b) did the courts have the benefit of the Register's guidance.  *See* Opp. 16–17 (first citing *Universal Dyeing*, 2019 WL 2613448, at *5; then citing *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017); then citing *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 854 (9th Cir. 2012)).  Here, the Register has stated in no uncertain terms that the Copyright Office "would not have registered the tattoo designs" that Plaintiff submitted.  Dkt. 231-01 (Resp. of the Rgstr. of Copyrights) at 1–2.  Plaintiff's inaccuracies were thus indisputably material.  *See supra* 15 n.15.

[17]  Plaintiff observes that in *Lieb*, the contribution to the preexisting work was not copyrightable, Opp. 18, but that is not a requirement of either that case or the statute.  *See Lieb*, 2022 WL 1124850, at *14 (failure to disclose preexisting work "cannot be categorized as immaterial").

be considered a material inaccuracy. Plaintiff's approach would say otherwise. Ultimately, the Court should look to and apply the plain language of the statute, and under that standard, Plaintiff's pre-suit registrations do not satisfy 17 U.S.C. § 411(b).

## II.      PLAINTIFF COMMITTED FRAUD ON THE COPYRIGHT OFFICE

Not only has Plaintiff failed to meet the pre-suit registration requirement, but his undisputed actions constitute fraud on the Copyright Office. Accordingly, his copyrights in the Four Tattoos are unenforceable, and his claims based on them should be dismissed.

As explained in Take-Two's opening brief, the affirmative defense of fraud on the Copyright Office requires a showing that (a) the application for copyright registration is factually inaccurate, (b) the inaccuracies were willful or deliberate, and (c) the Copyright Office relied on those misrepresentations. Mot. 14 (citing *Tacori Enters. v. Rego Mfg.*, No. 1:05 Civ. 2241, 2008 WL 4426343, at *14 (N.D. Ohio Sept. 25, 2008)). Plaintiff concedes element (a), that his applications were factually inaccurate. *Supra* 6. With regard to element (c), it is clear that the Copyright Office relied on Plaintiff's misrepresentations because the Copyright Office concluded that it "would not have registered the tattoo designs" that Plaintiff submitted had it known that Plaintiff had misrepresented the scope of his copyrights on his registration applications. Mot. 7–8, 13; *supra* 15. There is thus no genuine dispute that the Copyright Office relied on Plaintiff's misrepresentations, and element (c) is satisfied as well.[18]

Moreover, with regard to element (b), Plaintiff acted willfully *and* deliberately when he proceeded with his applications despite the inaccuracies he knowingly included in them. Mot. 14–16. Notably, Plaintiff fails to respond to any of Take-Two's case law establishing that proceeding with an inaccurate registration application despite knowledge that the facts

---

[18] Even if the Court were to find a genuine, material factual dispute on the issue of Plaintiff's scienter, summary judgment therefore would be appropriate on the first and third elements of Take-Two's fraud on the Copyright Office defense. *See* Fed. R. Civ. P. 56(a) (summary judgment may be granted on "part of each [] defense").

represented therein are untrue satisfies the scienter requirement for the affirmative defense of fraud on the Copyright Office. *See* Mot. 14 (first citing *Rich & Rich P'ship v. Poetman Recs. USA, Inc.*, 714 F. Supp. 2d 657, 663–64 (E.D. Ky. 2010) (Thapar, J.) ("[W]hen an applicant knowingly fails to identify the derivative nature of the work, or the use of elements not of the applicant's own creation, the court may decline to enforce the copyright.") (collecting cases); then citing *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, No. 1:05 Civ. 1519, 2006 WL 5803366, at *12 (N.D. Ohio June 30, 2006) (inaccuracy must have been "knowing or intentional" to constitute fraud); then citing *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 987–89 (S.D.N.Y. 1980) (declining to enforce copyright where applicant knowingly failed to disclose preexisting work in the face of "specific and clear direction to disclose it") (collecting cases)).  Plaintiff thus concedes that willful or deliberate action with knowledge of the underlying facts satisfies the scienter requirement for fraud on the Copyright Office.  And as the record demonstrates, there is no genuine dispute that Plaintiff knew the underlying facts when he submitted copyright applications that misrepresented the material he created and owned, or rather, that he did ***not*** create and did ***not*** own. *See, e.g.*, Mot. 9–12, 15–16; *supra* 8–10.

