**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES HAYDEN,** | ) | **CASE NO. 1:17CV2635** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **2K GAMES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court upon the Motion (ECF DKT #247 "SEALED" &
ECF DKT #248 "Public Version") of Defendants 2K Games, Inc. and Take-Two Interactive
Software, Inc. for Partial Summary Judgment. For the following reasons, Defendants' Motion
is granted.

**I. BACKGROUND**

Plaintiff James Hayden filed his original Complaint on December 18, 2017, alleging
Copyright Infringement by Defendants 2K Games, Inc. and Take-Two Interactive Software,
Inc. Defendants develop and market interactive video games such as the basketball simulation
series "NBA 2K." Plaintiff is a tattoo artist who asserts that he obtained copyright

registrations for six tattoos inked on Danny Green, LeBron James and Tristan Thompson. These three NBA players are depicted, along with those tattoos, as avatars in the NBA 2K video game series.

The operative Fourth Amended Complaint was filed on August 19, 2019.  (ECF DKT #33).  Plaintiff filed a Motion for Leave to File a Fifth Amended Complaint to add NBA 2K21 and 2K22 to the list of accused games; however, the Court denied leave on April 14, 2022.

The copyright registrations at issue for the current Motion are:

• **"Lion**" (Reg. No. VAu 1-271-044), tattooed on LeBron James, completed in 2008 with the effective date of registration of September 6, 2016;

• **"Fire D.G."** (Reg. No. VAu 1-287-552), tattooed on Danny Green, completed in 2012 with the effective date of registration of August 11, 2017; **Supplementary Registration** (Reg. No. VAu 1-365-279) including only the design, creation and placement of flames surrounding and accenting character image and text and the addition of shading, accenting and design aesthetics to flames and character image (**effective date July 30, 2019**);

• **"Scroll D.G."** (Reg. No. VAu 1-287-545), tattooed on Danny Green, completed in 2012 with the effective date of registration of August 11, 2017; **Supplementary Registration** (Reg. No. VAu 1-365-277) including only design elements around the scroll, including the cloud designs, decorative spear head and character image around the edge of the scroll, and the shading in and around all elements (**effective date July 30, 2019**);

• **"Brother's Keeper T.T."** (Reg. No. VAu 1-292-453), tattooed on Tristan

Thompson, completed in 2012 with the effective date of registration of August 11, 2017.

**Prior Dispositive Motions**

On September 20, 2022, the Court issued an Opinion and Order, granting in part and denying in part Plaintiff's Partial Motion for Summary Judgment and denying Defendants' Motion for Summary Judgment. Plaintiff's Motion was granted only to the extent that he owns *presumptively valid, protectable copyrights* in the tattoos pursuant to 17 U.S.C. § 410. This presumption is rebuttable. Defendants' Motion was denied because of the factual issues surrounding actionable copying and the defenses of fair use, *de minimis* and implied license.

**Referral to Register of Copyrights**

Defendants assert the Affirmative Defense of Fraud on the Copyright Office in their Answer to the Fourth Amended Complaint and allege that there are inaccuracies in four of Plaintiff's asserted tattoo registrations. Defendants contend that Plaintiff knowingly failed to disclose to the Copyright Office that he copied or incorporated preexisting works; and that, in any event, his designs are insufficiently original to merit copyright registration. The Court was duty-bound to refer questions to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2):

1. Would the Register of Copyrights have refused to register the tattoo entitled "Lion" (Reg. No. VAu 1-271-044) if the Register of Copyrights had known that the application was based upon or incorporated preexisting material from the trademarked logo of the Venetian Resort (U.S. Trademark Reg. No. 3,429,884)?

2. Would the Register of Copyrights have refused to register the tattoo entitled

"Brother's Keeper T.T." (Reg. No. VAu 1-292-453) if the Register of Copyrights had known that the work was based upon or incorporated pre-existing materials from the Sistine Chapel and the Bible?

3. Would the Register of Copyrights have refused to register the tattoo entitled "Fire D.G." (Reg. No. VAu 1-287-552) if the Register of Copyrights had known that the work was derivative of, or incorporated pre-existing material from another author who was not identified and which depicted a basketball player?

