**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES HAYDEN, | CASE NO. 1:17-cv-02635-CAB |
| Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| v. | |
| 2K GAMES, INC. and TAKE-TWO INTERACTIVE SOFTWARE, INC., | |
| Defendants. | |

## DEFENDANTS 2K GAMES, INC. AND TAKE-TWO INTERACTIVE SOFTWARE, INC.'S OMNIBUS MOTION *IN LIMINE*

## TABLE OF CONTENTS

Page

I.    MIL NO. 1 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT IMPLYING TAKE-TWO WITHHELD TELEMETRY DATA....................................1

II.    MIL NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING PLAINTIFF'S PROJECTS AND AGREEMENTS...........................2

III.    MIL NO. 3 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING PURPOSE AND SCOPE OF PROJECTS AND AGREEMENTS ................................................................................................8

IV.    MIL NO. 4 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S LICENSING OF OTHER WORKS .......................10

V.    MIL NO. 5 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT REGARDING OTHER VIDEO GAME COMPANIES' AGREEMENTS ...............11

VI.    MIL NO. 6 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING PLAINTIFF'S OPINIONS ABOUT THE TATTOO INDUSTRY ................................................................................................13

VII.    MIL NO. 7 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT OF ACTUAL DAMAGES.........................................................................15

VIII.    MIL NO. 8 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING THE FOUR TATTOOS DISMISSED FROM THIS CASE ...........17

IX.    MIL NO. 9 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT ABOUT PLAINTIFF'S UNDISCLOSED COMMUNICATIONS WITH MR. JAMES ...............................................................................................19

X.    MIL NO. 10 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S REVENUE FROM VIRTUAL CURRENCY........20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acuity Brands Lighting, Inc. v. Bickley*,
No. 13 Civ. 366, 2015 WL 10551946 (E.D. Ky. Nov. 30, 2015).............................................16

*Alexander v. Hoffman*,
No. 16 Civ. 12069, 2019 WL 4640281 (E.D. Mich. Sept. 24, 2019) ....................................18

*Aslan v. Ferrari N. Am., Inc.*,
No. 16 Civ. 2574, 2018 WL 6321635 (C.D. Cal. Oct. 19, 2018) .............................................1

*Asset Mktg. Sys., Inc. v. Gagnon*,
542 F.3d 748 (9th Cir. 2008) ...................................................................................................5

*Authors Guild, Inc. v. HathiTrust*,
755 F.3d 87 (2d Cir. 2014).................................................................................................2, 3

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015)...........................................................................................2, 3, 4

*Auto Konnect, LLC v. BMW of N. Am., LLC*,
590 F. Supp. 3d 977 (E.D. Mich. 2022)..................................................................................14

*Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*,
596 F.3d 357 (6th Cir. 2010) ..................................................................................................16

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006)..............................................................................................3, 10

*Brown v. Weber*,
No. 11 Civ. 1390, 2014 WL 11531797 (W.D. Tenn. Jul. 11, 2014) .........................................6

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994).................................................................................................................11

*Cleveland Bros. Equip. Co. v. Vorobey*,
655 F. Supp. 3d 305 (M.D. Pa. 2023) .......................................................................................2

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
No. 09 Civ. 261, 2014 WL 1350720 (W.D. Wis. Apr. 4, 2014)...............................................13

*Duffy v. Penguin Books USA Inc.*,
4 F. Supp. 2d 268 (S.D.N.Y. 1998).........................................................................................4

*Duran v. City of Porterville*,
   No. 13 Civ. 370, 2015 WL 5598933 (E.D. Cal. Sept. 22, 2015) .............................................9

*Engebretsen v. Fairchild Aircraft Corp.*,
   21 F.3d 721 (6th Cir. 1994) ...............................................................................................10

*Fair Isaac Corp. v. Fed. Ins. Co.*,
   No. 16 Civ. 1054, 2023 WL 7269164 (D. Minn. Sept. 13, 2023) ..........................................5

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) .............................................................................................12

*Google LLC v. Oracle Am., Inc.*,
   141 S. Ct. 1183 (2021)...............................................................................................3, 11

*Gordon v. Royal Palm Real Est. Inv. Fund I, LLLP*,
   No. 09 Civ. 11770, 2022 WL 1431837 (E.D. Mich. May 5, 2022)........................................15

*Hardesty v. Kroger Co.*,
   No. 16 Civ. 298, 2022 WL 742847 (S.D. Ohio Mar. 11, 2022) .........................................9, 20

*Hofheinz v. AMC Prods., Inc.*,
   147 F. Supp. 2d 127 (E.D.N.Y. 2001) ..................................................................................4

*Little Hocking Water Ass'n v. E.I. Du Pont De Nemours & Co.*,
   No. 09 Civ. 1081, 2013 WL 753541 (S.D. Ohio. Feb. 26, 2013)............................................9

*Lombardo v. Dr. Seuss Enters., L.P.*,
   729 F. App'x 131 (2d Cir. 2018) ...........................................................................................3

*Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc.*,
   No. 05 Civ. 70804, 2007 WL 1834714 (E.D. Mich. June 25, 2007).......................................1

*Manuel v. City of Chi.*,
   335 F.3d 592 (7th Cir. 2003) ...............................................................................................6

*Martinez v. Dart Trans, Inc.*,
   548 F. Supp. 3d 1107 (D.N.M. 2021) ...................................................................................1

*Parker Hannifin Corp. v. Std. Motor Prods., Inc.*,
   No. 19 Civ. 617, 2021 WL 5801850 (N.D. Ohio Dec. 7, 2021).......................................13, 14

*Pietrowski v. Merchants and Med. Credit Corp.*,
   No. 06 Civ. 12718, 2007 WL 3036717 (E.D. Mich. Oct. 16, 2007) ......................................18

*Princeton Univ. Press v. Michigan Document Servs., Inc.*,
   99 F.3d 1381 (6th Cir. 1996) ...............................................................................................4

