## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JAMES HAYDEN,                              )      Case No. 1:17-cv-02635
                                           )
            Plaintiff,              )      Judge Christopher A. Boyko
                                           )
     vs.                               )
                                           )
2K GAMES, INC. and TAKE-TWO                )
INTERACTIVE SOFTWARE, INC.,                )
                                           )
          Defendants.               )

## PLAINTIFF'S AMENDED TRIAL BRIEF

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 4

III.  DISCUSSION OF CONTROLLING LAW ......................................................... 6

  A.  Copyright Infringement ................................................................................ 6

    1.   Hayden owns valid copyrights in the Gloria and Stars Tattoos ...................... 7

    2.   Take-Two copied the all the elements of the Tattoos .................................... 8

  B.  Fair Use ........................................................................................................ 9

  C.  Implied License ............................................................................................ 14

  D.  *De Minimis* Use ............................................................................................ 15

  E.  Waiver .......................................................................................................... 16

  F.  Damages ....................................................................................................... 17

IV.   PROPOSED WITNESS LIST .......................................................................... 18

V.    EXHIBIT INDEX ............................................................................................ 19

VI.   DISCUSSION OF EVIDENTIARY ISSUES ................................................... 19

  A.  Burden of Proof in Establishing Take-Two's Profits ..................................... 20

  B.  Declaration Testimony of LeBron James, Danny Green, and Tristan Thompson ............ 21

  C.  Third-Party Declarations and Deposition Testimony from Other Litigations .................. 21

  D.  This Court's ruling dismissing the Lion, Brother's Keeper, Fire, and Scroll tattoos ........ 22

  E.  Hayden's Own Tattoos .................................................................................. 22

VII.  ESTIMATE OF TRIAL LENGTH .................................................................... 23

VIII. PROPOSED VOIR DIRE QUESTIONS ............................................................ 23

IX.   JURY INSTRUCTIONS .................................................................................. 23

X.    SPECIAL INTERROGATORIES AND VERDICT FORMS .............................. 23

# TABLE OF AUTHORITIES

## Cases

*16 Casa Duse, LLC v. Merkin*, 791 F.3d 247 (2d Cir. 2015) ........................................................ 8

*Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000) ................................................................ 8

*Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812 (S.D. Ill. 2020) ...... 11, 16

*Alexander v. Take-Two Interactive Software, Inc.*, No. 18-cv-966-SMY (S.D. Ill.) ..................... 3

*American Geophysical Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994) ................................. 14

*Andy Warhol Foundation for Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) ..................... 11

*Balsley v. LFP, Inc.*, 691 F.3d 747 (6th Cir. 2012) ............................................................. passim

*Bell v. Willmott Storage Services, LLC*, 12 F.4th 1065 (9th Cir. 2021) ...................................... 16

*Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470 (6th Cir. 2007) ..................... 17, 18

*Brod v. Gen. Publ'g Grp., Inc.*, 32 F. Appx. 231 (9th Cir. 2002) ................................................. 8

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ........................................................ 3

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ................................. 1, 2, 8

*Crispen v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086 (C.D. Cal. 2011) .............................. 15

*Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714 (E.D. Mich. 2013) ............... 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ............................................. 2, 7

*FenF, LLC v. Healio Health Inc.*, Case No. 5:08CV404, 2009 WL 10688713 (N.D. Ohio
Sep. 4, 2009) ................................................................................................................... 14

*Gordon v. Nextel Communications and Mullen Advertising, Inc.*, 345 F.3d 922 (6th Cir.
2003) ......................................................................................................................... 15, 16

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985) ........................ 12, 13

*Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998) ................................................................. 14, 15

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) ......................................................... 10

*Malibu Media, LLC v. Pontello*, Case No. 13-12197, 2013 WL 12180709 (E.D. Mich.
Nov. 19, 2013) ................................................................................................................. 14

*Murphy v. Lazarev*, 589 Fed. Appx. 757 (6th Cir. 2014) ......................................................... 15

*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) ......................................... 12

*Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381 (6th Cir.
1996) ......................................................................................................................... passim

*QSI-Fostoria D.C., LLC v. General Elec. Capital Business Asset Funding Corp.*, 389
Fed. Appx. 480 (6th Cir. 2010) ......................................................................................... 16

*R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262 (6th Cir. 2010) .................................... 8

*Robert L. Stark Enterprises, Inc. v. Neptune Design Group, LLC*, No. 1:16 CV 264, 2017
   WL 1345195 (N.D. Ohio Apr. 12, 2017) ................................................................. 15

*Smith v. Thomas*, 911 F.3d 378 (6th Cir. 2018) ......................................................... 6, 18

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ..................... 14

*Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004) ...................................... 7

*Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574 (6th Cir. 2007) ........ 10, 12, 13

**Statutes**

17 U.S.C. § 106 ............................................................................................................. 14

17 U.S.C. § 107 ..................................................................................................... 10, 13

17 U.S.C. § 504(b) ................................................................................................... 17, 20

Pursuant to Judge Boyko's standing Trial Order (¶ 1), Plaintiff, James (Jimmy) Hayden ("Hayden") submits this Trial Brief.

## I.  INTRODUCTION

In 2007 and 2008, Jimmy Hayden, a famous tattoo artist from Cleveland, Ohio, created original tattoos, inked them on LeBron James, then later obtained copyright registrations for them. After learning that the Defendants, Take-Two Interactive Software, Inc. and 2K Games, Inc. (collectively, "Take-Two"), were recreating digital copies of his tattoos in their *NBA 2K* video games without his permission and after Take-Two ignored Hayden's attempts to amicably resolve the dispute, he filed this lawsuit. Hayden's ownership of the copyrights in and Take-Two's copying of two of those tattoos ("Gloria" and "Stars," collectively, the "Tattoos") has been adjudicated. The trial of what remains of this dispute need only address Take-Two's defenses (fair use, *de minimis* use, implied license, and waiver) and Hayden's damages from Take-Two's infringements.

