# EXHIBIT C

## TAKE-TWO'S PROPOSED JURY INSTRUCTIONS

Where Plaintiff and Take-Two have disputed instructions, those are labeled as "Take-Two's Proposed."

### [AGREED] Jury Instruction No. 1: General Instructions

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, then you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, then you must disregard that impression. You are the sole judges of the facts of this case.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendants in arriving at your verdict.

Authority:  Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2023–2024 ed.) (modified).

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 2: Burden of Proof

Plaintiff James Hayden has the burden to prove every essential element of his claim by a preponderance of the evidence.  If plaintiff James Hayden should fail to establish any essential element of his claim by a preponderance of the evidence, you should find for defendants 2K Games, Inc. and Take-Two Interactive Software, Inc. as to that claim.  I will explain the elements of Plaintiff's claims later.

In turn, the defendants, 2K Games, Inc. and Take-Two Interactive Software, Inc., have the burden of establishing every essential element of their affirmative defenses by a preponderance of the evidence. I will explain the elements of 2K Games, Inc.'s and Take-Two Interactive Software, Inc.'s affirmative defenses later.

"Establish by a preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more probable than not.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard applicable in criminal cases.  It does not apply in civil cases such as this.  You should, therefore, put it out of your minds.  Preponderance simply means more likely true than not true.

<u>Authority</u>:  Kevin F. O'Malley et al., 3 Fed. Jury Prac. & Instr. § 104.01 (6th Ed.) (modified).

**[AGREED] Jury Instruction No. 3: Evidence**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven. Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Certain things are not to be considered as evidence. These are:

- Any testimony or exhibits I may have stricken from the record and told you to disregard. Such testimony or exhibits are not evidence and may not be considered.
- Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.
- Questions and objections or comments by lawyers. Attorneys have a duty to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or my ruling on it except, as explained just now, you may not consider evidence I strike.
- The lawyers' opening statements and closing arguments are not evidence. Their purpose is to discuss the issues and the evidence and assist you in interpreting them.

Authority:  Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2023–2024 ed.).

**[AGREED] Jury Instruction No. 4: Witnesses**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that single witness.

Authority:  Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2023–2024 ed.).

4

**[AGREED]** **Jury Instruction No. 5: Expert Witnesses**

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

Authority:  Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2023–2024 ed.).

**[AGREED] Jury Instruction No. 6: Deposition Testimony**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, then that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers were shown to you by video.

This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Authority:  Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2023–2024 ed.).

6

**[AGREED] Jury Instruction No. 7: Demonstrative Evidence**

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence.

Authority:  Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2023–2024 ed.).

**[TAKE-TWO'S PROPOSED]** **Jury Instruction No. 8: Copyright Introduction**

To help you understand the evidence in this case, I will explain some of the legal terms you have heard during the trial.

Copyright law defines when unauthorized copying of original works is permitted and not permitted. When copying is not permitted, it is called infringement. I will explain to you what it means for a work to be protected or not protected by copyright, and what kinds of copying are permitted and not permitted under the law.

In this case, Plaintiff James Hayden claims to own copyrights to two tattoos that he inked on LeBron James, an NBA basketball player. The tattoos are entitled "Gloria" and "Shoulder Stars." I may refer to these two tattoos as the "Asserted Tattoos." Plaintiff claims that defendants 2K Games, Inc. and Take-Two Interactive Software, Inc., who I will refer to collectively as "Take-Two," copied the Asserted Tattoos when they created their *NBA 2K* basketball video games and that such copying was an infringement of his copyrights. The video games at issue are *NBA 2K16*, *NBA 2K17*, *NBA 2K18*, *NBA 2K19*, *NBA 2K20*, and *NBA 2K Mobile*. Sometimes I will refer to these six basketball video games as "*NBA 2K*." Plaintiff is seeking damages from Take-Two.

Take-Two denies infringing the Asserted Tattoos. Take-Two specifically claims that the copyrights in the Asserted Tattoos are invalid because they were authored by Mr. James, not Plaintiff, because they were not independently created by Plaintiff, and because they consist of unprotectable elements. Take-Two also asserts four affirmative defenses that would mean that Take-Two's conduct is permitted. Take-Two's affirmative defenses are license, waiver, *de minimis* use, and fair use. I will describe copyright infringement and each of these affirmative defenses in more detail later on.

Authority:  Ninth Cir. Model Jury Instruction Nos. 17.5–17.15 (modified), available at https://www.ce9.uscourts.gov/jury-instructions/node/326; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 9: Direct Copyright Infringement

To prove direct infringement, Plaintiff has the burden of proving by a preponderance of the evidence that, for each Asserted Tattoo:

1. Plaintiff owns a valid copyright in the tattoo; and

2. Take-Two copied elements of the tattoo that are protectable.


Authority:  17 U.S.C. § 106; Ninth Cir. Model Jury Instruction No. 17.5 (modified), available at https://www.ce9.uscourts.gov/jury-instructions/node/326; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004); Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2023–2024 ed.) (modified).