The Court should disregard Plaintiff's attempt to manufacture a factual dispute on this— and only this—element of Take-Two's defense by citing to a self-serving declaration that Plaintiff signed at least six years after the events in question.  Opp. 19 (citing Dkt. 249-02, Ex. B (Pl.'s Decl.) ¶ 10).  ***First***, Plaintiff's claim that he "did not intend to defraud the Copyright Office" is irrelevant.  Opp. 19.  As Take-Two's unanswered case law shows, the scienter required for this defense is willfulness or deliberateness, not intent to deceive.  *See Tacori Enters.*, 2008 WL 4426343, at *14.[19]

---

[19]  Plaintiff's out-of-Circuit authority fails to demonstrate otherwise.  In *Roberts v. Gordy*, the Eleventh Circuit held that the scienter for § 411(b) is "intentional or purposeful concealment."  877 F.3d 1024, 1030 (11th Cir.

***Second***, as discussed above, Plaintiff's belated declaration need not be automatically accepted by the Court at all, let alone accepted as sufficient to create a genuine dispute.  *See supra* 13–14.  Remarkably, Plaintiff has cited **no contemporaneous evidence** in support of his supposed factual dispute, nor **any evidence produced during the past six years of litigation** to demonstrate that he did not know the truth of the representations contained in his registration applications.  Take-Two, meanwhile, has presented ample evidence that Plaintiff knew that the Four Tattoos incorporated preexisting material at the request of the players on whose bodies the tattoos were inked, and that Plaintiff registered the entire tattoos despite this knowledge.  *See, e.g.*, Mot. 9–12, 15–16.  Plaintiff cannot now meet his burden of rebutting this evidence by simply declaring he never knew what he repeatedly has admitted to knowing.  *Matsushita*, 475 U.S. at 585–86.

Take-Two has thus demonstrated that there is no genuine dispute as to whether Plaintiff committed fraud on the Copyright Office.  And because Plaintiff committed this fraud, this Court should grant partial summary judgment to Take-Two and find that Plaintiff's copyrights in the Four Tattoos are invalid and unenforceable as a matter of law.  *See Rich*, 714 F. Supp. 2d at 664; *McCants v. Tolliver*, No. 1:11 Civ. 665, 2011 WL 2893058, at *6 (N.D. Ohio July 15, 2011).[20]

---

2017).  The Supreme Court abrogated this holding when it affirmed in *Unicolors* that § 411(b)'s scienter requirement is knowledge.  595 U.S. at 182.  Moreover, as *Roberts* was a decision on § 411(b) grounds, it has no bearing on the separate issue of fraud on the Copyright Office.  *See Roberts*, 877 F3d at 1025 (finding that the district court misinterpreted § 411(b)).

[20] Plaintiff cites no authority for the proposition that Congress eliminated the defense of fraud on the Copyright Office when it enacted § 411(b).  Rather, he cites a single out-of-Circuit decision, which observed that Congress "intended" to codify the doctrine when it enacted a pre-suit registration requirement.  But that does not demonstrate that Congress in fact eliminated the procedurally distinct, common-law affirmative defense of fraud on the Copyright Office.  *See* Opp. 19 (citing *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1066 (9th Cir. 2022)).  *But cf. Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 484–85 (6th Cir. 2023) (statutory and "separate, but similar" common-law claims can arise out of the same facts).  Moreover, Plaintiff does not cite, and Take-Two is not aware of, any Sixth Circuit case reaching even this limited conclusion.  Instead, Take-Two found courts within the Sixth Circuit continuing to find copyrights unenforceable because of fraud on the Copyright Office even after the enactment of § 411(b).  *See, e.g.*, *Rich*, 714 F. Supp. 2d at 665.

## **CONCLUSION**

For the foregoing reasons, Take-Two respectfully requests that the Court grant its Motion on both grounds.

Dated:  New York, NY
         December 14, 2023

/s/ Dale M. Cendali
_____

Dale M. Cendali (admitted *pro hac vice*)
Joshua L. Simmons (admitted *pro hac vice*)
Chris Ilardi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com

Miranda D. Means (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Yungmoon Chang (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, 37th Floor
Los Angeles, CA 90067
Telephone: (310) 552-4359
yungmoon.chang@kirkland.com

Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendants 2K Games, Inc. and
Take-Two Interactive Software, Inc.*

## <u>L.R. 7.1(F) CERTIFICATION</u>

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track and that the foregoing memorandum complies with the applicable page limitation of twenty (20) pages.

December 14, 2023

/s/ Dale M. Cendali
_____
Dale M. Cendali (admitted *pro hac vice*)

*Attorney for Defendants 2K Games, Inc. and*
*Take-Two Interactive Software, Inc.*