4. Would the Register of Copyrights have refused to register the tattoo entitled "Scroll D.G." (Reg. No. 1-287-545) if the Register of Copyrights had known that the work was derivative of, or incorporated pre-existing material from another author who was not identified and which depicted a scroll?

**Response of the Register of Copyrights (ECF DKT #231-1)**

"The Register hereby responds that, based on the legal standards and examining practices set forth below, the Office would not have registered the tattoo designs if it had known that the designs included an "appreciable amount" of public domain material or material owned by a third party that the applicant did not exclude in his application for registration."  (ECF DKT #231-1 at 1-2).

"Based on a review of the relevant law, regulations, and the Copyright Office's practices, the Register hereby advises the Court that, had it known that Mr. Hayden's tattoo designs incorporated appreciable amounts of unclaimable material, it would have sought to have his applications amended to exclude the unclaimable material.  Such material was properly excluded in Mr. Hayden's Supplementary Registrations for Fire D.G. and Scroll D.G.

-4-

The Register also notes that he [Hayden] may file supplementary registration applications to exclude the unclaimable material incorporated in the Lion and Brother's Keeper T.T. tattoo designs."  (ECF DKT #231-1 at 20).

**Defendants' Motion for Partial Summary Judgment (filed October 31, 2023)**

Defendants argue that (1) Plaintiff's registrations for the Lion Tattoo on LeBron James, the Fire Tattoo on Danny Green, the Scroll Tattoo on Danny Green, and the Brother's Keeper Tattoo on Tristan Thompson do not satisfy the Copyright Act's pre-suit registration requirement (17 U.S.C. § 411(a)) and that (2) Plaintiff's false statements in his applications to register the Four Tattoos constitute Fraud on the Copyright Office.

 With regard to the pre-suit registration requirements, Plaintiff opposes and says that Defendants have not shown, aside from mere speculation, that he indisputably knew his registration applications failed to comply with the Copyright Act.  And, Defendants cannot conclusively show that the asserted omissions were material to the Register of Copyrights' registration decisions.

## II. LAW AND ANALYSIS

**Summary Judgment Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy,* 39 F.3d at 1347.

This Court does not have the responsibility to search the record sua sponte for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

-6-

**<u>Pre-Suit Registration</u>**

17 U.S.C. § 411(a) provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."

17 U.S.C. § 411(b) provides that a certificate of registration satisfies this requirement *even if it contains inaccurate information* unless "(A) the inaccurate information was included on the application for copyright registration *with knowledge that it was inaccurate*; and (B) the *inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.*" *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181 (2022)." (Emphasis added).

The Supreme Court held in *Fourth Estate Public Benefit Corporation v. Wall-Street.com, LLC*, that "[b]efore pursuing an infringement claim in court, [] a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'" 139 S. Ct. 881, 887 (2019).

The Supreme Court clarified that the registration requirement of § 411(a) was "akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Estate*, 139 S. Ct. at 887.

"[K]nowledge" has historically "meant and still means the fact or condition of being aware of something." *Intel Corp. Investment Policy Comm. v. Sulyma*, 589 U. S. ——, 140 S.Ct. 768, 776, 206 L.Ed.2d 103 (2020).

"Material misstatements in a copyright registration application "are those which go toward the registrability of the materials themselves, such as originality ... the nature of

materials to be copyrighted ... and contested claims of authorship and ownership." *Shady Records, Inc.*, [2005 WL 14920, at \*10] 2004 U.S. Dist. LEXIS 26143, at \*35 (citations omitted); see *Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir.1984) ("Only the ***knowing failure*** to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid and thus incapable of supporting an infringement action ... or denying enforcement on the ground of unclean hands ....") (internal quotations omitted)." *Jedson Engineering, Inc. v. Spirit Constr. Services, Inc*., 720 F.Supp.2d 904, 914 (S.D. Ohio, Western Division June 18, 2010). (Emphasis added).