*Satija v. Permanent Gen. Assur. Corp. of Ohio*,
   No. 13 Civ. 82, 2014 WL 1664557 (N.D. Ohio Apr. 25, 2014).................................................20

*Seltzer v. Green Day, Inc.*,
   725 F.3d 1170 (9th Cir. 2013) ..............................................................................................2

*Silitonga v. Kentucky St. Univ.*,
   No. 16 Civ. 29, 2018 WL 3969951 (E.D. Ky. Aug. 20, 2018)..............................................20

*SPEX Techs. v. Apricorn, Inc*,
   No. 16 Civ. 7349, 2020 WL 1289546 (C.D. Cal. Jan. 21, 2020)..........................................15

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014).....................................................................................................10

*TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc.*,
   No. 11 Civ. 85, 2012 WL 2576367 (N.D. Ohio July 3, 2012).........................................16, 17

*United States v. Terry*,
   No. 10 Cr. 390, 2011 WL 2149361 (N.D. Ohio May 31, 2011)............................................13

*Yerkes v. Ohio St. Highway Patrol*,
   No. 19 Civ. 2047, 2023 WL 4633896 (S.D. Ohio July 20, 2023) ...................................17, 19

*Yue v. Chordiant Software, Inc.*,
   No. 08 Civ. 19, 2010 WL 11575579 (N.D. Cal. Apr. 22, 2010) .............................................5

**Statutes**

17 U.S.C. § 107(4) ........................................................................................................................2

17 U.S.C. § 504(b) ......................................................................................................................16

**Rules**

Fed. R. Civ. P. 26 ...........................................................................................................13, 14, 15, 16

Fed. R. Civ. P. 37 ...................................................................................................................9, 15, 20

Fed. R. Evid. 401 ............................................................................................................... *passim*

Fed. R. Evid. 402 ............................................................................................................... *passim*

Fed. R. Evid. 403 ............................................................................................................... *passim*

Fed. R. Evid. 701 ..........................................................................................................................14

Fed. R. Evid. 702 ..........................................................................................................................20

v

Fed. R. Evid. 801 ........................................................................................................................19

Fed. R. Evid. 802 ........................................................................................................................19

Fed. R. Evid. 803 ........................................................................................................................19

Fed. R. Evid. 804 ........................................................................................................................19

I.      **MIL NO. 1 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT
        IMPLYING TAKE-TWO WITHHELD TELEMETRY DATA**

This Court previously denied Plaintiff's untimely request for Take-Two to produce
"telemetry data" showing how often a video game player uses any NBA player's avatar (i.e.,
player-based data), finding that Take-Two's objections that such data does not exist and that the
Federal Rules of Civil Procedure do not require Take-Two to create data were "well-taken."
Dkt. 50 (Disc. Ord.) 2–3; *see* Dkt. 211-1 (J. Thomas Tr.) 296:1–4 (███████████████████
████████████████████████████████████████████████████████████████████████).[1]

Take-Two therefore thought this issue was resolved four years ago.  Yet, Plaintiff wrongly
continues to argue both that (1) Take-Two tracks telemetry data and (2) Plaintiff "should be
allowed to present evidence demonstrating that Take-Two refused to produce" nonexistent data.
Dkt. 219 (Pl.'s 2d Opp. Mot. in Lim.) 2.  Take-Two therefore respectfully moves *in limine* to
exclude any evidence, testimony, or argument that Take-Two withheld this nonexistent data.

        ***First***, that Order should govern "to keep rulings consistent and avoid repetitious
reconsideration of matters."  *Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc.*, No. 05 Civ.
70804, 2007 WL 1834714, at *7 (E.D. Mich. June 25, 2007); *see also Martinez v. Dart Trans,
Inc.*, 548 F. Supp. 3d 1107, 1116 (D.N.M. 2021) (evidence of already-decided issues irrelevant
and likely to confuse).  Plaintiff should be precluded from arguing or implying that Take-Two
acted wrongfully by following that Order.

        ***Second***, Rules 402 and 403 require exclusion.  Like the nonexistent data itself, whether
Take-Two produced nonexistent data is irrelevant and, thus, inadmissible.  *See Aslan v. Ferrari*

---

[1] Capitalized terms not defined here were defined in Take-Two's first summary judgment brief. *See* Dkt. 95-1.  Any
reliance by Plaintiff on Jason Argent's testimony on this issue is misplaced.  Jeff Thomas, not Mr. Argent, testified
to this topic during his 30(b)(6) deposition, and Mr. Argent stated that he ████████████████████████████████
████████████████████████████████████████████████████████████████████████ Dkt. 211-2
(Argent Tr.) 216:19–25.

*N. Am., Inc.*, No. 16 Civ. 2574, 2018 WL 6321635, at *4–5 (C.D. Cal. Oct. 19, 2018) (excluding argument that defendant failed to produce documents).  And permitting Plaintiff to imply that Take-Two is hiding unfavorable data would unfairly prejudice Take-Two.  *See Cleveland Bros. Equip. Co. v. Vorobey*, 655 F. Supp. 3d 305, 318–19 (M.D. Pa. 2023) (excluding evidence implying party was "perhaps improperly hiding" documents as unfairly prejudicial).

## II.  MIL NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING PLAINTIFF'S PROJECTS AND AGREEMENTS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument concerning Plaintiff's projects and agreements with third parties that purport to release or license alleged copyrights for use in industries **other than** video games, which Plaintiff contends are both proof of market effects under the fourth fair use factor and a refutation of Take-Two's license defense.  Neither of these explanations makes sense, and exclusion is warranted because (1) such projects and agreements are irrelevant, and (2) they risk substantially confusing the jury.