Take-Two's April 20 Trial Brief, proposed jury instructions, and proposed verdict form[1] attempt to rehash issues that this Court has decided, muddle the law, and unnecessarily multiply the issues for trial. ***First***, Take-Two appears to contest (1) whether Hayden is the author of the Tattoos and (2) whether Take-Two's reproductions are substantially similar to the original elements in Hayden's Tattoos. But Hayden unquestionably authored the Tattoos by himself. The Supreme Court has rejected Take-Two's argument that LeBron James is an author because he may have provided input or ideas for the subject matter of the Tattoos. *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737–751 (1989). Unless the work is a "work for hire," which the Tattoos are not (Take-Two has never asserted that they are), "the author is the

---

[1] Hayden presumes that Take-Two's supplemental pre-trial filings will include similar if not the same problematic jury instructions and verdict form.

party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id.* In this case, authorship is straightforward—not a fact-intensive inquiry that requires a jury finding. Take-Two has never disputed that Hayden, and Hayden alone, inked the Tattoos on LeBron James. And Take-Two did not contest authorship when Hayden moved for summary judgment of ownership—that issue was decided in Hayden's favor. (Dkt. #193, pp. 8–9.) This Court ruled that Hayden's "works are original and entitled to protection" which means that the Tattoos "have been 'independently created by the author[.]'" (*Id., quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345-46 (1991).) Take-Two is trying to walk back this Court's Order and give itself another out. There is no issue of authorship or ownership left for a jury to decide.

Similarly, Take-Two attempts to re-litigate its copying of the Tattoos, which has also been decided for Plaintiff by this Court. (Dkt. #193, p. 9.) Take-Two's proposed substantial similarity test also attempts to give itself another try at contesting the Tattoos' originality (Take-Two's argument can only prevail if there are *zero* original elements to Hayden's Tattoos). But the substantial similarity test is wholly unnecessary because Take-Two admits to copying the Tattoos in their entirety (i.e., direct evidence of copying). (*See id.*)[2] Letting Take-Two re-try its originality arguments before the jury is improper.

***Second***, Take-Two's proposed verdict form[3] requires the jurors to go through a meandering maze of *thirty questions*, asking about issues that are irrelevant to the case or already decided by this Court. This extensive verdict form is confusing, unnecessary, and clearly meant to prejudice Hayden.  For perspective, in a very similar 2022 case involving Take-Two

---

[2] This Court has already rejected Take-Two's argument, especially considering the low bar required to establish originality. *Id.*

[3] This is based on Take-Two's 4-20-23 proposed verdict form (Dkt. #213-4), which Hayden anticipates will be substantially similar to its 2-29-24 proposed verdict form.

infringing a tattoo artist's copyrights in a wrestling video game, the verdict form consisted of a mere three questions.[4] *See Alexander v. Take-Two Interactive Software, Inc.*, No. 18-cv-966-SMY (S.D. Ill.) (Dkt. #298). For example, Take-Two wants to ask the jurors to decide whether "the expressive value of the Tattoos Plaintiff inked is minimized by combining them with other sounds and visual elements." (Dkt. #215-4, Question 7.) But this Court already held that "Plaintiff's work is, without question, expressive and creative rather than factual and informational." (Dkt. #193, p. 14.) There is nothing left for the jury to decide.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994) (regarding second fair-use factor inquiring into the nature of the work). Take-Two also wants to ask the jurors, "Do you find that the ordinary purchaser buys *NBA 2K* for the Tattoos Plaintiff inked" (Dkt. #215-4, Question 9), but it is unclear how this is relevant or how a juror is to determine an "ordinary purchaser." As explained *infra* at pages 6–17, the factual issues left for the jury to decide are narrow. Hayden's proposed Special Interrogatories and Verdict Form, on the other hand, narrowly track this Court's Order (Dkt. #193) and address the issues that remain in this case. Take-Two's 30-question verdict form aims to obfuscate issues and confuse jurors.

This trial should be limited to (1) trying Take-Two's defenses (fair use, *de minimis* use, implied license, and waiver, and (2) Hayden's damages. Take-Two's attempt to expand and complicate this case for trial should be rejected.

---

[4] The verdict form in *Alexander* consisted of three questions: (1) As to the five tattoos in question, do you find Defendants have proven that their use constituted fair use? (2) As to the five tattoos in question, what is the dollar amount of actual losses, if any, that you find that Plaintiff is entitled to recover as a result of Defendants' use? (3) As to the five tattoos in question, what is the dollar amount, if any, of Defendants' profits that you find is attributable to their use? *See Alexander v. Take-Two Interactive Software, Inc.*, No. 18-cv-966-SMY (S.D. Ill.) (Dkt. #298).

## II.    STATEMENT OF FACTS

Jimmy Hayden is a nationally renowned artist, known particularly for his tattoo art. People and companies seek him out from across the entire country, traveling to him in Cleveland and even flying him to places throughout the United States, to create and display his tattoo art. This includes many NBA players, including LeBron James. In this copyright action, Hayden has asserted that Defendants infringe copyrights he owns in the Tattoos that he created and inked on LeBron James, for which he has procured copyright registrations from the US Copyright Office.