## [TAKE-TWO'S PROPOSED] Jury Instruction No. 10: Ownership

Plaintiff has the burden to prove by a preponderance of the evidence that he owns valid copyrights in the Asserted Tattoos.  To prove ownership of a valid copyright, Plaintiff must show by a preponderance of the evidence that, for each tattoo:

1.  The tattoo is original; and

2.  Plaintiff is the author of the tattoo.

I have found that Plaintiff owns copyright registrations for the Asserted Tattoos, which Plaintiff registered in 2016 and 2017, and that those registrations create a presumption of validity.  The presumption of validity is rebuttable.  Evidence that a work was not original, including evidence that it was not independently created or that it is not creative, is sufficient to rebut the presumption of validity.  Evidence that Plaintiff did not author the work also is sufficient to rebut the presumption of validity.

If you find that Take-Two has rebutted the presumption of validity, the burden shifts back to Plaintiff to prove ownership of a valid copyright.  If you find that Plaintiff has failed to prove either of the two elements required to show ownership of a valid copyright, your verdict should be for Take-Two.

Authority: 17 U.S.C. § 410(c); Ninth Cir. Model Jury Instruction No. 17.6 (modified), available at https://www.ce9.uscourts.gov/jury-instructions/node/326; Dkt. 193 (1st Summ. J. Op.) at 5; *BancTraining Video Sys. v. First Am. Corp.*, 956 F.2d 268, at *3 (6th Cir. 1992); *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case"); *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 763–64 (2d Cir. 1991) (upholding district court's finding that presumption of validity was rebutted where defendant showed works were copied from pre-existing works); *Pan v. Kohl's Dep't Stores, Inc.*, No. 2:12 Civ. 1063, 2016 WL 1270665, at *5 (S.D. Ohio Mar. 31, 2016) (finding the defendants "successfully rebutted the presumption of the validity of Plaintiff's copyright by proving that Plaintiff is not the author of the work").

**[TAKE-TWO'S PROPOSED]** **Jury Instruction No. 11: Originality**

Plaintiff has the burden to prove by a preponderance of the evidence that each of the Asserted Tattoos is original.

A work is original if it (1) was created independently, as opposed to being copied from another work; and (2) contains at least some minimal creativity.

For a work to be independently created, it must be created by its author and not copied from someone else's work.

External factors that constrain the choice of the author's expression can also preclude copyright protection. For example, words and short phrases such as names and titles are not copyrightable. Similarly, standard or stock elements that necessarily follow from a common theme or setting may not obtain copyright protection.

Authority:  Ninth Cir. Model Jury Instruction No. 17.14 (modified), *available at* https://www.ce9.uscourts.gov/jury-instructions/node/270; 17 U.S.C. § 102; *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991); *Halper v. Sony/ATV Music Pub., LLC*, No. 18-5915, 2019 WL 994524, at *3 (6th Cir. Feb. 15, 2019) (citing 37 C.F.R. § 202.1); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*; *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 285 (3d Cir. 2004) (quoting 37 C.F.R. § 202.1 (2004)); *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 764 (2d Cir. 1991) ("In the copyright context, originality means the work was independently created by its author, and not copied from someone else's work."); *SnagPod, LLC v. Precision Kiosk Tech., Inc.*, No. 23 Civ. 10401, 2023 WL 6644133 (E.D. Mich. Oct. 12, 2023); *see* 17 U.S.C. § 103(a) ("[P]rotection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.").

11

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 12: Authorship

Plaintiff has the burden to prove by a preponderance of the evidence that he is the author of each of the Asserted Tattoos.

An author is the person to whom the work owes its origin and who superintended or "masterminded" the whole work. If another person exercised decision-making authority over the work, including over what changes were made to the work and what was included, that person is the author, not the person who implemented those decisions.

Authority: Ninth Cir. Model Jury Instruction No. 17.8 (modified), *available at* https://www.ce9.uscourts.gov/jury-instructions/node/264; 17 U.S.C. § 201(a); *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884) ("In my opinion, 'author' involves originating, making, producing, as the inventive or master mind, the thing which is to be protected"); *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 260 (2d Cir. 2015) (identifying "factual indicia of [] authorship" as including "decisionmaking authority," which means "relative control over what changes are made and what is included in a work" (internal citations and quotation marks omitted)); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1233 (9th Cir. 2000) (following *Burrow-Giles*'s definition of author "as the person whom the work owes its origin and who superintended the whole work"); *Andrien v. S. Ocean Cnty. Chamber of Com.*, 927 F.2d 132, 135 (3d Cir. 1991) (authors may not be the people who "perform with their own hands the mechanical tasks of putting the material in the form distributed to the public").

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 13: Substantial Similarity

Plaintiff must prove by preponderance of the evidence that any copying by Take-Two constituted legally actionable copying to prevail on his copyright claim.  To prove legally actionable copying, Plaintiff must show that *NBA 2K* and the Asserted Tattoos are substantially similar.