The "safe harbor" provision in § 411(b) does not distinguish between a mistake of law and a mistake of fact; lack of either factual or legal knowledge can excuse an inaccuracy in a copyright registration under § 411(b)(1)(A)'s safe harbor.  See *Unicolors, Inc.*

Addressing the Response of the Register of Copyrights (ECF DKT #231-1) in a broad sense, Plaintiff disputes that the language used by the Register of Copyrights in answer to the Court's questions meets the standard set forth in § 411(b).  Plaintiff contends that  "would not have registered" is different from "would have refused to register."  However, the Court does not find that to be a legitimate distinction.

Plaintiff also contends that the inquiry in § 411(b)(1)(B) is whether the Copyright Office would have refused to register the copyright had the inaccurate information not been included.  Put another way, whether the Register would have allowed registrations if the inaccuracies were removed or cured.  Plaintiff cites to Maine, Tennessee and California district court cases for this contention  – none of which are binding on this Court.  Moreover,

the construction which Plaintiff touts is not in keeping with the plain wording of the statute. Rather, Plaintiff adds language to it. Subsection 411(b)(1)(B) simply says: "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."

The Court is not persuaded by Plaintiff's linguistic argument.

**Scroll D.G. and Fire D.G. Tattoos**

It is undisputed that the original Scroll and Fire registrations both incorporated another's work, which was not disclosed in the application. (Hayden's Deposition, ECF DKT #250-2 at 3: "Did you then add to the tattoo that the first tattooist did?" "Yes." "And did you add more shading and detail to the original tattoo?" "Yes.").

Copyright protection exists for "original works of authorship fixed in any tangible medium of expression," including "pictorial, graphic, and sculptural" works. 17 U. S.C. § 102(a). It is therefore unquestioned that Plaintiff cannot recover for infringement of another's creative work.

Plaintiff conceded the defects and inaccuracies in his copyright applications when he filed for Supplemental Registrations in 2019, excluding the artwork of another. Plaintiff argues in his Opposition Brief (ECF DKT #249 at 13) that he *did not know* that not identifying the pre-existing tattoos that were *already inked near the Scroll and Fire Tattoos* was an inaccuracy. But, also see Plaintiff's Declaration (ECF DKT #249-2 at ¶¶ 14 & 15):

> 14. When I submitted my registration applications for the Fire and Scroll tattoos, I did not know that I needed to exclude the tattoos that Mr. Green already had on his shoulder and inner arm. I intended to register only the works and elements that I created and inked.
> 15. *After* filing this lawsuit, I decided to file supplementary registration

-9-

applications for the Fire and Scroll tattoos to ensure that my intention to
register only the works I created and inked was clear.  (Emphasis added).

Also significantly, in Plaintiff's original applications for Fire D.G. and Scroll D.G.
dated August 11, 2017, he specifically excludes the photograph of Danny Green's arm and
limits his claim just to his 2-D artwork.  (ECF DKT #95-50 at 54 & 62).  Plaintiff's action
evidences his understanding of excludable versus includable material.

Therefore, the Scroll and Fire registrations, with the effective date of August 11, 2017,
contained inaccuracies which Plaintiff knew were inaccurate; and which the Register of
Copyrights would have refused as containing appreciable, excludable, uncopyrightable
material.  (Response of Register, ECF DKT #231-1 at 16-18).

The original Complaint in this case was filed on December 18, 2017; so, Plaintiff
failed to satisfy the pre-suit registration requirements in 17 U.S.C. § 411 for the Scroll D.G.
and Fire D.G. Tattoos.

Although the Register of Copyrights found (ECF DKT #231-1 at 2) that Plaintiff
appropriately utilized the supplementary registration procedures to amend the claim to
copyright for Fire D.G. and Scroll D.G., and found that his contributions to these designs with
preexisting material excluded, is copyrightable, Plaintiff's Copyright Infringement claims still
cannot survive.

The Supplemental Registrations have an effective date of July 30, 2019, almost two
years after the lawsuit was initiated.  Moreover, Plaintiff has never made the Supplemental
Registrations a part of any of the five Complaints in the instant case.  Even if Plaintiff had
alleged them, authority following the Supreme Court case of *Fourth Estate* instructs that the

pre-suit requirement of § 411 would be rendered meaningless if a litigant could register supplemental corrections after originally filing suit and have the amendments relate back. *See Rawls v. Paradise Artists, Inc.*, No. 3:18 Civ. 417, 2020 WL 1493610, at *5 (M.D. Tenn. Mar. 27, 2020) (collecting cases holding that post-filing registration does not cure earlier failure).