**No Relevance to Market Effects**.  The fourth fair use factor considers the effect of a defendant's use on the "market for or value of the copyrighted work," 17 U.S.C. § 107(4), including in markets that are "traditional, reasonable, or likely to be developed."  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013).  Cognizable market harm is limited to "market substitution," i.e., harm that results where the use of a work "**substitutes for the original work**."  *See Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99–100 (2d Cir. 2014) (emphasis added) (where digitization of books to create a full-text search was at issue, the fact that some libraries "might be willing to purchase licenses in order to engage in this transformative use" was "irrelevant" without market substitution); Dkt. 193 (1st Summ. J. Op.) 14 (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 222 (2d Cir. 2015) ("*Google Books*")).  This Court already has found that there is no existing market for tattoos in video games.  Dkt. 175 (Op. Mot. Excld.

2

Lenzo) 7.  And the projects and agreements that Plaintiff intends to present at trial—**none** concerning video games—have no bearing on whether such a market in **this** industry is likely to develop, let alone whether Take-Two's use would cause substitution therein.

      **First**, these projects and agreements involve uses that differ from Take-Two's use. Evidence of a licensing market for one use is not evidence of a licensing market for a different use.[2]  *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006) (fees for reproducing images for other uses but no harm to relevant market of defendant's use). For example, in *Google v. Oracle*, although Oracle previously had licensed its code for use with computers, there was no potential market for that code in the "different in kind" smartphone industry.  141 S. Ct. 1183, 1206–07 (2021).  Similarly, plaintiffs in cases about books cannot simply point to **any** time **any** book has **ever** been licensed for **any** use.  Were that so, courts would always find a potential market existed under factor four, but in fact courts routinely conclude otherwise.  *See*, *e.g.*, *Lombardo v. Dr. Seuss Enters., L.P.*, 729 F. App'x 131, 133 (2d Cir. 2018) (fourth factor favors fair use); *Google Books*, 804 F.3d at 224 (same); *HathiTrust,* 755 F.3d at 99–100 (same).  Here, Plaintiff's attempt to introduce projects and agreements involving different industries (e.g., advertising and movies) and different works (e.g., designs printed on shoes) would be irrelevant to the potential market for tattoos in video games.  Indeed, **video games are expressly carved out** of many of Plaintiff's agreements, *see infra* 7–8; those surely cannot show that a licensing market for tattoos in video games is likely to develop.  Plaintiff's position here also contradicts his position throughout this case that Mr. James is allowed to appear with the Asserted Tattoos showing and without Plaintiff's permission in these other

---

[2] Nor can Plaintiff point to these projects and agreements to show **he** would be willing to license tattoos in video games.  Such an argument violates the circular reasoning that courts warn against.  *See Bill Graham*, 448 F.3d at 614 (courts cannot conclude "that potential licensing revenues were impermissibly impaired simply because the secondary user did not pay a fee for the right to engage in the use" (internal quotation omitted)).

contexts, even ones where Mr. James is featured prominently rather than among a sea of miniaturized NBA players.  Dkt. 211-3 (Hayden 1st Tr.) 144:22–145:17 (agreeing it was "okay if [the] tattoos are shown" in a photograph of Mr. James), 148:2–10; Ex. A (Hayden 2d Tr.) 170:18–21 (██████████████████████████████████), 27:21–28:6.

**Second**, many of these projects and agreements were entered under the specter of this litigation, years after the Asserted Tattoos appeared in *NBA 2K* and this case was filed.  They therefore are irrelevant to whether Take-Two's use had any effect on any market for the Asserted Tattoos at the time Take-Two started using them.  *See Duffy v. Penguin Books USA Inc.*, 4 F. Supp. 2d 268, 275 (S.D.N.Y. 1998) (looking at evidence "at the time" of the use to determine market harm); *Google Books*, 804 F.3d at 224 (no market harm based on use as "presently constructed").[3]  The fact that, years after a work was created, companies fearful of litigation might license that work is not evidence of market harm.  *See Hofheinz v. AMC Prods., Inc.*, 147 F. Supp. 2d 127, 141 (E.D.N.Y. 2001) (alleged infringers "are likely to seek a license to avoid entering the murky realm of fair use law during the course of litigation").  Here, nearly all the projects and agreements even involving the Asserted Tattoos on Mr. James' body **post-date** the filing of this lawsuit; such under-the-gun agreements (some even called or originating as "releases" of rights) cannot show whether there was a traditional, reasonable, or likely to be developed market at the time of Take-Two's use.  This warrants exclusion.  Fed. R. Evid. 402.

**No Relevance to License**.  These projects and agreements are also irrelevant to whether there was an implied license between Mr. James and Plaintiff.  Many do not involve Mr. James or the Asserted Tattoos, and thus are not evidence of Plaintiff's intent concerning **this** player and

---

[3] *Princeton University Press v. Michigan Document Services, Inc.* did not find that licenses for uses different from a defendant's use could be considered.  99 F.3d 1381 (6th Cir. 1996).  Rather, the court considered that other **copy shops** paid permission fees, while the **copy shop** at issue did not—in other words, even in *Princeton*, the Sixth Circuit was comparing apples to apples, not apples to oranges.  *Id.* at 1387.

*these* works.  Plaintiff points to only three alleged releases for tattoos he inked on Mr. James and only four belatedly produced licenses involving Mr. James, most of which are dated ***over a decade after*** the Asserted Tattoos were inked on Mr. James.  Dkt. 109-49 (Hayden Decl.) ¶¶ 20, 23–25.  Most of these agreements also ***post-date this lawsuit***, even though Mr. James had been regularly appearing in media, including video games, with the Asserted Tattoos visible on his body for many years prior.  *See* Dkt. 188-2 (James Tr.) 73:20–23 (██████████████████ ████████████████████████); Ex. A (Hayden 2d Tr.) 178:22–179:11 (█████████████ ████████████████████).  These projects and agreements are *post-hoc* attempts to upend the norms and expectations of both Plaintiff and Mr. James; such agreements, so distant in time from the inking and after litigation was filed, say nothing of Plaintiff's objective intent ***at the time he inked Mr. James***, which is the appropriate inquiry in the implied license analysis.  *See Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008) (considering conduct "at the time of the creation and delivery"); *Yue v. Chordiant Software, Inc.*, No. 08 Civ. 19, 2010 WL 11575579, at *3–4 (N.D. Cal. Apr. 22, 2010) (granting MIL to exclude licenses entered after start of litigation as irrelevant).  This warrants exclusion.  Fed. R. Evid. 402.