The Defendants, Take-Two Interactive Software, Inc. and 2K Games, Inc. (collectively, "Take-Two"), indisputably copied and continue to copy the Tattoos verbatim in their *NBA 2K* video games without Hayden's permission. After learning this, Hayden reached out to Defendants, but they ignored him. He then filed the instant action. Evidence will show that Take-Two knew it was infringing Hayden's Tattoos and was admittedly concerned that it could not get away with it forever.

This Court granted in part Hayden's Motion for Partial Summary Judgment, finding that (1) Hayden's "works are original and entitled to protection" and (2) Take-Two's conduct "constitutes factual copying[.]" (Summ. J. Order, Dkt. # 193, p. 9.) Accordingly, "[n]ow the burden shifts to Defendants," and the only issues left for trial are (1) "whether there is actionable copying in light of their defenses" (*id.*) and (2) if so, the measure of damages. Take-Two's defenses of *de minimis* use, fair use, implied license and waiver, and the measure of Hayden's damages raise factual issues for the jury to decide.

At the Parties' March 30, 2023 Status Conference, this Court indicated that because fair use is a mixed question of law and fact, the Court will defer certain factual disputes to the jury,

4

and the Court will make the ultimate legal determination of fair use. In this Court's summary judgement order, it made the following findings related to fair use:

1. "It is undisputed that Defendants' purpose in developing and marketing the NBA 2K video games is commercial; so, the use of the Tattoos in the games is commercial." (*Id.* at p. 13.)

2. "Plaintiff's work is, without question, expressive and creative rather than factual and informational." (*Id.* at 14.)

3. "The Tattoos are used in their entirety[.]" (*Id.*)

In light of these findings and for the reasons set forth in the following Discussion of Controlling Law, Hayden believes the jury should make the following determinations related to fair use:

1. In assessing the purpose and character of Take-Two's use of the copyrighted works, was its copying transformative?

2. If Take-Two's copying was transformative, was such transformation more consequential to the purpose and character of its use than Take-Two's commercial purpose?

3. Is there an existing or potential market for licensing the Tattoos?

4. If so, has Take-Two's unauthorized copying harmed the existing or potential market for licensing the Tattoos?

Hayden will present evidence demonstrating that Take-Two's copying was verbatim, *not* "transformative," and, in any event, Take-Two's Court-held *commercial* purpose outweighs any purported "transformation" of the Tattoos in the Accused Games. Hayden will also present evidence demonstrating that there is an existing market for licensing the Tattoos and that Take-

Two's unauthorized copying has harmed that market. Ultimately, Hayden will present evidence that, along with the Court's prior findings, will preclude a finding of fair use as a matter of law.

Hayden will also present evidence establishing that Take-Two's verbatim copying of the Tattoos in their entirety is visible and ubiquitous throughout the gameplay of the Accused Games, precluding Take-Two's claim that its copying is *de minimis*. Further, Hayden will present evidence demonstrating that he had *no* intention of authorizing a third-party video game maker to recreate his Tattoos when he created and inked the Tattoos, refuting Take-Two's claim that its copying was somehow authorized. Finally, Hayden will present evidence that he never intentionally relinquished his copyright rights in his Tattoos.

Take-Two has profited immensely from the NBA 2K games at issue in this case that contain verbatim copies of the Tattoos.[5] Hayden is seeking damages under 17 U.S.C. § 504 in the form of Take-Two's profits. Hayden will establish at trial Take-Two's gross revenue for the Accused Games and rebut Take-Two's implausible claims that *none* of its enormous profits are attributable to its illicit copying. In the alternative, Hayden reserves his rights to elect statutory damages before final judgment pursuant to 17 U.S.C. § 504(c)(1). *See Smith v. Thomas*, 911 F.3d 378, 382 (6th Cir. 2018) ("plaintiffs are entitled to simultaneously seek actual damages and statutory damages in the alternative"). Hayden also reserves his right to seek attorney's fees under 17 U.S.C. § 505.

## III.    DISCUSSION OF CONTROLLING LAW

### A.  Copyright Infringement

To establish copyright infringement, Mr. Hayden must prove, "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Stromback v.*

---

[5] The NBA 2K games at issue ("Accused Games") are NBA 2K16, NBA 2K17, NBA 2K18, NBA 2K19, NBA 2K20, and NBA 2K Mobile.

*New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (*citing Feist Publ'ns, Inc. v. Rural Tel.*

*Serv. Co.*, 499 U.S. 340, 361 (1991)). Neither of these issues should go to the jury.

>    1.  *Hayden owns valid copyrights in the Gloria and Stars Tattoos.*

Take-Two has no legitimate grounds to contest Hayden's ownership of valid copyrights

in the Gloria and Stars Tattoos.[6] In its April 20 Amended Trial Brief (Dkt. #215, p. 11), Take-

Two appears to contest the presumption of validity as it relates to the Gloria and Stars Tattoos on

the grounds that "the presumption of validity has been rebutted because the Tattoos . . . consisted

of common *scenes-a-faire* elements" and that he "did not author the Tattoos, as he inked them at

the direction and according to the instructions of [LeBron James]." (Dkt. #215, p. 11.) But the

Court has already correctly rejected these arguments in recognizing that works like the Tattoos

"can be original, even if… not novel." (Dkt. #193, p. 8, *citing Feist*, 499 U.S. at 345.)

As outlined in further detail in Hayden's summary judgment reply brief (Dkt. #139, pp.