To determine substantial similarity, you must (a) consider only the protectable elements of the Asserted Tattoos; and (b) ask yourself whether *NBA 2K* is substantially similar to these protectable elements.  In determining whether *NBA 2K* and the Asserted Works are substantially similar to each other, you should consider the relative importance of any protectable elements of the copyrighted work that you find similar to *NBA 2K* as compared to the importance of elements in the copyrighted work that you do not find to be protectable or similar to *NBA 2K*.

Only original elements of the Asserted Tattoos are protectable.  This category does not include mere ideas, common or standard elements and themes, words or names, or elements copied from preexisting sources or the public domain.

Authority: Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2023–2024 ed.) (modified); 17 U.S.C. § 103(a); *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 536–39 (6th Cir. 2020) ("We must first identify which aspects of [plaintiff's] works, if any, are protectible by copyright.  Then, we must determine whether the allegedly infringing works, or elements of those works, are substantially similar to [plaintiff's] protected works, or protected elements of [plaintiff's] work." (internal citation omitted)); *Halper v. Sony/ATV Music Pub., LLC*, No. 18-5915, 2019 WL 994524, at *3 (6th Cir. Feb. 15, 2019) (citing 37 C.F.R. § 202.1); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 274–75 (6th Cir. 2010) (applying the Sixth Circuit's "two-step approach for determining whether substantial similarity exists, where the factfinder first asks what aspects of the copyrighted work, if any, are protected, and then asks whether the second work involves elements that are substantially similar to the protected elements of the original work."); *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534–35 (6th Cir. 2004) (distinguishing factual and legally actionable copying and holding that "standard, stock [elements], … or [elements] that necessarily follow from a common theme or setting" are not protectable and must be filtered out of substantial similarity analysis); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 285 (3d Cir. 2004) (quoting 37 C.F.R. § 202.1 (2004)); *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003) ("The essence of the first step is to filter out the unoriginal, unprotectible elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity."); *see also* Dkt. 193 (1st Summ. J. Op.) at 9 (distinguishing factual copying from actionable copying, and noting that "Defendants argue that Plaintiff cannot establish actionable copying.").

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 14: Indirect Infringement

On Plaintiff's vicarious copyright infringement claim, Plaintiff has the burden of proving by a preponderance of the evidence:

1. Take-Two's customers directly infringed Plaintiff's copyrights;
2. Take-Two has a direct financial interest in the infringing activity; and
3. Take-Two had the right and ability to supervise or control the infringing activity but failed to do so.

On Plaintiff's contributory copyright infringement claim, Plaintiff has the burden of proving by a preponderance of the evidence:

1. Take-Two's customers directly infringed Plaintiff's copyrights;
2. Take-Two knew, was willfully blind, or should have known that its customers were directly infringing; and
3. Take-Two intentionally or materially contributed to the infringing activity.


Authority:  *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930–31 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise the right to stop or limit it."); *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) ("A defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and 'has the right and ability to supervise' the infringing activity."); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971) ("Similarly, one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer."); *Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004) ("We have interpreted the knowledge requirement for contributory copyright infringement to include both those with *actual knowledge* and those who *have reason to know* of direct infringement."); *Matthew Bender & Co., Inc. v. West Publ'g Co.,* 158 F.3d 693, 706 (2d Cir. 1998); *Subafilms, Ltd. v. MGM–Pathe Commc'ns Co.,* 24 F.3d 1088, 1092 (9th Cir. 1994).

**[TAKE-TWO'S PROPOSED]** **Jury Instruction No. 15: Affirmative Defenses**

Take-Two's affirmative defenses are:

1. License;

2. Waiver;

3. *De Minimis* Use; and

4. Fair Use

     I will explain what each of these affirmative defenses mean.  With regard to the license, *de minimis* use, and waiver defenses, if you find that Take-Two has proved any of them, your verdict should be for Take-Two.  With regard to the fair use defense, I will be deciding the ultimate question of whether Take-Two's fair use defense applies in this case, but as I will explain, you will be deciding certain factual questions related to that defense.

Authority:  *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199–1200 (2021) ("Applying a legal 'fair use' conclusion may, of course, involve determination of subsidiary factual questions."); *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583–84 (1994) (fair use applied even where copying would otherwise "be an infringement" of the plaintiff's copyrights).

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 16: License

If Take-Two's use of the Asserted Tattoos was authorized, it is not copyright infringement.  Such authorization is called a license, and it is Take-Two's burden to prove the existence of a license by a preponderance of the evidence.

A license may be granted in a contract or through an oral agreement, which is called an explicit license.  A license also may be granted by conduct, which is called an implied license. Where the objective evidence leads to the conclusion that the copyright owner intended the defendant to use the copyrighted work, the copyright owner should not later be able to sue for copyright infringement.  A license may authorize the licensed person or entity to license additional persons or entities.  This is referred to as a "sub-license."