With regard to the original and supplemental registrations for Fire D.G. and Scroll D.G., the Register of Copyrights further stated at ECF DKT #231-1 at 12:

> The Office maintains both records to allow courts to decide (i) whether the changes made by the supplementary registration are material, and (ii) whether those changes should or should not be deemed effective as of the date that the basic registration was made or the date that the supplementary registration was made.

In light of the law set forth in the pre-registration statute and in the exercise of its discretion, the Court determines that the changes made by Plaintiff's Supplementary Registrations are material and that the changes are deemed effective as of the date that the Supplementary Registrations were made.

**Lion and Brother's Keeper Tattoos**

The Court finds that the registrations for the Lion Tattoo on LeBron James and the Brother's Keeper Tattoo on Tristan Thompson are flawed as well.

Plaintiff knew about the Venetian Resort playing card that LeBron James brought into Plaintiff's establishment. (Hayden's Deposition, ECF DKT #249-3 at 9: "You didn't, in this form, do anything to tell the copyright office that Mr. James had brought in a tattoo [sic] of a lion and that he asked you to do something similar to that, correct?"  "I guess not.").

Regarding the Creation of Adam on the Sistine Chapel ceiling, ECF DKT #249-3 at

-11-

10:  "Michelangelo was an artist too, right, and you knew about his design with the two

fingertips touching one another, or the two hands, right?   "That may be true, but

Michelangelo designs weren't recreated and copy written and used by NBA 2K."  "You didn't

mention, when you submitted this copyright application to the copyright office, that –

anything about Michelangelo's hands, correct?"  "Has nothing to do with Michelangelo."

In his Declaration (ECF DKT #249-2), Plaintiff states:  "I did not *believe* that there

was anything to exclude as unclaimable."  "I did not *believe* the card needed to be excluded in

the application."  "I did not *believe* anything needed to be excluded as unclaimable."  "I did

not *think* the hand design from the Sistine Chapel needed to be excluded in the application."

17 U.S.C. § 411(b) speaks to "knowing" inaccuracies.  No genuine issue of fact is

demonstrated by Plaintiff's assertions of personal beliefs or understandings.  Rather,

Plaintiff's Declaration shows that he knew that the card and the hand design were not his own

original creations.

In opposition to the Court's Show Cause Order for Referral to the Copyright Office,

(ECF DKT #224 at 8), Plaintiff asserts that an applicant is not required to exclude material

that is clearly in the public domain:  " Mr. Hayden's sources of inspiration for the Lion and

Brother's Keeper tattoos are well-known public-domain material—not the kind of pre-existing

content the Copyright Office requires in application for registration."

However, at footnote 49 in the Register's Response (ECF DKT #231-1), the Register

says:  "Mr. Hayden's assertion that an applicant is not required to exclude material that is

"clearly in the public domain" is incorrect."

17 U.S.C. § 409(9) provides:  An application for registration must include "in the case

of a compilation or derivative work, an identification of any preexisting work or works that

[the work to be registered] is based on or incorporates, and a brief, general statement of the

additional material covered by the copyright claim being registered."  Tellingly, Plaintiff

himself cites to this statutory section.  (ECF DKT #249 at 12).

Plaintiff's applications for copyright registrations were prepared and filed by an

attorney at Calfee, Halter & Griswold who is skilled in Intellectual Property law.

Accordingly, the Court is unpersuaded that claimed ambiguity or complexity in copyright

registration requirements provides an excuse for a tattoo artist, guided by skilled IP counsel, to

fail to recognize and disclose "appreciable amounts" of "unclaimable material."