**Jury Confusion**.  Having no relevance to any issue in this case, these projects and agreements would confuse the jury into wrongly believing that if one use is licensed, then other uses also should be licensed.  *See Fair Isaac Corp. v. Fed. Ins. Co.*, No. 16 Civ. 1054, 2023 WL 7269164, at *18 (D. Minn. Sept. 13, 2023) (licenses in other contexts likely to mislead or confuse jury absent evidence tying them to case's circumstances).  Adding to this confusion, Plaintiff is attempting to introduce at trial ***unsigned*** or ***unproduced*** releases and contracts, some of which have nothing to do with Mr. James, video games, or even tattoos, making it unclear whether they were actually executed as well as the scope and content of what may have been

licensed. These numerous ambiguities create the risk of trial devolving into "mini-trials," wherein the jury will need to parse the facts of these other, unrelated releases and projects involving different industries and circumstances. *See Manuel v. City of Chi.*, 335 F.3d 592, 597 (7th Cir. 2003) (excluding evidence due to confusion and risk of misleading jury through "series of mini-trials"); *Brown v. Weber*, No. 11 Civ. 1390, 2014 WL 11531797, at *1 (W.D. Tenn. Jul. 11, 2014) (same). This, too, warrants exclusion. Fed. R. Evid. 403.

Below, these principles are applied to Plaintiff's potential trial evidence:



. *See* Dkt. 211-4.

Dkt. 211-3 (Hayden 1st Tr.) 179:17–19 (agreeing "the shoes didn't have pictures of Mr. James on them, they just had . . . parts of these designs"); 179:20–23.

*See* Dkt 109-50 ; Dkt. 211-3 (Hayden 1st Tr.) 182:10–21; 183:8–10. No contract has been produced for this project, and

*See* Dkt. 109-51

*See* Dkt. 109-52–53;

Dkt. 211-5; Dkt. 191-3 (Hayden 1st Tr.) 187:1–7. ███████████████████████

████████████████████████████████████████████

███████████████████████████████████████

See Dkt. 109-54. ███████████████████████████████████████

███████████ Hayden Decl. ¶ 20 (███████████████████████████).

█████████████████████████████████████████

███████ See Dkt. 109-55 █████████████████████████

████████████████████████████████████████████

████████████████████████████████ Hayden Decl. ¶ 21, and never

produced ████████████████████████

████████████████████████████████████████

███████████████████████████████ See Dkt. 109-56 █████████

█████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████ Dkt. 109-57. ████████████████████████

████████████████████████████████ does not bear on the time Take-

Two's use commenced; ████████████████████████████

███████████████████████████████████████

███████████ Dkt. 109-58. ██████████████████████████

███████████████████████████ does not bear on the time Take-Two's use

commenced; ████████████████████████████

████████████████████████████ Dkt. 109-59 ██████████████



██████ does not bear on the time Take-Two's use commenced; ███████████████

███████████████████████████

████████████████████████████ *See* Dkt. 211-6. ████████████

██████████████████████████████████████

████████████████████ does not bear on the time Take-Two's use commenced; ████████

███████████████████████████████████

██████████████████████████ Dkt. 211-7. ██████████████

███████████████████████████████████████ does not bear

on the time Take-Two's use commenced; ██████████████████████████

████████████████████████████████████

████████████████████████ *See* Dkt. 211-8. ████████████

████████████████████████████████ does not bear on the time Take-Two's use

commenced; ██████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████[4]

## III.   MIL NO. 3 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING PURPOSE AND SCOPE OF PROJECTS AND AGREEMENTS

In addition to Plaintiff's third-party projects and agreements being irrelevant and likely to confuse the jury in their entirety, *see supra* 2–6, evidence as to their purpose and scope should be excluded from trial because, during his deposition, Plaintiff claimed privilege and blocked Take-

---

[4] Take-Two's exhibit list includes documents related to some of the purported releases and projects described herein. Take-Two may use them if the Court does not grant Take-Two's requested relief.

Two from taking discovery on such information.  Admitting the evidence now would cause unfair prejudice, which warrants exclusion.  Fed. R. Evid. 403; *see Duran v. City of Porterville*, No. 13 Civ. 370, 2015 WL 5598933, at *2 (E.D. Cal. Sept. 22, 2015) (privilege "cannot be waived as a matter of convenience at trial").

Discovery is permitted into ***any*** non-privileged, relevant facts.  A party that "fails to provide information . . . is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *Hardesty v. Kroger Co.*, No. 16 Civ. 298, 2022 WL 742847, at *4 (S.D. Ohio Mar. 11, 2022).  And privilege does not prevent disclosure of underlying facts, regardless of how Plaintiff learned them.  *See Little Hocking Water Ass'n v. E.I. Du Pont De Nemours & Co.*, No. 09 Civ. 1081, 2013 WL 753541, at *5 (S.D. Ohio. Feb. 26, 2013).

Here, Plaintiff repeatedly refused to answer ***factual*** questions about his personal, subjective understanding of the purpose and scope of his purported third-party projects and agreements, claiming attorney-client privilege.  For example, he refused to answer questions regarding the valuation of ████████████, claiming ██████████████████ ████████████████ Ex. A (Hayden 2d Tr.) 140:2–11.  He likewise refused to say ███████████████████████████████████████████████ ████████████. *Id.* 42:1–11, 108:6–15.  And when asked ██████████████ ███████████████████████████████, he again refused to answer. *Id.* 38:7–24 (██████████████████████), 39:5–15 (████████ ██████████████), 95:7–17 (████████████████████).  Plaintiff's refusal to answer these straightforward factual questions obstructed the discovery process and thwarted Take-Two's reasonable discovery efforts.  He should, therefore, be precluded from introducing

evidence as to these facts at trial.  To allow otherwise, after denying Take-Two the discovery to which it was entitled, would cause Take-Two manifest prejudice outweighing any relevance, warranting exclusion under Rule 403.