8–12), Take-Two's *scenes-a-faire* argument misapplies the law. The *scenes-a-faire* doctrine does

not preclude particular expressions of original authorship in so-called "common" elements. (*See

id.*) The *scenes-a-faire* doctrine is indeed irrelevant where the infringer copies the particular

copyrighted expression identically. (*See id.*) Take-Two's argument is wrong as a matter of law

and would preclude original authorship in almost every artistic subject matter (for example,

depictions of lions, no matter how expressive, original, or artistic, would be uncopyrightable

because they are "common trope[s]" not only in tattooing, but a whole host of artistic endeavors,

including painting, drawing, photography, etc.). This is incorrect as a matter of law. Hayden's

particular expression of a lion (as an element in the Goria Tattoo) and stars (as elements in the

---

[6] Take-Two's arguments related to the validity of the Lion, Brother's Keeper, Fire, and Scroll tattoos have been resolved and those works are no longer at issue in the case.

Stars Tattoo) are "original and entitled to protection," as this Court correctly held. (Dkt. #193, p. 9.)

Take-Two's purported authorship argument also fails as a matter of law and should not go to the jury. The Supreme Court has held that "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737–751 (1989) (rejecting argument that the party "having right to specify the characteristics of the product desired" is the author). There is no dispute that Hayden alone inked the Tattoos on LeBron James. *At most*, James had mere ideas about what he wanted inked and hired Hayden, a skilled artist, to translate the idea into a fixed, tangible expression. As a matter of law, that makes Hayden the sole author.[7] *Id.*

### 2. *Take-Two copied the all the elements of the Tattoos.*

Take-Two's suggestion that Hayden must prove at trial substantial similarity between the Tattoos and the Accused Games, element-by-element, is nonsensical and simply meant to complicate what is a straightforward, settled issue. Take-Two admits to copying both Tattoos in full and identically. This makes any substantial similarity assessment unnecessary. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 274 (6th Cir. 2010) (holding that substantial similarity test is only applicable where there is no direct evidence of copying).

---

[7] The cases Take-Two cites in its Amended Trial Brief (Dkt. #215, p. 9) are inapplicable here. Each case, *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 260 (2d Cir. 2015), *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000), and *Brod v. Gen. Publ'g Grp., Inc.*, 32 F. Appx. 231, 235 (9th Cir. 2002), involve creation of movies or photographs, where the act of fixing an idea in a tangible medium is less straightforward and involve considerations unique to those artforms. Hayden's Tattoos are much more akin to the sculpture at issue in *Community for Creative Non-Violence*, 490 U.S. at 730. There, an organization hired a sculptor and made "suggestions and directions as to the sculpture's configuration and appearance," which were mostly accepted by the sculptor, yet the sculptor was found to be the sole author. *Id.*

Even setting that critical legal error aside, Take-Two's argument still fails. Because Take-Two admits that it copied every element of the Tattoos, it necessarily copied *the protectable elements* of the Tattoos. In other words, Take-Two's argument can only prevail if the Tattoos have *zero* original, protectible elements, making Take-Two's argument a simple rehash of its prior attack on the Tattoos' originality. (*See* Dkt. #112, pp. 6–11.) But this Court already correctly rejected that argument. (*See* Dkt. #193, pp. 8–9.) The Court unambiguously found the Tattoos original:

> The Supreme Court has instructed that a work can be original, even if it is not "novel." The level of creativity required for originality is "extremely low" and "even a slight amount will suffice." *Feist*, 499 U.S. at 345. "The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Id.*

> With that guidance in mind, the Court finds that Plaintiff's works are original and entitled to protection.

(*Id.*) This Court correctly applied the very low standard for originality under *Feist* and found Hayden's Tattoos to be original. Hayden's Tattoos indeed far surpass the low bar in *Feist*. Originality should not go to the jury—it is a settled issue.[8]

The only remaining issues for trial are Take-Two's defenses and Hayden's damages.

### B.  Fair Use

Take-Two claims that its copying falls under the "fair use" exception. Take-Two bears the burden of proving this defense. *Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, 1390 fn. 5 (6th Cir. 1996). The Copyright Statute created the "fair use" exception to "preserve the potential future use of artistic works for purposes of teaching, research, criticism, and news reporting." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir.

---

[8] Take-Two's cited cases in its Amended Trial Brief (Dkt. #215, p. 12) should carry little weight. None of these cases involve identical, admitted copying in full, where the substantial similarity test is wholly unnecessary.

2003); 17 U.S.C. § 107 ("criticism, comment, news reporting, teaching . . ., scholarship, or research"). In determining fair use, the Copyright Act (§ 107) provides four factors that courts are to consider:

1. The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2. The nature of the copyrighted work;

3. The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4. The effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

In assessing the ***first factor***, courts look to whether the infringing work is "transformative" and whether it is for "commercial or noncommercial purposes." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 582 (6th Cir. 2007). Where the purpose of copying is to "profit from the exploitation of the copyrighted material without paying the customary price," the *Sixth Circuit routinely finds no fair use. Balsley v. LFP, Inc.*, 691 F.3d 747, 758 (6th Cir. 2012); *see also, e.g.*, *Zomba*, 491 F.3d at 582 and *Princeton*, 99 F.3d at 1383 ("commercial exploitation of the copyrighted materials did not constitute fair use"). To be transformative, the new work must "add[] something new, with a further purpose or different character, altering the first with new expression, meaning or message[.]" *Zomba*, 491 F.3d at 582 (*quoting Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). Verbatim or facsimile copies of a work, conversely, "add[] nothing new to the original and accordingly ha[ve] virtually no transformative value." *Id.* at 582; *see also Princeton*, 99 F.3d at 1389 and *Balsley*, 691 F.3d at 759.  As this Court may recall, even an artistic adaptation of a photo of the artist, Prince, which