I already have found that Mr. James granted to Take-Two (through the NBA and NBPA) an explicit license to his likeness (including the Asserted Tattoos).  The only things for you to decide is whether Mr. James is the author of the Asserted Tattoos or, if Plaintiff is the author, whether an implied license between Plaintiff and Mr. James exists.

With regard to whether an implied license between Plaintiff and Mr. James exists, I already have found that Mr. James requested that Plaintiff create the Asserted Tattoos and that Plaintiff made the Asserted Tattoos and delivered them to Mr. James by inking them on his body. Given those findings, the only thing for you to decide is whether Plaintiff intended that Mr. James be able to copy and distribute, and allow others to copy and distribute, these delivered versions of the Asserted Tattoos.  In reaching your decision, you may consider:

- Whether the parties were engaged in a short term, discrete transaction, which supports a finding of an implied license;

- Whether Plaintiff used written contracts providing that the Asserted Tattoos can be used only with Plaintiff's express permission, because the lack of such contracts supports a finding of an implied license;

- Whether Plaintiff's conduct at the time the Asserted Tattoos were created supports a finding of an implied license; and

- Whether common industry practice supports a finding of an implied license.

Silence or lack of objection may be equivalent to a license.

If Take-Two proves the existence of a license, the burden shifts to Plaintiff to show by a preponderance of the evidence that Mr. James acted outside the scope of the license.  Absent a limitation imposed on the implied license at the time the Asserted Tattoos were inked on Mr. James, the license would permit all uses of the Asserted Tattoos by Take-Two that are at issue in this case.

<u>Authority</u>: 17 U.S.C. §§ 101, 106, 204(a); *Murphy v. Lazarev*, 589 F. App'x 757, 765 (6th Cir. 2014) (finding "[a] non-exclusive license may be granted orally, or may be implied from conduct"); *Great Minds v. FedEx Office & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018); *Mahavisno v. Compendia Biosci., Inc.*, 164 F. Supp. 3d 964, 968–69 (E.D. Mich. 2016) ("[W]here the objective evidence leads to the conclusion that the copyright owner intended the defendant to use the copyrighted work, the copyright owner should not later be able to sue for copyright infringement for that use."); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775–76 (7th Cir. 1996) (finding "an implied nonexclusive license has been granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work"); *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008) (evidence of intent includes: "(1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts ... providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible" and finding implied license where work was delivered "without any caveats or limitations on [defendant's] use"); *LimeCoral, Ltd. v. CareerBuilder, LLC*, 889 F.3d 847, 851 (7th Cir. 2018) ("Absent a limitation imposed on the license at the time these works were delivered to CareerBuilder, the license impliedly granted to CareerBuilder would encompass all of the rights of LimeCoral as the copyright holder."); *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir. 1990); *Photographic Illustrators, Corp. v. Orgill, Inc.*, 953 F.3d 56, 61 (1st Cir. 2020); *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 825–26 (9th Cir. 2001) ("We agree that the contract grants GenCom an implied license to use the revised plot plan to complete development of the project, to hire another firm to create derivative works using the revised plot plan for the purpose of completing the project, and to publish the resulting work."); *Westhoff Vetriebsges mbH v. Berg*, No. 22 Civ. 938, 2023 WL 5811843, at *8–*13 (S.D. Cal. Sept. 6, 2023), *Reinicke v. Creative Empire, LLC*, 38 F. Supp. 3d 1192, 1200 (S.D. Cal. 2014); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 345–46 (S.D.N.Y. 2020); *Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 908–09 (E.D. Mo. 2015).

**[TAKE-TWO'S PROPOSED]** **Jury Instruction No. 17: Waiver**

To establish Take-Two's waiver defense, it must prove by a preponderance of the evidence that Plaintiff voluntarily and intentionally relinquished his known right.  In answering this question, you may consider whether Plaintiff delayed in enforcing his copyrights such that Take-Two could reasonably assume its use of the Asserted Tattoos was permitted.

Authority: *Stratton v. Portfolio Recovery Assoc., LLC*, 770 F.3d 443, 447–448 (6th Cir. 2014); *Soos & Assocs., Inc. v. Five Guys Enters., LLC*, 425 F. Supp. 3d 1004, 1012 (N.D. Ill. 2019); *Design Basics LLC v. Campbellsport Bldg. Supply, Inc.*, No. 13 Civ. 560, 2016 WL 3189202, at *9 (E.D. Wis. June 7, 2016).

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 18: *De Minimis* Use Defense

    *De minimis* use of a work is not copyright infringement.  Use of the Asserted Tattoos is *de minimis* if an average lay observer would not observe them in *NBA 2K*.  To make that determination, you may consider the length of time that the Asserted Tattoos appear in *NBA 2K*, their prominence in the games, and whether they are primarily in the background or often obstructed from view.  The lighting, positioning, focus, and camera angles used also are relevant to the prominence of the Asserted Tattoos in *NBA 2K*.  You may find *de minimis* use even if you find that the entire Asserted Tattoos were copied.