Moreover, the *Compendium* is available for guidance; and the Copyright Office

provides contact information if applicants have questions.  The *Compendium* "provides

instruction to agency staff regarding their statutory duties and provides expert guidance to

copyright applicants, practitioners, scholars, the courts, and members of the general public

regarding institutional practices and related principles of law."  See *Lieb v. Korangy

Publishing Inc.*, CV 15-0040, 2022 WL 1124850, at *9 (E.D.N.Y. Apr. 14, 2022) (quoting

*Compendium*).

To assist in understanding "appreciable amount," the *Compendium* explains, "[i]f the

applicant intends to register a work that contains a minimal amount of unclaimable material,

the applicant need not identify or disclaim that material in the application."  2014

*Compendium* (Third) § 621.2.

The *Compendium* defines "unclaimable material" as "[p]reviously published material,"

"[p]reviously registered material," "[m]aterial that is in the public domain," and

"[c]opyrightable material that is owned by a third party."  2014 *Compendium* (Third) § 621.1.

Additionally, the Court holds that a reasonable lay person could understand the meaning of Section 4 of the copyright application form (*See, e.g.*, ECF DKT #95-50 at 21):

Limitation of Copyright Claim.

4a.  Material excluded from this claim (*Material previously registered, previously published, or not owned by this claimant*)

In fact, Plaintiff must have comprehended that section of the form when he excluded the photograph of Danny Green's arm for Fire D.G. and Scroll D.G. and when he later filed his Supplemental Registrations and excluded certain pre-existing material from the claims.

Even if tattoo copyright registrations uniquely reflect more art than science, the Court finds that best practice requires an applicant to err on the side of caution and to exclude all pre-existing sources and unclaimable material when preparing to file an application for copyright registration.  That did not happen here.

Plaintiff is similarly estopped by his own representations and pleading allegations from asserting lack of factual and/or legal knowledge of the inaccuracies in his copyright registrations.  In his Opposition to Defendants' Motion for Partial Summary Judgment (ECF DKT #249 at footnote 3), Plaintiff states that upon resolution of the instant Motion, he intends to "likewise file supplementary registration applications to correct the omissions in the [Lion] and [Brother's Keeper] Registrations."  Moreover, Plaintiff alleges in his related Complaint (1:23CV1721):

Re: Lion Design:  "Mr. Hayden intends to file a supplementary registration application to exclude the ***preexisting*** sources of inspiration."  (Complaint at ¶ 50).

Re: Brother's Keeper Design: "Mr. Hayden intends to file a supplementary registration

-14-

application to exclude the ***preexisting*** sources of inspiration."  (Complaint at ¶ 81). (Emphasis added).

### III. CONCLUSION

The Court finds that four of Plaintiff's copyright applications were registered with knowing inaccuracies (not inadvertent or immaterial ones).  The Court finds that the Supplemental Registrations for Scroll D.G. and Fire D.G. have never been asserted in this lawsuit and have effective dates two years post-filing of the lawsuit.

The Copyright Register responded to the Court's formal inquiry that the Office would not have registered Plaintiff's tattoo designs if it had known that the designs included an "appreciable amount" of public domain material or material owned by a third party that the applicant did not exclude in his application for registration.

Thus, the Court finds that both aspects of 17 U.S.C. § 411(b) have been demonstrated by Defendants; and that even viewing the evidence in a light most favorable to the non-movant, Plaintiff has not shown that there is any genuine dispute about inaccuracies or about his knowledge of those inaccuracies.

The Court determines that the statutory pre-suit registration requirements have not been met; and that the registrations for all four challenged tattoos (Scroll D.G., Fire D.G., Lion, and Brothers Keeper T.T.) are invalid and unenforceable.  In light of this decision, the Court need not address Defendants' Fraud on the Copyright Office defense.

For these reasons, the Motion (ECF DKT #247 "SEALED" & ECF DKT #248 "Public Version") of Defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. for Partial Summary Judgment is granted; and Plaintiff James Hayden's Copyright Infringement claims

for the Scroll D.G., Fire D.G., Lion, and Brothers Keeper T.T. Tattoos are dismissed without prejudice.

**IT IS SO ORDERED.**

**DATE: January 24, 2024**

         s/Christopher A. Boyko
        **CHRISTOPHER A. BOYKO**
        **United States District Judge**