## IV.  MIL NO. 4 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S LICENSING OF OTHER WORKS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument concerning Take-Two's licensing of *different* content for *different* purposes than that at issue in this litigation (i.e., not tattoos on people's bodies).  Plaintiff has argued that Take-Two's licenses for certain content (including without limitation ███████████████████████ ███████████████████████████) shows a potential market for depicting the tattoos inked on Mr. James' body.  Dkt. 109 (Pl.'s 1st Opp. Summ. J.) 10 (arguing that Take-Two's depiction of the Asserted Tattoos "is no different than" its depiction of other content except that Take-Two has not paid Plaintiff); *see also* Dkt. 211-10 (Nov. 12, 2019 Email Agreement ███████████████████); Disc. Order 4.[5]  Not so.  This evidence is irrelevant, likely to confuse the jury, and unfairly prejudicial.  *See* Fed. R. Evid. 401–03.

Licenses for different content, with different market considerations, cannot show a potential market for licensing tattoos inked on people's bodies in video games.  *Supra* 3–4; *see Bill Graham*, 448 F.3d at 614; *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 91 (2d Cir. 2014).[6]  Such licenses do not relate to replicating a person's likeness, nor involve the personal situation of someone getting a tattoo inked on their body.  Further, some of these

---

[5] Even if Dr. Lenzo relied on such licenses, that does not make them admissible at trial.  *See Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728–29 (6th Cir. 1994) (evidence relied on by expert inadmissible as unfairly prejudicial).  Nor has the Court ruled that these licenses are admissible; it just held that (1) there is no market for licensing tattoos in video games and (2) Dr. Lenzo could opine based on the evidence he considered as to whether tattooists would be willing to license their tattoos in video games.  Dkt. 175 (Op. re Mot. Excld. Lenzo) 7–8.

[6] Plaintiff took the position that *Bill Graham* stands for the proposition that the fourth factor is not probative where defendant's purpose was different from the original.  Pl.'s 2d Opp. Mot. in Lim. 9.  Yet, that is the case here.

licenses involve **trademarks**, which implicate different laws than **copyrights** do, and which the average person is apt to confuse.  They thus are irrelevant and misleading.

This evidence also would be highly prejudicial to Take-Two.  The point that Plaintiff wants to argue is as clear as it is wrong: that the depiction of the Asserted Tattoos in *NBA 2K* "is no different" than ████████████████████████.  *See* Pl.'s 1st Opp. Summ. J. 10. Plaintiff clearly hopes that the jury will assume that because the use of **some** content in *NBA 2K* is licensed, then **all** content must be licensed.  And Plaintiff clearly hopes that the jury will be unable to distinguish between the different laws for trademarks and copyrights.[7]  The jury even could be confused into thinking that the mere existence of licenses for certain uses of certain content means that such licenses are **required** not only for those uses but for completely different uses of different content.  Plaintiff's argument is legally wrong and confusing.  As it would be unfairly prejudicial to allow Plaintiff to make it,[8] it should be excluded.  *See* Fed. R. Evid. 403.

## V.    MIL NO. 5 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT REGARDING OTHER VIDEO GAME COMPANIES' AGREEMENTS

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument regarding theoretical or speculative licensing of irrelevant content in video games other than *NBA 2K*.  Plaintiff's lawsuit is based on the *NBA 2K16–NBA 2K20* and *NBA 2K Mobile*.  Dkt. 33 (4th Am. Compl.).  Plaintiff asserts no claims against non–*NBA 2K* video games.  Plaintiff nonetheless intends to introduce evidence related to licensing in unaccused video games.  Pl.'s 2d Opp. Mot. in Lim. 12 (arguing such evidence is "clearly probative").  No such licenses have been produced in this case, and no witnesses with knowledge of them have been deposed.

---

[7] Moreover, merely seeking a license does not mean that the use would not be a fair use, or that a license even is required.  In *Google v. Oracle*, the defendant **had** sought a license, but the Supreme Court still found fair use as a matter of law.  141 S. Ct. at 1191, 1209; *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 593 (1994).

[8] Take-Two's exhibit list contains documents related to licensing content in *NBA 2K*, which it may use if the Court does not grant Take-Two's requested relief.  To be clear, however, Take-Two does not seek to exclude evidence of its NBA or NBPA agreements, which allow Take-Two to depict Mr. James' likeness and are therefore relevant.

Rank speculation that other companies *might* license certain content (of unknown kind, scope, or purpose) should be excluded as irrelevant.  *First*, as discussed above, licensing of different works for different purposes is irrelevant.  *See supra* 3, 10.  Plaintiff apparently intends to use speculation about other video game companies to suggest a market exists for the use at issue here.  For example, Dr. Lenzo contends that Electronic Arts "has license agreements with at least the Fédération Internationale de Football Association (FIFA) and the National Football League (NFL)."  Dkt. 97-3 (Lenzo Reb. Rpt.) ¶ 86.  Of course, it is not surprising that the NFL and FIFA would license content, such as their *trademarks*, for inclusion in video games.  That has nothing to do with the claims here or with tattoos that are part of Mr. James' likeness.  *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 n.8 (9th Cir. 1985) (affirming exclusion of evidence concerning "other Broadway shows" not at issue).

*Second*, beyond unsubstantiated hearsay, there is just speculation that other video game companies *might* license tattoos.  For example, Plaintiff's experts claimed that ██████████ ████████████████████████████████████████████████████████████████ Dkt. 211-11 (Lenzo Tr.) 274:17–19, or that they were ████████████████████████████ ███████████████████████████████████████████████ Dkt. 211-12 (Malkiewicz Tr.) 145:9–12.  Such ████████████ about these supposed licenses are inadmissible hearsay that are being offered for the truth of the matter asserted, and meet no hearsay exception.  The mere fact that an expert relies on them does not make them independently admissible.  *See supra* 10 n.5.  Moreover, they were not produced in this litigation.  Thus, to the extent they even exist (and there is no evidence that they do), their contents, including which rights were being licensed, are entirely unknown.