"crops, flattens, traces, and colors the [original] photo" and had an alleged different purpose of "comment[ing] on the 'dehumanizing nature' and 'effects' of celebrity[,]" was recently held by the Supreme Court to be insufficiently transformative to tilt the first fair use factor in favor of the Warhol Foundation's commercial use in copying same. *See Andy Warhol Foundation for Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 522, 546–48 (2023). *A fortiotri*, Defendants here were admittedly *striving to replicate the Asserted Tattoos as exactly as possible.* (Dkt. # 193, p. 9.) "Where 'an original work is merely retransmitted in a different medium' . . . the work is not 'transformative.'" *Balsley*, 691 F.3d at 579. Copying Hayden's Tattoos "might have been helpful to [achieve Take-Two's alleged purpose] . . . [b]ut that does not suffice under the first factor." *Id.* at 547–48. *Warhol*, 598 U.S. at 546–48.

As to this factor, this Court has already found "the use of the Tattoos in the games is commercial." (Dkt. # 193, p. 13.) The Court found factual disputes and deferred findings as to the following two questions to the jury: "whether—or to what extent—Defendants' use is transformative and what weight should be accorded to commercialism." (*Id.*) Accordingly, Mr. Hayden has proposed jury instructions to determine those factual disputes.

In assessing the **second factor**, courts must evaluate "the extent to which [the work] is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination[.]" *Balsley*, 691 F.3d at 759. In evaluating the second fair use factor, at least one court, assessing facts very similar to this case, has found that "[t]he art of creating a tattoo naturally entails creative and expressive efforts[,]". *Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812, 822 (S.D. Ill. 2020).

As to this factor, this Court has already found that "Plaintiff's work is, without question, expressive and creative rather than factual and informational" and that "[t]his aspect weighs in

Plaintiff's favor." (Dkt. # 193, p. 14.) The Court further held that "publication favors Defendants' position." (*Id.*) To the extent the Court intended to allow the jury to weigh publication against the expressive and creative nature in determining whether this factor weighs in favor or against fair use, this would be clear legal error. Publication is only considered when the plaintiff's right of *first* publication is implicated. *Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012) ("The artist's right of first publication does not apply in this case, so we discuss only whether the work was factual or creative.") (*citing Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000)); *see also Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985) ("Courts . . . consider[] two aspects of the work in evaluating this factor: first, the extent to which it is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination, and second, whether it is unpublished, in which case the right of first publication is implicated.") In this case, accepting *arguendo* the Court's finding that the works were published, the only relevant issue is whether the Tattoos are creative. If the Tattoos were found *unpublished*, as Hayden submits, this would weigh *against* a fair use finding as a matter of law. Because this Court has found that they are published, there is nothing left for the jury to decide, and this factor should be found to weigh against fair use as a matter of law considering the Court ruled that the Tattoos are expressive and creative. Accordingly, Mr. Hayden has not submitted jury instructions related to the nature of the works and submits that the jury should not be asked or permitted to find on that factor.

In assessing the ***third factor***, the more of what is taken, "the greater the affront to the interests of the copyright owner, and the less likely that a taking will qualify as a fair use." *Zomba*, 491 F.3d at 583; *see also Princeton*, 99 F.3d at 1389. "[C]opying an entire work militates against a finding of fair use." *Balsley*, 691 F.3d at 760.

As to this factor, this Court has already found that "[t]he Tattoos are used in their entirety[.]" (Dkt. # 193, p. 14.) The Court, however, also found that "the degree of observability is up to the jury, as is the importance of their use to the video game as a whole." (*Id.*) The degree of observability and the importance of their use to the video game as a whole are not appropriate considerations for this fair use factor and it would be legal error to submit same to the jury. Mr. Hayden is unaware of any controlling authority that permits this consideration in fair use analysis.[9] Rather, the Sixth Circuit case law is unequivocal that the pertinent consideration is how much of the *copyrighted work* is copied. *See Princeton Univ. Press v. Michigan Doc. Services, Inc.*, 99 F.3d 1381, 1389 (6th Cir. 1996); *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 583 (6th Cir. 2007); *Balsley v. LFP, Inc.*, 691 F.3d 747, 760 (6th Cir. 2012). The statutory language also clearly limits this analysis to the "amount and substantiality of *the portion used in relation to the copyrighted work as a whole*." 17 U.S.C. § 107 (emphasis added). The jury should not be permitted to consider "the degree of observability and the importance of their use to the video game as a whole" in determining whether this factor weighs for or against fair use. Because this Court has already found that the Tattoos were copied "in their entirety," this factor should weigh against fair use as a matter of law. Accordingly, Mr. Hayden has not submitted jury instructions as to this fair use factor.

In assessing the **fourth factor**, the court must evaluate whether the copying, should it become "widespread, [] would adversely affect the potential market for the copyrighted work." *Princeton*, 99 F.3d at 1386 (*quoting Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 568 (1985)). Because Take-Two's use is indisputably commercial, it is Take-Two's burden to prove its copying does not harm the potential market for Hayden's tattoos. *Id.* at 1385.

---

[9] The degree of observability may be pertinent to the defense of *de minimis* use. *See infra.*

"[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Balsley*, 691 F.3d at 760 (*quoting Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)). In addition, where "the copyright holder clearly does have an interest in exploiting a licensing market—and especially where the copyright holder has actually succeeded in doing so—'it is appropriate that potential licensing revenues for []copying be considered in a fair use analysis.'" *Princeton*, 99 F.3d at 1387 (*quoting American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994)).