Authority:  Dkt. 193 (1st Summ J. Op.) at 10 ("Courts consider 'the amount of the copyrighted work that was copied, as well as the observability of the copyrighted work in the allegedly infringing work.'. . . [C]ourts measure observability through factors like 'focus,' 'lighting,' 'camera angles' and the 'prominence' of the copied image within the infringing work."); *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 878 (9th Cir. 2016); *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 924–25 (6th Cir. 2003); *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998); *G.R. Leonard & Co. v. Stack*, 386 F.2d 38, 40 (7th Cir. 1967); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 343–45 (S.D.N.Y. 2020); *Gottlieb Dev. LLC v. Paramount Pictures, Corp.*, 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008); *MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 89 F.3d 1548, 1560 (11th Cir. 1996).

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 19: The Defense of Fair Use

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest.  Such use of a copyrighted work is called a fair use.  The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

To assist me in deciding whether Take-Two engaged in fair use, I will be asking you to decide certain factual questions relevant to this defense.

Authority:  17 U.S.C. § 107; Ninth Cir. Model Jury Instruction No. 17.22 (modified), *available at* https://www.ce9.uscourts.gov/jury-instructions/node/280; *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1198 (2021) (fair use provides "a context-based check that can help to keep a copyright monopoly within its lawful bounds"); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583–84 (1994) (fair use applied even where copying would otherwise "be an infringement" of the plaintiff's copyrights); *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 537 (6th Cir. 2004) ("Congress has established a fair use defense to infringement claims to ensure that copyright protection advances rather than thwarts the essential purpose of copyright.").

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 20: Fair Use - Purpose and Character

*First*, you will be asked to answer questions relevant to the purpose and character of Take-Two's use of the Asserted Tattoos in *NBA 2K*.  In particular, you will be asked to make findings of fact relevant to whether and to what extent Take-Two's use of the Asserted Tattoos in *NBA 2K*  is "transformative."  A use is transformative when it adds something new, with a further purpose or different character, altering the original with new expression, meaning, or message.  A secondary use can be transformative in purpose or character even without altering or actually adding to the original work if it complements rather than substitutes for the original work.  I already have found that Take-Two's purpose of creating realism and accuracy is distinguishable from Plaintiff's aims of creating body art on Mr. James' body at Mr. James' request as a form of Mr. James' personal expression and to represent people and things that are meaningful and significant in his life.

You also will be asked to make findings of fact about how the Asserted Tattoos appear in *NBA 2K*.  You will therefore be asked whether Take-Two reduced the size of the Asserted Tattoos in *NBA 2K*.  In answering this question, you may consider whether the Asserted Tattoos are prominently displayed or smaller than their real-life size.  You also will be asked about whether, in *NBA 2K*, the Asserted Tattoos are used more for Take-Two's purpose of creating realism and accuracy than for their expressive value.  In answering this question, you may consider whether the Asserted Tattoos were put into a context or combined with other material, such as auditory or visual elements, that lessens their value as expressive works. You will also be asked whether the Asserted Tattoos are a small part of *NBA 2K*.  In answering this question, you may consider what proportion of *NBA 2K*'s file size or gameplay consists of the Asserted Tattoos.[1]

Commerciality of the use is also relevant to the purpose and character of the use, and the focus of commerciality is whether the user of a work stands to profit from the use.  You will be asked to decide whether the ordinary purchaser buys *NBA 2K* for the Asserted Tattoos.  In answering that question, you may consider whether the Asserted Tattoos were used to advertise or promote *NBA 2K*.[2]

---

[1]    This proposed instruction relates to Questions 7, 8, and 9 in Take-Two's Proposed Verdict Form, and it comes from *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 611 (2d Cir. 2006) (considering whether: (1) the defendant "significantly reduced in size the reproductions" such that the reproductions were "inadequate to offer more than a glimpse of their expressive value;" (2) the defendant "minimized the expressive value of the reproduced images by combining them" with other material; and (3) the copied images "constitute an inconsequential portion" of the defendant's overall work).

[2]    This proposed instruction relates to Question 10 of Take-Two's Proposed Verdict Form, and it comes from the Supreme Court's decision in *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) ("The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."); *see also Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 611 (2d Cir. 2006) (finding defendant did not "exploit the

<u>Authority</u>: 17 U.S.C. § 107; *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 531, 534 (2023) ("[A] use that has a distinct purpose is justified because it furthers the goal of copyright, namely, to promote the progress of science and the arts, without diminishing the incentive to create."); *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583–84 (1994); *Am. Society for Testing & Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1268 (D.C. Cir. 2023); *Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 940 (4th Cir. 2013); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609–612 (2d Cir. 2006); *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 544 (6th Cir. 2004); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 346–350 (S.D.N.Y. 2020); *Castle v. Kingsport Publ'g Corp.*, No. 19 Civ. 92, 2020 WL 7348157, at *5 (E.D. Tenn. Dec. 14, 2020); *Monster Commc'ns, Inc. v. Turner Broad. Sys, Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996); *Kelly v. Arriba Soft Corp.* 336 F.3d 811, 818 (9th Cir. 2003); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980); *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014); *Final Charge to the Jury*, *Oracle Am., Inc. v. Google Inc.*, No. 10 Civ. 3561 (modified); Dkt. 193 (1st Summ. J. Op.) at 12.