*Third*, neither of Plaintiff's experts disclosed this opinion in their reports.  This is not

surprising.[9]  Dr. Lenzo admitted he (1) ███████████████████ (2) *does not know*
whether any tattooist was paid to include tattoos they inked in *NFL Madden*, and (3) did not
include this information in his report because ████████████████████████
████████████████████  Dkt. 211-11 (Lenzo Tr.) 274:12–13, 274:20–25, 275:5–10
(emphasis added).  And Mr. Malkiewicz claimed he merely had ██████████████ but
not documentary support.  *See* Dkt. 211-12 (Malkiewicz Tr.) 146:8–11 (emphasis added).[10]

**Fourth**, there is a significant danger of unfair prejudice.  For one, baseless speculation
about what a different company might be doing about tattoos, particularly coming from a
purported expert, could lead jurors to believe that Take-Two should be taking that same (entirely
speculative) action.  For another, it would create confusing mini-trials regarding what, exactly,
other video game companies might be doing about unrelated content, like trademarks, which
"would distract from the central focus of the case" and is especially problematic as neither Dr.
Lenzo nor Mr. Malkiewicz cite support for their undisclosed opinions.  *United States v. Terry*,
No. 10 Cr. 390, 2011 WL 2149361, at *4 (N.D. Ohio May 31, 2011); *see supra* 6.  And allowing
Plaintiff to introduce unsubstantiated gargantuan licensing numbers (e.g., EA's alleged $1.5
billion in licensing fees), without context for what content the deals may have entailed or the
scope of rights involved, to convince the jury that Plaintiff should be paid similarly in this case,
would be unfairly prejudicial and thus warrants exclusion.  *See Douglas Dynamics, LLC v.
Buyers Prods. Co.*, No. 09 Civ. 261, 2014 WL 1350720, at *8 (W.D. Wis. Apr. 4, 2014) (sales
and profits unrelated to infringing articles prejudicial and likely to "artificially inflate damages").

## VI.  MIL NO. 6 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING PLAINTIFF'S OPINIONS ABOUT THE TATTOO INDUSTRY

---

[9] This is an independent basis for exclusion under Rule 26(a)(2)(B).  *See Parker Hannifin Corp. v. Std. Motor Prods., Inc.*, No. 19 Civ. 617, 2021 WL 5801850, at *1, 3 (N.D. Ohio Dec. 7, 2021).

[10] That Plaintiff's experts considered such speculative reports does not make them admissible.  *See supra* 10 n.5.

Take-Two respectfully moves *in limine* to exclude Plaintiff from offering testimony about the tattoo industry ***beyond his personal experiences***, including any opinions about the tattoo industry, the market for tattoos, common tattooing practices, the relationship between the tattoo industry and the art industry, or Take-Two's impression of such industries.

***First***, Plaintiff's opinions are akin to undisclosed expert testimony.  When a witness is offered to testify as to his opinions, his identity and the subject matter of the testimony must be disclosed under Rule 26(a)(2)(B).  *See Parker*, 2021 WL 5801850, at *1.  Despite not being disclosed as an expert, Plaintiff broadly declared that he ████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████.  Hayden Decl. ¶ 8 (emphasis added).  Such opinions were not disclosed and therefore should be excluded.

***Second***, Plaintiff may not offer his opinions under the guise of lay opinion testimony under Rule 701.  Lay witnesses may testify based on ***only*** their perception, not based on scientific, technical, or other specialized knowledge.  *See* Fed. R. Evid. 701.  Plaintiff's beliefs about the ████████████████████████████████████ Hayden Decl. ¶¶ 8, 11, are based on his speculation about the entire tattoo and art industries, not his perception. This is not allowed.  *See Auto Konnect, LLC v. BMW of N. Am., LLC*, 590 F. Supp. 3d 977, 984–85 (E.D. Mich. 2022) ("BMWNA's employees can testify under Rule 701 as to their own personal knowledge of BMWNA's practices" but not as to "the general automotive industry outside of BMWNA or other topics beyond their own perceptions").  Similarly, Plaintiff's declaration purports to offer legal conclusions regarding licensing in the tattoo industry, which this Court already determined was improper, even by a properly disclosed expert.  *Compare* Hayden Decl. ¶ 27 ████████████████████████████████████████████████

██████████████████████████████████████████████████, *with* Dkt. 150 (Op. Mot.
Excld. Jablonski) 6 (expert "cannot make the legal determinations of who owns the tattoos" and
rights to them).  Finally, any opinions of Plaintiff about the tattoo industry **as a whole** should
also be excluded because they are not based on factual evidence or personal knowledge.

    **Third**, Plaintiff's proposed testimony is irrelevant and unfairly prejudicial.  Plaintiff's
argumentative opinion that Take-Two has ██████████████████████████████████████
████████ is not relevant to whether Plaintiff possesses any rights in the tattoos on Mr. James'
body that are in *NBA 2K*.  Hayden Decl. ¶ 11; *see Gordon v. Royal Palm Real Est. Inv. Fund I,
LLLP*, No. 09 Civ. 11770, 2022 WL 1431837, at *3–5 (E.D. Mich. May 5, 2022) (excluding
evidence of alleged defamation as inflammatory, irrelevant, and prejudicial); *SPEX Techs. v.
Apricorn, Inc*, No. 16 Civ. 7349, 2020 WL 1289546, at *2 (C.D. Cal. Jan. 21, 2020) (excluding
"derogatory comments" on MIL as irrelevant and prejudicial).  Moreover, Plaintiff's broad and
unsupported statements about the industry (████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████████████ Hayden Decl. ¶ 11) should also be excluded as unfairly prejudicial.