As to this factor, the Court determined that there are "genuine factual disputes [] within the jury's purview." (Dkt. # 193, p. 15.) Accordingly, Mr. Hayden has submitted jury instructions to assist the jury in determining whether this factor weighs for or against fair use.

### C.  Implied License

Take-Two claims that its copying was authorized by Hayden via an implied license. Authorization to copy the Tattoos must come from Hayden alone, as he has the *exclusive* right to authorize others to reproduce, distribute, display and prepare derivative works from the copyrighted works. 17 U.S.C. § 106. Although courts have held under certain circumstances, a copyright holder may convey a non-exclusive implied copyright license, such an implied license is "for a particular purpose" rather than a broad, blanket license. *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998). Implied licenses are not the norm—they are only found "in narrow circumstances." *FenF, LLC v. Healio Health Inc.*, Case No. 5:08CV404, 2009 WL 10688713, at *4 (N.D. Ohio Sep. 4, 2009); *see also, e.g.*, *Malibu Media, LLC v. Pontello*, Case No. 13-12197, 2013 WL 12180709, at *3 (E.D. Mich. Nov. 19, 2013) (same).

The key to finding an implied license is the copyright holder's intent. *Murphy v. Lazarev*, 589 Fed. Appx. 757, 765 (6th Cir. 2014); *see also Robert L. Stark Enterprises, Inc. v. Neptune Design Group, LLC*, No. 1:16 CV 264, 2017 WL 1345195, at *10 (N.D. Ohio Apr. 12, 2017). The copyright owner's testimony as to his intent is relevant in determining this factor. *See Johnson*, 149 F.3d at 500 (considering copyright owner's testimony about his intent in finding no implied license). It is Take-Two's burden to prove (1) Hayden intended to grant LeBron James an implied license, and (2) that such license's scope included the authority for LeBron James to then permit third parties to recreate the Tattoos in video games. *See Crispen v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1093 (C.D. Cal. 2011) ("Where a license or its terms may be implied, finding there was an implied license does not end the inquiry. We must also ask what the scope of the license was, and whether [Defendant] exceeded it.")

This Court found that "intent is a fact question," deferring the issue to the jury. Accordingly, Hayden has submitted jury instructions to assist the jury in determining whether Defendants have met their burden to show *both* that Hayden intended to grant licenses to LeBron James in his Tattoos *and* that such licenses included the right to sublicense the replication of the Tattoos in video games.

### D. *De Minimis* Use

Take-Two claims its copying of the Tattoos does not constitute copyright infringement because it is *de minimis*. To establish its use is *de minimis*, Take-Two must prove by a preponderance of the evidence that their copying is so trivial that it cannot be found to be substantially similar to the copyrighted works. *Gordon v. Nextel Communications and Mullen Advertising, Inc.*, 345 F.3d 922, 924 (6th Cir. 2003). Courts have rejected the *de minimis* use defense where the copying is "total" or "wholesale." *Bell v. Willmott Storage Services, LLC*, 12

F.4th 1065, 1079 (9th Cir. 2021) ("Wholesale copying or reproduction of another's protected work . . . *by definition **cannot** be de minimis copying*") (emphasis added). "In determining whether the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied, as well as the observability of the copyrighted work in the allegedly infringing work." *Gordon*, 345 F.3d at 924. In a case with facts *very* similar to those here—against *these same Defendants*—the U.S. District Court for the Southern District of Illinois found that recreating copyrighted tattoos on digital avatars in video games was not *de minimis*: "The defense has been successfully invoked to allow copying of a small and usually insignificant portion of the copyrighted works, not the wholesale copying of works in their entirety as occurred here." *Alexander v. Take-Two Interactive Software, Inc.*, 489 F. Supp. 3d 812, 823 (S.D. Ill. 2020).

This Court has found that "[w]hether the Tattoos are observable and whether Defendants' replication diminishes the original works are questions of fact for the jury." (Dkt. # 193, p. 10.) Accordingly, Hayden has submitted jury instructions to assist the jury in determining whether Defendants have met their burden on this defense.

### E.  Waiver

Take-Two claims that Hayden has waived enforcing his copyrights. To establish that Hayden waived enforcing his copyrights, Defendants must prove with "clear and unequivocal evidence" that Hayden voluntarily and intentionally relinquished his copyright rights, with full knowledge of all the facts. *QSI-Fostoria D.C., LLC v. General Elec. Capital Business Asset Funding Corp.*, 389 Fed. Appx. 480, 487 (6th Cir. 2010); *see also Design Basics, LLC v. Chelsea*

*Lumber Co.*, 977 F. Supp. 2d 714, 736 (E.D. Mich. 2013). Moreover, mere silence does not amount to waiver. *Id.*

To Hayden's knowledge, there is absolutely no evidence of record nor even any *bona fide* assertion by Defendants, beyond the formality of their pleading, that he has waived enforcement of his rights. The Court should find no waiver as a matter of law and the jury should not be asked or permitted to make a finding on this defense.