---

use of BGA's images as such for commercial gain" because defendant "has not used any of BGA's images in its commercial advertising or in any other way to promote the sale of" defendant's book); *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 544 (6th Cir. 2004) (finding "it is not the case that *any* profit-making purpose weighs against fair use"); *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023) (fair use "requires an analysis of the specific 'use' of a copyrighted work that is alleged to be 'an infringement'" (quoting 17 U.S.C. § 107)).

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 21: Fair Use - Nature of the Work

***Second***, you will be asked to answer questions relevant to the nature of the Asserted Tattoos.  You will be asked to decide whether the Asserted Tattoos contain standard images or themes. Standard images and themes are images and themes that are common or widely used in the medium at issue, which here is tattoos.[3]

You will also be asked whether the Asserted Tattoos are part of Mr. James' appearance. In answering this question, you may consider whether Mr. James would look like himself without the Asserted Tattoos, and whether other people could realistically and accurately depict him without his tattoos.[4]

Authority: *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 544 (6th Cir. 2004); *see also Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1202 (2021); *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 586 (1994); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985); *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014); *Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 942–43 (4th Cir. 2013); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278–79 (9th Cir. 2013); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609–613 (2d Cir. 2006); *Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012); *Kelly v. Arriba Soft Corp.* 336 F.3d 811, 818 (9th Cir. 2003); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980); *Wilson v. Ancestry.com LLC*, 653 F. Supp. 3d 441, 454 (S.D. Ohio 2023); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 346–350 (S.D.N.Y. 2020); *Castle v. Kingsport Publ'g Corp.*, No. 19 Civ. 92, 2020 WL 7348157, at \*5 (E.D. Tenn. Dec. 14, 2020); *Monster Commc'ns, Inc. v. Turner Broad. Sys, Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996).

---

[3]    This proposed instruction relates to Question 11 of Take-Two's Proposed Verdict Form. Under the doctrine of *scènes à faire*, elements that are "standard, stock, or that necessarily follow from a common theme or setting" are not protectable, which is why Take-Two proposes the inclusion of Question 9.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535 (6th Cir. 2004) (alterations omitted).

[4]    This proposed instruction relates to Question 12 of Take-Two's Proposed Verdict Form. Under right of publicity laws, of which Ohio Rev. Code § 2741.01–02 is representative, "a person shall not use any aspect of an individual's persona for a commercial purpose" unless "[t]he person first obtains written consent[.]" *See Wilson v. Ancestry.com LLC*, 653 F. Supp. 3d 441, 454 (S.D. Ohio 2023). The protected "persona" includes a person's "distinctive appearance." If the Asserted Tattoos became part of Mr. James' appearance, then Plaintiff's alleged rights would overlap with Mr. James', and his assertion of rights would restrict Mr. James' exercise of his own rights. The overlap of Plaintiff's alleged rights and Mr. James' rights makes the nature of tattoos unique among copyrighted works. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1202 (2021) (considering the relevance of third parties when assessing second factor).

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 22: Fair Use - The Amount and Substantiality of the Portion of Plaintiff's Work Used in Relation to the Copyrighted Work

*Third*, you will be asked questions relevant to the amount and substantiality of the portion of Plaintiff's work used in relation to the copyrighted work as a whole. I have found that the Asserted Tattoos in *NBA 2K* are a small part of a larger graphic display and appear much smaller than in real life. You will be asked whether *NBA 2K* includes a reasonable amount of the Asserted Tattoos in light of Take-Two's purpose of showing Mr. James as he looks in real life.[5] In addition, you will be asked whether the Asserted Tattoos are a prominent feature of ordinary *NBA 2K* gameplay. [6] In answering this question, you may consider how observable the Asserted Tattoos are in ordinary *NBA 2K* gameplay, including whether they appear primarily in the background, obstructed from view, in focus, or surrounded by other auditory or visual elements.

Authority: Dkt. 193 (1st Summ. J. Op.) at 14; *see also Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 583–84 (1994); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985); *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014); *Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 940 (4th Cir. 2013); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013); *Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609–612 (2d Cir. 2006); *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 387 F.3d 522, 544 (6th Cir. 2004); *Kelly v. Arriba Soft Corp.* 336 F.3d 811, 818 (9th Cir. 2003); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980); *Castle v. Kingsport Publ'g Corp.*, No. 19 Civ. 92, 2020 WL 7348157, at *5 (E.D. Tenn. Dec. 14, 2020); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 346–350 (S.D.N.Y. 2020); *Monster Commc'ns, Inc. v. Turner Broad. Sys, Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996).