## VII.   MIL NO. 7 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT OF ACTUAL DAMAGES

    Take-Two moves to preclude Plaintiff from seeking actual damages.  Pursuant to Rule
26(a)(1)(A)(iii), Plaintiff was required to provide "a computation of each category of damages
claimed" as well as "the documents or other evidentiary material . . . on which each computation
is based, including materials bearing on the nature and extent of injuries suffered."  When "a
party fails to provide information" required by Rule 26, "the party is not allowed to use that
information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is
harmless."  Fed. R. Civ. P. 37(c)(1); *see supra* 9.  Courts in this Circuit therefore regularly

exclude evidence of damages when a party fails to disclose a corresponding computation.  *E.g.*, *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 369 (6th Cir. 2010) (affirming exclusion of "evidence of lost-profits damages" where plaintiff failed to produce computation of damages); *Acuity Brands Lighting, Inc. v. Bickley*, No. 13 Civ. 366, 2015 WL 10551946, at *5 (E.D. Ky. Nov. 30, 2015) (recommending excluding damages where "Plaintiffs never provided a Rule-compliant computation"), *R&R adopted*, 2016 WL 1171541 (E.D. Ky. Mar. 24, 2016); *TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc.*, No. 11 Civ. 85, 2012 WL 2576367, at *4 (N.D. Ohio July 3, 2012) (granting MIL "to preclude defendants from presenting damage evidence as to 'lost profits'" where "defendants did not provide TCF with a computation of alleged lost profits in their initial Rule 26 disclosures" nor subsequently disclose a "'computation' of their alleged lost profits" in a timely discovery response).

Plaintiff has ***never*** disclosed the required computation of actual damages.  In his Rule 26 disclosures, under "Computation of Damages," Plaintiff stated that he "is entitled to either actual damages and profits under 17 U.S.C. § 504(b)" but "cannot calculate the amount of actual damages . . . without discovery."  Dkt. 211-13 (Pl.'s Initial Disclosures) 4.  Discovery closed in August 2021.  During his first deposition, Plaintiff could not identify ***any*** lost income or lost licensing opportunities from the alleged infringement, or "any facts that [he] believe[s] would justify a particular damages amount."  Dkt. 211-3 (Hayden 1st Tr.) 210:15–211:2, 212:11–16, 213:25–214:3.  Further, in response to an interrogatory asking Plaintiff to identify "any damage or lost revenue (both in dollars)" that resulted from the alleged infringement, Plaintiff merely contended that Take-Two "has harmed Hayden's ability to develop and profit from this market," identified documents with no explanation of how those documents were responsive, and did not compute actual damages.  Dkt. 211-14 (Pl.'s 2d Supp. Resp. Interrog. No. 14) 18–19.

16

Even when Take-Two previously filed motions *in limine* on this issue in August 2022 and April 2023, Plaintiff *still* refused to provide a calculation and simply asserted that the jury will have evidence of "what Take-Two has been willing to pay to license IP for use in its game" and "what Mr. Hayden has received for licensing his tattoos in the past."  Dkt. 191 (Pl.'s 1st Opp. Mot. in Lim.) 14; Pl.'s 2d Opp. Mot. in Lim. 15.  Yet, Plaintiff has never contended that his alleged actual damages are comparable to *any* amounts identified in *any* documents produced in this case, including any releases or licenses.  Nor did Plaintiff's experts compute actual damages, either.  Dkt. 211-12 (Malkiewicz Dep. Tr.) 133:22–134:4 ███████████████████████████████████████████████████████████████████████████; Dkt. 211-11 (Lenzo Dep. Tr.) 34:3–9 ████ ███████████████████████████████████████████████.

The time to disclose an actual damages computation has long passed.  Take-Two has had no opportunity to take discovery on any such computation because Plaintiff never provided one.  The appropriate remedy is exclusion.  *See TCF*, 2012 WL 2576367, at *4.

## VIII.  MIL NO. 8 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING THE FOUR TATTOOS DISMISSED FROM THIS CASE

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument concerning the four tattoos dismissed from this case, including any evidence, testimony, or argument regarding Danny Green or Tristan Thompson.[11]  In view of the Court's January 24, 2024 summary judgment order dismissing Plaintiff's infringement claims over these four tattoos, such evidence is irrelevant, likely to confuse the jury, unfairly prejudicial, and likely to complicate a simplified trial.  Exclusion is therefore warranted.  Fed. R. Evid. 401–03.

Courts regularly exclude evidence that relates to only dismissed claims.  *Yerkes v. Ohio*

---

[11] Take-Two's deposition designations include testimony related to the four dismissed tattoos, which it may use if the Court does not grant its requested relief.  Should the Court deny this motion, Take-Two also may use deposition testimony by Messrs. Green and Thompson that was previously designated.  *See* Dkt. 215 at 33; 215-1.

*St. Highway Patrol*, No. 19 Civ. 2047, 2023 WL 4633896, at *2 (S.D. Ohio July 20, 2023) (excluding evidence related to dismissed claims as irrelevant); *Alexander v. Hoffman*, No. 16 Civ. 12069, 2019 WL 4640281, at *2 (E.D. Mich. Sept. 24, 2019) ("[E]vidence relating only to previously dismissed claims will be excluded on relevance grounds to avoid undue delay and wasting time.").  The Court's Order dismissing four of Plaintiff's infringement claims, including his claims as to all tattoos on Messrs. Green and Thompson's bodies, left just two tattoos on Mr. James' body for trial.  Messrs. Green and Thompson have no personal knowledge as to these tattoos, and all evidence related to these two NBA players is now irrelevant.  Similarly, evidence that relates solely to the dismissed Lion tattoo on Mr. James is irrelevant, too.