### F.  Damages

If Hayden prevails on his copyright infringement claim, he is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The Sixth Circuit has unambiguously explained the plaintiff's burden in proving profits: "Plaintiffs have only one requirement: to prove Defendant's gross revenue." *ECIMOS*, 971 F.3d at 635 (*quoting Balsley*, 691 F.3d at 768). Although the plaintiff must show that the profits "have a reasonable relationship to the infringing activity," this burden is relatively low and may be established by demonstrating the profits of the broader work that encompasses the copyrighted work (*e.g.*, the total profits of an album that copied only a part of a single copyrighted song, *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 483 (6th Cir. 2007), or the total profits of a magazine issue that copied a single copyrighted photograph, *Balsley*, 691 F.3d at 769). This burden, as the Sixth Circuit has clearly explained, should not be confused with the *defendant's* burden to "prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work[.]" *ECIMOS*, 971 F.3d at 634; *see also Balsley*, 691 F.3d at 767. Thus, Hayden must prove the gross revenue of the Accused Games, which use the Tattoos. Then it is *Take-Two's* burden to prove

any deductible expenses and the elements of profit attributable to factors other than the copyrighted work. *Id.*

In the alternative, Hayden reserves his rights to elect statutory damages before final judgment pursuant to 17 U.S.C. § 504(c)(1) and reserves his rights to seek attorney's fees under 17 U.S.C. § 505. *See Smith v. Thomas*, 911 F.3d 378, 382 (6th Cir. 2018) ("plaintiffs are entitled to simultaneously seek actual damages and statutory damages in the alternative").

## IV.    PROPOSED WITNESS LIST

Hayden intends to call the following witnesses who will testify in his support and reserves the right to call any witnesses in rebuttal that Take-Two calls as a witness:

| Witness | Brief Description of Subject Matter of the Testimony |
|---|---|
| James Hayden (Plaintiff) | Creation of the Asserted Tattoos; customs of tattoo industry; lack of intent for license; licensing history for his works; personal knowledge related to Accused Games. |
| Justin Lenzo (Economic expert) | Commercial benefit of the Asserted Tattoos to Defendants; market formation in tattoo design licensing; analysis of Jay survey and Jay opinion; opinion submitted in support of Plaintiff's Opposition to Summary Judgment (Dkt. # 109-43). |
| Tolga Bilgicer (Survey expert) | Analysis of Jay survey and Jay opinion; survey results demonstrating that tattoos are a reason customers buy the Accused Games; opinion submitted in support of Plaintiff's Opposition to Summary Judgment (Dkt # 109-46). |
| Michal Malkiewicz (Damages expert) | Plaintiff's damages; Defendants' gross and net revenue; Defendants' gross and net profit; analysis of Malackowski opinions; Defendants' revenues and profits associated with tattoos and the Asserted Tattoos; opinions submitted in support of Plaintiff's Motion for Partial Summary Judgment (Dkt #93-11) and Opposition to Summary Judgment (Dkt # 109-47). |

| | |
|---|---|
| Michael Stauffer | Creation of the Accused Games, copying, value of tattoos in Accused Games, customer demand for tattoos in Accused Games, marketing, authentication of documents |

In addition, Hayden has identified the following witnesses, portions of whose deposition transcripts may be submitted as evidence:

| Deposition Witness | Brief Description of Subject Matter of the Testimony |
|---|---|
| Alfie Brody | Willfulness, copying, marketing and sales of the Accused Games, authentication of documents |
| Anton Dawson | Creation of the Accused Games, copying, willfulness, authentication of documents |
| Michael Stauffer | Creation of the Accused Games, copying, value of tattoos in Accused Games, customer demand for tattoos in Accused Games, marketing, authentication of documents |
| Corie Zhang | Creation of the Accused Games, copying |
| Winnie Hsieh | Creation of the Accused Games, copying |
| Joel Friesch | Willfulness, copying, gameplay, creation of the Accused Games, marketing, authentication of documents |
| Jeff Thomas | Willfulness, copying, gameplay, creation of the Accused Games, authentication of documents |
| Jason Argent | Willfulness, copying, gameplay, creation of the Accused Games, marketing and sales of Accused Games, authentication of documents |
| LeBron James | Creation of Asserted Tattoos |

## V.  EXHIBIT INDEX

Hayden has attached an index of all proposed exhibits along with a brief description of each exhibit attached as **Exhibit A.**

## VI.  DISCUSSION OF EVIDENTIARY ISSUES

Hayden anticipates the following evidentiary issues likely to arise at trial.

### A.  Burden of Proof in Establishing Take-Two's Profits

The Copyright Act entitles a copyright owner to recover "any profits of the infringer that are attributable to the infringement" and not included in its actual damages, and explicitly assigns the burdens of proving same: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). The Sixth Circuit has repeatedly confirmed this allocation of burdens. *See ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 634 (6th Cir. 2020); *Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012). Take-Two, however, argues that it is *Hayden's* initial burden to show the amount of Take-Two's profits that were attributable to the infringement and/or that *Hayden* must show a causal connection between Take-Two's profits and its infringement of the Tattoos. (*See* Dkt. #215-3, PageID #: 15307 ("To recover any of Take-Two's profits, Plaintiff must prove by a preponderance of the evidence that Take-Two's use of the Tattoos in the *NBA 2K* Games caused Defendants' profits.").) This is legal error.

While Mr. Hayden can and will rebut Take-Two's accounting of its expenses and attribution of its profits at trial, it is *not* his initial burden to do so. Take-Two's contention has been expressly rejected multiple times by the Sixth Circuit. *ECIMOS*, 971 F.3d at 634 (this "position is directly refuted by both the text of 17 U.S.C. § 504(b) and the cases that have addressed it"); *Balsley*, 691 F.3d at 769. The Sixth Circuit has held that "Section 504(b) *unambiguously provides* that the burden on the copyright owner is 'to present proof *only of the infringer's gross revenue*' of the infringing product, while the infringer must show not only 'expenses' but also the amount of the 'profit attributable to factors other than the copyrighted work.'" *ECIMOS*, 971 F.3d at 635 (quoting *Balsley*, 691 F.3d at 767). This approach, prescribed by both statute and case law, is properly set forth in Hayden's proposed jury instructions.