---

[5]    This proposed instruction relates to Question 13 of Take-Two's Proposed Verdict Form, and it comes from *Design Basics, LLC v. Petros Homes, Inc.* 240 F. Supp. 3d 712, 722 (N.D. Ohio 2017) ("The question is whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying.").

[6]    This proposed instruction relates to Question 14 of Take-Two's Proposed Verdict Form, and it comes from the Court's first opinion on summary judgment, which found that on factor three, "the degree of observability" of the Asserted Tattoos is up to the jury to decide. Dkt. 193 (1st Summ. J. Op.) at 10, 14; *see TCA Television Corp. v. McCollum,* 839 F.3d 168, 185 (2d Cir. 2016) (quoting *Campbell v. Acuff-Rose, Inc.*, 510 U.S. 569, 587 (1994)) (finding that not only is the "quantity of the materials used" relevant but also their "quality and importance").

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 23: Fair Use - The Effect of the Use Upon the Market for or Value of the Copyrighted Work

*Fourth*, you will be asked questions relevant to the effect of Take-Two's use of the Asserted Tattoos on the market for or value of the Asserted Tattoos.  You will be asked whether customers would purchase *NBA 2K* as a substitute for purchasing the Asserted Tattoos.  By "substitute," I mean whether someone might choose to acquire tattoos from Take-Two's video games, rather than obtain tattoos from Plaintiff.[7]

Plaintiff bears the burden of showing that there is a current or potential market for the use of the Asserted Tattoos as they appear in *NBA 2K*.  I have already found that there is no current market for including tattoos in video games, so you will be asked to determine whether a potential market exists.  When I say, "potential market," I do not mean just any conceivable market, I mean a market that is traditional, reasonable, or likely to develop.  Plaintiff cannot prevent others from entering a conceivable market merely by developing or licensing that use himself.  Thus, you will be asked to determine whether Plaintiff has met his burden of showing that, at the time that Take-Two started using the Asserted Tattoos, there was a reasonable, traditional, or likely to developed market for licensing the Asserted Tattoos Plaintiff inked for use in video games separate from the market for depicting Mr. James.

And if you determine there is a potential market, you will be asked whether Take-Two's use of the Asserted Tattoos in *NBA 2K* substantially harms that market.  In making your determination, you should consider whether *NBA 2K* competes with the Asserted Tattoos or derivatives of the Asserted Tattoos.  You also should consider whether Take-Two's use deprives Plaintiff of significant revenues because potential purchasers may opt to purchase *NBA 2K* instead of the Asserted Tattoos.  You also should consider whether widespread conduct like Take-Two's would result in a substantially adverse impact on the potential market for the Asserted Tattoos.  To show harm to a potential market, Plaintiff cannot simply point to lost revenue he would have earned from Take-Two's compensating him for the use of the Asserted Tattoos.[8]

---

[7]    This proposed instruction is relevant to Question 15 of Take-Two's Proposed Verdict Form, and it comes from this Court's first opinion on summary judgment.  Dkt. 193 (1st Summ. J. Op.) at 14–15 (citing *Authors Guild v. Google, Inc.*, 804 F.3d 202, 222 (2d Cir. 2015) ("Whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original.")).

[8]    This proposed instruction is relevant to Questions 16, 17, and 18 of Take-Two's Proposed Verdict Form, and it comes from *Bill Graham Archives v. Dorling Kindersley Ltd.*  448 F.3d 605, 614–15 (2d Cir. 2006) (finding "we look at the impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets" and "[C]opyright owners may not preempt exploitation of transformative markets"); *see also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (considering "exploitation of the copyrighted material without paying the **customary** price") (emphasis added); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 222 (2d Cir. 2015) ("Whether the copy brings to the marketplace a competing substitute for

25

You also will be asked questions relevant to the public's interest in this case.  You will be asked to decide whether allowing people with tattoos to permit others to show them realistically and accurately with their tattoos would encourage or discourage people to get tattoos., as well as whether allowing people with tattoos to be depicted realistically and accurately encourages or discourages creativity.[9]

---

the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original."); *Castle Rock v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 145 n.11 (2d Cir. 1998) ("Just as secondary users may not exploit markets that original copyright owners would 'in general develop or license others to develop' even if those owners had not actually done so, copyright owners may not preempt exploitation of transformative markets, which they would not 'in general develop or license others to develop,' by actually developing or licensing others to develop those markets. Thus, by developing or licensing a market for parody, news reporting, educational or other transformative uses of its own creative work, a copyright owner plainly cannot prevent others from entering those fair use markets.").

[9]     This proposed instruction is relevant to Questions 19 and 20, and it comes from *Google LLC v. Oracle America, Inc.*, which instructs that factor four "must take into account the public benefits the copying will likely produce," balancing any "dollar amounts likely lost" with the benefits from the "creative production of new expression."  141 S. Ct. 1183, 1206 (2021).