Moreover, admitting evidence of dismissed tattoos is likely to mislead the jury and thereby unfairly prejudice Take-Two, further warranting exclusion.  *See Pietrowski v. Merchants and Med. Credit Corp.*, No. 06 Civ. 12718, 2007 WL 3036717, at *1 (E.D. Mich. Oct. 16, 2007) (excluding testimony of dismissed damages claim as "irrelevant and unfairly prejudicial to Defendant" under Fed. R. Evid. 401, 403).  For example, tripling the amount of tattoos might lead the jury to misunderstand the case's scope as three times its proper size and potentially impose what would amount to treble damages where no such remedy is available.  And it might confuse the jury as to Take-Two's license defense, for which only the circumstances of the Asserted Tattoos' creation are relevant.  *See supra* 4 (Take-Two's license defense is based on "Plaintiff's intent concerning *this* player and *these* works").

Plaintiff's past statements to this Court show that he apparently agrees that such evidence should be excluded.  In a prior motion *in limine*, Plaintiff specifically argued that evidence concerning tattoos that "are not at issue in this case" should be excluded.  Dkt. 216 (Pl.'s 2d Mot. in Lim.) 4.  He also previously proposed that Messrs. Green and Thompson would be trial

witnesses (through deposition) only regarding the "Creation of Asserted Tattoos," which are now dismissed and thus not at issue.  *See* Dkt 213 (Pl.'s 2d Trial Brief) 13.

Proving any facts particular to these dismissed and irrelevant tattoos could cause an improperly inflated damages award or an improperly denied defense, would be a waste of time, and would confuse the jury.  *See Yerkes*, 2023 WL 4633896, at *11 (excluding evidence related to previously dismissed claims where party argued it was irrelevant and "could lead the jury to reach improper conclusions about the claims being tried").  The Court dismissed four tattoos.  It also should prevent their reintroduction.  Fed. R. Evid. 401–03.

## IX.  MIL NO. 9 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT ABOUT PLAINTIFF'S UNDISCLOSED COMMUNICATIONS WITH MR. JAMES

Take-Two respectfully moves *in limine* to exclude evidence, testimony, or argument concerning any alleged conversations between Plaintiff and Mr. James because they (1) were not produced; and (2) are inadmissible hearsay, meeting no exception under Rules 801–804.[12]

Take-Two sought discovery of Plaintiff's communications with Mr. James in multiple ways.  It served an interrogatory seeking information on communications with Mr. James "CONCERNING the ASSERTED WORKS."  Dkt. 211-15 (Pl.'s Resp. Interrog. No. 4).  It requested copies of any communications.  Dkt. 211-16 (Defs.' RFP Nos. 33–35).  And it asked about them during Plaintiff's deposition.  Dkt. 211-3 (Hayden 1st. Tr.) 106:4–6.  Plaintiff testified that he had "produced all communications," *id.*, but none were produced.  He also testified that he never communicated with Mr. James about this lawsuit or his alleged projects or agreements.  *E.g.*, *Id.* 217:15–18, 217:22–25; Ex. A (Hayden 2d Tr.) 29:14–16; 154:25–155:3.

Having avoided discovery, Plaintiff should not be permitted to introduce these and other

---

[12] Take-Two is seeking exclusion of any evidence specific to Messrs. Green and Thompson.  *See supra* 17.  Should the Court deny that motion, this Motion would exclude conversations between Plaintiff and all of the NBA Players.

conversations for the first time at trial.  *See supra* 9.  Any attempt to introduce evidence of undisclosed communications would be a classic example of the prejudicial trial-by-ambush tactic that Rule 37 exists to prevent.  *See Hardesty*, 2022 WL 742847, at *4.  Nor could this be cured by cross-examination.  *Silitonga v. Kentucky St. Univ.*, No. 16 Civ. 29, 2018 WL 3969951, at *4 (E.D. Ky. Aug. 20, 2018) ("Cross-examination at trial also would not sufficiently cure the surprise or portend a smooth trial" by forcing prejudiced party "to wait until trial to ask question[s] and get answers to which they were earlier entitled.").

## X.   MIL NO. 10 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT CONCERNING TAKE-TWO'S REVENUE FROM VIRTUAL CURRENCY

Take-Two moves to exclude evidence, testimony, or argument of its revenues from sales of virtual currency ("VC"), as it is irrelevant and unfairly prejudicial.  *See* Fed. R. Evid. 401–03.  Although this Court did not exclude Mr. Malkiewicz's opinions about VC under Rule 702, *see* Dkt. 183, it did not address the relevance and unfair prejudice of this evidence under Rules 401–03.  VC should be excluded now.  A plaintiff seeking profits must show some "reasonable," "non-speculative" link between profit stream and infringement.  *Satija v. Permanent Gen. Assur. Corp. of Ohio*, No. 13 Civ. 82, 2014 WL 1664557, at *6 (N.D. Ohio Apr. 25, 2014) (quotation omitted).  VC is something that *NBA 2K* users can earn or purchase and use to unlock additional features, such as player skills and attributes.  Dkt. 99-3 (Malkiewicz Tr.) 188:9–12, 194:1–3, 195:25–196:6.  But the Asserted Tattoos already are in *NBA 2K* before any VC is purchased.  *Id.* 203:9–14.  VC further (a) does not depict the Asserted Tattoos, *id.* 204:11–17; (b) cannot be used to purchase them, *id.* 189:8–11; and (c) cannot be used to see them more clearly.  *Id.* 201:16–202:2.  As there is no reasonable relationship, testimony about VC is not relevant.  Allowing it to be introduced also would be unfairly prejudicial—it inflates Take-Two's revenue by more than 60%.  *See* Dkt. 99-4 (Malkiewicz Rpt.) Sch. 3 (including estimated "Recurrent" (VC) revenues).

Dated:  February 29, 2024

/s/ Dale M. Cendali

Dale M. Cendali (*pro hac vice*)
Joshua L. Simmons (*pro hac vice*)
Christopher T. Ilardi (*pro hac vice*)
Joshua C. Berlowitz (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
chris.ilardi@kirkland.com
josh.berlowitz@kirkland.com

Miranda D. Means (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

Yungmoon Chang (*pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4359
yungmoon.chang@kirkland.com

Matthew J. Cavanagh (0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Fax: 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Attorneys for Take-Two 2K Games, Inc. and
Take-Two Interactive Software, Inc.*