**B.  Declaration Testimony of LeBron James, Danny Green, and Tristan Thompson**

Take-Two submitted declarations from LeBron James, Danny Green, and Tristan Thompson (the "NBA Players") in support of its Motion for Summary Judgment. (*See* Dkt. # 101-2, 101-3, and 101-4.) Hayden then deposed each player on the substance of those depositions. Hayden objects to the use of the declarations at trial for all the reasons set forth in its Motion *in Limine*, including that they are inadmissible hearsay. Moreover, this Court dismissed Hayden's claims related to the tattoos on Danny Green and Tristan Thompson (Dkt. #251), so their testimony is now irrelevant and there is no reason to use their declarations or otherwise call them as witnesses in any capacity. To the extent Take-Two calls LeBron James as a witness or attempts to introduce his deposition testimony in lieu of calling him as witnesses, Hayden objects to certain topics and testimony for the reasons set forth in his Motion *in Limine*. For example, in his declaration, the LeBron James makes statements that would be inadmissible expert testimony about his legal "rights" in the Tattoos, licensing the Tattoos, and tattoo industry standards. Finally, to the extent Take-Two attempts to introduce LeBron James's (or any other Player's) *declaration* testimony through his *deposition*, Hayden objects for the reasons set forth in his Motion *in Limine*. At his deposition (and over repeated objections), Take-Two's counsel improperly *read* LeBron James's declaration into the record, nominally soliciting his confirmations of same in the form of highly leading "questions." This artifice does not cure the hearsay nature of his otherwise demonstrably unreliable declaration (*see*, Supp'l Opp., Dkt # 162).

**C.  Third-Party Declarations and Deposition Testimony from Other Litigations**

For the reason set forth in his Motion *in Limine*, Hayden objects to Take-Two referencing, introducing as evidence, eliciting testimony, or otherwise submitting evidence

related to testimony from other tattoo artists not at issue in this litigation. For example, Take-Two has referenced third-party declarations (from Thomas Ray Cornett, DeShawn Morris, Justin White, and Gary Glatstein) and deposition testimony (e.g., from Catherine Alexander) from *Solid Oak Sketches, LLC v. 2K Games et al.* and *Alexander v. Take-Interactive Software, Inc., et al.* in its Motion for Summary Judgment (*see, e.g.*, Dkt. # 101). This testimony is hearsay, not relevant to the claims and defenses in this case, and far more prejudicial than probative. Accordingly, it should be excluded.

### D. This Court's ruling dismissing the Lion, Brother's Keeper, Fire, and Scroll tattoos

For the reasons set forth in his Motion *in Limine*, Hayden objects to Take-Two referencing, introducing as evidence, eliciting testimony, or otherwise submitting evidence related to its allegations of insufficient copyright registrations or fraud on the copyright office related to the Lion, Brother's Keeper, Fire, or Scroll tattoos. This Court has already ruled on these issues and Take-Two's allegations with respect to the Lion, Brother's Keeper, Fire, or Scroll tattoos are not relevant in any way to any remaining issues left in the case and will prejudice Hayden if such evidence is improperly allowed at trial.

### E. Hayden's Own Tattoos

Take-Two has indicated in its briefing and elsewhere that it may present testimony and evidence at trial about Mr. Hayden's own tattoos and whether he has sought permission from other tattoos artists when he appears in public or shows himself in social media. (Mot. for Summary J., Dkt. # 95, p. 7.) For the reasons set forth in Hayden's Motion *in Limine*, such testimony and evidence should be excluded. At minimum it is irrelevant and more prejudicial than probative. It is undisputed that Hayden has never created or been depicted as or through an avatar in a video game or anything remotely similar thereto. His practices with regards to

appearing in public and on social media are not relevant to any claim or defense in this case, would confuse the jury, and should be excluded.

## VII.  ESTIMATE OF TRIAL LENGTH

Hayden estimates that this trial will require approximately five seven-hour trial days.

## VIII.  PROPOSED VOIR DIRE QUESTIONS

Hayden has attached his proposed *voir dire* questions as **Exhibit B.** Hayden consents to the Magistrate Judge conducting the voir dire of the jury.

## IX.  JURY INSTRUCTIONS

Hayden and Take-Two met and conferred before filing their initial proposed jury instructions to attempt to reach agreement on the instructions to be submitted to the jury. The Parties have again conferred to identify which instructions are still agreed on. Hayden has attached as **Exhibit C** his proposed jury instructions (agreed instructions are denoted as such).

## X.  SPECIAL INTERROGATORIES AND VERDICT FORMS

Hayden has attached his proposed special interrogatories and verdict forms as **Exhibit D**.

Dated: February 29, 2024

Respectfully submitted,

By: */s/ Andrew Alexander*
John S. Cipolla (Ohio Bar No. 0043614)
Daniel J. McMullen (Ohio Bar No. 0034380)
Todd R. Tucker (Ohio Bar No. 0065617)
Andrew W. Alexander (Ohio Bar No. 0091167)
Josh A. Friedman (Ohio Bar No. 0091049)
Dustin D. Likens (Ohio Bar No. 0097891)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
ttucker@calfee.com
aalexander@calfee.com
jfriedman@calfee.com
dlikens@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 29, 2024, a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

*/s/ Andrew W. Alexander*
One of the attorneys for Plaintiff