**[TAKE-TWO'S PROPOSED]** **Jury Instruction No. 24: Damages**

If you find for Plaintiff on his copyright infringement claim and that Take-Two failed to prove any of its affirmative defenses, then you must consider the amount of damages, if any, that Plaintiff is entitled to recover.  Plaintiff may recover any actual damages suffered from the infringement and any profits of Take-Two that are attributable to the infringement, to the extent such profits are not taken into account in computing actual damages.  I will define these terms in the following instructions.

Authority: 17 U.S.C. § 504.

**[TAKE-TWO'S CONDITIONAL PROPOSAL]**[10] **Jury Instruction No. 25: Actual Damages**

To receive actual damages, Plaintiff must prove by a preponderance of the evidence that he suffered actual losses as a result of Take-Two's use of the Asserted Tattoos in *NBA 2K*. Examples of actual losses from copyright infringement include:

- What a willing buyer reasonably would have paid Plaintiff to obtain a license to use the Asserted Tattoos in *NBA 2K*; or

- The decrease in market value of the Asserted Tattoos caused by their use in *NBA 2K*.

If the relationship between the actual losses suffered and the use of the Asserted Tattoos is unduly speculative, Plaintiff is not entitled to actual damages.  If Plaintiff fails to show by non-speculative evidence that licensing the Asserted Tattoos had a fair market value, Plaintiff is not entitled to actual damages.

If you find that Plaintiff did not take reasonable actions to reduce his damages and that Plaintiff reasonably might have mitigated his damages had he taken such actions, you should reduce the damages by the amount he could have mitigated.


Authority: 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 569 (7th Cir. 2003) ("Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) ("In our review of Timex's challenge to the actual damages award, we must assess whether the award is non-speculative—that is, whether it is sufficiently supported by evidence."); *Dash v. Mayweather*, 731 F.3d 303, 317 (4th Cir. 2013) ("The first possible measure is the amount of revenue that the copyright holder lost as a result of infringement, such as his own lost sales of the work.  Another cognizable measure is the fair market value of the licensing fee the owner was entitled to charge for [the infringer's] use of his copyrighted work." (internal citations and quotations omitted; brackets in original)).

---

[10] As discussed in Take-Two's motion *in limine* No. 7, Plaintiff is not entitled to seek actual damages at trial.  If Take-Two's MIL is denied, it proposes this jury instruction and related Questions 21 and 22 in Take-Two's Proposed Verdict Form.

**[TAKE-TWO'S PROPOSED]** Jury Instruction No. 26: Take-Two's Profits

To recover any of Take-Two's profits, Plaintiff must prove by a preponderance of the evidence that Take-Two's use of the Asserted Tattoos in *NBA 2K* caused Take-Two's profits. Therefore, if you find that the relationship between Take-Two's profits and its use of the Asserted Tattoos in *NBA 2K* is attenuated or speculative, Plaintiff is not entitled to any of Take-Two's profits.  Plaintiff also is not entitled to profits if he can show only that Mr. James caused some of Take-Two's profits, without showing that those profits were related to the Asserted Tattoos.

If Plaintiff proves the existence of revenues that are reasonably related to the Asserted Tattoos, then Take-Two must prove its expenses, which you should deduct from Take-Two's revenues to determine its profits, and Take-Two must prove any portion of its profits that resulted from factors other than infringement of Plaintiff's copyright.  Take-Two has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted works.  Where it is clear that not all profits are attributable to the infringing material, Plaintiff is not entitled to recover all of the Take-Two's profits merely because Take-Two fails to establish with certainty the portion attributable to non-infringing elements.

Moreover, you may consider any delay by Plaintiff in commencing this suit.  In so doing, you may consider whether Take-Two relied on any delay by Plaintiff in bringing suit, taking into account when Plaintiff learned of the claims and whether any delay in bringing suit was unjustified or undue.  To the extent you find that Plaintiff unduly delayed in bringing his claims, you may reduce profits in an amount commensurate with the delay.

<u>Authority</u>: 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."); *Satija v. Permanent Gen. Assurance Corp. of Ohio*, No. 13 Civ. 82, 2014 WL 1664557, at *6 (N.D. Ohio Apr. 25, 2014) (requiring a "reasonable relationship between revenues and the act of infringement"); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 685–88 (2014) ("[T]he District Court, in determining appropriate injunctive relief and assessing profits, may take account of Petrella's delay in commencing suit."); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 829–30 (9th Cir. 1985); *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th Cir. 2003) ("'Because Mackie [had] failed to adduce any non-speculative evidence that would even suggest a link between the infringement and the Symphony's supposedly enhanced revenues,' summary judgment in favor of the Symphony was appropriate."); *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003); *Skidmore v. Led Zeppelin*, No. 15 Civ. 3462, 2016 WL 1442461 (C.D. Cal. Apr. 8, 2016) (finding "undue delay in bringing suit may justify adjusting profits").

[AGREED] **Jury Instruction No. 27: Duty to Deliberate**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times that you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, then rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, then the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.


Authority:  Kevin F. O'Malley et al., *Fed. Jury Prac. & Instructions Civil Companion Handbook* § 6:1 (2023–2024 ed.).

30